1  CHRISTOPHER FROST (SBN 200336)
   cfrost@eisnerlaw.com
2  AMBER HENRY (SBN 247624)
   ahenry@eisnerlaw.com
3  EISNER, LLP
   9601 Wilshire Blvd., 7th Floor
4  Beverly Hills, California 90210
   Telephone:  (310) 855-3200
5  Facsimile:  (310) 855-3201

6  Attorneys for Defendants Celestron Acquisition,
   LLC; SW Technology Corp; Corey Lee; David
7  Anderson; and Joseph Lupica

8

9               UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11

12  DANIEL HIGHTOWER., and those similarly      Case No. 5:20-cv-03639-EJD
    situated,
13                                              *The Honorable Judge Edward Davila*
                 Plaintiffs,
14                                              **NOTICE OF MOTION AND MOTION OF
         vs.                                    DEFENDANTS CELESTRON
15                                              ACQUISITION, LLC; SW
    CELESTRON ACQUISITION, LLC, SYNTA           TECHNOLOGY CORP.; COREY LEE,
16  CANADA INT'L ENTERPRISES LTD.,              DAVE ANDERSON AND JOSEPH
    SKYWATCHER USA, SKY-WATCHER                 LUPICA TO DISMISS LAWSUIT
17  CANADA, SW TECHNOLOGY CORP.,                PURSUANT TO FED. R. CIV. P. 12(b)(6);
    OLIVON MANUFACTURING CO. LTD.,              MEMORANDUM OF POINTS AND
18  OLIVON USA, LLC, COREY LEE, SYLVIA          AUTHORITIES**
    SHEN, JEAN SHEN, JOSEPH LUPICA,
19  DAVE ANDERSON, LAURENCE HUEN,               *Filed concurrently with Request for Judicial
    and DOES 1-50,                              Notice*
20
                 Defendants.
21                                              Hrng. Date:     August 13, 2020
                                                Hrng. Time:     9:00 a.m.
22                                              Ctrm.:          4 (5th Floor)

23

24

25

26

27

28

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 13, 2020, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Edward Davila, Courtroom 4, located on the 5th floor in the United States District Court, San Jose Courthouse, Defendants Celestron Acquisition, LLC, SW Technology Corp., Corey Lee, Dave Anderson and Joseph Lupica ("Moving Defendants") will and hereby do move this Court to dismiss the lawsuit pursuant to Fed. R. Civ. P. 12(b)(6). Moving Defendants have concurrently filed a Motion to Transfer Venue ("Venue Motion"), seeking to have this case transferred to the Central District of California, where multiple defendants are located. Among other reasons for the Venue Motion, no Defendant is located in the Northern District of California. Moving Defendants request this Court consider the venue motion first, and only reach the merits of this motion if it denies the Venue Motion.

This Motion is made because Plaintiffs cannot state claims on which relief can be granted:

1.    Plaintiffs' claims are time barred under the relevant statutes of limitations;

2.    Plaintiffs cannot state claims against the individual defendants;

3.    Plaintiffs cannot state claims against SW Technology Corp.;

4.    Plaintiffs cannot state claims under Sherman Act Section 1;

5.    Plaintiffs cannot state claims under Sherman Act Section 2;

6.    Plaintiffs cannot state claims under Clayton Act Section 7; and

7.    Plaintiffs cannot state claims under California law, or alternatively, this Court should decline to exercise jurisdiction over those claims.

This Motion follows the parties' unsuccessful meet and confer efforts on June 25, 2020, and is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice, all of the pleadings, files, and records in this proceeding, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

EISNER, LLP

1

DATED:  June 30, 2020                                    EISNER, LLP

2

3                                            By:        */s/ Christopher Frost*

4                                                    CHRISTOPHER FROST

                                                     Attorneys for Celestron Acquisition, LLC; SW
5                                                    Technology Corp.; Corey Lee; Dave Anderson;
                                                     and Joseph Lupica
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW
TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

## <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................8

1.    INTRODUCTION..............................................................................................................8

2.    BRIEF BACKGROUND ...................................................................................................10

3.    PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS ..................................................................................................................11

4.    PLAINTIFFS CANNOT STATE VALID ANTITRUST CLAIMS ...................................13

      4.1    Plaintiffs Do Not Plead Sufficient Facts Sufficient To State Any Claims Against Lee, Anderson, or Lupica ..................................................................13

      4.2    Plaintiffs Do Not Plead Facts Sufficient To State Any Claims Against SW Technology Corp. .............................................................................................15

      4.3    Plaintiffs' First Cause of Action under Section § 1 of the Sherman Act Fails To State A Claim upon which Relief May Be Granted.............................................15

      4.4    Plaintiffs Cannot State A Claim Under Sherman Act Section 2 Because the Complaint Fails to Allege Unilateral Actions By Defendants ................................17

      4.5    Plaintiffs Fail To State A Claim Under Section 7 of the Clayton Act ....................19

      4.6    This Court Should Decline Jurisdiction Over Plaintiffs' State Law Claims............21

5.    CONCLUSION .................................................................................................................22

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**CASES**

*Acri v. Varian Assocs., Inc.,*
    114 F.3d 999 (9th Cir. 1997) ................................................................ 24

*Alaska Airlines, Inc. v. United Airlines, Inc.,*
    948 F.2d 536 (9th Cir. 1991) ................................................................ 19

