Joseph W. Cotchett (SBN 36324)
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
James G.B. Dallal (SBN 277826)
Reid W. Gaa (SBN 330141)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com
rgaa@cpmlegal.com

*Attorneys for Plaintiffs Sigurd Murphy and Keith Uehara*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL HIGHTOWER, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CELESTRON ACQUISITION, LLC, *et al.*<br><br>Defendants.<br><br>SIGURD MURPHY and KEITH UEHARA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CELESTRON ACQUISITION, LLC, *et al.*<br><br>Defendants. | Case No. 5:20-cv-03639-EJD<br>Case No. 5:20-cv-04049-EJD<br><br>**PLAINTIFFS SIGURD MURPHY AND KEITH UEHARA'S MOTION TO INTERVENE AND FILE OPPOSITIONS TO:**<br><br>**1.   MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW TECHNOLOGY CORP., COREY LEE, DAVID ANDERSON, AND JOSEPH LUPICA TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) TO THE CENTRAL DISTRICT OF CALIFORNIA; and**<br><br>**2.   MOTION OF DEFENDANTS CELESTRON ACQUISITION, LLC, SW TECHNOLOGY CORP., COREY LEE, DAVE ANDERSON, AND JOSEPH LUPICA TO DISMISS LAWSUIT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................1

II.    SUMMARY OF FACTS ...........................................................................1

III.   ARGUMENT .............................................................................................2

    A.    The Court should permit Plaintiffs Murphy and Uehara to intervene. ...................2

        1.    Intervenor Plaintiffs may intervene as a matter of right. .............................2

        2.    Alternatively, the Court should permit Intervenor Plaintiffs to intervene under Fed. R. Civ. P. 24(b)(1)(B). ...................4

    B.    This Court should deny the Motion to Transfer the *Hightower* Action to the Central District of California. ........................6

        1.    Plaintiffs' choice of forum ........................................................................7

        2.    Convenience of parties................................................................................8

        3.    Convenience of the witnesses ....................................................................9

        4.    Ease of access to evidence .......................................................................10

        5.    Interests of justice and local interest in the controversy ...........................10

        6.    Feasibility of consolidation of other claims..............................................11

        7.    Relative court congestion.........................................................................12

    C.    The Court should deny the Motion to Dismiss. ........................................................13

        1.    The statute of limitations does not bar Plaintiff's claims. .........................13

        2.    Plaintiff has adequately stated claims against Individual Defendants. .......18

        3.    Plaintiff has sufficiently pleaded claims against SW Tech.......................19

        4.    Moving Defendants' argument that Plaintiff cannot state a claim under the Sherman Act and Clayton Act is wholly without merit. ...................20

        5.    This Court should exercise jurisdiction over Plaintiff's California law claims. ...................22

IV.   CONCLUSION.........................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguirre v. Aaron's, Inc.*,
No. 3:17-CV-00297-L-BLM, 2019 WL 1937573 (S.D. Cal. May 1, 2019) ............................ 5

*In re Animation Workers Antitrust Litig.*,
123 F. Supp. 3d 1175 (N.D. Cal. 2015) ...................................................... 15, 17

*In re Animation Workers Antitrust Litig.*,
87 F. Supp. 3d 1195 (N.D. Cal. 2015) ......................................................... 15

*Bailey v. Glover*,
88 U.S. (21 Wall.) 342 (1874) .................................................................. 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................. 13

*Beneficial Standard Life Ins. Co. v. Madariaga*,
851 F.2d 271 (9th Cir. 1988) ................................................................... 14

*Blake v. Pallan*,
554 F.2d 947 (9th Cir. 1977) ..................................................................... 5

*Cal. Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
858 F.2d 499 (9th Cir. 1988) .......................................................... 14, 15, 16, 17

*In re Cathode Ray Tube Antitrust Litig.*,
738 F. Supp. 2d 1011 (N.D. Cal. 2010) ......................................................... 23

*Clarke v. First Transit, Inc.*,
No. CV 07-06476 GAF, 2012 WL 12877865 (C.D. Cal. Nov. 2, 2012) ....................... 3, 5, 6

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690 (1962) ............................................................................. 23

*In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*,
782 F. Supp. 487 (C.D. Cal. 1991) .............................................................. 16

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984) ............................................................................. 11

*Cung Le v. Zuffa, LLC*,
108 F. Supp. 3d 768 (N.D. Cal. 2015) ............................................................ 8

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ................................................................... 6, 7

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998) ................................................................. 3

*Dwyer v. Gen. Motors Corp.*,
    853 F. Supp. 690 (S.D.N.Y. 1994) ...................................................... 8

*E.E.O.C. v. Nevada Resort Ass'n*,
    792 F.2d 882 (9th Cir. 1986) ............................................................... 5

*E.W. French & Sons, Inc. v. Gen. Portland Inc.*,
    885 F.2d 1392 (9th Cir. 1989) ............................................................ 16

*Forest Conservation Council v. U.S. Forest Serv.*,
    66 F.3d 1489 (9th Cir. 1995) ........................................................... 3, 4

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................ 13

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*,
    179 F.R.D. 264 (C.D. Cal. 1998) ........................................................ 6

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) ............................................................ 14

*In re High–Tech Employees Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) .......................................... 18

*In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*,
    No. 00-CV-7804, 2003 WL 487222 (S.D.N.Y. Mar. 12, 2004) ........... 17

*Jarvis v. Marietta Corp.*,
    1999 U.S. Dist. LEXIS 12659, 1999 WL 638231 (N.D. Cal. 1999) ..................... 7, 9

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
    305 F.R.D. 164 (N.D. Cal. 2015) ........................................................ 6

*Kingsepp v. Kmart Corp.*,
    1997 U.S. Dist. LEXIS 21680, 1997 WL 269582 (E.D.N.Y. 1997) ........... 8

*Linear Tech. Corp. v. Analog Devices, Inc.*,
    1995 U.S. Dist. LEXIS 4548, 1995 WL 225672 (N.D. Cal. 1995) ........... 7

*In re Lithium Ion Batteries Antitrust Litig.*,
    2014 U.S. Dist. LEXIS 141358 No. 13-MD-2420 YGR, 2014 U.S. Dist.
    LEXIS 141358 (N.D. Cal. Oct. 2, 2014) .......................................... 20

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516 (N.D. Cal. Jan. 21, 2014)........ 18, 19, 20

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ................................................................................ 7

*New York v. Hendrickson Bros., Inc.*,
    840 F.2d 1065 (2d Cir. 1988)............................................................................... 17

*In re Nine W. Shoes Antitrust Litig.*,
    80 F. Supp. 2d 181 (S.D.N.Y. 2000)..................................................................... 17

*In re Optical Disk Drive Antitrust Litig.*,
    3:10–MD–2143 RS, 2012 WL 1366718 (N.D.Cal. Apr. 19, 2012)........................ 21

*In re Optical Disk Drive Antitrust Litig.*,
    3:10-MD-2143 RS, 2012 U.S. Dist. LEXIS 55300 (N.D. Cal. Apr. 19, 2012) ................ 18, 21

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
    No 5:16-cv-06370-EJD (N.D. Cal. Nov. 1, 2016) ................................................ 1, 2

*Royal Queentex Enters. v. Sara Lee Corp.*,
    No. C 99-4787 MJJ, 2000 U.S. Dist. LEXIS 10139 (N.D. Cal. Mar. 1, 2000) .............. 9, 12, 13

