1    **[Counsel Listed on Signature Page]**

2

3

4

5

6

7

8

9

10                        **UNITED STATES DISTRICT COURT**

11                    **NORTHERN DISTRICT OF CALIFORNIA**

12                          **SAN JOSE DIVISION**

13

14    **IN RE TELESCOPES ANTITRUST**          Civil Action No. 5:20-cv-03639-EJD
      **LITIGATION**

15                                            **JOINT CASE MANAGEMENT**
16                                            **STATEMENT**

17    **This Document Relates to:**           Date: September 3, 2020
                                              Time: 10:00 am
18    **ALL DIRECT PURCHASER ACTIONS**        Location: Courtroom 4
      **ALL INDIRECT PURCHASER ACTIONS**      Judge: Edward J. Davila
19

20

21

22

23

24

25

26

27

28

1    Direct Purchaser Plaintiffs Spectrum Scientifics, LLC and Radio City, Inc. ("Direct
2    Purchaser Plaintiffs"), Indirect Purchaser Plaintiffs ("Indirect Purchaser Plaintiffs" or "IPPs")
3    (together, "Plaintiffs") and Defendants Celestron Acquisition, LLC ("Celestron"), SW Technology
4    Corp. ("SW"), Corey Lee, David Anderson, and Joseph Lupica (together, "Defendants")
5    (collectively, "Parties") submit this Joint Case Management Statement pursuant to the Standing
6    Order for All Judges of the Northern District of California and Civil Local Rule 16-9 in advance of
7    the scheduled Case Management Conference set for September 3, 2020 at 10:00 a.m.
8        The Parties have deferred finalizing some of the items called for by the Standing Order until
9    the Court appoints Interim Lead or Co-Lead Class Counsel. Defendants also believe some issues
10   cannot and should not be determined until all parties have been served.

11   ## 1.    <u>JURISDICTION AND SERVICE</u>

12       This Court has federal question subject matter jurisdiction over these actions pursuant to
13   Sections 4, 7, and 16 of the Clayton Act (15 U.S.C. §§ 15, 18, 26), Sections 1 and 2 of the Sherman
14   Act (15 U.S.C. §§ 1 & 2), and 28 U.S.C. §§ 1331 and 1337. This Court has diversity subject matter
15   jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367 because: (1) these
16   cases are class actions in which the matter or controversy exceeds the sum of $5,000,000, exclusive
17   of interest and costs, and in which some members of the proposed Classes are citizens of a state
18   different from the Defendants; and (2) Plaintiffs' state law claims form part of the same case or
19   controversy as their federal claims.
20       Plaintiffs assert that venue is proper in this District pursuant to Section 12 of the Clayton
21   Act (15 U.S.C. § 22) and 28 U.S.C. §§ 1391 (b), (c), and (d), because Defendants can be found in
22   and transact substantial business in this District, and a substantial part of the events or occurrences
23   giving rise to the claims occurred in this District. Defendants have moved to transfer venue, for the
24   reasons articulated in that motion. (ECF No. 16.) This Court has taken the motion to transfer venue
25   under submission.
26       Celestron, SW, Corey Lee, David Anderson, and Joseph Lupica have agreed to waive
27
28

service in the Direct Purchaser Action.[1] The remaining unserved defendants in the Direct Purchaser Action have been provided Federal Rule of Civil Procedure ("Rule") 4 waivers, but have not timely responded.[2]  Direct Purchaser Plaintiffs anticipate moving the Court to permit alternative service pursuant to Rule 4 in light of the expense and delay of serving the unserved international defendants via the Hague Convention. Defendants do not believe the proper showing has been or at this point can be made to justify alternative methods of service.

Celestron, SW, Corey Lee, Dave Anderson, and Joseph Lupica have each agreed to waive service in the IPP Actions[3] that the Court has consolidated pursuant to Rule 42(a). (Corey Lee, Dave Anderson, and Joseph Lupica were only named in one of the IPP Actions, *Hightower v. Celestron*. Lead class counsel will have to determine whether to maintain claims against these individual defendants in the consolidated complaint.) These defendants are represented by the same counsel. IPPs anticipate serving Olivon USA, LLC before the Initial Case Management Conference.

