1  **[Counsel Listed on Signature Page]**

2

3

4

5

6

7

8

9  **UNITED STATES DISTRICT COURT**

10  **NORTHERN DISTRICT OF CALIFORNIA**

11  **SAN JOSE DIVISION**

12

| | |
|---|---|
| **IN RE TELESCOPES ANTITRUST LITIGATION** | **Case No. 5:20-cv-03639-EJD**<br>**Case No. 5:20-cv-03642-EJD** |
| **THIS DOCUMENT RELATES TO:**<br><br>**All Actions** | **DIRECT AND INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING ALTERNATIVE SERVICE**<br><br>**Hearing Date: December 10, 2020**<br><br>**Hearing Time: 9:00 a.m.**<br><br>**Judge: Hon. Edward J. Davila** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 10, 2020 at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Edward J. Davila of the U.S. District Court, Northern District of California, Courtroom 4, 280 South 1st Street 5th Floor, San Jose, California 95113, the Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, will move and hereby do move the Court for an order authorizing alternative service on three China-based Defendants: Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., and Ningbo Sunny Electronic Co. Ltd.; one Taiwan-based Defendant: Synta Technology Corp. of Taiwan; and eight Canada-based Defendants: Synta Canada International Enterprises Ltd., Olivon Manufacturing Co. Ltd., Pacific Telescope Corp., David Shen, Sylvia Shen, Jack Chen, Jean Shen, and Laurence Huen (collectively, "Foreign Defendants"), pursuant to Federal Rule of Civil Procedure ("Rule") 4(e) and 4(f)(3) and the proposed plan of service ("Service Plan"), as fully set forth in the Memorandum of Points and Authorities. In summary, Plaintiffs' Service Plan proposes a four-layer approach to apprise Foreign Defendants of the Actions that includes (1) service through U.S. counsel, (2) service through U.S. affiliates, (3) service by well-known and established email addresses, and (4) service by certified mail.

The Court should authorize alternative service because the Service Plan is permissible pursuant to the Rules, not prohibited by any international agreement, provides due process and notice to the Foreign Defendants, and is consistent with Rule 1's mandate to "secure the just, speedy, and inexpensive determination" of these actions ("Actions"). Furthermore, service on foreign entities through their U.S.-based counsel or domestic subsidiaries is permissible and warranted, and courts have repeatedly authorized such plans in similar circumstances. Although Plaintiffs are also attempting to serve the Foreign Defendants through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") or through letters rogatory, as appropriate, in parallel with this joint motion ("Motion"), in counsel for

Plaintiffs' experience in other antitrust class actions, this process will be difficult, long, expensive, and likely delay the Actions against unserved Foreign Defendants for years.

Plaintiffs' motion is supported by: (i) this Notice of Motion and Motion, (ii) the supporting Memorandum of Points and Authorities; (iii) the Declaration of Adam J. Zapala and exhibits thereto; (iv) the Declaration of Matthew Borden and exhibit thereto; (v) any further papers filed in support of this Motion; (vi) the argument of counsel for Plaintiffs; and (v) all matters of record in the Actions.

Dated: September 28, 2020                    Respectfully Submitted,

*/s/ Adam J. Zapala*
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
Tamarah P. Prevost (SBN 313422)
Reid W. Gaa (SBN 330141)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
tprevost@cpmlegal.com
rgaa@cpmlegal.com

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Phone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

*/s/ Lin Y. Chan*
Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Lin Y. Chan (SBN 255027)
lchan@lchb.com
Reilly T. Stoler (SBN 310761)
rstoler@lchb.com
**LIEFF CABRASER HEIMANN &**

1

**BERNSTEIN LLP**
275 Battery Street, 29th Floor
2
San Francisco, California 94111
Telephone: (415) 956-1000
3
Facsimile: (415) 956-1008

4
*Interim Co-Lead Counsel for the Indirect*
*Purchaser Plaintiffs*
5
*/s/ Ronald J. Fisher*
6
J. Noah Hagey
Matthew Borden
7
Ronald J. Fisher
Gunnar Martz
8
Athul K. Acharya
**BRAUNHAGEY & BORDEN LLP**
9
351 California Street, 10th Floor
San Francisco, CA 94104
10
Tel: (415) 599-0210
Fax: (415) 276-1808
11
hagey@braunhagey.com
borden@braunhagey.com
12
fisher@braunhagey.com
martz@braunhagey.com
13
acharya@braunhagey.com

14
*Interim Lead Counsel for the Direct Purchaser*
*Plaintiffs*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................1

II.     STATEMENT OF FACTS .........................................................................3

    A.      U.S. Defendants .............................................................................3

    B.      Foreign Defendants ........................................................................3

        1.      Unserved Synta Defendants ................................................3

        2.      Unserved Defendant Ningbo Sunny ...................................4

    C.      Plaintiffs' Proposed Service Plan....................................................5

III.    ARGUMENT ..............................................................................................6

    A.      Legal Standard ................................................................................6

    B.      The Service Plan for the China-Based Defendants Is Appropriate and
        Complies with Due Process ............................................................8

        1.      Suzhou and Nantong ..........................................................9

            a.      Service Through U.S. Counsel..............................9

            b.      Service Through U.S. Affiliates.............................11

            c.      Service by Email and Certified Mail .....................13

        2.      Ningbo Sunny .....................................................................15

            a.      Service Through Former and Present U.S. Counsel .........................15

            b.      Service Through U.S. Subsidiary............................16

            c.      Service by Email and Certified Mail .....................17

    C.      The Service Plan for Taiwan-Based Defendant Synta Taiwan (a/k/a
        "Synta Technology" and "Good Advance") Is Appropriate and
        Complies with Due Process ............................................................17

        1.      Service Through U.S. Counsel............................................18

        2.      Service Through U.S. Subsidiaries .....................................19

        3.      Service by Certified Mail and Email ..................................19

    D.      The Service Plan for the Canada-Based Defendants Is Appropriate
        and Complies with Due Process .....................................................20

        1.      Service Through U.S. Counsel............................................22

        2.      Service Through U.S. Affiliates..........................................22

        3.      Service by Email and Certified Mail ..................................23

    E.      Service Through Less Efficient Means Is Unnecessary ...................24

IV.     CONCLUSION............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*,
   No. 13-cv-369, 2014 WL 11342502 (W.D. Tex. July 2, 2014)............................................12

*ATS Claim, LLC v. Epson* (*In re TFT-LCD Antitrust Litig.*),
   No. M-07-1827-SI, 2009 U.S. Dist. LEXIS 93448 (N.D. Cal. Oct. 06, 2009)................18, 25

*In re Auto. Parts Antitrust Litig.*,
   No. 2:12-md-02311-SFC (E.D. Mich.)...............................................................................11

*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) .......................................................................................14, 23

*Brown v. China Integrated Energy, Inc.*,
   285 F.R.D. 560 (C.D. Cal. 2012)..........................................................................................8

*Cal. Beach Co., LLC v. Exquline, Inc.*,
   No. 20-cv-01994-TSH, 2020 U.S. Dist. LEXIS 119027 (N.D. Cal. July 07, 2020)................7

*In re Cathode Ray Tube* (*CRT*) *Antitrust Litig.*,
   27 F. Supp. 3d 1002 (N.D. Cal. 2014) .................................................................................10

*In re Cathode Ray Tube* (*CRT*) *Antitrust Litig.*,
   No. 07-5944-SC, 2008 U.S. Dist. LEXIS 111384 (N.D. Cal. Sept. 3, 2008)...................11, 12

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Research Inst.*,
   No. 19-cv-05784-VKD, 2019 U.S. Dist. LEXIS 187670 (N.D. Cal. Oct. 28, 2019) ............10

*CJ E&M Am., Inc. v. IQuiyi, Inc.*,
   No. 18-5771-PA-JEMx, 2018 U.S. Dist. LEXIS 236120 (C.D. Cal. Aug. 13, 2018) .............7

*EGI-VSR, LLC v. Coderch*,
   No. 18-12615, 2020 U.S. App. LEXIS 19809 (11th Cir. June 25, 2020)..............................18

*Facebook, Inc. v. Banana Ads, LLC*,
   No. C-11-3619 YGR, 2012 WL 1038752 (N.D. Cal. Mar. 27, 2012) ...................................23

*FKA Distrib. Co., LLC v. Yisi Tech. Co., Ltd.*,
   No. 17-cv-10226, 2017 U.S. Dist. LEXIS 151679 (E.D. Mich. Sept. 19, 2017)...................13

*FKA Distrib. Co., LLC v. Yisi Tech. Co.*,
   No. 17-CV-10226, 2017 WL 4129538 (E.D. Mich. Sept. 19, 2017).......................................5

*In re TFT-LCD (Flat Panel Antitrust Litig.*,
   MDL No. 1827, 2010 WL 2198240 (N.D. Cal. May 28, 2010) ............................................18

*Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*,
    No. 18-cv-00297-BAS-BGS, 2019 U.S. Dist. LEXIS 8723
    (S.D. Cal. Jan. 17, 2019) ..................................................................................18, 20, 25

*In re GLG Life Tech Corp. Sec. Litig.*,
    287 F.R.D. 262 (S.D.N.Y. 2012) ......................................................................................8

