# Exhibit F

1  Aaron M. Sheanin (SBN 214472)
2  **ROBINS KAPLAN LLP**
   2440 West El Camino Real, Suite 100
3  Mountain View, CA 94040
   Telephone: (650) 784-4040
4  Facsimile: (650) 784-4041
   asheanin@robinskaplan.com
5
   *Attorney for Plaintiff James Kaufman*
6  *and the Proposed Classes*

7  [Additional Counsel on Signature Page]

8          **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| JAMES KAUFMAN, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CELESTRON ACQUISITION, LLC, NANTONG SCHMIDT OPTO-ELECTRICAL TECHNOLOGY CO. LTD., NINGBO SUNNY ELECTRONIC CO. LTD. OLIVON MANUFACTURING CO. LTD., OLIVON USA, LLC, PACIFIC TELESCOPE CORP., SKY-WATCHER CANADA, SUZHOU SYNTA OPTICAL TECHNOLOGY CO., LTD., SW TECHNOLOGY CORP., SYNTA CANADA INTERNATIONAL ENTERPRISES LTD., and SYNTA TECHNOLOGY CORP. OF TAIWAN, | |
| Defendants. | |

*(Left margin, vertical text)* ROBINS KAPLAN LLP — ATTORNEYS AT LAW — MOUNTAIN VIEW

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.  JURISDICTION AND VENUE.......................................................................... 2

III. PARTIES ........................................................................................................ 3

    A.   Plaintiff.................................................................................................. 3

    B.   Defendants ............................................................................................ 3

        1.   The Synta Defendants................................................................ 3

        2.   The Sunny Defendant ................................................................ 5

    C.   Agents and Co-Conspirators ................................................................ 5

        1.   The Synta Co-Conspirators ....................................................... 5

        2.   The Sunny Co-Conspirators ...................................................... 6

        3.   Defendant Corporate Families Acted as Single Enterprises, with Defendant Parent Companies Exercising Substantial Control over U.S. Affiliates................................................................................................ 8

        4.   Defendants' High-Level Employees Organized the Conspiracy That Their Subordinate Employees—Including Those of Their United States' Subsidiaries—Executed ............................................................................ 9

        5.   Defendants and Co-Conspirators Did Not Distinguish Between Corporate Entities in the Same Corporate Family ................................. 10

        6.   The Foreign Companies Named Used Their United States Subsidiaries and Affiliates As Distribution and Sales Arms ...................................... 11

IV.  INTERSTATE TRADE AND COMMERCE.................................................... 12

V.   FACTUAL ALLEGATIONS.......................................................................... 13

    A.   Consumer Telescopes and Accessories............................................... 13

    B.   The U.S. Consumer Telescope Market ............................................... 14

    C.   The Consumer Telescope Market is Ripe for Conspiracy. .................. 15

        1.   The Consumer Telescope Market Has High Barriers to Entry...... 15

        2.   The Consumer Telescope Market is Highly Concentrated............. 15

        3.   Demand for Consumer Telescopes is Inelastic ............................. 16

    D.   The Federal Trade Commission's Actions in the Consumer Telescope Market ............................................................................................................. 16

    E.   Defendants Are Liable for the Anticompetitive Conduct Alleged........ 17

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

i

F. Defendants and Co-Conspirators Monopolized Different Products in the Consumer Telescope Market ................................................................ 19

G. Defendants and Co-Conspirators Colluded on Sunny's Acquisition of Meade ............................................................................................... 19

H. Defendants and Co-Conspirators Conspired to Interfere with Orion's Acquisition of the Hayneedle Assets .......................................... 20

I. Illustrative Examples of Defendants' Anticompetitive Conduct and Conspiracy to Fix Prices ................................................................. 21

VI. PLAINTIFF AND THE CLASSES SUFFERED ANTITRUST INJURY ...................... 26

VII. CLASS ACTION ALLEGATIONS ................................................................ 29

A. Class Definitions ...................................................................... 29

B. California Law Should Be Applied to Establish the Damages Class ................... 35

VIII. THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFF'S CLAIMS .......... 36

A. The Statute of Limitations Did Not Begin to Run Because Plaintiff Did Not and Could Not Discover Plaintiff's Claims ................................ 36

B. Fraudulent Concealment Tolled the Statute of Limitations ................. 37

IX. CAUSES OF ACTION ................................................................................ 39

First Cause of Action Violation of Section 1 of the Sherman Act (15 U.S.C. § 1) Restraint of Trade (on behalf of Plaintiff and the Nationwide Class) ................................ 39

Second Cause of Action Violation of Section 2 of the Sherman Act (15 U.S.C. § 2) Monopolization (on behalf of Plaintiff and the Nationwide Class) ................................ 41

Third Cause of Action Violation of Section 2 of the Sherman Act (15 U.S.C. § 2) Attempted Monopolization (on behalf of Plaintiff and the Nationwide Class) ................. 43

Fourth Cause of Action Violation of Section 7 of the Clayton Act (15 U.S.C. § 18) (on behalf of Plaintiff and the Nationwide Class) ............................................. 44

Fifth Cause of Action Violation of State Antitrust Statutes (on behalf of Plaintiff and the Damages Class, or Alternatively, the State Damages Classes) .................... 45

Sixth Cause of Action Violation of State Consumer Protection Statutes (on behalf of Plaintiff and the Damages Class, or Alternatively, the State Damages Classes) .......... 66

Seventh Cause of Action Unjust Enrichment (on behalf of Plaintiff and the Damages Class, or Alternatively, the State Damages Classes) ........................................ 97

X. PRAYER FOR RELIEF ............................................................................ 98

XI. JURY DEMAND .................................................................................... 99

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

Plaintiff James Kaufman, files this action, individually on behalf of himself and as a class action on behalf of all others similarly situated, against Defendants Celestron Acquisition, LLC, Nantong Schmidt Opto-Electrical Technology Co., Ltd., Olivon Manufacturing Co. Ltd., Olivon USA, LLC, Pacific Telescope Corp., Sky-Watcher Canada, Suzhou Synta Optical Technology Co., Ltd., SW Technology Corp., Synta Canada International Enterprises Ltd., and Synta Technology Corp. of Taiwan, (together, "Synta Defendants"), and Ningbo Sunny Electronic Co. Ltd. (the "Sunny Defendant") (collectively, "Defendants"), for damages, injunctive relief, and any and all other relief that is available pursuant to federal antitrust laws. Plaintiff demands a trial by jury on all issues so triable and complains and alleges as follows:

## I. INTRODUCTION

1. There are few greater joys than looking up and seeing the stars in the night sky. Many Americans buy telescopes to better focus their sights on the cosmos. Unfortunately, these astronomers' views have been clouded by Defendants' anticompetitive conspiracy, which has cost telescope purchasers millions of dollars in overcharges.

2. In November 2016, a California-based distributor and seller of telescopes, binoculars, and accessories, Optronic Technologies Inc. d/b/a Orion Telescopes & Binoculars ("Orion") filed a lawsuit in this District against Ningbo Sunny Electronic Co., Ltd., Meade Instruments Inc., and Sunny Optics, Inc., alleging that they conspired with their primary competitor, certain Synta Defendants, to divide the market, fix prices, and eliminate competition in the telescope market. *See Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd. et al.*, No. 5:16-cv-06370-EJD-VKD (N.D. Cal.) ("*Orion Litigation*"). On November 26, 2019, following a six-week jury trial and two days of deliberation, the jury found that the defendants had violated the Sherman Act and the Clayton Act by engaging in a conspiracy to fix the price for, and allocate the market of, telescopes and accessories and to monopolize the domestic consumer telescope market, and delivered a $16.8 million verdict to Orion. U.S. District Judge Edward J. Davila trebled the amount of damages, resulting a $50.4 million partial final judgment.

3. As a direct result of the anticompetitive and unlawful conduct alleged in the *Orion Litigation* and herein, Plaintiff and the Classes (defined *infra*) paid artificially inflated prices for

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

consumer telescopes during the period from and including January 1, 2005 through the present ("Class Period") and have thereby suffered antitrust injury to their business and property.

## II.  JURISDICTION AND VENUE

4.      Plaintiff and the Classes bring this action against Defendants under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, seeking equitable and injunctive relief against Defendants for violating Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and Section 7 of the Clayton Act (15 U.S.C. § 18). Plaintiff also asserts claims for actual and exemplary damages and restitution pursuant to state antitrust, consumer protection, and unjust enrichment laws. Plaintiff and the Classes also seek attorneys' fees, costs, and all other expenses allowed under state and federal law.

5.      This Court has jurisdiction over the subject matter of this action pursuant to Sections 4, 7, and 16 of the Clayton Act (15 U.S.C. §§ 15, 18, 26), Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1& 2), and 28 U.S.C. §§ 1331 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367 because: (1) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the Classes are citizens of a state different from the Defendants; and (2) Plaintiff's state law claims form part of the same case or controversy as their federal claims.

6.      Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. §§ 1391 (b), (c), and (d), because Defendants can be found in and transact substantial business in this District and a substantial part of the events or occurrences giving rise to the claims occurred in this District.

7.      This Court has personal jurisdiction over Defendants because they, either directly or through the ownership and/or control of their subsidiaries, (a) regularly do and solicit substantial business in the United States including this District; (b) are continuously and systematically and present in the United States including this District; (c) have established minimum contacts with the United States and this District; (d) engaged in an illegal scheme to fix prices and maintain and enhance monopoly power that was purposefully directed at the United States and this District; and

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

(e) purposefully availed themselves of the laws of the United States. The Court's exercise of personal jurisdiction would comport with fair play and substantial justice. Furthermore, Defendant Celestron Acquisition, LLC and Co-Conspirator Meade Instruments Corp. are headquartered in California.

## III.   PARTIES

### A.   Plaintiff

8.     Plaintiff James Kaufman is a citizen of North Carolina. During the Class Period, Plaintiff indirectly purchased in North Carolina at least one consumer telescope manufactured or sold by Defendants or Co-Conspirators, and was injured in his business or property as a result of their unlawful conduct alleged herein.

### B.   Defendants

#### 1.   The Synta Defendants

9.     On information and belief, the Synta Defendants are all parents, subsidiaries, and affiliates of one another.

10.    **Defendant Synta Technology Corporation of Taiwan** ("Synta Technology") is a company headquartered at No. 89 Lane 4, Chia An W. Road, Lung-Tan, Taoyuan, 32546, Taiwan R.O.C. On information and belief, together with its parents, subsidiaries and affiliates, it has manufactured, marketed and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including this District, during the Class Period.

11.    **Defendant SW Technology Corporation** ("SW Technology") is a Delaware corporation with its principal place of business at 2835 Columbia Street, Torrance, CA 90503. SW Technology is a subsidiary and wholly owned and/or controlled by its parent, Defendant Synta Technology. On information and belief, together with its parents, subsidiaries and affiliates, SW Technology manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including this District, during the Class Period.

12.    **Defendant Suzhou Synta Optical Technology Co., Ltd**. ("Suzhou Synta") is a company located in Suzhou, China, with its headquarters at No. 65, Yushan Road, New District,

215011, Jiangsu, China. On information and belief, together with its parents, subsidiaries and affiliates, Suzhou Synta manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including this District, during the Class Period.

13.    **Defendant Nantong Schmidt Opto-Electrical Technology Co. Ltd.** ("Nantong Synta") is a company located in Nantong, China, with its principal place of business located No. 399 West Zhongshan Rd, Rugao City Jiangsu, China. On information and belief, together with its parents, subsidiaries and affiliates, Nantong Synta manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including in this District, during the Class Period.

14.    **Defendant Celestron Acquisition, LLC** ("Celestron") is a Delaware corporation with its principal place of business at 2835 Columbia Street, Torrance, California 90503. Celestron is a subsidiary of Defendant SW Technology Corporation, and an affiliate of Defendant Synta Technology. On information and belief, together with its parents, subsidiaries and affiliates, Celestron manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including in this District, during the Class Period.

15.    **Defendant Synta Canada International Enterprises Ltd.** ("Synta Canada") is a Canadian corporation with its principal place of business in British Columbia, Canada. On information and belief, together with its parents, subsidiaries and affiliates, Synta Canada manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including in this District, during the Class Period.

16.    **Defendant Olivon Manufacturing Co. Ltd.** ("Olivon Canada") is a Canadian corporation with its principal place of business at 11880 Hammersmith Way, Richmond, BC V7A 5C8, Canada. On information and belief, together with its parents, subsidiaries and affiliates, Olivon Canada manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including in this District, during the Class Period.

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

17.     **Defendant Olivon USA, LLC** ("Olivon USA") is a Nevada corporation with its principal place of business at 701 Carson Street, Suite 200, Carson City, Nevada 89701. On information and belief, together with its parents, subsidiaries and affiliates, Olivon USA manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including in this District, during the Class Period.

18.     **Defendant Pacific Telescope Corp.** ("Pacific Telescope") is a Canadian corporation with its principal place of business at 11880 Hammersmith Way, Unit 160, Richmond, BC V7A 5C8, Canada. On information and belief, together with its parents, subsidiaries and affiliates, Pacific Telescope Corp. manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including in this District, during the Class Period.

19.     **Defendant Sky-Watcher Canada** is a Canadian corporation with its principal place of business at 11880 Hammersmith Way, Richmond, BC V7A 5C8, Canada. On information and belief, together with its parents, subsidiaries and affiliates, Sky-Watcher Canada manufactured, marketed, and/or sold telescopes and accessories that were purchased throughout the United States, including in this District, during the Class Period.

### 2.     The Sunny Defendant

20.     **Defendant Ningbo Sunny Electronic Co. Ltd.** ("Ningbo Sunny") is a Chinese corporation organized and existing under the laws of China with its principal place of business in Yuyao Zhejiang, China. On information and belief, together with its parents, subsidiaries and affiliates, Ningbo Sunny manufactured, marketed, and/or sold telescopes and accessories that were purchased throughout the United States, including in this District, during the Class Period.

### C.     Agents and Co-Conspirators

### 1.     The Synta Co-Conspirators

21.     **Co-Conspirator Dar Tson ("David") Shen** is the founder, owner, and chairman of the Synta Defendants and Synta Co-Conspirators. These companies are affiliates of each other. Some of them are shell companies and others are holding companies. On information and belief, Shen and his family, including Jean Shen and Sylvia Shen, controlled the aforementioned entities

CLASS ACTION COMPLAINT

during the Class Period. Even though Shen founded and oversees Synta, he was concurrently an officer of Ningbo Sunny from 2001 to 2005—a direct, horizontal competitor. His family members also hold a 26% interest in Ningbo Sunny.

22.     **Co-Conspirator Jean Shen** is the sister of David Shen, who exercises control over Defendants Olivon Manufacturing and Olivon USA through her.

