1        UNITED STATES DISTRICT COURT

2       NORTHERN DISTRICT OF CALIFORNIA

3          SAN JOSE DIVISION

4

5   DANIEL HIGHTOWER, ET AL.,        )  C-20-03639 EJD
                                     )  C-20-05285 EJD
6            PLAINTIFFS,             )  C-20-05400 EJD
                                     )
7        VS.                         )  SAN JOSE, CALIFORNIA
                                     )
8   CELESTRON ACQUISITION, LLC, ET   )  SEPTEMBER 17, 2020
    AL.,                             )
9                                    )  PAGES 1-44
             DEFENDANTS.             )
10  _____

11

12          TRANSCRIPT OF ZOOM PROCEEDINGS
          BEFORE THE HONORABLE EDWARD J. DAVILA
13            UNITED STATES DISTRICT JUDGE

14   A P P E A R A N C E S:

15   FOR PLAINTIFFS         BRAUNHAGEY & BORDEN
     HIGHTOWER, SPECTRUM,   BY:  MATTHEW B. BORDEN
16   AND RADIO CITY:             RONALD J. FISHER
                            351 CALIFORNIA STREET, 10TH FLOOR
17                          SAN FRANCISCO, CALIFORNIA  94104

18   FOR PLAINTIFF          ROBINS KAPLAN
     KAUFMAN:               BY:  AARON M. SHEANIN
19                               KELLIE LERNER
                                 ADAM MENDEL
20                          46 SHATTUCK SQUARE, SUITE 22
                            BERKELEY, CALIFORNIA  94704

21

22          APPEARANCES CONTINUED ON NEXT PAGE

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595

24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

```
 1        APPEARANCES (CONTINUED)

 2        FOR PLAINTIFFS          LIEFF CABRASER HEIMANN & BERNSTEIN
          GOLDBLATT, GRIFFITH     BY:  LIN Y. CHAN
 3        AND MCQUAID:                 ERIC FASTIFF
                                  275 BATTERY STREET, 29TH FLOOR
 4                                SAN FRANCISCO, CALIFORNIA  94111

 5                                ZWERLING, SCHACHTER & ZWERLING
                                  BY:  DAN DRACHLER
 6                                41 MADISON AVENUE
                                  NEW YORK, NEW YORK  10010

 7

 8        FOR PLAINTIFFS          COTCHETT PITRE & MCCARTHY
          MURPHY AND              BY:  ADAM J. ZAPALA
 9        UEHARA:                      ELIZABETH T. CASTILLO
                                  840 MALCOLM ROAD, SUITE 200
10                                BURLINGAME, CALIFORNIA  94010

11        FOR PLAINTIFFS          SUSMAN GODFREY
          BREWER AND NGO:         BY:  KALPANA SRINIVASAN
12                                     MICHAEL GERVAIS
                                  1900 AVENUE OF THE STARS, SUITE 1400
13                                LOS ANGELES, CALIFORNIA  90067

14        FOR DEFENDANTS          EISNER, LLP
          CELESTRON, SW TECH,     BY:  CHRISTOPHER L. FROST
15        LUPICA, ANDERSON        9601 WILSHIRE BOULEVARD, 7TH FLOOR
          AND LEE:                BEVERLY HILLS, CALIFORNIA  90210
16

17

18

19

20

21

22

23

24

25
```

```
 1      SAN JOSE, CALIFORNIA                    SEPTEMBER 17, 2020

 2                       P R O C E E D I N G S

 3          (ZOOM PROCEEDINGS CONVENED AT 9:09 A.M.)

 4              THE COURT:  ALL RIGHT.  THANK YOU.  GOOD MORNING.

 5          DO WE HAVE OTHER INDIVIDUALS WHO WANT TO JOIN US WITH

 6      THEIR IMAGES?  THERE WE ARE, THERE'S MR. GERVAIS.

 7          AND IS MR. FROST -- THERE WE ARE.  ALL RIGHT.

 8          GREAT.  I THINK WE'VE CAPTURED EVERYONE.

 9          LET'S GO ON THE RECORD.  THIS IS MOTIONS TO APPOINT LEAD

10      COUNSEL IN THESE MATTERS.  THIS IS 20-3639, ET AL.

11          LET ME -- I KNOW WE'VE JUST GONE THROUGH AND YOU'VE

12      ANNOUNCED YOUR APPEARANCES FOR OUR COURTROOM DEPUTY, BUT I'D

13      LIKE TO CAPTURE APPEARANCES FOR THE RECORD, PLEASE.

14          SO WHY DON'T WE START AGAIN WITH THOSE PARTIES WHO

15      REPRESENT HIGHTOWER AND SPECTRUM SCIENTIFIC, LLC.  WOULD THAT

16      BE MR. BORDEN AND MR. FISHER?  LET'S START WITH YOU.

17              MR. BORDEN:  THANK YOU, YOUR HONOR.  GOOD MORNING.

18          THIS IS MATT BORDEN, AND WITH ME IS RONALD FISHER, AND

19      TOGETHER WE REPRESENT MR. HIGHTOWER AND SPECTRUM SCIENTIFIC.

20              THE COURT:  THANK YOU.  GOOD MORNING.  NICE TO SEE

21      YOU AGAIN.

22          AND HOW ABOUT JAMES KAUFMAN?  WHO APPEARS FOR

23      JAMES KAUFMAN?

24              MR. SHEANIN:  GOOD MORNING, YOUR HONOR.

25          AARON SHEANIN FROM ROBINS KAPLAN.  I'M HERE WITH MY
```

1    PARTNER, KELLIE LERNER, AND WITH ADAM MENDEL FROM MY OFFICE.

2         THE COURT:  GREAT, THANK YOU.  GOOD MORNING.

3      AND COUNSEL FOR PLAINTIFF GOLDBLATT?

4         MS. CHAN:  GOOD MORNING, YOUR HONOR.

5      LIN CHAN FROM LIEFF CABRASER.  I'M HERE TODAY WITH MY

6    PARTNER, ERIC FASTIFF, ON BEHALF OF NORMAN GOLDBLATT AND 11

7    OTHER PLAINTIFFS IN RELATED ACTIONS.

8         THE COURT:  THANK YOU, GOOD MORNING.

9         MR. DRACHLER:  GOOD MORNING, YOUR HONOR.

10      IT'S ALSO DAN DRACHLER ON BEHALF OF GOLDBLATT FROM

11    ZWERLING, SCHACHTER & ZWERLING.

12         THE COURT:  THANK YOU.  NICE TO SEE YOU.  THANK YOU.

13       AND THEN THE OTHER INDIRECT PURCHASERS, MURPHY AND UEHARA?

14         MR. ZAPALA:  GOOD MORNING, YOUR HONOR.

15      ADAM ZAPALA FROM COTCHETT PITRE & MCCARTHY, AND I'M HERE

16    WITH MY PARTNER, ELIZABETH CASTILLO.

17         THE COURT:  THANK YOU.  GOOD MORNING.

18      AND HOW ABOUT DEFENDANT, CELESTRON ACQUISITIONS, LLC?

19    MR. FROST, IS THAT YOU?

20      OH, YOU'VE GOT TO UNMUTE YOURSELF, MR. FROST.

21         MR. FROST:  TECHNOLOGY CONTINUES TO ESCAPE ME.

22    FORGIVE ME.

23      GOOD MORNING, YOUR HONOR.  CHRISTOPHER FROST OF EISNER ON

24    BEHALF OF DEFENDANTS SW TECH, COREY LEE, JOE LUPICA, CELESTRON

25    ACQUISITION, AND DAVE ANDERSON.

1          THE COURT:  THANK YOU.  GOOD MORNING, MR. FROST.

2          AND I'LL HAVE THE COURT REPORTER DO A TRANSCRIPT OF YOUR

3    ADMISSION REGARDING TECHNOLOGY AND WE'LL DISTRIBUTE THAT TO ALL

4    PLAINTIFFS' COUNSEL IN A MOMENT.

5          SO MUCH FOR JUDICIAL ADMISSIONS.

6          (LAUGHTER.)

7          THE COURT:  IT'S NICE TO SEE YOU ALL.  THANK YOU VERY

8    MUCH, AND THANKS FOR APPEARING TODAY ON ZOOM.

9          WE'RE DOING THIS BECAUSE, AS YOU KNOW, THE COVID CRISIS

10   HAS CAUSED US TO MITIGATE PUBLIC APPEARANCE, LITIGANTS'

11   APPEARANCE IN OUR COURTS.  WE DO THIS FOR THE SAFETY OF ALL,

12   INCLUDING OUR STAFF, OURSELVES.  HOPEFULLY THERE WILL BE A

13   BREAKTHROUGH SOON AND WE CAN ENJOY EACH OTHER'S FELLOWSHIP IN

14   OUR COURTROOMS.

15         BUT FOR NOW WE'LL PARTICIPATE VIA THE ZOOM TECHNOLOGY.  IT

16   SEEMS TO WORK QUITE WELL, ACTUALLY.  WE HAVE HAD GREAT SUCCESS

17   WITH IT.

18         SO THE MOTIONS BEFORE THE COURT --

19         MS. SRINIVASAN:  YOUR HONOR, BEFORE WE BEGIN, WE HAVE

20   ONE MORE APPEARANCE.

21         THE COURT:  I'M SORRY.

22         MS. SRINIVASAN:  THAT'S OKAY, YOUR HONOR.

23         ON BEHALF OF THE INDIRECT PURCHASER PLAINTIFFS NGO AND

24   BREWER, KALPANA SRINIVASAN OF SUSMAN GODFREY, AND HERE WITH ME

25   IS MY PARTNER, MICHAEL GERVAIS.

```
1              THE COURT:  THANK YOU VERY MUCH.  I DID NOTE
2      MR. GERVAIS EARLIER, AND I APOLOGIZE, MS. SRINIVASAN, THAT I
3      DIDN'T CAPTURE YOUR APPEARANCE.  THANK YOU.
4              SO THE TWO MOTIONS BEFORE THE COURT ARE REGARDING THE
5      APPOINTMENT OF LEAD COUNSEL, AND I'VE READ THE PLEADINGS AS TO
6      THOSE TWO MOTIONS, AND I APPRECIATE THEM.
7              YOU KNOW, THESE ARE -- THESE MOTIONS TO APPOINT COUNSEL
8      ARE SOMETIMES SOME OF THE MOST DIFFICULT THINGS JUDGES DO
9      BECAUSE WE IN THE NORTHERN DISTRICT, JUDGES AND YOUR CLIENTS,
10     ALL OF YOUR CLIENTS, ARE BLESSED WITH HAVING SOME OF THE BEST
11     LAWYERS IN THE COUNTRY APPEAR HERE, AND SO IT'S, IT'S -- WE ARE
12     CHALLENGED, JUDGES ARE CHALLENGED WHEN WE LOOK AT THESE MOTIONS
13     WITH JUST THE EXTRAORDINARY EXPERIENCE, THE QUALITY AND
14     CHARACTER OF THE LAWYERS WHO COME BEFORE AND ASK TO BE
15     APPOINTED, AND IT'S -- YOU KNOW, IT'S A DIFFICULT CHOICE, ISN'T
16     IT?  IT'S LIKE LOOKING AT ALL THESE BARS OF GOLD, THESE, YOU
17     KNOW, DIAMOND JEWELS AND YOU THINK, GOSH, WHICH ONE DO I SELECT
18     HERE?  WE'RE CURSED WITH AN ABUNDANCE OF RICHES HERE.
19             SO LET ME START OFF WITH SAYING THAT I'M SO IMPRESSED WITH
20     ALL OF THE FIRMS INVOLVED IN THIS CASE.  I KNOW THAT ALL OF
21     YOU, IRRESPECTIVE OF THIS MOTION, BUT ALL OF YOU ARE GOING TO
22     REPRESENT YOUR CLIENTS, YOUR RESPECTIVE CLIENTS DILIGENTLY,
23     ZEALOUSLY, I KNOW YOU'RE GOING TO PURSUE THE INTERESTS OF YOUR
24     CLIENTS IN THAT MANNER, AND IN DOING SO, YOU ALWAYS DO, AND MY
25     EXPERIENCE IS YOU DO SO WITH THE HIGHEST DEGREE OF ETHICS AND
```

