1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5    DANIEL HIGHTOWER, ET AL.,        )  C-20-03639 EJD
                                      )
6                 PLAINTIFFS,         )  SAN JOSE, CALIFORNIA
                                      )
7            VS.                      )  MARCH 2, 2021
                                      )
8    CELESTRON ACQUISITION, LLC, ET   )  PAGES 1-68
     AL.,                             )
9                                     )
                  DEFENDANTS.         )
10   _____ )
                                      )
11   SPECTRUM SCIENTIFICS LLC, ET     )  C-20-03642 EJD
     AL.,                             )
12                PLAINTIFFS,         )
                                      )
13           VS.                      )
                                      )
14   CELESTRON ACQUISITION, LLC, ET   )
     AL.,                             )
15                                    )
                  DEFENDANTS.         )
16   _____ )

17

18              TRANSCRIPT OF ZOOM PROCEEDINGS
            BEFORE THE HONORABLE VIRGINIA K. DEMARCHI
19               UNITED STATES MAGISTRATE JUDGE

20

21               APPEARANCES ON NEXT PAGE

22

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2       A P P E A R A N C E S:

 3       FOR IPP PLAINTIFFS:      COTCHETT, PITRE & MCCARTHY, LLP
                                  BY:  ADAM J. ZAPALA
 4                                840 MALCOLM ROAD
                                  BURLINGAME, CALIFORNIA  94010
 5

 6                                LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
                                  BY:  LIN Y. CHAN
 7                                275 BATTERY STREET, 29TH FLOOR
                                  SAN FRANCISCO, CALIFORNIA  94111
 8

 9                                SUSMAN GODFREY LLP
                                  BY:  ALEJANDRA C. SALINAS
10                                1000 LOUISIANA STREET, SUITE 5100
                                  HOUSTON, TEXAS  77002
11

12       FOR DPP PLAINTIFFS:      BRAUNHAGEY & BORDEN LLP
                                  BY:  MATTHEW BORDEN
13                                351 CALIFORNIA STREET, 10TH FLOOR
                                  SAN FRANCISCO, CALIFORNIA  94104
14

15       FOR THE DEFENDANT:       EISNER LLP
                                  BY:  CHRISTOPHER FROST
16                                9601 WILSHIRE BOULEVARD, 7TH FLOOR
                                  BEVERLY HILLS, CALIFORNIA  90210
17

18       FOR NON-PARTY            CLARK HILL LLP
         OPTRONIC:                BY:  TIMOTHY M. FLAHERTY
19                                ONE EMBARCADERO CENTER, SUITE 400
                                  SAN FRANCISCO, CA 94111
20

21

22

23

24

25
```

1    SAN JOSE, CALIFORNIA                        MARCH 2, 2021

2                         P R O C E E D I N G S

3        (ZOOM PROCEEDINGS CONVENED AT 10:00 A.M.)

4            THE COURT:  GOOD MORNING.  IT LOOKS LIKE WE HAVE

5    EVERYONE HERE.

6            MS. CROMWELL, WOULD YOU CALL THE CASE, PLEASE?

7            THE CLERK:  UNITED STATES DISTRICT IS NOW IN SESSION,

8    THE HONORABLE VIRGINIA K. DEMARCHI PRESIDING.

9        CALLING THE MATTER OF SPECTRUM SCIENTIFICS VERSUS

10   CELESTRON ACQUISITION, CASE NUMBER 5:20-CV-3642, AND HIGHTOWER

11   VERSUS CELESTRON ACQUISITION, CASE NUMBER 5:20-CV-3639.

12           THE COURT:  THANK YOU.

13       SO WHAT I'D LIKE TO DO TODAY IS -- BEFORE I ASK FOR YOUR

14   APPEARANCES, I'M GOING TO TELL YOU THE ORGANIZATION OF THE

15   CALENDAR.

16       SO WHAT I'D LIKE TO DO TODAY IS START FIRST WITH THE

17   DISPUTE ABOUT CELESTRON'S SUBPOENA TO ORION, WHICH I THINK,

18   BASED ON THE LETTER THAT I RECEIVED FROM THE PARTIES, COULD

19   ALSO INVOLVE PARTICIPATION OF COUNSEL IN THE 3639 MATTER; AND

20   THEN I'LL ADDRESS THE PROTECTIVE ORDER DISPUTE; AND THEN

21   LASTLY, I'M NOT ENTIRELY SURE WHETHER THERE'S AN ISSUE FOR ME

22   TO ADDRESS ON THE QUESTION OF JURISDICTIONAL DISCOVERY, BUT

23   THAT'S WHAT I PLAN TO DO, AND IT SEEMS TO ME LIKE AFTER THE

24   FIRST MATTER, WE CAN EXCUSE COUNSEL FOR ORION.

25       SO THAT'S HOW I PLAN TO PROCEED.

1          SO LET ME START BY GETTING EVERYONE'S APPEARANCES, AND

2     I'LL START WITH COUNSEL FOR THE PLAINTIFFS IN THE 3642 MATTER.

3               MR. BORDEN:  GOOD MORNING, YOUR HONOR.

4          THIS IS MATT BORDEN ON BEHALF OF SPECTRUM SCIENTISICS AND

5     RADIO CITY.

6               THE COURT:  OKAY.  THANK YOU.  GOOD MORNING.

7          AND THEN LET'S GET COUNSEL FOR THE PLAINTIFFS IN THE 3639

8     MATTER.

9               MS. CHAN:  GOOD MORNING, YOUR HONOR.

10              MR. ZAPALA:  GOOD MORNING, YOUR HONOR.

11              THE COURT:  OH, YOU'RE IN STEREO.  OKAY.  WHO WOULD

12    LIKE TO GO FIRST?

13              MR. ZAPALA:  SORRY.  GOOD MORNING, YOUR HONOR.

14         ADAM ZAPALA FROM COTCHETT, PITRE & MCCARTHY FOR THE

15    INDIRECT PURCHASER PLAINTIFFS, AND I CAN ADDRESS ANY QUESTIONS

16    OR ISSUES REGARDING THE ORION SUBPOENA FROM THE IPP'S

17    PERSPECTIVE.

18              THE COURT:  OKAY.  THANK YOU.

19         AND THEN SOMEONE ELSE.  SOMEONE ELSE ALSO STATED AN

20    APPEARANCE.

21              MS. CHAN:  GOOD MORNING, YOUR HONOR.

22         THIS IS LIN CHAN FROM LIEFF, CABRASER, HEIMANN &

23    BERNSTEIN.  I'M HERE TO ADDRESS ANY QUESTIONS THE COURT MAY

24    HAVE ABOUT THE PROTECTIVE ORDER.

25              THE COURT:  OH, OKAY.  THANK YOU VERY MUCH.  THAT'S

1    HELPFUL.

2         AND LET'S GET APPEARANCE FOR THE DEFENDANTS.

3              MR. FROST:  GOOD MORNING, YOUR HONOR.

4         CHRISTOPHER FROST OF EISNER LLP ON BEHALF OF THE

5    DEFENDANTS IN BOTH THE -39 AND -42 MATTERS.

6              THE COURT:  OKAY.  THANK YOU VERY MUCH.

7         AND FINALLY FOR ORION.

8              MR. FLAHERTY:  GOOD MORNING, YOUR HONOR.

9         TIM FLAHERTY FROM CLARK HILL FOR NON-PARTY ORION.

10             THE COURT:  OKAY.  SO MS. SALINAS, I DIDN'T GET YOUR

11   APPEARANCE.  ON WHOSE BEHALF ARE YOU APPEARING?

12             MR. SALINAS:  YES, YOUR HONOR.  I DIDN'T WANT TO

13   INTERRUPT YOU.

14        I'M ALSO HERE ON BEHALF OF THE IPP'S.

15             THE COURT:  OH, OKAY.  THANK YOU.

16        ALL RIGHT.  SO STARTING FIRST WITH THE MATTER THAT IS

17   ADDRESSED IN THE 3642 CASE, I RECEIVED THE FEBRUARY 16TH LETTER

18   THAT WAS SUBMITTED REGARDING THE PARTIES' EFFORTS TO RESOLVE

19   THE DISPUTE ABOUT CELESTRON'S SUBPOENA TO ORION, AND IT DID

20   SOUND LIKE THOSE EFFORTS INVOLVED DISCUSSIONS WITH, I GUESS

21   I'LL REFER TO THEM AS THE IPP PLAINTIFFS IN THE 3639 ACTION.

22             SO WHAT WOULD BE HELPFUL IS TO GET AN UPDATE FROM YOU ALL,

23   SINCE IT'S BEEN A COUPLE OF WEEKS SINCE THAT LETTER, ON WHERE

24   THINGS STAND.

25             AND FIRST, IF WE COULD TALK ABOUT REQUESTS FOR PRODUCTIONS

1      1 AND 2, THOSE ARE THE ONES THAT ADDRESS THE DISCOVERY

2      MATERIALS FROM THE ORION LITIGATION.  I THINK WHAT WOULD BE

3      MOST USEFUL FOR THE COURT IS TO GET AN UPDATE FROM ORION

4      REGARDING THE, THE EFFORT, THE TECHNICAL EFFORT THAT'S

5      REQUIRED, AS WELL AS THE EXPENSE, IN ORDER TO MAKE THOSE

6      MATERIALS AVAILABLE TO CELESTRON AND OTHERS.

7              SO MR. FLAHERTY.

8              MR. FLAHERTY:  YES, THANK YOU, YOUR HONOR.

9              AS INDICATED IN THE LETTER, AND ALSO THE ESTIMATE THAT WE

10     PROVIDED WITH THE LETTER TO THE COURT, WE HAVE BEEN IN TOUCH

11     WITH UNITED LITIGATION DISCOVERY.

12             THE MANNER IN WHICH THE PRODUCTION WAS MAINTAINED, I'LL

13     DEFER TO BRAUNHAGEY TO GIVE FURTHER EXPLANATION, BUT THERE IS

14     NO REPOSITORY OF A PRODUCTION BY EITHER NINGBO SUNNY OR ORION

15     IN A PRISTINE FORM AS DELIVERED TO THE OTHER SIDE, THAT THEY

16     WERE LOADED INTO THE RELATIVITY PLATFORM AND ARE THEN -- OR

17     ARCHIVED AT THE CONCLUSION OF THE LITIGATION.

18             AND SO TO RECREATE THE DISCOVERY AS PRODUCED OR RECEIVED

19     DOES REQUIRE REPLICATING SOMETHING THAT DOESN'T EXIST RIGHT

20     NOW, AND THAT'S WHAT THE ESTIMATE ATTEMPTED TO ADVISE ORION

21     WHAT ULD EXPECTED ITS COSTS TO BE.

22             ULD HAS NOT UNDERTAKEN ANY FURTHER TASK.  ORION HAS SIGNED

23     THE RETENTION WITH ULD, BUT HAS NOT ASKED THEM TO PROCEED WITH

24     ANY FURTHER WORK PENDING RESOLUTION OF THE $40- TO $50,000

25     EXPENSE.

1        IN THE MEET AND CONFER DISCUSSIONS WITH MR. FROST AND

2    MR. ZAPALA -- BY THE WAY, MR. ZAPALA SERVED THE SUBPOENA AFTER

3    THE LAST HEARING WE HAD, SO THAT REALLY WASN'T EVEN ON MY RADAR

4    UNTIL THE MEET AND CONFER THAT WE HAD ON FEBRUARY 14TH.

5        BUT IT ESSENTIALLY DUPLICATES THE CELESTRON SUBPOENA, SO

6    IT DIDN'T COMPLICATE THINGS IN TERMS OF ADDING ADDITIONAL

7    CATEGORIES.

8        BUT I GOT THE IMPRESSION THAT THE IPP PLAINTIFFS, AND EVEN

9    PERHAPS CELESTRON, WERE WILLING TO CONTRIBUTE TOWARDS THE COST,

10   BUT NOBODY WAS MAKING THAT FIRM COMMITMENT.

11       AND SO THAT'S SORT OF THE UNRESOLVED ISSUE AS TO THE COST,

12   WHETHER THE COURT IS GOING TO ORDER ORION TO JUST TAKE THIS

13   COST AND TRY TO ABSORB IT AND THEN COME LATER FOR

14   REIMBURSEMENT, OR WHETHER WE CAN GET SOME, YOU KNOW, PREFACE

15   AGREEMENT THAT THE PARTIES ARE CONTRIBUTING TOWARDS IT.

16         THE COURT:  OKAY.  SO LET ME FOCUS, BEFORE WE GET TO

17    THE COST ISSUE, AND I DO APPRECIATE THE UPDATE, LET ME JUST

18    FOCUS ON A COUPLE OF QUESTIONS ABOUT THE TECHNICAL BARRIERS TO

19    PRODUCTION.

20       SO I OBSERVED IN THE LETTER THAT CELESTRON THINKS -- WELL,

21   CELESTRON MAKES TWO SUGGESTIONS.  FIRST OF ALL, IT SUGGESTS

22   THAT THERE IS AN AS-PRODUCED COPY, OR MIGHT BE AN AS-PRODUCED

23   COPY OF THESE MATERIALS AVAILABLE, SOMETHING THAT WOULD REFLECT

24   WHAT WAS HANDED OVER ON A DISK OR WHAT WAS, YOU KNOW, A --

25   SOMETHING THAT REFLECTS THE TRANSFER THAT WAS MADE

1    ELECTRONICALLY.

2         HAVE YOU EXPLORED WHETHER -- AND THIS MAY ALSO BE A

3    QUESTION FOR MR. BORDEN.  HAVE YOU EXPLORED WHETHER THAT KIND

4    OF A RECORD EXISTS?

5              MR. FLAHERTY:  ABSOLUTELY, YOUR HONOR, AND I'M

6    INFORMED BY THE BRAUNHAGEY FIRM THAT THAT DOES NOT EXIST.  I'LL

7    DEFER TO MR. BORDEN IF THERE'S ANYTHING FURTHER TO ADD TO THAT.

8              THE COURT:  OKAY.  I WILL MAKE A NOTE OF THAT.

9         AND THEN THE OTHER ITEM THAT CELESTRON INCLUDED IN ITS

10   LETTER WAS THE POSSIBILITY OF A LINK THAT CAN BE PROVIDED TO

11   THE RELATIVITY PLATFORM TO ACCESS AN ARCHIVED PRODUCTION THAT

12   WOULDN'T REQUIRE -- I INTERPRETED IT AS IT WOULDN'T REQUIRE THE

13   SORT OF RECREATION OF THE DATABASE.

14        IS THAT AN ITEM THAT HAS BEEN EXPLORED?

15             MR. FLAHERTY:  NOT OTHER THAN CONCEPTUALLY BECAUSE I

16   DON'T THINK THAT IS A REASONABLE RESOLUTION HERE BECAUSE THE

17   DATABASE INCLUDES PRIVILEGED AND NON-PRIVILEGED MATERIAL, AND

18   GIVEN THE POSTURE OF THE PARTIES, I DON'T THINK IT WOULD BE

19   APPROPRIATE TO ALLOW THAT LINK EVEN WITH CLAWBACK PROVISIONS.

20        AND I BELIEVE THERE'S ALSO MATERIAL IN THE DATABASE THAT

21   HAS NOTHING TO DO WITH THE SCOPE OF THE SUBPOENAS.

22        SO --

23             THE COURT:  OKAY.

24             MR. FLAHERTY:  -- IT NEEDS TO BE REPLICATED AS

25   OPPOSED TO JUST OPENING THE DOOR TO GIVE THEM A LINK TO

1      EVERYTHING IN THE RELATIVITY DATABASE.

2             THE COURT:  SO WHAT ABOUT THIS MENTION THAT YOU MADE

3      IN YOUR PORTION OF THE LETTER ON BEHALF OF ORION ABOUT THE

4      LOGIKCULL PLATFORM?

5             MR. FLAHERTY:  YEAH, AND I WILL DEFER TO THE

6      BRAUNHAGEY FIRM TO GIVE FURTHER DETAIL, BUT MY UNDERSTANDING IS

7      THAT, I THINK AS TO SOME THIRD PARTY PRODUCTIONS, THOSE WERE

8      STORED ON THEIR OWN PLATFORM AND WEREN'T USED BY OR PORTED OVER

9      TO ULD FOR HOSTING.  THAT WAS HOSTED INTERNALLY.

10        AND PERHAPS MR. BORDEN CAN SPEAK FURTHER ON THAT.

11             THE COURT:  OKAY.  I'LL MAKE A NOTE ABOUT THAT AS

12     WELL.

13        SO THEN TURNING TO THE ESTIMATE THAT YOU INCLUDED WITH

14     YOUR PORTION OF THE BRIEF ON BEHALF OF ORION, YOU KNOW,

15     CELESTRON SAYS, WELL, IT LOOKS LIKE IT INCLUDES MORE EFFORT

16     THAN WHAT IS -- WHAT IS REALLY NECESSARY HERE.  AND, FRANKLY,

17     IT'S A LITTLE BIT HARD FOR THE COURT TO TELL.  I MEAN, THERE'S

18     A LOT OF REFERENCE TO THINGS LIKE DATA COLLECTION AND CHAIN OF

19     CUSTODY AND CUSTODIAN REVIEWS AND SEARCH TERMS AND, YOU KNOW,

20     I'M SURE WE ALL APPRECIATE WHAT'S NEEDED HERE IS YOU NEED

21     PRODUCTION OF A DISCRETE SUBSET, I ASSUME, OF WHAT'S IN THIS

22     DATABASE, THE MATERIAL THAT WAS PRODUCED MINUS -- WELL, THE

23     MATERIAL THAT WAS PRODUCED, AND THEN YOU HAVE TO ACCOUNT FOR

24     ANY THIRD PARTY CONFIDENTIALITY OBLIGATIONS THAT NEED TO BE

25     ADDRESSED BEFORE SUCH A PRODUCTION.

1          SO COULD YOU HELP ME UNDERSTAND WHY THIS ESTIMATE IS

2    ACTUALLY AN ACCURATE REPRESENTATION OF WHAT THAT EFFORT WILL

3    COST?

4              MR. FLAHERTY:  YEAH.  SO I DID SPEND SOME TIME WITH

5     THE FOLKS AT ULD, ALONG WITH SOMEONE FROM THE BRAUNHAGEY FIRM,

6     TO GET A BETTER UNDERSTANDING OF THE ESTIMATE, AND IT IS BASED

7     UPON THE FACT THAT THEY NEED TO, ONE, LOCATE WHERE WITHIN THEIR

8      MEGA DATABASES THESE DOCUMENTS RESIDE, AND THEN MATCHING IT UP

9      WITH THE PRODUCTIONS FROM THE PAST.

10         AND I DON'T PROFESS TO UNDERSTAND EVERYTHING I WAS TOLD.

11    YOU KNOW, ORION IS IN AN INTERESTING POSITION OF THE MATERIAL

12    THAT IS BEING SUBPOENAED WAS GIVEN TO OUR LAWYERS, WHO THEN HAD

13    IT HOSTED ON A DATABASE, AND THE DATABASE NEEDS TO BE MINED

14    AGAIN TO RECREATE IT.

15         AND SO THE CONSULTANTS HAVE TOLD ME THAT IT IS MOSTLY

16    THEIR TIME TO FIND WHERE IN THE DATABASE THE ARCHIVES ARE

17    LOCATED AND THEN PULL THEM OUT, AND THEY THINK THAT ONCE THEY

18    GET GOING -- THAT'S WHY THEY HAVE A LOW ESTIMATE.  THEY THINK

19    THAT ONCE THEY GET GOING AND THE LOCATIONS ARE IDENTIFIED AND

20    THERE'S A PROCESS, THAT IT'LL TAKE LESS TIME.

21         MOST OF THE TIME IS PROJECT MANAGEMENT AND CUSTOM

22    ENGINEERING, I THINK.  THEY THINK THAT WILL GO DOWN OVER TIME

23    AS THEY CONTINUE TO WORK.

24         I DON'T KNOW THAT MR. BORDEN WAS ON THE CALL -- IN FACT, I

25    DON'T THINK HE WAS -- WITH ULD, SO I'M NOT SURE THAT HE COULD

1    ADD ADDITIONAL FLAVOR.

2         BUT I AM RELYING ON THE BRAUNHAGEY FIRM TO INTERFACE WITH

3    ULD TO ASSIST -- THOSE TWO ENTITIES TO ASSIST US, ORION, IN

4    COMPLYING WITH THE SUBPOENA.

5         THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  I

6     APPRECIATE THAT.

7         AND I WILL GET TO MR. FROST IN A MOMENT, BUT I THINK FIRST

8    I'LL ASK MR. BORDEN A FEW QUESTIONS.

9         SO KIND OF PICKING UP WHERE MR. FLAHERTY LEFT OFF, IT DOES

10   SEEM TO THE COURT THAT BRAUNHAGEY'S PARTICIPATION IN THIS

11   EFFORT COULD REDUCE SUBSTANTIALLY THE EXPENSE THAT ANY PARTY

12   MIGHT NEED TO INCUR TO MAKE THIS PRODUCTION, AND CERTAINLY YOUR

13   CURRENT CLIENT AND FORMER CLIENT IN THE ORION LITIGATION,

14   ORION, COULD BE GREATLY ASSISTED BY BRAUNHAGEY'S SUPERIOR

15   KNOWLEDGE OF THE PRODUCTIONS THAT WERE MADE IN THE CASE.

16        SO WHAT I'M WONDERING IS IF THERE IS -- IF THERE IS SOME

17   INTERACTION THAT YOU OR MEMBERS OF YOUR FIRM HAVE HAD WITH THIS

18   VENDOR, ULD, TO SEE IF THIS ESTIMATE, THE ITEMS THAT ARE SORT

19   OF DRIVING THIS ESTIMATE, THE WORK EFFORT, MIGHT BE STREAMLINED

20   WITH THE ASSISTANCE OF COUNSEL FROM YOUR FIRM.

21        MR. BORDEN:  YES, THANK YOU, YOUR HONOR.

22        AND SO JUST SO YOU KNOW, I HAVE NOT BEEN PARTICULARLY

23   INVOLVED IN THE PROCESS.  MR. FISHER HAS A DEPOSITION TODAY AND

24   HE'S BEEN THE ONE WHO HAS BEEN INVOLVED, BUT HE'S BEEN VERY

25   ACTIVE IN TRYING TO LOCATE DOCUMENTS AND TO WORK WITH

1    MR. FLAHERTY TO TRY TO STREAMLINE THINGS.

2        YOU KNOW, IT'S A LITTLE BIT MORE COMPLICATED, AT LEAST MY

3    UNDERSTANDING OF IT, AND I KNOW THAT, YOU KNOW, YOU PROBABLY

4    REMEMBER THE ORION LITIGATION AND ALL THE FUN THAT WE HAD AND

5    THE VARIOUS DISCUSSIONS THAT WE HAD ABOUT DOCUMENT PRODUCTIONS.

6        BUT AS YOU KNOW, WITH THESE BIG SORT OF DOCUMENT

7    PRODUCTIONS ON BOTH SIDES, AND EVEN WITH THIRD PARTIES, THERE

8    WERE CLAWBACKS WHERE, YOU KNOW, PEOPLE PRODUCED STUFF

9    INADVERTENTLY, AND WHAT WOULD HAPPEN IS, YOU KNOW, MR. CASERIA

10    WOULD SEND MR. FISHER OR ME AN E-MAIL AND IT WOULD SAY, YOU

11    KNOW, "CAN YOU PLEASE CLAWBACK THESE DOCUMENTS," OR WE WOULD

12    SEND E-MAILS LIKE THAT TO THE LAWYERS AT SHEPARD MULLIN.

13        AND SOMETIMES, YOU KNOW, IT MAY HAVE HAPPENED WITH THIRD

14    PARTIES, TOO.  I DON'T KNOW.

15        AND SO, YOU KNOW, ALL THAT STUFF HAS TO BE SIFTED OUT OF

16    THE PRODUCTION BY UNITED, AND I THINK THAT THAT'S -- THAT'S ONE

17    OF THE SORT OF LOGISTICAL ISSUES THAT MR. FISHER HAS BEEN

18    WORKING ON.

19        AND SO I'M NOT -- I'M NOT SURE, YOU KNOW, WHAT ELSE THE

20    COURT IS -- YOU KNOW, WANTS TO KNOW FROM US.

21        THE COURT:  WELL, HERE'S WHAT I'D LIKE TO KNOW:  SO,

22    YOU KNOW, I UNDERSTAND THAT THIS IS PROBABLY A VERY LARGE

23    DATABASE AND IT PROBABLY HAS SOME CATEGORIZATION BY SOURCE OF

24    PRODUCTION OR SOMETHING LIKE THAT, CUSTODIAN OR SOMETHING LIKE

25    THAT, SOME WAY THAT IT'S ORGANIZED.

1          I APPRECIATE THAT THERE IS A NEED TO RECREATE THE DATABASE

2     IN A WAY THAT IT CAN BE USED AS A DATABASE.

3          BUT WHAT I DON'T UNDERSTAND IS THE -- IS WHY IT WILL TAKE

4     SO MUCH TIME AND EFFORT OF ULD TO DO THE ACTIVITIES REPRESENTED

5     IN THE ESTIMATE.

6          IT DOES NOT APPEAR TO ME THAT ALL OF THE ITEMS IN THE

7     STATEMENT OF WORK ARE AT ALL NECESSARY, AND I DON'T -- AND I

8     JUST REALLY DON'T UNDERSTAND THE ESTIMATE, AND MR. FLAHERTY

9     APPARENTLY DOESN'T FULLY UNDERSTAND THE ESTIMATE, EITHER, OR

10    WHY ALL OF THIS EFFORT IS NECESSARY.

11         CUSTOM ENGINEERING TO CREATE THE PRODUCTION, THAT STRIKES

12    ME AS AN ODD THING TO BE -- AND SO WHAT I'M NOT SURE I

13    UNDERSTAND FROM YOU, MR. BORDEN, IS WHETHER THE BRAUNHAGEY FIRM

14    IS SUGGESTING THAT THE E-DISCOVERY VENDOR NEEDS TO DO SOMETHING

15    BY WAY OF RE-REVIEWING THE PRODUCTION OR ASSISTING WITH

16    IDENTIFYING WHICH MATERIALS WERE CLAWBACKS.  THAT'S NOT REALLY

17    MAKING A LOT OF SENSE TO ME.

18         I APPRECIATE THAT MAYBE WHAT HAS TO HAPPEN IS BRAUNHAGEY

19    NEEDS TO REVIEW ITS RECORDS TO FIGURE OUT WHAT WAS CLAWED BACK,

20    WHAT WAS SUBJECT TO A THIRD PARTY CONFIDENTIALITY AGREEMENT,

21    BUT ARE YOU SUGGESTING THAT THEN THE PROPOSAL WOULD BE TO HAND

22    THAT MATERIAL OVER TO THE E-DISCOVERY VENDOR AND HAVE THEM

23    REVIEW THE PRODUCTION?

24         I'M JUST NOT UNDERSTANDING HOW THAT IS A BARRIER TO THE

25    PRODUCTION HERE AND A DRIVER OF COSTS IF THAT'S WHAT YOU'RE

