Pages 1 - 45

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VIRGINIA K. DEMARCHI, MAGISTRATE JUDGE

| | | |
|---|---|---|
| DANIEL HIGHTOWER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | NO. 20-cv-03639-EJD (VKD) |
| | ) | |
| CELESTRON ACQUISITION, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| SPECTRUM SCIENTIFICS, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | NO. 20-cv-3642-EJD (VKD) |
| | ) | |
| CELESTRON ACQUISITION, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

San Jose, California
Tuesday, April 13, 2021

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:  (By Zoom Videoconference)

For Direct Purchaser Plaintiffs:
                BRAUNHAGEY & BORDEN
                351 California Street
                Tenth Floor
                San Francisco, California  94104
    **BY:  MATTHEW B. BORDEN, ESQ.**
          **ELLEN V. LEONIDA, ESQ.**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
        Official Reporter, U.S. District Court
    (Appearances continued, next page)

**<u>APPEARANCES, CONTINUED</u>:**

For Indirect Purchaser Plaintiffs:
>                      SUSMAN GODFREY LLP
>                      1900 Avenue of the Stars
>                      Suite 1400
>                      Los Angeles, California  90067
> **BY:  KALPANA SRINIVASAN, ESQ.**
>
>                      SUSMAN GODFREY LLP
>                      1000 Louisiana Street
>                      Suite 5100
>                      Houston, Texas  77002
> **BY:  ALEJANDRA C. SALINAS, ESQ.**

For Defendants:
>                      EISNER, LLP
>                      9601 Wilshire Boulevard
>                      Seventh Floor
>                      Beverly Hills, California  90210
> **BY:  CHRISTOPHER L. FROST, ESQ.**

| | |
|---|---|
| 1 | **Tuesday - April 13, 2021**                                         **10:43 a.m.** |

1    **Tuesday - April 13, 2021**                                    **10:43 a.m.**

2                          **P R O C E E D I N G S**

3              **THE COURTROOM DEPUTY:**  Calling the related cases in

4     the In Re Telescope Antitrust Litigation, Case 5:20-cv-3639

5     and 5:20-cv-3642.

6              **THE COURT:**  Let's have appearances, starting with the

7     direct purchaser plaintiffs.

8              **MS. LEONIDA:**  Good morning, Your Honor.  Ellen

9     Leonida and Matt Borden on behalf of the direct purchaser

10    plaintiffs.

11             **THE COURT:**  Good morning.

12       And for the indirect purchaser plaintiffs?

13             **MS. SRINIVASAN:**  Good morning, Your Honor.  Kalpana

14    Srinivasan and Alejandra Salinas on behalf of the indirect

15    purchaser plaintiffs.

16             **THE COURT:**  And for the defendants?

17             **MR. FROST:**  Good morning, Your Honor.  Christopher

18    Frost of Eisner, on behalf of the defendants and movants.

19             **THE COURT:**  Good morning.

20       So we have two discovery disputes.  One concerns

21    coordination of the discovery, generally, and the other

22    concerns the depositions of -- is it "Gene" on "John"?

23             **MR. FROST:**  "Gene."

24             **THE COURT:**  So those are Dockets No. 161 and 162 in

25    the 20-3639 case.

1    So I'd like to start with the coordination question

2    generally, first.  And my first question is for the DPPs and

3    for the IPPs.

4        It sounds like you all are coordinating discovery as to

5    the defendants.  And I want to make sure I understand the

6    nature of the coordination that's already happening.  There's

7    been written discovery served.

8        So my question is:  Are the DPPs and IPPs seeking the same

9    documents and interrogatory information from the defendants?

10       And let me ask -- I don't know who I'm going to ask first.

11   Ms. Leonida, if you're speaking on behalf of the DPPs, I'll ask

12   you that question first.

13            **MS. LEONIDA:**  Yes.

14       So Your Honor, we're coordinating as much as we can.

15   We've jointly served requests for production, 11 of them.

16       We are negotiating a protective order -- we negotiated a

17   protective order and ESI stipulation.  We are meeting and

18   conferring to coordinate search terms and custodians, and we

19   have weekly calls with the IPPs.

20       We're coordinating on every issue that we can that would

21   benefit the class by reducing costs.  We're in regular contact

22   regarding discovery issues, to determine whether further

23   coordination may be feasible.

24       But our interests do diverge at some point, so we can't

25   coordinate with everything.

1          **THE COURT:**  Okay.  Let me ask -- let me say again my

2      more specific question, because I'm really trying to just

3      understand pieces of this first.

4          On the written discovery, document requests and

5      interrogatories, have you all served the same discovery

6      requests on defendants as the IPPs have?

7          **MS. LEONIDA:**  We have served 11 sets of requests for

8      production jointly, and we served one set independently where

9      the IPPs sought to join that but the defendant objected, so

10     they ended up severing an identical set.

11         **THE COURT:**  Okay.  I don't know which, Ms. Srinivasan

12     or Ms. Salinas, is going to be talking about this, but who's

13     speaking on behalf of the IPPs?

14         **MS. SRINIVASAN:**  I will, Your Honor.

15         **THE COURT:**  Great.  Do you agree what Ms. Leonida

16     described as the written discovery approach to defendants?

17         **MS. SRINIVASAN:**  Yes, Your Honor.

18         **THE COURT:**  Okay.

19         Now, this is a question for Mr. Frost.  So on behalf of

20     the defendants, are all defendants coordinating their approach

21     to discovery of the plaintiffs?

22         **MR. FROST:**  Yes.  We are.

23         **THE COURT:**  Okay.  And I understand some --

24         **MR. FROST:**  And I will -- go ahead.  I'm sorry.

25         **THE COURT:**  Not all defendants have appeared in the

 1    case; is that correct?

 2          MR. FROST:  The only defendants who have not appeared

 3    in the case now -- the only defendant who has not is

 4    Ningbo Sunny.  And we do not and will not represent

 5    Ningbo Sunny.

 6          THE COURT:  Okay.  But as to all the other

 7    defendants, there's coordination by the defendants

 8    collectively, and the discovery they are seeking from the

 9    plaintiffs.

10          MR. FROST:  Yes, there is.  If I could actually just

11    clarify one point.

12        With respect to the approach that we're seeing from the

13    DPPs and the IPPs, we are seeing some amount of coordination,

14    but we also have had several occasions where we're not.

15        For instance, on the first set of discovery requests, the

16    reason we objected to the IPPs joining them is because the DPPs

17    refused to coordinate those with the IPPs, and then the IPPs at

18    the last minute said:  We want to step in and treat these as if

19    we had served them as well and just do it all together.  And at

20    that point, given the fact the DPPs wouldn't allow us time to

21    respond to the IPPs in due course, we objected to that.

