January 4, 2022

**VIA ECF**
The Honorable Virginia K. DeMarchi
United States District Court for the Northern District of California
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

>    **Re:   Joint Discovery Letter Brief Regarding Non-Party Discovery**
>    ***In re Telescopes Antitrust Litig. (All Indirect Purchaser Actions)*,**
>    **No. 5:20-cv-03639-EJD-VKD (N.D. Cal.)**

Your Honor,

Indirect Purchaser Plaintiffs ("IPPs") and non-party, Orange County Telescope, Inc. ("OCT"),[1] respectfully submit this discovery letter brief pursuant to Section 4(c) of the Court's Standing Order re Civil Cases.

## STATEMENT OF DISPUTE

Whether the Court should enter an order compelling non-party OCT to produce transactional data reflecting (1) purchases of telescopes and telescope products from Defendants and Co-Conspirators[2] and (2) sales of such telescopes and telescope products to IPPs.

## IPPs' POSITION

**I.   Background**

On June 16, 2021, IPPs subpoenaed OCT pursuant to Federal Rule of Civil Procedure ("Rule") 45 to obtain purchase and sales data for telescopes and telescope products. IPPs' investigation shows OCT purchased and sold over $3 million of telescopes and telescope products from the Synta Defendants, including Celestron Acquisition, LLC, from FY2013 through FY2021. On June 17, OCT accepted service of the subpoena and was thus required to serve objections thereto by July 1. Rule 45(d)(2)(B).

IPPs and OCT engaged in a non-substantive telephonic meet-and-confer on August 19. On August 25, IPPs requested OCT provide the following information to understand the responsive material in OCT's possession: (1) the type of database(s) on which OCT maintained purchase and sales information; (2) the date range of such data; and (3) the categories of information the database(s) maintained. This information is what this District expects parties and non-parties to

---

[1] OCT is based in Santa Ana, California and has consented to this Court's jurisdiction for purposes of resolving this dispute.
[2] Capitalized terms not defined herein take their meaning from the IPPs' operative complaint, Dkt. No. 197.

exchange for purposes of facilitating discovery. *See generally* Guidelines for the Discovery of Electronically Stored Information (N.D. Cal.) ("ESI Guidelines"). Such information would permit IPPs to narrow the subpoena and tailor the requests to the non-party, if necessary.

On August 27, OCT served untimely objections.[3] OCT indicated it would meet-and-confer, but it did not make itself available until October 5, five weeks later. On October 5, OCT stated its refusal to produce *any* responsive material until the subpoena was narrowed but would not provide the information in IPPs' August 25 request necessary to narrow the requests. OCT additionally indicated it would not engage in future substantive discussions.

Following the October 5 meet-and-confer, IPPs offered to narrow the subpoena, as reflected in their email of the same day. IPPs proposed the following: *first*, if OCT maintained purchase and sales data on an electronic database, IPPs would accept spreadsheets exported from the database of telescope and telescope product purchases and sales; *second*, IPPs would limit the scope of their requests to products sold by the Defendants or Co-Conspirators listed in the subpoena; *third*, IPPs would limit the temporal scope of the subpoena to the earliest date electronic data was available, if later than the start of the relevant time period; and *fourth*, upon receiving additional information regarding OCT's transactional data, IPPs would further narrow the subpoena. Nearly a month later, on November 3, OCT informed IPPs it would stand on its prior objections.

Courts have ordered production when faced with similar obstructionism. In *Mondragon v. Target Stores*, as here, objections were made to a subpoena "on standard, boilerplate bases" including overbreadth and invasion of privacy.[4] No. CV 16-728-R, 2017 WL 8231362, at *1-2 (C.D. Cal. Apr. 18, 2017). That objector, like OCT, failed to timely meet-and-confer, "argued that the subpoena was overbroad as to time and substance despite" the requesting parties' "offer to limit the time and scope of the subpoena," and "that Defendants already had access to [the information sought]." *Id.* at *2-3 (noting five-week delay in responding to meet-and-confer request). The *Mondragon* court considered the stonewalling there—which was shorter in duration than the time IPPs have engaged OCT—sufficient to decline reconsideration of its prior order compelling production and imposing sanctions in the form of attorneys' fees. *Id.* at *3.

