October 10, 2022

**VIA ECF**

Hon. Virginia K. DeMarchi
United States District Court for the Northern District of California
San Jose Courthouse - Courtroom 2 - 5th Floor
280 South 1st Street
San Jose, CA 95113

        **RE:**    **Joint Discovery Letter Brief re Productions of Transaction-Level Sales Data; *In re Telescopes Antitrust Litig.*, Nos. 5:20-cv-03639-EJD (VKD), 5:20-cv-03642-EJD (VKD) (N.D. Cal.)**

Your Honor:

Indirect Purchaser Plaintiffs ("IPPs") and Direct Purchaser Plaintiffs ("DPPs") (collectively, "Plaintiffs") and Defendants Synta Technology Corp. ("Synta Taiwan"), Suzhou Synta Optical Technology Co., Ltd. ("Suzhou Synta"), Celestron Acquisition, LLC, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Nantong Schmidt Opto-Electrical Technology Co. Ltd., SW Technology Corporation, Synta Canada International Enterprises Ltd., Olivon Manufacturing Group Ltd., Joe Lupica, Corey Lee, Dave Anderson, Laurence Huen, Olivon USA, and Pacific Telescope Corp. (collectively, "Defendants") respectfully submit this joint discovery letter brief.

### Statement of Dispute

Plaintiffs have alleged a global conspiracy to fix, maintain, stabilize, and raise prices in the market for telescopes over a period spanning more than a decade. Plaintiffs first requested Defendants' transaction-level sales data on March 22, 2021, after which the Court entered as an Order the parties' stipulation that all such data would be produced on or before December 1, 2021. The parties dispute whether these productions are complete.

### IPPs' Position

The issue before the Court is straightforward: Defendants have not completed their transactional data productions, as they agreed to do.  Plaintiffs have pursued these productions for over six months through countless emails, six detailed letters, five meet-and-confer sessions, and

2460962.3

proposing six others that Defendants either ignored or unilaterally cancelled. The Court's intervention is necessary to ensure that these deficiencies do not arrest progress in the case.

## I.    Defendants have engaged in excessive delay.

Defendants have neither completed their productions nor committed to any timeline for resolving the many production deficiencies.

### A.    Defendants' data productions are nearly ten months overdue.

Defendants are already in violation of this Court's Order regarding production timelines, which adopted the parties' joint proposal following months of negotiation, and which ordered Defendants to complete production of transactional data on or before December 1, 2021. Order adopting Stipulation Re: Document Production Schedule ¶ 7, ECF No. 220 ("By no later than December 1, 2021, all Defendants will complete their production of transactional data").

When the parties agreed to the joint proposal, Defendants had been in receipt of Plaintiffs' data requests, shown at specifications 96 through 99 of the exemplar attached as **Exhibit A** hereto, for over six months.

### B.    Defendants' data productions to date are inadequate.

Because Defendants have withheld confirmation that the productions are complete, Plaintiffs are not in a position to catalog all transactional data that may be missing. But the following examples demonstrate the magnitude of Defendants' deficiencies to date:

- Defendant Celestron has produced no data for the year 2012.

- Defendant Suzhou Synta has not produced any data whatsoever.

- Purported productions for Defendants Olivon USA and Olivon Canada do not appear in a data file but rather consist of half a million discrete files.

### C.    Plaintiffs have diligently sought a negotiated resolution, and Defendants have consistently failed to follow through.

Defendants first produced data files in late 2021 and earlier this year. These files did not appear to cover all categories of information Plaintiffs had requested. Accordingly, IPPs asked Defendants to "identify by Bates number the documents that constitute the material Defendants have produced to comply with the transactional data requests." Mar. 4, 2022 IPP Letter. Defendants did not respond. IPPs followed up on March 23, 2022.

Defendants finally identified five Bates ranges on May 2, 2022, meanwhile stating, "Suzhou Synta data will be forthcoming," confirming productions remained incomplete. IPPs raised further deficiencies on May 17 and, having received no response, followed up by letter on June 17.

