**[Counsel Listed on Next Page]**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD |
|---|---|
| This Document Relates to:<br><br>ALL ACTIONS. | Case No. 5:20-cv-03642-EJD<br><br>**JOINT STATUS REPORT REGARDING COURT-ORDERED MEETING RELATING TO DEFENDANTS' TRANSACTIONAL DATA** |

J. Noah Hagey, Esq. (SBN: 262331)
Matthew Borden, Esq. (SBN: 214323)
Ellen V. Leonida, Esq. (SBN: 184194)
Ronald J. Fisher, Esq. (SBN: 298660)
Ellis E. Herington, Esq. (SBN: 343085)
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808
hagey@braunhagey.com
borden@braunhagey.com
leonida@braunhagey.com
fisher@braunhagey.com
herington@braunhagey.com

*Interim Lead Counsel for Direct Purchaser Plaintiffs*

Christopher Frost (SBN 200336)
Ashley Morris (SBN 225455)
Weixuan Cai (SBN 320183)
John D. Maatta (SBN 83683)
WEINBERG GONSER FROST LLP
10866 Wilshire Blvd., Suite 1650
Beverly Hills, California 90210
Telephone: (424) 239-2850
Facsimile: (310) 855-3201
chris@wgfcounsel.com
ashley@wgfcounsel.com
wei@wgfcounsel.com
john@wgfcounsel.com

SHAUNA A. IZADI (admitted *pro hac vice*)
sizadi@izadilegal.com
IZADI LEGAL GROUP, PLLC
13155 Noel Rd, Suite 900
Dallas, Texas 75240

*Attorneys for Defendants*

Adam J. Zapala (Bar No. 245748)
Elizabeth T. Castillo (Bar No. 280502)
James G. Dallal (Bar No. 277826)
COTCHETT PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Phone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (pro hac vice)
Texas SBN 24102452
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
asalinas@susmangodfrey.com

Lin Y. Chan (SBN 255027)
Eric B. Fastiff (SBN 182260)
Devin X. Williams (SBN 347577)
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
lchan@lchb.com
efastiff@lchb.com
dwilliams@lchb.com

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

The undersigned parties submit this joint statement further to the Court's April 5, 2023 Order re Further Proceedings re DPPs' Motion to Enforce Discovery Order and for Sanctions (Dkt. 325 in Case No. 20-cv-3639-EJD; and Dkt. 386 in Case No. 20-cv-3642-EJD) and April 20, 2023 Order re Joint Statement (Dkt. 331 in Case No. 20-cv-3639-EJD; and Dkt. 398 in Case No. 20-cv-3642-EJD).

These Orders directed the parties to appear at the San Francisco offices of counsel for the Direct Purchaser Plaintiffs ("DPPs"), BraunHagey & Borden LLP, located at 351 California Street, 10th Floor, San Francisco, California 94104, and to engage in "a candid discussion of how to facilitate production of defendants' transactional data or use the productions that have already been made." The first Order called for the meeting to occur on April 18, 2023, but the in-person meeting was subsequently postponed to May 9, 2023 due to health concerns related to coronavirus exposure.

On April 14, 2023, the DPPs and Indirect Purchaser Plaintiffs ("IPPs") sent Defendants a list of 25 transactional data questions designed to facilitate and shape the parties' discussion. A copy of the data question list is attached hereto as **Exhibit A**.

Following the postponement of the in-person meeting, the parties agreed to conduct an initial session via videoconference. Counsel and at least one data expert for each of DPPs, IPPs, and Defendants participated. On April 24, 2023, the parties spoke for a little over one hour and discussed 14 of the 25 questions in this initial session.

The parties subsequently met in person as ordered on May 9. Once again, counsel and at least one data expert for each of DPPs, IPPs, and Defendants participated. During the in-person meeting, the parties had a candid discussion of how to facilitate production of Defendants' transactional data and how to use the productions that had already been made. Defendants' data expert answered inquiries with respect to the remaining questions from Plaintiffs' counsel's list of 25 questions and related follow up questions. The meeting lasted for approximately ninety (90) minutes and at the conclusion Plaintiffs confirmed that Defendants' data expert had answered all the questions Plaintiffs' counsel and experts had as of that time, subject to anticipated follow-up regarding the numerous instances where Defendants pledged to produce further information or investigate open issues, confirm whether or not further responsive information existed, and confirm whether or not Defendants would agree to produce such responsive information as was available.

Following the discussions, Plaintiffs sent Defendants a list of 13 items Plaintiffs understand Defendants have agreed to produce to the extent such data or information exists, along with six additional items where Defendants pledged to follow up with additional available data or information.