*Albrecht v. Lund,*
    845 F.2d 193 (9th Cir. 1988) ................................................................ 24

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007) ................................................................ 15, 17, 18

*Bolden v. Colvin,*
    2015 WL 450522, at *2 (S.D. Cal. 2015) ................................................................ 11

*Broadcom Corp. v. Qualcomm Inc.,*
    501 F.3d 297 (3d Cir. 2007) ................................................................ 23

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977) ................................................................ 21, 22

*Conmar v. Mitsui & Co.,*
    858 F.2d 499 (9th Cir.1988) ................................................................ 12

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) ................................................................ 21

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
    545 U.S. 546 (2005) ................................................................ 23, 24

*FTC v. Swish Marketing,*
    2010 WL 653486, at *5-6 (ND Cal. Feb. 22, 2010) ................................................................ 14

*Funk v. Bank of Hawaii,*
    2020 WL 2494530 (N.D. Cal. May 14, 2020) ................................................................ 13

*Garrison v. Oracle Corp.,*
    159 F. Supp. 3d 1044 (N.D. Cal. 2016) ................................................................ 11

*Hexcel v. Ineos Polymers,*
    681 F.3d 1055 (9th Cir. 2012) ................................................................ 12

*Image Tech. Servs., Inc. v. Eastman Kodak Co.,*
    125 F.3d 1195 (9th Cir. 1997) ................................................................ 18, 19

EISNER, LLP

5

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW
TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

*In re Animation Workers,*
   87 F. Supp. 3d 1195 (N.D. Cal. 2015) .................................................. 13

*In re Century City Doctors Hosp.*
   2010 WL 8452903 (9th Cir. BAP Apr. 26, 1988).................................. 24

*In re Fresh and Process Potatoes Antitrust Lit.,*
   834 F. Supp. 2d 1141 (D. Idaho 2011)................................................. 15

*In re Transpacific Passenger Air Transp. Antitrust Litig.,*
   No. C 07–5634 CRB, 2011 WL 1753738 (N.D. Cal. May 9, 2011)....................................... 12

*Klingebiel v. Lockheed Aircraft Corp.,*
   372 F. Supp. 1086 (N.D. Cal. 1971) .................................................. 11

*Lucas Auto. Engineering Co., Inc. v. Bridgestone/Firestone, Inc.,*
   140 F.3d 1228 (9th Cir. 2003)........................................................... 23

*Matsushita v. Mediatek,*
   2007 WL 963975 at *2-5 (N.D. Cal. March 30, 2007) ....................... 13, 18

*McHenry v. Renne,*
   84 F.3d 1172 (9th Cir. 1996)............................................................. 16

*Mitigation Tech. v. Pennartz,*
   2015 WL 12656936 (C.D. Cal. Mar. 13, 2015) ................................... 15

*name.space, Inc. v. Internet Corp. for Assigned Names & Numbers,*
   795 F.3d 1124, (9th Cir. 2015)...................................................... 17, 18

*Parklane Hosiery v. Shore,*
   439 U.S. 322 (1979) ............................................................................ 9

*Rebel Oil Co., Inc. v. Atl. Richfield, Co.,*
   51 F.3d 1421 (9th Cir. 1995).............................................. 18, 20, 22

*U.S. v. Black,*
   482 F.3d 1035 (9th Cir. 2007)........................................................... 13

*United States v. Syufy Enters.,*
   903 F.2d 659 (9th Cir. 1990)............................................................. 20

**STATUTES**

15 U.S.C. § 18 ............................................................................... 21

28 U.S.C. § 1367(c)....................................................................... 24

Cal. Bus. & Prof. Code §16700 .................................................... 11

Cal. Bus. & Prof. Code § 17200 ....................................................11

EISNER, LLP

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW
TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

1

Fed. R. Evid. 201(b) ................................................................................................................. 13

2

**OTHER AUTHORITIES**

3

Clayton Act §7 ............................................................................................................ passim

4

Sherman Action Sections 1, 2 (15 U.S.C. §1, 2) ................................................................ passim

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW
TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

Plaintiffs' antitrust complaint is as dishonest as it is unmerited.  Even if this action survives the pleading stages (it should not), Defendants will show that this lawsuit is a transparent and frivolous effort by nonparty Optronic Technology ("Orion"), through its own counsel Braunhagey & Borden, to drive its competitor Celestron Acquisition and related entities and individuals from the consumer telescope market.  The present action is one of two class action lawsuits Braunhagey & Borden filed in this same Court on the same day against these same parties, after Celestron spurned pre-litigation settlement demands <u>by Orion</u>.[1]  As explained in the concurrently-filed Motion to Transfer Venue (which Defendants request this Court consider and rule on prior to reaching the merits of this lawsuit), no Defendant in this lawsuit is located within this district; tellingly, both Braunhagey & Borden and Orion are.  Orion cannot pursue this litigation in its name because of the release it signed with Celestron and related defendants nearly four years ago.  Orion negotiated that release after threatening litigation in 2015 based on the same baseless allegations the putative class asserts here, and using the same counsel.  Remarkably, the class still claims that defendants' alleged misconduct was "unknowable" before 2019.