*In re Rubber Chemicals Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) .................................................................. 14

*Silvas v. E*Trade Mortg. Corp.*,
    514 F.3d 1001 (9th Cir. 2008) .............................................................................. 13

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ................................................................................... 3

*Spectrum Scis. LLC, et al. v. Celestron Acquisition LLC, et al.*,
    No. 3:20-cv-03642 (N.D. Cal. July 10, 2020) ...............................................*passim*

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d (N.D. Cal. 2008) ......................................................................... 21

*STX, Inc. v. Trik Stik, Inc.*,
    708 F. Supp. 1551 (N.D. Cal. 1988) .............................................................. 8, 10, 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) .......................................................... 21, 23

*U.S. v. Foster*,
    985 F.2d 466 (9th Cir. 1993) ................................................................................ 20

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ................................................................................... 3

*United States v. Castro*,
    972 F.2d 1107 (9th Cir. 1992) .............................................................................. 20

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) ................................................................................. 6

*Volk v. D.A. Davidson & Co.,*
    816 F.2d 1406 (9th Cir. 1987) ............................................................... 15

**Statutes**

15 United States Code
    § 7 ................................................................................. 14, 21, 22
    § 15(a) ....................................................................................... 21
    § 15b ......................................................................................... 14
    § 16 ........................................................................................... 24

28 United States Code
    § 1332(d) ............................................................................ 5, 23. 24
    § 1367 ........................................................................................ 24
    § 1404(a) ...................................................................... 1, 6, 12, 13
    § 1453 ........................................................................................ 24
    §§ 1711-1715 ............................................................................. 24

California Business and Professions Code
    §§ 16700, *et seq.* ...................................................................... 230
    §§ 17200, *et seq.* ........................................................................ 23

**Rules**

Federal Rules of Civil Procedure
    Rule 12(b)(6) ................................................................... 1, 4, 13
    Rule 23(g) .................................................................................. 12
    Rule 24(a)(2) ................................................................................ 3
    Rule 24(b)(1)(B) ...................................................................... 2, 5
    Rule 24(b)(3) ............................................................................... 6
    Rule 42 (a) ................................................................................. 12

**Other Authorities**

U.S. District Courts—Federal Court Management Statistics–Comparison Within
    Circuit—During the 12-Month Period Ending March 31, 2020,
    https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparis
    on0331.2020.pdf .................................................................... 13

United States Constitution Article III ................................................. 24

## I.   INTRODUCTION

Proposed intervenors, Plaintiffs Sigurd Murphy and Keith Uehara (together, "Intervenor Plaintiffs"), are proposed class representatives, and Plaintiff Murphy is a member of a putative class that Plaintiff Daniel Hightower proposes to represent in the above-captioned action. Intervenor Plaintiffs filed a proposed class action against similar Defendants and allege similar misconduct as this action. Both actions are pending in the Northern District of California before this Court. *See* Related Case Order and Order Reassigning Case, No. 5:20-cv-04049 (June 30, 2020), ECF Nos. 9-10. Through this motion, Intervenor Plaintiffs seek leave to intervene in this action and oppose Defendants Celestron Acquisition, LLC, SW Technology Corp, Corey Lee, David Anderson and Joseph Lupica's (collectively, "Moving Defendants'") Motion to Transfer Venue Pursuant to 28 U.S.C § 1404(a) to the Central District of California (ECF No. 16) ("Motion to Transfer Venue" or "MTV") and the Motion to Dismiss Lawsuit Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 15) ("Motion to Dismiss" or "MTD"). Intervenor Plaintiffs respectfully requests the Court allow them to intervene and deny these Motions.[1]

## II.   SUMMARY OF FACTS

On November 1, 2016, BraunHagey & Borden LLP ("BraunHagey") filed a complaint on behalf of a California-based distributor and seller of telescopes, Optronic Technologies, Inc. d/b/a Orion Telescopes & Binoculars® ("Orion"), against a Chinese telescope manufacturer and its subsidiaries for antitrust violations. *See* Orion Compl., *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.* ("*Orion* Action"), No 5:16-cv-06370-EJD (N.D. Cal. Nov. 1, 2016) ECF No. 1. This was the first time any allegations against the Defendants were publicly aired. After three years of litigation, Orion received a $16.8 million jury verdict against Ningbo Sunny Electronic Co. Ltd. and its subsidiaries, which was trebled to $50.4 million.

On June 1, 2020, BraunHagey filed this action on behalf of Plaintiff Hightower and a proposed class of indirect purchasers and consumers against Moving Defendants and their

---

[1] Intervenor Plaintiffs incorporate by reference herein the arguments set forth in Plaintiffs Spectrum Scientifics, LLC and Radio City, Inc.'s opposition to the motion to transfer venue and the motion to dismiss filed in *Spectrum Scis. LLC, et al. v. Celestron Acquisition LLC, et al.*, No. 3:20-cv-03642 (N.D. Cal. July 10, 2020), ECF Nos. 26-27.

---

affiliates for antitrust violations. *See* Hightower Compl., *Hightower v. Celestron Acquisition, LLC et al.* ("Hightower Action"), No. 5:20-cv-03639-VKD (N.D. Cal. June 1, 2020), ECF No. 1. Later that day, BraunHagey filed a second action on behalf of Plaintiffs Spectrum Scientifics LLC, Radio City, Inc., and a proposed class of direct purchasers and distributors upstream in the distribution chain from consumers, against Moving Defendants and their affiliates for antitrust violations. *See* Spectrum Compl., *Spectrum Scis. LLC, et al. v. Celestron Acquisition, LLC, et al.* ("*Spectrum* Action"), No. 3:20-cv-03642-JCS (N.D. Cal. June 1, 2020), ECF No. 1. On June 17, 2020, Cotchett, Pitre & McCarthy, LLP filed an action on behalf of Sigurd Murphy, Keith Uehara, and a proposed class of indirect purchasers and consumers against Moving Defendants and others for antitrust violations. *See* Murphy Compl., *Murphy, et al. v. Celestron Acquisition, LLC, et al.* ("*Murphy* Action"), No. 5:20-cv-04049-LB (N.D. Cal. June 17, 2020), ECF No. 1.

On June 30, 2020, this Court related the *Spectrum* and *Murphy* Actions to the *Hightower* Action. *See*, *e.g.*, Related Case Order and Order Reassigning Case, No. 5:20-cv-04049 (June 30, 2020), ECF Nos. 9-10. Later that day, Moving Defendants filed a Motion to Transfer Venue and a Motion to Dismiss in the *Hightower* Action. As the proposed class actions will likely be consolidated and/or coordinated in the near future given at some point given that they involve common questions of law and fact, and as Plaintiffs Murphy and Uehara have an interest in the venue of the class actions and protecting their claims, they are moving to intervene and to oppose the aforementioned Motions.

## III.    ARGUMENT

### A.    The Court should permit Plaintiffs Murphy and Uehara to intervene.

The Court should allow Intervenor Plaintiffs to intervene as a matter of right pursuant to Federal Rule of Civil Procedure ("Rule") 24(a)(2) or, alternatively, permit them to intervene pursuant to Rule 24(b)(1)(B).