IPPs have not served the Taiwan-based defendant, Synta Technology Corp. of Taiwan; the China-based defendants, Nantong Schmidt Opto-Electrical Technology Co. Ltd., Ningbo Sunny Electronic Co. Ltd, and Suzhou Synta Optical Technology Co., Ltd.; or the Canada-based

---

[1] The "Direct Purchaser Action" refers to *Spectrum Scientifics, LLC v. Celestron Acquisition, LLC*, No. 5:20-cv-03642-EJD (N.D. Cal.).

[2] Some of the unserved international defendants rejected the parcels containing the Rule 4 waivers, even though they were sent to addresses from which those defendants filed papers in the action styled *Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd. et al.*, No. 5:16-cv-06370-EJD-VKD (N.D. Cal.) (the "*Orion Litigation*"). This is another reason why Direct Purchaser Plaintiffs anticipate the necessity of a Rule 4 motion establishing alternative methods of service.

[3] "IPP Actions" collectively refer to:
1. *Hightower v. Celestron Acquisition, LLC et al.*, No. 5:20-cv-03639-EJD (N.D. Cal.) ("*Hightower* Action");
2. *Murphy, et al. v. Celestron Acquisition, LLC, et al.*, No. 5:20-cv-04049-EJD (N.D. Cal. June 17, 2020);
3. *Brewer, et al. v. Celestron Acquisition, LLC, et al.*, No. 5:20-cv-04823-EJD (N.D. Cal. July 17, 2020);
4. *Goldblatt v. Shen, et al.*, No. 5:20-cv-04860-EJD (N.D. Cal. July 20, 2020);
5. *Kaufman v. Celestron Acquisition, LLC, et al.*, No. 5:20-cv-05285-EJD (N.D. Cal. July 31, 2020); and
6. *Griffith, et al. v. Shen, et al.*, No. 5:20-cv-05400-EJD (N.D. Cal. Aug. 4, 2020).

Defendants, Olivon Manufacturing Co. Ltd., Pacific Telescope Corp., and Synta Canada International Enterprises Ltd. The Chinese, Taiwanese, and Canadian defendants will be served via other means, including through the Hague Convention, through a Rule 4 motion, through a process server, and/or through letters rogatory. IPPs also will need to translate the operative complaint. This process is time consuming and expensive. To reduce cost and burden on the parties, IPPs propose to serve the forthcoming consolidated complaint, rather than each individual complaint, on these foreign defendants. Per the Court's August 17, 2020 order, IPPs will file a consolidated complaint at the earlier of either (a) 30 days after the Court's entry of an order appointing Interim Lead or Co-Lead Counsel, or (b) October 29, 2020 if the Court has not appointed Interim Lead or Co-Lead Counsel by that date (*see* ECF No. 55 ¶ 10), or (c) such other time as the Court requires.

    **2.**     <u>**FACTS**</u>

        **a.**     **Plaintiffs' Statement**

These Actions arise from the anticompetitive conduct of two corporate families, Synta and Sunny,[4] in the telescope market and assert claims on behalf of direct and indirect purchasers of telescopes. The United States market for telescopes amounts to $350 million annually. The telescope market has been consolidating for a number of years, with manufacturers seeking to consolidate operations to stabilize fluctuations in revenue and achieve economies of scale.