*Goldblatt v. Shen, et al.*,
    No. 5:20-cv-04860-EJD (N.D. Cal. July 20, 2020) ........................................................21

*Hightower v. Celestron Acquisition, LLC, et al.*,
    No. 5:20-cv-03639-EJD (N.D. Cal. June 1, 2020)...........................................................17

*Int'l Controls Corp. v. Vesco*,
    593 F.2d 166 (2d Cir. 1979)..............................................................................................14

*Jackson Lab. v. Nanjing Univ.*,
    No. 1:17-cv-00363-GZS, 2018 U.S. Dist. LEXIS 13630 (D. Me. Jan. 29, 2018).................13

*Juicero, Inc. v. iTaste Co.*,
    No. 17-cv-01921-BLF, 2017 U.S. Dist. LEXIS 86033 (N.D. Cal. June 5, 2017) ...........10, 24

*In re LDK Solar Sec. Litig.*,
    C No. 07-5182, 2008 U.S. Dist. LEXIS 90702, 2008 WL 2415186
    (N.D. Cal. June 12, 2008) ..................................................................................................11

*Levi Strauss & Co. v. Toyo Enter. Co.*,
    665 F. Supp. 2d 1084 (N.D. Cal. 2009) .............................................................................14

*Levin v. Ruby Trading Corp.*,
    248 F. Supp. 537 (S.D.N.Y. 1965) ....................................................................................14

*Liberty Media Holdings, LLC v. Vingay.com*,
    No. CV-11-0280, 2011 WL 810250 (D. Ariz. Mar. 3, 2011) ..............................................13

*Likas v. Chinacache Int'l Holdings, Ltd.*,
    No. cv-19-6942-FMO-SSx, 2020 U.S. Dist. LEXIS 90923 (C.D. Cal. Jan. 29, 2020) ......8, 10

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 4:13-md-02420-YGR (N.D. Cal.) ................................................................................11

*Marks v. Alfa Grp.*,
    615 F. Supp. 2d 375 (E.D. Pa. 2009) ..................................................................................2

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010).........................................................................................12

*Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd. et al.*,
    No. 5:16-cv-06370-EJD (N.D. Cal.), ECF No. 1 (Nov. 1, 2016) ...............................1, 6, 9, 19

*In re Potash Antitrust Litig.*,
   667 F. Supp. 2d 907 (N.D. Ill. 2009*)* ..................................................................12

*Richmond Techs., Inc. v. Aumtech Bus. Sols.*,
   No. 11-CV-02460-LHK, 2011 U.S. Dist. LEXIS 71269 (N.D. Cal. July 1, 2011) ...........9, 24

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) .................................................................*passim*

*Rockwell Automation v. AU Optronics Corp.* (*In re TFT-LCD (Flat Panel) Antitrust Litig.*),
   No. M 07-1827 SI, 2012 U.S. Dist. LEXIS 96689 (N.D. Cal. July 10, 2012) ......................10

*RSM Prod. Corp. v. Friedman*,
   No. 06-civ-11512-dlc, 2007 U.S. Dist. LEXIS 58194, 2007 WL 2295907
   (S.D.N.Y. Aug. 10, 2007) ........................................................................24

*Ryan v. Brunswick Corp.*, No. 02-CV-0133E(F), 2002 WL 1628933, at *3 (W.D.N.Y. May 31,
   2002) ..............................................................................18, 20

*S.E.C. v. Nagaicevs*,
   No. 12-cv-00413-JST, 2013 U.S. Dist. LEXIS 985777, 2013 WL 3730578
   (N.D. Cal. July 12, 2013) .........................................................................7

*Serenium, Inc. v. Zhou*,
   No. 20-cv-02132-BLF, 2020 U.S. Dist. LEXIS 94572 (N.D. Cal. May 29, 2020) ...............10

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist.*,
   482 U.S. 522 (1987)..................................................................................2

*Stream SICAV v. Wang*,
   989 F. Supp. 2d 264 (S.D.N.Y. 2013)..........................................................5, 8

*Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd*.,
   312 F.R.D. 329 (S.D.N.Y. 2015) ...............................................................13

*Tatung Co. Ltd. v. Hsu*,
   No. SACV 13–1743–DOC, 2015 WL 11089492 (C.D. Cal. May 18, 2015) .................17, 25

*Tatung Co. Ltd. v. Hsu*,
   No. SACV 13-1743-DOC, 2014 WL 2557867 (C.D. Cal. June 5, 2014)..................18, 19, 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   270 F.R.D. 535 (N.D. Cal. 2010)...............................................................1, 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. C 10-4945 SI, 2011 WL 845882 (N.D. Cal. Mar. 8, 2011) ...........................18

*Victaulic Co. v. Allied Rubber & Gasket Co.*,
   No. 3:17-cv- 01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150 (S.D. Cal. May 08, 2020)......8

*Williams-Sonoma Inc. v. Friendfinder Inc.*,
    No. C 06-06572 JSW, 2007 WL 1140639 (N.D. Cal. Apr. 17, 2007).............................13, 23

**Statutes**

22 Code of Federal Regulations
    § 92.54.............................................................................................................................18

**Rules**

Federal Rules of Civil Procedure
    Rule 1 ...........................................................................................................................2, 3
    Rule 4 .........................................................................................................................5, 20
    Rule 4(e) ...........................................................................................................................1
    Rule 4(f) ....................................................................................................................6, 7, 8
    Rule 4(f)(1) .......................................................................................................................7
    Rule 4(f)(2) .......................................................................................................................7
    Rule 4(f)(2)(B) ..................................................................................................................1
    Rule 4(f)(2)(C)(ii) ....................................................................................................14, 18
    Rule 4(f)(3) .............................................................................................................*passim*
    Rule 4(h)(2) .......................................................................................................................6

**Other Authorities**

*Celestron Under New Ownership*, NextStar Resource Site (Apr. 6, 2005),
    https://www.nexstarsite.com/OddsNEnds/SyntaOwnership.htm ...........................................19

Declarations, Hague Conference on Private Int'l Law,
    https://www.hcch.net/en/states/authorities/details3/?aid=248 ...............................................23

https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Sept. 10,
    2020) .................................................................................................................................5

Sky-Watcher Legal and Privacy Notice, *available at*
    http://skywatcher.com/LegalAndPrivacyNotices/ ..................................................................21

Status Table, Statute of the Hague Conference on Private International Law,
    https://www.hcch.net/en/instruments/conventions/status-table/ (last visited Sept. 10, 2020) 14

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs respectfully submit this Motion for leave to effectuate alternative service.

## I.    INTRODUCTION

These antitrust class actions concern unlawful collusion between China-based telescope manufacturers, Synta[1] and Ningbo Sunny Electronic Co. Ltd. ("Ningbo Sunny"), their foreign co-conspirators, and their U.S. subsidiaries and board members. Plaintiffs have served all U.S.-based Defendants except Olivon USA LLC ("Olivon USA") (Declaration of Adam J. Zapala ("Zapala Decl.") ¶ 2) and will file their consolidated complaints on October 19, 2020 (ECF No. 95 ¶ 9).[2] Plaintiffs respectfully seek leave pursuant to Rule 4(e) and (f)(3) to execute alternative service on the Foreign Defendants to be named in the respective consolidated complaints to be filed by DPPs and IPPs. These Defendants are aware of the Actions through their ownership and control of the U.S.-based Defendants and/or Co-Conspirators. Authorizing alternative service is fair and reasonable, will eliminate the delay caused by formal service, and will ensure that all alleged culpable parties appear before this Court as quickly as possible to defend themselves.

Courts have wide discretion to approve reasonable alternative service, especially where the defendant is already aware of the claims. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 270 F.R.D. 535, 537–38 (N.D. Cal. 2010). All Foreign Defendants have been aware of the allegations in the Actions since Optronics Technologies, Inc. ("Orion") filed its antitrust complaint.[3] They are also aware of the Actions because Synta owns or controls the U.S.-based Defendants that

---

[1] For ease of reference, "Synta" collectively refers to the Defendants owned or controlled by Defendant David Shen and the Shen family. Synta includes two factories, Suzhou Synta Optical Technology Co. and Nantong Schmidt Opto-Electrical Technology Co. Ltd., and other tentacles of Mr. Shen's operations, including Synta Technology Corp. of Taiwan, Synta Canada International Enterprises Ltd., Olivon Manufacturing Co. Ltd., and Pacific Telescope Corp.

[2] All ECF references relate to Case No. 5:20-cv-03639-EJD, unless otherwise noted.

[3] *See* Compl., *Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd. et al.*, No. 5:16-cv-06370-EJD (N.D. Cal.), ECF No. 1 (Nov. 1, 2016) ("*Orion* Action").

1    have already been served in these Actions. For example, Celestron Acquisition LLC's

2    ("Celestron's") former CEO testified that Defendant David Shen owns Celestron through Synta.