23.     **Co-Conspirator Sylvia Shen** is a member of Defendant Celestron's executive committee, a Director of Defendant Pacific Telescope and Defendant SW Technology's CEO, CFO, and Secretary. She is the sister of David Shen, who exercises control over Defendant Celestron and other Synta affiliates through Sylvia Shen.

24.     **Co-Conspirator Corey Lee** is Defendant Celestron's CEO.

25.     **Co-Conspirator Laurence Huen** is Defendant Celestron's board member and David Shen's close advisor and confidante. Huen assisted Joseph Lupica and acted as a conduit of information between horizontal competitors Synta and Sunny.

26.     **Co-Conspirator Joseph Lupica** is Celestron's former CEO who, through the collusive arrangements of Defendants and Co-Conspirators, became the CEO of Meade after it was acquired by Ningbo Sunny. Lupica replaced Meade's management with officers from Celestron, including Celestron's Vice President of Sales, Victor Aniceto, who was hired as the Vice President of Sales and became the President of Meade after Lupica retired.

27.     **Co-Conspirator Dave Anderson** is also Celestron's former CEO.

28.     **Co-Conspirator Good Advance Industries Ltd.** ("Good Advance") is a Taiwanese corporation with its principal place of business at No. 89 Lane 4 Chia-An W. Road Lung-Tan Taoyuan Taiwan R.O.C. On information and belief, together with its parents, subsidiaries and affiliates, Good Advance manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including in this District, during the Class Period.

### 2.     The Sunny Co-Conspirators

29.     **Co-Conspirator Sunny Optical Technology Co., Ltd.** ("Sunny Optical") is a Chinese affiliate of Ningbo Sunny. On information and belief, together with its parents,

CLASS ACTION COMPLAINT

subsidiaries, and affiliates, Sunny Optical manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or throughout the United States, including in this District, during the Class Period. On information and belief, at all times during the Class Period, Sunny Optical's activities in the United States were under the control and direction of Ningbo Sunny.

30.     **Co-Conspirator Meade Instruments Corp.** ("Meade") is a Delaware corporation with its principal place of business at 27 Hubble, Irvine, California 92618. Meade is a wholly-owned subsidiary of Sunny Optics, Inc., which is wholly owned by Ningbo Sunny. Meade manufactured, marketed, and/or sold telescopes and accessories that were sold, purchased, and/or delivered throughout the United States, including in this District, during the Class Period. On information and belief, at all times during the Class Period, Meade's activities in the United States were under the control and direction of its Ningbo Sunny.

31.     **Co-Conspirator Sunny Optics Inc.** ("Sunny Optics") is a Delaware corporation formed for the purpose of merging with Meade. Sunny Optics is a subsidiary of Ningbo Sunny.

32.     **Co-Conspirator Wenjun ("Peter") Ni** is the founder, owner, and CEO of Ningbo Sunny and, on information and belief, controlled the aforementioned Sunny Co-Conspirators during the Class Period.

33.     **Co-Conspirator Wang WenJian** is the director and controlling shareholder of Sunny Optical and the uncle of Ni.

34.     As indicated above, Defendants and Co-Conspirators shared certain executives that facilitated the conspiracy. For example, although, upon information and belief, David Shen founded Synta Technology in around 1980, he also served as an officer of its direct competitor, Ningbo Sunny, from November 2001 to July 2005. Meanwhile, David Shen's brother and sister-in-law have continuously held a 26% interest in Ningbo Sunny. In addition, Joe Lupica transitioned from Celestron CEO to Meade consultant to Meade CEO.

35.     Various persons and entities not named as Defendants participated as agents and/or co-conspirators in the alleged violations and performed acts and made statements in furtherance of the conspiracy. These other persons and entities facilitated, adhered to, participated in, aided

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

and abetted and/or communicated with others regarding Defendants' anticompetitive conduct. Plaintiff reserves the right to name some or all of these persons and entities as Defendants at a later date. On information and belief, other persons, corporations, partnerships, or business entities, currently unknown to Plaintiff, are agents of Defendants in their unlawful conduct.

36.     Each Defendant acted as the principal, agent, co-conspirator, or joint venturer of or for other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

37.     Individuals alleged to have engaged in misconduct in violation of the federal laws listed herein are alleged to have done so on behalf of all members of their corporate family. Individuals within the companies and customers did not know or did not distinguish between the corporate affiliations of different individuals.

**3.     Defendant Corporate Families Acted as Single Enterprises, with Defendant Parent Companies Exercising Substantial Control over U.S. Affiliates**

38.     Defendants and Co-Conspirators effectuated a cartel to establish prices and allocate the market in which they compete. Defendants and Co-Conspirators intended for their anticompetitive agreement to affect the pricing for all telescopes subject to the cartel's anticompetitive efforts regardless of where they were sold.

39.     Defendants and Co-Conspirators sell their telescopes around the world, including in the United States. Foreign-based Defendants and Co-Conspirators established their United States and North American subsidiaries to market and sell their telescopes in the United States and to effectuate and achieve the cartel's aims and purposes.

40.     The United States and other North American subsidiaries are controlled by their parent companies and officers in China and perform functions dictated from abroad. The Chinese parents and affiliates largely held pricing authority; the subsidiaries had no authority to set telescope prices below the level to which the cartel members agreed.

41.     Because their foreign-based corporate parents or affiliates had significant control over all aspects of the business (*e.g.*, type of telescopes, prices, supply, business strategy, customer development and relations, sales, personnel decisions), the United States (and other North

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

American) subsidiaries operated as little more than distribution and sales offices for their foreign corporate parent or affiliate. Indeed, the foreign corporate parent or affiliate named their own family members employees and officers of their United States' subsidiaries. As a result, the United States (and other North American subsidiaries) were—as intended—able to advance the cartel's aims in the United States.

### 4. Defendants' High-Level Employees Organized the Conspiracy That Their Subordinate Employees—Including Those of Their United States' Subsidiaries—Executed

42. Defendants and Co-Conspirators' anticompetitive conspiracy was arranged at a high-level within their respective corporate families. Both executives and subordinate employees carried out the conspiracy. The subsidiaries and affiliates implemented the conspiratorial agreements within their respective corporate families.

43. The affiliates of each corporate family alleged herein (i.e., Synta and Sunny) operate not as separate corporate entities but as part of a single enterprise. Each corporate family holds itself out to the public as a single, integrated enterprise. Each of the parent and/or foreign entities named in this case operates a hierarchical corporate structure wherein it treats subsidiaries not as separate corporate entities but as mere divisions of the corporate parent. For example, Sunny Optical's financial statements reflect Meade paying invoices issued by Sheppard, Mullin, Richter, & Hampton LLP ("Sheppard Mullin"), the law firm that represented Sunny in the acquisition of Meade.

| Date | Account | Description | Debit | Credit | Amount | Notes |
|------|---------|-------------|-------|--------|--------|-------|
| Feb 14 | 0214-1 | 6000 Acquisition Expense | 100,234.25 | | 100,234.25 | Sheppard Mullin - Legal (Paid by Meade) |
| Feb 14 | 0214-1 | 1200 Intercompany Receivable - Meade | | 100,234.25 | (100,234.25) | Sheppard Mullin - Legal (Paid by Meade) |
| Feb 14 | 0214-2 | 2510 Retained Earning - Current Year | 100,234.25 | | 100,234.25 | P&L Clearing - Feb 14 |
| Feb 14 | 0214-2 | 9000 P&L Clearing | | 100,234.25 | (100,234.25) | P&L Clearing Feb 14 |
| March 14 | 0314-1 | 1000 Cash - East West | | 60.00 | (60.00) | Bank Charge |
| March 14 | 0314-1 | 2200 Loan Payable - Mr Ni | | 563,000.00 | (563,000.00) | Funding from Mr Ni |
| March 14 | 0314-1 | 2500 Owner's Equity | 187,000.00 | | (187,000.00) | Funding from Mr Ni |
| March 14 | 0314-1 | 6500 Bank Charge | 60.00 | | 60.00 | Bank Charge |
| March 14 | 0314-1 | 1200 Intercompany Receivable - Meade | | 3,268.00 | (3,268.00) | Sheppard Mullin- Legal inv # 223143782 paid by Meade |
| March 14 | 0314-1 | 6000 Acquisition Expense | 3,268.00 | | 3,268.00 | Sheppard Mullin- Legal inv # 223143782 paid by Meade |

44. Each corporate parent also coordinates and manages the finances and meetings between officers from each of the different subsidiaries to facilitate an integrated enterprise to link the various supply chains to the corporate families' clients. The parent Defendants dominate and control the finances, policies, and business practices of their various subsidiaries, including the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

1    United States subsidiaries.

2        45.    Because the U.S. and North American subsidiaries were treated as mere distribution

3    and sales offices of the Chinese parents or foreign affiliates, they were kept informed about the

4    competitor meetings and discussions occurring abroad and were not permitted to undercut the

5    pricing and market allocation agreements reached during those meetings and discussions.

6        46.    By virtue of their integrated enterprises, each Defendant and Co-Conspirator

7    entered into the conspiracy on behalf of, and reported these meetings and discussions to, its

8    respective corporate family and United States subsidiaries. In fact, Chinese-based parents and

9    affiliates often provided pricing instructions to their United States subsidiaries, which acted as

10   their distribution and sales arms in the United States.

### 5. Defendants and Co-Conspirators Did Not Distinguish Between Corporate Entities in the Same Corporate Family

13       47.    In meetings and discussions between Defendants and Co-Conspirators in

14   furtherance of the telescope conspiracy, Plaintiff alleges which corporate family was represented

15   in a particular meeting or communications. This is because the individual participants in the

16   conspiratorial meetings and discussions did not distinguish between entities within a particular

17   corporate family, referring to themselves or others, for example, merely as "Synta," "Celestron,"

18   "Sunny," or "Meade." Defendants' officers attended the conspiratorial meetings on behalf of their

19   entire corporate families, including their respective United States' subsidiaries. Further, because

20   of their generic uses of Defendants and Co-Conspirators' names, individual participants in the

21   conspiratorial meetings and discussions did not always know the specific corporate affiliation of

22   their counterparts nor did they distinguish between entities within the respective corporate

23   families. Participants in the conspiratorial meetings entered into agreements on behalf of, and

24   reported these meetings and discussions to their respective corporate families and United States

25   affiliates. As a result, the entire corporate family was represented in meetings and discussions by

26   their agents and were parties to the agreements reached therein.

27       48.    For example, in an email to Anderson, Huen, Chen and Sylvia Shen, Ni wrote "But

28   the premise of this case is CELESTRON/SYNTA should be provided the financial support to

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

SUNNY" and "[a]t present, Meade has already started to borrow money from East West Bank by offering guarantees from sunny."

49.     Similarly, Meade's then Vice-President of Sales Victor Aniceto wrote to then-Meade CEO Defendant Lupica, "Mr. Ni . . . doesn't want to disrupt Synta business. However, this promo will not be disruptive to Celestron business."

50.     Additionally, while at Meade, Lupica wrote in an email to Sunny Optics, stating, "if we take advantage of the strong relationships among Sunny, Synta, Celestron and Meade (under Peter's ownership) we can quickly turn the company around and the four companies can dominate the telescope industry."

51.     The two corporate families were so interrelated that Ningbo Sunny's engagement letter with Sheppard Mullin provided that it would "take direction and communicate directly with [Ningbo Sunny's] advisors, Dave Anderson (President of Celestron), Laurence Huen, David Shen (head of Synta) and Joe Lupica."

52.     Defendants and Co-Conspirators knew the individuals at the conspiratorial meetings represented their entire respective corporate family; Defendants and Co-Conspirators would not have entered into the illegal agreements if affiliate companies could undercut their agreements.

### 6.     The Foreign Companies Named Used Their United States Subsidiaries and Affiliates As Distribution and Sales Arms

53.     Defendants and Co-conspirators' United States subsidiaries are wholly-owned and/or controlled by their foreign parents or affiliates. As part of Defendants' global enterprise, the United States subsidiary or affiliate assists the foreign parent or affiliate with the distribution and/or sale of telescopes to consumers in the United States. In most cases, the United States subsidiaries distribute and/or sell telescopes to customers in the United States after obtaining products manufactured at the foreign parent or affiliate's factories abroad. The United States' subsidiaries facilitate direct purchaser orders for telescopes with parents or affiliates overseas. That is, the foreign parent or affiliate manufactures telescopes abroad and sends the telescopes to the United States, often through its United States (or other North American) subsidiaries or affiliates.

The foreign parents and affiliates make millions of dollars of sales annually to their United States' (and other North American) subsidiaries and affiliates as part of their global business.

54. In sum, the foreign-based Defendants and Co-Conspirators sell to the United States and operate their telescope business as a single global enterprise.

## IV.    INTERSTATE TRADE AND COMMERCE

55. During the Class Period, Defendants, their Co-Conspirators, or one or more of their subsidiaries or affiliates, sold consumer telescopes and accessories in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this District.

56. Sales by Defendants and their Co-Conspirators in the United States to purchasers such as Plaintiff and members of the Classes constitute United States domestic commerce.

57. The collusive conduct of Defendants and their Co-Conspirators within the United States and abroad was intended to produce, and did produce, a substantial effect in the United States. Defendants and their Co-Conspirators expressly aimed their conspiracy at the U.S. marketplace. Their conduct caused injury to Plaintiff and the Classes.

58. Defendants collectively imported hundreds of millions of dollars of consumer telescopes into the United States. Such conduct constitutes United States import trade and/or import commerce.

59. The activities of Defendants in connection with the production, sale, and/or importation of consumer telescopes, and the conduct of Defendants and their Co-Conspirators as alleged in this Complaint: (a) constituted United States domestic interstate trade or commerce; (b) constituted United States import trade or import commerce; and/or (c) were within the flow of and had a direct, substantial, and reasonably foreseeable effect on United States domestic trade or commerce and/or United States import trade or commerce. Given the marketing, importation, and sales by Defendants of consumer telescopes in the United States, and the volume of affected commerce, as alleged in this Complaint, such effects were direct and substantial.

60. The United States is one of the world's largest markets for consumer telescopes. Therefore, it is reasonably foreseeable that Defendants' wrongful conduct, as alleged in this

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Complaint, would raise and artificially inflate prices for consumer telescopes sold in the United States, and would have an effect on United States domestic trade or commerce and/or United States import trade or commerce.

61.     Such effects, including the artificially raised and inflated prices that Plaintiff and members of the proposed Classes paid for consumer telescopes during the Class Period, caused antitrust injury in the United States to Plaintiff and members of the proposed Classes, and give rise to their antitrust claims.

## V.     FACTUAL ALLEGATIONS

### A.     Consumer Telescopes and Accessories

62.     A telescope is an optical instrument that magnifies and enhances the view of distant objects. Most consumer telescopes are either refractor telescopes, reflector telescopes, or Schmidt-Cassegrain telescopes. A refractor telescope use convex lenses to collect, focus, and magnify light. Rays of light travel through the objective (main) lens where they are focused at the focal length of the eyepiece. In contrast, a reflector telescope contains concave mirrors. In reflector telescopes, light travels down the tube where it is reflected up to a secondary mirror near the top of the tube, which directs the light into the eyepiece. Schmidt-Cassegrain telescopes, meanwhile, use both lenses and mirrors in a compound system.