1    INTEGRITY GOING FORWARD, WHICH OFTENTIMES IS CONCURRENT WITH

2    COOPERATION ON ISSUES THAT CAN BE SETTLED AND REACHED AGREEMENT

3    ON, AND THERE'S OTHERS WHERE THEY HAVE TO BE LITIGATED, THE

4    LITIGATION IS ALWAYS AT THE HIGHEST LEVEL OF INTELLECT,

5    ADVOCACY WITH RESPECT FOR ALL OF OUR PROCEDURES THAT WE HAVE IN

6    COURT.

7         SO WE'RE BLESSED WITH THIS ABUNDANCE OF RICHES, SO I

8    APPRECIATE THAT.

9         WELL, LET ME TURN TO THE PARTIES TO EXPRESS YOUR -- IF YOU

10   WISH TO ADD ANYTHING THAT YOU THINK APPROPRIATE FOR ME TO

11   CONSIDER AS I CONSIDER THE TWO MOTIONS HERE.

12        SO WHY DON'T WE START WITH -- LET'S START WITH THE CPM

13   PARTIES AND THAT, THAT GROUP, AND IS THERE ANYTHING -- WHO'S

14   GOING TO SPEAK FOR THAT GROUP?

15             MS. SRINIVASAN:  I AM, YOUR HONOR.

16             THE COURT:  MS. SRINIVASAN, YES.

17             MS. SRINIVASAN:  YES, YOUR HONOR.

18        YOU KNOW, OUR GROUP BRINGS TOGETHER -- AND AS THE COURT

19    HAS NOTED, THERE'S AN ABUNDANCE OF TALENT IN THIS GROUP BEFORE

20    YOU TODAY.

21        YOU KNOW, WE FEEL WE'VE BROUGHT TOGETHER A GROUP THAT

22    REFLECTS WIDE-RANGING EXPERIENCE WITH RESPECT TO THESE KINDS OF

23    CASES.

24        WE'VE BEEN ABLE TO COLLABORATE AND ADVANCE THE MATTER

25    THROUGH OUR WORK AND OUR INVESTIGATION.  AS OF TODAY, WE HAVE

1    16 PLAINTIFFS THAT WE REPRESENT, AND THAT'S NEARLY HALF OF THE

2    INDIRECT PURCHASER STATES THAT WE'VE GATHERED ALREADY JUST

3    THROUGH OUR WORK TOGETHER.

4        IN ADDITION TO THE INVESTIGATIVE WORK THAT WE'VE ALREADY

5    DONE, WE ALL HAVE A LOT OF EXPERIENCE WITH DEALING WITH SOME OF

6    THE UNIQUE ISSUES THAT INDIRECT PURCHASERS WILL HAVE TO DEAL

7    WITH, INCLUDING THE DISCOVERY INTO INTERMEDIARY OUTLETS AND

8    ANALYZING AND DEVELOPING DAMAGES ISSUES.

9        THOSE ARE AREAS WHERE OUR FIRMS COLLECTIVELY HAVE HAD TO

10   BOTH ENGAGE IN SIGNIFICANT DISCOVERY, BUT ALSO HAVE A LOT OF

11   EXPERIENCE WORKING WITH EXPERTS TO BE ABLE TO FULLY DEVELOP

12   THOSE THEORIES.

13       WE ARE CONTINUING TO ADVANCE THE INTERESTS OF OUR CLASS

14   PLAINTIFFS, POTENTIAL CLASS REPRESENTATIVES.  WE HAVE PUT

15   TOGETHER A MOTION FOR ALTERNATIVE SERVICE.  WE'VE RECOGNIZED

16   HERE THAT THERE WILL BE ISSUES THAT WE NEED TO OVERCOME IN

17   SERVING THE ARRAY OF DEFENDANTS THAT ARE REPRESENTED.

18       AND OUR SLATE, YOU KNOW, WE HAVE EXPERIENCE WORKING

19   TOGETHER, AND WORKING TOGETHER EFFICIENTLY.

20       WE DO NOTE THAT SOME OF THE PAPERS REFERENCED THE REASON

21   TO HAVE THREE CO-LEADS.  WE DON'T VIEW THAT AS BLOAT OR AS

22   INEFFICIENCY IN ANY WAY.  WE HAVE ALL WORKED TOGETHER ON

23   MATTERS AND WE KNOW HOW TO DIVIDE THEM IN A WAY THAT

24   SUBSTANTIALLY ADVANCES THE INTERESTS OF THE CLASS.  WE'VE DONE

25   IT REPEATEDLY.  WE DON'T HAVE AN INTEREST IN DUPLICATING WORK,

1    BUT THERE'S CERTAINLY GOING TO BE WORK TO BE DONE HERE.

2        YOU KNOW, AS I MENTIONED, BEING ABLE TO FIND, LOCATE, AND

3    SIGN ON REPRESENTATIVES FROM ALL OF THE INDIRECT PURCHASER

4    STATES IS IMPORTANT AND WE THINK CRITICAL TO ADVANCING THE

5    CASE, AND BEING ABLE TO DO THE KIND OF IMPORTANT THIRD PARTY

6    DISCOVERY WORK THAT WILL BE NEEDED FOR ULTIMATELY THE ANALYSIS

7    THAT WE NEED TO PUT FORWARD, ON TOP OF DEMONSTRATING LIABILITY.

8        AND, YOU KNOW, WE BELIEVE THAT OUR SLATE CAN DO THAT, WE

9    CAN DO IT EFFICIENTLY, WE'VE COMMITTED TO DOING IT UNDER AN

10    EFFICIENT PROTOCOL THAT WILL BENEFIT THE CLASS ULTIMATELY.

11        AND, YOU KNOW, WE BELIEVE THAT WE BRING A LOT OF

12    EXPERIENCE THAT WILL FACILITATE THE ADVANCEMENT OF THIS CASE,

13    AND ALSO MAKE IT EASIER FOR THE COURT SO THAT WE ARE ABLE TO

14    RESOLVE DISPUTES, WORK AMONGST OURSELVES, COORDINATE WITH

15    DIRECT PURCHASERS AS WE ALSO HAVE IN MANY CASES, AND TRY TO

16    BRING THIS MATTER FORWARD EFFICIENTLY.

17        THE COURT:  ALL RIGHT.  WELL, THANK YOU.

18        TO THAT LAST POINT, I DRAW YOU TO PAGE, ECF PAGE 20 OF

19    YOUR MOTION, AND YOU CAPTURE THERE, I THINK BEGINNING AT LINE 9

20    TO THE END OF THE PAGE, YOU CAPTURE SOME PROTOCOLS THAT YOU

21    THINK YOU WOULD ENGAGE.

22        AND I UNDERSTAND THE -- I GUESS AT A HIGH LEVEL WHEN WE

23    LOOK AT IT, WE SAY, WELL, THERE'S GOING TO BE THREE LARGE LAW

24    FIRMS THAT WILL CO-MANAGE THIS, AND CANDIDLY, I THINK WE ALL

25    LOOK AT THAT AND THINK, OH, MY GOSH, MORE LAWYERS MEANS MORE

1    BILLING, DOESN'T IT, WHICH MEANS MORE COSTS, WHICH MEANS IT'S

2    GOING TO COST MORE FOR THE PLAINTIFFS HERE.

3        YOUR RESPONSE TO THAT, I THINK, IS THIS PROTOCOL THAT I'VE

4    REFERENCED.

5        AND THIS IS OF CONCERN TO JUDGES, AS YOU KNOW.  WE'VE

6    SEEN, NOT FROM ANY OF YOU, BUT WE'VE SEEN IN OTHER CASES WHERE

7    PARTNERS HAVE BEEN TASKED AND BILLED FOR READING LETTERS,

8    READING E-MAILS, THOSE TYPES OF THINGS, AND THERE'S -- THE FEES

9    JUST ARE DRIVEN HIGH WITH THAT.

10       AND THEN WHEN YOU HAVE THREE LAW FIRMS, THAT'S THREE

11   DIFFERENT SETS, LAW FIRM SETS OF PARTNERS WHO ARE GOING TO BILL

12   AT THEIR PARTNER RATE.  THAT'S SOMETHING THAT IS OF GREAT

13   CONCERN.

14       THE BULLET POINTS THAT YOU MENTION ON YOUR PAGE 11, ECF

15   PAGE 20 AS I SAID, SPEAK TO THAT.  CAN YOU TELL ME A LITTLE BIT

16   MORE ABOUT HOW YOU INTEND TO FOLLOW THAT AND WHAT YOU'LL DO AS

17   FAR AS KEEPING TRACK OF BILLING AND PROVIDING THAT TO THE COURT

18   ON A, ON A REGULAR BASIS?

19       MS. SRINIVASAN:  YES, YOUR HONOR.  I -- I PERSONALLY

20   HAVE HANDLED REVIEWING TIME RECORDS IN OTHER CLASS ACTION

21   MATTERS.  SOMETIMES THE COURT ASKS FOR IT AT INTERVALS, AT

22   OTHER TIMES IT ONLY WANTS TO SEE IT AT THE POINT AT WHICH A

23   MOTION FOR ATTORNEYS' FEES IS RELEVANT.

24       THE COURT:  WHICH ONE OF THOSE -- PARDON ME FOR

25   INTERRUPTING YOU -- BUT WHICH ONE OF THOSE DO YOU THINK IS MOST

1      EFFECTIVE TO GET THE LAWYERS' ATTENTION ABOUT KEEPING THE FEES

2      IN A REGULATED MANNER?

3             MS. SRINIVASAN:  YOU KNOW, WE ARE AMENABLE TO DOING

4      IT AT THE COURT'S PREFERENCE.  BUT IN A MATTER WHERE I OVERSEE

5      IT, I GO THROUGH THEM EVERY MONTH AND I ROUTINELY KICK THINGS

6      BACK OR I TAKE THINGS OUT.

7             IT MAY BE FINE FOR INTERNAL BILLING PURPOSES TO CAPTURE

8      WHAT PEOPLE ARE DOING, BUT IF I'M ULTIMATELY GOING TO BE THE

9      PERSON SIGNING MY NAME ON A DECLARATION THAT I REVIEWED THE

10     BILLING RECORDS EVERY MONTH, THEN I'M DOING THAT IN A

11     CONSISTENT FASHION AND TALKING TO THE TEAMS ABOUT IT.

12            SO I THINK IF THE COURT'S PREFERENCE IS TO REVIEW THOSE

13     QUARTERLY, THAT IS FINE BY THE FIRMS.