```
1    SUGGESTING.
2              MR. BORDEN:  WELL, I MEAN, THEY WOULD HAVE TO PULL
3    OUT THE PRIVILEGED DOCUMENTS AND EXCISE THEM FROM THE
4    PRODUCTION.  I DON'T -- I HAVEN'T TALKED TO ULD, AND I DON'T
5    KNOW IF MR. FISHER HAS.
6              THE COURT:  OKAY.
7              MR. BORDEN:  BUT THE -- BUT THE ESTIMATE -- I MEAN,
8    WE'RE WILLING TO HELP OUT.  WE'RE GOING TO, YOU KNOW, TURN OVER
9    THE CLAWBACK E-MAILS AND, LIKE, ANY INFORMATION THAT THEY NEED
10   IN ORDER TO TAKE OUT THE PRIVILEGED DOCUMENTS.
11       BUT THEY'RE STILL GOING TO HAVE TO DO IT.  SOMEBODY IS
12   GOING TO HAVE TO DO IT.
13             THE COURT:  SO CAN YOU ANSWER THE QUESTION I POSED TO
14   MR. FLAHERTY ABOUT WHETHER THERE IS A SORT OF AS-MADE
15   PRODUCTION RECORD, MEANING THIS IS THE MATERIAL WE ACTUALLY
16   PRODUCED OR THIS IS THE MATERIAL WE ACTUALLY RECEIVED IN THE
17   ORION LITIGATION FROM WHICHEVER PARTY, THE DEFENDANT OR THIRD
18   PARTIES.
19             MR. BORDEN:  IT IS MY UNDERSTANDING THAT THERE IS
20   NOT.
21             THE COURT:  SO DO YOU NOT HAVE RECORDS BY BATES
22   NUMBER OF WHICH DOCUMENTS WERE PRODUCED?  OFTEN THESE THINGS GO
23   WITH A COVER LETTER OR A COVER E-MAIL THAT SAY BATES NUMBERS X
24   TO Y WERE PRODUCED.  YOU MUST HAVE SUCH A THING AND THAT MUST
25   MAP TO A DATABASE SUCH THAT YOU DON'T HAVE A DATABASE THAT
```

1    SIMPLY INCLUDES ALL OF THE DOCUMENTS COLLECTED FOR POSSIBLE

2    PRODUCTION IN THE CASE.  YOU HAVE SOME WAY TO EASILY IDENTIFY

3    WHAT WAS ACTUALLY PRODUCED, AND THEN THE TASK THAT REMAINS IS

4    WHAT WAS CLAWED BACK AFTER PRODUCTION.

5        THAT KIND OF ISSUE, WHICH IS A MUCH NARROWER TASK THAN

6    LET'S DO THE PRODUCTION ALL OVER AGAIN STARTING FROM, LIKE, THE

7    ORIGINAL SOURCE MATERIAL, WHICH I HOPE IS NOT WHAT WE'RE

8    TALKING ABOUT HERE BECAUSE THAT WOULD BE SILLY.

9        MR. BORDEN:  AS I UNDERSTAND IT -- AND I DON'T WANT

10   TO MISSPEAK OR ANYTHING -- BUT THIS IS THE, YOU KNOW, MOST

11   EFFICIENT WAY THAT OUR FIRM AND ORION COULD COME UP WITH

12   REPRODUCING THE PRODUCTIONS FROM THE LITIGATION.

13       I'M SURE THAT THERE ARE COVER LETTERS ALONG THE LINES OF

14   WHAT YOUR HONOR SAID, BUT I WAS NOT INVOLVED IN THAT, AND I'M

15   NOT INVOLVED IN SORT OF WORKING WITH ULD AND TRYING TO FIGURE

16   OUT, YOU KNOW, WHAT THE MOST EFFICIENT MEANS IS.

17       BUT MY UNDERSTANDING IS THAT MR. FLAHERTY AND MR. FISHER

18   WERE AND THIS IS THE PLAN THAT THEY CAME UP WITH.

19       THE COURT:  ALL RIGHT.  WELL, THAT IS -- I APPRECIATE

20   THAT YOU DON'T HAVE A LOT OF INFORMATION, BUT UNFORTUNATELY,

21   THAT'S NOT SUPER HELPFUL FOR THE COURT IN THIS PROCEEDING.

22       LET ME TURN BACK TO MR. FLAHERTY FOR A MOMENT.

23       SO, MR. FLAHERTY, WHAT SEEMS TO ME TO BE THE CASE AND WHAT

24   I DON'T REALLY UNDERSTAND IS THAT THE ESTIMATE SORT OF IMPLIES

25   THAT THERE IS GOING TO BE A RECREATION OF THE PRODUCTION.

1    MAYBE I'M MISREADING IT, BUT SINCE YOU ALSO SEEM TO BE NOT

2    TOTALLY CONFIDENT ABOUT WHAT IT IS PROPOSING, IT WOULD BE THE

3    COURT'S EXPECTATION THAT WHAT YOUR VENDOR, OR YOUR FORMER --

4    YOUR CLIENT'S FORMER COUNSEL'S VENDOR WOULD BE DOING IS

5    IDENTIFYING THE PRODUCTION DOCUMENTS, NOT DOING A PRODUCTION

6    FROM SOURCE MATERIAL AGAIN, AFRESH, ANEW, THAT THERE WOULD BE

7    SOMETHING IN THE DATABASE THAT WOULD SAY, "THESE WERE THE BATES

8    LABELED DOCUMENTS THAT WERE PRODUCED," AND YOU COULD ACTUALLY

9    CONFIRM THAT THEY WERE PRODUCED, SUBJECT TO SOME PROBABLY

10   LIMITED AMOUNT OF CLAWBACK BASED ON PRIVILEGE OR OTHER ISSUES.

11        BUT THEY SHOULD HAVE ALL THE CONFIDENTIALITY DESIGNATIONS,

12   THEY SHOULD HAVE EVERYTHING IN A DATABASE.  I MEAN, I AM

13   MODESTLY FAMILIAR WITH RELATIVITY FROM BACK IN THE STONE AGE

14   WHEN I USED TO DO THIS MYSELF.

15        BUT, YOU KNOW, THIS -- I JUST -- I AM NOT HAVING, AFTER

16   THESE MANY WEEKS, A REALLY GOOD UNDERSTANDING OF WHAT THE

17   ESTIMATE COVERS.

18        I AM TOTALLY PREPARED TO MAKE A FINDING THAT COSTS OF

19   PRODUCTION SHOULD BE SHARED BY THE PARTIES WHO ARE GOING TO USE

20   IT.

21        BUT I DO NOT HAVE CONFIDENCE THAT THIS ESTIMATE REFLECTS A

22   REASONABLE COST OF PRODUCTION, AND I AM -- I'M NOT ABLE TO GET

23   SATISFACTION FROM MR. BORDEN BECAUSE OF HIS LIMITED INVOLVEMENT

24   APPARENTLY IN THE DISCUSSIONS.

25        AND IT SOUNDS LIKE ALSO YOU ARE OPERATING WITH LESS THAN

1    PERFECT INFORMATION.

2         SO THAT'S KIND OF MY, MY CURRENT ASSESSMENT OF WHERE WE

3    ARE.

4         AM I MISTAKEN ABOUT WHAT'S BEING PROPOSED?

5              MR. FLAHERTY:  YOUR HONOR, NO.  I THINK YOU'VE ASKED

6    ALL THE QUESTIONS THAT I'VE ASKED OF ULD AND BRAUNHAGEY,

7    STARTING WITH THE SIMPLE SOLUTION, ISN'T THERE A THUMB DRIVE

8    THAT HAS THE PRODUCTIONS THAT CAN JUST BE DISTRIBUTED?  OR, YOU

9    KNOW, ISN'T THERE SOME MAPPING OF WHAT THE PRODUCTIONS WERE

10   THROUGH YOUR CONTROL NUMBERS AND THE LIKE?

11        AND I'M TOLD, BECAUSE OF THE WAY IN WHICH THE DATABASE WAS

12   ARCHIVED, THAT THAT IS NOT SOMETHING THAT JUST IN A SNAP CAN BE

13   IDENTIFIED.

14        NOW, WHAT OTHER BACK ROOM MACHINATIONS ARE REQUIRED AT ULD

15   TO LOCATE WHERE THE ARCHIVES ARE, BECAUSE THEY SAY IT'S NOT ALL

16   IN ONE SPOT, IT'S SPREAD THROUGHOUT THEIR ARCHIVE, THAT'S JUST

17   HOW THEY STORE THEIR OWN INFORMATION, SO IT'S -- IT'S FOREIGN

18   TO ME EXACTLY WHAT ULD DID.  BUT THEY HAVE TO GO LOCATE IT.

19        SO THAT, YOU KNOW, AGAIN, IS MY UNDERSTANDING OF WHY THERE

20   IS THIS RELATIVELY HIGH HUMAN HOUR COUNT IN TERMS OF PRODUCING.

21        I DON'T THINK THAT THERE'S A REQUIREMENT THAT THEY HAVE TO

22   GO BACK TO THE RAW DATA AND START FROM SCRATCH.  I THINK THEY

23   JUST NEED TO LOCATE IT AND THEN SEE WHAT SHAPE IT'S IN AND SEE

24   HOW IT CAN BE SOUGHT.

25        I DO APPRECIATE THAT WE ARE NOT IN A POSITION TO GIVE

1    CLEAR ANSWERS TO THE COURT'S, YOU KNOW, REASONABLE QUESTIONS,

2    AND I'LL TAKE RESPONSIBILITY FOR THAT BECAUSE I DID TELL ULD TO

3    DO NOTHING FURTHER WHEN I GOT THE ESTIMATE AND PROVIDED IT TO

4    THE PARTIES SEEKING THE RECORDS.

5         I WASN'T WILLING TO INCUR ADDITIONAL EXPENSE AND MY TIME

6    GOING INTO THIS RATHER BROAD PRODUCTION WITHOUT SOME CLEAR

7    UNDERSTANDING OF HOW THE COSTS WERE GOING TO BE SHARED, IF THEY

8    WERE.

9         THE COURT:  YES.  WELL, I THINK WE'RE ALL MISSING

10   THAT PIECE, SOME UNDERSTANDING OF WHAT THE COSTS REASONABLY

11   SHOULD BE, AND ALSO WHAT TO DO ABOUT COST SHARING, WHICH SORT

12   OF REQUIRES THAT WE FIGURE OUT WHAT THE REASONABLE COST IS IN

13   THE FIRST PLACE PERHAPS.

14        LET ME HEAR FROM MR. FROST.  I DO HAVE SOME QUESTIONS FOR

15   THE DEFENDANT.

16        SO THE PROPOSAL THAT I MENTIONED TO MR. FLAHERTY WAS THE

17   ONE THAT YOU RAISED IN YOUR PORTION OF THE LETTER, WHICH IS

18   ABOUT, WHY DON'T WE JUST LINK TO THE PLATFORM?

19        FOR VARIOUS REASONS, IF LINKING SIMPLY MEANS WE GET

20   ACCESS -- YOU KNOW, CELESTRON GETS ACCESS TO EVERYTHING IN THAT

21   DATABASE WITHOUT REGARD TO WHETHER IT WAS DESIGNATED PRIVILEGED

22   OR NOT, THAT SEEMED NOT GOOD.

23        BUT PERHAPS I WASN'T UNDERSTANDING YOUR PROPOSAL.

24        MR. FROST:  SO WE TALKED TO -- WE TALKED TO OUR

25   VENDOR WHO WORKS WITH RELATIVITY, OUR CONTACT OVER THERE, AND

1    THEY SAID WHAT YOU WOULD EXPECT TO HAVE TO DEAL WITH IN THIS

2    SITUATION IS NOT SO BROAD AND DRAMATIC AS WHAT'S BEING

3    DESCRIBED, THAT YOU OUGHT TO BE ABLE TO LINK DIRECTLY TO THE

4    INFORMATION.

5         AND IF IT'S AN ISSUE OF INFORMATION -- AND JUST TO BE

6    CLEAR, THE REQUESTS WERE FOR ALL OF THE PRODUCTIONS FROM THE

7    ORION LITIGATION.

8         THE COURT:  YES, I UNDERSTAND.

9         MR. FROST:  SO THE ONLY THING THAT WOULD BE LIMITED

10   OR HAVE TO BE EXTRACTED OUT IS IF THERE WAS SOME CLAWBACK OF

11   INFORMATION, AND WE ASKED -- WE SAID, "WELL, HOW BROAD WAS THE

12   CLAWBACK?  HOW MANY THINGS GOT INADVERTENTLY PRODUCED?"

13        AND WHEN WE ASKED THAT QUESTION TO DPP COUNSEL, THE ANSWER

14   RECEIVED WAS, "YOU'RE GOING TO HAVE TO TALK TO MR. FLAHERTY

15   BECAUSE WE DON'T REPRESENT ORION IN THIS LITIGATION," WHICH

16   BECOMES SOMEWHAT OF AN UNHELPFUL EXERCISE.

17        AND SO WE'VE BEEN TRYING TO FIGURE THAT OUT.

18        BUT IF THERE'S NOT THAT MUCH THAT WAS INADVERTENTLY

19   PRODUCED, THEN WE DON'T UNDERSTAND WHY THE DATABASE CAN'T

20   SIMPLY BE TURNED OVER TO BRAUNHAGEY AND THEM TO GO BACK AND

21   PULL OUT WHAT HAD BEEN INADVERTENTLY PRODUCED, AND IT DOESN'T

22   SEEM LIKE THAT WOULD BE THAT DRAMATIC OF AN EXERCISE.

23        THE COURT:  OKAY.  SO HERE'S WHAT I UNDERSTAND THE

24   PROBLEM IS, ACCORDING TO MR. FLAHERTY, AND ALSO MR. BORDEN, IS

25   THAT THE VENDOR WHO HANDLED THE PRODUCTION HAS ARCHIVED IT AND

1      NOW HAS TO GO FIND IT, WHICH, YOU KNOW, THAT SOUNDS STRANGE,

2      BUT LET'S JUST KIND OF GO WITH IT, THAT IT'S NOT SOMETHING THAT

3      JUST EXISTS NOW AND CAN BE ACCESSED.

4           SO LET ME -- LET ME -- AND I HAVEN'T HEARD FROM THE IPP

5      PLAINTIFFS YET, BUT THAT'S -- I WILL ASK FOR YOUR INPUT IN A

6      MOMENT.

7           BUT ONE THING THAT OCCURRED TO ME IN READING YOUR PAPERS

8      IS IF THERE'S SORT OF A DISAGREEMENT ABOUT WHAT IS THE BEST WAY

9      TO DO THIS -- "THIS" MEANING ACCESSING THE RELEVANT MATERIAL,

10     FINDING A WAY TO ACCOUNT FOR ANY CLAWBACKS THAT HAPPENED

11     POST-PRODUCTION, AND THEN GET THE MATERIAL TO THE DEFENDANTS --

12     WHY NOT HAVE THE DEFENDANTS, YOU KNOW, PRODUCE -- E-DISCOVERY

13     VENDOR PERSON TALK TO THE ULD E-DISCOVERY PEOPLE AND SEE IF THE

14     PEOPLE WHO ACTUALLY KNOW WHAT THEY'RE TALKING ABOUT -- NO

15     DISRESPECT MEANT TO COUNSEL -- BUT KNOW WHAT THEY'RE TALKING

16     ABOUT, SEE IF THEY CAN FIGURE OUT AN EFFICIENT PROPOSAL?  HAVE

17     YOU ALL CONSIDERED DOING THAT?

18               MR. FROST:  WE ARE COMPLETELY OPEN TO THAT IDEA.

19               THE COURT:  YEAH, BUT NOBODY HAS CONSIDERED DOING

20     THAT YET.

21          OKAY.  SO I AM TEMPTED TO ORDER THAT THAT HAPPEN AS THE

22     NEXT STEP.  ANYBODY OBJECT TO THAT?

23               MR. ZAPALA:  NO, YOUR HONOR.  YOUR HONOR, IT MAKES

24     COMPLETE SENSE TO THE INDIRECT PURCHASERS.

25               THE COURT:  OKAY.