22        So we're seeing some examples, yes, where they are

23    coordinating, and others where Ron Fisher especially has been

24    direct with us, and telling us we do not need to coordinate,

25    and we will not coordinate.  So we are seeing some of both.

1          **THE COURT:**  But you have received the same -- in

2     terms of their content, the same requests from both the DPPs

3     and the IPPs.

4          **MR. FROST:**  No.  We've received different requests

5     from the IPPs than from the DPPs.  And we have more requests

6     from the IPPs and more defendants than we do from the DPPs.

7     They're not co-existent.

8          **THE COURT:**  That's what I'm trying to understand.

9          So Ms. Leonida, I thought I understood you to say that

10    there were requests served that were then iden- -- an identical

11    set were then served by the IPPs.  So Mr. Frost is saying

12    something different happened.

13         **MS. LEONIDA:**  That was my understanding, that the set

14    of requests for production that the IPPs served were the same

15    as what we had served, and that the defendant would not let

16    them join in that.

17         **THE COURT:**  All right.

18         Ms. Srinivasan, is that your understanding, as well?

19         **MS. SRINIVASAN:**  It is.  There was one set of RFPs

20    that were served that were related to jurisdictional recovery

21    -- discovery, which has been subsequently withdrawn.  That was

22    an IPP-only set.

23         **THE COURT:**  Okay.

24         **MS. SRINIVASAN:**  But the others have been jointly, or

25    joined in by one or the other of the plaintiff parties.

1          **THE COURT:**  Okay.  And, have the parties at this

2     point completed service of substantially all of their written

3     discovery?  And I -- I mean "substantially all" meaning you've

4     served 11 sets of something.

5          So have you served most of your written document requests

6     and your interrogatories at this point?

7          Let me start again with Ms. Leonida.

8          **MS. LEONIDA:**  I'm sorry, Your Honor.  It's -- I'm

9     sorry; I'm relatively new to the case, so I'm checking on

10    that.

11         **THE COURT:**  Okay.  That's fine.

12         **MR. BORDEN:**  Sure.  Your Honor, this is Mr. Borden.

13         You know, we've propounded a lot of written discovery and

14    we -- you know, we don't know what all the responses are.  We

15    haven't received any documents yet.

16         So obviously there would be followup, but -- or there may

17    be followup, depending on what we get.  But the discovery that

18    we've served, you know, should cover a lot of the issues in the

19    case.

20         **THE COURT:**  Okay.  Thank you.

21         And Ms. Srinivasan, is that true also for the IPPs?

22         **MS. SRINIVASAN:**  With respect to the requests for

23    production, they've been fulsome.  You know, as Mr. Borden has

24    stated, we haven't gotten production of documents so it's hard

25    to know what additional RFPs will be required.

 1          For written discovery interrogatories, we certainly have

 2     not, even at this stage, because we are reserving additional

 3     service of some interrogatories until we get documents, and

 4     there will be other issues that we want to pursue through

 5     written discovery.

 6          **THE COURT:**  Okay.  And do the parties have -- and I

 7     apologize, I did not look at your case management order.  But,

 8     are there limits that the parties have stipulated to or have

 9     been ordered to comply with concerning the number of

10     interrogatories that can be served, and number of depositions

11     that can be taken?

12     Were those numbers expanded from the federal rules?

13          **MR. FROST:**  The answer, Your Honor, is no.  We were

14     attempting to reach an agreement on that, but haven't been

15     able to do so.  And so there is no order or stipulation at

16     this point concerning limits on available discovery.

17          **THE COURT:**  All right, so right now --

18          **MR. FROST:**  Beyond the federal rules.

19          **THE COURT:**  The federal rules.  Okay.  All right.

20     So my impression from reading the submissions that I got

21     from you all is that this case does require coordination of

22     discovery.  I know Judge Davila didn't order it, expressly.

23     But I will.

24          So, it's going to need to be coordinated.  We can't have

25     this sort of free-for-all approach to a case like this.

1      You know, there's been consolidation of cases and

2  coordination between the DPP and IPP cases.  So I just want to

3  say that if any party thinks it doesn't have to cooperate, you

4  need to reconsider your position.  Because I'm going to require

5  cooperation.

6      That does not mean every party takes or responds to

7  identical discovery.  That's not what coordination means.  But

8  there is going to need to be coordination and cooperation.

9      So one of the matters that I think has sort of brought

10  this discussion to a head is the depositions of the Shens.

11      So I would like to sort of turn our attention to that

12  issue now, so I better understand maybe what the dynamics are

13  on that particular aspect of discovery.

14      Let me start first with asking, I guess, Ms. Leonida with

15  respect to the DPPs, what testimony do the DPPs seek now from

16  Jean Shen and Sylvia Shen?

17      **MS. LEONIDA:**  Your Honor, what we are seeking now is

18   to do merits depositions of both of these witnesses who are

19   defendants in our case, and not in the IPP case.

20      And there -- you know, one thing that I think bears noting

21  here is this is about two witnesses, and at this point, only

22  these two witnesses.  Not the specter of thousands of hours and

23  many months of each party deposing everybody, willy-nilly.  But

24  for these two specific witnesses, we are requesting to depose

25  them.

1      Under Rule 26, discovery can be used in any sequence.

2  And -- and Judge Davila also recognized that we're entitled to

3  our own strategy, in consultation with our clients.

4      And there are many reasons that a party would want to take

5  depositions before documents are produced.  And there are many

6  reasons -- strategic reasons that we have done that in the

7  past.  And I don't believe that it's legal or fair to require

8  us to share all of those strategies with either defendants or,

9  frankly, with IPPs.  But it is something that we routinely do,

10  and that we're asking to do in case.

11      And one of the reasons that we do it and one of the

12  reasons we're doing it in this case is that it's something that

13  we do when the other -- when the opposing party has refused to

14  provide discovery.  And that's what's happened here.  Defendant

15  has not provided any discovery since this action was filed.

16      In August of 2020, we served our first set of RFPs.  They

17  still have not produced any documents.  They haven't produced

18  the documents the Court ordered them to produce on

19  December 15th of last year.  They haven't produced documents

20  that don't require search terms, like sales records,

21  transactional data, document retention policies.

22      And it took many months, many -- it took many

23  meet-and-confers to even get the defendant to agree for a date

24  to produce these witnesses.  And once we knew that the

25  witnesses were available, we asked to depose them on that date.

1    We're --

2         **THE COURT:**  Okay.  Let me pause you there,

3    Ms. Leonida.

4         I'm -- I'm sure I will eventually have to hear the whole

5    litany of all the bad stuff that the defendants haven't done --

6    done, and have not done yet.  All the things in which they've

7    failed in their discovery obligation.