## II.     Argument

### A.     IPPs Have Legitimate Need for the Information Subpoenaed

IPPs have a substantial and legitimate need for OCT's transactional data, which courts routinely require non-parties to produce in indirect purchaser litigation.

---

[3] *See* Ex. 1, 3d-Party Orange County Telescope, Inc.'s Objections to Subpoena to Produce Docs., Information, or Objects or to Permit Inspect of Premises in Civil Action of Aug. 27, 2021. IPPs note that, despite IPPs' objection, OCT attaches Exhibits 2-4 in violation of the Court's Standing Order for Civil Cases.

[4] If anything, the privacy concerns in *Mondragon* were more serious than here, as personal medical records were sought.

In antitrust litigation, indirect purchasers must demonstrate that the supracompetitive overcharge arising from the unlawful cartel passed from the defendants to the direct purchasers and then to the indirect purchasers. *See, e.g.*, *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 605-06 (N.D. Cal. 2010) ("*LCDs*") (accepting the expert's pass-through methodology, using transaction data); *In re: Cathode Ray Tube (CRT) Antitrust Litig.,* 301 F.R.D. 449, 455 (N.D. Cal. 2014) ("*CRTs*") (discussing importance of obtaining pass-through discovery); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 613 (N.D. Cal. 2009) ("*SRAM*") (non-party transactional data relevant to pass-through analysis). The Rules provide for liberal discovery, and relevance is construed broadly to include any information that is proportional to the needs of the case. *Ever.flow Tech Corp. v. Millennium Elecs., Inc.,* No. 5:07-cv-05795, 2009 WL 3565558, at *1 (N.D. Cal. Oct. 27, 2009).

The transactional data IPPs seek is viewed by district courts as relevant and important and is routinely produced in antitrust cases like this one. *See Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. 1:09-cv-00560, 2012 WL 1940662, at *6 (E.D. Cal., May 29, 2012) (ordering production of transactional data, finding it "foundational information [the] plaintiff needs."); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 376 (M.D. Fla. 2018) (distributor transactional data directly relevant to expert analysis of class certification); *see also* Order by Special Master Grant'g Indirect Purchaser Pls.' Mot. to Compel the Produc. of Docs. from Third-Party, Jabil Circuit, Inc., *In re: Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-1819-CW (N.D. Cal. Mar. 1, 2010), ECF No. 967; *In re: Online DVD Rental Antitrust Litig.*, No. 09-MD-02029 (N.D. Cal. Oct. 20, 2010), Tr. of Proceedings (Doc. No. 268), at 3-4 ("[t]he production of [transactional] data in an antitrust case is *routine and happens in every case*.").

Here, IPPs will compare the prices paid by retailers and distributors for telescopes and telescope products to the resale prices and markups paid by IPPs to show pass-through of the supracompetitive overcharge. Courts, including in *LCDs*, *CRTs*, and *SRAM*, generally accept these techniques that are critical to the prosecution of indirect purchaser antitrust actions. OCT's data reflecting over $3 million of purchases and sales of telescopes and telescope products is therefore relevant and necessary to establishing pass-through.

### B. IPPs Have Narrowed the Subpoena in Good-Faith

IPPs engaged in good-faith to reduce the burden and narrow the scope of their subpoena. Indeed, as described, *supra*, at Section I, IPPs endeavored to limit the subpoena despite the absence of basic information regarding OCT's transactional data.

OCT has still not provided any information to facilitate negotiations after nearly *six months*. In particular, OCT has not indicated whether it maintains data electronically or provided the temporal scope of such data. This violates this Court's standing orders. *See* ESI Guidelines.