At that point Plaintiffs had been pursuing these issues for over three months, so IPPs posed five preliminary questions to each Defendant:

> *(1) the name of any database programs or applications used to manage or store sales data in the ordinary course of business;*

> *(2) the full details of the extent to which information available to Defendants captures the 19 categories of information specified in RFP 96;*

> *(3) the formats in which data may feasibly be exported from any database or system in Defendants' possession, custody, or control that contains sales data, including whether an export may be accomplished in native format or any other standard flat data file format (e.g., .csv, .tsv, etc.);*

> *(4) the identity of the individuals responsible for maintaining Defendants' databases and systems containing sales data during the class period, and relatedly, the identity of the witnesses Defendants would designate should it become necessary for the parties to conduct a Rule 30(b)(6) deposition on these topics to bring this matter to rest; and*

> *(5) a timeline to which Defendants can commit for producing the requested material.*

June 17, 2022 IPP Letter.

On June 22, IPPs asked to meet and confer. But when the parties spoke on July 5, Defendants allowed only five minutes to discuss transactional data. The parties have since spoken several times but have made little progress due to Defendants' repeated unilateral cancellations and failure to keep their commitments.

To advance the discussion, DPPs served more granular data questions regarding Celestron's productions on July 18, and IPPs supplemented this set on August 10. The letters containing these questions are attached as **Exhibit B** and **Exhibit C**. DPPs had requested that Defendants make a client representative available. Defendants offered to do so, but unilaterally rescheduled the planned meeting multiple times. That discussion never happened.

To date, despite Plaintiffs' many emails and letters, Defendants have only (a) confirmed the name of the Celestron database and (b) identified the Defendant with which several of the Bates-numbered production ranges are associated. Glaring deficiencies remain, including Defendants failure to complete production for even a single Defendant, over ten months after the production deadline.

On August 31 Defendants proposed to reproduce prior data productions without filters applied, but have neither explained how this proposal would resolve open questions nor committed to a timeline for production. Plaintiffs therefore asked for written answers to the data questions and *a sample* of the material they intended to produce by September 7. Defendants never

responded, even to ask for more time. (On October 5, nine days after Plaintiffs served their sections of this joint letter brief, Defendants sent their section. It includes scattershot responses to several of DPPs' data questions regarding the Celestron data. But it leaves many of DPPs' questions unanswered and does not address IPPs' data questions at all. This belated effort therefore does not resolve the parties' dispute and reinforces the point that the Court's involvement is necessary.)

## II.     The material Plaintiffs seek is relevant, as Defendants admit.

Fulsome productions of transactional data and cooperation on resolving data issues are the norm in significant antitrust class litigation, including in this District. *See, e.g., In re eBay Seller Antitrust Litig.,* No. C 07-1882 JF (RS), 2009 WL 10694970 (N.D. Cal. July 13, 2009) (granting motion to compel production of transactional data as kept in the ordinary course); *In re Tableware Antitrust Litig.,* No. C-04-3514 VRW, 2006 WL 2043730 (N.D. Cal. May 25, 2006) (compelling defendant to supplement prior data productions with additional data); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. M:07-cv-01827-si, 2011 WL 13152491 at *2 (N.D. Cal. Nov. 10, 2011) (compelling producing party to supplement interrogatory responses to aid requesting party in understanding data fields). Indeed, evaluating such data is fundamental to *inter alia* assessing the effect of anticompetitive conduct alleged, calculating damages, and allocation of any eventual proceeds from trial or settlement.

Parties are meanwhile expected to cooperate in producing relevant materials. Federal Rule of Civil Procedure 34 requires parties to produce relevant electronically stored information "in a reasonably usable form or forms," and this District's Guidelines for Professional Conduct warn against producing documents "in a disorganized or unintelligible fashion."

Defendants have never disputed their obligation to produce transactional data in this case. Rather, they *stipulated* to producing this material by December 1, 2021. As recently as August 9, while opposing Plaintiffs' motion for a case schedule, Defendants expressly represented in the record that they were "working with counsel to confirm if there is any further transactional data to provide" and "meeting and conferring with Plaintiffs' counsel to designate a representative to personally appear and answer any questions Plaintiffs' counsel may have in review of the produced transactional data." Defs.' Opp. to Pls.' Mot. for Entry of Scheduling Order at 11-12, ECF No. 271. Based on these representations, on which Plaintiffs relied, any objections Defendants may raise to producing complete transactional data are waived.

## III.    Court-ordered meet-and-confer sessions and regular discovery conferences would serve efficient progress in the lawsuit, and are warranted on this record.