The list of the follow-up requests and tasks, as conveyed by Plaintiffs to Defendants in an email sent two days after the in-person meeting, is as follows:

*Defendants will produce:*

*1. Crosswalk for Syte Line and SAP customer numbers (Q2)*

*2. Field labels for coded fields (Q3)*

*3. Celestron definition used to categorize domestic / international sales (included in Special Accounts). (Q5)*

*4. Shipping invoice data (or identify the files already produced) (Q6)*

*5. Additional info on product categorization and SKU patterns, including prefixes/ suffixes used for item numbers (Q8)*

*6. [Will set up view of SAP database / interface for meeting to see available fields (Q10)]*

*7. Provide historical cost data 2001-2004. (Q15)*

*8. Answers to Q17.*

*9. Freight cost data for 2017 (Q14)*

*10. SAP invoice number prefix list. (Q19)*

*11. List of customer numbers that are not customers (ex. MISCELLANEOUS, EMPLOYEE SALES, MARKETING SHOW) (Q20)*

*12. Look into and provide answers to Q22a, Q22b.*

*13. Look into how kit component products (with $0 price and non-zero quantity) can be distinguished from free products (particularly when product number suffix cannot be used to identify a component) (Q25)*

*Defendants will look into producing:*

*14. Atlas ecommerce data (Q1)*

*15. Field value dictionary for coded fields (Q3)*

*16. Manufacturer / brand information available (Q4)*

*17. Customer information for SAP data if available (Q11)*

*18. Product categories for SAP if available (Q12)*

*19. General ledger data (Q15)*

(The "Q" parentheticals refer to the 25 numbered questions Plaintiffs sent to Defendants on April 14, as shown in Exhibit A.)

Defendants sent an email to Plaintiffs' counsel on May 15, 2023, stating that many of the answers to these questions were already provided during the in-person meeting. Defendants' counsel nonetheless agreed to provide these explanations in writing, and produce additional documents and information responsive to items Nos. 1-13 in the list set forth above, with the exception of Nos. 6 and 7. With respect to No. 6, Defendants' counsel said they will revisit having their data expert provide a tutorial on the SAP system (although Defendants believe that is Plaintiffs' expert's responsibility) after Plaintiffs' data expert has an opportunity to review and analyze the additional information and data provided. With respect to No. 7, Defendants' counsel indicated that cost data, consisting of actual landed cost, for the 2001-2004 time period, is contained on the invoices for that time period (which have been previously produced). After further investigation, Defendants' position is that there is no other cost data available for that time period. Plaintiffs will evaluate these representations and Defendants' forthcoming productions and follow up further if necessary.

Defendants have agreed to complete production of the 11 of 13 items listed above that they intend to produce on or before Friday, May 26, 2023, to the extent such data and information is within their possession, custody and control and can be reasonably compiled in a manner that is responsive to Plaintiffs' requests. Defendants and their data expert are also happy to have a further discussion to candidly discuss this additional data and information if Plaintiffs or their data experts still have additional questions.

In the May 15 email, Defendants provided initial responses to the six items listed above that they had pledged to investigate, and will provide further responses (including, if available, the data and information responsive to those requests) on or before Friday, May 26, 2023.

During these discussions, Plaintiffs also raised with Defendants that the lists above concern the sales and costs data only for Defendant Celestron. Plaintiffs have asked Defendants to confirm that no further sales and costs datasets remain to be produced for the other Defendant entities that have produced data in this case. These include Defendants Pacific Telescope, Olivon, Olivon USA, and Nantong Schmidt. Defendants have agreed to confirm on or before Friday, May 26, 2023 whether these productions are complete or will require supplementation and if supplementation is needed, to produce any additional transactional data on or before Friday, June 2, 2023.

**DPPS' STATEMENT**

DPPs write separately to provide the Court with facts regarding Defendants' production of transactional data that are specifically and solely relevant to the DPP action.

As the Court may recall from the briefing and hearing regarding DPPs' motion to compel, one of DPPs' primary concerns was the lack of transactional data identifying transactions to individual direct purchasers of Celestron telescopes who purchased through the Celestron website.