Adding market insult to injury, Braunhagey & Borden cites to its own prior action on behalf of Orion against another market competitor, when it claims in this complaint that "a jury has already found that Celestron and its parent company conspired with their competitor Ningbo Sunny…to fix prices, divide the market….."   [Complaint ¶2.]  Plaintiff is referencing a different proceeding (*Optronic Technology v. Ningbo Sunny, et. al.*, N.D. Cal. Case No. 5:16-cv-06370-EJD) (the "Orion Lawsuit")--<u>a lawsuit to which Celestron was not even a party</u>.  Celestron's name is not mentioned in the jury verdict, and even if it had been, no such findings would be binding or admissible in these proceedings.  *Parklane Hosiery v. Shore,* 439 U.S. 322, 327-28 (1979) (it is a violation of due process for a judgment to be binding on a litigant who was not a party and

---

[1] In March 2020 correspondence, Braunhagey & Borden founder Noah Hagey wrote that, if Celestron does not agree to a pre-litigation mediation, it would "force Orion and the class plaintiffs to pursue claims against all of you."

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

EISNER, LLP

therefore had no chance to be heard).  That did not stop Braunhagey & Borden from making the allegation "on behalf of the class" and bleeding the Complaint to the press.

Who is masterminding these lawsuits is an issue that ought to be academic, as this and the parallel consumer class action should be dismissed on this Motion.  Among other reasons, Plaintiffs' claims are time-barred.  All Plaintiffs' claims are subject to a four-year statute of limitations.  Yet every single allegedly wrongful act would have occurred more than four years ago.  The Complaint admits as much.  For instance:

- Plaintiffs allege that defendants illegally colluded to purchase Meade in 2013 (seven years prior to the Complaint's filing) [Complaint ¶¶73 *et. seq.*]

- Plaintiffs allege that defendants facilitated misrepresentations to the FTC in 2013 [*id.* ¶¶89 *et. seq.*]

- Plaintiffs allege that defendants shared trade secrets, market allocation, and engaged in price fixing in 2013-2015 [*id.* ¶¶94 *et. seq.* and accompanying exhibits.]

Plaintiffs have not alleged any purported misconduct that occurred within the past four years, or that this conduct alone could form the basis for the alleged claims.  Indeed, many of these allegations mirror the same allegations in a draft complaint that Braunhagey & Borden circulated and threatened to file against Celestron and other defendants in November 2015, alleging the same misconduct—a fact that dooms Plaintiffs' effort to claim fraudulent concealment as a basis to avoid the running of the limitations period.

Even on the merits, Plaintiffs cannot state viable antitrust claims.  Plaintiffs do not even attempt to demonstrate how Corey Lee, David Anderson, and Joseph Lupica (who left the employment of Celestron more than seven years ago), can be personally liable for the claimed violations.  Likewise, Plaintiffs make no allegation of any wrongdoing by SW Technology Corp., which they concede is merely a "holding company."  Additionally, Plaintiffs cannot state valid antitrust claims, as identified below.

For these reasons, as explained more fully below, if this Court does not grant Defendants' Motion to Transfer Venue, Defendants respectfully request the Court grant this Motion and dismiss all claims without leave to amend.

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

## 2.    <u>BRIEF BACKGROUND</u>

On November 1, 2016 Orion filed the Orion Lawsuit against its (and Celestron's) competitors Meade Instruments, Sunny Optics, and Ningbo Sunny Electronics.  The Complaint—of which the Court can take judicial notice—alleged largely the same causes of action that Plaintiffs have alleged here, and using the same counsel.  A full year earlier, in November 2015, Braunhagey & Borden had forwarded a draft of that lawsuit to, and naming, among others, Celestron, in an attempt to coerce a pre-litigation settlement.  Celestron, and other named defendants in this lawsuit, resolved (rather modestly) Orion's (however contrived) disputes, and the parties exchanged mutual releases.  (The settlement is not reasonably in dispute, as Orion cited to it numerous times in the complaint in the Orion Lawsuit.)

Despite the prior releases, Braunhagey & Borden and Orion resurfaced in late 2019, once again with a draft complaint, and once again threatening Celestron and the other named defendants here with further litigation if the parties did not agree to a further "significant" settlement.  In March 2020, Braunhagey & Borden wrote and threatened that the lawsuits would be on behalf of both Orion and putative class representatives, and that, if no settlement was reached, the defendants would face the same "fate" as the defendants in the Orion Lawsuit; namely, "Meade is now in bankruptcy and will either be owned by Orion or sold for Orion's benefit; and the world's largest telescope market, the United States, is now foreclosed to Ningbo Sunny."

Celestron and the other named defendants did not settle with Orion or the putative classes, and Braunhagey & Borden filed this distributor class action, and a parallel consumer class action. The complaints in these two putative class actions largely mirror the allegations from the Orion Lawsuit (the litigation in which Celestron obtained a full release), and allege largely the same purported conduct.  Despite having known about this alleged misconduct since at least 2015, and having based three-plus years of prior, very public litigation on it, Braunhagey & Borden has the audacity to suggest that Plaintiffs could not have known before 2019 of the allegedly-wrongful conduct (all of which the complaint here concedes occurred more than four years ago).

Undeterred, Plaintiffs charged forward with time-barred claims that do not state wrongful conduct.  This Motion followed.