#### 1.    Intervenor Plaintiffs may intervene as a matter of right.

Plaintiffs Murphy and Uehara may intervene as a matter of right. Rule 24(a)(2) provides, "On timely motion, the court must permit anyone to intervene who: . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of

the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Courts apply the following four-part test when considering whether to grant a plaintiff's motion for intervention as of right:

> (1) the motion must be timely; (2) the applicant must claim a significantly protectable interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995) (internal quotes omitted) (*overruled on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1178 (9th Cir. 2011)). The Court should "interpret the requirements broadly in favor of intervention." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

Here, each of the four-part test is met, meriting intervention as of right. ***First***, this motion is timely. The Ninth Circuit has held that when evaluating the issue of timeliness, courts evaluate the "totality of the circumstances facing would be intervenors[.]" *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). "Timeliness is a flexible concept; its determination is left to the district court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citation omitted). Here, Plaintiff Hightower filed a proposed class action on June 1, 2020 (ECF No. 1), and Moving Defendants filed their Motion to Transfer and Motion to Dismiss on June 30, 2020 (ECF Nos. 15-16). Intervenor Plaintiffs file this motion on the same day that Plaintiff Hightower is opposing the aforementioned Motions. This motion and the attached oppositions therefore do not cause delay or prejudice to any party.

***Second***, as injured indirect purchasers, Intervenor Plaintiffs have a "significant protectable interest relating to the property or transaction which is the subject of" the *Hightower* Action because they indirectly purchased telescopes from Defendants or Co-Conspirators during the Class Period and are members of the proposed class in the *Hightower* Action. Intervenor Plaintiffs have a significant protectable interest based on class membership and their status as named class representatives in the *Murphy* Action, which this Court has related to the *Hightower* Action.

***Third,*** disposition of the *Hightower* Action without Intervenor Plaintiffs means that the case would proceed without named Plaintiffs in a related action with an interest in the subject matter of the litigation and who have an interest in adequate representation of class members. Moving Defendants have filed a dispositive motion, the Motion to Dismiss, in the *Hightower* Action pursuant to Rule 12(b)(6). Through Intervenor Plaintiffs' action, the class representatives intend on enforcing federal and state antitrust, consumer protection, and unjust enrichment laws against Defendants, and a dismissal of the *Hightower* Action could estop, or effectively estop, Intervenor Plaintiffs' enforcement thereof given that both the *Hightower* and *Murphy* Actions are brought on behalf of consumers, against similar Defendants, and allege similar misconduct.

***Fourth,*** and crucially, Plaintiff Hightower may not adequately represent Intervenor Plaintiffs' interests. Intervenor Plaintiffs' burden in establishing this element is "minimal," and "it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council*, 66 F.3d at 1498 (emphasis in original). BraunHagey not only represents Plaintiff Hightower, an indirect purchaser and consumer, but also represents Plaintiffs Spectrum Scientifics LLC and Radio City, Inc. as a proposed class of direct purchasers and distributors upstream from indirect purchasers in a related action, the *Spectrum* Action. BraunHagey also represents Orion, a competitor of Defendants, in the original action against Defendants, the *Orion* Action. Moreover, whatever BraunHagey and its client, Orion, may have known based on the underlying litigation cannot and should not be imputed to consumers for purposes of the statute of limitations or in considering fraudulent concealment and tolling of the statute of limitations. The *Murphy* Action would most certainly be impaired if the Court were to sustain Defendants' statute of limitations argument or even its Rule 12(b)(6) arguments.

### 2.   Alternatively, the Court should permit Intervenor Plaintiffs to intervene under Fed. R. Civ. P. 24(b)(1)(B).

If Intervenor Plaintiffs cannot intervene as a right, the Court should permit them to intervene at the court's discretion. Rule 24(b)(1)(B) provides, "On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact."

Courts apply the following three-part test when considering whether to grant a plaintiff's motion for permissive intervention:

> Permissive intervention is governed by Federal Rule of Civil Procedure 24(b), and generally requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 973 (9th Cir. 1992) (granting a motion to intervene for the limited purpose of modifying a protective order).

*Clarke v. First Transit, Inc.*, No. CV 07-06476 GAF (MANx), 2012 WL 12877865, at *10 (C.D. Cal. Nov. 2, 2012). "Although the movant bears the burden of showing that [it] meets these requirements, they are broadly interpreted in favor of intervention." *Aguirre v. Aaron's, Inc.*, No. 3:17-CV-00297-L-BLM, 2019 WL 1937573, at *1 (S.D. Cal. May 1, 2019) (citing *Smith*, 830 F.3d at 853) (permitting intervention to transfer a proposed class action from the Southern District to the Central District of California).

Here, each of the three elements is satisfied, warranting permissive intervention. ***First***, this Court has federal subject matter jurisdiction over the *Murphy* Action independent of its jurisdiction over the *Hightower* Action. *See E.E.O.C. v. Nevada Resort Ass'n*, 792 F.2d 882, 886 (9th Cir. 1986); *Blake v. Pallan*, 554 F.2d 947, 955-56 (9th Cir. 1977). The Class Action Fairness Act, or CAFA, 28 U.S.C. § 1332(d), establishes this Court's federal subject matter jurisdiction over the *Murphy* Action (Murphy Compl. ¶ 7). Not only is its jurisdiction based on diversity and CAFA, but the *Murphy* Action also seeks an injunction for violations of Section 1 of the Sherman Act, and thus, federal question jurisdiction also exists. ***Second***, this motion is timely for all the reasons set forth in Section III.A.1, *supra*. ***Finally***, there are numerous common questions of law and fact between the *Murphy* Action and *Hightower* Action (*compare* Murphy Compl. ¶ 143(b)(i)-(xviii), Hightower Compl. ¶ 124(a)-(j)), particularly because both are class actions on behalf of telescope consumers and involve similar Defendants, the same alleged conduct, and similar claims. This is precisely why this Court related the two actions. *See* Related Case Order and Order Reassigning Case, No. 5:20-cv-04049 (June 30, 2020), ECF Nos. 9-10; *see also* Civ. L.R. 3-12. As the Intervenor Plaintiffs' request to intervene satisfies the aforementioned three-part

test, the Court should permit intervention. *See Clarke*, 2012 WL 12877865, at *10 (permitting intervention where intervenors were nominally within the class definition).

"In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 172 (N.D. Cal. 2015) (relevant prejudice consideration is prejudice resulting from "timing of intervention" rather than "from the mere fact of intervention"). In fact, here, intervention will neither unnecessarily delay the proceedings nor will it increase costs or inefficiencies. To the contrary, intervention will provide real benefits to the parties by ensuring procedural fairness. Given the lack of delay and prejudice, if the Court finds that Intervenor Plaintiffs may not intervene as a matter of right, it should permit them to intervene in any event.

**B.    This Court should deny the Motion to Transfer the *Hightower* Action to the Central District of California.**

The Court should not transfer the *Hightower* Action to the Central District pursuant to Section 1404(a) of United States Code Title 28 because it would neither prevent the waste of "time energy and money" nor protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Additionally, the Moving Defendants have failed to meet their burden of showing that the balance of conveniences weighs *heavily* in favor of the transfer to overcome the strong presumption in favor of the plaintiff's choice of forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

The Intervenor Plaintiffs takes no position on whether the Hightower Action "might have been brought" in the Central District in the first instance, but a transfer would not serve the convenience of the parties or the interests of justice. *See Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D. Cal. 1998) (citing *Arley v. United Pac. Ins. Co.*, 379 F.2d 183, 185 (9th Cir. 1969)). The Ninth Circuit has set forth several considerations in weighing the Section 1404 factors. These include: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity

of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See Decker Coal*, 805 F.2d at 843; *Linear Tech. Corp. v. Analog Devices, Inc.*, 1995 U.S. Dist. LEXIS 4548, 1995 WL 225672, *1 (N.D. Cal. 1995).