Although Sunny and Synta are each capable of manufacturing all types of consumer telescopes, they have an illegal agreement under which Synta manufactures higher-end products while Sunny manufactures lower-end products. Pursuant to that unlawful agreement, Synta will not manufacture or respond to a request for quotation for products offered by Sunny and *vice versa*. Because of their agreement, Sunny and Synta charge supra-competitive prices, restrict supply, and

---

[4] Defendants are members of the Sunny and Synta corporate families. The Sunny Defendant is Ningbo Sunny Electronic Co. Ltd. ("Ningbo Sunny"). The Synta Defendants are Synta Technology Corporation of Taiwan, SW Technology Corp., Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Celestron Acquisition, LLC, Synta Canada International Enterprises Ltd., Olivon Manufacturing Co. Ltd., Olivon USA, LLC, Pacific Telescope Corp., and Sky-Watcher Canada. Individual defendants sued in some of these actions include Dar Tson "David" Shen, Corey Lee, Sylvia Shen, Jean Shen, Joseph Lupica, Dave Anderson, Laurence Huen, and DOES 1-50.

engage in other anticompetitive conduct that artificially increases the prices of the telescopes purchased by Plaintiffs and members of the proposed classes. Synta's distributors, including Celestron, and Sunny's distributors, including Meade Instruments Corp. ("Meade"), account for the vast majority of telescope sales in the United States during the Class Period.

In 2013, Jinghua Optical Co. Ltd. ("JOC") submitted a bid to acquire Meade. Synta and Sunny, not wanting JOC to become a substantial competitor, colluded to enable Sunny to acquire the company. Synta/Celestron made substantial payments and loans to Ningbo Sunny to facilitate the acquisition. In exchange for this support, Sunny concealed Synta's and Celestron's involvement or assistance in its acquisition of Meade from federal antitrust regulators; offered Celestron equity in Meade; and provided Celestron and Synta with access to Meade's intellectual property rights, thereby ensuring that Celestron no longer needed to compete with Meade. Sunny also shared its customers' data—including pricing data—with Celestron and Synta, enabling them to coordinate their prices and strategies. This cooperation reinforced Synta and Sunny's respective monopoly in the United States for their products. Synta and Sunny's combination and conspiracy eliminated a competitor (Meade), increased market concentration, and substantially lessened competition in the consumer telescope market.

In 2014, a California-based distributor and seller of telescopes, binoculars, and accessories, Optronic Technologies Inc. d/b/a Orion Telescopes & Binoculars ("Orion") sought to acquire certain assets, including web domains like telescopes.com, from online retailer Hayneedle (the "Hayneedle Assets"). Defendants and their co-conspirators colluded to prevent Orion from doing so, cutting off Orion's credit when they learned of Orion's intent to acquire these assets. With its supplier credit cut, Orion could not move forward with the asset acquisition. Sunny and Synta therefore sabotaged Orion's purchase of the Hayneedle Assets that would have enabled it to compete with them.

That Defendants' anticompetitive conduct amounts to violations of the Clayton and Sherman Acts is not in doubt. In November 2016, Orion filed a lawsuit in this District against Ningbo Sunny, Meade, and Sunny Optics, Inc., alleging that they conspired with their primary competitor, certain Synta Defendants, to divide the market, fix prices, and eliminate competition in

the telescope market. *See Orion Litigation*. On November 26, 2019, following a six-week jury trial before Your Honor and two days of deliberation, the jury found that the defendants had violated the Sherman Act and the Clayton Act by engaging in a conspiracy to fix the price for, and allocate the market of, telescopes and accessories and to monopolize the domestic consumer telescope market, and delivered a $16.8 million verdict to Orion. Your Honor trebled the amount of damages, resulting in a $50.4 million partial final judgment.

### b.    Defendants' Statement

Plaintiffs act as if, and continue to pay lip service to the idea that, this case has already been tried and determined. That is directly contrary to prevailing law. Pursuant to *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), Defendants cannot be collaterally estopped from litigating issues, even if they overlap with the *Orion Litigation*, because Defendants were not parties to that litigation, and therefore have not had a full and fair opportunity to defend themselves. Nor are the issues identical. *See Syverson v. IBM Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007). On the merits, the record will show that no anticompetitive activity occurred, there is no market concentration as Plaintiffs suggest, and Plaintiffs' other allegations are entirely fabricated. Rather, this entire series of lawsuits was triggered by Orion attempting to extort a further settlement out of Defendants after the *Orion Litigation*, even though the parties had resolved their issues with a pre-litigation settlement involving mutual general releases. Orion even threatened to file these lawsuits through their same counsel unless Defendants reached a further settlement, as documented in the exhibits to the pending motion to dismiss the *Spectrum* and *Hightower* actions. True to its word, BraunHagey & Borden filed the first two putative class actions, setting off a wave of follow-on IPP class actions, wherein the different Plaintiff law firms are now vying for lead class counsel position.