3    *Orion* Action, ECF No. 304-7 at 316 ["Q: And you knew that David Shen owns Celestron

4    through Synta, correct? A: Correct."]. Canada-based Defendants Sylvia Shen, Jack Chen, and

5    Laurence Huen are all part of Celestron's Executive Management Group, which manages

6    Celestron. *Id*. at 360-361 ["Q Who is on this board? A It is not really a board. It would be called

7    a board but it is a group. David, David Shen is. We call it executive management group. David

8    Shen, his sister, Sylvia Shen, her husband, Jack Shen [*sic*], and Laurence Huen."]. They are

9    undoubtedly aware of these Actions.

10        Ningbo Sunny's former counsel, Kevin J. Cole of KJC Law Group ("KJC") and Ningbo

11   Sunny's China-based counsel, Mr. Zou, are both aware of the claims in the Actions. Declaration

12   of Matthew Borden ("Borden Decl. ") ¶ 2. Mr. Zou claims to have communicated about the

13   Actions to his client. *Id.* Canada-based Olivon Manufacturing Co. Ltd. and its owner, Ching

14   "Jean" Shen, are also aware of the claims in the Actions because they appeared in the *Orion*

15   Action, which is currently on appeal to the Ninth Circuit.

16        As the Foreign Defendants are on notice of the Actions, serving the consolidated

17   complaints through court-approved alternatives (*e.g.*, through U.S. counsel or U.S. affiliates), is

18   reasonably calculated to provide formal notice to the Foreign Defendants and an opportunity to

19   appear and defend themselves. Authorizing alternative service thus comports with due process.

20        Furthermore, alternative service does not offend any international agreement pursuant to

21   Rule 4(f)(3) and would conserve the resources of the Court and parties and help "to secure the

22   just, speedy, and inexpensive determination" pursuant to Rule 1. *See Societe Nationale*

23   *Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist.*, 482 U.S. 522, 542-43 (1987) ("A rule

24   of first resort [to the Hague Evidence Convention] in all cases would therefore be inconsistent

25   with the overriding interest in the 'just, speedy, and inexpensive determination' of litigation in

26   our courts") (citing Rule 1); *Marks v. Alfa Grp.*, 615 F. Supp. 2d 375, 379 (E.D. Pa. 2009)

27   (authorizing alternative service pursuant to Rule 4(f)(3) and citing the policy of Rule 1). The

28

Court should exercise its discretion to allow alternative service on Foreign Defendants to advance the Actions with deliberate speed. Plaintiffs are also endeavoring to serve Foreign Defendants through either the Hague Convention or letters rogatory in parallel with this Motion.

## II.    STATEMENT OF FACTS

### A.    U.S. Defendants

The U.S. Defendants comprise Celestron, SW Technology Corp. ("SW") (the entity that Synta used to acquire Celestron), Corey Lee (Celestron's CEO), Joseph Lupica (Celestron's former CEO), David Anderson (also Celestron's former CEO), and Olivon USA, a telescope distributor owned by David Shen's sister, Jean Shen. As stated, *supra*, with the exception of Olivon USA, Plaintiffs completed service on all U.S. Defendants, each of which agreed to waive service. Zapala Decl. ¶ 2. Eisner, LLP ("Eisner") represents all the U.S. Defendants.[4]

### B.    Foreign Defendants

The unserved Foreign Defendants comprise (1) David Shen, various Synta entities owned and controlled by Mr. Shen and the Shen family, and Mr. Shen's advisor who helped him execute the unlawful conduct detailed in the existing complaints, and (2) Ningbo Sunny.

#### 1.    Unserved Synta Defendants

The unserved foreign Synta Defendants are: (1) Suzhou Synta Optical Technology Co., Ltd. ("Suzhou"), (2) Nantong Schmidt Opto-Electrical Technology Co. Ltd. ("Nantong"), (3) Synta Technology Corp. of Taiwan ("Synta Taiwan"), (4) Synta Canada International Enterprises Ltd. ("Synta Canada"), (5) Olivon Manufacturing Co. Ltd. ("Olivon Canada"), (6) Pacific Telescope Corp. ("Pacific Telescope"), (7) David Shen, (8) Sylvia Shen, (9) Jack Chen, (10) Jean Shen, and (11) Laurence Huen. Suzhou and Nantong are Mr. Shen's telescope factories. *Orion*

---

[4] Plaintiffs do not intend to name Sky-Watcher USA and Sky-Watcher Canada as Defendants in the consolidated complaints given Eisner's representation that they are brands and not entities.

Action, ECF No. 304-5 at 132-33. Except for Olivon Canada, Mr. Shen wholly or partially owns each of the entities above.[5]

Synta Taiwan, Synta Technology Corp. ("Synta Technology"), and Good Advance Industries Ltd. ("Good Advance") are different names for the same company. *Orion* Action, ECF No. 234 ¶ 5 (Synta Technology and Good Advance are the same company). As noted, *supra*, Mr. Shen owns this entity and has used it to engage in price-fixing with Ningbo Sunny. Synta Technology was listed as a "Celestron Party" in Celestron's settlement with Orion and was represented by Celestron's counsel here. *Orion* Action, ECF No. 301-30 at 1, 7.

Olivon Canada is ostensibly owned by Mr. Shen's sister, Jean Shen. It also distributes telescopes, including those made by Sunny, from Canada. Olivon Canada and Jean Shen are aware of the claims in the Actions because they appeared in the underlying action. *Orion* Action, ECF No. 616.

As noted, *supra*, Mr. Shen also owns Pacific Telescope along with his sister, Sylvia Shen and her husband, Jack Chen. Pacific Telescope distributes Synta telescopes from Canada.

### 2.   Unserved Defendant Ningbo Sunny

Defendant Ningbo Sunny is a Chinese telescope manufacturer owned by Peter Ni. On June 18, 2020, IPPs contacted Kevin J. Cole of KJC, which represented Ningbo Sunny in the *Orion* Action until last month, to inquire if KJC was willing to waive service for Ningbo Sunny. Mr. Cole replied that KJC was not authorized to do so on June 19, 2020. KJC moved to withdraw as counsel for Ningbo Sunny on July 9, 2020. *See Orion* Action, ECF No. 711. The Court granted this motion on August 20, 2020. ECF No. 727. In permitting the withdrawal, the Court required KJC to continue to accept service on behalf of Ningbo Sunny going forward in the *Orion* Action

---

[5] *See Orion* Action, ECF No. 304-5 at 132-33 ("Q: In terms of the companies that you've heard Mr. Shen involved with in the telescope industry, what are they? … A: I heard that he owns, or he's the owner of Suzhou and Nantong factory. And also Taiwan Synta. Q: And that's the same thing as Good Advance? A. Yes. Q. Any other companies? A. Pacific. But I don't know his ownership percentage. And Celestron.").

and retained jurisdiction over KJC for discovery purposes. *Id.* Plaintiffs propose a Service Plan for Ningbo Sunny based on the above facts, along with the fact that Ningbo Sunny is currently represented by U.S. law firm Greenberg Traurig, LLP in ongoing its efforts in the Ninth Circuit to try to overturn the Court's Judgment in the *Orion* Action.

### C.   Plaintiffs' Proposed Service Plan

All Foreign Defendants except Synta Taiwan are located in countries that are signatories to the Hague Convention.[6] Pursuant to the Hague Convention, signatory countries establish a central authority to receive requests for service of documents from other countries. *See* 20 U.S.T. 362, T.I.A.S. 6638, Art. 2. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with such law. *Id.* Art. 5. The central authority must then provide a certificate of service. *Id.* Art. 6. Perfecting service under the Hague Convention can be expensive, time-consuming, and ineffective as it depends on a foreign government entity processing and responding to a service request. For example, service through the Chinese Ministry of Justice can take a year or longer.[7]

Plaintiffs propose serving the unserved Foreign Defendants through the following methods, each of which are authorized by Rule 4 and district courts across the country:

- **Suzhou**: Suzhou is a Synta-affiliated Chinese entity. Plaintiffs propose serving Suzhou (1) through Eisner, counsel for its U.S-based affiliates, Celestron and SW; (2) its already-

_____

[6] *See* https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Sept. 10, 2020).

[7] *See FKA Distrib. Co., LLC v. Yisi Tech. Co.*, No. 17-CV-10226, 2017 WL 4129538, at *2 (E.D. Mich. Sept. 19, 2017) ("[T]he vendor who served the documents for Plaintiff stated that China has been taking up to one year or more to process documents served under the Hague Convention . . . . The Court finds that this delay is accurate."); *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 280 (S.D.N.Y. 2013) (finding it could take as long as 18 months for service in China under the Hague Convention).

served and close U.S. affiliates, Celestron and SW; (3) by email to a well-known and established Suzhou-affiliated email address; and (4) by certified mail.

- **Nantong**: Nantong is a Synta -affiliated Chinese entity. Plaintiffs propose serving Nantong (1) through Eisner, counsel for its U.S-based affiliates, Celestron and SW; (2) its already-served and close U.S. affiliates, Celestron and SW; (3) by email to a well-known and established Nantong-affiliated email address; and (4) by certified mail.

- **Synta Taiwan**: Synta Taiwan is a Synta-affiliated Taiwanese entity. Plaintiffs propose serving Synta Taiwan (1) through Eisner, counsel for its U.S-based affiliates, Celestron and SW; (2) its already-served and close U.S. affiliates, Celestron and SW; (3) by email to a well-known and established Synta Taiwan-affiliated email address; and (4) by certified mail.