Picture: http://www.occc.edu/ktapp/goexplore/PHYS1013/PHYS_Telescopes/Telescopes_Lecture.htm.

63.     Telescope purchasers may also buy accessories to enhance their viewing experience. For, example, some telescopes can be used with motorized mounts and software that

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    automatically move the telescope to track objects in the sky.

2        **B.    The U.S. Consumer Telescope Market**

3        64.    The relevant product market consists of consumer telescopes and accessories.

4    Consumer telescopes do not include advanced telescopes found at observatories and universities.

5        65.    The relevant geographic market is the United States. The global market for

6    consumer telescopes is at least $200 million annually.[1] North America is the largest market for

7    consumer telescopes. Telescopes are manufactured globally and then distributed in the United

8    States.

9        66.    The number of telescope manufacturers has been consolidating for a number of

10   years. Beginning in 2008, revenue volatility became a concern for industry players and many

11   participant sought to consolidate operations to stabilize fluctuations in revenue and achieve

12   economies of scales.[2]

13       67.    Although Sunny and Synta are each capable of manufacturing all types of consumer

14   telescopes, Sunny and Synta have an illegal agreement that Synta manufactures higher-end

15   products while Sunny manufactures lower-end products. Pursuant to that unlawful agreement,

16   Synta will not manufacture or respond to a request for quotation ("RFQ") for products offered by

17   Sunny and *vice versa*. Because of their agreement, Sunny and Synta can and do charge supra-

18   competitive prices, restrict supply, and engage in other anticompetitive conduct that artificially

19   increases the prices of the telescopes purchased by Plaintiff and members of the Classes.

20       68.    Once the telescopes have been manufactured by Synta and Sunny, Celestron and

21   Meade account for the vast majority of consumer telescope sales in the United States.

22       69.    Synta acquired Celestron in 2005, and Sunny, with Synta's assistance, acquired

23   Meade in 2013. Synta and Sunny manufacture, market, and/or sell their telescopes to distributors,

24   including their respective wholly-owned subsidiaries Celestron and Meade, which then sell the

---

[1] Stuart Parkerson, *Global Amateur Telescope Market Predicted to Grow to $294 Million*, Astronomy Technology Today (Feb. 19, 2020), *available at* https://astronomytechnologytoday.com/2020/02/19/amateur-telescope-market/.

[2] *Telescope Manufacturing in the US Industry Market Research Report Now Available from IBISWorld*, PR Web (Dec. 28, 2012), *available at* https://www.prweb.com/releases/2012/12/prweb10276804.htm.

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

telescopes online, in stores, and through dealers to astronomy enthusiasts throughout the U.S.

**C.** **The Consumer Telescope Market is Ripe for Conspiracy.**

70.     The consumer telescope market is ripe for a price-fixing conspiracy because it (1) has high barriers to entry; (2) is highly concentrated; and (3) has inelastic demand.

**1.**     **The Consumer Telescope Market Has High Barriers to Entry**

71.     A collusive arrangement that raises product prices above competitive levels should attract new entrants to the market seeking to benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely to enter the market. Thus, barriers to entry help facilitate the formation and maintenance of monopolies and cartels.

72.     There are substantial barriers that preclude, reduce, or make entry into the consumer telescope market difficult. A new entrant would face costly and lengthy start-up costs, including multi-million-dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

73.     The high barriers to entry allow Defendants and Co-Conspirators to control prices and output. First, manufacturing telescopes requires high capital investments, and Sunny and Synta are vertically integrated with the largest distributors. There is an insufficient number of independent distributors to render independent manufacturing profitable. Second, manufacturing telescopes requires key intellectual property rights, such as patents on software that automatically detects celestial objects. Meade invented this software and initially owned the patents. Defendants and Co-Conspirators colluded so that Sunny could acquire Meade, thereby blocking independent manufacturers from using this intellectual property to compete with Sunny or Synta.

74.     In 2013, in light of Sunny's acquisition of Meade, which also had manufacturing capabilities, the number of suppliers has essentially dwindled to Sunny and Synta.

**2.**     **The Consumer Telescope Market is Highly Concentrated**

75.     A highly concentrated market is more susceptible to collusion and other anticompetitive practices.

76.     Sunny and Synta transformed the consumer telescope market by colluding to prevent competitors from entering the market and ensuring that they are the only viable sources

CLASS ACTION COMPLAINT

of consumer telescopes.

77.     To do so, Sunny and Synta leveraged their collective market power in consumer telescope manufacturing to control consumer telescope distribution. Because of their vertically-integrated capacities, Celestron and Meade are two of the most prominent consumer telescope distributors.

78.     Furthermore, Sunny and Synta consolidated control of the distribution channels by fixing prices and engaging in anticompetitive conduct. With no other meaningful sources of supply, Plaintiff and the Classes had no choice but to pay the supra-competitive prices caused by Defendants and Co- Conspirators' anticompetitive conduct.

### 3.     Demand for Consumer Telescopes is Inelastic

79.     "Elasticity" describes the sensitivity of supply and demand to changes in one or the other. Demand is "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product. Demand is inelastic where customers have nowhere to turn for cheaper alternatives of similar quality and thus continue to purchase despite increased prices.

80.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic. Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

81.     Demand for consumer telescopes is highly inelastic because there are no close substitutes for these products.

### D.     The Federal Trade Commission's Actions in the Consumer Telescope Market

82.     Unsurprisingly given the aforementioned factors, the Federal Trade Commission ("FTC") has been involved in the consumer telescope market for decades, repeatedly intervening to prevent consolidation and monopolization.

83.     In 1991, the FTC gave final approval to a consent agreement settling charges that a proposed joint venture between Meade and Celestron would have created a virtual monopoly in the manufacture and sale of certain telescopes. The agreement placed a 10-year requirement on

Harbour Group Investments, L.P. and Diethelm Holding Ltd. (the former parents of Meade and Celestron, respectively) to obtain FTC approval before acquiring any company that manufactures or sells certain telescopes in the United States. This consent agreement followed a decision by the U.S. District Court for the District of Columbia granting the FTC's motion for a preliminary injunction barring the acquisition of any assets or other interest in Celestron International by Harbour Group (Meade's parent) and further barring Diethelm (Celestron's parent) from acquiring any assets or other interest in Meade.[3]

84.     Little more than a decade later, in May 2002, the FTC prevented Meade from acquiring Celestron by authorizing its staff to seek a temporary restraining order and preliminary injunction to stop the deal. According to the FTC's complaint, Meade's acquisition of Celestron assets would have adversely affected the performance telescope market and create a monopoly in the Schmidt-Cassegrain telescope market.[4]

**E.     Defendants Are Liable for the Anticompetitive Conduct Alleged**

85.     Yet despite the FTC's efforts, Defendants successfully engaged in an anticompetitive conspiracy to lessen competition and raise prices. Indeed, the fact of Defendants' antitrust liability is not in doubt; the *Orion Litigation* resulted in a jury verdict against Ningbo Sunny, Meade, and Sunny Optical, leading to a $50.4 million partial final judgment. The jury unanimously found, *inter alia*:

    a.     defendants agreed with a competitor to fix the price or credit terms for telescopes and accessories in violation of Section 1 of the Sherman Act;

    b.     defendants agreed with a third party, other than a competitor, to fix the price or credit terms for telescopes and accessories in a manner that unreasonably restrained trade, such that the anticompetitive effects outweighed any procompetitive effects, in violation of Section 1 of the Sherman Act;

---

[3] *FTC v. Harbour Group Investments*, No. 90-2525,1990 WL 198819 (D.D.C. Nov. 19, 1990)
[4] *FTC Authorizes Injunction to Pre-empt Meade Instruments' Purchase of All, or Certain Assets, of Tasco Holdings, Inc.'s Celestron International*, FTC (May 29, 2002), *available at* https://www.ftc.gov/news-events/press-releases/2002/05/ftc-authorizes-injunction-pre-empt-meade-instruments-purchase-all.

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

c.      defendants agreed with a competitor or potential competitor to either (a) not compete with each other in the manufacture or sale of telescopes and accessories, or (b) divide customers or potential customers between them, in violation of Section 1 of the Sherman Act;

d.      defendants agreed with a third party, other than a competitor or potential competitor, to either (a) not compete with each other in the manufacture or sale of telescopes and accessories, or (b) divide customers or potential customers between them in a manner that unreasonably restrained trade, such that the anticompetitive effects outweighed any procompetitive effects, in violation of Section 1 of the Sherman Act;

e.      defendants engaged in anticompetitive conduct in violation of Section 2 of the Sherman Act;

f.      defendants had a specific intent to achieve monopoly power in the telescope manufacturing market in violation of Section 2 of the Sherman Act;

g.      there is or was a dangerous probability that defendants could achieve monopoly power in violation of Section 2 of the Sherman Act;

h.      defendants knowingly entered into an agreement with another person or entity to obtain or maintain monopoly power in the telescope manufacturing market in violation of Section 2 of the Sherman Act;

i.      defendants specifically intended that one of the parties to the agreement would obtain or maintain monopoly power in the telescope manufacturing market in violation of Section 2 of the Sherman Act;

j.      defendants committed an overt act in furtherance of the conspiracy in violation of Section 2 of the Sherman Act; and

k.      Ningbo Sunny and Sunny Optical's acquisition of Meade created a reasonable likelihood of substantially lessening competition or creating a monopoly in the telescope manufacturing market in violation of Section 7

of the Clayton Act.[5]

### F. Defendants and Co-Conspirators Monopolized Different Products in the Consumer Telescope Market

86.    Through their unlawful agreements with horizontal competitors, Synta and Sunny effectively divided the consumer telescope market. Synta and Sunny agreed that Synta would manufacture higher-end products and Sunny would manufacture lower-end products. They also agreed that Synta would not respond to an RFQ for products manufactured by Sunny and *vice versa*. Both adhered to their agreements. As a result of their respective market shares, agreements not to compete, and significant barriers to entry, Synta and Sunny both have, and have maintained, an effective monopoly over the respective products that each sell. Sunny and Synta therefore can and do limit supply, charge supra-competitive prices, and engage in other anticompetitive conduct that artificially increases the prices of the telescopes that they respectively manufacture, market, and/or sell.

### G. Defendants and Co-Conspirators Colluded on Sunny's Acquisition of Meade

87.    Meade was among the leading American telescope manufacturers and suppliers for many years. It owned critical patents, had a manufacturing facility in Mexico, and manufactured high- and low-end telescopes. One of the patents was for GoTo technology, a highly valued type of telescope mount and related software that can automatically point a telescope at astronomical objects that the user selects which was also the subject of extensive litigation between Meade and Celestron.

88.    Jinghua Optical Co. Ltd. ("JOC"), a small telescope manufacturer, made a bid to purchase Meade when it was for sale in 2013. Had JOC purchased Meade, it would have gained critical knowledge about the manufacture of high-end telescopes and accessories as well as Meade's patent portfolio, enabling it to compete with Sunny and Synta in both manufacturing and distribution.

89.    Synta and Sunny did not want JOC to become a more substantial competitor.

---

[5] *See* Verdict Form, *Orion Litigation* (Nov. 26, 2019), ECF No. 501.

CLASS ACTION COMPLAINT

Because Synta could not acquire Meade for itself, with the FTC having prevented Celestron and Meade from merging in 1991 and Synta owning Celestron, it instead agreed that if Sunny moved to acquire Meade, Celestron and Synta would provide financial and other assistance to complete the acquisition.

90.     Synta/Celestron made substantial payments and loans to Ningbo Sunny to facilitate the Meade acquisition. These payments were documented, for example, in an accounting provided by Celestron's CFO, Paul Roth. As part of this unlawful agreement, Celestron took equity in Meade, which is memorialized in shadow books kept by Defendants and Co-Conspirators.

91.     On information and belief, in exchange for this support, Sunny concealed Synta's and Celestron's involvement or assistance in its acquisition of Meade from the FTC; offered Celestron equity in Meade; and provided Celestron and Synta with access to Meade's intellectual property rights, thereby ensuring that Celestron no longer needed to compete with Meade (previously an independent company). Sunny also shared its customers' data—including pricing data—with Celestron and Synta, thus enabling them to coordinate their prices and strategies. This cooperation reinforced Synta and Sunny's respective monopoly in the United States for their products.

92.     Synta and Sunny's combination and conspiracy eliminated a competitor (Meade), increased market concentration, and solidified their monopoly power. Specifically, the effect of Sunny's acquisition of Meade lessened competition, raised the already-high barriers to entry and tended to create monopolies for Synta and Sunny in the United States.

**H.     Defendants and Co-Conspirators Conspired to Interfere with Orion's Acquisition of the Hayneedle Assets**

93.     In 2014, Orion attempted to acquire certain assets, including web domains like telescopes.com, from online retailer, Hayneedle ("Hayneedle Assets"). Sunny and Synta colluded to prevent Orion from doing so. Defendants and Co-Conspirators used their market power to fix credit terms to prevent Orion from acquiring the Hayneedle Assets. Specifically, they cut off Orion's credit when they learned that Orion sought to acquire these assets.

94.     Orion sent a letter of intent to Hayneedle indicating that Orion sought to purchase

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the Hayneedle Assets. Synta then sent an email cutting Orion's credit, stating "[w]e are surprised to know that Orion still want to buy Hayneedle. Since it seems that you still want to carry on this project, we have to protect ourselves to avoid any possible risk and stop your credit immediately." Synta concluded the email by stating, "if Orion really buys Hayneedle, this will be the beginning of hazard." Synta then forwarded this email to Sunny and requested that Sunny also withdraw Orion's line of credit. Sunny then sent Orion an email nearly identical to Synta's email.

95.     With its supplier credit cut off, Orion could not move forward with the asset acquisition. Synta and Sunny therefore sabotaged Orion's purchase of the Hayneedle Assets that would have enabled it to compete with them.

**I.      Illustrative Examples of Defendants' Anticompetitive Conduct and Conspiracy to Fix Prices**

96.     In the *Orion Litigation*, evidence demonstrated that the defendants fixed the prices for consumer telescopes, allocated the market thereof, illegally acquired assets, and unlawfully monopolized, and/or attempted to monopolize, the telescope manufacturing and distribution markets. They also used cooperation and dominance in the consumer telescope manufacturing market to facilitate their companies' takeover of the distribution market. The defendants' anticompetitive conduct includes, without limitation:

a.      Fixing the prices of consumer telescopes;

b.      Allocating the market for consumer telescopes;

c.      Facilitating Sunny's acquisition of Celestron's horizontal competitor, Meade;

d.      Exchanging non-public, material information with each other, including Meade's intellectual property, business plans, and product pricing strategies;

e.      Exchanging non-public, material information about competitors' businesses, including intellectual property, business plans, and product pricing strategies; and

f.      Aiding and abetting each other's consolidation and maintenance of

1    monopoly power.