14            BUT I ALSO THINK THAT IF SOMEBODY FROM THE FIRMS IS

15     APPOINTED TO HANDLE THAT, THAT THEY'RE GOING TO TAKE THAT ROLE

16     SERIOUSLY.

17            I THINK I SPEAK ON BEHALF OF ALL THREE FIRMS, WE'RE VERY

18     FAMILIAR WITH THE CONCERNS COURTS HAVE RAISED AS TO, YOU KNOW,

19     BILLING AND MAKING SURE THINGS ARE DONE EFFICIENTLY.

20            OBVIOUSLY, YOU KNOW, IN SOME OF THESE CASES, LAWYERS ARE

21     APPLYING FOR -- WHERE THERE'S BEEN A SUCCESSFUL RESULT, THEY'RE

22     APPLYING FOR THEIR FEES ON A LODESTAR BASIS; AND IN OTHER

23     INSTANCES THEY'RE SEEKING A PERCENTAGE OF THE COMMON FUND SO

24     THAT THEY'RE NOT -- YOU KNOW, THEIR REWARD IS TIED TO RESULTS

25     RATHER THAN SIMPLY TIME SPENT.

1       I'LL ALSO SAY, YOU KNOW, THAT THERE ARE OPPORTUNITY COSTS

2    FOR PUTTING A BUNCH OF LAWYERS IN TO DO THE WORK THAT ONE

3    LAWYER CAN DO FOR ALL OF OUR FIRMS, WE'RE ALL INVOLVED IN OTHER

4    ACTIONS AND MATTERS, AND THAT IS A CONSTRAINT, A REAL

5    CONSTRAINT THAT I THINK -- THAT WE'RE ALL AWARE OF.

6       SO, YOU KNOW, WITH RESPECT TO THE PROTOCOLS, WE'VE BEEN

7    IN -- AND I'LL SAY FOR MY FIRM, WE HANDLE OTHER TYPES OF

8    CONTINGENCY CASES, NON-CLASS CASES, AND SO WE'RE VERY FAMILIAR

9    WITH HOW TO LEANLY LITIGATE THOSE.  WE HAVE A BUSINESS INTEREST

10   TO DO THAT.

11      AND I THINK OUR PROTOCOL HERE -- FOR EXAMPLE, WE DON'T

12   NEED, YOU KNOW, GENERALLY MULTIPLE PEOPLE HANDLING DEPOSITIONS,

13   A SINGLE DEPOSITION.

14      WE GENERALLY CAN HAVE A PERSON BE THE LEAD AUTHOR ON A

15   BRIEF WITH INPUT FROM OTHER MEMBERS OF THE TEAM.  THAT IS

16   EFFECTIVELY WHAT WE ARE DOING NOW.

17      WE CAN DIVVY UP SECTIONS FOR INDEPENDENT HANDLING BY

18   FIRMS, BUT NOT DUPLICATIVE HANDLING.

19      SO, YOU KNOW, THAT'S REALLY BEEN OUR EXPERIENCE, BOTH

20   LEADING OTHER CASES AND IN CASES WHERE WE'VE WORKED TOGETHER.

21      NOT ONLY DOES IT NOT BENEFIT THE CLASS, I DON'T THINK IT

22   ULTIMATELY BENEFITS THE FIRMS THAT MUCH BECAUSE WE HAVE OTHER

23   CLIENTS THAT WE COULD BE SERVING RATHER THAN BEING THE NTH

24   PERSON LOOKING AT SOMETHING.

25      SO WE -- I HAVE ANOTHER MATTER IN THIS DISTRICT NOW WHERE

1    WE HAVE TWO CO-LEAD FIRMS AND CPM IS ONE OF THEM, AND ONE

2    STEERING COMMITTEE FIRM, AND WE ADHERE TO A VERY TIGHT CORE

3    GROUP THAT HANDLES THE KEY ISSUES IN THE CASE AND IT'S WORKED

4    OUT -- FRANKLY, I THINK IT'S WORKED OUT GREAT.  IT ALLOWS US TO

5    CONTROL AND TO COME TO CONSENSUS QUICKLY ABOUT HOW TO PROCEED,

6    AND IT MAKES SURE THAT EVERYBODY INVOLVED KNOWS ALL THE ISSUES

7    IN THE CASE.

8         AT THE SAME TIME, YOUR HONOR, I -- YOU KNOW, WE'VE MADE A

9    COMMITMENT IN OUR PAPERS TO SELF-FUND THIS MATTER.  I BELIEVE

10   THAT HAVING FIRMS THAT HAVE THE CAPACITY TO SEE IT THROUGH TO

11   COMPLETION IS IMPORTANT, AND WHO ARE WILLING TO DO THAT.

12        AND JUST THROUGH THE ABILITY OF OUR THREE FIRMS TO DATE,

13   WE'VE BROUGHT IN NEARLY HALF OF THE INDIRECT PURCHASER

14   PLAINTIFFS THAT WE WOULD NEED.

15        SO I UNDERSTAND THERE'S A BALANCE AND I THINK THAT THERE'S

16   A CHECK THAT THE FIRMS CAN INSTITUTE THROUGH A PROTOCOL AND AT

17   THE COURT'S PLEASURE TO PROVIDE ATTORNEY RECORDS IF THAT WOULD

18   GIVE THE COURT COMFORT ABOUT HOW WE'RE DOING.

19             THE COURT:  OKAY.  THANK YOU.

20        LET ME ASK YOU TO COMMENT, IF YOU WISH, ON ONE OTHER

21    MATTER THAT YOUR COLLEAGUES RAISE, AND THAT IS THE

22    ROBINS KAPLAN GROUP SUGGESTS THAT THERE ARE EFFICIENCIES AND

23    COST SAVINGS TO BE GARNERED BY HAVING THEM, ONE FIRM, AND

24    PARTICULARLY THEM BECAUSE THEY HAVE IN-HOUSE EXPERTS, ECONOMIC

25    EXPERTS AND OTHERS WHO ARE IN HOUSE, AND WITH THAT THERE'S A

```
1        SIGNIFICANT COST SAVINGS AS OPPOSED TO RETAINING OUTSIDE

2        EXPERTS.

3              DO YOU WISH TO COMMENT ON THAT OR MAKE ANY OBSERVATIONS?

4                 MS. SRINIVASAN:  YES, YOUR HONOR.

5          I WOULD SAY COLLECTIVELY BETWEEN OUR FIRMS, WE HAVE

6        HANDLED -- AND IT'S REFLECTED IN THE CASE LIST -- MANY, MANY OF

7        THESE MATTERS.  AND SO AS TO, YOU KNOW, DOING THE INITIAL

8        ANALYSIS OF WHAT WE NEED, WHAT DISCOVERY WE NEED TO ACCUMULATE,

9        I MEAN, WE HAVE A LOT OF THAT INSTITUTIONAL KNOWLEDGE ALREADY.

10             THE FACT IS THAT TO BE ABLE TO PUT TOGETHER AN EXPERT

11       ANALYSIS IN THESE CASES IS A BIG UNDERTAKING AND IT IS STILL

12       GOING TO REQUIRE OUTSIDE SOURCES TO COME IN, PREPARE ANALYSIS,

13       PREPARE A REPORT LIKELY, YOU KNOW, IN ADVANCE OF A

14       CERTIFICATION, AND WE ALL KNOW THAT THAT IS SORT OF THE

15       PROCESS.

16             I DON'T -- I DON'T BELIEVE HAVING, JUST HAVING INTERNAL

17       EXPERTS OR, YOU KNOW, CONSULTANTS ON THOSE ISSUES IS GOING TO

18       DRAMATICALLY REDUCE THE WORK THAT THE OUTSIDE EXPERT HAS TO DO.

19       THEY ARE THE ONES WHO ARE ULTIMATELY ACCOUNTABLE IN LITIGATION,

20       THEY ARE THE ONES WHO ARE GOING TO BE TESTIFYING, THEY'RE THE

21       INDEPENDENT EYES THAT ARE BROUGHT IN TO PREPARE THE ANALYSES.

22             SO I -- YOU KNOW, I IMAGINE THAT HAS GIVEN THEM SOME

23       BENEFIT.  BUT I DO BELIEVE THAT, HAVING BEEN IN THESE CASES AS

24       MUCH AS WE HAVE, WE HAVE A PRETTY GOOD SENSE OF WHAT THE

25       LEGWORK IS THAT NEEDS TO BE DONE BEFORE THE EXPERTS GET
```

```
1    INVOLVED.

2              THE COURT:  OKAY.  THANK YOU.

3         ANYONE ELSE WISH TO BE HEARD FROM THAT GROUP?

4         ALL RIGHT.  THANK YOU.

5         LET ME TURN TO ROBINS KAPLAN THEN.  WHO'S GOING TO SPEAK

6    IN ADVANCE OF THAT MOTION?

7              MR. SHEANIN:  GOOD MORNING, YOUR HONOR.

8         AARON SHEANIN FROM ROBINS KAPLAN.  AS I MENTIONED BEFORE,

9    I'M HERE WITH MY PARTNER, KELLIE LERNER, AND MY ASSOCIATE,

10   ADAM MENDEL.

11             THE COURT:  ALL RIGHT.  THANK YOU.  WHAT WOULD YOU

12   LIKE ME TO KNOW ABOUT YOUR APPLICATION?

13             MR. SHEANIN:  FIRST, I WANT TO POINT OUT THAT I

14   APPRECIATE THE COURT'S PERSPECTIVE.  YOU HAVE AN ABUNDANCE OF

15   RICHES HERE.  YOU HAVE FOUR DIFFERENT FIRMS WHO ARE SEEKING

16   APPOINTMENT, ALL OF WHOM ARE EXCEPTIONALLY QUALIFIED.

17        MY COLLEAGUES, IN THE COMPETING APPLICATION, NOTED ON

18   PAGE 2 THAT IN CONSIDERING A MOTION TO APPOINT INTERIM LEAD

19   COUNSEL, THE COURT MUST DETERMINE WHO WILL BEST SERVE,

20   REPRESENT THE INTERESTS OF THE CLASS, AND WHO IS BEST ABLE TO

21   ACCOMPLISH THE CLASS ACTION GOALS OF EFFICIENCY AND ECONOMY IN

22   DOING SO.

23        WE WOULD SUBMIT THAT ROBINS KAPLAN SATISFIES BOTH

24   CRITERIA.  OUR PAPERS LAY OUT OUR HISTORY OF LITIGATION

25   EXPERIENCE:  80 YEARS OF BEING IN LITIGATION; LEADERSHIP IN
```