```
 1            MR. ZAPALA:  THAT'S WHAT WE'VE BEEN WANTING TO DO.

 2        AND IF I MAY BE HEARD ON A FEW THINGS?

 3            THE COURT:  I WILL LET YOU BE HEARD IN JUST A MOMENT.

 4     I'M SORRY.  I HAVE NOT FORGOTTEN.

 5            MR. ZAPALA:  NOT AT ALL.

 6            THE COURT:  I HAVE A FEW MORE QUESTIONS FOR

 7     MR. FROST.

 8        OKAY.  SO THE OTHER MATTER THAT IS RAISED IN THE PAPERS ON

 9     THIS ISSUE IS, YOU KNOW, THE QUESTION OF COST SHARING, AND

10     MAYBE I SHOULD HAVE ASKED EVERYBODY ABOUT THIS WHEN I SPOKE TO

11     MR. FLAHERTY AND MR. BORDEN EARLIER.

12        BUT IT APPEARS TO ME THAT EVERYONE HERE HAS AN INTEREST IN

13     THESE DOCUMENTS -- AND BY "EVERYONE" I MEAN THE DEFENDANTS

14     CLEARLY DO, THEY'RE ORION'S DOCUMENTS -- AND THEN I GUESS THE

15     QUESTION IS, DO THE PLAINTIFFS, THE SPECTRUM SCIENTIFICS AND

16     RADIO CITY PLAINTIFFS, DO YOU ALL HAVE AN INTEREST IN THESE

17     DOCUMENTS, MEANING DO YOU INTEND TO USE THEM IN THE LITIGATION?

18        THAT'S PROBABLY A QUESTION FOR MR. BORDEN.

19            MR. BORDEN:  SURE, AND I'LL HAVE TO CHECK, BUT IT'S

20     MY UNDERSTANDING -- I DON'T THINK THAT WE SERVED A SUBPOENA FOR

21     THOSE DOCUMENTS, AND I COULD BE WRONG.

22        BUT, YEAH, I MEAN, I THINK THE BURDEN WOULD BE ON THE

23     SUBPOENAING PARTY IF THEY WANTED TO PAY THE COSTS OF THE

24     DOCUMENTS.  I DON'T KNOW IF --

25            THE COURT:  THAT'S NOT MY QUESTION.  SORRY.  SORRY TO
```

```
1        CUT YOU OFF.