8         But right now, what I'm really trying to focus on is:  Why

9    do you want to take the depositions of Jean Shen and Sylvia

10   Shen now?

11        I understand that they were originally noticed for

12   jurisdictional purposes.  And now you wish to take those

13   depositions for the merits.  Rule 26 says you can take

14   discovery that's relevant and proportional to the needs of the

15   case.

16        So please, tell me, why are they relevant, in the first

17   instance?

18        **MS. LEONIDA:**  They're relevant -- as we laid out in

19   the second amended complaint, they're relevant because they

20   have information that goes to the crux of our claims in this

21   case.  And it's information that we can only get from them.

22   And it is information that we think, for strategic reasons, is

23   better obtained from them before -- before waiting for

24   documents to be produced.

25        **THE COURT:**  Okay.  So I have before me Docket 161,

 1    which is the dispute about Ms. -- the Shens' deposition.  I

 2    did not go back and look at the second amended complaint to

 3    see what you said there.  But I didn't find anywhere in this

 4    submission why these depositions are relevant.  And to what

 5    issues in the case.

 6        So, could you fill me in on what it is that is

 7    particularly relevant about the testimony you expect to get

 8    from Jean Shen and Sylvia Shen?

 9            **MR. BORDEN:**  Sure, Your Honor.  And let me just give

10    you a quick summation.

11        Sylvia Shen is the sister of David Shen, who architected a

12    lot of the conspiracy that's at issue in this case, and that

13    the jury found in the *Orion* case.  And Sylvia Shen sits on the

14    board of Celestron.  And she -- so she's, you know, at least a

15    decision-maker for one of the defendants in this case.  She's

16    also a principal of Synta Canada.

17        So she's going to have information about meetings that

18    occurred, about statements that were made, about business

19    strategies that these defendants engaged in.  All of which, we

20    don't need documents to figure out.  And all of which, you

21    know, we're capable of asking her these questions right now.

22    And, and which she will, you know, presumably be able to

23    answer.  And so it would be very important to take her

24    deposition right now.  And when the documents come in, they

25    will confirm whether or not she's been telling the truth or

1    not.

2        And so we don't need the documents to take her deposition.

3    And sometimes taking a witness's deposition under these

4    circumstances is an advantageous strategy.  And we've used it,

5    as Ms. Leonida said, in many other cases.

6        **THE COURT:**  What about Jean Shen?

7        **MR. BORDEN:**  Jean Shen is the owner of Olivon.  She

8    has -- she's also the sister of defendant David Shen.  And

9    she -- we believe that she's been privy to some similar

10   conversations and communications that we would like to ask

11   about in terms of how the -- you know, David Shen's businesses

12   are organized and structured.  He has -- through familial

13   relationships, he has ownership in Ningbo Sunny, the defendant

14   that hasn't appeared.  He has owner- -- which is his

15   horizontal competitor.

16       **THE COURT:**  (Inaudible)

17       **MR. BORDEN:**  David Chen.

18       **THE COURT:**  Okay.  So -- okay.

19       **MR. BORDEN:**  So that's through his sister-in-law,

20   Dong Yong Xue.  And before that, it was his brother.  And so

21   Jean Shen, Sylvia Shen, are also relevant to that kind of

22   claim.  The way Mr. Shen is controlling other businesses that

23   his name might not appear on as shareholder, but through these

24   familial relationships which are very important to the Shen

25   family, he is controlling both his horizontal competitor and

```
 1    other businesses that have assisted in the price fixing and

 2    the market allocation that is alleged in the second amended

 3    complaint.

 4            THE COURT:  And you mentioned that for the Shens'

 5    deposition, you don't need any documents or communications in

 6    order to conduct those depositions?  Is that correct?

 7            MR. BORDEN:  That's correct, Your Honor.

 8            THE COURT:  Is that because already have them?  From

 9    the prior litigation?

10            MR. FROST:  Yes.

11            MR. BORDEN:  No.  So --

12            THE COURT:  All right.  I'm just trying to

13    understand.

14        Are you representing to me that in those depositions you

15    will not be using or referring to any documents; you'll simply

16    be asking questions in a vacuum?

17            MR. BORDEN:  We will not be using or referring to any

18    documents.  I mean, you know, if there's documents that are --

19    you know, that have been produced in this case, if there's

20    documents that are in the public record like news releases or

21    things like that, we would use those.  But we're not using

22    documents from the Orion litigation.

23        As -- as Mr. Frost knows, Celestron didn't produce any

24    documents as part of the Orion litigation.  Synta did not

25    produce any documents as part of the Orion litigation.  And
```

1    part of the issue was that *Orion* had a settlement agreement

2    with Celestron and with Synta where it agreed that it was not

3    going to seek documents from them, and not produce documents.

4        So we're not going to use the documents that they're going

5    to produce which they haven't produced; we're not going to use

6    documents from the *Orion* case in those depositions.  We're

7    simply going to ask these witnesses questions about what they

8    know.

9            **THE COURT:**  Okay.  And let me ask the IPP plaintiffs.

10    Ms. Srinivasan, so I understand that IPPs noticed these

11    depositions for jurisdictional purposes, and then withdrew

12    those depositions.  But I'm told that the IPPs still have an

13    interest in deposing the Shens, after some document production

14    is made.

15        Why are these folks' depositions relevant for the IPPs?

16            **MS. SRINIVASAN:**  Well, they are co-conspirators, as

17    alleged in our complaint.  DPPs have named them as individual

18    defendants.  We have not.  But many of the same issues and

19    allegations that Mr. Borden raised are also relevant to our

20    case, and their involvement in the anti-competitive conduct

21    that we've alleged.

22        Our preference is to have documents before we proceed with

23    the deposition.  We believe that suits the interests of our

24    class -- putative class that we're seeking to represent.  You

25    know, we fully understand and appreciate that here, DPPs may

1    have a different interest or approach to doing so.  But from

2    our perspective, we'd like to have a deposition after the

3    production of documents.  And obviously, that process is

4    ongoing with defendants in trying to obtain documents in our

5    case.

6        we have made allegations with respect to the Shens.  But

7    some of the topics as to which we expect we will want to

8    depositions them about will be better informed for us after we

9    get through some document discovery

10        **THE COURT:**  All right.  But your current expectation

11    goes you will want to cover at least the same subject matter

12    that the DPPs wants to cover, based on Mr. Borden's

13    description?

14        **MS. SRINIVASAN:**  I would expect that those topics

15    will be among issues we're going to want to explore with the

16    witnesses.  There may be some that the DPPs have in mind that

17    we wouldn't cover.  Again, based on what I know from the

18    briefing and the discussions we have had, there may be some

19    strategic differences in their approach.