Moreover, OCT has failed to substantiate any argument that IPPs' subpoena is unduly burdensome. As the party opposing the subpoena, OCT must show the subpoena is "unreasonable and oppressive." *Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL

1508894, at *4 (N.D. Cal. Apr. 10, 2013); *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2015 WL 8482256, at *1 (N.D. Cal. Dec. 10, 2015) (applying 2015 amendments to the Rules). OCT relies on boilerplate and does not raise specific burden objections—because it cannot. Here, the burden of production is low, as the information sought is likely kept in the ordinary course of OCT's business operations on an electronic database from which IPPs merely seek an export of the relevant purchases and sales data.

### C.  The Protective Order Adequately Addresses OCT's Privacy Concerns

IPPs have stipulated to the Protective Order, ECF No. 158, demonstrating the seriousness with which they take privacy issues. The Protective Order establishes a comprehensive framework for addressing purportedly confidential documents produced in this litigation. Specifically, it allows non-parties to designate material as "CONFIDENTIAL – ATTORNEYS' EYES ONLY." It also limits IPPs' use of such material to the prosecution or settlement of this litigation and restricts disclosure to specific individuals necessary to fulfill this purpose. *See id.* § 7. It further contemplates, and offers procedures for, situations where designated material is subpoenaed or ordered produced in other litigation, is inadvertently produced, or in which an unauthorized disclosure occurs. *Id.* §§ 8, 10-11.

Moreover, the data sought from OCT will be aggregated into IPPs' experts' report and thus will not be specifically traceable to OCT. Yet OCT offers no reason why the Protective Order is inadequate to address these concerns. OCT does not possess a unique confidentiality concern different from any other non-party impacted by this litigation. Indeed, although other non-party distributors and retailers have raised confidentiality concerns, none have refused to comply with the subpoena on this ground.

### III.  Conclusion

IPPs therefore request that this Court issue an order requiring OCT to produce the purchase and sales data for telescopes and telescopes accessories, purchased from or manufactured by Defendants or their Co-Conspirators, for the relevant time period within 10 business days.

## OCT's POSITION

As an initial matter, Orange County Telescope, Inc. ("OCT") was given until August 27, 2021, to respond to the subpoena and did so. *See* Ex. 4 (communications documenting August 27, 2021 response date). [5] OCT's response and objections were therefore timely.

More substantively, OCT repeatedly attempted to meet and confer with IPPs concerning the excessively overbroad scope of IPPs' subpoena to OCT (Ex. 2), yet even though IPPs acknowledged that their subpoena to OCT was vastly overbroad, IPPs refused to provide any revised subpoena with meaningfully and directly targeted requests for production. *See* Ex. 3, communications among counsel. Instead, IPPs maintained their position that the burden in the first instance falls upon OCT, who must be required to guess at the information truly sought by IPPs in their admittedly overbroad subpoena. ***While purporting to narrow the scope of the subpoena, IPPs confirmed that they are entirely capable of narrowing the subpoena, but IPPs refuse to do so until <u>after</u> OCT first responds and produces data***.

***OCT's position is that this process proposed by IPPs improperly and unreasonably shifts the burden to OCT.*** *See, e.g.*, *Soto v. Castlerock Framing & Transport, Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (noting that courts "weigh the burden to the subpoenaed party against the value of the information to the serving party" in determining whether a subpoena poses undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (identifying factors for courts to consider including relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed) (citing *United States v. IBM*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979). IPPs must, in the first instance, prepare and submit a properly tailored subpoena which discretely identifies categories of documents for production that are relevant, necessary to IPPs' case, which are not excessively overbroad and burdensome, and which cannot be obtained elsewhere, particularly parties to this action. IPPs have failed and refused to do so.