Plaintiffs respectfully request that the Court enter an order directing Defendants to address all open issues pertaining to transactional data without further delay, as follows:

> 1.     The parties shall conduct regular meet-and-confer sessions every Monday morning at 10:00 a.m. Pacific Time, or at another time set by agreement, until all outstanding discovery matters in the lawsuit are resolved.

2.     The parties shall appear at regular discovery conferences before the Court on the first Tuesday of each month on the Court's regular 1:30 p.m. case management calendar, until all outstanding discovery matters in the lawsuit are resolved.

3.     By one week from the date of the Court's order, Defendants must answer in writing the IPPs' five preliminary data inquiries with respect to each Defendant. These answers must include the name of an individual with direct knowledge of that Defendant's data systems who will be the presumptive designee should it become necessary to involve a party representative to answer data questions or to sit for a Rule 30(b)(6) deposition.

4.     By two weeks from the date of the Court's order, Defendants must answer in writing all of DPPs' and IPPs' pending data questions.

5.     Defendants must also answer in writing, within two weeks of receipt, Plaintiffs' data questions served after the Court's order.

6.     By one month from the date of the Court's order, Defendants will complete all productions of transaction-level sales and purchase data, and must file notice with the Court confirming that all such productions are complete.

### DPPs' Position

Plaintiffs have collectively been seeking answers from Defendants about the gaps in their production of transactional data since March 2022, when Plaintiffs first sent correspondence to Defendants with questions about the production.  Plaintiffs identified a number of issues in correspondence dated July 18, 2022 and requested to meet and confer with a party representative present who was knowledgeable about the Defendants' systems and data who could respond to the questions.  Defendants have scheduled and then cancelled meet and confers with a client representative present *four times*, and a meet-and-confer with a client representative still has not happened.[1]  Defendants revealed for the first time during a meet and confer on August 31, 2022 that they had applied filters to limit the transactional data that they had produced.  Rather than respond to the questions set forth in Plaintiffs' letters, Defendants now insist that must re-produce all of the transactional data, but without the previously undisclosed filters that they had applied.

Because Defendants are refusing to comply with Court orders requiring them to meet and confer with a knowledgeable client representative regarding their data, have not answered the questions that Plaintiffs have sought answers to for months, and have not completed the production of transactional data more than nine months after the Court-ordered deadline, the Court should order the relief identified by IPPs (which DPPs join in full) and order Defendant to reimburse Plaintiffs and their expert witnesses for the time spent analyzing the data produced by

---

[1] ECF No. 169, ¶ E(2) ("The parties shall meet and confer to resolve questions regarding transactional data, and consistent with the Guidelines for the Discovery of Electronically Stored Information operative in this District shall involve individuals knowledgeable about the parties' electronic systems as appropriate, prior to taking a deposition or engaging in motion practice.").

Defendants on or before December 1, 2021, which was supposed to be the date that complete transactional was produced in this case.

### A.    The Deadline to Produce Transactional Data was December 1, 2021

Pursuant to the Court-ordered production schedule, the deadline for all Defendants to "complete their production of transactional data" was December 1, 2021.  (ECF No. 212, ¶ 7.)

### B.    Plaintiffs Seek to Meet and Confer with a Client Representative Beginning in July 2022

On July 18, 2022, Plaintiffs sent Defendants a letter with a series of questions concerning the transactional data that Defendants had produced.  Many questions were straightforward, such as requesting that Defendant Celestron produce its 2012 sales data, which was not produced.  The letter also sought answers to questions about the spreadsheets and their inputs, such as how Celestron calculates its landed cost of goods, or how certain columns in spreadsheets relate to each other.  That letter sought to meet and confer within five days with a knowledgeable client representative present, pursuant to the Stipulated Order Regarding Discovery Plan. (ECF No. 169, ¶ E(2).)  Despite repeated follow-up communications by Plaintiffs and multiple meet-and-confer calls rescheduled at Defendants' request, Defendants still have not attended a meet-and-confer call with any client representative or provided written answers to those questions.