On April 24, 2023, Defendants' expert asserted the following regarding data recording Defendants direct sales of telescopes to consumers through its website:

1. Defendants' expert disclosed that for a period of time, direct sales through Celestron's website were handled by Atlas E-Commerce, LLC, which was a subsidiary of Defendant Celestron and later Defendant SW Technology Corp. Defendants' expert explained that Atlas E-Commerce's data has been maintained on a cloud storage service known as CloudBerry.

   a. On April 27, 2023, DPPs asked Defendants to confirm that the Atlas E-Commerce data would be produced. Defendants refused in an email sent that same day, responding only that "Atlas is not a defendant."

   b. According to California Secretary of State filings, Atlas E-Commerce was a Delaware LLC formed on October 2, 2014, and registered with the California Secretary of State as a foreign LLC on August 3, 2015.

   c. The August 3, 2015 filing lists Atlas E-Commerce's address as 2835 Columbia Street, Torrance CA, 90503—which is the same address as Defendants Celestron

and SW Technology Corp.—and is signed by Defendant David Anderson as President and CEO. In August 2015, Defendants David Anderson was also President and CEO of Celestron.

d. On January 15, 2020, Atlas E-Commerce filed a notice with the California Secretary of State advising that Atlas E-Commerce had been terminated. The January 15, 2020 notice was signed by Defendant Sylvia Shen in her capacity of President of Defendant SW Technology Corp.; the notice's signature block also notes that Defendant SW Technology Corp. was Atlas E-Commerce's "sole member."

2. Defendants' expert disclosed that for the period of time that Celestron used the Syteline database (May 2006-May 2015), Celestron's direct sale of telescopes through their website were associated with a single customer ID, and individual customers were recorded as the ship-to address.

a. DPPs have reviewed the Syteline data produced by Defendants associated with the single customer ID identified by Defendants. There are only 21 individual customer ship-to addresses associated with that customer ID.

3. Defendants' expert disclosed that for the period of time after Atlas E-Commerce was terminated, Celestron's direct sales of telescopes through its website were recorded via its SAP database, and that these sales were associated with two customer IDs.

a. DPPs have reviewed the SAP data produced by Defendants associated with the two customer IDs identified by Defendants. There are zero individual retail consumers associated with transactions relating to those customer IDs. Defendants have asserted that their SAP database does not contain the names or addresses of the retail consumers who purchased and received shipment of telescopes and telescope accessories associated with the customer IDs identified by Defendant.

**<u>DEFENDANTS' REPONSE TO DPPS' STATEMENT</u>**

1. DPPs are incorrect, and Defendants' data expert never stated that any direct sales through Celestron's website were handled or fulfilled by Atlas E-Commerce, LLC at any time. Atlas E-Commerce, LLC was always a separate company. Atlas E-Commerce's data has never been maintained on Celestron's server. Rather, it was hosted on the cloud by a third party. When Atlas

E-Commerce was terminated, Celestron backed-up its data in the cloud. Defendants are currently looking into whether that data can currently be accessed. If it is accessible, Defendants will produce the Atlas E-Commerce data.

2. Although Defendants have already produced all billing addresses and shipping addresses, in its email to Plaintiffs' counsel on May 15, Defendants' counsel made clear that it would re-export the data file which should include the "ship-to" data for all customers.

3. DPPs are confused. As explained during the in-person meeting, Celestron's direct to consumer sales from its website have never been through Atlas E-Commerce. Moreover, DPPs' statements regarding customer information are also not accurate. Defendants have previously produced customer information from the SAP database that includes the names and shipping addresses of the customers. However, one of the 25 questions proposed by Plaintiffs' counsel requested more detailed customer information such as phone numbers, and Defendants are not aware of that information being captured or maintained in the SAP database but are investigating whether that information is available from other sources.

Dated: May 15, 2023

Respectfully submitted,
COTCHETT PITRE & McCARTHY, LLP

By: */s/ Adam J. Zapala*
Adam J. Zapala

SUSMAN GODFREY LLP

By: */s/ Kalpana Srinivasan*
Kalpana Srinivasan

LIEFF CABRASER HEIMANN & BERNSTEIN LLP

By: */s/ Lin Y. Chan*
Lin Y. Chan

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

BRAUNHAGEY & BORDEN LLP

By: */s/ Ronald J. Fisher*
Ronald J. Fisher

*Interim Lead Counsel for Direct Purchaser Plaintiffs*

WEINBERG GONSER FROST LLP

By: */s/ Christopher Frost*
Christopher Frost

IZADI LEGAL GROUP, PLLC

By: */s/ Shauna Izadi*
Shauna Izadi (admitted *pro hac vice*)

*Attorneys for Defendants*

**ATTESTATION**

Counsel for Indirect Purchaser Plaintiffs hereby attests by his signature below that concurrence in the filing of this document was obtained from counsel for Direct Purchaser Plaintiffs and Defendants.

Dated: May 15, 2023

Respectfully submitted,

COTCHETT PITRE & McCARTHY, LLP

By: /s/ *James G. Dallal*
    James G. Dallal

*Attorneys for Indirect Purchaser Plaintiffs*