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW
TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

3.    **<u>PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS</u>**

A motion to dismiss is appropriately granted without leave to amend where the statute of limitations has expired, and the running of the statute is apparent on the face of the pleading or its accompanying exhibits. *Klingebiel v. Lockheed Aircraft Corp.*, 372 F. Supp. 1086, 1087 & n.1 (N.D. Cal. 1971) (granting motion on statute of limitations grounds); *Bolden v. Colvin*, 2015 WL 450522, at *2 (S.D. Cal. 2015) (recommending granting motion).    Plaintiffs have alleged violations of Sherman Action Sections 1, 2 (15 U.S.C. §1, 2); Clayton Act §7 (15 U.S.C. §18); the Cartwright Act; and Cal. Bus. & Prof. Code §§16700, 17200.    All of these claims are subject to a four-year statute of limitations.    *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1062 (N.D. Cal. 2016) (analyzing limitations period of these same claims).    The "default" rule is that the claim accrues, and the statute begins to run, on the date of the misconduct.    *Id.* at 1066.

Here, the face of the Complaint demonstrates that the statute of limitations had already run prior to the filing of the Complaint.    For instance:

- Plaintiffs allege that defendants illegally colluded to purchase Meade in 2013 (seven years prior to the Complaint's filing) [*id.* ¶¶73 *et. seq.*]

- Plaintiffs allege that defendants facilitated misrepresentations to the FTC in 2013 [*id.* ¶¶89 *et. seq.*]

- Plaintiffs allege that defendants shared trade secrets, market allocation, and engaged in price fixing in 2013-2015 [*id.* ¶¶94 *et. seq.* and accompanying exhibits.]

- "No new manufacturers of any significance have entered the market in at least the last 10 years." [*id.* ¶66.]

- Plaintiffs define the class as anyone who purchased a telescope sold by Defendants from "2005 through such time as class notice is given." [Complaint ¶119.]

- In addition, every exhibit to the Complaint is dated more than four years ago.

Plaintiffs' effort to salvage their time-barred claims by claiming fraudulent concealment is not resuscitative.    A plaintiff bears the burden of pleading and proving fraudulent concealment. *Conmar v. Mitsui & Co.*, 858 F.2d 499, 502 (9th Cir.1988).    To plead fraudulent

EISNER, LLP

11

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

1    concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the

2    plaintiff; (2) the plaintiff did not have "actual or constructive knowledge of the facts giving rise to

3    [his] claim" as a result of the defendant's affirmative acts; and (3) the plaintiff acted diligently in

4    trying to uncover the facts giving rise to his claim.  *Hexcel v. Ineos Polymers*, 681 F.3d 1055,

5    1060 (9th Cir. 2012).    Allegations of fraudulent concealment must be pled with

6    particularity. *Conmar*, 858 F.2d at 502. Plaintiffs must allege specific factual allegations of

7    fraudulent concealment to survive a motion to dismiss.  *In re Transpacific Passenger Air Transp.*

8    *Antitrust Litig.*, No. C 07–5634 CRB, 2011 WL 1753738, at *20–21 (N.D. Cal. May 9, 2011).

9    "Conclusory statements are not enough."  *Conmar*, 858 F.2d at 502.

10    Plaintiffs cannot salvage their claims with bald allegations of concealment.  Plaintiffs do

11    not provide any details of any affirmative acts intended to mislead Plaintiffs; the fact that Plaintiffs

12    did not have actual or constructive knowledge; or any acts of diligence to uncover the alleged facts

13    sooner.  *See In re Animation Workers*, 87 F. Supp. 3d 1195, 1216 (N.D. Cal. 2015) (granting

14    motion to dismiss on statute of limitations grounds because Plaintiffs could not show fraudulent

15    concealment where "Plaintiffs offer no specific facts showing the "who, what, where, when" of

16    these alleged incomplete or materially false statements," and offered nothing more than evidence

17    of passively concealed information or how Plaintiffs relied on that information).

18    Any information of the alleged misconduct was available no later than 2015.  Plaintiffs'

19    own counsel who knew of the same alleged conduct no later than November 2015, and filed a

20    complaint based on that same alleged misconduct in November 2016.  A comparison of the

21    November 23, 2015 draft complaint [Ex. 1 hereto][2], the November 2016 complaint in the Orion

22

23    [2] The Court can take judicial notice of the draft complaint because it is not reasonably subject to
24    dispute, and the settlement discussions surrounding that draft were made public in Orion's
      complaint in the Orion Lawsuit.  *Funk v. Bank of Hawaii,* 2020 WL 2494530 (N.D. Cal. May 14,
25    2020) ("The Court may take judicial notice of documents referenced in the complaint, as well as
      matters in the public record.").   The Court may take judicial notice of matters that are either
26    "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily
      determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).
27    Public records, including judgments and other court documents, are proper subjects of judicial
      notice. *See, e.g.*, *U.S. v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).   Settlement privilege does
28    not preclude consideration of the document because it is not being provided to demonstrate

EISNER, LLP

1    Lawsuit [Ex. 2 hereto][3], and the complaint in this action show that the causes of action are

2    virtually identical, and largely rely on the same alleged misconduct.  For instance, all three allege

3    Sherman Act, Clayton Act, and California Business & Professions Code violations arising from

4    purported: (i) anticompetitive conduct relating to the acquisition of Meade [Ex. 1 ¶¶91 *et. seq.*; Ex.