### 1.    Plaintiffs' choice of forum

Plaintiffs' choice of forum weighs heavily against transfer. As the Ninth Circuit has stated, "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843. In motions to transfer venue, there is a strong presumption in favor of plaintiff's choice of forum. *See Jarvis v. Marietta Corp.*, 1999 U.S. Dist. LEXIS 12659, 1999 WL 638231 (N.D. Cal. 1999) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981)). Moving Defendants therefore bear the burden of overcoming this presumption to demonstrate that the balance of inconveniences *substantially* weighs in favor of transfer. *See Decker Coal*, 805 F.2d at 843. Here, each of the three antitrust class actions against telescope suppliers—the *Hightower* Action, the *Spectrum* Action, and the *Murphy* Action—were filed in the Northern District. There is no such action pending in the Central District. Plaintiffs' choice of the Northern District is clear.

Moving Defendants argue that Plaintiff Hightower's choice of forum should not be given weight because he is a class representative. MTV at 6-7. But *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), to which Moving Defendants cite in support, more fully provides that plaintiff's choice is "entitled to only minimal consideration" when "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." Here, Intervenor Plaintiffs can make a strong showing that many of the operative facts occurred in this District for several reasons. First, the facts alleged in the *Hightower* Action overlap with those set forth in the *Orion* Action, which was venued in this forum. Orion has been selling telescopes since 1975, when its founder launched the business from his garage in neighboring Santa Cruz, California. Orion is the last significant U.S. independent telescope brand and alleged conduct directed at this District. Second, Plaintiff Hightower is a resident of Alameda County, and thus was injured in the Northern District, making it perfectly appropriate for him to file in the Northern District.

Hightower Compl., ¶ 11. Third, relatedly, this Court has an interest in both the parties and the subject matter because it presided over the *Orion* Action and its lengthy trial. Fourth, Jason Schendel, a Sheppard Mullin attorney who worked on Sunny's acquisition of Meade and accepted instruction from both Sunny and Synta (two purportedly horizontal competitors) on structuring and negotiating said acquisition, is based in San Francisco and Silicon Valley. Murphy Compl. ¶ 130. Finally, *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 779 (N.D. Cal. 2015), to which Moving Defendants also cite in support, is inapposite because the case was filed in "a district where very few of the operative facts occurred" and "has little local interest in adjudicating Plaintiffs' claims."

### 2. Convenience of parties

The convenience of the parties likewise weighs against transfer. If the gain to convenience to one party is offset by the added inconvenience to the other, the courts have denied transfer of the action. *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988). Here, although Moving Defendants Celestron Acquisition LLC and SW Technology Corp. are headquartered in Torrance in the Central District, as noted, Plaintiff Hightower resides in the County of Alameda in the Northern District (Hightower Compl. ¶ 11). Thus, it would be at least equally inconvenient for Plaintiff Hightower to litigate this matter in the Central District. Given that the two business entity Defendants would be better able to bear the travel costs than class member individual consumers such as Plaintiff Hightower, this factor weighs against transfer. *See Kingsepp v. Kmart Corp.*, 1997 U.S. Dist. LEXIS 21680, 1997 WL 269582, at *2 (E.D.N.Y. 1997); *see also Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y 1994) (finding a court may also consider the relative means of the parties in deciding a transfer motion).

Furthermore, although two Defendants are headquartered in Torrance, the majority of Defendants named in the *Hightower* Action are based outside of California (*e.g.*, Synta Canada Int'l Enterprises Ltd., Olivon Manufacturing Co., Ltd., Dave Anderson, Laurence Huen) and presumably there is little difference to them in terms of convenience as between the Northern District and the Central District. Transfer from this District to the Central District will not serve

their convenience as they will have to travel to California regardless of where the *Hightower* Action is pending.

Finally, the convenience of the parties is hardly relevant given, as Moving Defendants recognize that "the current global pandemic and the State of California's guidance against even intrastate travel." MTV at 5. Court proceedings are largely occurring remotely, rendering the location of the parties less important than ever.

### 3. Convenience of the witnesses

The convenience of the witnesses similarly weighs against transfer. One of the most important factors in determining whether to grant a motion to transfer venue is the convenience of the witnesses. *See Jarvis*, 1999 U.S. Dist. LEXIS 12659, at *6. To demonstrate inconvenience, the moving party "should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action . . . The Court will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony." *Royal Queentex Enters. v. Sara Lee Corp.*, No. C 99-4787 MJJ, 2000 U.S. Dist. LEXIS 10139, at *18-19 (N.D. Cal. Mar. 1, 2000) (citing *Steelcase, Inc. v. Haworth*, 41 U.S.P.Q.2d 1468, 1470 (C.D.Cal.1996)). In balancing the convenience of the witnesses, primary consideration is given to third party, as opposed to employee, witnesses. *See Jarvis*, 1999 U.S. Dist. LEXIS 12659, at *5. Here, Moving Defendants generically represent that "many of the potential witnesses, including Defendant Celestron and its employees and representatives, are based in Torrance, California, and the surrounding area." MTV at 5. Moving Defendants have failed to specifically identify the witnesses—let alone the nature, quality, and relevance of their testimony. In any event, as the deposition rules generally require, those witnesses can be deposed in Southern California, with the inconvenience borne by the plaintiff lawyers, not the witnesses.

Moreover, one of the most important—if not, the most important—third party witnesses will be Defendants' competitor, Orion, which filed the initial complaint against telescope suppliers alleging antitrust violations in this District. Orion's headquarters and retail stores are all located in this District. Orion is locally headquartered at 89 Hangar Way, Watsonville, California

---

**MOTION TO INTERVENE AND OPPOSITION TO DEFENDANTS' MOTIONS TO TRANSFER VENUE AND DISMISS COMPLAINT; Case No. 5:20-cv-03639-EJD**          9

95076. It has two local retail stores: one at the aforementioned address in Watsonville and another at 10555 S. De Anza Boulevard, Cupertino, California 95014.

Finally, this Court already presided over a roughly six-week jury trial in this matter, where evidence was taken and testimony heard. And while perhaps some witnesses found the Northern District to be inconvenient, it did not stop the orderly procession of that trial all the way to judgment. The same should occur here.

### 4.     Ease of access to evidence

The ease of access to evidence is not as important a factor as it once was considering increased digitalization, particularly in this pandemic. Absent any other grounds for transfer, the fact that records are in a particular district is not itself sufficient to support a motion for transfer. *See STX, Inc.*, 708 F. Supp. at 1556. Here the location of evidence is hardly relevant given that it will consist primarily of documents and other electronic materials and the parties will likely be conducting discovery digitally for the foreseeable future. Additionally, following Defendants' logic, transfer would impede access to Plaintiff Hightower's records which will also be relevant. This factor therefore does not weigh heavily for or against transfer.