Plaintiffs are correct that there is some overlap between this and the claims in the *Orion Litigation*, which only evidences why the claims are barred by the applicable statutes of limitations. None of the Plaintiffs alleges any misconduct within the past four years. And although Plaintiffs claim that information was fraudulently concealed from them, that argument flies in the face of the fact that the information concerning the alleged misconduct was actually known (and included in a draft complaint) five years ago.

1  Even assuming Plaintiffs can survive motions to dismiss, Defendants do not believe that a
2  class should be certified. Among other reasons, individual issues will prevail over class issues,
3  including who paid what for each product on the consumer side, what alternative products were
4  available to each at the time, whether they believed they were paying a reasonable price at the time
5  and, for the retailers, what were the other business reasons for their alleged losses. Just by way of
6  example on the latter point, one putative class representative in the Direct Purchaser Action claims
7  the alleged antitrust activity drove him out of business, but his website shows that he voluntarily
8  closed the business because he chose to retire.

9  Defendants will raise further issues when, or if, they file an answer outlining their
10  affirmative defenses.

11  **3.    <u>LEGAL ISSUES</u>**

12  The following issues of law are likely to require adjudication:

13  **Plaintiffs' Statement:**

14  a.  The timing and scope of Defendants' agreements or understandings to fix, raise or
15      stabilize the prices of consumer telescopes purchased indirectly by Plaintiff in violation
16      of Section 1 of the Sherman Act, or state antitrust, consumer protection and unjust
17      enrichment laws.

18  b.  Whether Defendants have monopolized or attempted to monopolize the consumer
19      telescope market in violation of Section 2 of the Sherman Act.

20  c.  Whether Sunny's acquisition of Meade substantially lessens competition in violation of
21      Section 7 of the Sherman Act.

22  d.  Whether relitigation of any issues of substantive liability are foreclosed by the doctrines
23      of claim preclusion or issue preclusion in light of this Court's judgment in the *Orion*
24      *Litigation*.

25  e.  Whether the requirements of Rule 23(a) have been met, and whether there are common
26      factual and legal issues that predominate over individualized issues sufficient to certify
27      classes of direct and indirect purchasers under Rule 23(b)(2) and (b)(3) and, if so, the
28      definitions of the direct and indirect purchaser classes.

f.  Whether a nationwide indirect purchaser damages class can be certified under California law.

g.  Whether a permanent injunction should issue to the extent Defendants' alleged conduct has not concluded.

h.  Whether Plaintiffs and other members of the respective classes have suffered damages, and if so, the appropriate class-wide measure of damages.

i.  Whether Defendants state or can prove cognizable affirmative defenses.

**Defendants' Statement:**

In addition to the issues identified above, Defendants believe the following issues will need to be resolved.  Defendants reserve all defenses, and reserve the right to seek the determination of additional issues, including as to all defenses Defendants will raise in any answer Defendants file.

a.  Whether Plaintiffs' claims are barred by the applicable statutes of limitations.

b.  Whether Plaintiffs can demonstrate fraudulent concealment to overcome the applicable statutes of limitations, given that any information of allegedly wrongful conduct was not only discoverable, but actually known to at least one retailer, Orion, and its counsel, who is now counsel in the *Hightower* action.

c.  Whether Plaintiffs can bind, or even admit evidence of, the judgment in the *Orion Litigation* in light of the binding *Parklane Hosiery* line of cases, given that none of Defendants were parties to that litigation.

d.  Whether individual issues predominate over class issues, whether Plaintiffs' alleged claims are sufficiently typical, common, and whether a class is even ascertainable.

e.  Whether injunctive or other relief would be appropriate on a class-wide basis.

f.  The size, scope, and duration of the purported class and period covered by the putative classes.

g.  Whether Plaintiffs have been injured by having paid a willing price for a willing purchase given the nature and extent of other available alternative and competing products in the market.

j.  The legal impact of Defendants' affirmative defenses.