- **Olivon Canada, Pacific Telescope, Synta Canada, David Shen, Sylvia Shen, Jack Chen, and Laurence Huen**: These Defendants are all Synta-affiliated, Canada-based entities and individuals. Plaintiffs propose serving them (1) through Eisner, counsel for their U.S-based affiliates, Celestron and SW; (2) their already-served and close U.S. affiliates, Celestron and SW; (3) by email to well-known and established email addresses; and (4) by certified mail.

- **Ningbo Sunny**: Ningbo Sunny is a Chinese entity affiliated with Co-Conspirator Meade Instruments Corp. ("Meade"). Plaintiffs propose serving Ningbo Sunny (1) through KJC, its U.S. counsel in the *Orion* Action, alternatively, through Meade's bankruptcy counsel, Robert Goe of Goe Forsythe & Hodges LLP, or alternatively, through Sunny's appellate counsel, Greenberg Traurig, LLP; (2) its wholly-owned and controlled U.S. subsidiary, Meade; (3) by email to a well-known and established Ningbo Sunny-affiliated email address; and (4) by certified mail.

## III.  ARGUMENT

### A.  Legal Standard

If defendants are located in a foreign country, Rule 4(h)(2) allows service "in any manner prescribed by Rule 4(f) for serving an individual . . . ." Fed. R. Civ. P. 4(h)(2). Rule 4(f) specifies three methods of service for an individual in a foreign country: (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . ."; (2) "if there is no internationally agreed means . . . by a method that is reasonably calculated to give notice[,]" including the foreign country's law for service or by personal service; or (3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1)-(3).

Alternative service of foreign defendants is a well-established practice authorized where the alternative means are reasonably calculated to apprise defendants of the action. *Rio Props.,*

*Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (citations omitted). "[T]rial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Id.* (citations omitted); *S.E.C. v. Nagaicevs*, No. 12-cv-00413-JST, 2013 U.S. Dist. LEXIS 985777, at *4, 2013 WL 3730578 (N.D. Cal. July 12, 2013) (citation omitted). In *Nagaicevs*, the court granted a default judgment after the plaintiff served the defendant by email and regular mail to the defendant's addresses in Seychelles and Ukraine pursuant to Rule 4(f)(3). *Id.* at *4. In fact, "[c]ourts in the Ninth Circuit have ordered service through U.S.-based counsel even when counsel has refused to accept service on the ground that they do not represent the international defendants." *See Cal. Beach Co., LLC v. Exquline, Inc.*, No. 20-cv-01994-TSH, 2020 U.S. Dist. LEXIS 119027, at *8 (N.D. Cal. July 07, 2020) (citations omitted).

To meet Rule 4(f)(3), alternative service must comport with traditional notions of due process. *Rio Props.* at 1014, 1016. To do so, "the method of service . . . must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1016–17 (citation omitted). Delivering the complaint, translated into the language of the unserved foreign defendants, is not required but helps to satisfy that test. *See CJ E&M Am., Inc. v. IQuiyi, Inc.*, No. 18-5771-PA-JEMx, 2018 U.S. Dist. LEXIS 236120, at *11 (C.D. Cal. Aug. 13, 2018) (permitting service of Chinese company on U.S-based counsel with English and Chinese versions of complaint).

While Rule 4(f) provides three options for service, no hierarchy exists as each option stands "on equal footing." *See Rio Props.*, 284 F.3d at 1015 ("court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) [internationally agreed means, such as the Hague Convention] or Rule 4(f)(2) [manner prescribed by foreign county's law, such a letter of rogatory]"). This means a party need not attempt service first through the Hague Convention or letters rogatory before seeking alternative service under Rule 4(f)(3). *Id.* at 1015; *see also Likas v. Chinacache Int'l Holdings, Ltd.*, No. cv-19-6942-FMO-SSx, 2020 U.S. Dist. LEXIS 90923, at *5 (C.D. Cal. Jan. 29, 2020) (other than limits set by international agreement,

"Rule 4(f) imposes no limitation on the court's authority to authorize alternative means of service. . . . A plaintiff need not pursue other methods of service before requesting . . . an alternative method of service.").

Whether to authorize alternative service pursuant to Rule 4(f)(3) is left to the "individual court's broad discretion, and 'each case must be judged on its facts.'" *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 280 (S.D.N.Y. 2013). Many courts have found significant delays in service under the Hague Convention a sufficient reason to order alternative service. *See*, *e.g.*, *Flat Panel*, 270 F.R.D. at 537-38 ("In light of the availability of alternative, speedier relief under Rule 4(f)(3), the Court finds that there is no reason to require service through letters rogatory in the instant action . . ."); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 562-66 (C.D. Cal. 2012) (ordering Rule 4(f)(3) service and noting that otherwise Hague Convention service would take four to six months).

**B.     The Service Plan for the China-Based Defendants Is Appropriate and Complies with Due Process**

The China-based Defendants are (1) Suzhou (Synta-affiliated), (2) Nantong (Synta-affiliated), and (3) Ningbo Sunny. No justification exists to delay the Actions by requiring Plaintiffs to use less efficient methods of service. *See Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 3:17-cv- 01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150, at *2 n.3 (S.D. Cal. May 08, 2020) (Hague Convention does not impose an obligatory time frame; in China, "service of process will take up to two years or more, with proofs of service being returned an average of 1 to 5 months after service occurs. This means there is a wait window of two years with no interim

information provided."). Plaintiffs set forth the Service Plan for the first two Defendants, which are closely affiliated with Celestron and SW, and then set forth the Plan for Ningbo Sunny.

### 1.   Suzhou and Nantong

Defendants Suzhou and Nantong are both telescope manufacturers located in Suzhou and Nantong, China, respectively, that manufactured telescopes sold in the U.S. during the class period. *See*, *e.g.*, Compl. ¶¶ 19-20, *Murphy, et al. v. Celestron Acquisition, LLC, et al.*, No. 5:20-cv-04049-EJD (June 17, 2020), ECF No. 1 (N.D. Cal.) ("*Murphy* Action"). Defendant David Shen is the owner of these entities. *Orion* Action, ECF No. 304-5 at 132. He also owns and controls Celestron and SW and sits on Celestron's board. *Murphy* Action, Compl. ¶¶ 19-20, 29; *see*, *supra*, at § II(B). As Celestron admitted in its own press release, David Shen acquired it through the Synta entity, Synta Technology. Borden Decl., Ex. 1. As explained, *supra*, Mr. Shen owns and controls Synta Technology, and Celestron's attorneys in these Actions represented Synta Technology in the Orion settlement process in the *Orion* Action.[8]

Plaintiffs propose serving Suzhou and Nantong through four different methods to meet due process and provide notice: (1) through U.S. counsel, the law firm of Eisner and counsel Mr. Christopher Frost, (2) through close U.S. affiliates, Celestron and SW, (3) by email, and (4) by certified mail.

### a.   Service Through U.S. Counsel

Serving Suzhou and Nantong—entities that are part of the Synta and Celestron corporate family—through Celestron's U.S. counsel is appropriate. Courts have recognized that service on counsel "is a common form of service ordered under Rule 4(f)(3)." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 U.S. Dist. LEXIS 71269, at *44 (N.D. Cal. July 1, 2011). In a recent case in this District, Judge Beth Freeman found service on China-based

---

[8] In the Settlement Agreement with Orion, Mr. Shen signed on behalf of Suzhou, Nantong, Schmidt and Good Advance. His brother, Ta Kung Shen, signed on behalf of Synta Technology (which was later discovered to be the same company as Good Advance), and his sister, Sylvia Shen, signed on behalf of SW. Settlement Agreement, *Orion* Action, ECF No. 301-30.

defendants through their U.S. counsel was "reasonably calculated" to give notice. *Juicero, Inc. v. iTaste Co.*, No. 17-cv-01921-BLF, 2017 U.S. Dist. LEXIS 86033, at *9 (N.D. Cal. June 5, 2017) (citing *Rio Props.*, 284 F.3d at 1017, *Richmond Techs.*, 2011 U.S. Dist. LEXIS 71269, at *45); *see also Serenium, Inc. v. Zhou*, No. 20-cv-02132-BLF, 2020 U.S. Dist. LEXIS 94572, at *11 (N.D. Cal. May 29, 2020) (service of U.S.-based counsel reasonably calculated as defendants have actual notice of lawsuit and specially appeared through U.S. counsel).

In various antitrust class actions, courts have repeatedly permitted service on foreign defendants through their U.S. counsel retained to represent the foreign entity's domestic subsidiaries. *Rockwell Automation v. AU Optronics Corp.* (*In re TFT-LCD (Flat Panel) Antitrust Litig.*), No. M 07-1827 SI, 2012 U.S. Dist. LEXIS 96689, at *37-38 (N.D. Cal. July 10, 2012); *In re Cathode Ray Tube* (*CRT*) *Antitrust Litig.*, 27 F. Supp. 3d 1002, 1009 (N.D. Cal. 2014). Another court permitted service through U.S. counsel where the plaintiff had completed the initial steps necessary to effect service on defendants via the Hague Convention but requested that the court permit service by alternative means. *Likas v. Chinacache Int'l Holdings, Ltd.*, No. CV 19-6942 FMO (SSx), 2020 U.S. Dist. LEXIS 90923, at *2 (C.D. Cal. Jan. 29, 2020); *see also Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Research Inst.*, No. 19-cv-05784-VKD, 2019 U.S. Dist. LEXIS 187670, at *3 (N.D. Cal. Oct. 28, 2019) (granting service by email and FedEx on U.S. counsel for a Chinese corporation).