2         97.    Through these activities, Sunny and Synta illegally combined and conspired with

3    each other enabling them to dominate the consumer telescope market

4         98.    For example, regarding the horizontal competitors' conspiracy to acquire Meade

5    for Sunny, Sunny's Ni confirmed to Celestron's then-CEO David Anderson and directors, David

6    Shen, Laurence Huen, Jack Chen, and Sylvia Shen, that Sunny would purchase Meade to prevent

7    JOC from doing so per the parties' discussion and indicated that Celestron and Synta should

8    provide the financial support to Sunny.

| From: | nbsunny <nbsunny@vip.sina.com> |
|---|---|
| Sent: | Friday, December 13, 2013 12:43 AM |
| To: | DAVE ANDERSON |
| Cc: | david shen; Laurence Huen; Jack chen; shentakuo1 |
| Subject: | Fw: Fw: Celestron Payments星特朗付款 |

Dear Dave,

Thanks for your email and supports!

At the end of June or beginning of July, I discussed with you about the case of purchasing meade in USA. To prevent JOC to buy MEADE, we decided to purchase MEADE by sunny after discussion. But the premise of this case is CELESTRON / SYNTA should be provided the financial support to SUNNY.

At present, Sunny has already paid more than $10 millions to MEADE. According to your email, you said you will not provide the financial support to sunny in 2014. It will not maintain MEADE's operation, if only support them by sunny. We had borrowed a lot of money from bank for MEADE. Moreover, Meade still needs to addition $3.5 millions working capital to support their normal operation work at the first of 2014.

As your mention, the $10 millions that you support us is included the payment of goods that the terms of payment is 100days. But so far, CELESTRON is total paid $4.5 millions if we calculated based on the term of payment is 100 days.

In 2014, we hope the term of payment that CELESTRON pay to sunny will less than 50 days form shipping. And maybe you can pay the SYNTA later; I think Mr. Shen will agree it. At present, Meade has already started to borrow money from East West Bank by offering guarantees from sunny. I think it will help to cushion MEADE if Meade get this money from bank.

Best regards,

Ni Wen Jun

25        99.    The *Orion Litigation* jury subsequently found that Sunny and Synta conspired to

26   acquire Meade. Synta made substantial payments and loans to Sunny to facilitate the Meade

27   acquisition. Celestron took equity in its competitor, Meade, as part of this unlawful arrangement

28   between Sunny and Synta.

CLASS ACTION COMPLAINT

100. Additionally, Sheppard Mullin, which represented Ningbo Sunny in the acquisition of Meade, was ordered to take direction from Synta's Shen and his executives, including Celestron's Joe Lupica and Dave Anderson.

> 1. Scope of Representation. Except as we may agree otherwise in writing, we will be representing only the Client and will not be representing any parent, subsidiary or other affiliated entity nor any shareholder, partner, member, director, officer, employee, agent or insurer of the Client. Except as we may otherwise agree, the terms of this letter apply to other
>
> engagements for the Client that we may undertake. You have advised us that you will obtain tax advice regarding the Matter from a third party; accordingly, our firm will not be providing any tax advice in connection with the Matter, including, without limitation, tax structuring or tax consequences arising out of the Matter. You have instructed us to take direction from and communicate directly with your advisors, Dave Anderson (President of Celestron), Laurence Huen, David Shen (head of Synta) and Joe Lupica.

101. Synta and Sunny engaged in collusive conduct that resulted in Lupica transitioning from CEO of Celestron, to consultant for Meade, to CEO of Meade.

102. When the FTC inquired into whether Synta's Shen was involved in any way in Sunny's Meade acquisition, Sheppard Mullin represented to the FTC that "except for the limited advice to Peter Ni regarding how to acquire a U.S. company . . . , David Shen has no role in the proposed acquisition of Meade." However, David Shen and Synta had agreed to provide financial support to Sunny in connection with the Meade acquisition.

103. After Sunny acquired Meade, Sunny and Synta agreed not to compete with each other. For example, a December 12, 2013 email from Synta's David Shen to Sunny's Ni reflects a request to reach an understanding with Celestron's then-CEO about not competing against Celestron for sales:

> - Bidding with Costco between May and June (compete with Celestron for the price). This is a very important issue. This needs Director Ni to communicate face-to-face with DAVE when he goes to the United States. Don't bid. If you let the thing go by doing this, how would you deal with everything in the future? All products are produced by sunny. Following a conflict, celestron would not trust sunny any longer.
> - Going back to the risk arising out of forwarding SYNTA's order to Boguan Jinghua 8 years ago, it maybe not happen. But they would think that there is no value to fight for the Company. Most of CELESTRONs senior executives left because they are Americans who live for their dreams.
> - we recommend that Director Ni personally take the two actions concurrently, by selling the products to outside China and the United States, or meet with CELESTRON DAVE to resolve difficulties and make every effort to get order from COSTCO.
> - it is worth it to affect the whole thing and personal communication is more important.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

104.     In a June 13, 2014 email, Synta's David Shen informed Sunny's Ni and Celestron's Anderson, that "[t]he best way in the future is to divide the products and sell them into different markets to reduce conflicts."

-------- 转发邮件信息 --------  `Forwarded email`
发件人 : "david shen" <syntadavid@163.com>
发送日期 : 2014-06-13 07:04:18
收件人 : "Laurence Huen" <vancouver_blue_junior@yahoo.com>,DAVE <danderson@celestron.com>,sylvia <shentakuo@gmail.com>
主题 : Re:Laurence 回 复關於David 電話 re:Hayneedle    `Re: Laurence's reply about David's phone`
Laurence & Dave
感謝您的回复，由於收到您的信晚了，再加上沒有 Dave指導性內容,我 也 無法向 peter致信

Thank you for your reply. Since it was late when I received your letter, and I was not given with Dave's guiding information, I was therefore unable to write to Peter. Letters communicated to and from me and Peter should be brief and to the point, so I need to wait for Dave's comments for reference before sending it out.

The materials provided by Dave today are extremely important for reference. Meanwhile, my worries concerning the issue have been also reduced greatly. Since most of Telescope's business comes from Celestron, Celestron deems purchase of Hayneedle by Orion is positive at some points (the positive is more than the negative).But rising of the sales website may harm the business of the other traditional fields. The best way in the future is to divide the products and sell them into different markets to reduce conflicts.
Following purchase of Hayneedle by Orion, what makes it more concerned about is its ability to pay products payable. I suggest that Dave may propose to Orion that if business is continued, we need to know the financial condition of investors behind imaginova. If the fund is the cash increased by the company, then it would be safe. If the fund is borrowed,causing worse situation considering the current heavy debt, we need to deal with it carefully.
Viewing its current suppliers, JOC/GSO/BOSMA/IOPTRON.... no company can replace CELESTRON....SKYWATCHER...MEADE...
If we don't supply products, Hayneedle invested by Orion with $4.5 million would immediately value at less than $2 million. This is my opinion.

105.     Defendants and Co-Conspirators' objective was to ensure that they were able to dominate the consumer telescope market in the United States. To do so, Sunny (and, as a consequence, Meade) agreed not to compete with Celestron. As Meade's then-Vice President of Sales, Victor Aniceto, explained the strategy to Meade's then-CEO Lupica, "Mr. Ni . . . doesn't want to disrupt Synta business. However, this promo will not be disruptive to Celestron business."

CLASS ACTION COMPLAINT

106. In addition, Celestron's current CEO, Corey Lee, conspired with Synta and Sunny to steal competitors' key business information. For example, Sunny's James Chiu provided detailed data for several recent years of Orion orders to Celestron's CEO, Lee:

From: nbsunny [mailto:nbsunny@vip.sina.com]
Sent: Friday, May 22, 2015 4:58 PM
To: COREY LEE
Subject: 回复: RE: orion 订单统计    Re: Order statistics

Dear Corey,

This is for 2014. I will send for 2013 on Monday.

Junwen

Δ π EXHIBIT 73
Chiu
7/2/18

发件人: COREY LEE
发送时间: 2015-05-23 06:31
收件人: nbsunny
主题: RE: Re: orion 订单统计    Subject: Re: Order statistics

Junwen,

Thank you. I assume this information is for Orion orders in 2015? Can you supply sales figures for both 2014 and 2013?

Thank you.

Corey

We plan to launch this at ASAE and sent to the dealers by Saturday, 11/16/13.

Please provide your approval.

Thanks.

**Victor Aniceto**
Vice President of Sales
Meade Instruments Corp.
victor.aniceto@meade.com
Tel - 949.451.1450, ext. 6364
Fax - 949.451.1460  www.meade.com

107. Sunny and Synta also exchanged and fixed prices. They discussed and agreed on the amount to charge distributors. For example, Sunny and Synta discussed Sunny's prices and determined they should be higher, and Synta told Sunny that Sunny's "payment terms should be the same with Suzhou [Synta.]"

CLASS ACTION COMPLAINT

108.     In addition, Defendants and Co-Conspirators' emails reveal their market allocation agreement. For example, Sunny wrote to Synta's Sylvia Shen to discuss "how to avoid conflict with Celestron products" and stated that "[i]f the customer visits our factory and confirms their intention to cooperate with us, we will consider the strategy of separation from Celestron products or adopt different product prices to protect Celestron."

109.     Sunny also explained to Synta's Sylvia Shen that Sunny "will take prompt action to avoid conflict in the astronomical market," including "abandoning the small OEM customers so as to protect big customers."

110.     In sum, as Synta's David Shen explained in an email to Sunny: "Director Ni will not be a competitor and is trustworthy when it comes to business."

111.     Defendants and Co-Conspirators coordinated and raised their prices because of their *per se* illegal agreements and understandings. They sought to avoid competition with each other and developed strategies to protect each other from further competition. According to Co-Conspirator Lupica, they did this to "dominate the telescope industry." As Synta's David Shen explained, "we do not need to wage a price war[.]"

## VI.     PLAINTIFF AND THE CLASSES SUFFERED ANTITRUST INJURY

112.     Price competition has been restrained or eliminated in the consumer telescope market because Sunny and Synta agreed to fix prices, allocate the market among themselves, and limit supply, thereby raising consumer prices.

113.     Competition, innovation, and consumer choice have also been restrained due to Sunny's acquisition of Meade. Since Sunny acquired Meade, Meade has not significantly competed with Celestron. The acquisition of Meade also prevented companies that are trying to compete against Defendants, such as JOC, from obtaining a potential manufacturing facility and important intellectual property that would have increased competition.

114.     Price competition has also been restrained or eliminated because Sunny and Synta allocated the consumer telescope market among themselves. Additionally, by fixing prices and credit terms so that unaffiliated distributors pay more than affiliated distributors, and by sharing independent distributors' confidential business information with each other, Sunny and Synta have

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

prevented independent distributors from fairly competing against their own affiliates and putting downward pressure on prices.

115.   The conspiracy alleged herein had the following effects, among others:

   a.   The number of manufacturers and distributors of consumer telescopes and accessories have been reduced as a result of Synta's acquisition of Celestron and Sunny's acquisition of Meade;

   b.   There have been no new entrants into the consumer telescope market for a decade and many independent manufacturers and distributors have gone out of business as a result of Synta and Sunny's collusion;

   c.   Price competition has been restrained or eliminated with respect to consumer telescopes;

   d.   The prices of consumer telescopes have been fixed, raised, maintained, or stabilized at artificially inflated levels;

   e.   Indirect purchasers of telescopes have been deprived of free and open competition; and

   f.   Indirect purchasers of telescopes paid artificially inflated prices.

116.   As a result of Defendants' anticompetitive conspiracy, Plaintiff and the members of the Classes paid supra-competitive prices for telescopes during the Class Period. Telescope distributors and retailers passed on inflated prices to Plaintiff and the members of the Classes. Those overcharges unjustly enriched Defendants. Telescopes follow a traceable physical chain of distribution from Defendants to Plaintiff and members of the Classes, and any cost changes attributable to telescopes can be traced through the chain of distribution to Plaintiff and members of the Classes.

117.   Just as telescopes can be physically traced through the supply chain, so can their prices be traced to show that changes in the prices paid by direct purchasers affect prices paid by indirect purchasers. Here, the inflated prices of telescopes resulting from Defendants' price-fixing conspiracy have been passed on to Plaintiff and members of the Classes by distributors and retailers.

CLASS ACTION COMPLAINT

118.     The economic and legal literature has recognized that unlawful overcharges in a multiple-level distribution chain normally result in higher prices for those at the bottom of the distribution chain. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple- level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."[6]

119.     As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers . . . . Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust law and economics as well.[7]

120.     The purpose of Defendants' conspiratorial conduct was to raise, fix, rig or stabilize the price of telescopes. Economists use regression analysis to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.

121.     Regression analysis is commonly used to determine the impact of a price increase on one cost upon another, making it possible to isolate and identify only the impact of an increase in the price of telescopes to distributors and retailers on the price of telescopes to consumers while

---

[6] Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. Pa. L. Rev. 268, 275 (1979).
[7] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, No. J.C.C.P. No. 4106 (Cal. Sup. Ct. Aug. 29, 2000).

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

controlling for the impact of other price-determining factors. Accordingly, the precise amount of the overcharge affecting the prices of telescopes can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiff and members of the Classes can be quantified.