1    SOME OF THE MOST IMPORTANT ANTITRUST CASES AND LARGE ANTITRUST

2    CASES IN THE COUNTRY; SPECIFIC EXPERIENCE ON CASES INVOLVING

3    INDIRECT PURCHASERS; AS LEADERS IN, IN AUTO PARTS, FOR EXAMPLE,

4    AND IN HARD DISK DRIVE SUSPENSION ASSEMBLIES.

5        SO WE ARE FAMILIAR WITH ALL OF THE MAJOR ISSUES THAT ARE

6    LIKELY TO COME UP HERE, PERSONAL JURISDICTION QUESTIONS BY

7    FOREIGN DEFENDANTS, FTAIA, ANTITRUST INJURY, PASS-THROUGH

8    DAMAGES, CLASS CERTIFICATION FOR THE INDIRECT REPEALER STATES,

9    AND THE -- AND CONDUCTING FOREIGN LANGUAGE DISCOVERY AGAINST

10    DEFENDANTS IN ASIA.  WE'VE DONE THAT IN MANY CASES.

11        I WILL POINT OUT AGAIN THAT WE ARE A TRIAL READY FIRM.

12    WE'RE A FIRM OF LITIGATORS WHO ALWAYS PREPARE FOR TRIAL BECAUSE

13    THAT'S WHAT GETS US THE BEST RESULTS, WHETHER WE GET THAT BEST

14    RESULT IN FRONT OF THE JURY, THE COURT, OR A MEDIATOR.

15        I PERSONALLY HAVE TRIED ANTITRUST CASES IN THIS DISTRICT.

16    I WAS ON THE TRIAL TEAM IN TFT LCD BEFORE I JOINED

17    ROBINS KAPLAN WHERE WE REPRESENTED THE DIRECT PURCHASERS

18    AGAINST TOSHIBA AND RECEIVED AN $87 MILLION VERDICT

19    PRE-TREBLING.

20        WE ARE PREPARED, AND OUR TRIAL AND OUR TRIAL PREPARATION

21    WILL BENEFIT THE CLASS.

22        THE COURT NOTED THE SUBSTANTIAL RESOURCES THAT WE HAVE,

23    PARTICULARLY THE IN-HOUSE ECONOMIST AS AN EXAMPLE.  WE DO THINK

24    THAT THAT BENEFITS THE CLASS.  IT DOES GIVE US A STEP INTO THE

25    PROCESS MUCH FURTHER DOWN THE ROAD THAN SIMPLY GOING OUT TO AN

1    OUTSIDE EXPERT AT THE VERY BEGINNING.

2         OBVIOUSLY WE WILL ALL NEED TO BE INVOLVED WITH OUTSIDE

3    EXPERTS.  WE KNOW THAT.  OUR COMPETING APPLICANTS KNOW THAT.

4         BUT HAVING PEOPLE IN-HOUSE START TO HAVE A GUT CHECK ON

5    ALL OF THESE ISSUES IS VALUABLE AND IT BENEFITS THE CLASS.

6         I'VE ALSO POINTED TO OUR, OUR TRIAL TECH TEAMS, OUR

7    IN-HOUSE E-DISCOVERY TEAMS.  WE HAVE THOSE RESOURCES.

8         AND LIKE OUR COMPETING APPLICANT, WE WILL COMMIT TO

9    LITIGATING THIS CASE ON OUR OWN DIME.  WE'RE NOT TAKING MONEY

10   FROM LITIGATION FUNDERS EITHER.

11        WE HAVE A SUSTAINED HISTORY OF WORKING COLLEGIALLY WITH

12   CO-COUNSEL, AND PARTICULARLY WITH ALL OF THESE FIRMS.  IN THE

13   TFT LCD ACTION, LIEFF CABRASER WAS MY CO-COUNSEL AT TRIAL.

14        IN AUTO PARTS, WE HAVE CO-COUNSELLED WITH MS. SRINIVASAN,

15   MR. ZAPALA, AND THEIR FIRMS.  SO WE KNOW AND ARE ABLE TO WORK

16   WELL WITH EVERYONE.

17        WE HAVE BEEN ABLE TO DO THAT SO FAR IN HELPING TO BRING

18   FORWARD THIS CASE AND MOVE IT FORWARD IN WORKING WITH BOTH

19   PLAINTIFF AND DEFENSE COUNSEL TO WORK ON THE CASE MANAGEMENT

20   STATEMENT AND TO SET UP THE INITIAL LITIGATION SCHEDULE.

21        WE EXPECT TO CONTINUE TO DO SO WHETHER WE'RE APPOINTED

22   INDIVIDUALLY, WITH ANOTHER FIRM, OR WHETHER THE OTHER FIRMS ARE

23   APPOINTED AND WE'RE SIMPLY PART OF THE PLAINTIFFS' TEAM.

24        WHAT I'D LIKE TO SAY IS THAT THE COMPETING APPLICANTS HAVE

25   NOT DEMONSTRATED THE NEED FOR THREE FIRMS UNDER THESE

1    CIRCUMSTANCES.  THE CASE JUST SIMPLY DOESN'T WARRANT IT.

2         IT IS NOT TO SAY THAT THERE AREN'T COMPLEXITIES HERE.

3    THERE ARE.  THERE ARE OBVIOUS COMPLEXITIES IN ANY INDIRECT

4    PURCHASER ANTITRUST CLASS ACTION.  BUT A THREE FIRM STRUCTURE

5    IS TOP HEAVY.

6         I WOULD SAY THAT THIS CASE IS MORE SIMILAR TO THE HARD

7    DISK DRIVE SUSPENSION ASSEMBLIES CASE.  THERE JUDGE CHESNEY

8    RECENTLY APPOINTED US AND ANOTHER FIRM AS CO-LEAD COUNSEL.

9    THAT CASE INVOLVED TWO DEFENDANT FAMILIES, HAD ABOUT NINE

10   DEFENDANTS I THINK AT THE TIME, THEY WERE IN THE UNITED STATES,

11   IN DIFFERENT COUNTRIES AND ASIA, FOREIGN LANGUAGE DISCOVERY, ET

12   CETERA.

13        THERE WAS ALSO PRIOR LITIGATION.  THE DEPARTMENT OF

14   JUSTICE HAD BROUGHT CRIMINAL PROCEEDINGS.  SO THAT GAVE THE

15   PARTIES A LEG UP.

16        THIS CASE IS SIMILAR.  WE HAVE A FOREIGN-BASED CARTEL WITH

17   TWO DEFENDANT FAMILIES IN THE U.S. AND IN COUNTRIES ABROAD,

18   PRIOR HISTORY OF LITIGATION WITH THE ORION LITIGATION, ALSO

19   ABOUT 10 OR 12 DEFENDANTS.

20        THESE ARE SIMILAR MATTERS.  IF TWO CO-LEADS WERE

21   APPROPRIATE THERE, I WOULD SUBMIT THAT NO MORE THAN TWO

22   CO-LEADS ARE APPROPRIATE HERE.

23        THE CASE LAW IN THE NORTHERN DISTRICT SUPPORTS US IN THAT

24   REGARD.  THERE ARE VERY FEW CASES IN WHICH THERE ARE THREE

25   CO-LEADS APPOINTED IN THIS DISTRICT.

1    THE CASES THAT MY COLLEAGUE CITED, TFT LCD, APPLE DEVICE,

2    HARD DISK DRIVES, QUALCOMM, TRANSPACIFIC, CALIFORNIA GAS, DRAM,

3    THOSE ARE ALL TWO FIRM CASES.

4    THERE ARE CASES THAT THREE OR MORE ARE APPROPRIATE, AND WE

5    RECOGNIZE THAT, BUT THAT'S DUE TO THE COMPLEXITY OF THE CASE.

6    LITHIUM ION BATTERIES HAD NINE DEFENDANT FAMILIES, AND I

7    THINK EACH OF THOSE DEFENDANT FAMILIES HAD AT LEAST TWO AND AS

8    MANY AS FOUR, MAYBE EVEN FIVE, DEFENDANTS.  I KNOW BECAUSE I

9    WAS CO-LEAD COUNSEL FOR THE DIRECT PURCHASERS PLAINTIFFS IN

10   THAT MATTER.

11   WE'RE AGAIN -- ON THE INDIRECT SIDE, WE WORKED WITH OUR

12   COLLEAGUES AT COTCHETT AND AT LIEFF CABRASER.

13   TELESCOPE SIMPLY IS NOT THAT CASE.  WE DON'T HAVE THE

14   LEVEL OF -- THAT LEVEL OF COMPLEXITY AS WE DO HERE.

15   THE MAJOR INEFFICIENCY THAT WE NEED TO DEAL WITH HERE IS

16   NOT, IS NOT ONE OF WILL EVERY -- WILL -- LET ME TRY THAT AGAIN.

17   THE MAJOR INEFFICIENCY HERE IS REALLY ABOUT STRATEGIC

18   LITIGATION DECISIONS.  IN ORDER TO MAKE ANY SINGLE STRATEGIC

19   LITIGATION DECISION, YOU NEED TO HAVE CONSENSUS AMONG THREE

20   FIRMS.  SOMETIMES GETTING THREE FIRMS ON THE PHONE TOGETHER IS

21   A CHALLENGE, LET ALONE GETTING THEM ALL TO AGREE ON THE MAJOR

22   DECISIONS.  THAT IN AND OF ITSELF WILL CREATE INEFFICIENCIES

23   AND DELAY THAT IS UNNECESSARY FOR THE CLASS.

24   IN OUR EXPERIENCE, ONE FIRM CAN HANDLE THAT AND CAN MAKE

25   THOSE CALLS.  TWO FIRMS CAN HANDLE THAT AND MAKE THOSE CALLS

1    VERY WELL AND VERY EASILY, EFFECTIVELY.  THAT'S WHAT THE --

2    THAT'S WHAT THE EXPERIENCE OF OUR FIRM AND IN THIS DISTRICT

3    DEMONSTRATES.

4         THE COURT RAISED THE CASE MANAGEMENT PROTOCOL.  I

5    APPRECIATE THE CASE MANAGEMENT PROTOCOL.  WE'VE SUBMITTED --

6    THAT MY COLLEAGUES HAVE SUPPORTED.

7         WE HAVE SUBMITTED SIMILAR CASE MANAGEMENT PROTOCOLS IN

8    HARD DISK DRIVES, WE SUBMITTED THEM IN THE WELLS FARGO

9    COLLATERAL PROTECTION INSURANCE CASE THAT I LITIGATED IN

10   SOUTHERN CALIFORNIA OVER THE LAST COUPLE OF YEARS, AND WE DO

11   EXACTLY THE SAME THING, LIMIT THE NUMBER OF PEOPLE WHO ARE

12   ATTENDING DEPOSITIONS, CAP TIME IF NECESSARY ON HOURLY RATES

13   FOR PURPOSES OF DOCUMENT REVIEW, ELIMINATE READ AND REVIEW

14   TIME, ENSURE THAT WE'RE GETTING MONTHLY REPORTS ON TIME.

15        THE POINT THAT THE COURT RAISED, WE DO IN I THINK EVERY

16   ONE OF OUR CASES GET -- EITHER GET OR GIVE, IF WE'RE NOT

17   CO-LEAD COUNSEL -- MONTHLY TIME AND EXPENSE REPORTS.

18        IT'S CRITICAL FOR US.  NOBODY WANTS TO HAVE TO MAKE SURE

19   WE UNDERSTOOD EXACTLY WHAT WAS DONE AT THE END OF THE DAY.  WE

20   WANT TO KNOW CONTEMPORANEOUSLY, WHAT IS OUR TIME?  ARE WE USING

21   IT EFFECTIVELY?  ARE WE USING IT TO THE BENEFIT OF THE CLASS?

22   ARE THE OTHER COUNSEL INVOLVED DOING THE SAME?

23        AND AS MS. SRINIVASAN SAID, WE'VE KICKED BACK TIME THROUGH

24   THE PROCESS IF NECESSARY.

25        I'VE BEEN IN CASES WHERE WE COLLECTED ON OUR OWN, I'VE

1    BEEN IN CASES WHERE WE SUBMITTED TO THE COURT ON A REGULAR

2    BASIS.

3         I CERTAINLY DON'T THINK THE COURT WANTS TO SEE TIME

4    RECORDS EVERY MONTH.  YOU'RE ALREADY OVERBURDENED AND I DON'T

5    THINK YOU NEED TO SEE TIME RECORDS EVERY MONTH.

6         IF YOU -- IF THE COURT WOULD LIKE TO SEE THEM ON A REGULAR

7    BASIS, WE'RE HAPPY TO DO SO.

8         I'M PRETTY CONFIDENT WE DID THAT IN LITHIUM ION BATTERIES

9    ON I THINK A QUARTERLY BASIS.  WE'RE HAPPY TO DO THAT HERE.

10        BUT WE ALSO THINK THAT WE'RE MORE THAN CAPABLE OF POLICING

11   THAT TIME SIMPLY BY TAKING IT ON A MONTHLY BASIS OURSELVES.

12        MS. SRINIVASAN POINTED OUT THAT THERE ARE MULTIPLE

13   PLAINTIFFS WHO ARE INVOLVED IN THIS CASE AND THAT THEY HAVE

14   REPRESENTED MANY.

15        WE, TOO, REPRESENT MULTIPLE PLAINTIFFS.  MR. KAUFMAN IS

16   THE ONE WHO HAS FILED WITH US.  WE'VE BEEN CONTACTED BY OTHER