2                MR. BORDEN:  OKAY.

3                THE COURT:  MY QUESTION -- WE HAVE A LOT TO COVER.

4            MY QUESTION IS, DO YOUR CLIENTS INTEND TO USE THESE

5        DOCUMENTS, OR SOME SUBSET OF THEM, IN THE LITIGATION?

6                MR. BORDEN:  I DON'T ACTUALLY KNOW, YOUR HONOR.  I

7        MEAN --

8                THE COURT:  OKAY.

9                MR. BORDEN:  -- THE ONE THING THAT I WILL SAY IN THIS

10       LITIGATION IS THAT OUR CLIENT IS THE ONLY ONE THAT'S ACTUALLY

11       PRODUCED DOCUMENTS.  WE PRODUCED OVER 10,000 PAGES OF --

12               THE COURT:  I'M NOT INTERESTED IN THAT.  I'M SORRY.

13       I'M NOT INTERESTED IN THAT ISSUE RIGHT NOW.

14           I'M REALLY TRYING TO FOCUS ON THIS PARTICULAR CATEGORY OF

15       INFORMATION AND WHETHER -- SO I KEEP GETTING TOLD THAT YOU'RE

16       GOING TO USE THEM, THAT YOU HAVE ALREADY USED THEM IN THE

17       LITIGATION, AND I'M JUST TRYING TO UNDERSTAND --

18               MR. BORDEN:  LET ME MAKE THAT CLEAR, YOUR HONOR --

19               THE COURT:  YEAH.

20               MR. BORDEN:  -- SO THAT YOU DO UNDERSTAND, RIGHT?

21               THE COURT:  YEAH.

22               MR. BORDEN:  THE DOCUMENTS THAT WE HAVE USED IN THIS

23       LITIGATION ARE ALL THE PUBLICLY FILED DOCUMENTS --

24               THE COURT:  OKAY.

25               MR. BORDEN:  -- WHICH ARE IN THE EXCERPTS OF RECORD
```

1      IN THE NINTH CIRCUIT, THEY'RE IN THE TRIAL COURT PROCEEDINGS

2      THAT WERE, YOU KNOW, UNSEALED AS FAR AS SUMMARY JUDGMENT GOES,

3      AND THOSE ARE THE MATERIALS THAT WE HAVE RELIED ON IN THIS

4      CASE.

5            CELESTRON HASN'T PRODUCED ANY DOCUMENTS.  WE DON'T KNOW IF

6      ANY OF THESE DOCUMENTS ARE GOING TO BE DUPLICATIVE OF THESE --

7      OF WHAT THEY'RE, YOU KNOW, TRYING TO ASK FOR BECAUSE SOME OF

8      THE DOCUMENTS, YOU KNOW, OBVIOUSLY HAVE, YOU KNOW, COME FROM

9      CELESTRON THAT THEY'RE ASKING FOR.

10            THE COURT:  OKAY.  THAT'S GETTING A LITTLE FARTHER

11      AFIELD.  I APPRECIATE THE OBVIOUS POINT THAT SOME OF THE

12      DOCUMENTS THAT MADE IT INTO THE TRIAL RECORD AND THE APPEAL

13      RECORD ORIGINATED IN THE PRODUCTION, AND THERE'S GOING TO BE

14      OVERLAP BETWEEN STUFF RESPONSIVE TO REQUESTS FOR PRODUCTION 1

15      AND 2 AND STUFF THAT'S RESPONSIVE TO REQUEST FOR PRODUCTION 3.

16      I GOT THAT PART.

17            BUT MY REAL FOCUS WAS, DOES YOUR CLIENT PLAN TO USE THE

18      DOCUMENTS THAT WERE OBTAINED BY YOUR FIRM IN THE ORION

19      LITIGATION FOR USE IN THAT LITIGATION, NOW FOR USE IN THIS

20      LITIGATION?

21            AND IF THE ANSWER IS, NO, EXCEPT TO THE EXTENT THEY WERE

22      ACTUALLY USED AT TRIAL, THAT'S THE ANSWER I'M -- I'M JUST

23      TRYING TO FIND AN ANSWER TO THAT QUESTION.

24            MR. BORDEN:  WELL, THE ANSWER TO THE QUESTION IS, I

25      MEAN, I DON'T REALLY KNOW WHAT DOCUMENTS WE'RE GOING TO USE AND

1    NOT USE.

2              THE COURT:  OKAY.

3              MR. BORDEN:  WE HAVEN'T RECEIVED ANY DOCUMENTS YET,

4    SO WE DON'T KNOW, YOU KNOW, WHAT THOSE DOCUMENTS WILL SHOW, IF

5    THEY'RE DUPLICATIVE OF THE DOCUMENTS THAT WE'RE TALKING ABOUT

6    HERE OR --

7              THE COURT:  OKAY.  MR. BORDEN, I'M SORRY TO BE

8    IMPATIENT, BUT YOU KNOW WHAT THE DOCUMENTS ARE BECAUSE YOU WERE

9    COUNSEL IN THAT LITIGATION.  YOU KNOW WHAT THE MATERIAL IS

10   THAT'S IN THE PRODUCTION.  I MEAN, LET'S NOT PRETEND THAT YOU

11   DON'T KNOW THIS INFORMATION.

12        SO I APPRECIATE THAT YOU HAVEN'T PLANNED OUT YOUR WHOLE

13   CASE AND YOU DON'T KNOW PRECISELY WHICH DOCUMENTS, BUT IF YOU

14   THINK THESE ARE DOCUMENTS THAT ARE LIKELY TO BE RELEVANT AND

15   RESPONSIVE AND THAT ARE THINGS THAT YOU AND YOUR CLIENT WILL

16   USE IN THIS LITIGATION, THAT'S ALL I'M LOOKING FOR.

17        IF YOU DON'T KNOW AND YOU REALLY DON'T KNOW, THAT'S FINE,

18   YOU CAN TELL ME YOU DON'T KNOW.

19        BUT IT'S NOT BECAUSE YOU DON'T KNOW WHAT OTHER PEOPLE ARE

20   GOING TO USE OR WHAT'S IN THERE OR ANYTHING LIKE THAT.  YOU

21   KNOW WHAT'S IN THE PRODUCTION AS A GENERAL MATTER BECAUSE IT

22   WAS YOUR CASE.

23              MR. BORDEN:  I DO GENERALLY KNOW WHAT'S IN THE

24   PRODUCTION.

25        THE PRODUCTIONS ARE -- YOU KNOW, BECAUSE THE PRODUCTIONS

1    ARE LARGE, AND THAT'S WHY I DON'T WANT TO TELL YOU THAT WE'RE

2    NOT GOING TO USE ANYTHING IN THEM BECAUSE THAT WOULD PROBABLY

3    NOT BE TRUE.

4            THE COURT:  OKAY.

5            MR. BORDEN:  BUT ON THE OTHER HAND, I DON'T KNOW

6    EXACTLY WHAT WE'RE GOING TO DO.

7            THE COURT:  OKAY.

8        BACK TO MR. FROST AND THEN I'LL GET TO THE IPP FOLKS.

9        ALL RIGHT.  IT SEEMS TO ME, MR. FROST, THAT IF THERE IS A

10   SUBSTANTIAL COST ASSOCIATED WITH THE PRODUCTION, THAT THE

11   PARTIES WHO ARE INTERESTED IN THE MATERIAL SHOULD SHARE THE

12   COST AND IT SHOULD NOT BE BORNE BY ORION.

13       SO AS YOU KNOW, IN MY LAST ORDER, I DENIED WITHOUT

14   PREJUDICE THE REQUEST TO HAVE COSTS PAID, AND THAT WAS BECAUSE

15   WE DIDN'T KNOW WHAT THE AMOUNT WAS OR WHY OR ANY KIND OF

16   JUSTIFICATION.  WE'RE STILL KIND OF GETTING THERE ON THAT

17   ISSUE.  I'M STILL NOT CONFIDENT WE KNOW WHAT THE REASONABLE

18   COSTS ARE.

19       BUT IF WE SOLVE THAT PROBLEM, MY INCLINATION IS TO HAVE

20   THE PARTIES SHARE COSTS.

21       I DON'T SEE WHY CELESTRON WOULD OBJECT TO THAT, BUT I WANT

22   TO GIVE YOU AN OPPORTUNITY TO ADDRESS THAT ISSUE SINCE YOU DID

23   OBJECT TO IT IN YOUR PAPERS.

24           MR. FROST:  TO THE EXTENT THAT THE COST IS BORNE BY

25    ALL THE PARTIES TO THE LITIGATION, CELESTRON DOES NOT HAVE AN

1    OBJECTION TO CARRYING ITS PART OF THAT COST.

2         I WILL TELL YOU, I THINK TO, TO REFINE, IF I MAY, THE

3    QUESTION THAT MR. BORDEN ANSWERED, I THINK IT'S NOT AS MUCH

4    JUST AN ISSUE ABOUT WHETHER OR NOT MR. BORDEN INTENDS TO USE

5    THOSE DOCUMENTS, BUT ALSO THE FACT THAT THE DPP'S HAVE PUT

6    THOSE DOCUMENTS AT ISSUE WITH THE ALLEGATION IN THEIR

7    LITIGATION, THEREFORE REQUIRING -- WITH THE COMPLAINT,

8    THEREFORE, REQUIRING US TO SEEK THEM.

9         SO TO THE EXTENT THE COURT'S INCLINATION IS TO SPLIT THAT

10   COST THREE WAYS, CELESTRON WOULD HAVE NO OBJECTION TO THAT.

11            THE COURT:  OKAY.  I THINK --

12            MR. FROST:  AND IF THE COURT DOESN'T BELIEVE THAT

13   ORION SHOULD BE REQUIRED, THEN SO BE IT.

14            THE COURT:  OKAY.  SO I THINK WHAT MR. BORDEN IS

15   SAYING, AND WHAT HIS COLLEAGUE SAID IN OUR PRIOR HEARING, IS

16   THAT THEIR CLIENTS ARE USING DOCUMENTS THAT WERE ACTUALLY USED

17   AT TRIAL, THE TRIAL DOCUMENTS, NOT THE DISCOVERY DOCUMENTS.

18        YOU ALREADY HAVE THE TRIAL DOCUMENTS, I HOPE.  WE'LL GET

19   TO THAT ISSUE.  BUT I THINK IT'S AN IMPORTANT DISTINCTION

20   BECAUSE IT'S A MUCH MORE CONCISE AND LIMITED SET OF MATERIAL

21   THAT DOESN'T REQUIRE ALL OF THIS EXPENDITURE OF COSTS.

22        SO, YOU KNOW, I DON'T REALLY WANT TO GET INTO THE WEEDS ON

23   THAT TOO MUCH, BUT I DO FEEL THAT -- LET ME PUT IT THIS WAY:

24   IF I LEARN IN THE LITIGATION THAT, IN FACT, THE DPP PLAINTIFFS,

25   THE PLAINTIFFS IN THE 3642 MATTER, ARE MAKING USE OF DISCOVERY

1    DOCUMENTS THAT WERE NOT USED AT TRIAL IN THE <u>ORION</u> LITIGATION

2    IN DISCOVERY, IN DEPOSITIONS AND THAT KIND OF THING, THEN, YES,

3    I DO THINK THAT THEY WOULD SHARE IN THE COST OF THE EXPENSE OF

4    RECREATING THAT PRODUCTION.

5            THAT'S SORT OF HOW I -- I DON'T KNOW IF I CAN RESOLVE THAT

6    QUESTION NOW, BUT THAT'S SORT OF WHERE MY MINDSET IS.  IF

7    PEOPLE ARE USING IT, IF THEY WANT IT, IF THEY'RE MAKING USE OF

8    IT IN THIS LITIGATION, OKAY, YOU SHOULD SHARE IN THE COST OF

9    THAT PRODUCTION.

10           SO FIGURING OUT HOW TO IMPLEMENT THAT IS SOMETHING I'LL

11    PUT A PIN IN FOR NOW.

12           BEFORE I TURN TO MR. ZAPALA, LET ME JUST ASK, MR. FROST,

13    IF THERE'S ANYTHING ELSE THAT YOU WOULD LIKE TO ADDRESS ON THIS

14    QUESTION OF REQUEST NUMBERS 1 AND 2.

15           MR. FROST:  NO.  THAT'S IT, YOUR HONOR.

16           THE ONLY THING WERE JUST TWO MINOR POINTS TO THAT.

17    NUMBER 1, I BELIEVE WE ARE STILL WAITING TO HEAR FROM

18    MR. FLAHERTY CONCERNING SOME FOLLOW-UP ISSUES RELATING TO

19    TIMING OF CONFIDENTIALITY ANALYSIS AND THINGS LIKE THAT, AND SO

20    I THINK WE STILL HAVE A FURTHER CONVERSATION TO HAVE IN THE

21    MEANTIME AS WELL.

22           WITH RESPECT TO -- AND IT SOUNDS LIKE YOU MAY BE HEADING

23    TOWARDS SETTING A FURTHER HEARING ON THIS ANYWAY AFTER OUR

24    VENDORS CAN MEET AND DISCUSS, BUT THE ONLY THING I WOULD ADD

25    WITH RESPECT TO THE COST SHARING ISSUE IS IT DOES SEEM A LITTLE

1    INCREDIBLE IF THE DPP'S ARE SAYING THEY'RE NOT GOING TO USE

2    THAT INFORMATION GIVEN THE FACT THAT WE'RE SORT OF HANDICAPPED

3    BY THE FACT THAT THEY'VE SEEN IT BEFORE AND WE HAVEN'T.

4         AND SO WE'RE LEFT -- IF WE DON'T GET THE PRODUCTIONS,

5    WE'RE LEFT AT THEIR MERCY AS TO WHAT THEY CULLED.

6         AND SO TO THE EXTENT THE PRODUCTION IS GOING TO BE MADE

7    AVAILABLE TO THEM, THEN WE BELIEVE THEY SHOULD SHARE.  AND IF

8    YOU'RE NOT -- IF -- ONE SUGGESTION I MIGHT HAVE IS ONCE YOU

9    ISSUE AN ORDER ON COST SHARING, IF THEY CAN'T REPRESENT THEY'RE

10   NOT GOING TO USE IT, SPLIT IT THREE WAYS AND THEN LATER, TO THE

11   EXTENT THE DPP'S, AT THE END OF DISCOVERY, FIGURE OUT THEY

12   HAVEN'T USED IT, THEN COME BACK AND WE CAN DISCUSS REALLOCATION

13   AT THAT POINT.

14        BUT I THINK THE FAIR ASSUMPTION RIGHT NOW IS, LOOK,

15   THEY'RE GOING TO GET THE DOCUMENTS, THEY'RE GOING TO USE THE

16   DOCUMENTS.

17             THE COURT:  ALL RIGHT.  WELL, THEY SAY THEY HAVEN'T

18   SERVED A SUBPOENA, SO -- AND I DON'T KNOW IF YOU HAVE AN

19   OBLIGATION TO PRODUCE IT IF YOU GET IT FROM ORION.  I DON'T

20   KNOW WHAT THE PARTIES HAVE AGREED ON THAT.

21        BUT IF MR. BORDEN IS EXPRESSING -- SAYS HE DOESN'T NEED IT

22   FOR HIS CLIENTS, MAYBE HE DOESN'T NEED IT, AND MAYBE HE JUST

23   WON'T GET IT.

24        AND THEN MAYBE THE COSTS GET SHARED BETWEEN CELESTRON AND

25   THE IPP PLAINTIFFS.  THAT'S ANOTHER WAY TO SOLVE IT.

1          MR. FROST:  WE WOULDN'T HAVE AN OBJECTION TO THAT

2     APPROACH, EITHER.

3          THE COURT:  ALL RIGHT.  WELL, LET ME HEAR FROM THE

4     IPP PLAINTIFFS.

5          SO, MR. ZAPALA, I THINK YOU WANTED TO ADDRESS THE ISSUE,

6     AND PERHAPS YOU COULD START WITH CONFIRMING WHAT ORION'S

7     COUNSEL SHARED WITH THE COURT, WHICH IS THAT A SUBPOENA WAS

8     SERVED FOR THE EXACT SAME DOCUMENTS ON BEHALF OF YOUR CLIENTS.

9     IS THAT THE CASE?

10         MR. ZAPALA:  THAT'S CORRECT.  ACTUALLY, WE WERE THE

11    FIRST PARTY TO SERVE THE SUBPOENA.  IT WAS NEVER SERVED ON --

12    UNFORTUNATELY, WE HAD SOME DIFFICULTY SERVING ORION DURING THE

13    PANDEMIC.

14         IT WAS ACTUALLY DEFENDANT CELESTRON WHO COPIED OUR

15    SUBPOENA.  IT JUST SO HAPPENS THAT MR. FLAHERTY --

16         THE COURT:  WHATEVER.

17         MR. ZAPALA:  YEAH, IT DOESN'T MATTER.  BUT IT IS, IN

18    SUBSTANCE --

19         THE COURT:  IT'S THE SAME SUBPOENA.  OKAY.

20         MR. ZAPALA:  YES.

21         THE COURT:  ALL RIGHT.  SO YOU'RE INTERESTED IN THE

22    SAME DOCUMENTS.

23         AND WITH RESPECT TO THE DISCUSSIONS THAT FOLKS HAVE HAD

24    ABOUT HOW TO MOST EFFICIENTLY ACCOMPLISH THE PRODUCTION OF THIS

25    MATERIAL, I KNOW YOU DIDN'T SUBMIT ANYTHING IN THE JOINT

1    LETTER, BUT IS THERE SOME FURTHER THOUGHT THAT YOUR CLIENTS

2    HAVE ON HOW TO ACCOMPLISH THIS?

3            MR. ZAPALA:  YES, AND THANK YOU SO MUCH FOR INDULGING

4    US.  I SENSE SOME EXASPERATION BY THE COURT.  FRANKLY, WE SHARE

5    IT.

6        THIS IS A COMPLEX CASE, AND IF WE CAN'T ACCOMPLISH

7    PRODUCING DOCUMENTS THAT WERE PRODUCED, COLLECTED, REVIEWED IN

8    A PREVIOUS CASE, WE'RE NOT GOING TO TRY THIS CASE UNTIL 2030.

9        I MEAN, THIS -- THIS HAS BECOME -- THIS PROCEEDING IN

10    TERMS OF GETTING THE DOCUMENTS FROM THE ORION LITIGATION HAS

11    BECOME AN EXTRAORDINARY SIDESHOW.  THIS SHOULD HAVE BEEN EASY

12    TO DO, AND, YOU KNOW, IT CONCERNS US THAT IT HAS TAKEN THIS

13    LONG, FRANKLY, AND WE STILL DON'T HAVE ANSWERS, AS THE COURT

14    HAS RECOGNIZED.

15        LET ME KIND OF GO BACK TO FIRST PRINCIPLES.  THERE ARE TWO

16    CORPORATE FAMILIES INVOLVED IN THE ALLEGED CONSPIRACY.  THERE'S

17    THE NINGBO SUNNY SIDE, WHICH WAS OF COURSE AT ISSUE IN THE

18    ORION LITIGATION; AND THERE'S THE SYNTA SIDE, WHICH INCLUDES

19    CELESTRON AND MR. FROST'S CLIENTS, TWO SIDES OF THE CONSPIRACY.

20        IN THE ORION CASE, ONLY NINGBO SUNNY WAS IN THE LITIGATION

21    ITSELF.  THEY HAVE SO FAR NOT APPEARED HERE, OKAY?

22        IN ORDER TO PROVE THE CONSPIRACY, WE'RE GOING TO NEED

23    DOCUMENTS DEMONSTRATING NINGBO SUNNY'S INVOLVEMENT.

24        THE DPP'S ARE GOING TO NEED THOSE DOCUMENTS.  THE IDEA

25    THAT THEY'RE NOT GOING TO USE THOSE DOCUMENTS IN THIS

1    LITIGATION IS, IS SOMEWHAT PREPOSTEROUS.

2        SO ALL PARTIES ARE GOING TO USE THESE DOCUMENTS.  THEY'VE

3    BEEN COLLECTED, THEY'VE BEEN REVIEWED FOR PRIVILEGE, FOR

4    RESPONSIVENESS, AND THEY'VE BEEN PRODUCED IN THE UNDERLYING

5    LITIGATION.

6        SO THOSE ARE SORT OF FIRST PRINCIPLES.  IT SHOULD BE EASY

7    FOR THOSE DOCUMENTS TO BE PRODUCED TO US.

8        I UNDERSTAND THAT, YOU KNOW, MR. FLAHERTY AND ORION ARE

9    SAYING, WELL, THERE ARE EXTENUATING CIRCUMSTANCES.

10       I THINK THE BEST THING TO DO IS WHAT YOUR HONOR SAID,

11   WHICH IS TO GET THE ESI VENDORS TOGETHER.  I KNOW -- YOU KNOW,

12   YOU HAD SAID, WELL, WE SHOULDN'T HAVE TO RECREATE THIS.

13       FRANKLY, WE WOULD HAVE -- TO THE EXTENT THE PRODUCTIONS

14   THEMSELVES EXIST, WE WOULD HAVE BEEN HAPPY TO RECEIVE THOSE

15   BECAUSE WE WOULD JUST LOAD THEM ON OUR OWN PLATFORM.  WE DON'T

16   UNDERSTAND WHY THEY DON'T EXIST.

17       I MEAN, THE ORION CASE IS UP ON APPEAL.  WHAT HAPPENS IF

18   IT COMES BACK DOWN?  I MEAN --

19           THE COURT:  ORION WILL BE SPENDING $59,000 TO

20   RECREATE THE DATABASE.  I DON'T KNOW.

21           MR. BORDEN:  I MEAN, LET ME ADDRESS THAT, BECAUSE --

22           THE COURT:  JUST A MOMENT.  I'LL LET YOU COMMENT,

23   MR. BORDEN.  I UNDERSTAND YOU MIGHT HAVE SOMETHING TO SAY ABOUT

24   THAT.

25           BUT I'LL LET MR. ZAPALA FINISH AND THEN I'LL COME BACK TO

1       YOU.

2              MR. ZAPALA:  WHEN THE DOCUMENTS COME INTO OUR OFFICE,

3       A COPY OF THE PRODUCTION IS MADE AND THEN SENT TO THE VENDOR.

4           AND WHAT WE'RE HEARING IS, WELL, WE JUST DON'T EVEN HAVE

5       THE PRODUCTIONS ANYMORE, AND THEN AN EXTRAORDINARY EXPLANATION

6       AS TO WHAT NEEDS TO BE REPRODUCED ON THE PLATFORM, WHICH,

7       FRANKLY, DOESN'T MAKE ANY SENSE.

8           THE -- THE COSTS THAT YOU SAW RELATED TO REPRODUCING THIS

9       MATERIAL, MANY OF THE PRODUCTIONS SHOW THAT THERE'S, THERE'S

10      NO -- THERE ARE, LIKE, 0 GIGABYTES, BUT THE ASSUMPTION IS THAT

11      THE VENDOR WILL TAKE THE SAME AMOUNT OF TIME FOR THOSE

12      PRODUCTIONS AS IT WOULD FOR ALL THE PRODUCTIONS.  THERE'S 32

13      PRODUCTIONS, I THINK, AND 17 OF THEM SHOW ALMOST NO GIGABYTES.