20        **THE COURT:**  All right.  So the DPPs have said, both

21    in their papers and in this hearing, that the interests of the

22    IPPs conflict with the interests of the DPPs, at least as to

23    this question of depositions.

24        What is the nature of the conflict?

25        **MS. SRINIVASAN:**  My understanding, Your Honor, is

1   that it's sort of strategic in nature.  We have been able to

2   coordinate and align on many things.  I expect in other cases

3   there may be instances where we are able to do so.  And

4   obviously, DPPs can speak for themselves.  But we don't object

5   to their proceeding with deposition, of course.  And it seems

6   to be a case where they have a different strategy about how to

7   proceed and the timing of those depositions.

8        You know, our perspective is merely that we've heard

9   defense counsel suggest that we will be precluded from future

10  depositions, should this one proceed.  And we don't -- we

11  object to that.  But, you know, again, we've had plenty of

12  instances where we've been able to align.  And I believe these

13  depositions are just ones where we have a different interest

14  and perspective as to how we would like to proceed, if it's

15  going to be deemed a deposition that's been taken by the IPPs

16  in this litigation.

17          **THE COURT:**  All right.  Thank you.

18       Ms. Leonida, what is the conflict of interest that the

19  DPPs perceive with the IPPs?  Is it just the -- essentially

20  what Ms. Srinivasan describes?  It's a strategic conflict of

21  interest?

22          **MS. LEONIDA:**  Yes, Your Honor.  We have a strategic

23   conflict of interest.  And a -- you know, and our strategy is,

24   I think, well-founded.  I'd prefer not to have to explain it

25   in full, in front of defense counsel.

1          **THE COURT:**  Right.  No, I understand that concern.

2      Let me hear from Mr. Frost on the question of the Shens'

3  deposition.  Why not produce these folks for deposition now?

4          **MR. FROST:**  For a number of reasons.  First is that

5   we're going to subject them to two separate depositions on

6   what are largely going to be the same topics.

7      With respect to the conflict between the IPPs and DPPs, I

8  think it's overstating it to call it a conflict.  The reality

9  is that nobody even on the DPP side decided that they wanted to

10  depose these witnesses on the merits until we had a

11  conversation after we withdrew the jurisdictional motions, that

12  they said:  You're going to give us jurisdiction depositions,

13  anyway.

14      And we said:  That's kind of silly.

15      And they said:  Then, fine.  You're going to give us

16  merits depositions.  And, immediately noticed them for the same

17  days.

18      So the only real conflict here, if you will -- I think

19  using that term is overstating it.  The only conflict is that

20  they want to take the depositions at different times.  And we

21  just think that's abusive, because they're clearly both going

22  to want depose the witnesses on the same subject.  There are

23  going to be a lot of depositions.

24      The other concerns we have are Jean Shen in particular,

25  and to some extent, Sylvia Shen are very tangential to the

1    issues in the litigation.  And it may very well be that after

2    the motions to dismiss are heard, they're no longer part of the

3    litigation.

4        Jean Shen had nothing to do with anything.  The only

5    reason she was named is because she's David Shen's sister.  And

6    I understand they don't agree with that, and that's okay.

7        But to put them in a position of having deposed twice in a

8    situation like this, where we're in the pandemic, and I cannot

9    get to my witnesses -- I understand that you can do Zoom

10   depositions.  But where we've already got language barriers and

11   concerns about being able to use exhibits, the reality is that

12   we haven't produced documents yet because we're still working

13   on search terms in that process.

14       Though, we haven't seen anything from the DPPs, either.

15   The only thing the deputies have produced are documents that

16   were in response to the *Orion* subpoena.

17       And so the issue we have is we're still very early in the

18   process.  Everybody is still working on the search terms.

19   We're still working through.  We don't oppose the ideas of the

20   depositions being taken.  But we think right now it's just a

21   vindictive response to the fact that we withdrew the

22   jurisdictional motions.  I mean, DPPs are even threatening us

23   with contempt for not putting them up for deposition on

24   jurisdictional issues after we withdrew the jurisdictional

25   motion.

1    So we think it's very simple.  Let some production occur.

2 Let the pandemic restrictions on travel release, so we can get

3 to our witnesses.  And then we can have a more organized and

4 orderly discussion about how these depositions should occur in

5 tandem.

6    But they -- they are the witnesses in both cases, on the

7 same issues.  And if we take this approach where it's okay to

8 coordinate everything except depositions, this is going to be a

9 massive administrative nightmare, and incredibly expensive.  It

10 will not be efficient.  And it will effectively double the

11 number of dozens of depositions.  If we set that precedent now.

12    We think, give everybody a chance to breathe; get some

13 document productions done.  Let some pandemic restrictions

14 release.  And then we'll go from there.

15        **THE COURT:**  Let me ask the parties a question.

16    How many depositions does each side expect?  Based on your

17 initial disclosures and discovery you've taken so far, how many

18 depositions do you think will be involved?

19    Let me start with Ms. Leonida.

20        **MS. LEONIDA:**  And again, Your Honor, I apologize,

21  being relatively new to the case.  Let me --

22        **THE COURT:**  That's okay.  Mr. Borden, would --

23        **MR. BORDEN:**  Sure.  I would say that, you know, given

24  an antitrust case like this, it's probably going to be the

25  maximum number of depositions allowed under the rules.  Or, or

```
1    under what the parties are able to work out among themselves.
2    But definitely double-digits.
3             THE COURT:  All right.
4        Ms. Srinivasan, do you agree?
5             MS. SRINIVASAN:  I do agree.
6             THE COURT:  All right.
7        Mr. Frost, how many depositions do you think the
8    defendants will need to take?
9             MR. FROST:  We've got -- I believe it's 30-something
10   plaintiff class reps we're going to need to talk to.  My
11   expectation is we're going to have to talk to more people from
12   each of the DPP reps.  We're going to have some third parties
13   we need to talk to.  And we expect they're going to take a
14   deposition of every one of our defendants, and in multiple
15   numbers.  So my expectation is we're talking 50 to 75
16   depositions, across all parties.
17       We're not excited about that number.  But given what I'm
18   hearing, I don't know how it's not going to be that number.
19   And that's our concern, is all of a sudden you're at 100 or 150
20   sessions.
21            THE COURT:  Okay.  All right.  So let me tell you all
22    what I'm thinking.
23       I think you all need a discovery plan.  And I have a
24   couple of observations about that plan ought to have -- what
25   you ought to consider in formulating that plan.  The overlap
```

1    between the cases is substantial.  I don't even know where the

2    daylight is.