Instead, IPPs served and maintained a patently overbroad subpoena which requested "All Documents concerning [OCT's] purchase(s) of Telescope Products and Telescope Components" and "All electronic transactional data . . . for [OCT's] purchases of Telescope Products and Telescope Components", as well as for sales, for a ***nineteen-year period***. *See* Ex. 2, IPPs' Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Orange County Telescope, Inc. (the "Subpoena"), Request for Production Nos. 1-3. These two categories were without any limitation as to any specific purchaser or seller (such

---

[5] Exs. 2, 3, and 4 are submitted by OCT pursuant to Chambers Standing Order Paragraph 4(c)(vi) (authorizing attachment of specific discovery material and responses). Ex. 2 (the subpoena itself) was not offered by IPPs but is clearly proper and necessary for consideration. OCT further contends that OCT's relevant meet and confer materials in Exs. 3-4 comprise "responses" to the subpoena within the meaning of Paragraph 4(c)(vi), or are otherwise sufficiently valuable yet short that they should be considered because they themselves demonstrate and explain how, why, and when OCT has responded to the subpoena as it has, and to that end and in the alternative OCT hereby concurrently requests leave to submit them and asks that the Court consider them.

as any Defendant) or any type of document or electronic data. IPPs' subpoena set forth non-exhaustive lists for each of these already overbroad categories of documents, seeking information on twelve, twenty-nine, and twenty-eight subparts, respectively. *See* Ex. 2, Subpoena, Request for Production Nos. 1-3.

IPPs acknowledge the overbreadth of this subpoena and the burden imposed upon OCT, yet IPPs refused to provide a narrowed subpoena to OCT for consideration. *See, e.g.*, *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003) (affirming the propriety of a motion to quash for a subpoena that was "very broad" and that "no attempt had been made to try to tailor the information request to the immediate needs of the case"). IPPs' position that they have already narrowed the scope of the subpoena is misleading and disingenuous as IPPs' positions confirm that IPPs were and are capable of narrowing the subpoena, but IPPs simply refuse to do so until *after* OCT first responds and produces data. Furthermore, IPPs claimed that they would accept spreadsheets exported from OCT's database of product purchases and sales; however, IPPs refused to narrow or specify the type of data sought, thus maintaining that they sought "All electronic transactional data", including but not limited to the twenty-nine or twenty-eight subparts set forth in the subpoena. *See* Ex. 2, Subpoena, Request for Production Nos. 2-3. IPPs have failed to specify the precise information sought, and in the absence of any such specification, it is unclear what relevance this unspecified data has to this litigation or IPPs' claims. Requiring OCT to produce potentially irrelevant data in the first instance, only to have IPPs return and demand further information in a subsequently narrowed subpoena (as IPPs have expressed their intent to provide a narrowed subpoena after OCT's production), reverses what is the proper process. This incorrectly shifts the burden to OCT to overproduce unnecessary materials while IPPs impose a further subpoena and further burden on OCT.

***Since IPPs never issued a revised subpoena with meaningfully narrowed requests, OCT maintained its objections, as the initial subpoena was and is vastly overbroad and burdensome to the point of being harassing***. IPPs have admitted that they can narrow the subpoena but have offered no explanation for their refusal to do so. OCT contends that this Court should require IPPs to adhere to their own position by issuing a properly narrowed subpoena to OCT before OCT is required to respond to any such subpoena. OCT understands that third parties have an obligation to produce documents to a properly issued subpoena, and OCT is not objecting to producing *any* documents or data whatsoever. Rather, as OCT stated in its written objections to IPPs, OCT was willing to meet and confer – and OCT did in fact meet and confer – concerning the scope of the subpoena. *See* Ex. 3. Upon issuance of a narrowed and properly tailored subpoena, OCT will consider such subpoena and respond appropriately.