### C.    Plaintiffs First Raise Questions about the Transactional Data in March 2022

Plaintiffs first wrote to Defendants about their production of transactional data on March 4, 2022, requesting that Defendants identify by Bates number the documents in their productions responsive to the requests for transactional data.  Only after repeated prodding did Defendants finally identify five Bates ranges from their production on May 5, 2022—including a range spanning millions of documents.  Plaintiffs identified this deficiency in an email on May 19, 2022, but Defendants provided no substantive response.  Plaintiffs followed up in letter dated June 17, 2022, again seeking clarification and noting that the documents in those ranges failed to include categories of documents sought in the document requests, such as transaction-level sales data and associated cost data.  On August 10, 2022, Plaintiffs again sought clarification of these issues and additionally identified further questions about the spreadsheets that Defendants had produced.

### D.    Defendants' Unresponsiveness Requires the Court's Intervention

To date, Defendants have not produced the transactional data for all Defendants (Defendants stated in early May that the transactional data for Suzhou Synta, for instance, "will be forthcoming," though that data still has not been produced), and have not responded to Plaintiffs' general or specific questions about the transactional data.  Nor have Defendants included any client representative in a meet-and-confer call.  A timeline of the meet-and-confer efforts is below:

- **12/01/21**: deadline for production of transactional data

- **3/04/22**: Plaintiffs send letter with close-out questions about Defendants' productions of transaction-level sales data

- **4/04/22**: Plaintiffs follow up via letter

- **5/02/22**: Defendants send email with five Bates ranges containing the transactional data and state that the "Suzhou Synta data will be forthcoming"

- **5/19/22**: Plaintiffs send email identifying problems with the broad Bates ranges, which, *inter alia*, do not appear to include categories of information sought in the document requests; Defendants do not respond

- **5/26/22**: Plaintiffs follow up on 5/19/22 email; Defendants state via email that they will respond the following week

- **6/17/22**: Plaintiffs follow up with a letter after having received no further response from Defendants and request to meet and confer

- **6/22/22**: Plaintiffs follow up to request time to meet and confer about transactional data

- **7/05/22**: the parties very briefly meet and confer about transactional data; Plaintiffs follow up via email to request further meet and confer time; Defendants do not respond

- **7/06/22**: Plaintiffs follow up to request further meet and confer; Defendants propose 7/11/22

- **7/10/22**: Defendants cancel 7/11/22 call scheduled for the next morning; Plaintiffs propose 7/12/22; Defendants do not respond

- **7/18/22**: Plaintiffs send list of questions concerning the transactional data and request to meet and confer within five business days with a client representative knowledgeable about the electronic systems

- **7/20/22**: Plaintiffs follow up via email; Defendants propose to meet and confer on 8/09/22

- **7/26/22 to 8/05/22**: Plaintiffs collectively send five emails requesting confirmation of date to meet and confer before Defendants respond

- **8/05/22**: Defendants propose to meet and confer with client representative present on 8/10/22

- **8/09/22**: the day before the meet and confer, Defendants state that client will not be available to participate in call until 8/15/22

- **8/10/22**: Plaintiffs send letter with additional questions about transactional data

- **8/11/22**: Defendants state that no client representative will be available for 8/15/22 call and propose a call with the client representative on 8/22/22

- **8/15/22**: the parties meet and confer with no client representative present

- **8/22/22**: less than two hours before the meet and confer call that client representative was supposed to attend, Defendants state that no client representative will be available until 8/29/22; the parties meet and confer with no client representative present

- **8/31/22**: meet and confer call; Defendants' client representative does not attend; Defendants disclose for the first time that they had applied filters and not produced all data

Just in the month of August, Defendants proposed that a client representative join them for a meet and confer with Plaintiffs on August 10, 15, 22, and 31—only to inform Plaintiffs each time that the client representative was unavailable, sometimes shortly before the scheduled call.  Defendants did not even inform Plaintiffs in advance that no client representative would attend the August 31 call.  Instead, during the call, Defendants stated that instead of answering Plaintiffs' written questions, they would re-produce the transactional data, this time without including the filters that had been applied when they initially produced the data, which they claimed would answer all of Plaintiffs' questions.  Most of Plaintiffs' questions would not be answered simply by changing the filters applied to the data.  For instance, neither how Defendants calculated the "Landed Cost (Unit)"[2] nor "the identity of the individuals responsible for maintaining Defendants' databases and systems containing sales data during the class period"[3] would be answered by fiddling with the "filters" applied to re-produce the data. Nor is producing data without filters from enterprise databases a time-consuming endeavor, as Defendants claim. Moreover, despite the significant delay already sustained, Defendants did not commit to a deadline to re-produce the transactional data.  More than three weeks later, they still have not re-produced transactional data.[4]