5    2 ¶¶69 *et. seq*; Complaint ¶¶73 *et. seq.*]; (ii) sharing of nonpublic, competitively-sensitive

6    information [Ex. 1 ¶¶80 *et. seq.*; Ex. 2 ¶¶59 *et. seq*; Complaint ¶¶94 *et. seq.*]; (iii) coordinating on

7    "supracompetitive pricing;" [Ex. 1 ¶¶88 *et. seq.*; Ex. 2 ¶¶ *et. seq*; Complaint ¶¶56 *et. seq.*]; (iv)

8    fixing the prices of product [Ex. 1 ¶¶91 *et. seq.*; Ex. 2 ¶43; Complaint ¶¶69 *et. seq.*] and (v) harm

9    to competition [Ex. 1 ¶¶119 *et. seq.*; Ex. 2 ¶¶88 *et seq*; Complaint ¶¶109 *et. seq.*]

10          Any argument that knowledge of Braunhagey & Borden could not be imputed to Plaintiffs

11   misses the point.  The Complaint alleges concealment of information.  If the information was

12   sufficiently available for Orion to obtain in it, there is no legitimate basis for retailers in the same

13   space to claim that they could not have obtained the same information.

14          The allegations in the operative Complaint concede that Plaintiffs were on reasonable

15   notice more than four years ago, irrespective of the earlier lawsuit, including, for instance, the

16   allegation of the lack of new market competitors for 10 years [Complaint ¶66]; the FTC's blocking

17   of the merger of Celestron and Meade in 1999 and 2002 [*id.* ¶72]; and the bare fact that Plaintiffs

18   are retailers in the space and would have known the purchasing price on products they would have

19   been purchasing that they now claim were unavailable or anti-competitively priced.   The

20   Complaint admits as much at Para. 2: "For the last decade, Defendants and their cohorts have

21   massively and illegally overcharged U.S. telescope distributors."

22   **4.    PLAINTIFFS CANNOT STATE VALID ANTITRUST CLAIMS**

23          **4.1    Plaintiffs Do Not Plead Sufficient Facts Sufficient To State Any Claims Against**

24                 **Lee, Anderson, or Lupica**

25          Plaintiffs allege personal liability on the part of, among others, Celestron's current CEO

26   _____

27   liability, but rather for the permissible purpose of demonstrating undue delay in bringing these
     claims.  *See Matsushita v. Mediatek*, 2007 WL 963975 at *2-5 (N.D. Cal. March 30, 2007).

28   [3] The complaint in the Orion Lawsuit was superseded by a November 2017 amended complaint.

EISNER, LLP

13

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW
TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

1  Corey Lee, and former CEO's David Anderson and Joseph Lupica.  A person is not individually

2  liable for antitrust violations just because they served as Chief Executive Officer at the time.  *FTC*

3  *v. Swish Marketing*, 2010 WL 653486, at *5-6 (ND Cal. Feb. 22, 2010). Plaintiffs are required to

4  plead and prove that the individuals actively participated in the alleged misconduct, and that the

5  evidence of the participation was not simply possible, but plausible.  *Id.*  "The plausibility

6  standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *In re*

7  *Fresh and Process Potatoes Antitrust Lit.,* 834 F. Supp. 2d 1141, 1149 (D. Idaho 2011).  Where a

8  complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of

9  the line between possibility and plausibility of 'entitlement to relief." *Bell Atlantic v. Twombly*,

10  550 U.S. 544, 557 (2007). A pleading that offers "labels and conclusions" or "a formulaic

11  recitation of the elements of a cause of action will not do."  *Id.* at 555.  Nor does a complaint

12  suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

13  Plaintiff has not, and cannot, demonstrate a basis to hold Messrs. Lee, Anderson, and

14  Lupica personally liable.  The allegation that each "participated in, planned, and carried out the

15  conspiracy detailed below" [Complaint ¶¶31-34] is a bare conclusion that is of no substantive

16  import.  The further allegations against Corey Lee are especially scant.  Mr. Lee's name is

17  mentioned four times in the Complaint—two of which are in the "Parties" paragraphs.  The other

18  two references (Paragraphs 97 and 98) are to a single 2015 email exchange concerning alleged

19  exchanges of Orion order information during a time that Lee was not the CEO of Celestron.[4]  The

20  email exchange occurred more than four years ago and therefore outside the statute of limitations.

21  The single email exchange does not show what type of information was purportedly shared, let

22  along sufficiently to show that it was protected information or that anything wrongful occurred.

23  *See, e.g., Mitigation Tech. v. Pennartz*, 2015 WL 12656936, at *6 (C.D. Cal. Mar. 13, 2015) ("The

24  Court finds that MTI has failed to sufficiently identify the actual substance of

25  putative trade secrets beyond     generalized    categories    of    customer,    product,

26  and pricing information….Even assuming  the  putative trade secrets were  specific  enough,  MTI

27  ─────────────────────

[4] This is the reason Plaintiffs reference Lee in this section of the Complaint as Celestron's "current

28  CEO," because they know he was not the CEO at the time of the email exchange.

fails to establish that its customer list, quotations, pricing, and materials information actually constitute trade secrets.")  That is hardly enough to plead wrongful conduct on Lee's part.