### 5.     Interests of justice and local interest in the controversy

The interests of justice and local interest in the controversy heavily weigh against transfer. This District and, specifically, this Court, has greater familiarity with the allegations set forth in the *Hightower* Action than *any other court in the United States* let alone the Central District because this Court has presided over the *Orion* Action since November 2016 and the jury trial in that case in November 2019. Indeed, this Court is still presiding over post-trial issues in the *Orion* Action. Although filed on behalf of a different group of plaintiffs, the *Hightower* Action alleges the same anticompetitive conduct and antitrust violations as the *Orion* Action. Litigating the *Hightower* Action in the same Court serves judicial economies and the interests of justice. While consumer class members reside in both Districts, the Northern District has a stronger connection to this action given Orion's presence and prosecution of its case there. Moving Defendants have not has established that this factor tips in their favor.

---

**MOTION TO INTERVENE AND OPPOSITION TO DEFENDANTS' MOTIONS TO TRANSFER VENUE AND DISMISS COMPLAINT; Case No. 5:20-cv-03639-EJD**          10

Moving Defendants argue the *Hightower* Action should be transferred because the *Orion* Action was tried in this District "to protect defendants' due process rights and fundamental fairness." MTV at 7. But that is the opposite of efficiency and the interests of justice. Surely, this Court can rule equitably on matters involving these parties, notwithstanding having presided over the *Orion* Action. The Moving Defendants provide no reason why this Court's impartiality could be questioned.

Additionally, Moving Defendants contend they "were not parties to that litigation; therefore, no findings from that litigation can be binding on or even considered as relevant in the Class Actions." *Id.* Even assuming *arguendo* that the Moving Defendants are correct regarding their analysis of *res judicata* and the collateral estoppel doctrines, these are not the questions to resolve on a motion to transfer nor do their answers provide any insight into where this case should be venued. This Court will have gained significant insight and understanding of the claims asserted in this litigation. That background will be invaluable to the Court's general case management of these actions, to resolving discovery disputes, and for purposes of understanding the legal framework under which the claims will proceed, among other issues.

Moreover, putting aside whether *res judicata* or collateral estoppel may be applied as a formal legal matter, the Moving Defendants overstate their argument. The jury in the *Orion* Action found that Ningbo Sunny and its affiliates *conspired* by reaching agreements with their horizontal competitors. A company cannot conspire with itself nor can it conspire with its own affiliates or subsidiaries. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984). The jury therefore indisputably found that the Moving Defendants engaged in the conspiracy because they were the only other conspirator group, apart from Ningbo Sunny's syndicate of companies. Further, Moving Defendants have not explained how litigating the *Hightower* Action in this District would violate their Due Process rights or any concept of fairness, specifically because a different jury would sit for a trial in the indirect purchaser action.

### 6. Feasibility of consolidation of other claims

The feasibility of consolidation of other claims likewise heavily weighs against transfer. "Transfer is favored where it will allow consolidation with another pending action and conserve

judicial resources." *Royal Queentex Enters.*, 2000 U.S. Dist. LEXIS 10139, at *22 (citing *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 483 (D. Del. 1987)). Here, this Court related the *Spectrum* and *Murphy* Actions to the *Hightower* Action and is presiding over all of them. Intervenor Plaintiffs are not aware of any other pending antitrust class actions against telescope suppliers. It would be more practical to consolidate or coordinate these three cases before this Court pursuant to Fed. R. Civ. P. 42 (a).[2] It would not be feasible to consolidate these three Actions if the Court transferred one of them. Any transfer would therefore cause delay, multiply the proceedings, and interfere with conducting the litigation in an orderly fashion. The feasibility of consolidation weighs strongly against transfer.

### 7. Relative court congestion

Finally, relative court congestion weighs against transfer, though this a minor factor in the Section 1404(a) analysis. "Docket congestion is not given much weight in a § (1404)(a) consideration." *Royal Queentex Enters.*, 2000 U.S. Dist. LEXIS 10139, at *24 (citing *IMS Health, Inc. v. Vality Tech., Inc.*, 59 F. Supp. 2d 454, 471 (E.D. Pa. 1999)). According to U.S. District Courts—Federal Court Management Statistics–Comparison Within Circuit—During the 12-Month Period Ending March 31, 2020, there were more filings in the Central District than in the Northern District (18,716 v. 10,105) and more cases pending in the Central District than in the Northern District (14,909 v. 12,545).[3] Furthermore, the median time from filing to trial in civil cases in the Central District was 22.5 months and in the Northern District was 22.0 months.[4] Thus, even in this minor respect, the Northern District would be a more convenient forum than the Central District.

---

[2] In that regard, in the very near future, counsel in the *Murphy* action plan to file a motion to consolidate the indirect purchaser actions (the *Murphy* Action and *Hightower* Action) and to coordinate them with the direct purchaser action (the *Spectrum* Action). Counsel in the *Murphy* Action also anticipate requesting that the Court appoint Cotchett, Pitre & McCarthy, LLP as class counsel for the indirect purchasers pursuant to Rule 23(g).

[3] U.S. District Courts—Federal Court Management Statistics–Comparison Within Circuit— During the 12-Month Period Ending March 31, 2020, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2020.pdf.

[4] *Id.*

---

Additionally, it would be more economical and efficient for this Court, which presided over the factually and legally similar *Orion* Action since November 2016, including its jury trial in November 2019, to preside over the *Hightower* Action and related actions instead of another district court that does not have the same experience.

### C.    The Court should deny the Motion to Dismiss.

In addition to denying the Motion to Transfer, the Court should deny the Motion to Dismiss. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008). The facts alleged need only "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings . . . ." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

Moving Defendants generally argue that (1) the statute of limitations bars Plaintiff Hightower's claims, (2) Plaintiff Hightower cannot state claims against individual defendants, (3) Plaintiff Hightower cannot state claims against SW Technology Corp. ("SW Tech"), (4) Plaintiff Hightower cannot state claims under Sections 1 and 2 of the Sherman Act as well as Section 7 of the Clayton Act, and (5) Plaintiff Hightower cannot state claims under California law or, alternatively, the Court should decline to exercise jurisdiction over those claims. These arguments are meritless. The motion at issue is a Motion to Dismiss—not a motion for summary judgment or a bench trial where the Court is invited to weight competing inferences from evidence—yet Moving Defendants seek to apply the legal standard that would only be applicable at the summary judgment stage.

### 1.    The statute of limitations does not bar Plaintiff's claims.

The Court should find that Plaintiff Hightower has adequately pleaded fraudulent concealment and thus the statute of limitations may be tolled. As Moving Defendants state, the statute of limitations for federal antitrust claims is four years (as it is for the state antitrust claims

asserted). 15 U.S.C. § 15b. "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). The purpose of the fraudulent concealment doctrine is to prevent a defendant from "concealing a fraud . . . until such a time as the party committing the fraud could plead the statute of limitations to protect it." *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349 (1874). To plead fraudulent concealment, the plaintiff must allege: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have "actual or constructive knowledge of the facts giving rise to its claim"; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim. *Hexcel*, 681 F.3d at 1060; *see also Cal. Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988); *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 276 (9th Cir. 1988).

Moreover, it has long been the law that "it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly where the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators." *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007).