4.   **MOTIONS**

*Pending Motions*

On August 17, 2020, the Direct Purchaser Plaintiffs moved the Court to coordinate the Direct Purchaser Action with the IPP Actions, and to appoint BraunHagey & Borden LLP as interim lead counsel for the proposed direct purchaser class, which is scheduled to be heard on October 15, 2020. (No. 5:20-cv-03642-EJD, ECF No. 41.) The portion of that motion seeking coordination was mooted later that day by the Court's Order consolidating the IPP Actions and coordinating those actions with the Direct Purchaser Action. (ECF No. 55.) On July 31, 2020, Defendants moved to dismiss the First Amended Complaint in the Direct Purchaser Action. (No. 5:20-cv-03642-EJD, ECF No. 35.) On August 14, 2020, the Court entered a stipulation and order extending the Direct Purchaser Plaintiffs' deadline to respond until September 17, 2020, and defendants' reply deadline to October 1, 2020 (No. 5:20-cv-03642-EJD, ECF No. 39.) A hearing on the motion to dismiss is scheduled for October 22, 2020. Defendants do not believe that any activity in the IPP Actions should impact the hearing on this motion to dismiss.

In the IPP Actions, there are competing motions for appointment to represent the indirect purchaser class pending before the Court. On July 21, 2020, IPPs in the *Murphy* Action filed a Motion to Appoint Cotchett, Pitre & McCarthy, LLP Interim Lead Counsel for Indirect Purchaser Plaintiffs. (ECF No. 30.) On July 31, 2020, IPPs in the *Murphy*, *Brewer*, and *Goldblatt* Actions filed an Amended Motion to Appoint Cotchett, Pitre & McCarthy, LLP, Susman Godfrey LLP, and Lieff Cabraser Heimann & Bernstein, LLP Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs (ECF No. 38). On August 12, 2020, the IPP in the *Kaufman* Action filed a Motion to Appoint Robins Kaplan LLP As Interim Lead or Co-Lead Counsel for Indirect Purchaser Plaintiffs (ECF No. 51). Although these motions are scheduled to be heard on October 15, 2020 at 9:00 a.m., if it is convenient for the Court, counsel seeking appointment as Interim Lead or Co-Lead Counsel will be present and prepared to argue those motions concurrent with the Initial Case Management Conference on September 3, 2020.

Several other motions are also before the Court. On June 30, 2020, in the *Hightower* Action, Defendants filed a Motion to Transfer Case Pursuant to 28 U.S.C. § 1404(a) to the Central District

of California ("Motion to Transfer Venue") (ECF No. 16) and a Motion to Dismiss Lawsuit Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 15). IPPs in the *Murphy* Action filed a Motion to Intervene and File Oppositions to the Motion to Transfer Venue and Motion to Dismiss (ECF No. 22). Defendants filed a limited opposition to the Motion to Intervene (ECF No. 33). The Court has taken the motions under submission without oral argument (ECF No. 50).

On July 21, 2020, IPPs in the *Murphy* Action filed a Motion to Consolidate Actions Pursuant to Federal Rule of Civil Procedure 42(a) and Motion to Coordinate the related actions alleging anticompetitive conduct in the telescopes industry. Defendants did not oppose this motion (ECF No. 40). On August 14, 2020, the Parties stipulated to consolidate the IPP Actions (ECF No. 54). The Court granted the Motion to Consolidate and entered the stipulation relating to consolidation on August 17, 2020 (ECF Nos. 55, 56).

On August 4, 2020, in the *Hightower* Action, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 39). On August 14, 2020, the Court entered a stipulation and order extending the *Hightower* Plaintiff's deadline to respond until September 17, 2020, and defendants' reply deadline to October 1, 2020 (ECF No. 53). A hearing on the Motion to Dismiss is scheduled for October 22, 2020.