Here, service through Celestron and SW's counsel, Mr. Frost, is fair and will comport with due process because Suzhou and Nantong are both affiliated with Celestron and SW and aware of the Actions and the claims for at least the following reasons:

*First*, Mr. Shen owns Celestron and SW (*Orion* Action, ECF No. 304-7 at 316), which has already been served and represented throughout these proceedings. These Actions were also brought to Mr. Shen's attention in his capacity as Celestron's board member. Mr. Shen also owns Suzhou and Nantong. The factories at the heart of the price-fixing and market allocation at issue are likewise aware of the Actions as Mr. Shen owns and controls those businesses.

*Second*, although they were not named in the *Orion* Action, Mr. Shen, Suzhou, and Nantong were parties to the Settlement Agreement that Orion reached before filing its initial complaint against Sunny. *Orion* Action, ECF No. 301-30. As such, they were well-aware of the claims Orion was making and were likely tracking the progress of that action—where their anticompetitive conduct had been placed into question.

*Third*, Eisner—counsel for Celestron and SW herein—also represented Synta Technology in the settlement process in *Orion*. This company is also owned by Mr. Shen and is part of the network of Synta entities owned and controlled by Mr. Shen and the Shen family. Given the Synta entities' common ownership and control, there is no good reason for Celestron's attorneys to avoid representing these other Synta entities, at least for purposes of effectuating service and notice of the Actions. In complex actions, one law firm generally represents all defendant entities within a corporate group.[9] Suzhou and Nantong therefore have knowledge of these Actions and, in any event, serving them through Eisner would apprise them of the Actions.

### b.    Service Through U.S. Affiliates

Plaintiffs also propose serving Suzhou and Nantong through their U.S. affiliates to provide additional due process and notice. Rule 4(f)(3) authorizes this method of service on Defendants. "[S]ervice on foreign defendants, even those who are signatories to the Hague Convention, is proper under Rule 4(f)(3) where the foreign defendants have domestic subsidiaries and/or counsel and where service does not require transmittal abroad." *In re Cathode Ray Tube* (*CRT*) *Antitrust Litig.*, No. 07-5944-SC, 2008 U.S. Dist. LEXIS 111384, at *31 (N.D. Cal. Sept. 3, 2008) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988)); *see also In re LDK Solar Sec. Litig.*, C No. 07-5182, 2008 U.S. Dist. LEXIS 90702,

---

[9] *See*, *e.g.*, *In re Auto. Parts Antitrust Litig.*, No. 2:12-md-02311-SFC (E.D. Mich.) (Wilmer Cutler Pickering Hale and Dorr LLP represented all nine DENSO/ASMO defendants; Baker Botts LLP represented all five Toyoda Gosei/TG defendants); *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (N.D. Cal.) (Winston & Strawn LLP represented all four Panasonic/SANYO defendants).

2008 WL 2415186, at *3 (N.D. Cal. June 12, 2008) (stating "nothing in the [Hague] Convention bars the requested means of service" under Rule 4(f)(3) upon a domestic subsidiary); *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1238 (Fed. Cir. 2010) (finding district court erred in requiring Hague Convention service on foreign defendant when California subsidiary had been served). Indeed, many courts have approved alternative service on a foreign defendant's domestic subsidiary.[10]

Defendants Celestron, SW, Suzhou, and Nantong are each part of the Synta network of entities and individuals. *See*, *e.g.*, Compl. ¶¶ 19-20, *Murphy* Action. Indeed, Mr. Shen and his family own and control the Synta entities. *Id.* ¶ 29. Celestron and SW are closely affiliated with Suzhou and Nantong and part of the same telescope supply chain from China to the U.S. Suzhou and Nantong manufactured telescopes that Celestron and SW sold in the U.S. during the class period. As Celestron and SW are currently represented in the Actions, they will have no difficulty transmitting any service documents directly to Mr. Shen (who is a Celestron board member anyway), and Mr. Shen's companies, Suzhou and Nantong. From a practical standpoint, if Plaintiffs serve domestic affiliates with a summons for their foreign affiliates, the domestic

---

[10] *See*, *e.g.*, *Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. 13-cv-369, 2014 WL 11342502, at *4 (W.D. Tex. July 2, 2014) (finding service on either foreign defendant's domestic subsidiary or outside counsel would constitute reasonable service); *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239-40 (Fed. Cir. 2010) (stating "federal law plainly permits service on Defendants' domestic subsidiaries or domestic counsel") (internal citation omitted); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 931-32 (N.D. Ill. 2009*)* (finding that service on half-owned U.S. subsidiary, which handled "much, if not all" of the parent company's sales, was "reasonably calculated" to apprise parent company of the pendency of the action); *CRT*, 2008 U.S. Dist. LEXIS 111384, at *31 (authorizing service on foreign defendants through U.S. subsidiaries and domestic counsel); *Rio Props.*, 284 F.3d at 1018 (affirming district court decision to permit service by e-mail and by regular mail to the defendant's U.S. subsidiary and U.S. attorney).

affiliates would most certainly notify their foreign affiliates. Serving affiliated U.S. companies already engaged in defending against allegations of price-fixing telescopes is a "reasonably calculated" method to apprise their foreign affiliates of "the pendency of [this] action and afford them an opportunity to present their objections." *See Rio Props.*, 284 F.3d at 1014-16.

### c.    Service by Email and Certified Mail

Additionally, Plaintiffs propose serving the consolidated complaints on Suzhou and Nantong by email and by certified mail to known addresses. Specifically, Plaintiffs propose sending the service packet to a Suzhou-affiliated and Nantong-affiliated email address, syntadavid@163.com. Plaintiffs will also mail service packets by certified mail to Suzhou and Nantong (*see*, *infra*, for their respective mailing addresses).

Courts have authorized a wide variety of alternative methods of service, including email, ordinary mail, and mail to the defendant's last known address. *Rio Props.*, 284 F.3d at 1016. In *Rio Properties*, the seminal case involving Rule 4(f)(3), the Ninth Circuit affirmed the district court's decision authorizing service by email on a Costa Rican entity. *Id.* at 1017.

Email service is permissible, practical, and does not violate international law. *Jackson Lab. v. Nanjing Univ.*, No. 1:17-cv-00363-GZS, 2018 U.S. Dist. LEXIS 13630, at *3-6 (D. Me. Jan. 29, 2018). Many courts have approved email service to perfect service of process pursuant to Rule 4(f)(3). *See Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572 JSW, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (allowing service via email); *Liberty Media Holdings, LLC v. Vingay.com*, No. CV-11-0280, 2011 WL 810250 (D. Ariz. Mar. 3, 2011) (approving email service); *Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (finding China's objections to service by postal mail did not extend to service in China by email and permitting service by email to defendants in China); *FKA Distrib. Co., LLC v. Yisi Tech. Co., Ltd.*, No. 17-cv-10226, 2017 U.S. Dist. LEXIS 151679, at *4-5 (E.D. Mich. Sept. 19, 2017) (service on email addresses that do not return as undeliverable has been found to be a sufficient process to establish that email service is sufficiently calculated to give notice).

Furthermore, service by certified mail will supplement service by email. Courts have approved service by mail for decades. *See Levin v. Ruby Trading Corp.*, 248 F. Supp. 537, 541-44 (S.D.N.Y. 1965) (employing service by ordinary mail); *Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 176-78 (2d Cir. 1979) (approving service by mail to last known address). To ensure notice, instead of ordinary mail, Plaintiffs propose service by certified mail. *See Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004) (certified mail is a "safeguard" to ensure the proper use of the Rule 4(f)(2)(C)(ii) device); *Levi Strauss & Co. v. Toyo Enter. Co.*, 665 F. Supp. 2d 1084, 1095 (N.D. Cal. 2009). Although China objects to service by postal mail,[11] Plaintiffs only intend service by certified mail to supplement, but not supplant, the other three proposed methods of service. Service by certified mail therefore increases notice to Foreign Defendants.

For notice purposes, Plaintiffs are using the email and mailing addresses Defendants Suzhou and Nantong provided in their Settlement Agreement with Orion. These are the addresses at which that these entities specifically requested to be given notice pursuant to that Agreement. Plaintiffs have no reason to believe that documents sent to these addresses will be returned as undeliverable. Plaintiffs therefore propose serving the consolidated complaints on Suzhou and Nantong at the following mailing and email addresses listed in the Settlement Agreement:

Attn: David Shen
Suzhou Synta Optical Technology
Co., Ltd.
No. 65 Yushan Road, New District
Suzhou, China 215011
Email: syntadavid@163.com

Attn: David Shen
Nantong Schmidt Opto-Electrical
Technology Co., Ltd.
No. 399 West Zhongshan Rd.
Rugoa City, Jiangsu, China
Email: syntadavid@163.com

Plaintiffs' Service Plan for Suzhou and Nantong does not violate any international agreement; comports with due process; and, while notice must only be reasonably calculated to give notice to the Foreign Defendants, the proposal exceeds that standard and includes four different methods of service to ensure that the four-layered methods of service apprises these Defendants of the Actions.