122.    By reason of the violations of the antitrust, consumer protection, and unjust enrichment laws alleged herein, Plaintiff and the members of the Classes have sustained injury to their business and property, having paid higher prices for telescopes than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. Plaintiff and members of the classes suffered antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## VII.    CLASS ACTION ALLEGATIONS

### A.    Class Definitions

123.    Plaintiff brings this action on behalf of himself and as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief pursuant to Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2), on behalf of the following class (the "Nationwide Injunctive Relief Class"):

> All persons and entities that indirectly purchased in the United States a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

124.    Plaintiff also brings this action on behalf of himself and as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, seeking damages pursuant to California state antitrust and consumer protection laws, as well as the common law of unjust enrichment on behalf of the following class ("Damages Class"):

> All persons and entities that indirectly purchased in one of the Indirect Purchaser States a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

125.    The "Indirect Purchaser States" refers to: Arizona, Arkansas, California,

Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

126. As an alternative to the Damages Class, in the event California law is not applied to Class members' claims residing in states that recognize a form of indirect purchaser cause of action, Plaintiff will seek certification of the following classes ("State Damages Classes"):

**Arizona**: All persons and entities that indirectly purchased in Arizona a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Arkansas**: All persons and entities that indirectly purchased in Arkansas a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**California**: All persons and entities that indirectly purchased in California a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Connecticut**: All persons and entities that indirectly purchased in Connecticut a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**District of Columbia**: All persons and entities that indirectly purchased in the District of Columbia a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Florida**: All persons and entities that indirectly purchased in Florida a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Hawaii**: All persons and entities that indirectly purchased in Hawaii a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Illinois**: All persons and entities that indirectly purchased in Illinois a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Iowa**: All persons and entities that indirectly purchased in Iowa a consumer

CLASS ACTION COMPLAINT

telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Kansas**: All persons and entities that indirectly purchased in Kansas a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Maine**: All persons and entities that indirectly purchased in Maine a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Maryland**: All persons and entities that indirectly purchased in Maryland a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Massachusetts**: All persons and entities that indirectly purchased in Massachusetts a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Michigan**: All persons and entities that indirectly purchased in Michigan a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Minnesota**: All persons and entities that indirectly purchased in Minnesota a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Mississippi**: All persons and entities that indirectly purchased in Mississippi a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Missouri**: All persons and entities that indirectly purchased in Missouri a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Montana**: All persons and entities that indirectly purchased in Montana a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Nebraska**: All persons and entities that indirectly purchased in Nebraska a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

CLASS ACTION COMPLAINT

**Nevada**: All persons and entities that indirectly purchased in Nevada a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**New Hampshire**: All persons and entities that indirectly purchased in New Hampshire a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**New Mexico**: All persons and entities that indirectly purchased in New Mexico a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**New York**: All persons and entities that indirectly purchased in New York a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**North Carolina**: All persons and entities that indirectly purchased in North Carolina a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**North Dakota**: All persons and entities that indirectly purchased in North Dakota a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Oregon**: All persons and entities that indirectly purchased in Oregon a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Rhode Island**: All persons and entities that indirectly purchased in Rhode Island a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**South Carolina**: All persons and entities that indirectly purchased in South Carolina a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**South Dakota**: All persons and entities that indirectly purchased in South Dakota a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Tennessee**: All persons and entities that indirectly purchased in Tennessee a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**Utah**: All persons and entities that indirectly purchased in Utah a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Vermont**: All persons and entities that indirectly purchased in Vermont a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Virginia**: All persons and entities that indirectly purchased in Virginia a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**West Virginia**: All persons and entities that indirectly purchased in West Virginia a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

**Wisconsin**: All persons and entities that indirectly purchased in Wisconsin a consumer telescope for their own use and not for resale that was manufactured or sold by the Defendants or their Co-Conspirators, or any current or former affiliate thereof, during the Class Period.

127. Excluded from the Classes are Defendants and their employees, affiliates, parents, and subsidiaries, whether or not named in this Complaint, as well as all federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

128. The Classes are so numerous and geographically dispersed across the country such that joinder of all members is impracticable. While the exact number of members of the Classes is unknown to Plaintiff at this time, based on the nature of the trade and commerce involved, Plaintiff reasonably believes that there are at least thousands of members in the Classes and that their identities can be identified from records in Defendants' possession, custody, or control.

129. Plaintiff's claims are typical of the claims of the other members of the Classes. There are questions of law and fact common to the Classes that relate to the existence of the anticompetitive conduct alleged, and the type and common pattern of injury sustained as a result thereof, including, but not limited to:

a. Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the

CLASS ACTION COMPLAINT

prices of telescopes and accessories sold in the United States;

b.    The identity of the participants of the alleged conspiracy;

c.    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

d.    Whether the consumer telescope market constitutes a relevant product market;

e.    Whether the United States constitutes a relevant geographic market for consumer telescopes;

f.    Whether Defendants possess market or monopoly power in the U.S. consumer telescope market;

g.    Whether Defendants and their alleged horizontal competitors agreed or combined to restrain competition and exclude competitors from the consumer telescope market;

h.    Whether Defendants entered into concerted refusals to deal to foreclose competition and exclude competitors from the consumer telescope market;

i.    Whether the alleged conspiracy violated the Sherman Act;

j.    Whether the alleged monopoly violated the Sherman Act;

k.    Whether the alleged attempt to monopolize violated the Sherman Act;

l.    Whether the Meade Acquisition violated Section 7 of the Clayton Act;

m.    Whether Defendants' conduct violated the state antitrust laws;

n.    Whether Defendants' conduct violated the state consumer protection laws;

o.    Whether Defendants unjustly enriched themselves to the detriment of the Plaintiff and the members of the Classes;

p.    Whether the conduct of Defendants and their co-conspirators caused injury to the business and property of Plaintiff and the members of the Classes;

q.    The effect of the alleged conspiracy on the prices of consumer telescopes and accessories sold in the United States during the Class Period;

r.    Whether Plaintiff and members of the Classes had any reason to know or

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

suspect the conspiracy, or any means to discover the conspiracy;

s.    Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiff and the members of the Classes;

t.    The appropriate injunctive and related equitable relief for the Nationwide Class; and

u.    The appropriate class-wide measure of damages for the Damages Class, or, alternatively, the State Damages Classes.

130.    Like all members of the Classes, Plaintiff purchased a telescope indirectly from one or more Defendants at supra-competitive prices set by and through Defendants' anticompetitive conduct. Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Classes. Plaintiff is a member of the Classes, has claims that are typical of the claims of the Class members, and will fairly and adequately protect the interests of the Classes. In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

131.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications.

**B.    California Law Should Be Applied to Establish the Damages Class**

132.    California law should apply to a class of indirect purchaser plaintiffs from the Indirect Purchaser States because many of the parties involved were located in California and carried out acts in furtherance of the conspiracy in the state; because certain targets of Defendants' anticompetitive conduct can be found in the state and because Defendants targeted the state; and because anticompetitive conduct was coordinated in California.

133.    Aside from the foreign entities, the most critical corporate entities furthering the conspiracy alleged herein were incorporated in or carried out their principal place of business in California. For example, Defendants Celestron and SW Technology are headquartered and have their principal places of business in California, and carried out acts in furtherance of the conspiracy within the state.

134.    Co-Conspirator Meade is also headquartered in Irvine, California, and carried out

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

acts in furtherance of the conspiracy in California. According to an April 11, 2014 memorandum from Lupica to Ni, when Sunny acquired Meade in 2013, Meade had over 10 legal entities formed in California.

135. David Shen regularly comes to this District and other places in the U.S. to meet with United States distributors of Synta products, and carried out acts in furtherance of the conspiracy in California.

136. Lupica and Lee reside in California and carried out acts in furtherance of the conspiracy from the state.

137. Sheppard Mullin, the law firm that helped facilitate the conspiracy, did so from California. For example, Sheppard Mullin's engagement letter with Sunny in connection with Sunny's acquisition of Meade specifies that "this agreement will be governed by the laws of California without regard to its conflict rules," and lawyers involved in the structuring and negotiation of the acquisition were based in California.

138. Defendants and their co-conspirators directed their conduct at persons and activities within California. For example, Orion, the plaintiff in the *Orion Litigation*, has corporate offices in Watsonville, California and retail locations in both Watsonville and Cupertino, California. In addition, there are also at least 73 amateur astronomy clubs in California that feature meetings, viewing nights, star parties, and stargazing programs, and whose members have likely been affected by Defendants' anticompetitive conduct.

139. Defendants have violated California antitrust and consumer protection laws, and California has an interest in protecting its own consumers and in punishing businesses like Defendants that operate within its borders. Accordingly, the Court should certify the Damages Class. Alternatively, however, the Court may certify the State Damages Classes.

## VIII. THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFF'S CLAIMS

### A. The Statute of Limitations Did Not Begin to Run Because Plaintiff Did Not and Could Not Discover Plaintiff's Claims

140. The discovery rule tolled any statute of limitations otherwise applicable to the claims asserted herein.

CLASS ACTION COMPLAINT

141.    Plaintiff and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants engaged in anticompetitive conduct, until at least September 2019, when evidence of Defendants' conduct was first made public in the *Orion Litigation*.

142.    Plaintiff and members of the Classes had no knowledge of the anticompetitive conduct or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth.

143.    Defendants' conspiracy was elaborate and concealed. No information concerning the conspiracy was in the public domain or available to Plaintiff and members of the Classes.

144.    For these reasons, the statute of limitations as to the claims of Plaintiff and the Classes did not begin to run until, at the earliest, September 2019.

**B.      Fraudulent Concealment Tolled the Statute of Limitations**

145.    In the alternative, Defendants' fraudulent concealment tolled the statute of limitations on the claims asserted by Plaintiff and the Classes.

146.    Under the fraudulent concealment doctrine, the claims of Plaintiff and members of the Classes only accrue upon discovery of Defendants' anticompetitive conspiracy and conduct.

147.    Plaintiff and members of the Classes were kept ignorant by Defendants of crucial information required for the prosecution of their claims, without any fault or lack of diligence on their part. Plaintiff and members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged.

148.    Plaintiff and members of the Classes were unaware of Defendants' unlawful conduct, and did not know that they were paying supra-competitive prices for consumer telescopes in the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiff and members of the Classes that they were being injured by Defendants' unlawful conduct.

149.    The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

150.    For example, Synta and Sunny concealed the existence of their transactions in

connection with Sunny's acquisition of Meade. In a December 12, 2013 email, David Anderson revealed that "Since July Celestron has made $10 million in anticipated payments to Sunny. This represents a majority of the monies that will be paid to Sunny this year. If Celestron continues with this payment pattern it will need to disclose this arrangement to its auditors and its bank. Though we see this as temporary an outside group (such as the bank or auditing firm) will interpret it as a significant change due to the fact that the majority of payments for the last 7 months were made in anticipation with no discernable benefit to Celestron."

151.    Additionally, when the FTC inquired into whether Synta's David Shen was involved in Sunny's Meade acquisition, Sheppard Mullin responded in an August 22, 2013 email that "except for the limited advice to Peter Ni regarding how to acquire a U.S. company. . . , David Shen has no role in the proposed acquisition of Meade[.]" This statement was false.

152.    Furthermore, as part of Synta and Sunny's collusion regarding Meade, Celestron took equity in Meade, which is memorialized in Defendants and Co-Conspirators' shadow books.

153.    Defendants and their Co-Conspirators made affirmative public misrepresentations concerning fair competition in the market for consumer telescopes. For example, in Forms 10-K filed with the U.S. Securities and Exchange Commission each year from 2006 through 2013, Co-Conspirator Meade stated:

> We face intense competition, including competition from companies with significantly greater resources, and, if we are unable to compete effectively with these competitors, our market share may decline and our business could be harmed.

> We face intense competition from other established companies. A number of our competitors have significantly greater financial, technological, engineering, manufacturing, marketing and distribution resources than we do. Their greater capabilities in these areas may enable them to better withstand periodic downturns in the consumer optics market, compete more effectively on the basis of price and production and more quickly develop new products. In addition, new companies may enter the markets in which we compete, further increasing competition in the consumer optics industry.

These statements were materially false and misleading. Rather than face intense competition, compete on the basis of price or production, or expect new market entrants, Meade knew that its anticompetitive conduct and that of its co-conspirators precluded fair competition.

154.    By its very nature, Defendants' and their co-conspirators' anticompetitive conduct

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

and conspiracy was inherently self-concealing. Consumer telescopes are not exempt from antitrust regulation and, thus, Plaintiff and members of the Classes reasonably considered the consumer telescope industry to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' prices for consumer telescopes.

155. Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed until at least September 2019, when evidence of Defendants' conduct was first made public in the *Orion Litigation*. Indeed, the *Orion Litigation* defendants previously denied many of the allegations made against them, even going so far as to call Orion's claims "baseless."[8]

156. For these reasons, the statute of limitations applicable to the claims of Plaintiff and the Classes was tolled and did not begin to run.

## IX. CAUSES OF ACTION

### First Cause of Action
### Violation of Section 1 of the Sherman Act (15 U.S.C. § 1)
### Restraint of Trade (on behalf of Plaintiff and the Nationwide Class)

157. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

158. Defendants and co-conspirators, both named and unnamed, entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

159. The acts done by Defendants as part of, and in furtherance of, its and its co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their

---

[8] *See* Answer of Defendant Ningbo Sunny Electronic Co., Ltd., Sunny Optics, Inc., and Meade Instruments Corp. to Plaintiff's First Amended Complaint, *Orion Litigation*, (N.D. Cal. April 19, 2019), ECF No. 234; Defendants' Notice of Motion and Cross-Motion for Summary Judgment, Opposition to Plaintiff's Motion for Summary Judgment, and Memorandum of Points and Authorities in Support Thereof at 1, *Orion Litigation* (N.D. Cal. Aug. 8, 2019), ECF No. 270 (calling Orion's claims "baseless").

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

affairs.

160.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for consumer telescopes, thereby creating anticompetitive effects.

161.    The anticompetitive acts were intentionally directed at the United States market for consumer telescopes and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for consumer telescopes throughout the United States.

162.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for consumer telescopes.

163.    As a result of Defendants' unlawful conduct, Plaintiff and members of the Class who purchased consumer telescopes have been harmed by being forced to pay inflated, supra-competitive prices.

164.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

165.    Defendants and their co-conspirators' conspiracy had, among others, the following effects:

      a.    Price competition in the market for consumer telescopes and accessories has been restrained, suppressed, and/or eliminated in the United States;

      b.    Prices for consumer telescopes and accessories sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non- competitive levels in the United States; and

      c.    Plaintiff and members of the Class who purchased consumer telescopes indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

166.    As a direct and proximate result of Defendants' anticompetitive conduct, Plaintiff and members of the Class have been injured and will continue to be injured in their business or

CLASS ACTION COMPLAINT

property by paying more for consumer telescopes than they would have paid and will pay in the absence of the conspiracy.

167.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

168.    Plaintiff and members of the Class are entitled to injunctive and equitable relief against Defendants, preventing and restraining the violations alleged herein.

<u>Second Cause of Action</u>
**Violation of Section 2 of the Sherman Act (15 U.S.C. § 2)**
**Monopolization (on behalf of Plaintiff and the Nationwide Class)**

169.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

170.    Defendants and Co-Conspirators have obtained monopoly power in the consumer telescope market in the United States through:

a.      Synta's acquisition of Celestron in 2005;

b.      Synta facilitating Sunny's acquisition of Meade in 2013, thereby eliminating Meade as a competing manufacturer and distributor and increasing market concentration;

c.      Synta and Sunny agreeing to allocate the consumer telescope market such that Synta manufacturers higher-end products and Sunny manufacturers lower-end products;

d.      Synta and Sunny agreeing to not bid on RFQs for each other's product offerings;

e.      Synta and Sunny exchanging their intellectual property and material, non-public information with each other, thereby enabling them to coordinate prices and strategies; and

f.      Synta and Sunny exchanging their competitors' (*e.g.*, Orion's) intellectual property and material, non-public information with each other, thereby enabling them to coordinate prices and strategies.