17   PLAINTIFFS.  WE HAVE RETENTIONS, AND THOSE INVOLVE STATES THAT

18   ARE NOT NECESSARILY INCLUDED IN THE GROUP THAT IS REPRESENTED

19   BY LIEFF AND COTCHETT AND SUSMAN.

20        WE KNOW THAT WE WILL WORK TOGETHER WITH ALL OF THOSE

21   FIRMS.  WE WILL DO SO TO MAKE SURE THAT THERE ARE -- WHETHER

22   WE'RE IN THE LEAD OR WE'RE IN THE CO-LEAD OR WE'RE SIMPLY A

23   SUPPORTIVE FIRM, AND WE'LL DO SO BECAUSE THAT'S WHAT'S DONE IN

24   THESE CASES TO MAKE SURE THAT WE HAVE PLAINTIFFS WHO ARE ABLE

25   TO COVER THE GAMUT OF ALL OF THE INDIRECT PURCHASER REPEALER

1   STATES.  THAT'S PART OF WHAT NEEDS TO BE DONE, AND IT'S TYPICAL

2   HERE.  IT'S TYPICALLY DONE AND IT WILL BE DONE HERE.

3        I SUBMIT, YOUR HONOR, THAT THE THREE TOP -- THE THREE FIRM

4   STRUCTURE DOES NOT ADDRESS THE INEFFICIENCIES INVOLVED, AND OUR

5   SINGLE -- OUR APPROACH OF A SINGLE FIRM, OR PERHAPS TWO

6   CO-LEADS, DOES.

7        THANK YOU FOR YOUR TIME.  IF YOU HAVE QUESTIONS, I'M HAPPY

8   TO ANSWER THEM.

9             THE COURT:  NO.  THANK YOU.

10       I GUESS I DO HAVE A QUESTION FOR BOTH YOU AND

11  MS. SRINIVASAN.  ONE THING THAT YOU KNOW THAT MY COLLEAGUES IN

12  THE NORTHERN DISTRICT SEEK TO, WHAT WE ASPIRE TO IN THESE

13  CASES, AND PARTICULARLY IN THE FIRMS, IS TO HAVE A BROADER

14  REACH ON THE LEADERSHIP TEAMS OF INDIVIDUALS WHO PREVIOUSLY,

15  FOR WHATEVER REASON, HAVEN'T HAD THAT OPPORTUNITY OR HAVEN'T

16  MADE THOSE APPEARANCES.

17       AND I'M SPEAKING OF WOMEN, I'M SPEAKING OF MINORITIES AND

18  OTHER INDIVIDUALS WHO -- AND NEWER PRACTITIONERS WHO PERHAPS

19  HAVEN'T HAD THAT EXPERIENCE YET, AND THESE TYPES OF TEAMS,

20  THESE TEAM CONCEPTS SEEM TO AFFORD THAT OPPORTUNITY, AFFORD THE

21  ABILITY FOR LAW FIRMS TO CREATE IN THEMSELVES -- AND I'M NOT

22  TRYING TO SAY I'M TELLING YOU AT ALL WHO YOU SHOULD HIRE, WHAT

23  YOU SHOULD DO, WHO YOU HAVE YOU ADVANCE, ANYTHING LIKE THAT --

24  BUT WHEN YOU BRING A TEAM TOGETHER THAT ADVANCES THE SPIRIT OF

25  DIVERSITY AND KEEPING FORWARD, GOING FORWARD IN OUR DISTRICT

1    WITH A PIPELINE TO ENSURE THAT WOMEN AND OTHERS HAVE POSITIONS

2    OF LEADERSHIP, I SHOULD TELL YOU, THAT'S IMPORTANT TO ME, AND I

3    THINK IT'S -- I'M QUITE CONFIDENT IT'S IMPORTANT TO ALL OF MY

4    COLLEAGUES.  THAT'S SOMETHING WE LOOK TO.

5         AND YOUR FIRMS, IN BOTH YOUR PLEADINGS, YOU ATTESTED TO

6    THAT.  THAT SPIRIT IS EVOKED AND IS VERY CURRENT IN ALL OF YOUR

7    FIRMS.

8         I SUPPOSE THE QUESTION WOULD BE -- I UNDERSTAND THAT THE

9    THREE FIRMS VERSUS ONE, YOU KNOW, DO YOU REALLY NEED TO HAVE

10   THREE PEOPLE WHEN YOU CAN HAVE ONE FIRM TO CAPTURE ALL THESE

11   EFFICIENCIES?

12        AND THEN I GUESS A SECOND QUESTION IS, OR PART OF THE SAME

13   QUESTION IS, BUT IF WE HAVE THREE FIRMS THAT EXPOSE THESE TYPES

14   OF PRACTITIONERS TO THIS, THAT DO NOT COST ADDITIONAL FEES,

15   IT'S NOT -- IT IS COST EFFECTIVE TO THE PLAINTIFFS, IS THAT

16   SOMETHING THAT WE SHOULD ASPIRE TO AS WELL, TO CAPTURE THAT

17   EFFICIENCY, TO CAPTURE THAT GOAL?

18         MS. SRINIVASAN:  YOUR HONOR, I'M HAPPY TO ADDRESS

19    BOTH OF THOSE.  MAYBE I'LL START IN REVERSE ORDER OF YOUR

20    QUESTIONS.

21        I DO BELIEVE THAT IS AN IMPORTANT GOAL, TO BE ABLE TO

22   FOSTER THE NEXT GENERATION OF CLASS ACTION LEADERSHIP, OF

23   PLAINTIFFS' LAWYERS.  WE ABSOLUTELY HAVE TRIED TO DO THAT WITH

24   THE SLATE WE'VE PUT TOGETHER.  YOU KNOW, SOME OF US HAVE HAD

25   LEADERSHIP -- BEEN PART OF LEADERSHIP SLATES OR ROLES.

1      BUT THESE ARE LAWYERS WHO ARE, FRANKLY, AT THE FOREFRONT

2    OF THE PLAINTIFFS' CLASS ACTION BAR AND IT WOULD BE REALLY

3    IMPORTANT TO SEE THEM MOVE UP THAT PIPELINE SO THAT THEY ARE IN

4    A POSITION TO CONTINUE TO SEEK LEADERSHIP APPOINTMENTS AND TO

5    BE LEAD PLAINTIFFS' LAWYERS.

6      FROM MY FIRM, IN ADDITION TO MYSELF, MR. GERVAIS HAS BEEN

7    WORKING ON THIS MATTER AND HE IS, YOU KNOW, SOMEBODY I WOULD

8    LIKE TO SEE TO CONTINUE TO ADVANCE AND TO MOVE FORWARD IN CLASS

9    ACTION LEADERSHIP.  THAT'S VERY IMPORTANT TO ME.

10      FROM THE OTHER FIRMS, MS. CHAN, OF COURSE, IS -- YOU KNOW,

11    HAS EXTENSIVE EXPERIENCE HAVING DONE MANY OF THESE CASES FOR

12    LIEFF CABRASER, BUT IT WOULD BE FANTASTIC TO SEE HER HOLD THAT

13    KIND OF LEADERSHIP POSITION, VERY WELL DESERVED IN MY VIEW.

14      BEYOND THAT, SHE ALSO BRINGS THE SUBSTANTIVE BENEFIT OF

15    HER FOREIGN LANGUAGE EXPERIENCE, WHICH IN THIS CASE IS

16    IMPORTANT AND PERHAPS SPEAKS TO WHY DIVERSITY MATTERS.

17      BUT OBVIOUSLY HAVING SOMEBODY WHO CAN BE INVOLVED IN

18    FOREIGN LANGUAGE DEPOSITIONS AND PROVIDE A SPOT CHECK AS TO

19    FOREIGN LANGUAGE DOCUMENTS IS IMPORTANT.

20      AS TO MR. ZAPALA'S FIRM AND CPM, OBVIOUSLY ADAM HAS HAD

21    HIS OWN EXTENSIVE ARRAY OF EXPERIENCES IN THIS AREA.

22      MS. CASTILLO LIKEWISE, SHE IS ALSO VERY MUCH INVOLVED IN

23    THE AUTO PARTS LITIGATION, WHICH IS A SIGNIFICANT MDL MATTER.

24      BUT, YOU KNOW, THE GROUP WE'RE TALKING ABOUT HERE IS NOT A

25    CAST OF THOUSANDS.  IT IS EFFECTIVELY THE GROUP THE COURT SEES

1    BEFORE IT.

2        AND WOULD IT PROVIDE AN OPPORTUNITY FOR THESE LAWYERS TO

3    ADVANCE THEIR SKILL SET IN A CLASS ACTION MATTER?  I DO BELIEVE

4    SO, AND I BELIEVE THAT THAT HAS REAL LASTING IMPACT ON THEIR

5    ONGOING TRAJECTORY IN THESE CASES, AND I DO BELIEVE IT'S

6    WITHOUT, YOU KNOW, AN ADDITIONAL COST TO THE COURT.

7        AND, YOU KNOW, AS I SAID, YOUR HONOR, I THINK ALMOST

8    EVERYBODY IN OUR SLATE HAS DEALT WITH FOREIGN DEFENDANTS, BUT

9    THE ADDED BENEFIT OF SOME OF OUR TEAM HAVING FIRST-HAND

10   LANGUAGE EXPERIENCE AND, YOU KNOW, REFLECTING A DIVERSE SLATE

11   IS AN ADDED BENEFIT THAT WE BRING TO THIS INTERNATIONAL

12   LITIGATION.

13           THE COURT:  ALL RIGHT.  THANK YOU.

14           MS. SRINIVASAN:  YOUR HONOR, I CAN ANSWER THE FIRST

15   QUESTION, UNLESS YOU HAVE SOMETHING FURTHER ON THAT.

16           THE COURT:  NO, GO RIGHT AHEAD.

17           MS. SRINIVASAN:  OKAY.  YOU KNOW, ON THE FIRST

18   QUESTION WITH RESPECT TO THE ONE TO THREE FIRMS, I DO WANT TO

19   BE CLEAR -- AND I HOPE WE'RE NOT SETTING UP SORT OF A FALSE

20   DICHOTOMY ABOUT IT -- WHAT I HEARD MR. SHEANIN SAY IS THAT THEY

21   ARE GOING TO NEED TO WORK WITH OTHER PLAINTIFFS' COUNSEL IN

22   ORDER TO OBTAIN OTHER CLASS REPRESENTATIVES, AND POTENTIALLY

23   OTHER ASPECTS OF THEIR MATTER.

24        SO, YOU KNOW, WE HAVE ALREADY DONE THAT LEGWORK AND I DO

25   THINK THAT IT'S A SIGNIFICANT DIFFERENCE THAT WITHIN THIS GROUP

1    WE'VE BEEN ABLE TO MAKE SUCH INROADS IN OBTAINING CLASS

2    REPRESENTATIVES WITHOUT, YOU KNOW, GOING OUT AND SEEKING THE

3    ASSISTANCE OF DOZENS OF OTHER PLAINTIFFS' FIRMS, OR A HANDFUL

4    OF OTHER PLAINTIFFS' FIRMS WHOSE WORK AND CONTRIBUTION MAY BE

5    UNKNOWN IN SCOPE.

6         I WILL ALSO ADD AS TO THE MATTERS THAT HE REFERENCED --

7    AND WE PUT A NUMBER OF THESE IN OUR PAPERS -- THERE ARE MANY

8    CASES, INCLUDING THE DOORS INDIRECT PURCHASER ACTION AND OTHERS

9    IN WHICH ROBINS KAPLAN HAS BEEN INVOLVED WHERE THERE WAS A

10   THREE LEAD STRUCTURE.

11        BUT, YOU KNOW, SOME OF THIS CAN BE A LITTLE BIT CLOUDED.

12   I MEAN, IN SOME OF THESE ACTIONS, THERE MAY BE A STEERING

13   COMMITTEE OF TEN PEOPLE BEHIND THE ONE OR TWO, TWO FIRM

14   LEADERSHIP.  AND, FRANKLY, THEY'RE ALL AT LEAST TWO.  I DIDN'T

15   SEE ONE IN THERE ANYWHERE.

16        AND SO, YOU KNOW, WE'RE NOT TALKING ABOUT A SLATE THAT HAS

17   A BUNCH OF FIRMS THAT ARE ASSIGNED TO SOME SECONDARY STEERING

18   COMMITTEE POSITION.  THIS IS THE GROUP, AND THIS IS THE GROUP

19   THAT'S GOING TO LITIGATE THE CASE.

20        AND THAT IS A NOTABLE DIFFERENCE.  WHEN WE TALK ABOUT

21   BATTERIES LITIGATION, THERE WERE PROBABLY A DOZEN FIRMS THAT

22   WERE ALSO IN SUPPORTING ROLES THERE.

23        YOU KNOW, LIKEWISE FOR ONE OF THE APPLE MATTERS.  THERE

24   MAY HAVE BEEN TWO LAWYERS -- TWO FIRMS APPOINTED AS LEAD, BUT

25   MANY OTHER FIRMS IN SUPPORTING ROLES, AND OF COURSE THAT HAS AN

1    IMPACT ON THE ULTIMATE LODESTAR IN THE CASE, AND THAT IS NOT

2    WHAT WE'RE SEEKING TO DO HERE.

3        SO I JUST DO WANT TO BE CLEAR ABOUT THAT.  YOU KNOW, YOU

4    CAN LOOK AT WHAT THE LEADERSHIP SLATE IS AND THE NUMBER OF FIRM

5    ACTIONS AND SAY THAT WAS TWO OR THREE, BUT IT IS IMPORTANT TO

6    LOOK AT WHAT THE CUMULATIVE WORK AND THE NUMBER OF HANDS THAT

7    TOUCHED THE MATTER ARE, TOO, AND HERE WHAT WE'RE TALKING ABOUT