14      BUT THERE'S NEVERTHELESS TECH TIME FOR THOSE PRODUCTIONS.

15          SO WE DON'T UNDERSTAND THE COSTS.

16          YOU KNOW, THE PRIVILEGE AND CLAWBACK MATERIAL, THAT

17      DOESN'T MAKE SENSE, EITHER.  WHEN YOU GET A CLAWBACK LETTER,

18      THAT GETS EXCISED FROM YOUR PLATFORM.  THAT'S THE POINT OF THE

19      CLAWBACK LETTER.  YOU DON'T LEAVE IT UP THERE.  IT'S PRIVILEGED

20      MATERIAL.

21          SO THE IDEA THAT YOU WOULD HAVE TO THEN RE-REVIEW THIS FOR

22      ALL THE CLAWBACK -- I MEAN, WE SEND THE CLAWBACK LETTERS TO OUR

23      VENDOR RIGHT AWAY AND HAVE THE MATERIAL EXCISED FROM THE

24      DATABASE, OR AT LEAST QUARANTINED IN A PARTICULAR AREA.

25          SO, AGAIN, THERE'S ALL THESE ROADBLOCKS BEING ERECTED FOR

1    WHAT SHOULD BE AN ENTIRELY SIMPLE PROCESS OF PRODUCING -- ALL

2    WE WANT ARE THE MATERIALS FROM NINGBO SUNNY AND SYNTA.

3        WE DON'T NEED THE ORION MATERIALS.  WE DON'T NECESSARILY

4    WANT THOSE.  WE CAN TALK ABOUT THEM.  THEY MAY OTHERWISE BE

5    RESPONSIVE TO OUR SUBPOENA.

6        BUT, YOU KNOW, TO THE EXTENT THERE ARE REASONABLE COSTS,

7    WE'RE HAPPY TO SHARE THOSE WITH THE PARTIES.

8        I DO WANT TO NOTE, THOUGH, THAT COST SHIFTING ISN'T

9    APPROPRIATE IN ALL CASES, AND IF THERE WERE ONE CASE WHERE YOU

10   WOULD THINK COST SHIFTING WOULDN'T BE APPROPRIATE, IT WOULD BE

11   WHERE ALL YOU'RE DOING IS REPRODUCING MATERIAL THAT'S ALREADY

12   BEEN PRODUCED, BECAUSE IF COST SHIFTING HAS TO OCCUR IN THAT

13   CIRCUMSTANCE, PRETTY MUCH EVERY THIRD PARTY SUBPOENA THERE

14   SHOULD BE COST SHIFTING THEN.

15       THE COURT:  WELL, NOT EVERY THIRD PARTY SUBPOENA

16   WOULD COST AS MUCH MONEY AND BE AS EXTENSIVE.  THAT'S THE REAL

17   ISSUE.

18       SO I APPRECIATE YOUR POINT.  I DON'T WANT TO CUT YOU OFF

19   SINCE I MADE YOU WAIT UNTIL THE END, BUT IS THERE ANYTHING ELSE

20   YOU WOULD LIKE TO ADD IN TERMS OF YOUR CLIENT'S POSITION?

21       MR. ZAPALA:  I JUST THINK THAT OFTENTIMES THERE'S A

22   LOT OF POSTURING THAT OCCURS IN THESE CIRCUMSTANCES.  I THINK

23   THE BEST THING TO DO IS TO GET THE EXPERTS TOGETHER, AND THOSE

24   ARE THE VENDORS, TO WORK THROUGH THESE MATERIALS.

25       I'M FAIRLY CONFIDENT THAT THE ISSUES ARE NOT AS COMPLEX AS

1      THEY'RE BEING MADE OUT TO BE AND THAT WE CAN CUT THROUGH A LOT

2      OF THIS, BOTH IN TERMS OF TIME AND COSTS, IF WE GOT THE PEOPLE

3      WHO REALLY UNDERSTAND THIS STUFF TOGETHER TO WORK THIS OUT.

4           I WOULD BE VERY SURPRISED -- SOMETIMES WHEN LAWYERS GET

5      INVOLVED, IT MAKES IT MORE COMPLICATED AND MORE LAYERS.

6           SO I THINK THE COURT'S SUGGESTION IN THAT REGARD IS RIGHT.

7      I THINK WE NEED MORE INFORMATION BEFORE WE CAN MAKE DECISIONS

8      ABOUT WHERE WE'RE GOING IN TERMS OF COST SHARING AND ALL THE

9      REST.

10          THE COURT:  OKAY.  THANK YOU VERY MUCH.

11          MR. ZAPALA:  THANK YOU, YOUR HONOR.

12          THE COURT:  NOW, MR. BORDEN, YOU WANTED TO ADDRESS

13     SOME POINTS.

14          MR. BORDEN:  WELL, I THINK MR. ZAPALA JUST KIND OF

15     REPEATED STUFF THAT'S ALREADY BEEN SAID, AND I -- YOU KNOW, WE

16     AGREE THAT IN -- THAT HAVING THE VENDORS TALK IS PROBABLY THE

17     BEST IDEA.

18          BUT IN TERMS OF THE TRIAL -- I MEAN, FIRST OF ALL, I DON'T

19     KNOW IF YOU'VE SEEN THE APPEAL, BUT IT'S -- YOU KNOW, IT VERGES

20     ON FRIVOLOUS.

21          BUT MORE IMPORTANTLY, EVEN IF THE CASE WERE TO COME BACK,

22     WE HAVE THE TRIAL DOCUMENTS AND SO THAT'S WHAT WE WOULD BE

23     USING.  WE WOULDN'T BE GOING BACK THROUGH, YOU KNOW, MILLIONS

24     OF PAGES OF DOCUMENT PRODUCTIONS AND STUFF LIKE THAT TO GO PUT

25     THIS THING BACK TOGETHER ANEW.

1          SO I THINK THAT'S KIND OF, I DON'T KNOW, LIKE A, JUST A

2     RED HERRING.

3               MR. ZAPALA:  IF I MAY, I MEAN, THIS IS A CLASS CASE.

4     IT'S DIFFERENT THAN THE ORION CASE.  I WOULD BE SHOCKED IF

5     THERE'S A PERFECT VEN DIAGRAM OVERLAP BETWEEN THE MATERIALS

6     THAT MR. BORDEN PLANS ON USING IN THIS LITIGATION VERSUS THE

7     PREVIOUS LITIGATION.

8          THERE'S GOING TO BE MATERIAL THAT HE'LL WANT FOR CLASS

9     CERTIFICATION PURPOSES THAT HE MAY NOT HAVE USED AT TRIAL FOR

10    LIABILITY PURPOSES IN THE ORION CASE.

11         I MEAN, THE IDEA THAT IT'S JUST A PERFECT OVERLAP I THINK

12    IS, IS -- I'M VERY SKEPTICAL OF THAT.

13              THE COURT:  ALL RIGHT.

14              MR. BORDEN:  AND JUST --

15              THE COURT:  THAT MAY BE.

16              MR. BORDEN:  JUST -- I'M SORRY, YOUR HONOR.

17              THE COURT:  THAT'S OKAY.

18              MR. BORDEN:  I SORT OF AGREE WITH THAT, AND THAT'S

19    WHY I DON'T WANT TO COMMIT ONE WAY OR ANOTHER.

20         WE -- YOU KNOW, IT SEEMS LIKE TO SAY THAT WE'RE NOT GOING

21    TO USE A BIG CATEGORY OF MATERIALS IS KIND OF -- IT'S KIND OF

22    BROAD AND SWEEPING AT THIS POINT.

23         I WOULD SAY ONE OTHER THING, WHICH IS, YOU KNOW, WHAT WE

24    SHOWED AT TRIAL WAS THAT NINGBO SUNNY HAD CONSPIRED WITH

25    CELESTRON AND THAT NINGBO SUNNY HAD CONSPIRED WITH SYNTA, AND

1    SO, YOU KNOW, THOSE DOCUMENTS ARE, YOU KNOW, STUFF THAT WE

2    ALREADY PRODUCED AND THAT WAS THE 11,000 PAGES OF MATERIALS

3    THAT WE DID PRODUCE, YOU KNOW, THE DPP'S PRODUCED.

4         AND, YOU KNOW, THE REMAINDER OF THE STUFF THAT WE'RE GOING

5    TO PROVE IN THIS CASE, I THINK WE CAN, YOU KNOW, PROVE FROM THE

6    MATERIALS THAT CELESTRON HASN'T PRODUCED WHICH WE ASKED FOR

7    AND, YOU KNOW, SERVED DOCUMENT REQUESTS FOR BACK IN AUGUST.

8              THE COURT:  OKAY.  SO PUTTING THAT ISSUE TO THE

9    SIDE -- I APPRECIATE YOUR OBSERVATION, MR. BORDEN -- BUT IT

10   DOES SEEM TO ME THAT THE NEXT STEP IN THE PROCESS, AT LEAST

11   WITH RESPECT TO REQUESTS NUMBER 1 AND 2, IS WE HAVE TO GET THE

12   ESI VENDORS TO TALK TO EACH OTHER.

13        AND I WILL SAY THAT MY EXPECTATION IS CERTAINLY THAT THE

14   DEFENDANT'S ESI VENDOR TALKS TO THE ULD FOLKS, WHO HANDLED THE

15   ORION LITIGATION PRODUCTION ON BEHALF OF ORION, BUT ALSO I

16   DON'T WANT TO DISCOURAGE OR PRECLUDE MR. ZAPALA'S ESI VENDOR,

17   IF YOU WISH TO INVOLVE SUCH A PERSON IN THAT TASK, YOU DON'T

18   HAVE TO, BUT IF YOU WOULD LIKE TO HAVE INPUT INTO THAT PROCESS,

19   I THINK IT WOULD BE APPROPRIATE FOR YOUR VENDOR ALSO TO

20   PARTICIPATE.

21        I DON'T WANT TO MAKE THINGS WORSE OR MORE COMPLICATED, BUT

22   I DO THINK THAT IT'S IMPORTANT, SINCE IT SEEMS LIKE THIS

23   COLLECTION OF PARTIES IS POTENTIALLY INTERESTED IN THESE

24   MATERIALS, THAT, YOU KNOW, WE GET EVERYONE THINKING ABOUT WHAT

25   THE MOST EFFICIENT PROCESS IS.

1        AND IF IT TURNS OUT, FOR EXAMPLE, THAT THE IPP FOLKS NEED

2   ONLY A SUBSET OF THIS MATERIAL AND WOULD BE SATISFIED WITH

3   THAT, THEN, YOU KNOW, MAYBE THAT CAN BE HANDLED IN A SEPARATE

4   WAY.  I DON'T KNOW IF I UNDERSTOOD MR. ZAPALA TO BE SUGGESTING

5   PRECISELY THAT, BUT IF THERE IS A MORE LIMITED SUBSET THAN WHAT

6   THE DEFENDANTS HAVE ASKED FOR, FINE.

7        SO I WOULD LIKE FOR YOU ALL TO DO THIS, AND I WOULD LIKE

8   FOR YOU TO DO IT PROMPTLY.  AND I -- IT PROBABLY IS APPROPRIATE

9   FOR YOU ALL TO COME BACK AND TALK TO ME ABOUT IT AFTERWARDS.

10       SO LOOKING AT THE CALENDAR, YOU ALL ARE STARTING TO DO

11   YOUR DEPOSITIONS, ACCORDING TO THIS OTHER DOCUMENT THAT I HAVE,

12   IN APRIL.

13       WOULD YOU BE ABLE TO REPORT BACK ON YOUR FURTHER EFFORTS

14   BY FRIDAY, MARCH 12TH?  AND THEN WE COULD SET ANOTHER STATUS ON

15   THIS ISSUE IF NECESSARY.  IF YOU'VE ALL WORKED IT OUT AND

16   NEGOTIATED A RESOLUTION TO EVERYTHING, THEN YOU CAN JUST LET ME

17   KNOW.

18       BUT IF YOU SEND ME A STATUS REPORT ON MARCH 12TH AND THEN

19   WE HAVE A FURTHER PROCEEDING ON THE 16TH AT 10:00 A.M., DOES

20   THAT WORK FOR EVERYONE?

21       LET ME ASK MR. FLAHERTY FIRST ON BEHALF OF ORION.

22            MR. FLAHERTY:  YES, YOUR HONOR, THAT WOULD BE FINE.

23            THE COURT:  OKAY.  THEN LET ME ASK MR. BORDEN ON

24    BEHALF OF THE DPP PLAINTIFFS, DOES THAT WORK?

25            MR. BORDEN:  THAT WORKS.  THAT'LL WORK FOR ONE OF US.

1          THE COURT:  OKAY.  VERY GOOD.

2       LET ME ASK MR. FROST, DOES THAT WORK?

3          MR. FROST:  THAT DOES, YOUR HONOR.  THANK YOU.

4          THE COURT:  OKAY.  AND MR. ZAPALA ON BEHALF OF THE

5    DPP -- IPP PLAINTIFFS.

6          MR. ZAPALA:  YES, YOUR HONOR.  THANK YOU VERY MUCH.

7          THE COURT:  OKAY, GREAT.  SO YOU ARE ORDERED TO HAVE

8    YOUR ESI VENDORS MEET AND CONFER.

9       WE'LL HAVE A FURTHER STATUS REPORT ON MARCH 12TH AND A

10   FURTHER HEARING MARCH 16TH.

11      ALL RIGHT.  NOW, I DID NOT TALK TO YOU ABOUT REQUEST FOR

12   PRODUCTION NUMBER 3, BUT I TAKE IT THAT THAT HAS -- THE

13   PRODUCTION HAS HAPPENED, IT'S ALL DONE, THERE ARE NO FURTHER

14   DISPUTES.

15      IS THAT CORRECT, MR. FLAHERTY, FOR ORION?

16          MR. FLAHERTY:  MY UNDERSTANDING IS THAT THE NINTH

17   CIRCUIT RECORD, WHICH INCLUDES THE TRIAL TRANSCRIPTS AND TRIAL

18   EXHIBITS, HAS BEEN PRODUCED.  THEY DID NOT COME THROUGH MY

19   OFFICE FOR PRODUCTION.  IT WAS HANDLED DIRECTLY BY THE

20   BRAUNHAGEY FIRM.  SO I'VE HEARD FROM NO ONE ON CATEGORY 3 --

21          THE COURT:  OKAY.

22          MR. FLAHERTY:  -- AFTER OUR MEET AND CONFER.

23          THE COURT:  ALL RIGHT.  THANK YOU.

24      MR. FROST, ARE YOU SATISFIED THAT CATEGORY 3 HAS BEEN

25   TAKEN CARE OF?

1          MR. FROST:  WE ARE GOING THROUGH THE DOCUMENTS THAT

2    WE RECEIVED AS QUICKLY AS WE CAN.  THE MANNER IN WHICH THEY ARE

3    ORGANIZED, OR MORE APPROPRIATELY, NOT ORGANIZED, MAKES IT A

4    LITTLE BIT OF A CHALLENGE.  BUT AS SOON AS WE GET THROUGH IT,

5    WE'LL REPORT BACK.

6          RIGHT NOW I'M HOPEFUL THAT WE DON'T HAVE ANY FURTHER

7    DISPUTES AND THAT IT'S ALL IN THERE, BUT I'LL BE ABLE TO REPORT

8    FURTHER ONCE WE FINISH THAT, AND WE CAN INCLUDE THAT IN OUR

9    MARCH 12TH REPORT.

10          THE COURT:  ALL RIGHT.  AND THEN I GUESS TO KIND OF

11    CLOSE THINGS OUT, IT WAS REPORTED TO ME THAT THE PARTIES ARE

12    STILL DISCUSSING AS NECESSARY WHAT, IF ANY, DOCUMENTS IN RFP'S

13    4 THROUGH 25 MIGHT STILL BE AT ISSUE.  I AM GOING TO TREAT

14    THAT, THAT PART OF THE ORIGINAL DISCOVERY DISPUTE AS REQUIRING,

15    YOU KNOW, A FURTHER LETTER BRIEF IF THERE'S SOMETHING MORE THAT

16    YOU ALL NEED TO HAVE ME ATTEND TO.  I JUST THINK THAT WILL BE A

17    SIMPLER APPROACH.

18          YOU DON'T NEED TO KEEP SENDING ME STATUS REPORTS.  I

19    UNDERSTAND THAT YOU ALL ARE TRYING TO NEGOTIATE A SORT OF

20    NARROWED SCOPE.  IF ANY IS REQUIRED FOR THOSE, THEY MAY BE

21    ENCOMPASSED BY, OR LARGELY ENCOMPASSED BY THE OTHER REQUESTS

22    FOR PRODUCTION WE'VE BEEN TALKING ABOUT.

23          BUT IF THERE IS SOME FURTHER DISPUTE AS TO THOSE MATTERS,

24    I'M GOING TO ASK YOU TO DEAL WITH THOSE SEPARATELY IN A

25    SEPARATE LETTER BRIEF.  OKAY?

1          MR. FROST:  YES, YOUR HONOR.

2          JUST SO YOU'RE AWARE, WHEN WE SPOKE TO MR. FLAHERTY AROUND

3     THAT ISSUE, HE HAD SUGGESTED THAT WE WAIT UNTIL WE GET THE

4     ORION PRODUCTION TO REVISIT THOSE TOPICS.

5          WE HAVE SENT NARROWED TOPICS, BUT I THINK WE'VE ALL PUT A

6     PIN IN THAT UNTIL WE SEE THE ACTUAL ORION PRODUCTION.

7          SO JUST FOR YOUR INFORMATION, WE CAN TAKE THAT APPROACH.

8     IT'S GOING TO BE A MINUTE BEFORE YOU HEAR FROM US AGAIN, IF AT

9     ALL --

10          THE COURT:  THAT'S FINE.

11          MR. FROST:  -- JUST BECAUSE OF THE LAYERED APPROACH

12     THAT -- I FIGURED YOU WOULDN'T HAVE ANY OBJECTION TO THAT.

13          THE COURT:  NO, I THINK THAT'S A SENSIBLE WAY TO

14     PROCEED.  I'D RATHER NOT HEAR FROM YOU ALL ABOUT A DISPUTE

15     UNLESS YOU'VE EXHAUSTED YOUR EFFORTS TO RESOLVE IT AMONGST

16     YOURSELVES, SO THAT SEEMS LIKE A GOOD COURSE.

17          ALL RIGHT.  SO FOR PURPOSES OF THE DISPUTE CONCERNING

18     CELESTRON'S SUBPOENA TO ORION, IS THERE ANYTHING FURTHER?

19          LET ME ASK MR. FLAHERTY.

20          MR. FLAHERTY:  I'M NOT CLEAR ON WHERE THE COURT ENDED

21     UP ON THE COST SHARING ISSUE.

22          THE COURT:  OKAY.  SO I'M NOT GOING TO DECIDE ON THE

23     COST SHARING UNTIL I FIGURE OUT WHAT THE COSTS ARE THAT NEED TO

24     BE SHARED, AND I THINK YOU ALL NEED TO DO SOME FURTHER WORK.

25     I'VE SHARED MY INCLINATION TO REQUIRE SOME COST SHARING AMONG

1    SOME SET OF YOU ALL IF IT REALLY IS THE TENS OF THOUSANDS OF

2    DOLLARS.

3         IF IT'S SOMETHING MORE MODEST, WELL, THEN WE'LL SEE.  IT

4    MAY NOT BE AN UNREASONABLE BURDEN ON ORION, AND THAT'S REALLY

5    THE QUESTION FOR THE COURT ON THIRD PARTY SUBPOENAS, IS IT AN

6    UNREASONABLE BURDEN ON THE PARTY?

7         SO I DON'T FEEL I'M IN A POSITION TO MAKE THAT ASSESSMENT

8    RIGHT NOW, ALTHOUGH I DO APPRECIATE THE EFFORTS THAT YOU WENT

9    THROUGH TO OBTAIN THE ESTIMATE.  I JUST THINK WE NEED THIS

10   FURTHER STEP IN ORDER TO RESOLVE THAT ISSUE.

11         MR. FLAHERTY:  THANK YOU.

12         THE COURT:  ALL RIGHT.  ANYTHING FURTHER FROM THE

13   DEFENDANTS, MR. FROST, ON THIS ISSUE, ON THIS SUBPOENA ISSUE?

14         MR. FROST:  NOTHING FURTHER, YOUR HONOR.  THANK YOU.

15         THE COURT:  OKAY.  SO WHAT I'M GOING TO DO THEN IS

16   EXCUSE COUNSEL FOR ORION BECAUSE THE OTHER MATTERS THAT WE HAVE

17   TO ATTEND TO DO NOT INVOLVE ORION.

18         SO YOU'RE FREE TO GO, MR. FLAHERTY, BUT I THINK ALL THE

19   OTHER PARTIES NEED TO STAY.  OKAY?

20         MR. FLAHERTY:  OKAY.  THANK YOU.

21         THE COURT:  ALL RIGHT.  THANK YOU.

22     (MR. FLAHERTY LEAVES THE ZOOM PROCEEDING.)

23         THE COURT:  ALL RIGHT.  SO NOW WE'RE GOING TO TURN TO

24   THE DISPUTE CONCERNING THE PROTECTIVE ORDER, AND AS I

25   UNDERSTAND IT, THIS IS A PROPOSED PROTECTIVE ORDER TO BE

1    SUBMITTED IN BOTH CASES, 20-3642 AND 20-3639.  IS THAT CORRECT?

2         MS. CHAN:  YES, YOUR HONOR.

3         THE COURT:  OKAY.  ALL RIGHT.

4    ALL RIGHT.  SO TAKING FIRST THIS QUESTION OF SECTION

5    5.2(D), IT APPEARS THAT THE ONLY DIFFERENCE BETWEEN YOUR

6    RESPECTIVE PROPOSALS IS THAT THE PLAINTIFFS WANT THE

7    NON-PRODUCING PARTY WHO BELIEVES MATERIAL OUGHT TO BE

8    DESIGNATED CONFIDENTIAL TO MAKE A SHOWING THAT THE INFORMATION

9    WARRANTS THAT PROTECTION.

10        SO MY FIRST QUESTION IS, WHAT -- WHAT IS THE -- WHAT IS

11   THE -- WHAT IS CONTEMPLATED IN TERMS OF THE SHOWING THAT MUST

12   BE MADE?  DO YOU MEAN TO MAKE A MOTION TO THE COURT AND GET A

13   RULING, OR DO YOU MEAN YOU MUST WRITE US A LETTER EXPLAINING

14   WHY IT'S CONFIDENTIAL AND SHOULD BE TREATED AS SUCH UNDER THE

15   PROTECTIVE ORDER?

16        MS. CHAN:  THANK YOU, YOUR HONOR.

17        SO WE REFERRED TO IT IN OUR PAPERS, BUT BASICALLY WE'D

18   JUST LIKE TO UNDERSTAND WHY THE DESIGNATING PARTY BELIEVES THAT

19   THE DOCUMENT WAS CONFIDENTIAL.  SO THAT COULD BE ACCOMPLISHED

20   THROUGH A PHONE CALL OR A LETTER.

21        WE JUST WANT TO HAVE SOME ASSURANCE THAT THERE'S A GOOD

22   REASON, FOR INSTANCE, BANKING -- BANKING DOCUMENTS, WE CAN

23   UNDERSTAND WHY THOSE TYPES OF MATERIALS MIGHT BE CONFIDENTIAL

24   AND WE WOULDN'T HAVE A PROBLEM WITH THAT.

25        SO IN THE FIRST INSTANCE, WE'D LIKE THE PARTIES TO TALK TO