3        But it sounds to me like what we've been talking about

4    right now is the plaintiffs.  The DPPs and the IPPs have served

5    identical written discovery, and intend to take the same

6    depositions.  You disagree about the timing of these

7    depositions, for sure, but you intend to cover the same

8    territory.

9        And the defendants also seem to be collectively operating

10   with respect to the plaintiffs, seeking the same kind of

11   discovery.

12       There is not going a stay of discovery pending any

13   12(b)(6) motion, as a result.  It's not going to happen.  So

14   there's not a stay on anything.

15       But in general, it seems to me that the parties are going

16   to need to coordinate on their document production, including

17   ESI.  And I'm not suggesting you haven't been doing this, but

18   you need to coordinate on getting your document production

19   done.  And that's both the content and the timing.

20       You're going to need to figure out some deadlines for a

21   substantial completion of document production.  And you're

22   going to need to figure out also deadlines for how you're going

23   to get through depositions.

24       Now, that's not to say that one party can't take

25   depositions before documents -- document production is

1  completed.  I'm not prejudging that.  But I think it is not --

2  it's not going to be the case that we're going to have the same

3  individual witness deposed multiple times.  Not going to

4  happen.  So you're going to need to figure out how to get this

5  done.

6      Now, it may be a little bit more challenging if we're

7  talking about 30(b)(6) witnesses who are also individual

8  witnesses.  That may be more challenging to work through.  But

9  the coordination is going to be such that if the DPPs and IPPs

10  want to depose the same witness, you're going to have to figure

11  out how to get it done.  Because I'm not going to have the same

12  person come back twice.  That's just too inefficient, too

13  burdensome.

14      We are not going to have delay, due to pandemic

15  restrictions.  So we're not going to wait for it to be possible

16  to have cross-border travel or in-person depositions or any of

17  those things.  If a person is available for a deposition at a

18  particular time, great.  You're going to do the deposition,

19  subject to your discovery plan.  And if that person can't be

20  there in person because of pandemic restrictions, then you're

21  going to have to make other arrangements.

22      That's kind of the sort of ground rules that I think you

23  all need abide by.  Who knows when we'll be able to have normal

24  civil discovery again?

25      **MR. FROST:**  (Nods head)

1          **THE COURT:**  I don't know.  And I'm going to -- I'm

2     going to commend to you an effort that I happened to find out

3     about in another case also involving large companies, where

4     they -- the parties worked out a stipulation about how to

5     handle remote depositions.  I'm not endorsing this particular

6     stipulation for its contents.  I'm endorsing the idea that

7     people thought about things, and worked it out.  And I'm going

8     to tell you what the case number is and the docket number, so

9     that you can look at it.  I don't even remember the details of

10    it, but I just remember they thought through everything, and

11    worked it out.

12         So this is *Tevra v.  Bayer HealthCare*.  It's 19-4312,

13    Document 190.  And it's a stipulation regarding remote

14    depositions.

15         So, so what I need you all to do is I need you all to work

16    on a discovery plan.  And I don't know where things stand on --

17    in that effort.  I see from the submissions that there has been

18    some effort in this regard.

19         I think, Mr. Frost, you said that you had proposed a plan

20    about something -- I'm not sure what its contents were -- and

21    that the IPPs were going to work on something well.  Let me

22    just start by asking Mr. Frost, first of all, what is the

23    status of the defendants' effort to propose a plan?

24         **MR. FROST:**  We had -- it was actually, to give full

25    credit where it's due, the IPPs had originally proposed a

1    discovery plan.  We had been working on it, making some amount

2    of progress.  We got hung up on some of the issues that you've

3    now provided some clarification on.  And I think where -- we'd

4    been exchanging redlines back and forth.  I don't think it'll

5    be hard to go back and pick that back up where we were, and

6    just continue those conversations.

7        So we're -- we're in process of doing that.  And I don't

8    think it'll be hard to go back and pick up where we -- where we

9    left off.

10          **THE COURT:**  Okay.

11        Ms. Srinivasan, for the IPPs, where do you see the

12    planning for discovery?

13          **MS. SRINIVASAN:**  We obviously made a proposal, and

14    we're looking at some of the redlines.  I believe the guidance

15    we have gotten from the Court today will be helpful to push

16    forward on getting a plan enacted.

17        It is of paramount importance to us that we start to get

18    production of documents across all -- all directions, because

19    that's what's going to help us in terms of making sure we can

20    keep to any deadlines or proposals for when depositions will

21    occur.

22        So we will go back today and circle up with the other

23    parties on the proposal we had made, and see what we need to do

24    to move forward.

25          **THE COURT:**  Okay.

1    Let me ask the DPPs.  What efforts have you all made with

2    respect to a discovery plan for this case?

3        **MR. BORDEN:**  I think it's been similar.  We have, you

4    know, talked about the limits and the -- and the same

5    stipulation that the other -- other counsel referred to.

6        **THE COURT:**  Okay.  So what -- what I think needs to

7    happen, apart from my remarks I've already made, is -- but I'm

8    thinking about Ms. Shirinova's remark that, you know, we can't

9    have a situation where a lack of production holds up

10   everything else.  So we're going to have to move these things

11   along.

12       And as I said before, I'm not going to insist that all

13   production be completed before depositions start.  But for

14   obvious reasons, it would be very helpful for production to be

15   substantially complete before you start depositions.

16       So we don't -- because what I don't want to have happen is

17   someone coming back to the Court and saying: Oh, well, we

18   didn't get X-Y-Z document before we took this person's

19   deposition; therefore we need them back again.  That should be

20   avoided.  And all parties should have an interest in having

21   that be avoided.

22       Nevertheless, there may be some depositions where it's not

23   document-intensive, or the custodian's files can be quickly and

24   easily searched and, you know, the potentially relevant

25   material processed more quickly.  That kind of thing.  And

1    that's the kind of thing that you all should give some really

2    serious thought to in terms of your planning.

3        But I think that a discovery plan should have a

4    substantial completion date for document production.  Even

5    though Judge Davila hasn't set a discovery cutoff for any of

6    those things, I think in your own planning you should structure

7    -- and a -- and a beginning date, and a plan for getting

8    through depositions.  And those things don't necessarily need

9    to follow sequentially, but again, something that you all

10   should discuss.

11       So as to these particular disputes before the Court, as to

12   Docket No. 161, which is the Shens' deposition, I'm not going

13   to order anything in particular as to that right now, because I

14   think this need to be worked into your discovery plan.  And

15   that's Document 162.

16       I'm going to require coordination.  I'm not going to tell

17   you exactly what to do, but you are going to need to talk about

18   it.

19       And then my thought is the way we can tee up disputes

20   about coordinated discovery is that each -- all of the parties

21   will need to present those matters to me for resolution.