OCT also asks the Court to keep front of mind that OCT is a third-party to this litigation, and a minor third-party at that. On information and belief, IPPs have already sought discovery from parties in this action, and IPPs have actually already obtained at least some of this information elsewhere (likely from the parties in this litigation). Furthermore, on information and belief, IPPs have issued thirty such similar or identical subpoenas to third parties, without regard to the scope or scale of the third-party's relevance, purchases, or sales. IPPs note that OCT purchased and sold telescopes and telescope products from the Synta Defendants, and include a specific dollar figure of those sales for a specific time period. IPPs have thus acquired at least a portion of this

purportedly relevant information from Defendants; it is unclear what additional specific information IPPs require from OCT, and whether IPPs have attempted to obtain such information from Defendants prior to seeking it from OCT. *See Soto v. Castlerock Framing & Transport, Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) ("In general, there is preference for parties to obtain discovery from one another before burdening non-parties with discovery requests. . . . [W]here plaintiffs have not shown they attempted to obtain documents from the defendant in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party.").

For IPPs to demand that OCT reproduce the same data is duplicative and unnecessarily burdensome upon OCT, a non-party. This is yet further basis for IPPs to issue a narrowed subpoena, tailored to the information what IPPs do not yet possess and which is necessary for this litigation. IPPs have refused to do so, instead placing an undue burden upon a small third-party which would result in significant expense being incurred by OCT, effectively crushing a small business based upon this excessively overbroad subpoena. ***Accordingly, OCT respectfully requests that this Court require IPPs to issue a narrow, properly tailored subpoena specifying the precise, relevant information required which is not already within the possession of IPPs, thus quashing or modifying IPPs' initial overbroad and excessively burdensome subpoena to OCT.***

## REQUEST FOR HEARING

**IPPs' Position:** IPPs believe that a hearing would be beneficial.

**OCT's Position:** OCT believes that IPPs' vastly overbroad subpoena speaks for itself, and that the parties have otherwise articulated their positions clearly within this written briefing. OCT therefore believes the matter is appropriate for determination based upon the papers but will of course be pleased to appear if the Court determines a hearing is necessary or otherwise would be productive.

Dated: January 4, 2022                     Respectfully Submitted,

*/s/ Reid W. Gaa*
Adam J. Zapala
Elizabeth T. Castillo
James G.B. Dallal
Reid W. Gaa
**COTCHETT PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

rgaa@cpmlegal.com

Lin Y. Chan
Eric B. Fastiff
Reilly T. Stoler
Jon Fougner
**LIEFF CABRASER HEIMANN**
**& BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
lchan@lchb.com
efastiff@lchb.com
rstoler@lchb.com
jfougner@lchb.com

Kalpana Srinivasan
Marc M. Seltzer
Steven Sklaver
Michael Gervais
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
asalinas@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Indirect Purchaser Plaintiffs*

*/s/ Damian D. Capozzola*
The Law Offices of Damian D. Capozzola
Web: www.ddclaw.com
E-Mail: ddc@ddclaw.com
Tel.: 213 533 4112

Fax: 213 223 2014
Cell: 213 448 2709

Downtown Los Angeles:
633 W. Fifth Street, 26th Floor
Los Angeles, CA 90071

South Bay:
609 Deep Valley Drive, Ste. 310
Rolling Hills Estates, CA 90274

*Counsel for Orange County Telescope, Inc.*

**FILING ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Reid W. Gaa, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Reid W. Gaa*

Reid W. Gaa
Cotchett, Pitre & McCarthy, LLP

**MEET AND CONFER ATTESTATION**

Pursuant to the Court's Standing Order in Civil Cases, and subject to the concerns expressed in Plaintiffs' Position above, I, Reid W. Gaa, attest that Indirect Purchaser Plaintiffs and non-party OC Telescopes, Inc. complied with the Standing Order's requirement to meet and confer. They met and conferred by phone and by email over the past two months about the subpoena, including most recently on November 3, 2021.

*/s/ Reid W. Gaa*

Reid W. Gaa
Cotchett, Pitre & McCarthy, LLP