### E.    Conclusion

More than nine months after the deadline to produce transactional data and six months after Plaintiffs first sought answers to their questions about the transactional data, enough is enough.  In addition to the relief requested by IPPs, which DPPs join, Defendants should also be ordered reimburse Plaintiffs and their expert witnesses for the time spent analyzing the data produced by Defendants on or before December 1, 2021, which was supposed to be the complete transactional data produced in this case.  This case needs to progress but cannot without this fundamental data.

### **Defendants' Position**

### 1.    **Plaintiffs' Motion Should Be Stricken**

Plaintiffs' motion is over the word count and should be stricken.  Plaintiffs continue to create two separate sections to evade the required word limits, and are prejudicing Defendants' ability to provide a fulsome but cogent response.  Using this logic, each separate defendant would be entitled to 1,500 words, which is a ridiculous notion.  Indeed, DPP's section alone is over 1,500 words. Defendants tried to stay within the word limit, but were only able to be fully responsive in 2600 words.

---

[2] DPPs' 7/18/22 letter at 5.
[3] IPPs' 8/10/22 letter at 2.
[4] The subject of this letter brief is Defendants' transactional data. Defendants' allegations about DPPs' transactional data production—which Defendants only raised for the first time *after* Defendants received Plaintiffs' letter brief—are inaccurate. They are also not before the Court.

**2.      Defendants Have Fully Complied And Produced All Transactional Data**

As for the substance of the Motion, Plaintiffs' motion suffers from a bit of an identity crisis. Plaintiffs' statement of the issues relates solely to an alleged lack of production, but then they devote the lion's share of the briefing to the issue of whether Defendants have properly answered Plaintiffs' questions.  No matter the issue, Defendants have fully complied.

**2.1      Plaintiffs Have Not Identified A Single Deficient Production In Response To A Request for Documents**

As an initial matter, DPPs do not even identify the requests to which their Motion relates.  This is true even after DPP made edits following receipt of Defendants' section of this briefing. That alone should be fatal to this Motion.  To state the obvious, the quintessential first questions on a motion to compel are always "Has the moving party requested the documents?" and "Are the documents that are the subject of the Motion responsive to those requests?"

As for IPPs, Defendants have already produced all responsive transactional data within their possession, custody, and control that was located after numerous good faith, diligent searches.  To be clear, no Plaintiff can identify a single category of transactional data that has not been produced.

**2.1.1    The Celestron Production**

As for Celestron, Plaintiffs identify only 2012 data as not having been produced.  That was an oversight that has since been rectified.
To be clear, Celestron's compliance has been extraordinary following a massive effort.Celestronpulled transactional data for the period between FY2000 and FY2022--which is even broader than the proposed class.  These records containing millions of transactions of the telescopes and accessories at issue. For each transaction, Celestron provided all available, requested information including (1) the customer name, customer number, customer address, the invoice number, (2) sales order number, sales order entry date, the shipment date, (3) the product number, product category, product description, including model type and product name, (4) the unit sales price, (5) the total sales price, (6) the unit cost and the extended cost (unit cost times quantity), (7) sales margin for each unit, and (8) invoice number, invoice date.

Celestron further provided the annual revenue data—the sum of sales revenue for each fiscal year and the total quantity of sales. The customers in the list include both retailers (such as Costco, Amazon, and Walmart), and individual customers. The same data was supplied for accessories.

The production required many dozens of hours by a whole team of Celestron employees.

Plaintiffs disparage Defendants for applying allegedly unknown "filters," but Plaintiffs' argument is intentionally misleading.  Celestron's transactional database contains an extraordinary amount of information that is irrelevant and nonresponsive to Plaintiffs' requests, including, for instance, international transactions.  Plaintiffs' requests included specific data points they wanted produced.

As a result, Celestron ran the requests through their transactional database, and sorted in a way that most closely matched the specific demands of Plaintiffs.  For instance, Plaintiffs' RFP No. 96 is overbroad and compound and includes seventeen (17) subcategories.  The data is not naturally maintained in the way Plaintiffs wanted Defendants to identify. Defendants have tried the best to provide the data in the manner Plaintiffs requested.