The only allegations relating to Lupica and Anderson specifically are that they offered advice in the purchase of Meade by Ningbo Sunny, and Lupica eventually became Meade's CEO. There is nothing inherently or independently wrongful about this conduct, let alone that would state a "plausible" claim or subject them to personal liability.  Indeed, Plaintiffs admit that Lupica has not worked for Celestron since the Meade acquisition in or around 2013—the statute of limitations against him expired long ago.[5]

**4.2    Plaintiffs Do Not Plead Facts Sufficient To State Any Claims Against SW Technology Corp.**

Plaintiffs make no effort to demonstrate any alleged misconduct by SW Technology Corp. Rather, Plaintiffs allege that SW Technology Corp. was created in 2005 to acquire Celestron, and is now a "holding company."  [Complaint ¶22.]  Plaintiffs then make the passing allegation that "Each Defendant headquartered outside the United States relied upon its domestic agents, employees, and affiliates, and co-conspirators including without limitation Celestron, SW Technology, Sunny Optics, and Meade to help implement and conceal the anticompetitive activities alleged herein."  [*Id.* ¶45.]  After these bare allegations, Plaintiffs then never mention SW Technology again, let alone make any sort of effort to show how SW Technology specifically engaged in any wrongdoing whatsoever.  This is insufficient, even for notice pleading; it does not meet even the basic standard of pleading "clear and concise averments stating which defendants are liable to plaintiffs for which wrongs, based on the evidence."  *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (affirming dismissal with prejudice).

**4.3    Plaintiffs' First Cause of Action under Section § 1 of the Sherman Act Fails To State A Claim upon which Relief May Be Granted**

Sherman Act §1 provides that "[e]very contract, combination in the form of trust or

---

[5] The fact that Mr. Lupica wrote that they want to "dominate the telescope industry" [Complaint Ex. 17] is not sufficient to show that misconduct was "plausible," or necessarily even "possible." Indeed, this is the rightful approach that any competent CEO should want to take: making sure his company is best positioned to be the most successful in the industry.

EISNER, LLP

otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. §1. "A §1 claim requires: (1) a 'contract, combination or conspiracy among two or more persons or distinct business entities'; (2) which is intended to restrain or harm trade; (3) 'which actually injures competition'; and (4) harm to the plaintiff from the anticompetitive conduct." *name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, (9th Cir. 2015). But "[b]ecause § 1 . . . does not prohibit all unreasonable restraints of trade but only restraints effected by a contract, combination, or conspiracy, the crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 553.

To satisfy the first element of a §1 claim, a complaint "must allege facts 'plausibly suggesting (not merely consistent with)' a conspiracy." *name.space*, 795 F.3d at 1129. "It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible." *Id.*

Here, the Complaint alleges essentially that Defendants and non-party Ningbo Sunny had an agreement not to compete with each other and to divide the consumer telescope market. Moreover, they suggest that Defendants coordinated with and provided assistance to Ningbo Sunny in connection with its acquisition of Meade Corporation which, amongst other things, was a supplier to Defendants.   These allegations are categorically false.   But even assuming, for purposes of this Motion only, the truth of the allegation that the consumer telescope market was divided in the manner Plaintiffs allege, that does not equate to misconduct.   It is not unlawful for participants in the same market to choose to not directly compete. There may be a host of business and other economic reasons why rational companies would make that type of decision. *name.space*, 795 F.3d at 1130 (holding that an anticompetitive agreement cannot be inferred when factual allegations "just as easily suggest rational, legal business behavior). This "lawful parallel conduct fails to bespeak unlawful agreement." *Twombly*, 550 U.S. at 556; *see also Matsushita*, 475 U.S. at 597 n. 21 (1986) ("[C]onduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy.").

Similarly, with respect to Ningbo Sunny's acquisition of Meade Corporation, the

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

Complaint alleges that certain Defendants provided assistance and Ningbo Sunny requested that certain Defendants provide "financial support" to Ningbo Sunny in connection with such acquisition.  While Plaintiffs speculate about the existence of some illegal agreement, there are business and other economic reasons which are consistent with such factual assertions, including maintaining a healthy competitive environment and the fact that Ningbo Sunny was a supplier to Celestron.

### 4.4    Plaintiffs Cannot State A Claim Under Sherman Act Section 2 Because the Complaint Fails to Allege Unilateral Actions By Defendants

Sherman Act §2 prohibits monopolization or attempted monopolization of trade or commerce. 15 U.S.C. § 2. An attempt claim has four elements: "(1) a specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power,' and (4) causal antitrust injury." *Rebel Oil Co., Inc. v. Atl. Richfield, Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). A monopoly claim has two elements, aside from antitrust injury: (1) defendant possessed monopoly power in the relevant market and (2) defendant willfully acquired or maintained that power. *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997).

While "[s]ection 1 [of the Sherman Act] deals with concerted activity," *see Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 542 (9th Cir. 1991), "[s]ection 2, on the other hand, concerns unilateral activity." *Id.*  The Complaint devotes the vast majority of its allegations to a purported "arrangement" or "conspiracy" between Defendants and non-party Ningbo Sunny (and its affiliates) and to actions alleged to have been taken by Ningbo Sunny unilaterally. However, there is precious little, if any, allegations of unilateral actions taken by Defendants which are alleged to have damaged Plaintiffs or harmed competition.