The first element of "affirmative acts" is met. The Ninth Circuit and courts in this District have consistently required only that a plaintiff allege "affirmative acts" of concealment. These acts must be "affirmative steps to mislead" that are more than mere "passive[] conceal[ment]." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415-16 (9th Cir. 1987). Here, Plaintiff Hightower alleges, "Defendants had secret discussions about price, market allocation, and preventing competitors from acquiring assets, and in furtherance of the conspiracy, they agreed not to discuss publicly the nature of the scheme, and put forth pretextual explanations about their pricing" (Hightower Compl. ¶ 129). Plaintiff also pleads specific examples of such affirmative acts: Synta and Sunny attempted to conceal the existence of their transactions in connection with Sunny's acquisition of Meade (*id.* at ¶¶ 71-88) and Sunny concealed Synta's and Celestron's involvement or assistance in its acquisition of Meade from the FTC (*id.* at ¶¶ 89-93). Contrary to Moving

1   Defendants' argument, these allegations and examples satisfy the "specific facts showing the

2   'who, what, where, when' of [the] alleged incomplete or materially false statements." *In re*

3   *Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1217 (N.D. Cal. 2015).

4        The second element of "actual or constructive knowledge" is likewise met. "Where a

5   plaintiff's suspicions have been or should have been excited, there can be no fraudulent

6   concealment where he [or she] 'could have then confirmed his [or her] earlier suspicion by a

7   diligent pursuit' of further information." *Conmar*, 858 F.2d at 504 (quoting *Rutledge v. Boston*

8   *Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978)). "[C]ourts have 'been hesitant to

9   dismiss an otherwise fraudulently concealed antitrust claim for failure to sufficiently allege due

10  diligence' because questions of inquiry notice are 'necessarily bound up with the facts of the

11  case.'" *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1205 (N.D. Cal. 2015),

12  quoting *In re Magnesium Oxide Antitrust Litig.*, No. 10–5943, 2011 WL 5008090, at *24 (D.N.J.

13  Oct. 20, 2011). Here, notwithstanding the foregoing, Plaintiff Hightower alleges that he had

14  "neither actual nor constructive knowledge of the pertinent facts constituting his claims for relief

15  asserted herein, despite his diligence in trying to discover such facts" (Hightower Compl. ¶ 128).

16       Moving Defendants suggest that Plaintiff Hightower should have had notice of the alleged

17  misconduct in 2015 because "Plaintiffs' own counsel . . . knew of the same alleged conduct no

18  later than November 2015, and filed a complaint based on that same alleged misconduct in

19  November 2016." MTD at 12-13. Moving Defendants fail to show, however, that BraunHagey

20  represented Plaintiff Hightower in 2015 or any time before the *Hightower* Action complaint was

21  filed on June 1, 2020 for that matter. Moreover, even if Plaintiff Hightower was aware of Orion's

22  claims in 2015—which he was not—this awareness would not constitute knowledge of *his*

23  potential claims. *See E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1400 (9th

24  Cir. 1989) (reversing directed verdict and holding that plaintiff's knowledge of a similar lawsuit

25  against the named defendants did not necessarily constitute actual or constructive knowledge as a

26  matter of law). Moving Defendants also suggest, "If the information was sufficiently available for

27  Orion to obtain in it, there is no legitimate basis for retailers in the same space to claim that they

28  could not have obtained the same information." This contention is nonsensical because Plaintiff

---

Hightower is a consumer—not a retailer—and even if he was a retailer, he lacked notice of the alleged misconduct because he was not privy to Defendant's "secret discussions" upstream from him (Hightower Compl. ¶ 129). The concept that consumers—who are at the end of a distribution chain—are on the same level, and receive the same information, as an active, sophisticated competitor in the same industry (*i.e.*, Orion) is highly-flawed, to say the least. The question is whether indirect purchasers were on notice of a potential price-fixing conspiracy between the Synta affiliates and the Ningbo Sunny affiliates more than four years ago but nevertheless failed to file claims. Given the Defendants' active efforts to conceal their cooperation and collusion, as this Court knows well, the obvious answer is "no."

The third element of "due diligence" is similarly met. A plaintiff is not obligated to investigate his or her claims until he or she has reason to suspect the existence of such claims. *See Conmar*, 858 F.2d at 504-05; *see also In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 782 F. Supp. 487, 498 (C.D. Cal. 1991) ("Due diligence is not required in the abstract. Plaintiffs are not under a duty continually to scout around to uncover claims which they have no reason to suspect they might have."). Here, Plaintiff Hightower alleges the class "could not have discovered through the exercise of reasonable diligence the existence of the conspiracy alleged herein until September 2019, when some evidence revealing Defendants' secret conspiracy was first made public in the summary briefing in the Orion Litigation" (Hightower Compl. ¶ 128). As noted, the fact that Orion and its counsel were aware of the alleged misconduct as early as November 2015 does not prove that Plaintiff Hightower or any consumer class member should have been on inquiry notice of their claims at that time.

Additionally, Moving Defendants' suggestion that Plaintiff Hightower was on reasonable notice given the lack of new competitors in the consumer telescope industry for 10 years, the FTC's blocking of the Celestron-Meade merger in 1999 and 2002, and that Plaintiff is telescope retailer "who would have known the purchase price on products they would have been purchasing" is simply unfounded. MTD at 13. Plaintiff Hightower is a "telescope consumer and amateur astronomy enthusiast" (Hightower Compl. ¶ 2)—not a retailer or someone who could have suspected antitrust violations from such facts. *See Animation Workers*, 123 F. Supp. 3d at

1204 (finding "widely read publications" reporting a DOJ investigation of "high tech firms" insufficient to show that plaintiffs artists and engineers of said firms should have been on inquiry notice of their claims); *Conmar*, 858 F.2d at 503-04 (finding issue of whether newspaper articles and public record of the defendant's indictment triggered inquiry notice could not be resolved at summary judgment). But even assuming *arguendo* that Hightower were a *retailer* (he is not), the Moving Defendants provide no reason why the Defendants' price-fixing conspiracy would have revealed itself to retailers. Indeed, the entire point of a price-fixing conspiracy is to keep the collusion secret. And the mere prices at which a retailer indirectly purchased telescopes would not put that retailer on notice that there was collusion in the industry. Several courts have recognized that a violation of the antitrust laws through a price-fixing conspiracy is itself self-concealing in nature such that "a plaintiff is not required to show defendants took independent affirmative steps to conceal their conduct." *In re Nine W. Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000); *see also New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083-84 (2d Cir. 1988); *In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, No. 00-CV-7804, 2003 WL 487222, at *4 (S.D.N.Y. Mar. 12, 2004). Moving Defendants cannot seriously argue that the fact that there were a lack of new competitors in the industry or that the FTC blocked a proposed merger between Meade and Celestron nearly 20 years ago put consumers on inquiry notice that there must be a secret price-fixing conspiracy afoot. This borders on absurd. Finally, Moving Defendants' arguments are preposterous because they continue—to this day—to vehemently deny their participation in the alleged price-fixing conspiracy, which if true, begs the question of what consumers should have been on notice of. Given that these three elements are met, Plaintiff Hightower's allegations of fraudulent concealment are sufficient to toll the statute of limitations.