### *Anticipated Motions*

Defendants will evaluate whether to file one or more motions challenging Plaintiffs' forthcoming consolidated complaint once it is filed. Plaintiffs reserve the right to file one or more Rule 12 motions regarding allegations and defenses in Defendants' answers. It also may become necessary for Plaintiffs to file a motion for approval of a plan for alternative service of process on the foreign defendants, pursuant to Rule 4(e), (h), and (f)(3), due to the slow nature of Hague Convention service on foreign entities. Defendants do not believe alternative service is appropriate, but will address that issue at the appropriate time.

The Direct Purchaser Plaintiffs intend to file a motion to certify the proposed direct purchaser class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

IPPs also intend to file a motion to certify the proposed class or classes pursuant to Rule 23(a) and (b)(3). Per the Court's order, Defendants will respond to the consolidated complaint

within 30 days of its filing (ECF No. 56 at ¶ 4). Plaintiffs will meet and confer with the foreign defendants over their time to respond to the consolidated complaint once they have been served. The Parties anticipate that they may also file summary judgment motions, motions in limine, and *Daubert* motions later in the litigation.

**5.    AMENDMENT OF PLEADINGS**

Per the Parties' stipulation, IPPs will file a consolidated complaint at the earlier of either (a) 30 days of the Court's entry of an order appointing Interim Lead or Co-Lead Counsel, (b) October 29, 2020 if the Court has not appointed Interim Lead or Co-Lead Counsel by that date (*see* ECF No. 56 at ¶ 3), or (c) at such other time as the Court requires.

**6.    EVIDENCE PRESERVATION**

The Parties confirm that they have reviewed the ESI Guidelines.

The Direct Purchaser Plaintiffs have engaged in a Rule 26(f) conference with Defendants. Direct Purchaser Plaintiffs anticipate further meeting and conferring with Defendants regarding an initial exchange of information to facilitate the identification of custodians and document sources containing relevant evidence (including organization charts and disclosure of non-custodial repositories), to be followed by a meet and confer regarding search terms. Defendants and the Direct Purchaser Plaintiffs have refrained from exchanging formal initial disclosures pending the Court's guidance as to its preferences for coordinated discovery management at the Joint Case Management Conference.

IPPs ask the Court to order the Parties to meet and confer regarding evidence preservation at a Rule 26(f) conference within 21 days after the filing of the consolidated complaint. Plaintiffs further ask the Court to order the Parties to submit a proposed joint schedule or competing schedules to the Court within 14 days of the meet-and-confer.

The Parties and their counsel understand the general duty to preserve evidence that may be relevant to this litigation, including electronically stored information. Each party will take reasonable steps to preserve the evidence that may be relevant to this litigation.

**7.    DISCLOSURES**

The Parties have not yet exchanged initial disclosures. They will discuss the form and

1  timing of their initial disclosures in connection with the Rule 26(f) conference.

2  **8.  DISCOVERY**

3  The Direct Purchaser Plaintiffs have served a set of requests for production on Defendants.

4  Defendants and IPPs will discuss the timing and scope of discovery during the Rule 26(f)

5  conference. To date, no discovery has been taken in the IPP Actions.

6  Plaintiffs intend to subpoena documents produced in the *Orion Litigation*.

7  **9.  CLASS ACTIONS**

8  Plaintiffs brought their claims as class actions. They anticipate filing a motion for class

9  certification. Defendants expect to oppose any motion for class certification. All attorneys of record

10  for the parties have reviewed the Procedural Guidance for Class Action Settlements.