---

[11] *See* Status Table, Statute of the Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/ (last visited Sept. 10, 2020).

### 2.     Ningbo Sunny

Defendant Ningbo Sunny is a telescope manufacturer located in Yuyao, China, that manufactured telescopes sold in the U.S. during the class period. *See*, *e.g.*, Compl. ¶ 27, *Murphy* Action. Ningbo Sunny is the parent company of wholly-owned and controlled U.S.-based Meade. *Id.* ¶ 37. Meade is not a Defendant in either the DPP or IPP Actions solely by virtue of the fact that it has filed for bankruptcy and thus naming it in a complaint could be construed as a violation of the broad bankruptcy stay. *See*, *e.g.*, Compl. ¶ 37, *Murphy* Action.

Ningbo Sunny's Chairman Peter Ni is also Meade's CEO. *Id.* ¶ 39. Ningbo Sunny manufactured the telescopes that Meade, Celestron, and other distributors sold in the U.S. during the class period. *Id.* ¶ 37. Meade filed for bankruptcy on December 4, 2019 after the jury reached a verdict in favor of Orion and against Ningbo Sunny and its subsidiaries in the *Orion* Action on November 26, 2019. *See* No. 8:19-bk-14714-CB (C.D. Cal.) ("Bankruptcy Action"). Sheppard, Mullin, Richter & Hampton LLP represented Ningbo Sunny and its subsidiaries in the *Orion* Action from inception until May 8, 2020 when the Court granted its withdrawal as counsel. *See Orion* Action, ECF No. 655. KJC then represented Sunny in the same action until August 20, 2020 when the Court similarly granted its withdrawal as counsel. *See Orion* Action, ECF No. 727. The Court required KJC to continue to accept service on behalf of Sunny going forward in the *Orion* Action and retained jurisdiction over KJC as a condition of its withdrawal. *Id.* Given these facts, Plaintiffs similarly propose serving Ningbo Sunny through four different methods to meet due process and provide notice: (1) through former U.S. counsel, KJC, alternatively, through Meade's bankruptcy counsel, Goe Forsythe & Hodges LLP, or alternatively, through Sunny's appellate counsel, Greenberg Traurig, LLP; (2) through U.S. subsidiary, Meade; (3) by a known and well-established Ningbo Sunny-affiliated email address; and (4) by certified mail. In light of the similar four-part Service Plan set forth here, Plaintiffs refer to the Rules and case law set forth, *supra*, at Section III(B)(1)(a)-(c), and do not repeat them, *infra*.

#### a.     Service Through Former and Present U.S. Counsel

Service on Ningbo Sunny through its former U.S. counsel, KJC, is appropriate. In permitting KJC to withdraw as counsel last month in the *Orion* Action, this Court agreed that

---

"requiring KJC Law Group to serve all documents on Ningbo Sunny will benefit these proceedings and avoid prejudice to Plaintiff going forward." *See Orion* Action, ECF No. 727. Additionally, it noted that "regardless of the withdrawal, the Court has jurisdiction over KJC Law Group in order to, for example, compel the production of documents, if necessary." *Id.* Moreover, the Court indicated KJC could "forward any papers served on it to Ningbo Sunny electronically" and that this practice would continue "until substitute counsel has entered an appearance." *Id.* No substitute counsel has entered an appearance yet. Moreover, Meade has engaged Goe Forsythe & Hodges LLP as bankruptcy counsel, and Sunny has engaged Greenberg Traurig, LLP as appellate counsel to handle the verdict in the *Orion* Action on appeal. As this Court has continuing jurisdiction over KJC, and as KJC has an ongoing obligation to serve all documents on Ningbo Sunny in the underlying action, the Court should likewise permit Plaintiffs to serve Ningbo Sunny through KJC in these Actions. Alternatively, the Court should permit Plaintiffs to serve Ningbo Sunny through Meade's bankruptcy counsel or appellate counsel, which is currently representing Ningbo Sunny in the *Orion* Action.

### b.  Service Through U.S. Subsidiary

Plaintiffs also propose serving Ningbo Sunny through its U.S. subsidiary, Meade, to provide additional due process and notice. Meade is wholly-owned and controlled by Sunny. *See*, *e.g.*, Compl. ¶ 23, *Murphy* Action. Meade sold telescopes in the U.S. that Ningbo Sunny manufactured in China during the class period. *Id.* ¶ 37. As Meade is currently represented in the Bankruptcy Action, Meade will have no difficulty transmitting all service documents directly to Ningbo Sunny. Serving a U.S. subsidiary that is already appearing in federal court is "reasonably calculated" to apprise its foreign parent of "the pendency of [this] action and afford [it] an opportunity to present [its] objections." *See Rio Props.*, 284 F.3d at 1014-16. Orion served Ningbo Sunny in the *Orion* Action in the same manner—through service on its U.S. subsidiary, Meade, which Ningbo Sunny stipulated was effective. *Orion* Action, ECF No. 15.

#### c.     Service by Email and Certified Mail

Additionally, Plaintiffs propose serving Ningbo Sunny by email and certified mail. Plaintiffs have obtained Ningbo Sunny's email and mailing address from a Trial Exhibit in the *Orion* Action attached as Exhibit 4 to the initial complaint filed in this action. *See* Trial Exhibit 1787.005-1787.016, *Hightower v. Celestron Acquisition, LLC, et al.*, No. 5:20-cv-03639-EJD (N.D. Cal. June 1, 2020), ECF No. 1-4. Based on these letters to and from Ningbo Sunny's founder, owner, and CEO—Peter Ni—Ningbo Sunny conducts business using specific addresses. Plaintiffs have no reason to believe that documents sent to these addresses will be returned as undeliverable. For these reasons, Plaintiffs propose serving Ningbo Sunny at the following mailing and email addresses listed in the above-referenced letters:

> Attn: Peter Ni
> Ningbo Sunny Electronic Co., Ltd.
> No. 199 Anshan Road
> Yuyao, Zhejiang, China 315400
> email: nbsunny@vip.sina.com

Plaintiffs' Service Plan for Ningbo Sunny similarly does not violate any international agreement; comports with due process; and exceeds the standards to provide notice by including four different methods of service.

#### C.     The Service Plan for Taiwan-Based Defendant Synta Taiwan (a/k/a "Synta Technology" and "Good Advance") Is Appropriate and Complies with Due Process

Plaintiffs also request approval of alternative service for Taiwan-based Defendant Synta Taiwan through: (1) U.S. counsel; (2) its wholly-owned U.S. subsidiary; and (3) certified mail and email. These methods are reasonably calculated to give Synta Taiwan notice. By contrast, formal service of Synta Taiwan, which is headquartered in Taiwan (Compl. ¶ 17, *Murphy* Action), would result in unnecessary delay. Taiwan is not a signatory of the Hague Convention or any other treaty that would dictate service procedure. *See e.g.*, *Tatung Co. Ltd. v. Hsu*, No. SACV 13–1743–DOC (ANx), 2015 WL 11089492, at *2 (C.D. Cal. May 18, 2015) (finding "[t]he United States and Taiwan have not signed any treaties or agreements regarding service of

process from United States courts"). Therefore, formal service on Taiwanese defendants is accomplished by either issuance of letters rogatory or by receipt mail sent by the Clerk of Court. *See* Fed. R. Civ. P. 4(f)(2)(B), 4(f)(2)(C)(ii). Letters rogatory "denotes a formal request from a court in which an action is pending, to a foreign court to perform some judicial act [such as the] serving of a summons." 22 C.F.R. § 92.54.

Accomplishing service in Taiwan via the letters rogatory process is "time-consuming, expensive, [] burdensome," and often ineffectual. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-4945 SI, 2011 WL 845882, at *2 (N.D. Cal. Mar. 8, 2011) (discussing the ongoing burden of serving Taiwanese defendants in that coordinated proceeding via the letters rogatory process and permitting alternative process). Here, Plaintiffs have consulted with a service vendor as to service on the Taiwanese Defendant, and the vendor estimates that such service would cost $600 (exclusive of translation costs, which are generally upward of $10,000 for antitrust class action complaints) and take around 10 months to effectuate. Zapala Decl. ¶ 3. Given the substantial cost and delay, courts have repeatedly granted motions for alternative service of Taiwanese defendants, by international mail or other means. *See, e.g.*, *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*, No. 18-cv-00297-BAS-BGS, 2019 U.S. Dist. LEXIS 8723, *6-7 (S.D. Cal. Jan. 17, 2019); *Tatung Co. v. Shu Tze Hsu*, No. SACV 13-1743-DOC (ANx), 2014 WL 2557867, at *2 (C.D. Cal. June 5, 2014); *Ryan v. Brunswick Corp.*, No. 02-CV-0133E(F), 2002 WL 1628933, at *3 (W.D.N.Y. May 31, 2002). No justification exists to delay the Actions by requiring Plaintiffs to use less efficient methods of service for Synta Taiwan. *See EGI-VSR, LLC v. Coderch*, No. 18-12615, 2020 U.S. App. LEXIS 19809, at *8 (11th Cir. June 25, 2020) (letters rogatory "can take at least twelve months to complete").