171.    Defendants and Co-Conspirators have willfully acquired or maintained their monopoly in the consumer telescope market in the United States through the aforementioned

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

conduct plus:

      a.    Colluding to prevent JOC from acquiring Meade;

      b.    Making false representations to the FTC regarding Synta's involvement in Sunny's acquisition of Meade; and

      c.    Colluding to sabotage Orion's acquisition of the Hayneedle Assets.

172.    Defendants' acquisition or maintenance of its monopoly in the consumer telescope market in the United States is not a result of growth or development as a consequence of a superior product, business acumen, or historic accident, but is the result of the unlawful conduct alleged herein.

173.    There is no procompetitive justification for Defendants' anticompetitive conduct that outweighs its anticompetitive effects; namely, the foreclosure of competition in the consumer telescope market. Any possible procompetitive benefits for such conduct could have been obtained by less restrictive alternatives.

174.    Defendants' willful acquisition or maintenance of its monopoly in the consumer telescope market in the United States injured, and continues to injure, Plaintiff and members of the Class in their business or property by:

      a.    Restricting output and limiting consumer choice in the consumer telescope market; and

      b.    Forcing Plaintiff and members of the Class to pay artificially high, supra-competitive prices for consumer telescopes.

175.    The injury to Plaintiff and members of the Class was a foreseeable consequence of Defendants' willful acquisition or maintenance of its monopoly in the consumer telescope market.

176.    Plaintiff and members of the Class have suffered irreparable harm and do not have an adequate remedy at law. Accordingly, Plaintiff and members of the Class seek injunctive and equitable relief.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**Third Cause of Action**
**Violation of Section 2 of the Sherman Act (15 U.S.C. § 2)**
**Attempted Monopolization**
**(on behalf of Plaintiff and the Nationwide Class)**

177.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

178.    Defendants have attempted to monopolize the consumer telescope market in the United States through:

    a.    Synta's acquisition of Celestron in 2005;

    b.    Synta facilitating Sunny's acquisition of Meade in 2013, thereby eliminating Meade as a competitor manufacturer and distributor and increasing market concentration;

    c.    Synta and Sunny agreeing to allocate the consumer telescope market such that Synta manufacturers higher-end products and Sunny manufacturers lower-end products;

    d.    Synta and Sunny agreeing to not bid on RFQs for each other's product offerings;

    e.    Synta and Sunny exchanging their intellectual property and material, non-public information with each other, thereby enabling them to coordinate prices and strategies; and

    f.    Synta and Sunny exchanging their competitors' (*e.g.*, Orion's) intellectual property and material, non-public information with each other, thereby enabling them to coordinate prices and strategies.

179.    Defendants have willfully engaged in anticompetitive conduct with the specific intent of monopolizing the consumer telescope market in the United States through the aforementioned conduct plus:

    a.    Colluding to prevent JOC from acquiring Meade;

    b.    Making false representations to the FTC regarding Synta's involvement in Sunny's acquisition of Meade; and

    c.    Colluding to sabotage Orion's acquisition of the Hayneedle Assets.

CLASS ACTION COMPLAINT

180.     The anticompetitive conduct undertaken by Defendants creates a dangerous probability that Defendants will achieve monopoly power in the consumer telescope market in the United States. Any possible procompetitive benefits for such conduct could have been obtained by less restrictive alternatives.

181.     Defendants' anticompetitive conduct, which was done with the intent of monopolizing the consumer telescope market in the United States, injured, and continues to injure, Plaintiff and members of the Class in their business or property by:

>     a.     Restricting output and limiting choice in the consumer telescope market; and

>     b.     Forcing Plaintiff and members of the Class to pay artificially high, supra-competitive prices for telescopes.

182.     The injury to Plaintiff and members of the Class was a foreseeable consequence of Defendants' unlawful conduct and was done with the specific intent of monopolizing the consumer telescope market.

183.     Plaintiff and members of the Class have suffered irreparable harm and do not have an adequate remedy at law. Accordingly, Plaintiff and members of the Class seek injunctive and equitable relief.

**Fourth Cause of Action**
**Violation of Section 7 of the Clayton Act (15 U.S.C. § 18)**
**(on behalf of Plaintiff and the Nationwide Class)**

184.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

185.     As a result of Sunny's acquisition of Meade and Synta's facilitation thereof, Synta and Sunny have been able to exercise market power in the consumer telescope market. The acquisition further established large syndicates of telescope manufacturers and distributors, increasing concentration in the consumer telescope market.

186.     It is unlikely that entry into the market would remedy, in a timely manner, the anticompetitive effects from Sunny's acquisition of Meade in 2013. Entry is difficult and likely to take years because of the intellectual property needed to manufacture telescopes, the time required to plan for and to complete manufacturing facilities, and the time required to plan for and establish

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the distribution channels.

187. The effect of the mergers substantially lessens competition in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, in the following ways:

    a. Eliminating actual, direct, and substantial competition between Synta and Sunny in the consumer telescope market;

    b. Increasing the ability of the merged entities to unilaterally raise prices of consumer telescopes and accessories;

    c. Eliminating Meade as a substantial and independent competitor in the consumer telescope manufacturing and distribution market;

    d. Eliminating the diversity of product offerings by Defendants;

    e. Increasing the prices of telescopes to consumers; and

    f. Reducing incentives to improve product quality.

188. Sunny's acquisition of Meade has substantially lessened competition in the consumer telescope market in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, decreased telescope product options and increased telescope prices.

189. As a direct and proximate result of Defendants' anticompetitive conduct, Plaintiff and members of the Class have been injured in their business or property and will continue to be injured in their business or property by paying more for consumer telescopes than they would have paid and will pay in the absence of Sunny's unlawful acquisition of Meade.

### Fifth Cause of Action
### Violation of State Antitrust Statutes
**(on behalf of Plaintiff and the Damages Class, or Alternatively, the State Damages Classes)**

190. Plaintiff asserts these state law claims on behalf of the Damages Class, or alternatively, the State Damages Classes.

191. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

192. During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of consumer telescopes in unreasonable restraint of trade and commerce and in violation of the state antitrust and other statutes set forth below.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

193.    The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels the prices for consumer telescopes and to allocate customers for these products in the United States.

194.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including: participating in meetings and conversations among themselves in the United States and elsewhere during which they exchanged pricing information and agreed to price consumer telescopes at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Classes with respect to consumer telescopes sold in the United States; allocating customers and markets for consumer telescopes sold in, or for delivery to, the United States in furtherance of their agreements; and participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

195.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to consumer telescopes.

196.    Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

197.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Arizona** law:

  a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

  b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Arizona; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Arizona; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

    c.    During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

    d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

    e.    Accordingly, Plaintiff and relevant Class members seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq*.

198.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **California** law:

    a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the California Cartwright Act, California Business and Professions Code, §§ 16700, *et seq*.

    b.    During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Each Defendant has acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, consumer telescopes at supra-competitive levels.

    c.    The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, consumer telescopes.

    d.    For the purpose of forming and effectuating the unlawful trust, Defendants

    CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) fixing, raising, stabilizing, and pegging the price of consumer telescopes; and (2) allocating among themselves the production of consumer telescopes.

e.      The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of consumer telescopes has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for consumer telescopes sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased consumer telescopes have been deprived of the benefit of free and open competition.

f.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property in that they paid more for consumer telescopes than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of the Cartwright Act, Plaintiff and relevant Class members seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

199.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **District of Columbia** law:

a.      Defendants entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

b.      Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and

eliminated throughout the District of Columbia; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c. During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

d. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e. Accordingly, Plaintiff and relevant Class members seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

200. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Hawaii** law:

a. Defendants entered into an unlawful agreement in restraint of trade in violation of the Hawaii Antitrust Act, Haw. Rev. Stat. § 480-4.

b. Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and members of the relevant Class paid supra-competitive, artificially inflated prices for consumer telescopes.

c. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

d. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property

and are threatened with further injury.

    e.    Accordingly, Plaintiff and relevant Class members seek all forms of relief available under the Hawaii Antitrust Act.

201.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Iowa** law:

    a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq*.

    b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Iowa; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

    c.    During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

    d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

    e.    Accordingly, Plaintiff and relevant Class members seek all forms of relief available under Iowa Code §§ 553.1, *et seq*.

202.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Kansas** law:

    a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

    b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Kansas; (2) consumer telescope prices were raised,

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

    CLASS ACTION COMPLAINT

fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.    During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e.    Accordingly, Plaintiff and relevant Class members seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

203.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Maine** law:

a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. tit. 10, §§ 1101, *et seq.*

b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Maine; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.    During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

e.  Accordingly, Plaintiff and relevant Class members seek all relief available under Maine Rev. Stat. Ann. tit. 10, §§ 1101, *et seq.*

204.  Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Maryland** law:

a.  Defendants entered into an unlawful agreement in restraint of trade in violation of the Maryland Antitrust Act, Md. Code. Ann., Com. Law § 11-201, *et seq.*

b.  Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Maryland; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maryland; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.  During the Class Period, Defendants' illegal conduct substantially affected Maryland commerce.

d.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e.  Accordingly, Plaintiff and relevant Class members seek all relief available under Md. Code Ann., Com. Law § 11-201, *et seq.*

205.  Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Michigan** law:

a.  Defendants entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

b.      Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Michigan; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.      During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e.      Accordingly, Plaintiff and relevant Class members seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

206.      Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Minnesota** law:

a.      Defendants entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

b.      Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

c.      During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e.      Accordingly, Plaintiff and relevant Class members seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

207.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Mississippi** law:

a.      Defendants entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

b.      Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.      During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e.      Accordingly, Plaintiff and relevant Class members seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

208.    Plaintiff incorporates and realleges each and every allegation set forth in the

CLASS ACTION COMPLAINT

preceding paragraphs of this Complaint and further alleges the following violation of **Nebraska** law:

    a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

    b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

    c.    During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

    d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

    e.    Accordingly, Plaintiff and relevant Class members seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

209. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Nevada** law:

    a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

    b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Nevada; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and relevant Class members were deprived of free

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

d. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e. Accordingly, Plaintiff and relevant Class members seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

210. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **New Hampshire** law:

a. Defendants entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

b. Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

d. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e. Accordingly, Plaintiff and relevant Class members seek all relief available

1                  under New Hampshire Rev. Stat. Ann. §§ 356:1, *et seq.*

2       211.   Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **New Mexico** law:

          a.   Defendants entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

          b.   Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

          c.   During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

          d.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

          e.   Accordingly, Plaintiff and relevant Class members seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

212.   Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **New York** law:

          a.   Defendants entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

          b.   Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

eliminated throughout New York; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.  During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

d.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e.  The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiff and relevant Class members seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

213.  Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **North Carolina** law:

a.  Defendants entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

b.  Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.  During the Class Period, Defendants' illegal conduct substantially affected

CLASS ACTION COMPLAINT

North Carolina commerce.

    d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

    e.    Accordingly, Plaintiff and relevant Class members seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq.*

214.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **North Dakota** law:

    a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

    b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

    c.    During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

    d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

    e.    Accordingly, Plaintiff and relevant Class members seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

215.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Oregon** law:

    CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq*.

b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Oregon; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.    During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e.    Accordingly, Plaintiff and relevant Class members seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

216.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Rhode Island** law:

a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the Rhode Island Antitrust Act, R.I. Gen. Laws §§ 6-36-1, *et seq*.

b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1      members paid supra-competitive, artificially inflated prices for consumer

2      telescopes.

3    c.    During the Class Period, Defendants' illegal conduct had a substantial

4      effect on Rhode Island commerce.

5    d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

6      and relevant Class members were injured in their business and property

7      and are threatened with further injury.

8    e.    Accordingly, Plaintiff and relevant Class members seek all relief available

9      under R.I. Gen. Laws §§ 6-36-1, *et seq.*

10      217.    Plaintiff incorporates and realleges each and every allegation set forth in the

11  preceding paragraphs of this Complaint and further alleges the following violation of **South**

12  **Dakota** law:

13    a.    Defendants entered into an unlawful agreement in restraint of trade in

14      violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

15    b.    Defendants' combinations or conspiracies had the following effects: (1)

16      consumer telescope price competition was restrained, suppressed, and

17      eliminated throughout South Dakota; (2) consumer telescope prices were

18      raised, fixed, maintained and stabilized at artificially high levels

19      throughout South Dakota; (3) Plaintiff and relevant Class members were

20      deprived of free and open competition; and (4) Plaintiff and relevant Class

21      members paid supra-competitive, artificially inflated prices for consumer

22      telescopes.

23    c.    During the Class Period, Defendants' illegal conduct had a substantial

24      effect on South Dakota commerce.

25    d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

26      and relevant Class members were injured in their business and property

27      and are threatened with further injury.

28    e.    Accordingly, Plaintiff and relevant Class members seek all relief available

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

under S.D. Codified Laws Ann. §§ 37-1, *et seq.*

218. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Tennessee** law:

    a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

    b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

    c.    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

    d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

    e.    Accordingly, Plaintiff and relevant Class members seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

219. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Utah** law:

    a.    Defendants entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq.*

    b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Utah; (2) consumer telescope prices were raised,

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

fixed, maintained and stabilized at artificially high levels throughout Utah;
(3) Plaintiff and relevant Class members were deprived of free and open
competition; and (4) Plaintiff and relevant Class members paid supra-
competitive, artificially inflated prices for consumer telescopes.

c.  During the Class Period, Defendants' illegal conduct had a substantial
effect on Utah commerce.

d.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff
and relevant Class members were injured in their business and property
and are threatened with further injury.

e.  Accordingly, Plaintiff and relevant Class members seek all relief available
under Utah Code Annotated §§ 76-10-3101, *et seq.*

220.  Plaintiff incorporates and realleges each and every allegation set forth in the
preceding paragraphs of this Complaint and further alleges the following violation of **Vermont**
law:

a.  Defendants entered into an unlawful agreement in restraint of trade in
violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

b.  Defendants' combinations or conspiracies had the following effects: (1)
consumer telescope price competition was restrained, suppressed, and
eliminated throughout Vermont; (2) consumer telescope prices were
raised, fixed, maintained and stabilized at artificially high levels
throughout Vermont; (3) Plaintiff and relevant Class members were
deprived of free and open competition; and (4) Plaintiff and relevant Class
members paid supra-competitive, artificially inflated prices for consumer
telescopes.

c.  During the Class Period, Defendants' illegal conduct had a substantial
effect on Vermont commerce.

d.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff
and relevant Class members were injured in their business and property

and are threatened with further injury.

e.  Accordingly, Plaintiff and relevant Class members seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

221.  Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **West Virginia** law:

a.  Defendants entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

b.  Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.  During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

d.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e.  Accordingly, Plaintiff and relevant Class members seek all relief available under West Virginia Code §§ 47-18-1, *et seq.*

222.  Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Wisconsin** law:

a.  Defendants entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

b.    Defendants' combinations or conspiracies had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) consumer telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.    During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

e.    Accordingly, Plaintiff and relevant Class members seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

223.    Plaintiff and relevant Class members in each of the above states were injured in their business and property by Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiff and relevant Class members paid more for consumer telescopes than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

224.    In addition, Defendants have profited significantly from the aforementioned conspiracy. Defendants' profits are derived from their anticompetitive conduct and come at the expense and detriment of Plaintiff and relevant Class members.