8    IS THIS GROUP, AND WE'VE BEEN ABLE TO DO QUITE A BIT ALREADY

9    COLLECTIVELY TO ADVANCE THAT.

10       AND AS TO THE ISSUE OF US REACHING CONSENSUS OR, YOU KNOW,

11   MAKING THAT SOMEHOW UNWIELDY, THAT'S JUST NOT BEEN OUR

12   EXPERIENCE.  I WOULD BE SURPRISED IF THAT HAD BEEN THE

13   EXPERIENCE OF MR. SHEANIN IN OTHER ACTIONS.

14       MOST OF THESE ISSUES, WE ARE IN -- YOU KNOW, WE KNOW WHAT

15   WE WANT TO DO.  WE TALK ABOUT THEM.  I THINK THE CLASS BENEFITS

16   FROM OUR HAVING MEANINGFUL DISCUSSIONS ABOUT THEM.

17       TO THE EXTENT THAT WE HAVE A DIFFERENT VIEW ABOUT HOW TO

18   PROCEED, THAT'S TO THE BENEFIT OF THE CLASS.  AND, AGAIN, IF WE

19   ULTIMATELY END UP SEEKING -- IF THERE'S RELIEF AND WE END UP

20   SEEKING A COMMON FUND PERCENTAGE OF THAT, THE CLASS HAS BEEN

21   BETTER OFF BY HAVING HAD SOME THOUGHTFUL DISCUSSION ABOUT HOW

22   TO PROCEED.

23            THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

24       MR. SHEANIN, DO YOU WANT TO RESPOND TO THE QUESTIONS?

25            MR. SHEANIN:  THANK YOU, YOUR HONOR.

1    FIRST WITH RESPECT TO THE ISSUE OF DIVERSITY, I APPRECIATE

2    THE NORTHERN DISTRICT'S VIEW, AND IT HAS BECOME MORE OF A

3    CONSENSUS VIEW AMONG THE NORTHERN DISTRICT, OF THE NEED TO

4    SUPPORT DIVERSITY WITHIN THE PRACTICE, WITHIN THE BAR, AND THE

5    NEED TO ENSURE THAT JUNIOR ATTORNEYS HAVE THE OPPORTUNITY TO

6    PARTICIPATE IN A WAY THAT THEY HAVE NOT PREVIOUSLY GENERALLY

7    HAD THOSE KINDS OF OPPORTUNITIES.

8    I AM A PAST MEMBER AND SOON TO BE FUTURE MEMBER OF THE

9    CALIFORNIA LAWYERS ASSOCIATION'S ANTITRUST UNFAIR COMPETITION

10   AND PRIVACY LAW SECTION, AND AS -- AND ONE OF THE KEY POINTS

11   FOR THAT PARTICULAR ORGANIZATION IS TO ENSURE THAT WE ARE

12   DEVELOPING THE NEXT GENERATION OF ATTORNEYS IN THIS BAR AND TO

13   ENSURE THAT WE'RE REACHING OUT TO ATTORNEYS WHO ARE BEYOND

14   THOSE WHO HAVE TRADITIONALLY BEEN REPRESENTED IN THIS CASE --

15   IN THIS BAR.

16   SO THIS ISSUE IS IMPORTANT TO ME.

17   OUR TEAM WILL ENCOMPASS GEOGRAPHIC, RACIAL, AND GENDER

18   DIVERSITY.  MS. LERNER, WHO IS HERE WITH ME, IS THE CO-CHAIR OF

19   OUR FIRM'S DIVERSITY COMMITTEE AND HAS MADE IT AN INCREDIBLE

20   AND IMPORTANT PRIORITY, NOT JUST FOR OUR PRACTICE GROUP, BUT

21   FOR THE FIRM IN GENERAL TO ENSURE THAT WE ARE ENGAGED IN

22   DIVERSITY INCLUSION EFFORTS, PROMOTING OPPORTUNITIES.

23   WE ARE COMMITTED TO PROVIDING MEANINGFUL LEADERSHIP

24   OPPORTUNITIES FOR JUNIOR LAWYERS WHO HAVE -- AND OTHER TEAM

25   MEMBERS FROM HISTORICALLY UNDERREPRESENTED GROUPS, AND WE WILL

1        DO SO HERE.

2            I WOULD LOVE TO SEE MR. MENDEL, AND I EXPECT TO SEE

3        MR. MENDEL, MAKE ARGUMENTS BEFORE THIS COURT, AND I THINK HE

4        WILL DO SO QUITE WELL.

5            ON THE COST EFFICIENCY ANGLE THAT RELATES TO THIS, I DO

6        AGREE THAT PROMOTING MULTIPLE -- THAT PROMOTING THE

7        OPPORTUNITIES FOR THESE ATTORNEYS WILL BE -- IN THIS

8        CIRCUMSTANCE MAY RESULT IN A COST EFFICIENCY TO THE COURT, OR

9        DOESN'T CERTAINLY OVERBURDEN THE COST TO THE COURT.

10           THE ISSUE ABOUT COST EFFICIENCY, HOWEVER, IS ALSO ONE

11       ABOUT THE LODESTAR CROSS-CHECK, AND WE'VE POINTED THIS OUT IN

12       OUR PAPERS.

13           IN THIS CASE, AS IN MOST ANTITRUST CASES, WE EXPECT THAT

14       THERE WILL BE A COMMON FUND SETTLEMENT AND WE EXPECT THAT THE

15       FEE WILL BE REQUESTED ON THE BASIS OF A PERCENTAGE OF THE

16       COMMON FUND.

17           BUT AS THE NINTH CIRCUIT HAS POINTED OUT IN VIZCAINO, THE

18       LODESTAR CROSS-CHECK IS THERE, AND THAT IS -- AND DISTRICT

19       COURTS GENERALLY APPLY THE LODESTAR CROSS-CHECK TO DETERMINE

20       THE REASONABLENESS OF THAT PERCENTAGE OF THE FEE AWARD.

21           IF YOU HAVE EXCESSIVE WORK BEING DONE BY THREE CO -LEAD

22       FIRMS, AS I SAID, TO MAKE EVERY SINGLE STRATEGIC LITIGATION

23       DECISION, THEN YOU HAVE THE ABILITY TO ARTIFICIALLY INFLATE THE

24       LODESTAR, WHICH DOESN'T IN AND OF ITSELF CAUSE A PROBLEM FOR

25       THE CLASS, BUT DOES CREATE AN INAPPROPRIATE LODESTAR

 1    CROSS-CHECK, AN INFLATED LODESTAR CROSS-CHECK.

 2         WE THINK THAT THAT'S A CONCERN.

 3              THE COURT:  THAT'S SOMETHING THAT THE JUDGE CAN

 4    REGULATE, AND IN A CASE LIKE THAT -- AND THESE CASES COME UP,

 5    AS YOU KNOW PROBABLY BETTER THAN THE JUDGES HERE BECAUSE YOU'RE

 6    INVOLVED IN SO MANY OF THEM -- BUT ISN'T THE REMEDY THERE FOR

 7    THE JUDGE, WHEN SHE HAS A CASE LIKE THAT IN FRONT OF HER, TO

 8    CALL, TO CALL ON COUNSEL AND REMIND THEM OF THE CONVERSATION

 9    THEY HAD WHEN LEAD COUNSEL WERE APPOINTED AND THERE WERE

10    PROMISES TO GAIN EFFICIENCIES AND PROMISES TO DO THIS?  ISN'T

11    THAT THE TIME FOR THE JUDGE TO TELL THE LITIGANTS, WELL, LOOK,

12    WE HAD THIS CONVERSATION, AND ISN'T THAT THE TIME FOR HER TO

13    CARVE BACK A LITTLE BIT, REMINDING THEM?

14              MR. SHEANIN:  YOUR HONOR, THE COURT HAS TWO

15    OPPORTUNITIES TO DO THAT.  ONE IS CERTAINLY AT THAT POINT, AT

16    THE END, RIGHT, WHERE YOU HAVE THE OPPORTUNITY TO REMIND

17    COUNSEL, YOU SHOULD HAVE PARED BACK, WHY ARE YOU SPENDING TOO

18    MUCH TIME DOING THIS?

19         THE OTHER OPPORTUNITY IS NOW, AT THE VERY BEGINNING, TO

20    SET UP A STREAMLINED STRUCTURE THAT WILL ENSURE YOU DON'T HAVE

21    THOSE PROBLEMS IN THE FIRST PLACE, THAT YOU ARE NOT OVER

22    STAFFING OR MAKING A TOP HEAVY STRUCTURE IN THE FIRST PLACE.

23         AND THE COURT HAS BOTH TOOLS AT ITS DISCRETION AND SHOULD

24    USE BOTH AT THE APPROPRIATE MOMENT, AND NOW IS ONE OF THEM.

25              MS. SRINIVASAN POINTED OUT THE ISSUE OF MULTIPLE FIRMS AND

1    SUGGESTED THAT ROBINS KAPLAN WILL REQUIRE MULTIPLE FIRMS TO

2    WORK ON THIS CASE.

3        I EXPECT THAT WE WILL WORK WITH THE OTHER FIRMS THAT ARE

4    INVOLVED THAT ARE BEFORE YOUR HONOR BECAUSE THEY ALL HAVE

5    PLAINTIFFS WHO HAVE LITIGATED, WHO HAVE SOUGHT TO BRING CASES.

6    WE EXPECT THAT THEY ALL HAVE VALUE TO ADD TO THE CASE.

7        BUT ADDING VALUE IS NOT NECESSARILY THE SAME THING AS

8    LEADING THE CASE, AND LEADING THE CASE IS A VERY DIFFERENT

9    ISSUE.  AND AS I POINTED OUT, THAT'S THE ISSUE THAT YOU DON'T

10   WANT TO CONFUSE WITH HAVING TOO MANY PEOPLE INVOLVED

11   UNNECESSARILY.

12       AND MS. SRINIVASAN'S GROUP ALSO INVOLVES THE ZWERLING

13   SCHACHTER FIRM, WHO HAS BEEN INVOLVED IN OBTAINING CLIENTS, I

14   BELIEVE, BASED UPON JUST THE PLEADINGS THAT THEY REPRESENTED,

15   TO BRING FORTH IN FRONT OF THE COURT.  IT'S NOT SIMPLY THESE

16   THREE FIRMS, IT'S AT THE MOMENT FOUR, PERHAPS MORE.

17       MS. SRINIVASAN BROUGHT UP THE QUESTION OF -- BROUGHT UP

18   THE DOORS CASE WHERE THERE WERE THREE CO-LEAD COUNSEL.  THAT'S

19   CORRECT.  IT'S ONE OF THE FEW THAT THEY'VE CITED THAT ARGUABLY

20   IS ON POINT.

21       BUT I WOULD SAY IT'S REALLY DISTINGUISHABLE.  THAT WAS

22   ENTIRELY PRIVATELY ORDERED, AS OPPOSED TO HERE WHERE IT'S A

23   CONTESTED MOTION, AND IT WAS BEFORE THE EASTERN DISTRICT OF

24   VIRGINIA WITH ITS ROCKET DOCKET.

25       I THINK FROM THE POINT OF FILING, OR FROM THE POINT OF

1    ORGANIZATION, THERE WAS A SCHEDULE THAT PROPOSED A TRIAL WITHIN

2    A YEAR.

3          THAT GOT -- THAT TIMEFRAME GOT SLID OUT A LITTLE BIT

4    BECAUSE OF THE GLOBAL PANDEMIC, BUT THE NEED TO MOVE ON THAT

5    SPEED REQUIRED MORE RESOURCES TO BE DEPLOYED, AND SO IT WAS

6    APPROPRIATE TO APPOINT THREE CO-LEAD FIRMS AT THAT POINT.

7          I'D ALSO NOTE THAT IN THIS JURISDICTION, THE COTCHETT FIRM

8    HAS APPEARED AS A SOLE LEAD COUNSEL IN CAPACITORS AND SO HAS

9    THE ABILITY TO HANDLE THIS, HAS DEMONSTRATED THE ABILITY TO

10   HANDLE CASES OF THIS MAGNITUDE ON ITS OWN RATHER THAN

11   NECESSARILY AS THREE.

12         WE HAVE POINTED OUT THAT WE WOULD BE PREPARED TO LEAD THIS

13   CASE AS SOLE LEAD COUNSEL.  WE HAVE POINTED OUT THAT WE WOULD

14   BE PREPARED TO LEAD THIS CASE AS CO-LEAD COUNSEL WITH ONE OF

15   THE OTHER FIRMS.  WE'RE HAPPY TO DO SO.  WE THINK EITHER WOULD

16   BENEFIT THE CLASS.

17         THE COURT:  THANK YOU VERY MUCH, MR. SHEANIN.

18         LET ME CALL UPON ANYONE ELSE WHO WISHES TO BE HEARD AS TO

19   THIS MOTION.

20         MR. FROST, DO YOU WISH TO BE HEARD, SIR?

21         MR. FROST:  THANK YOU, YOUR HONOR.

22         FIRST, I'M GOING TO NOTE FOR THE RECORD THAT I WAS

23   SUCCESSFUL IN UNMUTING THE LINE.

24         (LAUGHTER.)