```
1      EACH OTHER.

2              THE COURT:  RIGHT.  BUT YOU'RE NOT PROPOSING TO

3      REQUIRE THAT THERE BE A RULING FROM THE COURT?  BECAUSE -- SO

4      WHEN I'M LOOKING AT YOUR POSITION STATEMENT IN THE JOINT

5      LETTER, IT APPEARS TO SUGGEST THAT IF A NON-PARTY WANTS TO

6      DESIGNATE MATERIAL AS CONFIDENTIAL, THERE HAS TO BE A MEET AND

7      CONFER; AND THEN IF THE RESOLUTION CAN'T BE ACHIEVED, THE

8      NON-PARTY HAS TO MOVE FOR AN ORDER OF THE COURT BEFORE THE

9      MATERIAL CAN BE DESIGNATED CONFIDENTIAL.

10          SO IT DOES SOUND LIKE THERE HAS TO BE A RESOLUTION BY THE

11     COURT BEFORE THERE CAN BE SUCH A DESIGNATION, AND THAT'S WHAT

12     YOUR PROPOSAL ENVISIONS; IS THAT RIGHT?

13             MS. CHAN:  I -- I UNDERSTAND THE CONCERN.

14          I THINK THAT, YES, IF WE CAN'T COME TO A RESOLUTION, THEN

15     THE PARTY WOULD NEED TO GO TO THE COURT.

16             THE COURT:  AND MEANWHILE, THE DOCUMENT IS NOT

17     DESIGNATED?

18             MS. CHAN:  I -- WHAT WE HAD CONTEMPLATED IS THAT WE

19     WOULD PROVISIONALLY DESIGNATE ALL DOCUMENTS AS CONFIDENTIAL

20     THAT A DESIGNATING PARTY WOULD SEEK TO DESIGNATE AS

21     CONFIDENTIAL UNTIL THE ISSUE IS RESOLVED, AND THEN IF IT'S

22     STILL CONFIDENTIAL, WE WOULD CONTINUE TO TREAT IT AS SUCH.

23             THE COURT:  ALL RIGHT.  SO THAT'S SLIGHTLY DIFFERENT

24     THAN WHAT I UNDERSTOOD YOUR POSITION WAS FROM THE PAPERS.

25          SO UNDER PLAINTIFF'S VERSION OF 5.2(D), IF A NON-PRODUCING
```

1    PARTY DESIGNATES SOME OTHER PARTY'S MATERIAL, PRODUCED BY SOME

2    OTHER PARTY, AS CONFIDENTIAL, IT WILL BE PRESUMPTIVELY

3    DESIGNATED CONFIDENTIAL UNTIL THERE'S RESOLUTION OF THE

4    DISPUTE?

5            MS. CHAN:  CORRECT.

6            THE COURT:  OKAY.  WELL, THEN, HOW IS THAT DIFFERENT

7    FROM WHAT THE DEFENDANTS PROPOSE AND THE OPERATION OF THE

8    PROTECTIVE ORDER AS IT WOULD ORDINARILY FUNCTION, WHICH IS, IF

9    YOU DON'T LIKE SOMEBODY'S DESIGNATION, YOU HAVE TO WORK IT OUT

10   AMONGST YOURSELVES OR MAKE AN APPLICATION TO THE COURT TO HAVE

11   IT DEDESIGNATED?  LIKE, HOW IS IT ANY DIFFERENT?

12           MS. CHAN:  IT IMPOSES A, AN EARLIER MEET AND CONFER

13   REQUIREMENT SUCH THAT PARTIES CAN'T JUST DESIGNATE SOMETHING AS

14   CONFIDENTIAL WITHOUT MEETING AND CONFERRING WITH US AT THE

15   OUTSET.

16       I THINK WHAT THE REGULAR MODEL PROTECTIVE ORDER IS

17   DESIGNED TO DO IS PRESERVE OBJECTIONS, BUT NOT HAVE THOSE

18   ISSUES PLAY OUT EARLY ON.

19           AND WHAT WE'RE CONCERNED ABOUT HERE WITH NON-PRODUCING

20   PARTIES DESIGNATING DOCUMENTS OTHER PARTIES ARE PRODUCING IS

21   JUST OVER-DESIGNATION, AND WE THINK THAT THERE IS LESS OF A

22   CLEAR PRESUMPTION OF CONFIDENTIALITY HERE WHERE THERE'S MORE

23   THAN ONE PARTY WHO ALREADY HAS THE DOCUMENT, AND SO THAT'S WHAT

24   WE'RE CONCERNED ABOUT.

25           THE COURT:  SO WHAT YOU'RE SAYING IS THAT IN THIS

1    SITUATION, AS PLAINTIFFS PROPOSE, THAT WHAT SHOULD HAPPEN IS

2    THE DEFENDANTS SHOULD SAY, WITHIN THEIR 21 DAY PERIOD, "THESE

3    DOCUMENTS THAT YOU PRODUCED, OR THIS NON-PARTY PRODUCED, SHOULD

4    BE DESIGNATED CONFIDENTIAL BECAUSE" AND GIVE A REASON.

5              MS. CHAN:  YES.

6              THE COURT:  AS OPPOSED TO "THESE DOCUMENTS SHOULD BE

7    DESIGNATED CONFIDENTIAL," FULL STOP.

8              MS. CHAN:  CORRECT.

9              THE COURT:  OKAY.  ALL RIGHT.  BUT IN EITHER EVENT,

10   IF THERE IS A REASON GIVEN, IT WILL BE PRESUMPTIVELY DESIGNATED

11   CONFIDENTIAL UNTIL SOMEONE -- ME -- DECIDES IT SHOULDN'T BE?

12             MS. CHAN:  I THINK IT WOULD BE, OR IF, IF THE PARTIES

13   AGREE, "LOOK, THIS IS A BANKING DOCUMENT AND WE UNDERSTAND YOUR

14   PERSPECTIVE."

15             THE COURT:  OKAY.  SO I WOULD LIKE TO UNDERSTAND WHAT

16   KIND OF INFORMATION YOU ALL CONTEMPLATE THIS PROVISION MIGHT

17   ENCOMPASS.  YOU KNOW, WHAT IS THE SCENARIO IN WHICH, GIVEN THE

18   NATURE OF THE PARTIES AND THE DOCUMENTS YOU EXPECT TO EXCHANGE,

19   WHERE THIS ISSUE WOULD COME UP?

20             MS. CHAN:  FROM MY PERSPECTIVE, IT'S UNCLEAR WHAT

21   TYPES OF DOCUMENTS MIGHT FALL UNDER THIS CATEGORY.  I CAN

22   IMAGINE THAT PERHAPS A BANKING RECORD COULD BE DESIGNATED

23   CONFIDENTIAL, OR SOME SORT OF INTELLECTUAL PROPERTY THAT A

24   PARTY WANTS TO KEEP CONFIDENTIAL.

25             THE COURT:  I GUESS -- YEAH, LET ME ASK IT A SLIGHTLY

1      DIFFERENT WAY.  SO LET'S SAY YOUR CLIENTS ARE PRODUCING

2      SOMETHING THAT THE DEFENDANTS THINK IS CONFIDENTIAL AND YOU

3      DIDN'T DESIGNATE IT CONFIDENTIAL.

4          WHAT KIND OF -- YOU KNOW, THE EXAMPLE GIVEN IN THE PAPERS

5      IS, WELL, YOU KNOW, THERE WOULD BE INFORMATION EXCHANGED BY

6      CONTRACTING PARTIES THAT WOULD BE SUBJECT TO A CONFIDENTIALITY

7      AGREEMENT OUTSIDE OF THIS LITIGATION, YOU KNOW, A

8      BUSINESS-RELATED CONFIDENTIALITY OBLIGATION.

9          SO IS THE ISSUE THAT YOUR CLIENTS MIGHT PRODUCE SOMETHING

10     IN BREACH OF THAT CONFIDENTIAL AGREEMENT, OR DISPUTE THAT IT

11     WAS COVERED BY THAT CONFIDENTIAL AGREEMENT, AND THEN THE

12     DEFENDANTS WOULD HAVE AN ISSUE WITH THAT?  IS THAT SORT OF THE

13     SCENARIO WE'RE CONTEMPLATING?

14         MS. CHAN:  I CAN'T THINK OF ANY DOCUMENT THAT OUR

15     CLIENTS WOULD PRODUCE THAT ANOTHER PARTY WOULD WISH TO KEEP

16     CONFIDENTIAL.

17         WHERE I CAN THINK OF THIS COMING INTO PLAY IS, FOR

18     INSTANCE, IF ORION WERE TO PRODUCE A DOCUMENT SHOWING AN E-MAIL

19     THAT ALLEGEDLY SHOWS COLLUSION BETWEEN TWO OF THE DEFENDANTS

20     HERE, AND OUR VIEW IS THAT IF IT'S JUST COLLUSION, THAT'S NOT

21     CONFIDENTIAL, THAT'S JUST POTENTIALLY ILLEGAL, AND WE CAN

22     UNDERSTAND ANOTHER PARTY MAY WANT TO DESIGNATE IT CONFIDENTIAL

23     SO THAT IT DOESN'T GET INTO THE PUBLIC RECORD.

24         THE COURT:  I SEE.  OKAY.  THAT'S HELPFUL.

25         SO LET ME ASK MR. FROST FOR HIS VIEWS ON THIS ISSUE.

1    5.2(D), WHAT IS -- LET ME JUST START WITH THE QUESTION OF WHAT

2    KIND OF INFORMATION ARE YOU CONCERNED ABOUT NEEDING TO

3    DESIGNATE THAT WOULDN'T ALREADY BE DESIGNATED?

4         MR. FROST:  SURE.  FINANCIAL AND COMPETITIVELY

5    SENSITIVE INFORMATION THAT IS RECEIVED BY A THIRD PARTY IN

6    RESPONSE TO A SUBPOENA, FOR INSTANCE; A SUPPLY AGREEMENT;

7    FINANCIAL INFORMATION REGARDING PRICING, REGARDING AVAILABILITY

8    OF SUPPLY.

9         ALL OF THOSE ISSUES ARE COMPETITIVELY SENSITIVE, AND WHEN

10   YOU'RE TALKING ABOUT AN ISSUE WHERE THE PLAINTIFF, THE OTHER

11   PLAINTIFF CLASS, THE DPP'S, ARE IN MANY WAYS ALSO OUR

12   COMPETITORS, THAT CAUSES US A SUBSTANTIAL AMOUNT OF HEARTBURN.

13        WE HAVE NO INTEREST IN OVER-DESIGNATING.

14        BUT WHAT IT SOUNDS LIKE WE'RE TRYING TO DO IS PREEMPTIVELY

15   SOLVE FOR ISSUES WE DON'T HAVE IN FRONT OF US.  IF WE GET TO A

16   POINT, WE CAN REVISIT IT.

17        BUT I DON'T SEE ANY ISSUE UNDER THIS WHERE THE PROTECTIVE

18   ORDER NEEDS TO BE TREATED DIFFERENTLY FOR THAT TYPE OF

19   INFORMATION THAN IT WOULD WITH ANY OTHER.  IT JUST --

20        THE COURT:  SO CAN I JUST ASK YOU --

21        MR. FROST:  OF COURSE.

22        THE COURT:  -- I DON'T THINK I UNDERSTAND WHAT YOU

23   WERE SAYING.

24        SO YOU'RE WORRIED THAT THE PLAINTIFFS WILL SERVE A

25   SUBPOENA ON A THIRD PARTY, THE THIRD PARTY WILL FAIL TO

1    DESIGNATE, PLAINTIFFS WON'T DESIGNATE, AND THEN YOU'LL FIND

2    THAT IT INCLUDES CONFIDENTIAL INFORMATION OR COMPETITIVELY

3    SENSITIVE INFORMATION OF YOUR CLIENT?

4              MR. FROST:  CORRECT.

5              THE COURT:  IS THAT WHAT YOU'RE WORRIED ABOUT?

6              MR. FROST:  CORRECT.

7              THE COURT:  ALL RIGHT.  WELL, ONE OBSERVATION IS

8    TOTALLY TRUE, WHICH IS THAT PROTECTIVE ORDERS ARE NOT DESIGNED

9    TO DEAL WITH PARTICULAR DOCUMENTS.  THEY ARE PROSPECTIVE, AT

10   LEAST THIS KIND OF PROTECTIVE ORDER, AND THE WHOLE POINT OF

11   THEM IS TO MAKE IT EASY AND STREAMLINED FOR THE PARTIES AND THE

12   COURT TO DEAL WITH DISCOVERY WITHOUT BARRIERS.

13             MR. FROST:  RIGHT.

14             THE COURT:  SO LET ME JUST ASK YOU, MR. FROST,

15   THIS -- THE UNDERSTANDING THAT MS. CHAN ARTICULATED IS THAT

16   PLAINTIFF'S VERSION REQUIRING A SHOWING WOULD SIMPLY REQUIRE

17   YOU TO SAY, ON BEHALF OF YOUR CLIENTS, "THIS INFORMATION --

18   THIS DOCUMENT INCLUDES CONFIDENTIAL INFORMATION THAT'S SUBJECT

19   TO AN UNDERLYING AGREEMENT."

20        YOU WOULD ALREADY HAVE TO SAY, "WE WANT TO DESIGNATE THIS

21   CONFIDENTIAL," AND THEY'RE SAYING, "GIVE ME A REASON."

22        WHAT'S WRONG -- WHAT IS PROBLEMATIC ABOUT THAT?

23             MR. FROST:  WE DON'T HAVE A PROBLEM DOING THAT.

24        THE PROBLEM IS THE PROPOSAL THEY'VE GIVEN YOU DOES NOT SAY

25   THAT.  IT SAYS EXACTLY THE WAY YOU READ IT, WHICH IS IT'S NOT

1    CONFIDENTIAL UNTIL THE COURT DETERMINES THAT IT IS.

2         SO WITH THAT UNDERSTANDING, I THINK WE WOULD HAVE TO DO A

3    REVISED PROPOSED ORDER.

4         BUT WE DON'T HAVE A PROBLEM IF WE -- YOU KNOW, IN THE

5    SPIRIT OF COMPROMISE AND GOOD FAITH, WE CAN -- IF WE NEED TO

6    EXPLAIN, "HERE'S THE REASON WE'RE DESIGNATING IT" AND THAT DOES

7    IT, AND THEN THE REST FOLLOWS THE MODEL PROTECTIVE ORDER, SO BE

8    IT.

9         THE COURT:  OKAY.  THAT SEEMS LIKE A RESOLUTION OF

10    THIS ISSUE AND IT SEEMS LIKE THAT WAS SOMETHING THAT MS. CHAN

11    WOULD FIND ACCEPTABLE ON BEHALF OF HER CLIENT.

12        I DON'T KNOW IF I NEED TO CONSULT WITH -- SINCE THIS IS

13    SORT OF A MUTUAL EFFORT HERE, WHETHER MR. BORDEN WOULD LIKE TO

14    WEIGH IN ON BEHALF OF HIS CLIENT ON THIS ISSUE.

15        MR. BORDEN, LET ME GIVE YOU AN OPPORTUNITY TO ADDRESS THE

16    5.2(D) ISSUE.

17             MR. BORDEN:  THANK YOU, YOUR HONOR.  I APPRECIATE THE

18    OPPORTUNITY.

19        I THINK WE'RE FINE WITH THE RESOLUTION THAT THE COURT HAS

20    COME TO HERE, SO --

21             THE COURT:  YEAH.  OKAY.  WELL, LET'S JUST BE CLEAR

22    ON WHAT THAT IS.  IT SOUNDS LIKE WE'RE ARRIVING AT A RESOLUTION

23    THAT WOULD SPECIFY, IN 5.2(D), THAT THIS PHRASE, "UPON A

24    SHOWING THAT INFORMATION WARRANTS SUCH PROTECTION," WHAT THAT

25    REALLY MEANS IS "WHEN YOU TELL US THAT YOU'RE GOING TO

1    DESIGNATE AND YOU WANT TO DESIGNATE THIS MATERIAL CONFIDENTIAL

2    UNDER THE PROTECTIVE ORDER, YOU WILL PROVIDE A REASON."

3        BUT THEN IT WILL BE SO DESIGNATED UNLESS THE PARTIES, YOU

4    KNOW, AFTER CONFERRING ABOUT IT UNDER THE OTHER PROVISIONS OF

5    THE PROTECTIVE ORDER, CAN'T RESOLVE IT AND COME TO COURT AND

6    GET A CONTRARY ORDER.

7        IF I HAVE MIS -- IF I HAVE MISUNDERSTOOD YOU, MS. CHAN,

8    NOW'S THE TIME TO LET ME KNOW.

9        BUT IF THAT'S AN ACCEPTABLE RESOLUTION FOR BOTH -- FOR ALL

10   PARTIES, THEN I THINK THAT'S WHAT WE SHOULD DO HERE.

11        MS. CHAN:  IT IS.  THANK YOU, YOUR HONOR.

12        THE COURT:  OKAY.  WELL, THEN I'M NOT GOING TO

13   REWRITE IT FOR YOU.  I'M GOING TO SUGGEST THAT YOU ALL TRY TO

14   CRAFT SOMETHING THAT DESCRIBES THAT, THAT PROCEDURE ACCURATELY,

15   AND THEN THAT SHOULD TAKE CARE OF THAT ISSUE.

16        OKAY.  MOVING ON TO 7.3(H), WHICH IS THIS QUESTION OF

17   CLASS REPRESENTATIVES HAVING ACCESS TO HIGHLY CONFIDENTIAL

18   DOCUMENTS THAT ARE FILED WITH THE COURT, AND THAT'S HOW I

19   UNDERSTAND THE SCOPE OF THE DISPUTE, THAT IT'S ONLY HIGHLY

20   CONFIDENTIAL DOCUMENTS.  I DON'T KNOW -- I DID NOT LOOK, IT MAY

21   BE VERY EVIDENT FROM YOUR PROPOSED ORDER, DO THE CLASS

22   REPRESENTATIVES HAVE ACCESS TO MATERIALS THAT ARE MERELY

23   DESIGNATED CONFIDENTIAL?

24        MS. CHAN:  YES, THEY HAVE THAT ACCESS.

25        THE COURT:  OKAY.  SO THIS WOULD BE HIGHLY

1   CONFIDENTIAL, ATTORNEYS' EYES ONLY, AND IT WOULD ONLY BE BY

2   PLAINTIFFS -- BY PLAINTIFF'S PROPOSAL, DOCUMENTS THAT ARE FILED

3   WITH THE COURT UNDER SEAL.

4          MS. CHAN:  CORRECT.

5          THE COURT:  OKAY.  SO LET ME -- LET ME HEAR -- THE

6   THING THAT I'M NOT QUITE SORTED OUT ON THIS PROPOSAL ABOUT IS

7   THAT WHEN YOU FILE SOMETHING UNDER SEAL, YOU HAVE TO, AS BOTH

8   PARTIES RECOGNIZE, MEET THE REQUIREMENTS OF LOCAL RULE 79-5 AND

9   THE NINTH CIRCUIT'S REQUIREMENTS, AND THOSE VARY DEPENDING ON

10  WHETHER IT'S -- YOU KNOW, YOU HAVE TO MEET THE GOOD CAUSE

11  STANDARD OR THE COMPELLING REASONS STANDARD.  IF IT'S JUST FOR

12  A DISCOVERY DISPUTE, YOU ONLY HAVE TO MEET THE GOOD CAUSE

13  STANDARD USUALLY; AND IF IT'S A COMPELLING REASON -- USUALLY IF

14  IT'S SOMETHING THAT'S MATERIAL TO THE LITIGATION, IT'S GOT TO

15  BE A COMPELLING REASON TO KEEP IT SEALED.

16          SO THAT'S SEALED FROM THE PUBLIC.  THAT'S WHAT SEALING IS.

17  IT'S NOT SEALED FROM THE PARTIES.  SO IT'S NOT COEXTENSIVE WITH

18  THE HIGHLY CONFIDENTIAL DESIGNATION.

19          SO ACHIEVING THE GOAL OF FILING SOMETHING UNDER SEAL

20  DOESN'T RESOLVE THE QUESTION OF WHETHER SOMETHING IS

21  APPROPRIATELY DESIGNATED HIGHLY CONFIDENTIAL AND SHOULD OR

22  SHOULD NOT BE ACCESSED BY ANY PARTICULAR PARTY REPRESENTATIVE.

23          SO I WASN'T ENTIRELY CLEAR ON HOW EACH OF YOU WAS USING

24  THE 79 -- THE LOCAL RULE 79-5 ARGUMENT IN YOUR RESPECTIVE

25  FAVORS ON THIS POINT.  I WANTED TO MAKE SURE I UNDERSTOOD WHAT

1      YOU WERE ARGUING.

2          SO, MS. CHAN, I DON'T -- I'LL ASK YOU TO ADDRESS THAT

3      ISSUE FIRST.

4          MS. CHAN:  SURE.  I THINK THIS WAS AN ATTEMPT TO

5      COMPROMISE.  WE UNDERSTAND THAT THERE WILL LIKELY BE MANY, MANY

6      DOCUMENTS THAT ARE DESIGNATED HIGHLY CONFIDENTIAL, AND WE

7      DIDN'T WANT TO ASK THE OTHER SIDE TO STIPULATE TO ALLOWING OUR

8      CLIENTS TO VIEW ALL OF THOSE DOCUMENTS.

9          AND OUR VIEW IS THAT THE MOST IMPORTANT DOCUMENTS THAT WE

10     THINK WOULD GO FARTHEST TO KEEP OUR CLIENTS INFORMED ABOUT THE

11     PROGRESS OF THE LITIGATION WOULD BE THOSE, THAT VERY SMALL

12     SUBSET THAT WE THINK ARE IMPORTANT ENOUGH TO FILE WITH THE

13     COURT.

14         AND WITHIN THAT SUBSET, IT WOULD BE -- THE DOCUMENTS UNDER

15     SEAL WOULD BE THE ONES THAT WERE -- ARE LIKELY DETERMINED TO BE

16     HIGHLY CONFIDENTIAL, BUT IMPORTANT ENOUGH TO PROVIDE TO OUR

17     CLIENTS.

18         SO IT WAS JUST A WAY OF PARING DOWN THE DOCUMENTS IN

19     DISPUTE.

20         THE COURT:  SO I APPRECIATE THE POINT THAT IT'S

21     IMPORTANT TO KEEP, FOR EACH SIDE TO KEEP THEIR RESPECTIVE

22     CLIENTS INFORMED, AND I THINK IT GOES BOTH WAYS.  I THINK THE

23     DEFENDANTS ALSO WILL NEED TO KEEP THEIR CLIENTS INFORMED.

24         IF WHAT YOU ALL ENVISION IS REALLY A VERY SMALL SUBSET OF

25     DOCUMENTS THAT ARE, FIRST OF ALL, HIGHLY CONFIDENTIAL, AND

1       SECOND OF ALL, FILED UNDER SEAL, IF THAT'S A VERY SMALL SUBSET

2       OF ALL HIGHLY CONFIDENTIAL DOCUMENTS, THEN IT STRIKES ME AS NOT

3       TOO BURDENSOME TO SIMPLY ASK ON A CASE-BY-CASE BASIS.

4           THERE ARE MANY WAYS TO KEEP ONE'S CLIENT INFORMED WITHOUT

5       REVEALING THE CONTENTS OF A HIGHLY CONFIDENTIAL DOCUMENT.  AS

6       YOU, I'M SURE, APPRECIATE, THIS COMES UP IN ALL KINDS OF

7       LITIGATIONS, INTELLECTUAL PROPERTY TYPE DISPUTES, OTHER TYPES

8       OF DISPUTES WHERE IT'S FINANCIAL INFORMATION, TRADE SECRET

9       INFORMATION THAT, YOU KNOW, THE PARTIES THEMSELVES CAN'T HAVE

10      DIRECT ACCESS TO.

11          SO I CONFESS, I'M A LITTLE SKEPTICAL ABOUT THE IDEA THAT

12      THIS PROVISION IN THE PROTECTIVE ORDER IS NECESSARY TO AVOID

13      UNDUE COMPLICATION AND BURDEN AND MAYBE SOME BARRIERS TO

14      COMMUNICATION WITH ONE'S CLIENT, AND I'M ALSO A LITTLE

15      SKEPTICAL ABOUT THE PROPOSITION THAT IT WOULD NECESSARILY

16      UNDERMINE ANY WORK PRODUCT PROTECTION OR ANY ATTORNEY-CLIENT

17      PRIVILEGE TO ASK, BECAUSE THE DOCUMENTS THAT YOU WOULD BE

18      ASKING PERMISSION TO SHARE IF I DIDN'T ADOPT YOUR PROPOSAL

19      WOULD BE ONES THAT WERE FILED WITH THE COURT ANYWAY AND FOR

20      WHICH EVERYONE WOULD KNOW WHY THEY ARE RELEVANT.

21          LIKE, THE -- IF IT WERE -- IF YOU WERE ASKING THE

22      DEFENDANTS FOR PERMISSION TO SHARE THEIR HIGHLY CONFIDENTIAL

23      DOCUMENT WITH YOUR CLASS REPRESENTATIVE, IT WOULD BE CLEAR FROM

24      THE FILING WHAT THE PURPORT OF THE DOCUMENT WAS, WHAT IT'S

25      RELEVANT TO, AND WHY IT MATTERS.

1          SO TELLING THEM THAT YOU WOULD LIKE TO SHARE THAT

2    PARTICULAR DOCUMENT WITH YOUR CLASS REPRESENTATIVE DOESN'T SEEM

3    LIKE IT WOULD BE REVEALING ANYTHING THAT WOULD IMPLICATE THE

4    ATTORNEY-CLIENT RELATIONSHIP OR YOUR WORK PRODUCT.

5          THAT WAS MY -- THAT WAS MY SENSE FROM READING YOUR PAPERS,

6    BUT I'D LIKE TO GIVE YOU AN OPPORTUNITY TO RESPOND TO THAT

7    OBSERVATION.

8               MS. CHAN:  I UNDERSTAND THE OBSERVATION.

9          I THINK WHERE THE RUBBER HITS THE ROAD IS THAT I WOULD

10   ANTICIPATE WE WOULD WANT TO SHARE BRIEFING AND UNDERLYING

11   DOCUMENTS RELATED TO DISPOSITIVE MOTIONS, SO THAT WOULD BE