22       So one thought I had in thinking about an approach to this

23   problem is, you know, you could present your -- you know, an

24   outline of your discovery plan, covering all the relevant

25   aspects of discovery.  And then to the extent there's

1   agreement, you would note that.

2        To the extent there's disagreement, you make me a little

3   table that says:  DPPs' proposal, IPPs' proposal, defendant's

4   proposal.  Something like that.  So that I can see what the

5   parties' disagreements are in a very concise way.  And begin to

6   just work through it, until we get a plan that we can

7   implement.

8        That was my thought.  I'm happy to hear from you all if

9   you have a different thought, a different approach.  I don't

10  know what your current plan that's in draft form looks like, so

11  I don't want to add complication or problems to something

12  you've already sort of got going and hope will be successful.

13  But, that was my thought.

14       So let me start first with Ms. Leonida or Mr. Borden on --

15  from the DPPs' perspective.

16       **MR. BORDEN:**  Well, let me -- can I make one

17   observation --

18       **THE COURT:**  Sure.

19       **MR. BORDEN:**  -- Your Honor?  Which is that there were

20   a number of IPP cases that were filed, and those cases were

21   all consolidated.

22       **THE COURT:**  Yes.

23       **MR. BORDEN:**  The DPPs' case is not consolidated --

24       **THE COURT:**  I know.

25       **MR. BORDEN:**  -- with the IPPs' case.  And so in terms

1    of depositions, in these Zoom depositions that we're talking

2    about, they would have to be done twice, anyway.  And it's

3    just a question of when.

4         THE COURT:  Why would they have to be done twice

5    anyway?

6         MR. BORDEN:  Because these are separate cases.  Our

7    case is not their case.  Their case is not our case.

8         THE COURT:  I know they're separate cases, but they

9    are coordinated.  And why aren't -- my understanding was that

10   the parties are sharing discovery as between the cases.  Is

11   that not true?

12        MR. BORDEN:  Um, I don't know about sharing

13   discovery.  We have similar discovery requests that we've

14   propounded and that they've propounded.  And, there's no

15   reason why we shouldn't be able to share discovery.  But we're

16   entitled to take depositions of their witnesses, as is the

17   IPPs.

18      And so this kind of coordination that Mr. Frost is talking

19   about for depositions is really talking about doing the

20   depositions on back-to-back days as opposed to maybe doing them

21   on two days that are temporally separated.  And there's no

22   additional burden imposed by that.

23        THE COURT:  Are you suggesting, Mr. Borden, that the

24   DPPs are going to take a seven-hour deposition of Jean Shen,

25   and then the IPPs are going to take a seven-hour deposition of

1  Jean Shen, covering the same topic?

2      **MR. BORDEN:**  I don't know what IPPs are going to do.

3  We are entitled to take a seven-hour deposition of Jean Shen

4  in our case.  We're entitled to take a seven-hour deposition

5  of Sylvia Shen in our case.

6      **THE COURT:**  And why do you think that's true?  Why do

7  you think that that is necessarily true, that you're entitled

8  to do that?

9      **MR. BORDEN:**  Because the federal rules entitle us to

10  take the depositions of the other side's witnesses, up to

11  seven hours.

12      **THE COURT:**  Yes, but I'm not sure that the federal

13  rules require that in the situation that we have here.  Or

14  that would be disproportionate to the needs in the case.

15      So if what I'm understanding, if the DPPs and the IPPs

16  intend to depose the same witness about the same stuff for

17  their separate cases, and those cases have been coordinated by

18  Judge Davila, I'm just not sure that's what Judge Davila had in

19  mind.  But maybe it's worth clarifying.  If that's really -- if

20  that's really the position that the DPPs are taking.

21      That was not my understanding from the papers that that

22  was the position that you were taking, that you will

23  independently take every single witness's deposition, even

24  though the IPPs have the same interest in taking the deposition

25  of the same witnesses, and that the parties will not have to

```
 1   coordinate or limit the hours of deposition in any way; they

 2   can take entirely duplicative discovery of the same witness.

 3             MR. BORDEN:  I don't think --

 4             MR. FROST:  Your Honor --

 5             THE COURT:  Mr. Frost --

 6             MR. FROST:  My apologies.

 7             THE COURT:  Talking with Mr. Borden right now.

 8             MR. FROST:  Yes.

 9             MR. BORDEN:  I don't think that the IPPs would want

10    to take duplicative discovery of discovery that we've done,

11    and I don't think that we would want to take duplicative

12    discovery of discovery that they've done.  But, you know, we

13    are entitled to take the discovery in our case that we need

14    to, to do.

15        And I don't know of any authority that would permit a

16   court to restrict us from taking a deposition.  And, you know,

17   based on what, you know, people in another case want to do

18   strategically.

19        And that's kind of the problem, is that we've been

20   cooperating very extensively on everything.  But in these rare

21   instances like these two witnesses where a dispute arises, we

22   should not be limited in our ability to take them.

23        And if we ask a lot of great questions and the IPPs don't

24   have any questions, great.  Their deposition is going to be

25   very short.
```

1        If they have a bunch of stuff based on documents that we

2   don't have that they want to ask, great.  Their deposition's

3   going to be longer.

4        But, you know, it's not something that we should be

5   cabined by.

6            **THE COURT:**  All right.  Let me ask the IPPs for their

7    view.

8        Do you agree with Mr. Borden's description of the current

9   situation?  And by "current situation" I mean the relationship

10  for purposes of discovery of the DPPs' action and the IPPs'

11  action.

12           **MS. SRINIVASAN:**  Your Honor, obviously we haven't had

13   any depositions, so how that unfolds for the depo process is

14   still an open issue.  We have tried to streamline and reduce

15   duplicative work where it makes sense to do so.  I -- for

16   purposes of a discovery plan, it would be helpful to sort

17   through some of these issues.

18       I -- I -- you know, our view, very much so, is about

19  making sure there's an orderly progression for us to get to

20  depositions.  I do think we would certainly try in good faith,

21  as we would in any case where there are multiple layers of

22  parties taking depositions, to avoid cumulative questioning or

23  seeking cumulative testimony from the witness, and potentially

24  being able to reduce the amount of time that witness is

25  deposed.

1      Beyond that, it is a bit hard for me to speak to DPPs'

2  position as to their own -- you know, what they would like to

3  do in the deposition.

4      So again, from our perspective, we don't want to be in a

5  perspective where we are coordinated for a deposition that's

6  not on a timeline that we think's appropriate for us.

7      But, you know, absent that, we are happy to work with all

8  parties to figure out a good discovery plan that allows us to

9  proceed, and to work to make it as efficient as possible.