Now, for the first time Plaintiffs have objected to the filters,—even though those filters are beneficial to Plaintiffs in terms of targeting the data they sought to identify, and were necessary to make sure the provided information was most responsive.  Nevertheless,--Defendants agreed (less than four weeks ago) to produce the data without filters—which is extremely time consuming, but which Defendants are collecting now.  In the classic approach of "damned if you do, damned if you don't", even that is not good enough for Plaintiffs.  But there is literally nothing else that Celestron can provide.

### 2.1.2   The Olivon Production

With respect to Olivon Manufacturing and Olivon USA, Plaintiffs' only objection is that the production does not take the format in which Plaintiffs prefer.  That is simply a function of the fact that Olivon does not maintain the data in a summary transactional database in the manner in which Plaintiffs would like to receive it.Olivion has produced all responsive documents in the normal course and manner in which the records are kept.  Defendants already provided those bates numbers: DEFS000380988-DEFS002614433.

### 2.1.3   The Suzhou Synta Production

Plaintiffs' allegation that no Suzhou Synta data has been produced is not true.  The requested information was produced approximately five weeks ago. Suzhou Synta could not have produced the records earlier because they only recently located these records.  They believed the records had been destroyed in the ordinary course, but were reminded that these records were maintained as required accounting records pursuant to Chinese law. The electronic accounting records date up until 2016, at which time the Suzhou Synta factory was closed. The records were produced in electronic format—the manner in which they were retained for audits and reviews. The records contains journal entries detailing all the company financial transactions, and were recorded in a double entry form. The records were classified by year. Each business transaction disclosed the (1) transaction date; (2) transaction number; (3) transaction description; (4) transaction amount; (5) type of entry (debit or credit).

If the expense or income affects one or more business accounts, the records will detail that as well. The type of information that is recorded includes, but is not limited to: (1) the movement of cash; (2) the movement of money through banks; (3) income from investment; (4) sales income / account receivable; (5) purchase of raw materials; (6) manufacturing expenses; (7) inventory; (8) operating, financial, or management expenses; (9) purchase, sale or disposal of fixed assets; (11) intangible assets; (12) loans/ debt; (13) labor costs; (14) profit distributions; (15) tax; (16) earned surplus and annual profit, and (17) business revenue.

There is one more set of Suzhou Synta documents that Plaintiffs claim should be produced, and that Defendants identified. Those records are not responsive to any requests. These are thousands of pages of physical, bound records. They are not "transactional data." They are located in a warehouse in China. If Plaintiffs believe they need these records, Defendants have offered to allow their vendor access to the documents to unbind, copy, and rebind them, and have confirmed that vendors may do so. This is the simplest way to make these records available, as these are accounting records required by the Chinese government to be maintained and that cannot be sent outside of China.

### 2.1.4   Plaintiffs Do Not Allege Any Deficiencies In Any Further Productions

Plaintiffs do not allege any deficiencies in any other Defendant's transactional data.

## 3.      Plaintiffs' Remaining Arguments Are Misnomers

The rest of Plaintiffs' briefing devolves into claims that bear no relation to the demands for production: (i) attacks on Defendants for allegedly not properly meeting and conferring, and (ii) claims that Defendants have not answered specific questions about the data. Neither is accurate.

### 3.1      Defendants Have Met and Conferred In Good Faith

Defendants have repeatedly met and conferred in good faith. In every single instance identified by Plaintiffs, Defendants had met and conferred, and answered questions posed by Plaintiffs. Defendants even offered to set up some weekly telephonic meet and confers. Counsel worked diligently with Defendants to obtain information requested by Plaintiffs and revert back to Plaintiffs' counsel at the weekly meeting. The parties agreed to meet and confer on the Celestron transactional data first, then the remaining entities. There was not a single meet and confer where Defendants had no information to provide. In the instances in which transactional data was discussed for only a few minutes, it was because Plaintiffs chose to prioritize other issues for which they wanted to meet and confer. Defendants were working on having a representative from the company available at the time that counsel ran out of information, but before that happened, Plaintiffs withdrew that request and unilaterally demanded that all responses be in writing.