Thus, with respect to the Meade Corporation acquisition, while there are allegations of communications between certain Defendants and certain Ningbo Sunny entities regarding Ningbo Sunny's requests for putative "financial support" from Celestron in connection with the acquisition [Complaint ¶¶ 75-79]—conduct that is not in and of itself wrongful—whatever alleged harm to competition Plaintiffs may allege results from the 2013 Meade acquisition cannot be

17

attributed to any "unilateral" action by Defendants.  Similarly, with respect to the allegation of "supracompetitive" pricing, Plaintiffs do not even attempt to allege that Defendants alone have sufficient market power to unilaterally raise prices.  To the contrary, the Complaint alleges that largely through its acquisition of Meade Corporation, a large manufacturer and distributor, non-party Ningbo Sunny exercises substantial control over the supply market for consumer telescopes. [*E.g.,* Complaint ¶114.]  It is this control which is alleged to enable Ningbo Sunny (with Meade), *not* Defendants, to exercise power over pricing.

Perhaps more fatal to Plaintiffs' Section 2 claim is the fact that the Complaint utterly fails to allege that Defendants either have a monopoly in the market in which Plaintiffs compete (the "Distribution" market) or the "dangerous probability" of Defendants achieving such a monopoly. To the contrary, the Complaint simply alleges that non-party Ningbo Sunny and Defendants, in the aggregate, control the distribution market without specifying Defendants' alleged share of the market.  [Complaint ¶¶51, 53, 115.]  That failure alone warrants dismissal of Plaintiffs' claim under Section 2 of the Sherman Act.

Even assuming that these allegations were sufficient to show Defendants' putative "dominance" of the distribution market (they are not), "[a] mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme."  *Rebel Oil*, 51 F.3d at 1439. "The plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price." *Id.*

Entry barriers are "additional long-run costs that were not incurred by incumbent firms but must be incurred by new entrants" or "factors in the market that deter entry while permitting incumbent firms to earn monopoly returns." *Id.* "The main sources of entry barriers are: (1) legal license requirements; (2) control of an essential or superior resource; (3) entrenched buyer preferences for established brands; (4) capital market evaluations imposing higher capital costs on new entrants; and, in some situations, (5) economies of scale." *Id.* "Entry barriers pertain not to those already in the market, but to those who would enter but are prevented from doing so." *United States v. Syufy Enters.,* 903 F.2d 659, 671 n.21 (9th Cir. 1990).

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW
TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

Other than the conclusory allegations that (a) the consumer telescope business is a "high capital investment" business [Complaint ¶64] and requires "key intellectual property" [*id.* ¶65], the Complaint is virtually devoid of the types of specifics needed to support the plausibility of a Section 2 pleading.  Missing are any supporting facts taking the allegations from possible to plausible; for instance, what are the high capital investment costs and key intellectual property rights that pose a significant barrier to entry?

Perhaps recognizing this pleading deficiency, Plaintiffs attempt to speculate that non-party "Ningbo Sunny's plan to similarly dismantle Meade's manufacturing capabilities, and the failure of any replacement suppliers to emerge, demonstrates that the barriers to entry into the supply market, combined with Defendants' anticompetitive conduct, have effectively foreclosed competition at the supply level."  [Complaint ¶112.]  Plaintiffs' unsubstantiated speculation of the above "cause and effect" does not remedy this pleading deficiency.  Absent from the Complaint, for example, is any specifics regarding how long it takes to acquire or build a suitable factory. Without a better description of the purported entry barriers, the allegations are too conclusory to be entitled to an assumption of truth. See *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (holding that "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action").   The Complaint does not even allege any facts with respect to purported barriers to expansion in the distribution markets by Plaintiffs.  This failure together with the other pleading infirmities with Plaintiffs' Section 2 claim render such cause of action subject to dismissal.

### 4.5    Plaintiffs Fail To State A Claim Under Section 7 of the Clayton Act

In their Second Cause of Action, Plaintiffs allege that Defendants are liable under Section 7 of the Clayton Act, which, loosely speaking, prohibits business combinations or acquisitions which adversely decrease competition in the relevant market.  Since the Complaint fails to allege that Defendants engaged in any business combination or acquisition, let alone an unlawful one, the Second Cause of Action must be dismissed to the extent it is premised on Clayton Act liability.

Clayton Act §7 prohibits a corporation from acquiring the stock or assets of another corporation "in any line of commerce" in which the effect "may be substantially to lessen

EISNER, LLP

competition, or to tend to create a monopoly." 15 U.S.C. § 18.  When examining a §7 claim, the court must be mindful that "[e]very merger of two existing entities into one, whether lawful or unlawful, has the potential for producing economic readjustments that adversely affect some persons." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 487 (1977). "But Congress has not condemned mergers on that account; it has condemned them only when they may produce anticompetitive effects." Id.