Like Plaintiff Hightower, Plaintiffs Murphy and Uehara are consumers who represent a class of those similarly situated. Cotchett, Pitre & McCarthy, LLP represents them and was not involved with the *Orion* Action. Plaintiffs Murphy and Uehara had no knowledge of the alleged misconduct until September 2019, when evidence of Defendants' conspiracy was first made public in the Orion Action, at the earliest (Murphy Compl. ¶ 151). And, as indirect purchasers, they had no direct contact or interaction with Defendants and had no means from which they could have

discovered the alleged misconduct before that date (*id.* at ¶ 152). No information in the public domain was available to Plaintiffs Murphy and Uehara concerning the alleged misconduct before then either (*id.* at ¶ 153). Additionally, they allege the statute of limitations did not begin to run until September 2019 when they discovered the conduct and, alternatively, that fraudulent concealment tolled the limitations period (*id.* at ¶¶ 151-64).

### 2.    Plaintiff has adequately stated claims against Individual Defendants.

Plaintiff Hightower has sufficiently stated claims against Individual Defendants Corey Lee (Celestron's current CEO), David Anderson (Celestron's former CEO), and Joseph Lupica (Celestron's former CEO). When analyzing allegations of conspiracy, courts must be mindful of "the principle that the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516, at *71 (N.D. Cal. Jan. 21, 2014) ("*Batteries*") (internal quotation marks omitted) (quoting *In re Cathode Ray Tube Antitrust Litig.*, 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010) ("*CRT*") and *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)); *In re Optical Disk Drive Antitrust Litig.*, 3:10-MD-2143 RS, 2012 U.S. Dist. LEXIS 55300, at *24 (N.D. Cal. Apr. 19, 2012) ("*ODD II*") (same); *In re High–Tech Employees Antitrust Litig.*, 856 F. Supp. 2d 1103, 1118 (N.D. Cal. 2012) (same). Moving Defendants fail to evaluate as a whole the "character and effect" of Plaintiff's antitrust conspiracy allegations. Instead, they attempt to "atomiz[e]" the conspiracy claims, implying that the plausibility of Plaintiff's allegations against them should be measured by the number of times their names appear in the Hightower Complaint. *See Batteries*, 2014 U.S. Dist. LEXIS 7516, at *71; *see also* fn. 37. This is inappropriate.

In addition to the allegations and illustrative examples in the *Hightower* Complaint, Plaintiff attaches 18 exhibits totaling 127 pages demonstrating that Defendants, including the Individual Defendants, each "participated in, planned, and carried out" the anticompetitive conduct described in the Complaint (Hightower Compl. ¶¶ 31-34, Exs. 1-18). Many of these exhibits were trial exhibits from the *Orion* Action. As one example, Exhibit 12 is a May 2015 email thread between Mr. Lee and Ningbo Sunny's James Chiu reflecting price coordination

efforts; specifically, Mr. Chiu provided detailed statistics for Orion's sales and prices in recent years to Mr. Lee despite Mr. Chiu testifying that he considered this information a trade secret (*Id.* at Ex. 12). As another example, Exhibit 2 is a December 2013 email thread between Mr. Anderson and Sunny's Mr. Ni, among others, in which Mr. Ni requests that Celestron and Synta continue providing financial support to Sunny to facilitate its acquisition of Meade and prevent Jinghua from doing the same (*Id.* at Ex. 12). As a final solely illustrative example, Exhibit 17 consists of an April 2014 email and memorandum from Mr. Lupica to Sunny/Meade's Messrs. Ni and Qi that shows Defendants avoided conflict with each other's products and developed strategies to protect each other from competition to collectively "dominate the telescope industry" (*Id.* at Ex. 17). In other words, it demonstrates a market allocation agreement.

Like Plaintiff Hightower, Plaintiffs Murphy and Uehara are consumers who represent a class of those similarly situated. Plaintiffs Murphy and Uehara have not named any individuals as defendants in their complaint; instead, they have named individuals as co-conspirators. To the extent this Court dismisses the Individual Defendants in the Hightower Action, the dismissal should be without prejudice and the Court should grant leave for Plaintiff to make additional allegations tying the individuals to the conspiracy.

### 3.    Plaintiff has sufficiently pleaded claims against SW Tech.

The *Hightower* Complaint, when read as a whole, sufficiently pleads claims against SW Tech. On a motion to dismiss, courts must analyze a complaint "holistically," especially those involving an alleged conspiracy. *Batteries*, 2014 U.S. Dist. LEXIS 7516, at *70 (citing *In re Optical Disk Drive Antitrust Litig.*, 3:10–MD–2143 RS, 2012 WL 1366718, at *3 (N.D.Cal. Apr. 19, 2012) ("*ODD II*")).Where an antitrust complaint names multiple members of a corporate "family," adequately pleading a conspiracy claim against a particular corporate defendant does not require "detailed 'defendant by defendant' allegations," only enough to draw a plausible conclusion that the "individual defendant joined the conspiracy and played some role in it . . . ." *In re Lithium Ion Batteries Antitrust Litig.*, 2014 U.S. Dist. LEXIS 141358, at *62 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008)). It is well-settled that "[o]nce there is proof of a conspiracy, 'evidence of only a slight connection to the

conspiracy' is sufficient to convict for participation in the conspiracy." *U.S. v. Foster*, 985 F.2d 466, 469 (9th Cir. 1993) (quoting U*.S. v. Taylor*, 802 F.2d 1108, 1116 (9th Cir. 1986), *cert. denied*, 479 U.S. 1094 (1987)). Connection to a conspiracy may be inferred from circumstantial evidence. *See United States v. Castro*, 972 F.2d 1107, 1110 (9th Cir. 1992).

Plaintiff Hightower alleges, *inter alia*, the following about SW Tech: Chairman Shen and his family members created SW Tech to acquire Celestron in 2005 and continue to operate it as a holding company; Hightower Compl. ¶ 22); Sylvia Shen is SW Tech's CEO, CFO, and Secretary (*id.* at ¶ 23); SW Tech operates for the common benefit of Synta's syndicate of companies (*id.* at ¶ 35); SW Tech has aided, encouraged, and cooperated with Defendants and co-conspirators to price-fix telescopes and allocate telescope markets (*id.*); SW Tech was designed to hide assets, obscure ownership, and divert assets and shift capital away from China on behalf of co-conspirators based in China (*id.*); and SW Tech implemented and concealed the alleged misconduct in the Complaint (*id.* at ¶ 45). These specific allegations regarding SW Tech alone sufficiently allege claims against SW Tech. Taken together with allegations regarding Defendants as a whole, they more than plausibly state antitrust claims against SW Tech.

### 4.   Moving Defendants' argument that Plaintiff cannot state a claim under the Sherman Act and Clayton Act is wholly without merit.

Plaintiff Hightower has indisputably stated claims against Defendants under both Sections 1 and 2 of the Sherman Act as well as Section 7 of the Clayton Act because his claims are based on the same facts set forth by Defendants' competitor, Orion, in the *Orion* Action. There, Orion's claims withstood motions to dismiss and summary judgment before proceeding to trial in November 2019, after which the jury reached various findings of antitrust liability under the same federal laws. *See* Verdict Form*, Orion Action* (Nov. 26, 2019), ECF No. 501; *see also* Murphy Compl. ¶¶ 72-74. The jury awarded Orion $16.8 million in damages, which was statutorily trebled under 15 U.S.C. § 15(a) to $50.4 million. *Id.* Antitrust liability based on Orion and Plaintiff's same facts has therefore unquestionably been proven by a preponderance of the evidence, let alone under a plausibility standard at the pleadings stage.

The jury verdict against the defendants in the Orion Action is as valid as a guilty plea.