11  **10.  RELATED CASES**

12  The IPP Actions referenced in footnote 1, *supra*, have been consolidated into the *Hightower*

13  Action and coordinated with the Direct Purchaser Action. The *Hightower* Action has been

14  designated the master docket for both the Direct Purchaser Action and the IPP Actions. The Direct

15  Purchaser Action brings antitrust class claims on behalf of direct purchasers of telescopes. The IPP

16  Actions bring antitrust class claims on behalf of indirect purchasers of telescopes and have been

17  consolidated pursuant to Rule 42(a) (ECF No. 55). The Court has ordered that any other related

18  actions filed in the future be consolidated with the actions already consolidated and/or coordinated,

19  absent objection  (ECF No. 55 at ¶ 4).

20  **11.  RELIEF**

21  Plaintiffs seek money damages, including treble damages, and equitable and injunctive

22  relief against alleged continued illegal practices. Defendants deny that Plaintiffs are entitled to

23  relief.

24  **12.  SETTLEMENT AND ADR**

25  Direct Purchaser Plaintiffs have met and conferred with Defendants regarding alternative

26  dispute resolution. An ADR certification has been filed on behalf of Direct Purchaser Plaintiff

27  Spectrum Scientifics, LLC.

28  IPPs in the *Kaufman*, *Griffith*, and *Goldblatt* actions have filed ADR certifications.  Once

1    the Court appoints Interim Lead or Co-Lead Class Counsel, the remaining Parties will submit the

2    ADR compliance materials pursuant to ADR L.R. 3-5.

3           **13.**     **CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

4          The Parties do not consent to have a magistrate judge conduct all further proceedings

5    including trial.

6           **14.**     **OTHER REFERENCES**

7          It is premature to say whether reference to a magistrate judge for discovery or other

8    references might be useful.

9           **15.**     **NARROWING OF ISSUES**

10          The Parties are committed to considering methods to narrow issues in this case, but at this

11    point it is premature to say how that will be accomplished.

12           **16.**     **EXPEDITED SCHEDULE**

13          The Parties do not believe that this case can be handled under the Expedited Trial Procedure

14    of General Order No. 64 Attachment A.

15           **17.**     **SCHEDULING**

16          The Direct Purchaser Plaintiffs are ready for discovery to commence.

17          The parties to the IPP Actions plan to present to the Court a proposed joint schedule (or

18    competing schedules) within 35 days after filing the consolidated complaint.

19          Plaintiffs oppose Defendants' proposal to bifurcate class and merits discovery as inefficient

20    and inappropriate, as discovery pertaining to class and merits issues routinely overlaps in antitrust

21    litigation and can be expected to do so here.

22          Defendants do not believe merits discovery is appropriate until after class certification

23    motions are heard and determined, and believe that the DPP discovery should proceed on a

24    coordinated schedule with IPP discovery. Given that the DPP and IPP putative class actions have

25    been coordinated, there is no reason to rush discovery in the DPP action. Defendants also believe

26    that any discovery is premature given the number of parties who have not yet been served, and

27    given that the operative complaint in the IPP Actions has not been filed, or served. Defendants will

28    consider IPP Plaintiffs' proposed joint schedule once received.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**18.    TRIAL**

Plaintiffs have requested a jury trial for the claims that can be tried by a jury. It is premature to determine the expected length of trial.  Defendants agree it is premature to determine trial length.

**19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PARTIES**

There are no other persons, firms, partnerships, corporations (including parent corporations), or other entities known by Plaintiffs to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

There are no other persons, firms, partnerships, corporations (including parent corporations), or other entities known by Defendants to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**20.    PROFESSIONAL CONDUCT**

All counsel of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: August 24, 2020              Respectfully submitted,


/s/ *Ronald J. Fisher*
J. Noah Hagey
Matthew Borden
Ronald J. Fisher
Gunnar Martz
Athul K. Acharya
**BRAUNHAGEY & BORDEN LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel: (415) 599-0210
Fax: (415) 276-1808
hagey@braunhagey.com
borden@braunhagey.com
fisher@braunhagey.com
martz@braunhagey.com
acharya@braunhagey.com

1    *Attorneys for Direct Purchaser Plaintiffs Spectrum*
     *Scientifics, LLC and Radio City, Inc., and Indirect*
2    *Purchaser Plaintiff Daniel Hightower*