### 1.     Service Through U.S. Counsel

As is the case for service of Suzhou and Nantong, discussed in Section III(B)(1), *supra*, service of Synta Taiwan through U.S. counsel is appropriate. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2010 WL 2198240, at *2 (N.D. Cal. May 28, 2010) (authorizing service of Taiwanese defendant through service on U.S. counsel). Like Suzhou and Nantong,

Synta Taiwan is aware of the Actions and claims because (1) Mr. Shen wholly owns and controls it, (2) it wholly owns and/or controls Defendant SW,[12] which Plaintiffs have already served; (3) it was a party to the Settlement Agreement that Orion reached before filing the initial complaint in the underlying *Orion* Action along with Celestron and SW (*see* Settlement Agreement at 2); and (4) as discussed in Section III(B)(1)(a), *supra*, Eisner represented Synta Taiwan during the Orion settlement process. *See* Settlement Agreement at 1, 7 (grouping Synta Taiwan with Celestron and SW and showing Mr. Frost of Eisner as counsel for Synta Taiwan).

### 2.   Service Through U.S. Subsidiaries

Plaintiffs also propose serving Synta Taiwan through SW, which it wholly owns and/or controls. Compl. ¶ 18, *Murphy* Action. As discussed in Section III(B)(1)(b), *supra*, service through domestic subsidiaries is permissible and common. As Synta Taiwan wholly owns and/or controls SW, SW should have no difficulty transmitting service documents to its Synta Taiwan.

### 3.   Service by Certified Mail and Email

Finally, Plaintiffs propose serving Synta Taiwan through email and certified mail. As discussed in Section III(B)(1)(c), *supra*, service via email and certified mail is permissible, and in this case, a practical option to supplement the other proposed forms of notice. Rule 4(f)(3) authorizes service of a foreign defendant "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). "The United States and Taiwan have not signed any treaties or agreements regarding service of process from United States courts."

---

[12] *Celestron Under New Ownership*, NextStar Resource Site (Apr. 6, 2005), https://www.nexstarsite.com/OddsNEnds/SyntaOwnership.htm (indicating SW as affiliate of Synta Technology Corporation); Confidential Standstill & Tolling Agreement at 7, *Optronics Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No. 5:16-cv-06370-EJD (N.D. Cal. Aug. 15, 2019) (Sylvia Shen signing on behalf of SW), ECF No. 284-18; Expert Report of J. Douglas Zona, PhD. at 9, *Optronics Techs.*, No. 5:16-cv-06370-EJD, ECF No. 299-2 ("Since 2005, Celestron has been a subsidiary of Synta Technology Corporation of Taiwan via SW Technology Corporation, a Delaware holding company").

*Tatung*, 2014 WL 2557867, at *1 (collecting cases). "Therefore, no international agreement expressly prohibits service of Taiwanese defendants." *Id.* at *1. Given that fact, service via first class mail is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the actions and afford them an opportunity to present their objections." *Id.* at *2 (authorizing service of Taiwanese defendant through first class mail).

Plaintiffs obtained Synta Taiwan's mailing address from the business card of Synta Technology's Assistant to General Manager, Joyce Huang, submitted as an exhibit to the summary judgment motion in the *Orion* Action. *Orion* Action, ECF No. 256-88. Plaintiffs have no reason to believe that documents sent to this address would be returned undeliverable. Plaintiffs propose sending the consolidated complaints and summons via certified mail to:

> Attn: David Shen
> Synta Technology Corp. of Taiwan
> No. 89 Lane 4, Chia An W. Road
> Lung-Tan, Taoyuan
> 32546 Taiwan R.O.C.

Similar to use of mail, service upon Taiwanese defendants through email is permissible and practical under the circumstances. *See e.g., Fourte Int'l Ltd. BVI*, 2019 U.S. Dist. LEXIS 8723, at *6-7 (authorizing email service on Taiwanese defendant); *see also Ryan*, 2002 WL 1628933, at *1–3 (same). As noted in Section III(B)(1)(c), *supra*, the email address of David Shen, Synta Taiwan's founder and chairman, is syntadavid@163.com. Plaintiffs propose serving the consolidated complaint on Synta Taiwan at this address to supplement the other methods of service and ensure adequate notice is provided.

In total, Plaintiffs' Service Plan for Synta Taiwan exceeds the requirements of Rule 4 and provides three additional methods of service to ensure adequate notice of this litigation.

### D.    The Service Plan for the Canada-Based Defendants Is Appropriate and Complies with Due Process

The Canada-based Defendants are (1) Synta Canada, (2) Olivon Canada, (3) Pacific Telescope, (4) David Shen, (5) Sylvia Shen, (6) Jack Chen, (7) Jean Shen, and (8) Laurence

Huen. Each of these Defendants is closely affiliated with Celestron and SW, which Plaintiffs have already served.

Defendants Olivon Canada, Pacific Telescope, and Synta Canada are telescope suppliers located in British Columbia, Canada that are alleged to have conspired with Defendants in the U.S. during the class period. *See*, *e.g.*, Compl. ¶¶ 22-23, *Murphy* Action.; Compl. ¶ 27, *Goldblatt v. Shen, et al.*, No. 5:20-cv-04860-EJD (N.D. Cal. July 20, 2020) ("*Goldblatt* Action"). Defendant Shen and the Shen family own and control each of the Synta entities named as Defendants, including Synta Canada, Olivon Canada, and Pacific Telescope, which are closely affiliated with Celestron and SW, both represented by Eisner. Compl. ¶¶ 19-20, 29, *Murphy* Action; Compl. ¶¶ 20, 27, *Goldblatt* Action. For example, Synta Canada owns 20 percent of Suzhou. Compl. ¶ 19, *Murphy* Action. Suzhou is the primary telescope manufacturer for Synta Taiwan, which owns and controls SW, which sells telescopes in the U.S. *Id.* ¶¶ 18-19; *see also Orion* Action, ECF No. 487 (Trial Tr. 1297:10-14 (testifying that invoices for Synta companies, including Synta Canada, were provided by the same person)). In addition, co-conspirator Jean Shen, the sister of Chairman David Shen, exercises control over Olivon Canada. *Id.* 30. Mr. Shen is the owner of the Synta Defendants except Olivon Canada. *Id.* ¶ 29. In addition, Sylvia Shen, the sister of Mr. Shen, is Celestron board member, the CEO, CFO, and Secretary of SW, and she controls Pacific Telescope. Compl. ¶¶ 27, 39, *Goldblatt* Action*; see also Orion* Action, ECF No. 442-5 (Dep. Tr. 15:22-16:5). Pacific Telescope does business as Sky-Watcher Canada. *See Orion* Action, ECF No. 442-5 (Dep. Tr. 16:20-22); *see also* Sky-Watcher Legal and Privacy Notice, *available at* http://skywatcher.com/LegalAndPrivacyNotices/ ("Pacific Telescope Corp. and its authorized agents own the trademarks, logos, and service marks displayed on this Website"). According to trial testimony, Synta owns the Sky-Watcher brand. *Orion* Action, ECF No. 442-3 (Dep. Tr. at 36:25-37:1). Like David and Sylvia Shen, Defendants Jack Chen and Laurence Huen also sit on Celestron's Executive Management Group and are thus aware of Celestron's unlawful activities, responsible for such activities, and undoubtedly discussed the lawsuit and claims against Celestron in the ordinary course of their business affairs.

Given these close affiliations, Plaintiffs propose serving Olivon Canada, Pacific Telescope, and Synta Canada through four different methods to meet due process and provide notice: (1) through U.S. counsel, Eisner, (2) through close affiliates, Celestron and SW, (3) by email, and (4) by certified mail.

### 1.     Service Through U.S. Counsel

It is appropriate to serve members of Celestron's Executive Management Group through Celestron's U.S. counsel. It is also appropriate to serve Synta Canada,  Olivon Canada, and Pacific Telescope through U.S. counsel. As discussed, *supra*, at Section III(B)(1)(a), this District recognizes that service on counsel is a common form of service ordered under Rule 4(f)(3). The Canada-based Defendants are aware of these Actions. *First*, they are all owned and controlled by David Shen and the Shen family. *Second*, they are closely affiliated with Celestron and SW, which have both been served already and represented by Eisner in these Actions. *Third*, Eisner— counsel for Celestron and SW—has no reason not to represent the Canada-based Defendants as they are part of the Synta network of entities owned and controlled by the Shen family.

### 2.     Service Through U.S. Affiliates

Plaintiffs also propose serving the Canada-based Defendants through their U.S. affiliates to provide additional due process and notice. As discussed, *supra*, at Section III(B)(1)(b), Rule 4(f)(3) authorizes this method of service on Defendants.