225.    Accordingly, Plaintiff and relevant Class members in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**Sixth Cause of Action**
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiff and the Damages Class, or Alternatively, the State Damages Classes)**

226. Plaintiff assert these state law claims on behalf of the Damages Class, or alternatively, the State Damages Classes.

227. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

228. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

229. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Arkansas** law:

a. Defendants have engaged in deceptive and unconscionable acts or practices in violation of the Arkansas Code Annotated, § 4-88-101, *et seq*.

b. Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which consumer telescopes were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and relevant Class members.

c. The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

d. Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

e.    During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

f.    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and relevant Class members were injured in their business and property and are threatened with further injury.

g.    Accordingly, Plaintiff and relevant Class members seek all relief available under that statute.

230.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **California** law:

a.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

b.    During the Class Period, Defendants marketed, sold, or distributed consumer telescopes in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

c.    This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law (the "UCL").

d.    Defendants' conduct as alleged herein violates the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning

of the UCL, including, but not limited to the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above.

e.     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

f.     Defendants' acts or practices are unfair to consumers of consumer telescopes in California within the meaning of Section 17200, California Business and Professions Code.

g.     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

h.     Plaintiff and relevant Class members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that were obtained by Defendants as a result of such business acts or practices.

i.     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

j.     The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause Plaintiff and relevant Class members to pay supra-competitive and artificially-inflated prices for consumer telescopes. Plaintiff and relevant Class members suffered injury in fact and lost money or property as a result of such unfair competition.

k.     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Defendants' unfair competition. Plaintiff and relevant Class members are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that were obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

231.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **District of Columbia** law:

a.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

b.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which consumer telescopes were sold, distributed or obtained in the District of Columbia.

c.    The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiff was not aware of Defendants' price-fixing conspiracy and was therefore unaware that he was being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for consumer telescopes. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing consumer telescopes because he was unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges. Defendants' conduct with regard to sales of consumer telescopes, including their illegal conspiracy to secretly fix the price of

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

consumer telescopes at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for consumer telescopes.

    d.    Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

    e.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured and are threatened with further injury. Accordingly, Plaintiff and relevant Class members seek all relief available under that statute.

232.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Florida** law:

    a.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

    b.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which consumer telescopes were sold,

Case 3:20-cv-03639-SI   Document 100-7   Filed 07/30/29   Page 75 of 103

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   distributed or obtained in Florida.

2      c.   Defendants' unlawful conduct had the following effects: (1) consumer

3   telescope price competition was restrained, suppressed, and eliminated

4   throughout Florida; (2) consumer telescope prices were raised, fixed,

5   maintained, and stabilized at artificially high levels throughout Florida; (3)

6   Plaintiff and relevant Class members were deprived of free and open

7   competition; and (4) Plaintiff and relevant Class members paid supra-

8   competitive, artificially inflated prices for consumer telescopes.

9      d.   During the Class Period, Defendants' illegal conduct substantially affected

10   Florida commerce and consumers.

11      e.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

12   and relevant Class members were injured and are threatened with further

13   injury. Accordingly, Plaintiff and relevant Class members seek all relief

14   available under that statute.

15      233.   Plaintiff incorporates and realleges each and every allegation set forth in the

16   preceding paragraphs of this Complaint and further alleges the following violation of **Hawaii** law:

17      a.   Defendants have engaged in "unfair methods of competition and unfair or

18   deceptive acts or practices in the conduct of any trade or commerce" within

19   the meaning of Hawaii Rev. Stat. § 480-2. Defendants agreed to, and did

20   in fact, act in restraint of trade or commerce by affecting, fixing,

21   controlling and/or maintaining, at artificial and/or non-competitive levels,

22   the prices at which consumer telescopes were sold, distributed or obtained

23   in Hawaii.

24      b.   Defendants' unlawful conduct had the following effects: (1) consumer

25   telescope price competition was restrained, suppressed, and eliminated

26   throughout Hawaii; (2) consumer telescope prices were raised, fixed,

27   maintained, and stabilized at artificially high levels throughout Hawaii; (3)

28   Plaintiff and relevant Class members were deprived of free and open

CLASS ACTION COMPLAINT

competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

d.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured and are threatened with further injury. Accordingly, Plaintiff and relevant Class members seek all relief available under the statute.

234.   Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Massachusetts** law:

a.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Massachusetts G.L. c. 93A, §2.

b.     Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

c.     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiff and relevant Class members.

d.     Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

e.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured and are threatened with further injury.

f.   Certain of Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

g.   Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiff and relevant Class members to multiple damages.

235.   Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Michigan** law:

a.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

b.   Defendants engaged in the conduct described in this Complaint in connection with the sale of consumer telescopes in trade or commerce in a market that includes Michigan.

c.   Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed, or obtained in Michigan. This conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and relevant Class members.

d.   Defendants concealed, suppressed, omitted, and failed to disclose material

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    facts to Plaintiff and relevant Class members concerning Defendants'

2    unlawful activities and artificially inflated prices for consumer telescopes.

3    The concealed, suppressed, and omitted facts would have been important

4    to Plaintiff and relevant Class members as they related to the cost of

5    consumer telescopes they purchased.

6    e.    Defendants misrepresented the real cause of price increases and/or the

7    absence of price reductions in consumer telescopes by making public

8    statements that were not in accord with the facts.

9    f.    Defendants' statements and conduct concerning the price of consumer

10    telescopes were deceptive as they had the tendency or capacity to mislead

11    Plaintiff and relevant Class members to believe that they were purchasing

12    consumer telescopes at prices established by a free and fair market.

13    g.    Defendants' unlawful conduct had the following effects: (1) consumer

14    telescope price competition was restrained, suppressed, and eliminated

15    throughout Michigan; (2) consumer telescope prices were raised, fixed,

16    maintained, and stabilized at artificially high levels throughout Michigan;

17    (3) Plaintiff and relevant Class members were deprived of free and open

18    competition; and (4) Plaintiff and relevant Class members paid supra-

19    competitive, artificially inflated prices for consumer telescopes.

20    h.    As a direct and proximate result of the above-described unlawful practices,

21    Plaintiff and relevant Class members suffered ascertainable loss of money

22    or property. Accordingly, Plaintiff and relevant Class members seek all

23    relief available under the Michigan Consumer Protection Act.

24    236.    Plaintiff incorporates and realleges each and every allegation set forth in the

25 preceding paragraphs of this Complaint and further alleges the following violation of **Minnesota**

26 law:

27    a.    Defendants have engaged in unfair competition or unfair, unconscionable,

28    or deceptive acts or practices in violation of the Minnesota Consumer

Fraud Act, Minn. Stat. § 325F.68, *et seq.*

b.    Defendants engaged in the conduct described in this Complaint in connection with the sale of consumer telescopes in trade or commerce in a market that includes Minnesota.

c.    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed, or obtained in Minnesota. This conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and relevant Class members.

d.    Defendants concealed, suppressed, omitted, and failed to disclose material facts to Plaintiff and relevant Class members concerning Defendants' unlawful activities and artificially inflated prices for consumer telescopes. The concealed, suppressed, and omitted facts would have been important to Plaintiff and relevant Class members as they related to the cost of consumer telescopes they purchased.

e.    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in consumer telescopes by making public statements that were not in accord with the facts.

f.    Defendants' statements and conduct concerning the price of consumer telescopes were deceptive as they had the tendency or capacity to mislead Plaintiff and relevant Class members to believe that they were purchasing consumer telescopes at prices established by a free and fair market.

g.    Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota;

CLASS ACTION COMPLAINT

(3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

h.    As a direct and proximate result of the above-described unlawful practices, Plaintiff and relevant Class members suffered ascertainable loss of money or property. Accordingly, Plaintiff and relevant Class members seek all relief available under the Minnesota Consumer Fraud Act.

237.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Missouri** law:

a.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.

b.    Plaintiff and relevant Class members purchased consumer telescopes for personal, family, or household purposes.

c.    Defendants engaged in the conduct described herein in connection with the sale of consumer telescopes in trade or commerce in a market that includes Missouri.

d.    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed, or obtained in Missouri. This conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and relevant Class members.

e.    Defendants concealed, suppressed, omitted, and failed to disclose material facts to Plaintiff and relevant Class members concerning Defendants' unlawful activities and artificially inflated prices for consumer telescopes.

    

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

The concealed, suppressed, and omitted facts would have been important to Plaintiff and relevant Class members as they related to the cost of consumer telescopes they purchased.

f.     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in consumer telescopes by making public statements that were not in accord with the facts.

g.     Defendants' statements and conduct concerning the price of consumer telescopes were deceptive as they had the tendency or capacity to mislead Plaintiff and relevant Class members to believe that they were purchasing consumer telescopes at prices established by a free and fair market.

h.     Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Missouri; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

i.     As a direct and proximate result of the above-described unlawful practices, Plaintiff and relevant Class members suffered ascertainable loss of money or property.

j.     Accordingly, Plaintiff and relevant Class members seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-

CLASS ACTION COMPLAINT

8.010, *et seq*., and 15 CSR 60-9.010, *et seq*., and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

238.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Montana** law:

        a.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq*.

        b.    Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Montana; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

        c.    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

        d.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured and are threatened with further injury. Accordingly, Plaintiff and relevant Class members seek all relief available under that statute.

239.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Nebraska** law:

        a.    Defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, *et seq*.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

b.     Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

d.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured and are threatened with further injury. Accordingly, Plaintiff and relevant Class members seek all relief available under that statute.

240.     Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Nevada** law:

a.     Defendants have engaged in deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*

b.     Defendants engaged in the conduct described herein in connection with the sale of consumer telescopes in trade or commerce in a market that includes Nevada.

c.     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed or obtained in Nevada. This conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and relevant Class members.

d.     Defendants concealed, suppressed, omitted, and failed to disclose material

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

facts to Plaintiff and relevant Class members concerning Defendants' unlawful activities and artificially inflated prices for consumer telescopes. The concealed, suppressed, and omitted facts would have been important to Plaintiff and relevant Class members as they related to the cost of consumer telescopes they purchased.

e.   Defendants misrepresented the real cause of price increases and/or the absence of price reductions in consumer telescopes by making public statements that were not in accord with the facts.

f.   Defendants' statements and conduct concerning the price of consumer telescopes were deceptive as they had the tendency or capacity to mislead Plaintiff and relevant Class members to believe that they were purchasing consumer telescopes at prices established by a free and fair market.

g.   Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Nevada; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes. As a direct and proximate result of the above-described unlawful practices, Plaintiff and relevant Class members suffered ascertainable loss of money or property. Accordingly, Plaintiff and relevant Class members seek all relief available under Nev. Rev. Stat. § 598.0993.

241.   Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **New Hampshire** law:

a.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Hampshire Consumer

Protection Act, N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*

b.  Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

c.  During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce and consumers.

d.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and relevant Class members were injured and are threatened with further injury. Accordingly, Plaintiff and relevant Class members seek all relief available under N.H. Rev. Stat. Ann. tit. XXXI § 358-A:10 and 358A:10-a.

242.  Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **New Mexico** law:

a.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*

b.  Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which consumer telescopes were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiff and relevant Class members.

c.  The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiff and relevant Class members and the prices paid by them for consumer telescopes as set forth in N.M.S.A., § 57-12-2E. Plaintiff was not aware of Defendants' price-fixing conspiracy and was therefore unaware that he was being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for consumer telescopes. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing consumer telescopes because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges. Defendants' conduct with regard to sales of consumer telescopes, including their illegal conspiracy to secretly fix the price of consumer telescopes at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for consumer telescopes.

d.      Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

supra-competitive, artificially inflated prices for consumer telescopes.

e.    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

f.    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and relevant Class members were injured and are threatened with further injury. Accordingly, Plaintiff and relevant Class members seek all relief available under that statute.

243.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **New York** law:

a.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of New York Gen. Bus. Law § 349, *et seq.*

b.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and relevant Class members.

c.    Defendants and their co-conspirators made public statements about the prices of consumer telescopes that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for consumer telescopes; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

d.    Because of Defendants' unlawful trade practices in New York, Plaintiff and relevant Class members who indirectly purchased consumer telescopes were misled to believe that they were paying a fair price for

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

    CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

consumer telescopes or the price increases for consumer telescopes were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

e.   Defendants knew that their unlawful trade practices with respect to pricing consumer telescopes would have an impact on New York consumers and not just Defendants' direct customers.

f.   Defendants knew that their unlawful trade practices with respect to pricing consumer telescopes would have a broad impact, causing consumer class members who indirectly purchased consumer telescopes to be injured by paying more for consumer telescopes than they would have paid in the absence of Defendants' unlawful trade acts and practices.

g.   The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

h.   Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout New York; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

i.   During the Class Period, Defendants marketed, sold, or distributed consumer telescopes in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

j.   During the Class Period, each Defendant, directly, or indirectly and

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    through affiliates, dominated and controlled, manufactured, sold and/or

2    distributed consumer telescopes in New York.

3    k.    Plaintiff and relevant Class members seek all relief available pursuant to

4         N.Y. Gen. Bus. Law § 349(h).

5    244.    Plaintiff incorporates and realleges each and every allegation set forth in the

6    preceding paragraphs of this Complaint and further alleges the following violation of **North**

7    **Carolina** law:

8    a.    Defendants have engaged in unfair competition or unfair, unconscionable,

9         or deceptive acts or practices in violation of North Carolina Gen. Stat. §

10        75-1.1, *et seq*.

11   b.    Defendants agreed to, and did in fact, act in restraint of trade or commerce

12        by affecting, fixing, controlling and/or maintaining, at artificial and non-

13        competitive levels, the prices at which consumer telescopes were sold,

14        distributed or obtained in North Carolina and took efforts to conceal their

15        agreements from Plaintiff and relevant Class members.