25         THE COURT:  WELL, WE'LL REFLECT THAT IN THE

1    TRANSCRIPT AS WELL, MR. FROST.  THANK YOU.

2         MR. FROST:  WE REALLY HAVE NO DOG IN THIS FIGHT.  WE

3    AGREE THAT THE MORE FIRMS ARE INVOLVED, THE MORE INEFFICIENCIES

4    YOU'RE PRONE TO CREATE.

5         BUT THE ONLY COMMENT I WAS GOING TO MAKE IS A MECHANICAL

6    ONE, WHICH IS, I BELIEVE, THAT THERE IS AT LEAST ONE OTHER

7    PUTATIVE CONSUMER CLASS ACTION THAT A MOTION TO RELATE HAS NOT

8    YET BEEN RULED UPON, AND AT LEAST TWO OR THREE THAT HAVE NOT

9    YET BEEN CONSOLIDATED.

10        SO AS A MINISTERIAL MATTER, I DON'T KNOW WHEN YOU'RE GOING

11   TO TAKE THOSE UP, BUT THAT MAY AFFECT, YOU KNOW, THE TIMING ON

12   RULINGS AND THE LIKE.  I JUST WANTED TO BRING THAT TO YOUR

13   ATTENTION.

14            THE COURT:  THANK YOU.

15            MR. FROST:  HOWEVER YOU HANDLE THIS IS ENTIRELY UP TO

16   YOUR DISCRETION AND WE DON'T HAVE ANY REAL COMMENT ON IT.

17            THE COURT:  ALL RIGHT.  THANK YOU.

18        WELL, OTHER THAN -- MR. FROST, DO YOU BELIEVE THAT YOU CAN

19   GET ALONG, SHALL WE SAY, WITH EITHER TEAM LEADERSHIP WITH ANY

20   OF THESE COUNSEL, AND IT DOESN'T MATTER WHAT LEADERSHIP FORUM

21   PRESENTS ITSELF, OR FORMAT, YOU'LL BE ABLE TO COOPERATE WITH

22   ALL COUNSEL THAT APPEAR HERE TODAY?

23            MR. FROST:  YES, 100 PERCENT CORRECT.

24            THE COURT:  OKAY.  THANK YOU VERY MUCH.

25        DOES ANYONE ELSE WISH TO BE HEARD?

1          MR. ZAPALA:  YOUR HONOR, ADAM ZAPALA FROM

2     COTCHETT PITRE & MCCARTHY.

3          THE COURT:  YES.

4          MR. ZAPALA:  JUST BRIEFLY, ON THE POINT THAT

5     MR. FROST RAISED, JUST ADMINISTRATIVELY, THE CONSOLIDATION

6     ORDER THAT YOU DID SIGN I THINK AUTOMATICALLY CONSOLIDATES

7     ADDITIONAL RELATED MATTERS WITHIN A CERTAIN PERIOD OF TIME

8     UNLESS THAT PARTY OBJECTS.

9          SO I THINK, BY OPERATION OF YOUR PREVIOUS ORDER, THOSE

10     WILL ULTIMATELY BE CONSOLIDATED INTO THE INDIRECT PURCHASER

11     ACTIONS.

12          SO THAT WAS POINT NUMBER ONE.

13          AND JUST GOING BACK TO SOME OF THE ARGUMENTS ON

14     LEADERSHIP, I'LL BE VERY BRIEF.  I AGREE WITH WHAT EVERYBODY

15     SAID IN TERMS OF THESE ARE ALL COLLEAGUES, I'VE WORKED WITH

16     EVERYBODY, THEY'RE FRIENDS AND COLLEAGUES AND PEOPLE THAT WE'VE

17     WORKED TOGETHER WITH.

18          BUT ON THE ISSUE OF EFFICIENCY, I REALLY THINK IT'S A BIT

19     OF A RED HERRING BECAUSE, AS WE POINTED OUT IN OUR PAPERS, THE

20     PERCENTAGE OF THE FUND ISSUE REALLY DOES DISCIPLINE THE

21     PARTIES.

22          I'D BE SHOCKED, FRANKLY -- AS YOU KNOW, IN THE NINTH

23     CIRCUIT, THE PERCENTAGE, THE BENCHMARK IS 25 PERCENT.  I THINK

24     IF ROBINS KAPLAN WERE APPOINTED, IT'S LIKELY THAT'S WHAT

25     THEY'RE GOING TO APPLY FOR.

1          AND SO, YOU KNOW, THERE ARE A BUNCH OF CASES THAT REALLY

2     SAY, TO THE EXTENT ATTORNEYS ARE DALLYING OR RUNNING UP THE

3     CLOCK, THAT'S REALLY CUTTING OFF THEIR OWN NOSE TO SPITE THEIR

4     FACE, RIGHT.  IT'S JUST REDUCING THEIR HOURLY RATE BECAUSE

5     ULTIMATELY WE'RE GOING TO BE COMPENSATED ON THE RESULTS THAT WE

6     GET FOR THE CLASS, AND SO I DO THINK THAT THAT HAS A

7     DISCIPLINING FACTOR ON THE FIRMS.

8          BUT YOUR HONOR IS CORRECT TO BE CONCERNED ABOUT IT.  IT IS

9     AN ISSUE.  WE THINK WE'VE ADDRESSED IT THROUGH OUR PROTOCOLS.

10    WE'RE HAPPY TO DO WHATEVER ELSE THE COURT WOULD LIKE TO BE

11    SATISFIED IN THAT REGARD.

12         BUT WE THANK YOU FOR YOUR TIME TODAY.

13             THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH,

14    MR. ZAPALA.

15         ANYONE ELSE WISH TO BE HEARD AS TO THIS MOTION, THESE

16    MOTIONS?

17         MR. BORDEN, MR. FISHER?  ANYTHING YOU'D LIKE TO ADD TO THE

18    CONVERSATION?

19         MR. BORDEN DOES NOT BECAUSE HE'S MUTED.

20             MR. BORDEN:  THANK YOU, YOUR HONOR.  WE HAVE NOTHING

21    TO ADD.

22         AND YOU CAN ATTACH THE TRANSCRIPT AS WELL FOR ME.

23         (LAUGHTER.)