12   MOTIONS TO DISMISS, MOTIONS FOR CLASS CERTIFICATION, SUPPORTING

13   EXPERT REPORTS, AND MOTIONS FOR SUMMARY JUDGMENT.

14         AND IT DOESN'T SEEM LIKE IT SHOULD BE NECESSARY TO ENGAGE

15   IN A LONG MEET AND CONFER PROCESS TO DEAL WITH SHARING THOSE

16   TYPES OF DOCUMENTS WITH OUR CLIENTS.

17              THE COURT:  BUT IN THE CASE OF DISPOSITIVE MOTIONS,

18   YOU WOULD HAVE AN OBLIGATION ANYWAY, BOTH PARTIES WOULD, TO

19   FILE A PUBLIC VERSION OF THE DOCUMENT WITH REDACTIONS, A BRIEF,

20   FOR EXAMPLE, WITH REDACTIONS ON THE PUBLIC RECORD, AND THE ONLY

21   THING THAT YOU WOULD BE PERMITTED TO FILE UNDER SEAL ARE THE

22   ITEMS THAT THE COURT SAID YES TO.

23         SO JUDGE DAVILA WOULD HAVE TO SAY, "YEP, YOU CAN FILE THAT

24   UNDER SEAL," BUT YOU'RE STILL GOING TO HAVE TO FILE EVERYTHING

25   ELSE PUBLICLY AND ANY BRIEFS WILL HAVE TO BE REDACTED.

1    SO YOUR CLIENTS, YOUR RESPECTIVE CLIENTS WOULD SEE THE

2    LEGAL ARGUMENTS, AND, YOU KNOW, IF YOU HAVE TO REDACT SOME, YOU

3    KNOW, FINANCIAL INFORMATION OR SOMETHING LIKE THAT, YOU

4    WOULDN'T HAVE TO DO ANYTHING YOU WOULDN'T OTHERWISE HAVE TO DO

5    ANYWAY FOR THE COURT RECORD IS MY POINT.

6        SO WHY DOES THAT NOT ADDRESS YOUR CONCERN?

7            MS. CHAN:  WELL, THE ONE AREA, AND I WAS THINKING

8    THROUGH THIS ISSUE, BUT THE ONE AREA WHERE I THINK WE WOULD --

9    WE MIGHT HAVE AN ISSUE IS RELATED TO THE EXPERT REPORTS.

10       WE EXPECT THAT THE EXPERTS WILL BE RELYING ON HIGHLY

11   CONFIDENTIAL DOCUMENTS AND THAT THOSE EXPERT REPORTS ARE LIKELY

12   TO BE FILED UNDER SEAL.  WE WOULD PROBABLY LIKE TO SHARE THE

13   DAMAGES ESTIMATES AND HOW OUR EXPERTS AND THEIR EXPERTS GOT TO

14   THEIR NUMBERS IN THE CONTEXT OF, FOR INSTANCE, SETTLEMENT

15   DISCUSSIONS.

16           THE COURT:  UM-HUM.

17           MS. CHAN:  AND I DON'T KNOW THAT THOSE NUMBERS WOULD

18   BE FILED PUBLICLY.

19           THE COURT:  RIGHT.  AND YOU MAY NOT EVEN FILE YOUR

20   EXPERT REPORTS UNLESS YOU GET TO, YOU KNOW, A VERY, VERY LATE

21   STAGE OF THE CASE.  THOSE WILL SIMPLY BE EXCHANGED, AND I GRANT

22   YOU THEY'RE USUALLY DESIGNATED.

23       BUT THAT SEEMS LIKE A PRETTY DISCRETE PROBLEM AND ONE THAT

24   COULD BE ADDRESSED BY MUTUAL AGREEMENT NOW OR AT THE TIME, THAT

25   EACH SIDE WILL CREATE, YOU KNOW, REDACTED VERSIONS OF ITS

1    EXPERT REPORTS, OR SAY, "YES, YOU MAY SHARE THE CONCLUSION THAT

2    THE EXPERT REACHED ABOUT THIS IS THE AMOUNT OF DAMAGES," OR

3    "THIS IS THE" -- WHATEVER THE ASSESSMENT IS, YOU MAY SHARE THAT

4    WITH YOUR CLIENT.

5        THESE ARE HOW THESE THINGS ARE USUALLY HANDLED IN MY

6    EXPERIENCE, AND I DON'T -- IT DOESN'T STRIKE ME THAT IT'S

7    USUALLY NECESSARY TO BAKE IT INTO A PROVISION OF THE EXPERT

8    REPORT THAT SEEMS TO ENCOMPASS -- SORRY -- A PROVISION OF THE

9    PROTECTIVE ORDER THAT SEEMS SORT OF BROADER THAN MIGHT BE

10    NECESSARY TO ADDRESS YOUR VERY LEGITIMATE CONCERNS ABOUT BEING

11    ABLE TO INFORM YOUR CLIENTS ABOUT MEANINGFUL THINGS IN THE

12    LITIGATION.

13        MS. CHAN:  WELL, I THINK GIVEN -- GIVEN YOUR

14    GUIDANCE, IF THE DEFENDANTS ARE WILLING TO AGREE NOW THAT WE

15    CAN SHARE THOSE TYPES OF NUMBERS FROM OUR EXPERTS WITH OUR

16    CLIENTS, THEN WE THINK WE CAN LIVE WITH THE DEFENDANT'S

17    PROPOSAL.

18        THE COURT:  ALL RIGHT.

19        WELL, LET ME JUST GET MR. FROST'S VIEW AND THEN I'LL ASK

20    MR. BORDEN IF HE HAS ANYTHING FURTHER TO ADD.

21        SO ON 7.3(H), YOU KNOW, AS YOU PROBABLY HAVE DISCERNED,

22    MR. FROST, I'M TEMPTED TO JUST GO WITH WHAT I CONSIDER TO BE

23    THE ORDINARY PROVISION HERE, WHICH IS IF IT'S DESIGNATED HIGHLY

24    CONFIDENTIAL AND THE PARTIES HAVE AGREED GENERALLY THAT PARTY

25    REPRESENTATIVES DON'T HAVE ACCESS TO THAT KIND OF MATERIAL,

1   THAT I WOULDN'T MAKE A SPECIAL EXCEPTION NOW, PARTICULARLY FOR

2   THINGS THAT ARE FILED UNDER SEAL WITH THE COURT, BUT INSTEAD

3   RELY ON THE PARTIES TO REASONABLY, YOU KNOW, REDACT THINGS AS

4   NECESSARY OR GIVE PERMISSION TO SHARE INFORMATION THAT IS

5   NECESSARY FOR EACH SIDE'S CLIENTS TO UNDERSTAND WHAT'S GOING ON

6   IN THE LITIGATION, AND CERTAINLY FOR SETTLEMENT DISCUSSION

7   PURPOSES, TO FACILITATE THOSE KINDS OF THINGS.

8        I MEAN, I WOULD EXPECT THE PARTIES TO COOPERATE IN THAT

9   WAY.  BUT I WOULD LIKE SOME -- SO MY INCLINATION FAVORS YOUR

10  POSITION, BUT I WOULD LIKE TO HEAR YOUR PERSPECTIVE ON WHAT

11  I'VE DISCUSSED WITH MS. CHAN.

12         MR. FROST:  I THINK ALL THAT MAKES SENSE.  WE AGREE

13   THE APPROPRIATE APPROACH IS TO, YOU KNOW, FOLLOW THE MODEL

14   PROTECTIVE ORDER AS WRITTEN.

15       BUT I CAN TELL YOU THAT WE HAVE NO INTENTION OF

16  OVER-DESIGNATING, OVER-REDACTING, AND WE WILL CERTAINLY WORK IN

17  GOOD FAITH ON A CASE-BY-CASE BASIS TO DISCUSS WHAT IT IS THAT

18  THEY THINK THEY NEED TO REASONABLY SHARE WITH THEIR CLIENTS AND

19  BE WILLING TO BE VAGUE ENOUGH IN THE CONVERSATION THAT WE DON'T

20  EXPECT THEM TO WAIVE ANY KIND OF PRIVILEGE OR GIVE UP ANY

21  ANALYSIS IN THE PROCESS.

22         THE COURT:  ALL RIGHT.

23       WELL, LET ME HEAR FROM MR. BORDEN.  DO YOU HAVE ANYTHING

24   ELSE TO ADD TO THIS DISCUSSION ON BEHALF OF YOUR CLIENTS,

25   MR. BORDEN?

1          MR. BORDEN:  NO, YOUR HONOR.  WE'RE FINE WITH THIS

2     SOLUTION.  AGAIN, IT SEEMS REASONABLE TO US.  UM --

3          THE COURT:  OKAY.  I'M SORRY, I DON'T WANT TO CUT YOU

4     OFF.  IS THERE SOMETHING ELSE?

5          MR. BORDEN:  NO, I DON'T NEED TO SAY ANYTHING ELSE.

6     THAT'S FINE.

7          THE COURT:  OKAY.  SO HERE'S MY THOUGHT ON 7.3(H):

8     I'M NOT GOING TO ADOPT THE PLAINTIFF'S VERSION OF THIS

9     PROPOSAL.  I WILL -- I GUESS WHAT I'M SAYING IS I WILL ADOPT

10    THE DEFENDANT'S VERSION OF THE PROPOSAL AS REFLECTED IN THE

11    JOINT SUBMISSION AT PAGE 12.

12         I DO EXPECT THAT THE PARTIES -- I MEAN, NOBODY INTENDS TO

13    OVER-DESIGNATE BECAUSE YOU WOULD NEVER, LIKE, SAY THAT YOU DID

14    THAT INTENTIONALLY.  BUT OVER-DESIGNATION IS NOT GOOD.

15         YOU NEED TO MEET THE LOCAL RULE 79-5 REQUIREMENT FOR

16    FILING ANYTHING UNDER SEAL ANYWAY, AND MOST JUDGES WILL

17    CONSTRUE THAT FAIRLY STRICTLY.  AND AS YOU ALL KNOW, THE PARTY

18    WHO IS RESISTING DESIGNATION HAS EVERY OPPORTUNITY TO OPPOSE

19    SUCH DESIGNATION AND EXPLAIN WHY IT'S SIMPLY EMBARRASSING AND

20    NOT CONFIDENTIAL.  SO, YOU KNOW, AND THEN IT'LL BE PUBLIC.  IT

21    WON'T SIMPLY BE SOMETHING THAT YOU CAN SHARE WITH YOUR CLIENT,

22    IT'LL BE PUBLIC FOR EVERYONE TO SEE.

23         SO IF THAT'S REALLY WHAT THE CONCERN IS, YOU KNOW, FOR

24    SOME OF THIS MATERIAL, THAT WILL GET FERRETED OUT IN THE MOTION

25    PRACTICE PROCESS.

1    AND THEN AS TO MATERIAL THAT IS NOT GOING TO BE FILED AND

2    IS OTHERWISE VERY CONFIDENTIAL, I AM CONFIDENT THAT THE PARTIES

3    CAN WORK OUT, YOU KNOW, A WAY TO ALLOW THEIR CLIENTS TO BE

4    INFORMED, AND I'M GOING TO RELY ON YOU TO DO THAT.  I'M NOT

5    GOING TO BAKE A PROVISION INTO THE PROTECTIVE ORDER FOR THAT.

6    BUT IF IT TURNS OUT THAT SOMEONE IS OVER-DESIGNATING

7    MATERIAL AND YOU WANT TO BRING THAT TO THE COURT'S ATTENTION

8    AFTER TRYING TO WORK IT OUT, THAT'S WHAT YOU NEED TO DO UNDER

9    THE PROTECTIVE ORDER.

10    SO THAT'S -- I WILL ISSUE A WRITTEN ORDER ON THIS, BUT

11    THAT IS WHAT I INTEND TO DO WITH THAT 7.3(H) ISSUE.

12    I DID WANT TO FLAG ONE OTHER ISSUE FOR THE PARTIES IN THE

13    PROTECTIVE ORDER, BECAUSE MY EXPECTATION IS THAT YOU ALL WILL

14    SUBMIT A REVISION OF YOUR PROPOSED PROTECTIVE ORDER.

15    YOU MAY HAVE OBSERVED FROM PROTECTIVE ORDERS THAT ARE ON

16    CASES WHERE I'M DESIGNATED IS I USUALLY EDIT THE MODEL ORDER

17    LANGUAGE TO MAKE IT CLEAR THAT DISPUTES ABOUT PROTECTIVE

18    ORDERS, OR PROTECTIVE ORDER ISSUES, DESIGNATIONS, THINGS LIKE

19    THAT, COME TO ME USING THE EXPEDITED PROCESS.

20    SO INSTEAD OF FILING A FORMALLY NOTICED MOTION, AS I THINK

21    MAYBE YOUR ORDER CONTEMPLATES AND THE MODEL ORDER MAY

22    CONTEMPLATE, I EDIT THAT OUT AND SAY YOU MUST USE MY DISCOVERY

23    PROCEDURES SO THAT I CAN DEAL WITH THOSE KINDS OF MATTERS IN

24    THE SAME WAY I DO OTHER DISCOVERY-RELATED DISPUTES.

25    SO I'M JUST FLAGGING THAT IN ADVANCE.  YOU CAN TRY TO

1    ANTICIPATE THAT AND FIX IT YOURSELVES.  BUT IF IT COMES TO ME

2    EVENTUALLY, THAT'S WHAT I WILL DO IS I WILL -- SO IF THAT'S A

3    KEY ISSUE IN YOUR NEGOTIATION OF THIS THING, THAT YOU NEED TO

4    HAVE A DIFFERENT RESOLUTION PROCESS, YOU CAN ALERT ME TO THAT

5    IF YOU WOULD LIKE.  BUT OTHERWISE MY DEFAULT WILL BE TO JUST

6    MAKE IT BE A -- USE MY EXPEDITED PROCEDURES.

7         SO I JUST WANTED TO FLAG THAT FOR YOU SINCE YOU ALL WERE

8    HERE.

9         DOES ANYONE HAVE AN ISSUE WITH THAT?

10         MS. CHAN:  NO, YOUR HONOR.

11         MR. FROST:  NO.

12         THE COURT:  OKAY, GOOD.  IT'S SUPPOSED TO MAKE IT

13    MORE EFFICIENT.

14         OKAY.  SO THAT'S WHAT WE'LL DO ON THE PROTECTIVE ORDER

15    DISPUTE.

16         THE LAST ITEM IS THIS QUESTION OF JURISDICTIONAL

17    DISCOVERY.  I SAW JUDGE DAVILA'S ORDER ADOPTING YOUR, I GUESS

18    EVERYBODY'S PROPOSAL THAT DISPUTES REGARDING THE SCOPE OF THE

19    SCHEDULING OF JURISDICTIONAL DISCOVERY ARE REFERRED TO ME FOR

20    RESOLUTION.  I WAS, OF COURSE, DELIGHTED TO SEE THAT.

21         BUT WHAT I DON'T KNOW IS WHAT ACTUALLY EXISTS, IF

22    ANYTHING, FOR RESOLUTION.  I DID RECEIVE THE IPP PLAINTIFF'S

23    RESPONSE SAYING YOU'RE PREPARED TO DISCUSS THINGS AND THIS IS

24    WHAT WE'VE SCHEDULED SO FAR AND WE'RE STILL TALKING.

25         BUT I THOUGHT SINCE I HAVE YOU ALL HERE, I SHOULD JUST

 1    RAISE IT.

 2         SO LET ME START WITH THE IPP FOLKS.  IS THERE ANYTHING

 3    THAT THE COURT NEEDS TO RESOLVE?

 4         MS. CHAN:  THERE IS NOT.  WE'VE BEEN ABLE TO COME TO

 5    AGREEMENT ON ALL ISSUES SO FAR.

 6         THE COURT:  OKAY.  AND LET ME ASK MR. BORDEN FOR THE

 7    OTHER PLAINTIFFS IN THE OTHER CASE, ANYTHING THAT THE COURT

 8    NEEDS TO RESOLVE?

 9         MR. BORDEN:  SURE, YOUR HONOR.

10    TWO, TWO ISSUES.  ONE IS THAT WE'VE AGREED TO THE SAME

11    SCHEDULE AS THE IPP'S IN TERMS OF TAKING JURISDICTIONAL

12    DEPOSITIONS ON APRIL 5TH AND APRIL 6TH AND HAVING A MARCH 26TH

13    DOCUMENT PRODUCTION CUTOFF DATE.

14         AND WHAT WE'D LIKE IS WE'D LIKE TO -- AND WHAT WE'VE ASKED

15    CELESTRON TO DO IS TO STIPULATE TO THAT AND TO HAVE THE COURT

16    ENTER THAT AS AN ORDER SO THAT THESE DATES DON'T SLIP AND WE'RE

17    NOT IN A POSITION OF, YOU KNOW, THEM PROMISING ONE THING AND

18    DELIVERING SOMETHING ELSE.  SO THAT'S THE FIRST ISSUE.

19         AND THEN THE SECOND ISSUE IS IN THE ORION CASE, YOUR HONOR

20    MADE AN ORDER LIMITING OBJECTIONS AT DEPOSITIONS TO OBJECTIONS

21    TO FORM, AND THAT ORDER IS CONSISTENT WITH THE STANDING ORDERS

22    OF SEVERAL MAGISTRATES IN THIS DISTRICT, AND IT'S ALSO

23    CONSISTENT WITH THE LOCAL RULES HERE AND THE RULE 30 ITSELF AND

24    THE NORTHERN DISTRICT GUIDELINES FOR PROFESSIONAL LAWYERING.

25         AND WE WOULD ASK THAT -- AND WE'VE MET AND CONFERRED WITH

1    DEFENDANTS ABOUT THAT AND THEY DO NOT AGREE TO LIMIT THEIR

2    OBJECTIONS IN THAT WAY, AND WE THINK IT OUGHT TO BE SOMETHING

3    THAT'S SIMPLE, THAT WILL HELP STREAMLINE DISCOVERY IN THIS

4    CASE, WILL MAKE THE DEPOSITIONS A LOT SIMPLER, AVOID US HAVING

5    TO CALL YOU OR COME BACK OR DO ANY OF THE THINGS THAT, YOU

6    KNOW, DEPOSITION OBSTRUCTION, YOU KNOW, RESULTS IN.

7         SO WE JUST THINK IT SHOULD APPLY TO EVERYBODY, YOU KNOW,

8    EVERYBODY ABIDE BY IT.  AND IT MADE THINGS A LOT SIMPLER IN

9    ORION AND I THINK IT WOULD BE A HELPFUL ORDER HERE AS WELL.

10             THE COURT:  ALL RIGHT.  THANK YOU.

11        LET ME HEAR FROM MR. FROST ON THE JURISDICTIONAL DISCOVERY

12   ISSUES, IF ANY.

13             MR. FROST:  THANK YOU, YOUR HONOR.

14        WE HAVE AGREED ON DATES FOR PRODUCTION FOR THE DOCUMENTS

15   THAT WE WILL BE AGREEING IN WRITING TO PRODUCE, AND WE'VE

16   AGREED ON DEPOSITION DATES.  EVERYBODY SEEMS TO BE GETTING

17   ALONG AND EVERYTHING IS CONFIRMED.

18        WE DON'T SEE ANY REASON THAT THAT NEEDS TO BECOME A FORMAL

19   COURT ORDER.  WE DON'T THINK, JUST BECAUSE THERE'S AN AGREEMENT

20   IN THE CASE, THAT IT NEEDS TO BECOME AN ORDER BECAUSE SOMEBODY

21   IS WORRIED THAT SOMEBODY ELSE MIGHT NOT FULFILL THEIR

22   OBLIGATIONS.  OTHERWISE THAT'S GOING TO TRIPLE THE NUMBER OF

23   ISSUES THAT COME BEFORE YOU.  WE JUST DON'T THINK IT'S

24   NECESSARY.

25        WITH RESPECT TO THE ISSUE OF THE OBJECTIONS, I DISCUSSED

1    THAT AT LENGTH WITH MR. FISHER.  HIS COMMENT WAS THAT WE WOULD

2    LITERALLY BE LIMITED TO USING THE WORDS "INSTRUCT ON THE BASIS

3    OF PRIVILEGE" OR "OBJECT TO THE FORM," WITHOUT EVEN BEING ABLE

4    TO RECITE THE BASIS FOR THE OBJECTION.

5         WE THINK THAT IS NOT NECESSARY OR APPROPRIATE, THAT WE

6    OUGHT TO BE ABLE TO STATE THE OBJECTION AND THE BASIS FOR IT ON

7    THE RECORD, PARTICULARLY WHEN YOU'RE IN A SITUATION IN A CASE

8    WHERE WE ARE GOING TO HAVE DEPOSITIONS TRANSLATED INTO

9    MANDARIN, THAT THE INABILITY TO BE ABLE TO SAY ANYTHING BUT THE

10   WORDS "OBJECT TO THE FORM" COULD GET OVERLY CUMBERSOME AND

11   CREATE MORE ISSUES THAN IT RESOLVES.

12        SO EVERYBODY HERE UNDERSTANDS THEIR OBLIGATIONS AND NOT TO

13   BE OBSTRUCTIONIST IN DEPOSITIONS.  I DON'T FORESEE ANY ISSUES

14   WITH THAT.

15        BUT IF THEY COME UP, WE CAN DEAL WITH IT AT THE TIME.

16        BUT IN THIS CONTEXT, I DON'T THINK THAT'S NECESSARY.

17          THE COURT:  ALL RIGHT.  WELL, RECOGNIZING THAT WE

18    DON'T ACTUALLY HAVE THESE DISPUTES TEED UP BEFORE ME, I WILL

19    TELL YOU MY THOUGHTS.  IF SOMEBODY WANTS TO DO A JOINT

20    DISCOVERY LETTER ON ANY OF THESE, YOU CAN, BUT I WILL SHARE

21    WITH YOU MY THOUGHTS.

22        I THINK HAVING A WRITTEN AGREEMENT, PERHAPS ONE THAT YOU

23    FILE AS A STIPULATION, IS GOOD FOR EVERYONE.  I DON'T SEE ANY

24    NEED TO ENTER IT AS AN ORDER.  BUT I THINK IT WOULD BE HELPFUL

25    FOR EVERYONE TO BE VERY CLEAR AND TO DO A STIPULATION ABOUT

1    WHAT THE DATES OF PRODUCTION ARE AND OTHER THINGS THAT YOU'VE

2    ALL AGREED ON.  SO JUST DO IT IN WRITING, IT'S ALL CLEAR,

3    THERE'S NO AMBIGUITY.  BUT I DON'T FEEL THE NEED TO MAKE IT A

4    COURT ORDER.

5         ON THE QUESTION OF OBJECTIONS TO QUESTIONS IN DEPOSITION,

6    YOU ALL CAN READ THE LAW AND THE LOCAL RULES AS WELL AS I CAN.

7    YOU KNOW WHAT THE RULES ARE.  I EXPECT YOU TO COMPLY WITH THEM.

8         I'M NOT GOING TO ANTICIPATE THAT PEOPLE ARE GOING TO

9    ENGAGE IN IMPROPER CONDUCT IN DEPOSITION BY ORDERING IN ADVANCE

10   THAT YOU DO WHAT YOU'RE ALREADY REQUIRED TO DO.

11        IT'S ONLY BECAUSE PEOPLE DID ENGAGE IN IMPROPER CONDUCT IN

12   THE ORION LITIGATION THAT I HAD TO BE MORE STRICT ABOUT WHAT

13   WAS PERMITTED AND NOT PERMITTED.

14        BUT YOU ALL ARE PROFESSIONALS, I EXPECT YOU TO BEHAVE THAT

15   WAY, AND I REALLY HOPE THAT WE WILL NOT BE DEALING WITH THIS

16   ISSUE.

17        BUT I'M NOT GOING TO ORDER IN ADVANCE WHAT MR. BORDEN

18   PROPOSES THAT I ORDER.

19        AS I SAID, IF YOU ALL WANT TO BRIEF THIS ISSUE, I'M -- I

20   WOULD NOT BE DELIGHTED FOR YOU TO DO THAT, BUT IT IS YOUR RIGHT

21   TO BRIEF IT.

22            MR. BORDEN:  YOUR HONOR, MAY I MAKE ONE --

23            THE COURT:  YEAH, GO AHEAD.

24            MR. BORDEN:  -- ONE SUGGESTION ON THE DEPOSITIONS?

25        I MEAN, THE OTHER WAY TO STREAMLINE IT IS TO NOT

1    TRANSLATE, NOT REQUIRE TRANSLATION OF THE OBJECTIONS SO THAT --

2    THAT WAY THE DEPOSITIONS WILL JUST ROLL AND THEY CAN MAKE

3    WHATEVER OBJECTIONS THEY WANT.  BUT IT WILL SAVE A LOT OF TIME

4    AND HASSLE.  SO THAT'S ANOTHER GOOD WAY TO DEAL WITH THIS

5    SITUATION.

6         THE COURT:  I MEAN, YOU ALL CAN TALK ABOUT IT.  I CAN

7    IMAGINE REASONS WHY A PARTY WOULD WANT TO AGREE OR NOT AGREE

8    WITH THAT.  BUT I -- YOU KNOW, LET ME JUST PUT IT THIS WAY:

9    HAS THAT DISPUTE BEEN BRIEFED TO ANYBODY?  IS IT LURKING IN

10   SOME COMMUNICATION TO JUDGE DAVILA?

11       IT'S NOT EVEN A REAL DISPUTE YET.  I MEAN, IT'S NOT A

12   DISPUTE YET.  I DON'T MEAN REAL AS IN, LIKE, FRIVOLOUS.  BUT

13   IT'S NOT ACTUALLY A DISPUTE YET.

14       IT'S SOMETHING THAT YOU -- MY IMPRESSION IS IT'S SOMETHING

15   THAT YOU ALL ARE PERHAPS GOING TO DISCUSS AS YOU PREPARE FOR

16   THESE DEPOSITIONS THAT MIGHT BE CONDUCTED IN LANGUAGES OTHER

17   THAN ENGLISH.

18       BUT IT'S NOT ACTUALLY TEED UP FOR RESOLUTION YET, IS IT,

19   MR. BORDEN?

20       MR. BORDEN:  WELL, WE ALREADY HAD A -- AS MR. FROST

21   INDICATED, MY COLLEAGUE, MR. FISHER, HAD AN EXTENSIVE MEET AND

22   CONFER WITH HIM ABOUT THIS WHERE THEY WOULDN'T AGREE.

23       SO WE'RE ALREADY AT AN IMPASSE, AND YOU HAD ASKED THE

24   QUESTION OF WHETHER THERE WERE ANY ISSUES WITH REGARD TO THE

25   JURISDICTIONAL DISCOVERY --