10      **THE COURT:**  I appreciate that.  But I think what

11  Mr. Borden is saying is that the Court doesn't have authority

12  to require you to coordinate on depositions.

13      **MS. SRINIVASAN:**  Your Honor, our -- whether it's

14  authority or not, we have certainly been in cases where we

15  have been coordinated, and the parties have agreed to do it

16  that way, and proceeded that way.

17      So we've also been in class cases where the parties have

18  largely proceeded that way, but maybe had some instances where

19  they could not.  Or where the needs of the IPPs and the DPPs

20  diverged.

21      But, you know, our experience is, in the multi-tier cases,

22  quite a bit of the discovery has been coordinated.  That's just

23  been our practical experience.

24      **THE COURT:**  Uh-huh.

25      **MS. SRINIVASAN:**  What I would say to the Court is

1    obviously we are not trying to dictate what the DPPs have to

2    do in their portion of the case.  And so we're trying to

3    thread that needle a bit before the Court.  But, our

4    experience largely has been one of being coordinated across

5    these issues.

6         There may be instances here where there are certain pieces

7    of discovery where that is not feasible, or doesn't make sense

8    to do.

9         **THE COURT:**  Right.  I'm sure there may be differences

10   of need from the different -- for the different parties.  But

11   the point that Mr. Borden is making is that -- if I recall his

12   language correctly -- the DPPs are entitled to take whatever

13   depositions they want, whenever they want them.  And so that's

14   the question that I think has been raised.  And that may

15   require some consultation with Judge Davila.

16        So let me hear from Mr. Frost.  What do you believe is the

17   Court's authority with respect to coordination of depositions?

18        **MR. FROST:**  I think -- I think the proposition that

19   the Court doesn't have the authority to put reasonable limits

20   on depositions is, frankly, an absurdity.  This Court has the

21   discretion, the ability, and the authority to set whatever

22   reasonable limits are necessary to ensure the just,

23   expeditious, and efficient resolution of cases.

24        And the fact that they are suggesting that you don't have

25   the authority do that frankly sounds like an affront to the

1    discretion of the Court, and the authority of the Court.

2        What I will tell you --

3        **THE COURT:**  Sorry.  I've looked at the orders that

4    Judge Davila has issued, consolidating and coordinating.  And

5    he does not address this question specifically.

6        Are you -- am I missing some order, or do you believe that

7    there is a particular order that I should --

8        **MR. FROST:**  I have not seen a particular order that

9    requires the discovery specifically to be coordinated, but the

10   reality is the coordination order is not meant to allow the

11   parties to pick and choose what they want to coordinate and

12   what they don't.

13       The reality is that the plaintiffs are the one who

14   requested coordination, and the IPPs wrote a very extensive

15   brief where they explained all of the reasons that coordination

16   was necessary to assure the efficient resolution of these

17   cases.

18       I will tell you, just so we're clear on what we're talking

19   about, Mr. Borden is not asking for seven-hour depositions.

20   Mr. Borden has asked for 14-hour depositions for each party,

21   because there are translators involved.  And so you're talking

22   14 hours on two separate occasions.  There is no way to do that

23   efficiently in two separate settings, and it is not fair to the

24   parties.

25       We are working on a production; we'll get it done; we can

1  get this thing moving.  We'll work on a discovery plan.  But

2  the suggestion right now that they should be allowed to force

3  these witnesses to sit for depositions before the IPPs are

4  ready to participate in those depositions ensures that they're

5  going to be there twice as long.

6      And I do not believe what Mr. Borden is saying is correct,

7  that it would have to be back-to-back depositions.  We can

8  agree that the parties can all sit in the same deposition, and

9  the caption of the case will bear both case numbers.  That's

10  just the way coordination can work, if they're willing to do it

11  or if the Court orders it.

12      But the suggestion the Court doesn't have the authority to

13  do that is a bit preposterous.

14          **THE COURT:**  All right.  So, thank you all.

15      Here's what I'm going to order for now.  I'm going to

16  order that you all work on an agreed strategy.  Maybe you

17  cannot come to agreement on the depositions and other things.

18      And I'm going to figure out what Judge Davila had in mind.

19  And it may be that it will be appropriate for you all to brief

20  that to him.  But I'm going to look back at the docket, and see

21  if I can understand and discern what he had in mind about

22  coordination here.

23      So, I will issue a further written order on this point.

24  And I think that relates specifically to Docket 162.

25      But on 161, which is the Shens specifically, I do want to

1    have the parties see if they can work out some schedule, some

2    timing for the Shens' deposition.  Because at least as to those

3    folks, it sounds like it is identical subject matter.  And that

4    the difference is a strategic one.

5        So it may be absolutely appropriate to have these

6    depositions sooner, rather than later.  But I'd like for you

7    all to confer further.  And by "you all" I mean the DPPs, the

8    IPPs and the defendants.

9        Because I'm not dictating at this point that there has to

10   be document production.  It doesn't seem to me like that's

11   necessary, but I don't -- since I don't have the benefit of

12   much information about the relevance, apart from what's been

13   shared in this hearing, it's not -- it's not really possible

14   for me to make that decision right now.

15       So on the Shens -- well, let me ask this.  How long do you

16   all think that you would need to talk to each other to confer

17   about the voluntary coordination that you could do on aspects

18   of discovery?  Not just depositions but document production,

19   ESI efforts, search terms, those kind of things.

20       How long do you think you all would need to sort of

21   crystallize whatever agreements you're going to be able to

22   reach and whatever disagreements are going to come up for

23   something that you could share with me?

24           **MR. FROST:**  Your Honor, from our perspective, I have

25    an arbitration that starts next week in New York that's going

1    to be running until May 7, so I can work in between that.  I

2    don't want to delay that.  But it may take me a minute longer

3    on response time, just because of that.  It will be kind of

4    evenings when I'm responding.

5        So I don't want delay it until after that, but it will

6    take me just a minute longer, because I won't be available

7    during the day.  Only in the evenings.

8            **THE COURT:**  Okay.  We can't wait until May, I don't

9    think.

10           **MR. FROST:**  Of course.

11           **THE COURT:**  I appreciate the remark about your

12   availability.

13       Let me ask the DPPs about timing.

14       **MS. LEONIDA:**  Well, Your Honor, this is Tuesday.

15   We're happy to meet and confer and do what we can before

16   defense counsel leaves for his prior commitment.

17           **THE COURT:**  Don't you all have another status -- I'm

18   sorry.  You were sort of having these every -- every two

19   weeks, sort of scheduling or -- conferences about the ESI

20   problem, was my understanding.  I think you have a report due

21   to me at the end of the week on that.

22       Is that correct?

23           **MR. FROST:**  That is correct.