On the other hand, it is DPPs who are not meeting and conferring in good faith. Over the last two weeks, Defendants have raised numerous issues that require DPPs' attention—including meet and confer requests relating to: (i) deficiencies in DPPs' privilege log; (ii) failure to produce any transactional data; and (iii) information Celestron needs to understand the scope of DPPs' misuse of Celestron's privileged data. *See, e.g.,* Exs. 1, 2. Defendants' meet and confer requests have been wholly ignored. In fact, Defendants did not make a single meet and confer request in recent months that DPP counsel have even acknowledged, until DPPs received Defendants received this briefing—at which time DPPs made a vague reference to meeting and conferring "next week" about the privilege log issues. DPPs still have not responded about the transactional data or agreed to provide any information concerning who had access to Defendants' privileged information, except to issue a perfunctory denial.

### 3.2   Defendants Have Answered Plaintiffs' Questions Concerning The Transactional Data

The bulk of Plaintiffs' Motion concerns questions Plaintiffs claim have not been answered. Plaintiffs rely on the provisions concerning cooperation with respect to understanding transactional data. Plaintiffs are overreaching. Plaintiffs have not asked questions relating to the mechanics of the transactional data. Plaintiffs are seeking far-reaching substantive information, as Plaintiffs put it,"such as how Celestron calculates its landed cost of goods," or "the identity of the witnesses Defendants would designate should it become necessary for the parties to conduct a Rule 30(b)(6) deposition on these topics." Plaintiffs also demand, for instance, "the formats in which data may feasibly be exported from any database or system in Defendants' possession, custody, or control."

Plaintiffs are conflating two issues. Every time Plaintiffs have asked a question about Defendants' transactional databases or the data itself, Defendants have answered those questions—at least up to the point that Plaintiffs shut down the conversation, demanded answers in writing, and precipitously filed this Motion. However, Plaintiffs are trying to shoehorn in other issues here, claiming that the document demands impose on Defendants an obligation to answer any and all questions concerning, not only the documents, but also company policies on, among other things, calculating the data points contained in the documents and how the company systems work and interact with each other, or asking Defendants to identify in advance 30(b)(6) witnesses without having seen a list of specific topics. Plaintiffs have an avenue to obtain those answers: interrogatories or deposition notices. Instead, they try to force on Defendants to provide a company representative to answer all these questions in a recorded zoom, so it can be treated as a deposition. If Plaintiffs want depositions, they can notice them.

To be clear, Defendants tried to be cooperative. As explained above, Defendants spent hours on the phone with Plaintiffs, explaining the data contained in the transactional information and answering all questions relating to the data itself and the systems from which the data was exported. Substantive issues were not raised until June and July, and substantive discussions followed. Four or five meetings, if not more, were held by all parties in July and August to discuss transactional data.

Just by way of example, and contrary to DPPs' assertion, Defendants did explain the "Landed Cost" field, and DPPs seem to be satisfied at the time. Defendants explained that with respect to the values in the "Landed Cost" field, the values include material, duty and freight for the purchased items, and include material, labor and overhead for the manufactured items. The cost represents the fixed standard cost. The landed cost represents the unit cost which is inclusive of material, duty and freight. Plaintiffs did not ask further questions regarding these costs. With respect to the values in the "Sales Order" field beginning with a "C" or "X," the C prefixed orders are regular sales orders, and the X prefixed orders are customer return orders. With respect to a negative quantity value in a transaction, the negative quantity represents the return of the order. The tax field also shows a negative value if the transaction is a customer return. A "0" value in "invoice price" field represents the warranty replacement. None of the SKU product ID identified by Plaintiffs were categorized as telescopes or telescopes accessories. Additionally, the following prefixes to the invoice number represents: CC - China Credit Memo, CM-Domestic Credit Memo, CMC-Credit Memo Canada, INC-Canada Invoice,  INCH-China Invoice, INV-Domestic Invoice.

Defendants were ready to explain all additional issues until Plaintiffs stunted the conversation. Unfortunately, it appears that Plaintiffs are more interested in casting aspersions and creating false arguments that understanding the answers to their questions.