Here, the Complaint does not allege that Defendants engaged in a merger or acquisition of another company.  At most, the Complaint alleges conclusorily that, in 2013 (well outside applicable statutes of limitation), Defendant Celestron "took equity" in Meade Corporation, a company which was acquired by non-party Ningbo Sunny.  [Complaint ¶¶ 4, 87.]  This is the only allegation regarding any Defendant acquiring any stock or equity interest in Meade Corporation. (It is also false.)  Rather, the Complaint purports to allege that Defendants provided "assistance" to non-party Ningbo Sunny in connection with its acquisition of Meade and makes a variety of allegations regarding actions alleged to have been taken by Ningbo Sunny relating to such acquisition [*e.g.*, Complaint ¶¶89-93].  Nevertheless, given that Defendants did not acquire Meade Corporation, neither such acquisition nor Plaintiffs' speculative allegation of some unspecified amount of equity that Defendant Celestron allegedly obtained can form the basis for a claim under Section 7.

Even assuming, *arguendo*, that the non-specific allegation that Celestron obtained equity in Meade Corporation as part of non-party Ningbo Sunny's acquisition of Meade were sufficient for Section 7 of the Clayton Act, and assuming also that Ningbo Sunny's purchase of Meade constituted unlawful conduct, Plaintiffs have not described an injury flowing from Defendants' conduct that the antitrust laws were intended to prevent.[6]

The Supreme Court has recognized that even lawful mergers can produce adverse "economic readjustments," but those consequences do not make a merger unlawful. *Brunswick*

---

[6] Defendants note that in *Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co., Ltd.*, 16-cv-06370 (EJD), this Court dismissed a claim under Section 7 of the Clayton Act based on Ningbo Sunny's acquisition of Meade Corporation based on the Plaintiff's lack of standing due to its failure to plead "antitrust injury."  (Dkt. 38, Sept. 28, 2017).

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

*Corp.*, 429 U.S. at 487. Moreover, "[i]f the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se." *Rebel Oil*, 51 F.3d at 1433. "[L]oss incurred because of an unlawful acquisition that would also have been incurred had the acquisition been lawful is not antitrust injury because it does not flow from that which makes the defendant's conduct unlawful." *Lucas Auto. Engineering Co., Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233 (9th Cir. 2003).

Here, Plaintiff alleges an injury stemming from the removal of Meade as a putative competitor in the distribution market, and from Ningbo Sunny's acquisition of Meade's intellectual property. As to Plaintiffs, this conduct had, at best, a neutral effect on competition; Plaintiff must still compete with Meade, Ningbo Sunny and Defendants as distributors in the market, even assuming (which assumption is not warranted) if those entities are not competing with each other. To the extent the acquisition had any negative effect on competition by increasing the market share of one competitor, this effect would have resulted whether Ningbo Sunny or another company purchased Meade, along with its assets. In short, Plaintiffs describes only conduct that harms them as competitors, but not harm to competition itself. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007). It is respectfully submitted that this sort of harm is not protected by antitrust laws. *Id.*

### 4.6    This Court Should Decline Jurisdiction Over Plaintiffs' State Law Claims

Plaintiffs make no effort whatsoever to satisfy their pleading obligation for their California claims. Rather, for their Cartwright Act claim, Plaintiffs allege only that "the conduct alleged above violates the Cartwright Act." [Complaint ¶149.] Likewise, for their Unfair Competition claim, Plaintiffs merely allege that "Defendants' conduct is an unfair business practice and violates state law." [*Id.* ¶145.] These allegations are so bare that they fail to satisfy any standard of notice pleading. Defendants do not and cannot know what specific conduct forms the basis for these claims.

Even if Plaintiffs had stated proper California claims (they have not), this Court should decline to exercise jurisdiction over those claims. The jurisdiction of federal courts is limited, and is only properly exercised over those cases raising federal questions or involving parties with

EISNER, LLP

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT

1  diverse citizenship. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

2  "[O]nce a court has original jurisdiction over some claims in the action, it may exercise

3  supplemental jurisdiction over additional claims that are part of the same case or controversy." *Id.*

4  However, a district court may properly decline to exercise supplemental jurisdiction over state-law

5  claims if such claims "substantially predominate over the claim or claims over which the district

6  court has original jurisdiction" or if the court "has dismissed all claims over which it has original

7  jurisdiction." 28 U.S.C. § 1367(c).

8      Because Plaintiffs cannot state valid federal claims, as explained above, the Court should

9  decline supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also*

10 *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

11 **5.   CONCLUSION**

12     For the foregoing reasons, Defendants respectfully request that the Court grant their

13 Motion to Dismiss.  Because the identified defects—such as statute of limitations problems—

14 cannot be remediated, the dismissal should be without leave to amend.  *See In re Century City*

15 *Doctors Hosp.* 2010 WL 8452903 (9th Cir. BAP Apr. 26, 1988) ("In sum, because amendment of

16 Plaintiffs' complaint would have been futile, the bankruptcy court did not err when it dismissed

17 Plaintiffs' causes of action against the estate without leave to amend."); *Albrecht v. Lund*, 845 F.2d

18 193, 195-96 (9th Cir. 1988) (district court properly denied leave to amend).

19  .

20 DATED:  June 30, 2020                    EISNER, LLP

21

22                                By:  _____*/s/ Christopher Frost*_____

23                                     CHRISTOPHER FROST
                                       Attorneys for Celestron Acquisition, LLC; SW
24                                     Technology Corp.; Corey Lee; David Anderson;
                                       and Joseph Lupica
25

26

27

28

EISNER, LLP

NOTICE OF MOTION AND MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW
TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON AND JOSEPH LUPICA TO DISMISS LAWSUIT