1   Guilty pleas in antitrust cases establish the existence of a conspiracy. *See In re TFT-LCD (Flat*

2   *Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1185 (N.D. Cal. 2009) ("*TFT-LCD*"); *In re Static*

3   *Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d at 903 (N.D. Cal. 2008); *ODD*

4   *II*, 2012 U.S. Dist. LEXIS 55300, 2012 WL 1366718, at *2. Moving Defendants' argument that

5   Plaintiff cannot state various federal antitrust claims even though Orion proved antitrust liability

6   at trial based on the same facts is illogical.

7       Moving Defendants contend Plaintiff cannot state valid antitrust claims under both

8   Sections 1 and 2 of the Sherman Act as well Section 7 of the Clayton Act for various reasons.

9   MTD at 17-21. The jury's findings in the *Orion* Action to the contrary, however, defeat these

10  contentions. There, the jury unanimously found, *inter alia*:

11      1.     The defendants agreed with a competitor to fix the price or credit terms for

12  telescopes and accessories in violation of Section 1 of the Sherman Act;

13      2.     The defendants agreed with a third party, other than a competitor, to fix the price

14  or credit terms for telescopes and accessories in a manner that unreasonably restrained trade, such

15  that the anticompetitive effects outweighed any procompetitive effects, in violation of Section 1

16  of the Sherman Act;

17      3.     The defendants agreed with a competitor or potential competitor either (a) not to

18  compete with each other in the manufacture or sale of telescopes and accessories, or (b) to divide

19  customers or potential customers between them, in violation of Section 1 of the Sherman Act;

20      4.     The defendants agreed with a third party, other than a competitor or potential

21  competitor, either (a) not to complete with each other in the manufacture or sale of telescopes and

22  accessories, or (b) to divide customers or potential customers between them in a manner that

23  unreasonably restrained trade, such that the anticompetitive effects outweighed any

24  procompetitive effects, in violation of Section 1 of the Sherman Act;

25      5.     The defendants engaged in anticompetitive conduct in violation of Section 2 of the

26  Sherman Act;

27      6.     The defendants had a specific intent to achieve monopoly power in the telescope

28  manufacturing market in violation of Section 2 of the Sherman Act;

7.     There is or was a dangerous probability that the defendants could achieve monopoly power in violation of Section 2 of the Sherman Act;

8.     The defendants knowingly entered into an agreement with another person or entity to obtain or maintain monopoly power in the telescope manufacturing market in violation of Section 2 of the Sherman Act;

9.     The defendants specifically intended that one of the parties to the agreement would obtain or maintain monopoly power in the telescope manufacturing market in violation of Section 2 of the Sherman Act;

10.    The defendants committed an overt act in furtherance of the conspiracy in violation of Section 2 of the Sherman Act; and

11.    Ningbo Sunny and Sunny Optical's acquisition of Meade created a reasonable likelihood of substantially lessening competition or creating a monopoly in the telescope manufacturing market in violation of Section 7 of the Clayton Act.

Plaintiff can unquestionably state a claim against Moving Defendants under the Sherman Act and Clayton Act given the jury finding in the *Orion* Action that Ningbo Sunny and its affiliates conspired by reaching agreements with their horizontal competitors.

### 5.     This Court should exercise jurisdiction over Plaintiff's California law claims.

This Court should exercise jurisdiction over Plaintiff's California law claims for two reasons. First, Plaintiff has stated claims under both California's Cartwright Act (Cal. Bus. & Prof. Code §§ 16700, *et seq.*) and Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*). In complex, multinational, conspiracy cases, courts in this District review specific allegations in the context of the complaint taken as a whole. *CRT*, 738 F. Supp. 2d at 1019; *TFT–LCD*, 599 F. Supp. 2d at 1185. This approach is consistent with the Supreme Court's admonition that the "character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Cont'l Ore*, 370 U.S. at 699. Here, the allegations in the Hightower Complaint taken as a whole adequately state claims under California's Cartwright Act and Unfair Competition Law. As one example, regarding the

Cartwright Act, Plaintiff has pleaded that Celestron and its syndicate of companies agreed to fix prices with Sunny and its syndicate of companies (Hightower Compl. ¶¶ 54-56); that Plaintiff was harmed because he had fewer choices for telescopes and paid higher prices for them (*id.* at ¶¶ 109-115); and that Celestron and Sunny's conduct was a substantive factor in causing Plaintiff's harm (*id.* at ¶¶ 116-117). As another example, regarding the Unfair Competition Law, Plaintiff has pleaded that Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices (*id.* at ¶¶ 48-108) and that Plaintiff suffered injury in fact and lost money (*id.* at ¶¶ 109-117).

Moreover, like Plaintiff Hightower, Plaintiffs Murphy and Uehara are consumers who represent a class of those similarly situated. Intervenor Plaintiffs have alleged claims under both California's Cartwright Act and Unfair Competition Law in great detail (Murphy Compl. ¶¶ 205(a)-(e), 235(a)-(k). They have also incorporated by reference the allegations in the paragraphs preceding these claims. (*id.* at ¶¶ 198, 232).

Second, this Court has jurisdiction over Plaintiff's California law claims. Indeed, there are foreign Defendants in the *Hightower* Action and thus diversity. This Action cannot be brought in state court under CAFA and therefore Defendants' arguments make no sense. This Court has jurisdiction over the subject matter of the Hightower Action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 16), Section 1 of the Sherman Act (15 U.S.C. § 1), and the Class Action Fairness Act of 2005 (28 U.S.C. §§ 1332, 1453, and 1711-1715) ("CAFA"). This Court has subject matter jurisdiction of the state law claims pursuant to diversity in citizenship and amount of controversy (28 U.S.C. § 1332(d)) and supplemental jurisdiction (28 U.S.C. § 1367), in that: (1) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the Classes are citizens of a state different from the Defendants; and (2) Plaintiff's state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution. This Court should therefore exercise jurisdiction over both Plaintiff's federal and state law claims.

1

## IV.  CONCLUSION

2

For the foregoing reasons, the Court should grant Intervenor Plaintiffs' motion and deny

3

Defendants' Motion to Transfer and Motion to Dismiss.

4

5

DATED: July 14, 2020                                    Respectfully submitted,

6
                                                        */s/ Elizabeth T. Castillo*
                                                        Joseph W. Cotchett
7
                                                        Adam J. Zapala (SBN 245748)
                                                        Elizabeth T. Castillo (SBN 280502)
8
                                                        James G.B. Dallal (SBN 277826)
                                                        Reid W. Gaa (SBN 330141)
9
                                                        **COTCHETT, PITRE & McCARTHY, LLP**
                                                        840 Malcolm Road
10
                                                        Burlingame, CA 94010
                                                        Telephone: (650) 697-6000
11
                                                        Facsimile: (650) 697-0577
                                                        jcotchett@cpmlegal.com
12
                                                        azapala@cpmlegal.com
                                                        ecastillo@cpmlegal.com
13
                                                        jdallal@cpmlegal.com
                                                        rgaa@cpmlegal.com
14

15
                                                        *Attorneys for Plaintiffs Sigurd Murphy and Keith*
                                                        *Uehara*
16

17

18

19

20

21

22

23

24

25

26

27

28

---

**MOTION TO INTERVENE AND OPPOSITION TO DEFENDANTS' MOTIONS TO
TRANSFER VENUE AND DISMISS COMPLAINT; Case No. 5:20-cv-03639-EJD**                24