3    */s/ Adam J. Zapala*
4    Adam J. Zapala
     Elizabeth T. Castillo
5    Tamarah P. Prevost
     Reid W. Gaa
6    **COTCHETT PITRE & McCARTHY, LLP**
7    840 Malcolm Road, Suite 200
     Burlingame, CA 94010
8    Tel: (650) 697-6000
     Fax: (650) 697-0577
9    azapala@cpmlegal.com
     ecastillo@cpmlegal.com
10   tprevost@cpmlegal.com
     rgaa@cpmlegal.com
11

12   *Attorneys for Plaintiffs Sigurd Murphy and Keith Uehara*

13   */s/ Kalpana Srinivasan*
14   Kalpana Srinivasan (Bar No. 237460)
     Marc M. Seltzer (Bar No. 54534)
15   Steven Sklaver (Bar No.237612)
     Michael Gervais (Bar No. 330731)
16   **SUSMAN GODFREY L.L.P.**
     1900 Avenue of the Stars, Ste. 1400
17   Los Angeles, CA 90067
     Phone: 310-789-3100
18   ksrinivasan@susmangodfrey.com
     mseltzer@susmangodfrey.com
19   ssklaver@susmangodfrey.com
     mgervais@susmangodfrey.com
20

21   *Attorneys for Plaintiffs Sara Day Brewer and Thien Ngo*

22   */s/ Lin Y. Chan*
23   Lin Y. Chan (SBN 255027)
     lchan@lchb.com
24   Eric B. Fastiff (SBN 182260)
     efastiff@lchb.com
25   Jallé H. Dafa (SBN 290637)
     jdafa@lchb.com
26   **LIEFF CABRASER HEIMANN &**
     **BERNSTEIN LLP**
27   275 Battery Street, 29th Floor
28   San Francisco, California 94111

1   Telephone: (415) 956-1000
    Facsimile: (415) 956-1008
2
3   *Attorneys for Plaintiffs Norman Goldblatt, Austin Griffith,
    and Timothy McQuaid*
4
5   /s/ *Aaron M. Sheanin*
    Aaron M. Sheanin (SBN 214472)
6   asheanin@robinskaplan.com
    **ROBINS KAPLAN LLP**
7   2440 West El Camino Real, Suite 100
    Mountain View, CA 94040
8   Telephone: (650) 784-4040
    Facsimile: (650) 784-4041
9
10  Hollis Salzman
    Kellie Lerner
11  Adam C. Mendel
    **ROBINS KAPLAN LLP**
12  399 Park Avenue, Suite 3600
    New York, NY 10022
13  Telephone: (212) 980-7400
    Facsimile: (212) 980-7499
14  *HSalzman@RobinsKaplan.com*
    *KLerner@RobinsKaplan.com*
15  *AMendel@RobinsKaplan.com*
16
    *Attorneys for Plaintiff James Kaufman*
17
18  /s/ *Christopher Frost*
    Christopher Frost (SBN 200336)
19  cfrost@eisnerlaw.com
    Amber Henry (SBN 247624)
20  ahenry@eisnerlaw.com
    Ashlee N. Lin (SBN 275267)
21  alin@eisnerlaw.com
    Rosie Cole (SBN 322185)
22  rcole@eisnerlaw.com
23  **EISNER, LLP**
    9601 Wilshire Blvd., 7th Floor
24  Beverly Hills, California 90210
    Telephone: (310) 855-3200
25  Facsimile: (310) 855-3201
26
    *Attorneys for Defendants Celestron Acquisition, LLC, SW*
27  *Technology Corp., Corey Lee, David Anderson, and Joseph*
    *Lupica*
28

1

2                              **<u>ATTORNEY ATTESTATION</u>**

3        I, Aaron M. Sheanin, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern

4    District of California, that the concurrence to the filing of this document has been obtained from each

5    signatory hereto.

6                                          */s/ Aaron M. Sheanin*
                                          Aaron M. Sheanin

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28