Celestron's Executive Management Group members are obviously affiliated with Celestron and have received formal notice through service on Celestron. Defendants Olivon Canada, Pacific Telescope, and Synta Canada are each part of the Synta network of entities owned or controlled by the Shen family. *See*, *e.g.*, Compl. ¶¶ 19-20, 29, *Murphy* Action. Thus, the Canada-based Defendants are closely affiliated with Celestron and SW and within their same supply chain to the U.S. Celestron and SW, which have already been served, are well-positioned to transmit any and all service documents directly to Synta Canada, Olivon Canada, and Pacific Telescope. The domestic affiliates are currently defending against allegations of price-fixing. Serving domestic affiliates that are already appearing in federal court is "reasonably calculated"

1  to apprise their foreign affiliates of "the pendency of [this] action and afford [it] an opportunity

2  to present [its] objections." *See Rio Props.*, 284 F.3d at 1014-16.

3  ### 3.   Service by Email and Certified Mail

4  Additionally, Plaintiffs propose serving the Canada-based Defendants by email and

5  certified mail. Plaintiffs obtained the relevant addresses for Synta Canada, Olivon Canada, and

6  Pacific Telescope. Courts have previously authorized service on Canada-based entities by mail

7  and by email. *See Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C06-06572 JSW, 2007 WL

8  1140639 (N.D. Cal. Apr. 17, 2007) (permitting alternative service on Canadian defendant by

9  mail); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752 (N.D. Cal.

10  Mar. 27, 2012) (permitting alternative service on Canadian defendant by email). Federal courts

11  have held that Article 10(a) of the Convention, preserving the freedom to send judicial documents

12  by mail, permits service of process by mail if the recipient State does not object to this method);

13  *Brockmeyer v. May*, 383 F.3d 798, 803 (9th Cir. 2004). Canada does not object to Article 10(a)

14  of the Convention regarding the use of postal channels. *See* Declarations, Hague Conference on

15  Private Int'l Law, https://www.hcch.net/en/states/authorities/details3/?aid=248 (declaring "No

16  opposition" to Article 10(a)).

17  Jean Shen provided Olivon Canada's address in filings that she made in the *Orion* Action.

18  Plaintiffs have no reason to believe that documents sent to these addresses will be returned as

19  undeliverable. For these reasons, Plaintiffs propose serving the consolidated complaints on

20  Olivon Canada at the following mailing and email address (Zapala Decl., Exs. 1-3)[13]:

21  
22          11880 Hammersmith Way
        Richmond, BC V7A 5C8, Canada
        info@olivonmanufacturing.com

23  _____

24  [13] On its website, Olivon Canada states that it has ceased operating in Canada and is solely based

25  out of Sweden. Given that it has not yet publicly identified an alternative mailing address,

26  Plaintiffs have no reason to believe that service to its Canadian mailing address will be returned

27  as undeliverable. Moreover, given that is mailing address in Sweden is unknown, this provides

28  additional support for the various methods for service proposed by the Plaintiffs.

Plaintiffs propose serving the consolidated complaints on Pacific Telescope, which is listed on the Canada Yellow Pages (*id.*, Ex. 4), at the following mailing and email addresses provided on the Sky-Watcher website:

> 11880 Hammersmith Way
> Richmond, BC V7A 5C8, Canada
> support@skywatcherusa.com

Plaintiffs propose serving the consolidated complaints on Synta Canada at the following mailing address provided in its trademark application with the Government of Canada (*id.*, Ex. 5) and email address for Sylvia Shen identified from an email thread attached as an exhibit to summary judgment in the *Orion* Action (*Orion* Action, ECF No. 256-16):

> 7531 Lucas Road
> Richmond, BC V6Y1G1, Canada
> shentakuo1@gmail.com

Plaintiffs' Service Plan for the Canada-based Defendants does not violate any international agreement; comports with due process; and is more than "reasonably calculated" to provide notice by including four different layered methods of service.

## E.   Service Through Less Efficient Means Is Unnecessary

Even if a country is a signatory to the Hague Convention or has raised certain objections thereto, this Court is not beholden to the Hague Convention. The Hague Convention does not preclude alternative service pursuant to Rule 4(f)(3), especially when the Foreign Defendants and their counsel have notice of the case, service through the Hague Convention will unduly delay the matter, and alternative service satisfies due process. *See Richmond Techs.*, 2011 U.S. Dist. LEXIS 71269 at *41 ("numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies."); *Juicero*, 2017 U.S. Dist. LEXIS 86033, *6 ("service on [d]efendants' U.S.-based attorney is permissible because the Hague Convention does not bar this type of service."); *RSM Prod. Corp. v. Friedman*, No. 06-civ-11512-dlc, 2007 U.S. Dist. LEXIS 58194, 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) ("The Hague Service Convention does not prohibit an order pursuant to Rule 4(f)(3) permitting service through

American counsel."). Here, alternative service is permissible despite China and Canada being signatories to the Hague Convention.

Furthermore, even if a country is not a signatory to the Hague Convention (*e.g.*, Taiwan), alternative service pursuant to Rule 4(f)(3) is permissible. Rule 4(f)(3) bars only those service methods expressly prohibited by international agreement. *Tatung Co. v. Shu Tze Hsu*, No. SA CV 13-1743-DOC (ANx), 2015 U.S. Dist. LEXIS 179201, at *7-8 (C.D. Cal. May 18, 2015); *see also Fourte Int'l Ltd. BVI*, 2019 U.S. Dist. LEXIS 8723, at *6-7 (S.D. Cal. Jan. 17, 2019) (granting service on U.S. counsel for Taiwanese company because Taiwan is not a party to Hague Convention and no international agreement prohibits it) (citations omitted); *ATS Claim, LLC v. Epson* (*In re TFT-LCD Antitrust Litig.*), No. M-07-1827-SI, 2009 U.S. Dist. LEXIS 93448, *15 (N.D. Cal. Oct. 06, 2009) (same). Here, alternative service is permissible on a Taiwan-based Defendant because no international agreement between the U.S. and Taiwan prohibits it.

As stated, *supra*, no justification exists to delay the Actions by requiring Plaintiffs to use less efficient methods of service for the 12 Foreign Defendants located in three different countries. Extended delay is particularly unnecessary in these Actions because each of the Foreign Defendants are closely affiliated with Defendants that are already represented by U.S. counsel and/or have been involved with the underlying action since 2016. As the Foreign Defendants are most likely already on notice of the Actions, alternative service can only enhance the due process provided to Defendants and expedite resolution of this litigation on the merits. Finally, because these are conspiracy Actions, getting all of the Defendants before the Court, sooner rather than later, is sound case management.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court authorize service Foreign Defendants as set forth in the Service Plan. Alternative service will provide Foreign Defendants with due process and notice by formally apprising them of the Actions and afford them an opportunity to appear and defend themselves. Additionally, no international agreement prohibits alternative service.

1  Dated: September 28, 2020                    Respectfully Submitted,

2                                               */s/ Adam J. Zapala*
                                                Adam J. Zapala (SBN 245748)
3                                               Elizabeth T. Castillo (SBN 280502)
                                                Tamarah P. Prevost (SBN 313422)
4                                               Reid W. Gaa (SBN 330141)
                                                **COTCHETT, PITRE & McCARTHY, LLP**
5                                               840 Malcolm Road
                                                Burlingame, CA 94010
6                                               Telephone: (650) 697-6000
                                                Facsimile: (650) 697-0577
7                                               azapala@cpmlegal.com
                                                ecastillo@cpmlegal.com
8                                               tprevost@cpmlegal.com
                                                rgaa@cpmlegal.com
9
                                                 */s/ Kalpana Srinivasan*
10                                              Kalpana Srinivasan (Bar No. 237460)
                                                Marc M. Seltzer (Bar No. 54534)
11                                              Steven Sklaver (Bar No.237612)
                                                Michael Gervais (Bar No. 330731)
12                                              **SUSMAN GODFREY L.L.P.**
                                                1900 Avenue of the Stars, Ste. 1400
13                                              Los Angeles, CA 90067
                                                Phone: 310-789-3100
14                                              ksrinivasan@susmangodfrey.com
                                                mseltzer@susmangodfrey.com
15                                              ssklaver@susmangodfrey.com
                                                mgervais@susmangodfrey.com
16
                                                */s/ Lin Y. Chan*
17                                              Eric B. Fastiff (SBN 182260)
                                                efastiff@lchb.com
18                                              Lin Y. Chan (SBN 255027)
                                                lchan@lchb.com
19                                              Reilly T. Stoler (SBN 310761)
                                                rstoler@lchb.com
20                                              **LIEFF CABRASER HEIMANN &**
                                                 **BERNSTEIN LLP**
21                                              275 Battery Street, 29th Floor
                                                San Francisco, California 94111
22                                              Telephone: (415) 956-1000
                                                Facsimile: (415) 956-1008
23
                                                *Interim Lead Counsel for the Indirect Purchaser*
24                                              *Plaintiffs*

25                                              */s/ Ronald J. Fisher*
                                                J. Noah Hagey
26                                              Matthew Borden
                                                Ronald J. Fisher
27                                              Gunnar Martz
                                                Athul K. Acharya
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BRAUNHAGEY & BORDEN LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel: (415) 599-0210
Fax: (415) 276-1808
hagey@braunhagey.com
borden@braunhagey.com
fisher@braunhagey.com
martz@braunhagey.com
acharya@braunhagey.com

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*