16   c.    Defendants' price-fixing conspiracy could not have succeeded absent

17        deceptive conduct by Defendants to cover up their illegal acts. Secrecy was

18        integral to the formation, implementation and maintenance of Defendants'

19        price-fixing conspiracy. Defendants committed inherently deceptive and

20        self-concealing actions, of which Plaintiff could not possibly have been

21        aware. Defendants and their co-conspirators publicly provided pre-textual

22        and false justifications regarding their price increases. Defendants' public

23        statements concerning the price of consumer telescopes created the illusion

24        of competitive pricing controlled by market forces rather than supra-

25        competitive pricing driven by Defendants' illegal conspiracy. Moreover,

26        Defendants deceptively concealed their unlawful activities by mutually

27        agreeing not to divulge the existence of the conspiracy to outsiders,

28        conducting meetings and conversations in secret, confining the plan to a

small group of higher-level officials at each company and avoiding the
creation of documents which would reveal the antitrust violations.

d.      The conduct of Defendants described herein constitutes consumer-oriented
deceptive acts or practices within the meaning of North Carolina law,
which resulted in consumer injury and broad adverse impact on the public
at large, and harmed the public interest of North Carolina consumers in an
honest marketplace in which economic activity is conducted in a
competitive manner.

e.      Defendants' unlawful conduct had the following effects: (1) consumer
telescope price competition was restrained, suppressed, and eliminated
throughout North Carolina; (2) consumer telescope prices were raised,
fixed, maintained, and stabilized at artificially high levels throughout
North Carolina; (3) Plaintiff and relevant Class members were deprived of
free and open competition; and (4) Plaintiff and relevant Class members
paid supra-competitive, artificially inflated prices for consumer telescopes.

f.      During the Class Period, Defendants marketed, sold, or distributed
consumer telescopes in North Carolina, and Defendants' illegal conduct
substantially affected North Carolina commerce and consumers.

g.      During the Class Period, each Defendant, directly, or indirectly and
through affiliates, dominated and controlled, manufactured, sold and/or
distributed consumer telescopes in North Carolina.

h.      Plaintiff and relevant Class members seek actual damages for their injuries
caused by these violations in an amount to be determined at trial and are
threatened with further injury and seek all relief available under that
statute.

245.    Plaintiff incorporates and realleges each and every allegation set forth in the
preceding paragraphs of this Complaint and further alleges the following violation of **North
Dakota** law:

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

a.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the North Dakota Unfair Trade Practices Law, N.D. Cent. Code § 51-10, *et seq*.

b.    Defendants engaged in the conduct described in this Complaint in connection with the sale of consumer telescopes in trade or commerce in a market that includes North Dakota.

c.    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed, or obtained in North Dakota. This conduct constituted a fraudulent or deceptive act or practice and caused substantial injury to Plaintiff and relevant Class members.

d.    Defendants concealed, suppressed, omitted, and failed to disclose materials facts to Plaintiff and relevant Class members concerning Defendants' unlawful activities and artificially inflated prices for consumer telescopes. The concealed, suppressed, and omitted facts would have been important to Plaintiff and relevant Class members as they related to the cost of consumer telescopes they purchased.

e.    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in consumer telescopes by making public statements that were not in accord with the facts.

f.    Defendants' statements and conduct concerning the price of consumer telescopes were deceptive as they had the tendency or capacity to mislead Plaintiff and relevant Class members to believe that they were purchasing consumer telescopes at prices established by a free and fair market.

g.    Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

North Dakota; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

h. As a direct and proximate result of the above-described unlawful practices, Plaintiff and relevant Class members suffered ascertainable loss of money or property. Accordingly, Plaintiff and relevant Class members seek all relief available under N.D. Cent. Code § 51-10-06.

246. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Oregon** law:

a. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq.*

b. Defendants engaged in the conduct described in this Complaint in connection with the sale of consumer telescopes in trade or commerce in a market that includes Oregon.

c. Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed, or obtained in Oregon. This conduct constituted unlawful trade practices by employing unconscionable tactics in connection with the sale of consumer telescopes, and caused substantial injury to Plaintiff and relevant Class members.

d. Defendants concealed, suppressed, omitted, and failed to disclose material facts to Plaintiff and relevant Class members concerning Defendants unlawful activities and artificially inflated prices for consumer telescopes. The concealed, suppressed, and omitted facts would have been important to Plaintiff and relevant Class members as they related to the cost of consumer telescopes they purchased.

e. Defendants misrepresented the real cause of price increases and/or the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

absence of price reductions in consumer telescopes by making public statements that were not in accord with the facts.

f.     Defendants' statements and conduct concerning the price of consumer telescopes were deceptive as they had the tendency or capacity to mislead Plaintiff and relevant Class members to believe that they were purchasing consumer telescopes at prices established by a free and fair market.

g.     Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Oregon; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

h.     As a direct and proximate result of the above-described unlawful practices, Plaintiff and relevant Class members suffered ascertainable loss of money or property. Accordingly, Plaintiff and relevant Class members seek all relief available under Or. Rev. Stat. § 646.638.

247.     Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Rhode Island** law:

a.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq*.

b.     Plaintiff and relevant Class members purchased consumer telescopes for personal, family, or household purposes.

c.     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at

    CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    which consumer telescopes were sold, distributed, or obtained in Rhode

2    Island.

3    d.    Defendants deliberately failed to disclose material facts to Plaintiff and

4         relevant Class members concerning Defendants' unlawful activities and

5         artificially inflated prices for consumer telescopes. Defendants owed a

6         duty to disclose such facts, and considering the relative lack of

7         sophistication of the average, non-business consumer, Defendants

8         breached that duty by their silence. Defendants misrepresented to all

9         consumers during the Class Period that Defendants' prices for consumer

10        telescopes were competitive and fair.

11   e.    Defendants' unlawful conduct had the following effects: (1) consumer

12        telescope price competition was restrained, suppressed, and eliminated

13        throughout Rhode Island; (2) consumer telescope prices were raised, fixed,

14        maintained, and stabilized at artificially high levels throughout Rhode

15        Island; (3) Plaintiff and relevant Class members were deprived of free and

16        open competition; and (4) Plaintiff and relevant Class members paid supra-

17        competitive, artificially inflated prices for consumer telescopes.

18   f.    As a direct and proximate result of Defendants' violations of law, Plaintiff

19        and relevant Class members suffered an ascertainable loss of money or

20        property as a result of Defendants' use or employment of unconscionable

21        and deceptive commercial practices as set forth above. That loss was

22        caused by Defendants' willful and deceptive conduct, as described herein.

23   g.    Defendants' deception, including their affirmative misrepresentations and

24        omissions concerning the price of consumer telescopes, likely misled all

25        consumers acting reasonably under the circumstances to believe that they

26        were purchasing consumer telescopes at prices set by a free and fair

27        market. Defendants' affirmative misrepresentations and omissions

28        constitute information important to Plaintiff and relevant Class members

1                as they related to the cost of consumer telescopes they purchased.

2        h.     Accordingly, Plaintiff and relevant Class members seek all relief available

3                under that statute.

4     248.    Plaintiff incorporates and realleges each and every allegation set forth in the

5 preceding paragraphs of this Complaint and further alleges the following violation of **South**

6 **Carolina** law:

7        a.     Defendants have engaged in unfair competition or unfair, unconscionable,

8                or deceptive acts or practices in violation of South Carolina Unfair Trade

9                Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

10       b.     Defendants' combinations or conspiracies had the following effects: (1)

11                consumer telescope price competition was restrained, suppressed, and

12                eliminated throughout South Carolina; (2) consumer telescope prices were

13                raised, fixed, maintained, and stabilized at artificially high levels

14                throughout South Carolina; (3) Plaintiff and relevant Class members were

15                deprived of free and open competition; and (4) Plaintiff and relevant Class

16                members paid supra-competitive, artificially inflated prices for consumer

17                telescopes.

18       c.     During the Class Period, Defendants' illegal conduct had a substantial

19                effect on South Carolina commerce.

20       d.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

21                and relevant Class members were injured in their business and property

22                and are threatened with further injury. Accordingly, Plaintiff and the

23                relevant Class members seek all relief available under that statute.

24     249.    Plaintiff incorporates and realleges each and every allegation set forth in the

25 preceding paragraphs of this Complaint and further alleges the following violation of **South**

26 **Dakota** law:

27        a.     Defendants have engaged in unfair competition or unfair, unconscionable,

28                or deceptive acts or practices in violation of the South Dakota Deceptive

          CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37-24, *et seq.*

b.    Defendants engaged in the conduct described in this Complaint in connection with the sale of consumer telescopes in trade or commerce in a market that includes South Dakota.

c.    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed, or obtained in South Dakota. This conduct constituted a deceptive act or practice, and caused substantial injury to Plaintiff and relevant Class members.

d.    Defendants concealed, suppressed, omitted, and failed to disclose material facts to Plaintiff and relevant Class members concerning Defendants' unlawful activities and artificially inflated prices for consumer telescopes. The concealed, suppressed, and omitted facts would have been important to Plaintiff and relevant Class members as they related to the cost of consumer telescopes they purchased.

e.    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in consumer telescopes by making public statements that were not in accord with the facts.

f.    Defendants' statements and conduct concerning the price of consumer telescopes were deceptive as they had the tendency or capacity to mislead Plaintiff and relevant Class members to believe that they were purchasing consumer telescopes at prices established by a free and fair market.

g.    Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and relevant Class members were deprived of

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

h.  As a direct and proximate result of the above-described unlawful practices, Plaintiff and relevant Class members suffered ascertainable loss of money or property. Accordingly, Plaintiff and relevant Class members seek all relief available under S.D. Codified Laws § 37-24-31.

250.  Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Utah** law:

a.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq*.

b.  Defendants engaged in the conduct described in this Complaint in connection with the sale of consumer telescopes in trade or commerce in a market that includes Utah.

c.  Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed, or obtained in Utah. This conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and relevant Class members.

d.  Defendants concealed, suppressed, omitted, and failed to disclose material facts to Plaintiff and relevant Class members concerning Defendants' unlawful activities and artificially inflated prices for consumer telescopes. The concealed, suppressed, and omitted facts would have been important to Plaintiff and relevant Class members as they related to the cost of consumer telescopes they purchased.

e.  Defendants misrepresented the real cause of price increases and/or the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

CLASS ACTION COMPLAINT

absence of price reductions in consumer telescopes by making public statements that were not in accord with the facts.

f.      Defendants' statements and conduct concerning the price of consumer telescopes were deceptive as they had the tendency or capacity to mislead Plaintiff and relevant Class members to believe that they were purchasing consumer telescopes at prices established by a free and fair market.

g.      Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Utah; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

h.      As a direct and proximate result of the above-described unlawful practices, Plaintiff and relevant Class members suffered ascertainable loss of money or property. Accordingly, Plaintiff and relevant Class members seek all relief available under Utah Code Ann. § 13-11-19(5) and 13-11-20.

251.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Vermont** law:

a.      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq*.

b.      Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed, or obtained in Vermont.

CLASS ACTION COMPLAINT

c.      Defendants deliberately failed to disclose material facts to Plaintiff and relevant Class members concerning their unlawful activities and artificially inflated prices for consumer telescopes. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their prices for consumer telescopes were competitive and fair.

d.      Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Vermont; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

e.      As a direct and proximate result of Defendants' violations of law, Plaintiff and relevant Class members suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

f.      Defendants' deception, including their omissions concerning the price of consumer telescopes, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing consumer telescopes at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq*. Accordingly, Plaintiff and relevant Class members seek all relief available under that statute.

CLASS ACTION COMPLAINT

252.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint and further alleges the following violation of **Virginia** law:

a.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq*.

b.    Defendants engaged in the conduct described in this Complaint in connection with the sale of consumer telescopes in trade or commerce in a market that includes Virginia.

c.    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which consumer telescopes were sold, distributed, or obtained in Virginia. This conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and relevant Class members.

d.    Defendants concealed, suppressed, omitted, and failed to disclose material facts to Plaintiff and relevant Class members concerning Defendants' unlawful activities and artificially inflated prices for consumer telescopes. The concealed, suppressed, and omitted facts would have been important to Plaintiff and relevant Class members as they related to the cost of consumer telescopes they purchased.

e.    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in consumer telescopes by making public statements that were not in accord with the facts.

f.    Defendants' statements and conduct concerning the price of consumer telescopes were deceptive as they had the tendency or capacity to mislead Plaintiff and relevant Class members to believe that they were purchasing

CLASS ACTION COMPLAINT

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

consumer telescopes at prices established by a free and fair market.

g.      Defendants' unlawful conduct had the following effects: (1) consumer telescope price competition was restrained, suppressed, and eliminated throughout Virginia; (2) consumer telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Virginia; (3) Plaintiff and relevant Class members were deprived of free and open competition; and (4) Plaintiff and relevant Class members paid supra-competitive, artificially inflated prices for consumer telescopes.

h.      As a direct and proximate result of the above-described unlawful practices, Plaintiff and relevant Class members suffered ascertainable loss of money or property. Accordingly, Plaintiff and relevant Class members seek all relief available under Va. Code Ann. § 59.1-204(A), *et seq*.

**Seventh Cause of Action**
**Unjust Enrichment**
**(on behalf of Plaintiff and the Damages Class, or Alternatively, the State Damages Classes)**

253.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

254.    As a result of its unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of consumer telescopes.

255.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff and the members of the Classes for consumer telescopes.

256.    Plaintiff and the members of the Classes are entitled to the amount of Defendants' ill-gotten gains resulting from its unlawful, unjust, and inequitable conduct. Plaintiff and the members of the Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Class may make claims on a *pro rata* basis.

257.    Pursuit of any remedies against the firms from which Plaintiff and the members of the Class purchased consumer telescopes subject to Defendants' conspiracy would have been

futile.

**X.    PRAYER FOR RELIEF**

258.    Accordingly, Plaintiff respectfully requests that:

a.    The Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) and direct that reasonable notice of this action be given to each and every member of the Class as provided by Rule 23(c)(2).

b.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed violations of Sections 1 and 2 of the Sherman Act, Section 7 of the Clayton Act, state antitrust and consumer protection laws, and acts of unjust enrichment;

c.    Plaintiff and the members of the Classes recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Classes be entered against Defendants in an amount to be trebled to the extent such laws permit;

d.    Defendants be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect;

e.    Plaintiff and the members of the Classes be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

f.    Plaintiff and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

g.    Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

h.    Plaintiff and members of the Classes be granted such other and further

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

relief as the case may require and the Court deems just and proper.

## XI.     JURY DEMAND

Plaintiff demands a jury trial on all claims so triable.

DATED: July 31, 2020                              Respectfully submitted,

*/s/Aaron M. Sheanin*
Aaron M. Sheanin (SBN 214472)
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
asheanin@robinskaplan.com

Hollis Salzman (*pro hac vice* forthcoming)
Kellie Lerner (*pro hac vice* forthcoming)
William Reiss (*pro hac vice* forthcoming)
Adam C. Mendel (*pro hac vice* forthcoming)
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@robinskaplan.com
klerner@robinskaplan.com
wreiss@robinskaplan.com
amendel@robinskaplan.com

K. Craig Wildfang (*pro hac vice* forthcoming)
Thomas Undlin (*pro hac vice* forthcoming)
Ryan W. Marth (*pro hac vice* forthcoming)
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
kcwildfang@robinskaplan.com
tundlin@robinskaplan.com
rmarth@robinskaplan.com

*Attorneys for Plaintiff James Kaufman and the
Proposed Classes*

CLASS ACTION COMPLAINT