24             THE COURT:  ALL RIGHT, FAIR ENOUGH.  THANK YOU.

25         WELL, THANK YOU VERY MUCH, AND THANKS FOR THIS

1    CONVERSATION THIS MORNING.  WE'VE GONE NOT QUITE AN HOUR ON

2    THIS TOPIC, AND IT'S AN IMPORTANT TOPIC FOR MANY REASONS.  IT'S

3    IMPORTANT OBVIOUSLY FOR ME.  AS YOU KNOW, WE ADVANCED THIS

4    MOTION, AND I ADVANCED IT SUCH THAT WE COULD CAPTURE SOME

5    TIMING EFFICIENCIES, BECAUSE ONCE THIS DECISION IS MADE, THAT

6    WILL THEN ALLOW YOU TO GO FORWARD WITH SOME OTHER MOTIONS AND

7    GET MOTION PRACTICE STARTED AND GET OUR SCHEDULE STARTED.

8        SO THAT WAS -- THAT'S AN IMPORTANT PIECE TO GET THIS

9    GOING.

10        BUT I ADVANCED IT ALSO SO THAT I COULD HAVE THIS

11    CONVERSATION AND SPEND THE TIME WITH YOU TO UNDERSTAND YOUR

12    THEORIES AS INTERIM LEAD COUNSEL AND WHAT THAT WOULD ACQUIRE

13    FOR THE CLIENTS, WHAT THAT WOULD DO FOR THE EFFICIENT

14    PROCESSING AND HEARING OF THIS CASE, THIS IMPORTANT CASE, AND

15    YOU HAVE HELPED ME GREATLY WITH THIS CONVERSATION.

16        IT'S IMPORTANT FOR ME TO LOOK AT YOUR PLEADINGS, AND ALSO

17    TO HAVE THIS CONVERSATION IN A PUBLIC FORMAT SO THAT IT'S

18    TRANSPARENT SO THAT THE PUBLIC KNOWS HOW IMPORTANT THESE

19    DECISIONS ARE, SO THE PUBLIC KNOWS THE THINGS THAT JUDGES

20    CONSIDER WHEN THEY MAKE THESE DECISIONS ABOUT WHO LEADS THESE

21    LITIGATIONS AND THOSE FACTORS THAT JUDGES LOOK AT.

22        WE TALKED ABOUT -- YOU ALL VERY ELOQUENTLY TOLD ME ABOUT

23    YOUR PERSONAL THOUGHTS ABOUT THESE, AS WELL AS YOUR FIRMS'

24    COMMITMENTS TO THESE, AND THAT IS -- IT'S REFRESHING FOR ME TO

25    HEAR THAT ALL OF YOUR FIRMS PRACTICE WITH THAT HIGH DEGREE OF

1      ETHICS AND CONFIDENCE AND ATTENTION TO THESE IMPORTANT ISSUES.

2          SO THANK YOU FOR THAT.

3          I DO -- WHEN I LOOKED AT THE PLEADINGS, I HAVE TO CONFESS,

4      I HAD CONCERNS.  MR. SHEANIN MADE SOME EXCELLENT POINTS ABOUT

5      DO WE NEED THREE IN THIS TYPE, IN THIS CASE?  THE SIZE OF THIS

6      CASE PERHAPS SUGGESTS THAT WE DON'T, WE DON'T NEED THREE FIRMS

7      BECAUSE THE NUMBER OF PARTIES IN IT, THE SIZE OF THE CASE COULD

8      BE EFFICIENTLY HANDLED BY TWO, AND AS MR. SHEANIN SUGGESTS, HIS

9      FIRM IS MORE THAN QUALIFIED WITH THEIR BACKGROUND AND EXPERTISE

10     TO HANDLE THIS, EVERYTHING THAT NEEDS TO BE DONE, AND HE WOULD

11     DO SO WITH AN EXTENDED HAND IN FRIENDSHIP TO HIS COLLEAGUES WHO

12     APPEAR ON THE PLAINTIFFS' BAR WITH HIM.

13         I'LL JUST SAY, THE CPM GROUP SUGGESTS THAT THEY WOULD DO

14     THE SAME.  THEY'RE GREATER IN NUMBER, AND PERHAPS THEY SUGGEST

15     THAT THERE'S EFFICIENCIES TO BE CAPTURED WITH THOSE NUMBERS,

16     THAT IS, THEY COULD SPREAD THE WEALTH, I SUPPOSE, OF WORK,

17     SPREAD THE WEALTH OF APPEARANCE AND PARTIES, AND TOUCH ON THE

18     TOPICS THAT I MENTIONED THAT ARE EQUALLY IMPORTANT TO ALL THOSE

19     OTHERS, THAT IS, EXPOSURE TO NEWER PRACTITIONERS TO THESE TYPES

20     OF CASES SUCH THAT THE PIPELINE CAN BE FULFILLED AND THAT THOSE

21     WHO COME AFTER US ON THE BENCH CAN BE ASSURED THAT THERE IS A

22     FULL LINEUP OF EXPERIENCED COUNSEL WHO HANDLE THESE CASES.

23     THAT'S IMPORTANT ALSO, AND IT'S SOMETHING THAT WE HAVE TO

24     CONSIDER.

25         WHAT I LOOK AT ALSO, AS THE COURT SITS IN THESE CASES, YOU

1    KNOW, AS YOU KNOW AS FIDUCIARIES FOR PLAINTIFFS, DON'T WE, AND

2    WE HAVE TO BE CONCERNED ABOUT INTERESTS THAT THEY HAVE, AND

3    THAT INTEREST IS PRIMARILY A FINANCIAL ONE, WHAT'S GOING TO BE

4    COST EFFICIENT FOR THEM?  WHAT IS GOING TO BENEFIT THE

5    PLAINTIFFS?

6         YOU'RE HERE BECAUSE YOU -- PLAINTIFFS' BAR IS HERE BECAUSE

7    YOU SEEK TO REDRESS SOME WRONGS THAT YOU BELIEVE EXIST IN THE

8    FACTS OF THIS CASE AND REDRESS THE WRONGS FOR YOUR CLIENTS, NOT

9    FOR YOURSELVES, BUT YOU'RE PUTTING YOUR CLIENTS' INTERESTS

10   FIRST.  THAT'S THE IMPORTANT THING, AND WE RECOGNIZE THAT.

11        AS I LOOK AT THESE PLEADINGS, I AM -- I LOOK AT THE

12   EFFICIENCIES OF HAVING ONE FIRM, AND THAT IS VERY ATTRACTIVE TO

13   ME.  I THINK MR. SHEANIN SUGGESTS IN-HOUSE EXPERTS HAVE ALREADY

14   GUIDED THEM.  THEY'VE ALREADY EXPENDED SOME TIME IN THIS.

15   THEY'VE ALREADY BEEN GUIDED BY CERTAIN DECISIONS, CERTAIN

16   THOUGHTS AND PROCESSES ABOUT HOW THIS LITIGATION SHOULD GO, AND

17   THAT IS VERY, VERY HELPFUL.

18        BUT I APPRECIATE THE FACT THAT EVERYONE RECOGNIZES THAT

19   THAT'S NOT GOING TO BE ENOUGH, THERE WILL BE OUTSIDE EXPERTS

20   THAT WILL HAVE TO BE RETAINED, AND THAT'S A COST THAT WE KNOW

21   IS APPROPRIATE AND OFTENTIMES NECESSARY IN THESE TYPES OF

22   CASES.

23        LET ME JUST SAY THAT THE THREE LEADERSHIP GROUP, WHILE

24   SEEMING A BIT TOP HEAVY I THINK IS WHAT MR. SHEANIN SAID -- AND

25   I TEND TO AGREE WITH THAT AT A FIRST GLANCE -- AFTER READING

1    THE PAPERS AND AFTER HEARING MS. SRINIVASAN'S COMMENTS ABOUT

2    THIS, I DO HAVE SOME CONFIDENCE THAT IF SHE AND HER TEAM WERE

3    APPOINTED, THAT THEY WOULD BE ABLE TO CAPTURE THE EFFICIENCIES

4    MENTIONED WITH THE PROTOCOLS THAT I MENTIONED IF THEY'RE

5    FOLLOWED ON PAGE, HER PAGE 2, ECF PAGE 11.

6         AND SO I DO THINK THAT IT IS APPROPRIATE FOR ME TO APPOINT

7    THE CPM GROUP, I'LL CALL THEM, SUSMAN GODFREY, AND LCHB AS

8    INTERIM LEAD COUNSEL IN THIS MATTER.  I DO THAT RECOGNIZING THE

9    FACTORS, THE 23(G) FACTORS THAT WE ALL KNOW ABOUT, BUT ALSO

10   RECOGNIZING THAT THE TEAM THAT THEY HAVE PUT TOGETHER AND THAT

11   THEY HAVE ASSURED ME WILL PROCEED WITH EFFICIENCIES IN MIND,

12   PROMISES THAT THEY'RE GOING TO BE COST EFFICIENT, WHILE AT THE

13   SAME TIME EXPOSING AND ALLOWING FOR NEWER PRACTITIONERS AND

14   OTHERS WHO HAVE NOT PERHAPS HAD AN OPPORTUNITY TO WORK ON THESE

15   CASES, THE OPPORTUNITY TO WORK ON A CASE.

16        AND THIS IS PERHAPS ONE OF THE BEST CASES TO INTRODUCE

17   THOSE PRACTITIONERS.  IT'S A COMPLEX CASE, NOT AS COMPLEX AS

18   PERHAPS SOME THAT MR. SHEANIN ARGUED AND TRIED, AND I

19   APPRECIATE HIS COMMENT ON THAT.  BUT IT IS THE KIND OF CASE

20   THAT -- IT'S NOT AN ENTRY LEVEL CASE.  DON'T LET ME -- PLEASE

21   DON'T GET ME WRONG.  I'M NOT SUGGESTING THAT.

22        BUT I DO BELIEVE IT'S THE KIND OF CASE WHERE INDIVIDUALS

23   WHO ARE GOING TO BE INTRODUCED AND CONTINUE THEIR PRACTICE IN

24   ANTITRUST, THIS WOULD BE A WORTHWHILE CASE TO BE INVOLVED IN AT

25   A LEADERSHIP LEVEL, AND THAT IS INTRIGUING TO ME.  IT'S

1   APPEALING TO ME.

2       AND SO I WILL AT THIS TIME GRANT CPM'S MOTION TO APPOINT

3   CPM, SUSMAN GODFREY, AND LCHB AS INTERIM, INTERIM COUNSEL AT

4   THIS TIME.

5       MR. SHEANIN, THANK YOU SO MUCH, AND I APPRECIATE YOUR

6   COMMENTS THAT YOU WILL WORK COOPERATIVELY.  THESE ARE YOUR

7   FRIENDS.  I KNOW THAT.  YOU SEE THEM.

8       AT SOME POINT IN TIME, THE OTHER QUESTION THAT I WOULD

9   LIKE TO BE ASKED, WHEN WE -- YOU KNOW, I MISS OUR SOCIAL EVENTS

10  AT OUR BAR ASSOCIATION.  LET'S -- WHOOPS.  WE'LL HAVE TO

11  INCLUDE THAT IN THE TRANSCRIPT, THAT I WENT -- THAT I PUSHED

12  THE WRONG BUTTON, WON'T WE?

13      (LAUGHTER.)

14          THE COURT:  I MISS OUR SOCIAL EVENTS WITH THE BAR

15  WHERE WE CAN SEE YOU ALL AT A DINNER OR OTHER GATHERINGS WHERE

16  WE CAN JUST TALK SHOP AND THINGS, AND ONE OF THE QUESTIONS I

17  PROBABLY WOULD ASK SOMEONE IS, YOU KNOW, SO WHAT HAPPENS AFTER

18  WE APPOINT LEAD COUNSEL AND YOU DON'T WIN?  OR YOU DO WIN, I'LL

19  PUT IT THAT WAY.  WHAT DO YOU GUYS DO ON THE ELEVATOR RIDE

20  DOWN?  WHAT DO YOU SAY?  WHAT'S THAT CONVERSATION LIKE?

21      I'M NOT GOING TO GET THAT ANSWER TODAY, AND IT'S NOT

22  PUTTING THE QUESTION BEFORE YOU TODAY.  I'LL SAVE THAT FOR THE

23  SOCIAL EVENT THAT WE ALL LOOK FORWARD TO ENGAGING IN IN THE

24  HOPEFULLY NEAR FUTURE.

25      SO I'LL GET AN ORDER OUT ON THAT.

1        MS. SRINIVASAN, WHAT IS NEXT THEN?  I BELIEVE WE ADVANCED

2    THIS TO ALLOW YOU THEN -- I'M ANSWERING THE QUESTION, I BEG

3    YOUR PARDON -- BUT I THINK WE DID THIS TO ALLOW YOU TO ADVANCE

4    A CONSOLIDATED COMPLAINT.  IS THAT RIGHT?

5             MS. SRINIVASAN:  YES, YOUR HONOR.  WE HAVE 30 DAYS

6    FROM TODAY TO GET A CONSOLIDATED AMENDED COMPLAINT ON FILE.

7        WE ALSO HAVE A FEW OTHER THINGS IN THE HOPPER THAT WE, YOU

8    KNOW, WOULD LIKE THE DIRECT PURCHASERS' INPUT ON TO GET MOVING

9    AHEAD, LIKE OUR MOTION FOR ALTERNATIVE FORMS OF SERVICE FOR THE

10   DEFENDANTS, A PROTECTIVE ORDER, AND A FEW OTHER THINGS THAT I

11   THINK WILL BE ACCELERATED NOW THAT WE HAVE THE STRUCTURE IN

12   PLACE.

13             THE COURT:  OKAY.  WHAT SHOULD I DO ABOUT

14   CALENDARING?  SHOULD I SET ANOTHER STATUS CONFERENCE, A CMC, AT

15   SOME PARTICULAR TIME?  SHOULD I WAIT FOR YOUR PLEADINGS AND DO

16   IT SUBSEQUENT TO THAT?

17       MR. ZAPALA, I THINK YOU'RE INVOLVED IN THAT.  LET ME ASK

18   YOU, SIR, WHAT'S YOUR THOUGHT?

19             MR. ZAPALA:  THANK YOU, YOUR HONOR.

20       I THINK WE DO INTEND, AS MS. SRINIVASAN SAID, TO FILE A

21   MOTION FOR ALTERNATIVE SERVICE.

22       I WOULD SUGGEST THAT THE PARTIES MEET AND CONFER, WE'LL

23   MEET AND CONFER WITH THE DPP'S, ALONG WITH MR. FROST, AND TO

24   THE EXTENT THOSE PARTIES BELIEVE THAT A CASE MANAGEMENT

25   CONFERENCE IS APPROPRIATE, WE'RE HAPPY TO DO THAT.

```
 1           BUT IN TERMS OF THE CALENDAR, YEAH, WE HAVE THE

 2    CONSOLIDATED AMENDED COMPLAINT DUE IN 30 DAYS.  I THINK WE'LL

 3    BE BUSY WORKING AWAY ON THAT, MAKING SURE THAT IT IS THE BEST

 4    CONSOLIDATED COMPLAINT THAT WE CAN HAVE AND HAS THE MOST

 5    COVERAGE, AND GET MOVING ON SORT OF THE CASE MANAGEMENT

 6    PROTOCOLS, PROTECTIVE ORDER, ESI PROTOCOLS, THAT KIND OF THING.

 7           SO I WOULD SUGGEST THAT THE PARTIES MEET AND CONFER AND

 8    THEN WE CAN INFORM THE COURT WHETHER WE THINK A CASE MANAGEMENT

 9    CONFERENCE IN THE NEXT COUPLE MONTHS WOULD BE APPROPRIATE.

10           THE COURT:  THANK YOU.

11       MS. LERNER, IS THAT ALL RIGHT WITH YOU?

12           MS. LERNER:  CERTAINLY, YOUR HONOR, THAT'S ALL RIGHT

13     WITH ME.

14           THE COURT:  ALL RIGHT.  THANK YOU.

15       I WANTED TO SEE IF YOU WOULD FIND THE MUTE BUTTON QUICKER

16     THAN THE REST OF US.  SO THANK YOU, MS. LERNER.

17           MS. LERNER:  I FEEL LIKE I COULD DO BETTER IF CALLED

18     UPON AGAIN.

19        (LAUGHTER.)

20           MR. BORDEN:  IT MAY BE A FUNCTION OF AGE.

21           THE COURT:  OH, MR. BORDEN, YOU HAD TO GO THERE RIGHT

22     AT THE END.  I THOUGHT WE'D GET THROUGH THIS HEARING WITHOUT

23     PREFERENCE TO THAT.

24        (LAUGHTER.)

25           THE COURT:  YOU MEANT YOUTH.  THAT'S WHAT YOU MEANT,
```

1    MR. BORDEN.

2            MR. SHEANIN, ANYTHING FURTHER, SIR?  ANYTHING FROM YOU?

3            MR. SHEANIN:  YOUR HONOR, I HAVE NOTHING FURTHER.

4    I JUST WANT TO THANK YOU VERY MUCH FOR THE OPPORTUNITY TO

5    ARGUE BEFORE YOU.  YOU ARE CORRECT THAT I AM FRIENDS AND

6    COLLEAGUES WITH EVERYONE.  I HOPE TO MOVE FORWARD AND HAVE

7    FURTHER CONVERSATIONS WITH ALL OF THEM IN LITIGATING THIS CASE.

8            AND I DO DEFINITELY LOOK FORWARD TO THE CONVERSATION WITH

9    YOU AT SOME POINT IN ONE OF OUR NEXT SOCIAL GATHERINGS.

10           AS I MENTIONED TO MY COLLEAGUE, MS. LERNER, THIS MORNING,

11   I'D MUCH PREFER TO DO THIS IN PERSON THAN ON ZOOM, AND

12   HOPEFULLY WE'LL BE ABLE TO DO THAT ONE DAY SOON.

13           THE COURT:  THANK YOU VERY MUCH.  I LOOK FORWARD TO

14   THAT OPPORTUNITY AS WELL, MR. SHEANIN.  THANK YOU.

15           MR. SHEANIN:  THANK YOU.

16           THE COURT:  ALL RIGHT.  IF THERE'S NOTHING FURTHER

17   THEN, WE'LL ADJOURN THIS HEARING.  THANK YOU ALL VERY MUCH.

18           MR. BORDEN:  YOUR HONOR --

19           THE COURT:  YES, MR. BORDEN?

20           MR. BORDEN:  -- I DON'T KNOW IF WE'RE DOING IT IN

21   THIS PROCEEDING, BUT WE HAVE AN UNOPPOSED MOTION FOR BEING

22   APPOINTED INTERIM LEAD COUNSEL IN THE DIRECT PURCHASER CASE,

23   AND I DON'T KNOW IF YOU'RE GOING TO ADDRESS IT HERE OR IF YOU

24   WANT TO CALL IT SEPARATELY OR HOW YOU INTEND TO DO THAT.

25           THE COURT:  WELL, IT SOUNDS LIKE IT SHOULD REQUIRE

```
1       ADDITIONAL BRIEFING AND SERIOUS CONSIDERATION TAKEN UNDER

2       SUBMISSION, AND MAYBE I COULD GET BACK TO YOU IN NOVEMBER ON

3       THAT, MR. BORDEN.  I DON'T KNOW.

4           (LAUGHTER.)

5               THE COURT:  IS THERE ANYTHING ELSE YOU WANT TO SAY ON

6       THAT, MR. BORDEN?  IT'S AN UNOPPOSED MOTION.  I THINK I CAN --

7       I THINK I CAN HANDLE THAT.

8           BUT IF YOU HAVE DOUBTS ABOUT IT, I'M HAPPY TO HEAR THEM.

9           (LAUGHTER.)

10              MR. BORDEN:  I DON'T -- WE'RE FINE SUBMITTING ON THE

11      PAPERS, YOUR HONOR.  THANK YOU.

12              THE COURT:  OKAY.  FAIR ENOUGH.

13          GREAT.  THANK YOU.  EVERYONE BE SAFE, YOU AND YOUR

14      FAMILIES.  BEST WISHES, AND WE'LL SEE YOU AGAIN SOON.  THANK

15      YOU.

16          THANK YOU, MR. FROST.

17              MR. FROST:  THANK YOU, YOUR HONOR.

18              MR. BORDEN:  THANK YOU, YOUR HONOR.

19              MS. SRINIVASAN:  THANK YOU, YOUR HONOR.

20              MR. SHEANIN:  THANK YOU, YOUR HONOR.

21              THE CLERK:  COURT IS ADJOURNED.

22          (THE PROCEEDINGS WERE CONCLUDED AT 10:06 A.M.)

23

24

25
```

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7         I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____

     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18            DATED:  SEPTEMBER 30, 2020

19

20

21

22

23

24

25