```
 1              THE COURT:  RIGHT.

 2              MR. BORDEN:  -- SO I THOUGHT I WOULD RAISE IT TO

 3    YOU --

 4              THE COURT:  YES.

 5              MR. BORDEN:  -- IN HOPES THAT WE WOULDN'T HAVE TO

 6    BRIEF IT AND WE COULD JUST GET A RESOLUTION IMMEDIATELY.

 7              THE COURT:  RIGHT.  I GUESS WHAT I'M SUGGESTING IS

 8    THAT I AM DISINCLINED TO ORDER IN ADVANCE REMEDIES WHEN THERE'S

 9    NO PROBLEM, AND I JUST -- I AM RELUCTANT TO ANTICIPATE THAT YOU

10    ALL WILL HAVE PROBLEMS SIMPLY BECAUSE THERE WERE PROBLEMS IN

11    THE ORION LITIGATION.

12         THE ONLY COMMON DENOMINATOR HERE IS YOUR FIRM, MR. BORDEN,

13    AND I HAVE -- I HAVE CONFIDENCE THAT, HAVING BEEN THROUGH THE

14    ORION LITIGATION, YOU KNOW WHAT I'M LIKELY TO DECIDE ABOUT

15    PEOPLE MISBEHAVING.  SO I JUST -- I HOPE I DON'T HAVE TO ATTEND

16    TO IT.

17         WHEN I SAID IN MY LAST QUESTION, WAS THERE SOMETHING THAT

18    WAS ALREADY TEED UP, I MEANT, HAD YOU WRITTEN SOMETHING TO

19    JUDGE DAVILA IN YOUR STATUS REPORT SAYING "WE HAVE THESE ISSUES

20    AND THEY NEED TO BE RESOLVED," AND THEN HE SAID, "I'M REFERRING

21    THAT TO JUDGE DEMARCHI"?

22         IS THERE SOMETHING THAT'S ALREADY A PROBLEM THAT'S BEEN

23    PREPARED AND SUBMITTED TO THE COURT THAT I SIMPLY OVERLOOKED

24    THAT ANYBODY'S BRIEFED?

25              MR. FROST:  (SHAKES HEAD FROM SIDE TO SIDE.)
```

1          MR. BORDEN:  NOT TO MY KNOWLEDGE, YOUR HONOR.

2          MR. FROST WAS A PART OF THE ORION LITIGATION, AS YOU

3     RECALL.  I MEAN, YOU REMEMBER HIS CLIENT FACILITATED THE

4     PAYMENT OF THE $4.2 MILLION TO NINGBO SUNNY.

5          THE COURT:  YES.  MR. BORDEN, THIS IS NOT A HELPFUL

6     POINT TO RAISE.  I REALLY -- THAT'S -- I GET THAT.

7          OKAY.  SO WHAT I WOULD SUGGEST TO YOU ALL IS TRY TO REACH

8     AGREEMENT, DOCUMENT YOUR AGREEMENT.  YOU MAY FILE A STIPULATION

9     IF YOU FEEL LIKE THAT'S THE BEST WAY TO DO IT, BUT YOU DON'T

10    HAVE TO.  I WOULD JUST SUGGEST THAT SO WE AVOID DISPUTES GOING

11    FORWARD AND EVERYBODY HAS THE AGREEMENT THERE IN WRITING AND

12    THERE'S NO AMBIGUITY.  THAT'S FINE.

13         I DON'T KNOW WHAT TO TELL YOU ABOUT STREAMLINING YOUR, YOU

14    KNOW, DEPOSITIONS THAT WILL BE CONDUCTED NOT EXCLUSIVELY IN

15    ENGLISH.  THERE MAY BE A GOOD RESOLUTION THAT YOU CAN ACHIEVE,

16    BUT I AM NOT GOING TO ORDER SOME RESOLUTION RIGHT NOW.  OKAY?

17         ALL RIGHT.  I THINK THAT TAKES CARE OF ALL THE MATTERS

18    THAT HAVE BEEN TEED UP FOR RESOLUTION.

19         IS THERE ANYTHING FURTHER FROM THE DPP PLAINTIFFS,

20    MR. BORDEN?

21         MR. BORDEN:  NOTHING FURTHER FROM US.  THANK YOU,

22    YOUR HONOR.  THANKS FOR YOUR TIME.

23         THE COURT:  ALL RIGHT.  THANK YOU.

24         AND ANYTHING FURTHER FROM THE IPP PLAINTIFFS?

25         MS. CHAN:  NOTHING FURTHER FROM US.  THANK YOU.

1           MR. ZAPALA:  THANK YOU FOR THE COURT'S TIME.

2           THE COURT:  OKAY.  ANYTHING FURTHER FROM THE

3     DEFENDANTS?

4           MR. FROST:  NOTHING FURTHER, YOUR HONOR, AND THANK

5     YOU FOR YOUR TIME AND PATIENCE.

6           THE COURT:  OKAY.  THANK YOU ALL VERY MUCH.  GOOD

7     LUCK.

8           THE CLERK:  COURT'S ADJOURNED.

9        (THE PROCEEDINGS WERE CONCLUDED AT 11:27 A.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7           I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18          DATED:  MARCH 3, 2021

19

20

21

22

23

24

25