24           **THE COURT:**  Okay.  So have you already met on those

25   matters?  Or is that still to be done?

1      **MR. FROST:**  We're still trying to finalize, I

2   believe, the DPPs' availability.

3      **THE COURT:**  Okay.  I'm just trying to see if we can

4   maybe fit this into whatever your existing schedule of

5   conferencing is.

6   Let me hear from the IPPs on timing.

7      **MS. SRINIVASAN:**  Your Honor, it would be helpful, I

8   believe, if the Court set a deadline maybe ten days out for us

9   to report back on where we are.  We obviously are conferring

10   about a lot of stuff, both by email and in person, including

11   the ESI order.

12   But I -- if we are to working on trying to figure out a

13   plan and start the outlines of moving forward with a discovery

14   plan, I really do want to make sure that while we do have a

15   view how that should proceed, that we doesn't end up not even

16   starting work on that discovery plan until May or June.  I

17   think at this stage, we need to move forward on that.

18   So we can make ourselves available as -- as the DPPs and

19   defense counsel are available to talk about coordination and

20   the broader discovery plan issue, immediately.

21      **THE COURT:**  Okay.  So, so I do think you do -- you

22   need to come up with a coordinated discovery plan on the

23   discovery that, at the very least, can be coordinated.

24   And I'd like for you all to report back to me on the

25   status of any agreements or disagreements, by the 23rd.  So

1   that's a week from Friday.  April 23rd.

2       And that can just be --

3           **MR. FROST:**  (Inaudible)

4           **THE COURT:**  I'm sorry?

5           **MR. FROST:**  No, I'm sorry.  Go ahead.

6           **THE COURT:**  You know, I suggested a format in which

7   you could sort of tee up any disputes, and report to me areas

8   of agreement.  If you want to come up with some other way of

9   presenting that to me, that's fine.  I don't -- you know, I

10  don't want to turn this into some massive discovery brief.

11  But at the same time, I do want to appreciate what the areas

12  of disagreement are, and why.

13      So, you know, see if you can come up with some reasonable

14  way to present that to me.  A chart format is often a good

15  choice, so I can see everybody's position side by side.  But

16  that's what I would suggest to you.  And I'd like to have that

17  by the 23rd.

18      So, Mr. Frost, did you have a problem with that date?  Or

19  was that okay?

20          **MR. FROST:**  No, no, no, I was actually going to say

21  that we are actually dark that day in my arbitration, so

22  that's fine for us.  But that really just relates to a

23  submission.

24      It's that following week, if you want to have hearing,

25  that it gets a little bit tricky for me.  But I can see if I

1  can get permission from the arbitrator to step away for a

2  morning.  Depending on what you decide on a hearing.

3          **THE COURT:**  And do you have any colleagues who could

4   be available in your absence for this purpose?

5          **MR. FROST:**  If necessary.

6          **THE COURT:**  All right.  We'll come to that bridge

7   when we get there.  If we need to have a hearing, we'll have a

8   hearing.

9        So that's how I'm going resolve the matter for now.  I

10  will issue a short order just to give you all, you know,

11  something on the docket to refer to, as to both of these

12  matters.

13       And then I will -- I will let you know further, perhaps

14  after I see your proposal for coordinated discovery, what my

15  thoughts are about the point that Mr. Borden raised about DPPs'

16  entitlement.

17       Is there anything further from any parties for today?  Let

18  me ask the DPPs first.

19          **MR. BORDEN:**  Just to understand, just for clarity,

20   the Court is ordering that we can't depose these witnesses

21   right now?

22          **THE COURT:**  Right.  I'm not going to allow you to

23   depose the witnesses right now, until I see the discovery

24   plan, the efforts, the issues, how this all fits into the

25   context of the rest of the discovery.

1    And given that what's been shared with me is that both

2    witnesses are desired to be deposed by both the DPPs and the

3    IPPs on the same subject matter, I'm skeptical about the -- I'm

4    skeptical about your entitlement to depose them now for

5    strategic reasons.

6        So the strategic reason has not been sufficiently

7    articulated at this time, why that makes sense in the context

8    of discovery in this case.

9        So --

10            MR. BORDEN:  Would you like me to respond more on the

11    strategic reason, Your Honor?  Because --

12            THE COURT:  Well, I was told that you didn't want to

13    share with me the strategic reason, so I took you at your word

14    and didn't push.  If you don't want to share your strategic

15    reason in this hearing --

16            MR. BORDEN:  I've given -- I've given some of the

17    strategic reason.  Our strategic reason is that we think that

18    we'd like to lock the witness into a story early, which is

19    something that we typically do in class actions and every

20    other kind of case.  And that's the strategic reason.

21        And, and, and I don't think I heard the IPPs saying that

22    they were going to ask the same questions that we were going to

23    ask, or that they were going to duplicate the questions that we

24    ask to this witness.  Or that they were going to, you know,

25    cumulatively ask questions on top of whatever we ask.

 1          But, we are entitled to get their story, and that's what

 2     we want to do.

 3          **THE COURT:**  Okay.  So I'll consider your arguments.

 4     But I'm not inclined to allow -- to create a situation where

 5     witnesses are going to be deposed because one plaintiff wants

 6     to depose them, and then because they're relevant for the same

 7     reason, another set of plaintiffs is going to depose them

 8     later.  That just doesn't make sense to me as a way to conduct

 9     discovery in this case.

10          So, again, it may be that they get deposed first before

11     discovery is completed.  But not right now.  I'm not going to

12     order it right now.

13          So if your question is am I ordering it today that you get

14     to depose these witnesses right now, no, I'm not doing that.

15          I'm going to consider the question further.  And I may

16     consider it in light of the overall discovery plan that the

17     parties present to me, and their disagreements on that plan.

18          Okay?  Anything further from the IPPs?

19          **MS. SRINIVASAN:**  No, Your Honor.  (inaudible)

20          **THE COURT:**  I'm sorry, you're breaking up a bit.  Can

21     you --

22          **MS. SRINIVASAN:**  We appreciate your guidance on the

23     topics we've discussed today in getting the discovery plan

24     together.

25          **THE COURT:**  Okay.  Very well.

1        Anything further from the defendants?

2            **MR. FROST:**  Nothing, Your Honor.  Thank you for your

3    time.

4            **THE COURT:**  Okay.  Thank you all.  This matter is

5    concluded.

6            **MR. BORDEN:**  Thank you, Your Honor.

7            **MS. LEONIDA:**  Thank Your Honor.

8            **THE COURTROOM DEPUTY:**  Court is adjourned.

9        (Proceedings concluded)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Belle Ball
_____

Belle Ball, CSR 8785, CRR, RDR

Thursday, April 15, 2021