Most of the issues, if not all, would have been resolved once Plaintiff sees the unfiltered data. For example, the "ship date" was provided in certain data sheets, but to the extent Plaintiffs would like Defendants to generate ship dates to other data sheets to match all records, even though the other data sheets were generated for focusing on other values such as "margin," Defendants have to re-generate the entire file and re-collect data. It is not possible to simply add the ship date for each transaction in the currently existing data sheets. Unfortunately, Plaintiff insisted that Defendants make some production within five (5) business days, and refused to give any longer time which Defendants needed to work with client to process millions of transactions especially given that Celestron was willing to give everything. The e-discovery vendor also needed time to prepare for production. Five business days is simply not enough.

## 4.     Plaintiffs' Request to Recover Fees and Expert Reimbursement Is Unfounded

At the risk of belaboring the point, Defendants have done everything reasonably possible to fully comply and respond to all of Plaintiffs' demands, no matter how unreasonable.  Plaintiffs' demand to recover fees and unidentified expert costs finds no legal or factual basis.

## 5.     DPPs Have Not Produced Any Transactional Data

In reality, it is DPPs who are noncompliant.  As Defendants will explain in their forthcoming motion to compel, Defendants served numerous document demands on DPPs seeking their transactional data, including inventory logs, price lists, purchase orders, and customer lists for all telescope and accessory purchases and sales.

DPPs have produced almost no responsive information.  They have produced no responsive documents with any of the same identifiable data fields that Plaintiffs demand from Defendants. Instead, DPPs produced information relating to ham radio sales, Christmas stories, Y2K protocols, board game brochures, envelope templates, and software license information in every language available.

DPPs failure to produce any sort of identifiable sales and product data with the requested informational fields is highly prejudicial. This requested information is critical for a number of reasons, including: (i) the purchasing and sales information will demonstrate whether they were actually harmed; (ii) the customers are members of the IPP class, who need to be identified; and (iii) the relative number of transactions, as well as types of transactions are relevant to class representative issues, such as numerosity, adequacy of representation, and typicality.  The latter issue is especially important, given that there is only one DPP class representative.

Nevertheless, DPPs have not produced a shred of useful transactional data.  DPPs cry foul over information they themselves refuse to produce should not be entertained. Defendants met and conferred with DPPs. DPPs did not respond.

### Request for Hearing

Plaintiffs' Position: Plaintiffs are available to appear at any hearing the Court believes would serve the efficient resolution of these disputes. In addition, Plaintiffs respectfully submit that in light of the negotiations history here, it would be helpful for the Court to schedule regularly occurring monthly discovery conferences as outlined in the main body of this letter brief.

Defendants' Position:  Defendants are available to the extent the Court has questions or believes a hearing is appropriate.

### Discovery Cutoff

The fact discovery cutoff is July 17, 2023. ECF No. 276. The expert discovery cutoff is December 18, 2023. *Id.*

### Meet and Confer Attestation

The undersigned attests that he, Alejandra Salinas, and Jon Fougner, counsel for IPPs, conferred with Chris Frost and Wei Cai, counsel for Defendants, about this dispute for more than six months before filing this letter brief, including on five occasions by Zoom, most recently on August 31, 2022.

Respectfully Submitted,

*/s/      James G. Dallal*
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
James G. Dallal (SBN 277826)
**COTCHETT PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

*/s/      Alejandra C. Salinas*
Alejandra C. Salinas (pro hac vice)
Texas SBN 24102452
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
asalinas@susmangodfrey.com

Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No. 237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

*/s/      Lin Y. Chan*
Lin Y. Chan (SBN 255027)
Eric B. Fastiff (SBN 182260)
Reilly T. Stoler (SBN 310761)
Jon Fougner (SBN 314097)
**LIEFF CABRASER HEIMANN
& BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
lchan@lchb.com
efastiff@lchb.com
rstoler@lchb.com
jfougner@lchb.com

*Interim Co-Lead Counsel for Indirect
Purchaser Plaintiffs*

_/s/_      _Matthew Bordern_

Matthew Borden
BraunHagey & Borden LLP

_Interim Lead Counsel for Proposed Class of Direct Purchaser Plaintiffs, and Counsel to Spectrum Scientifics, LLC, and Radio City, Inc._

_/s/_      _Christopher Frost_

Christopher Frost
Weinberg Gonser Frost LLP
(wgfcounsel.com)

_Counsel for Defendants_