PAGES 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VIRGINIA K. DEMARCHI

| | | |
|---|---|---|
| **IN RE TELESCOPES ANTITRUST** | ) | |
| **LITIGATION,** | ) | CASE NOS. 20-CV-03639-EJD |
| | ) | 20-CV-03642 EJD |
| | ) | |
| | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| _____ | ) | |

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND

RECORDING  9:28 A.M. - 10:47 A.M.

APPEARANCES:

| | |
|---|---|
| FOR INDIRECT PURCHASER<br>PLAINTIFFS | SUSMAN GODFREY, LLP<br>1000 LOUISIANA ST<br>SUITE 5100<br>HOUSTON, TEXAS 77002<br>BY:  **ALEJANDRA C. SALINAS, ESQUIRE** |
| | COTCHETT PITRE & MCCARTHY LLP<br>840 MALCOLM ROAD, SUITE 200<br>BURLINGAME, CALIFORNIA 94010<br>BY:  **ADAM ZAPALA, ESQUIRE** |
| FOR DIRECT PURCHASER | BRAUNHAGEY & BORDEN, LLP<br>351 CALIFORNIA STREET<br>10TH FLOOR<br>SAN FRANCISCO, CA 94104<br>BY:  **MATTHEW BORDEN, ESQUIRE**<br>    **RONALD FISHER, ESQUIRE** |
| FOR DEFENDANT | FROST LLP<br>10960 WILSHIRE BLVD., SUITE 1260<br>LOS ANGELES, CA 90024<br>BY:  **JOSHUA STAMBAUGH, ESQUIRE** |

_TRANSCRIBED BY:  JOAN MARIE COLUMBINI_

```
 1   TUESDAY, JULY 18, 2023                          9:58 A.M.
 2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO
 3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER
 4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)
 5                          ---O0O---
 6              ELECTRONICALLY RECORDED PROCEEDINGS
 7        THE COURT:  CALLING CASE NO. 20-CV-03639 AND
 8   20-CV-0642, IN RE TELESCOPE ANTITRUST LITIGATION.
 9           IF YOU COULD PLEASE STATE YOUR -- YOUR NAMES,
10   STARTING WITH THE INDIRECT PURCHASERS FIRST.
11        MS. SALINAS:  ALEJANDRA SALINAS OF SUSSMAN GODFREY
12   FOR THE INDIRECT PURCHASER PLAINTIFFS.
13        THE COURT:  GOOD MORNING.
14        MR. ZAPALA:  GOOD MORNING, YOUR HONOR.  ADAM ZAPALA
15   FROM COTCHETT, PITRE & MCCARTHY FOR THE INDIRECT PURCHASER
16   PLAINTIFFS.
17        THE COURT:  GOOD MORNING.  AND LET'S HAVE DIRECT
18   PURCHASER PLAINTIFFS NEXT.
19        MR. BORDEN:  GOOD MORNING, YOUR HONOR.  MATT BORDEN
20   ON BEHALF OF THE DIRECT PURCHASER PLAINTIFFS.
21        THE COURT:  GOOD MORNING.
22        MR. BORDEN:  AND SINCE THE MIC DOESN'T REACH, I'LL
23   JUST -- YOU KNOW MR. FISHER, RON FISHER IS HERE AS WELL.
24        THE COURT:  YES.  OKAY.  THANK YOU.  GOOD MORNING.
25           AND FOR THE DEFENDANTS.
```

1          **MR. STAMBAUGH:** GOOD MORNING, YOUR HONOR.  GOOD TO

2    SEE YOU AGAIN.  JOSH STAMBAUGH FOR THE DEFENDANTS.

3          **THE COURT:** GOOD MORNING.  I SHOULD PROBABLY HAVE

4    SOME OF YOU SIT OVER HERE SO YOU COULD SHARE THE MICROPHONE,

5    BUT YOU GET A MICROPHONE -- TWO MICROPHONES TO YOURSELF MAYBE.

6          OKAY.  WELL, WE ARE HERE TODAY FOR A DISCOVERY

7    CONFERENCE ON THE STATUS OF THE DEFENDANT'S PRODUCTION OF

8    TRANSACTIONAL DATA.  I HAVE BEEN GETTING THE PARTIES' STATUS

9    REPORTS OVER THE LAST COUPLE OF MONTHS, AND I JUST THOUGHT IT

10   MIGHT BE BEST TO SEE IF WE COULD MAYBE WRAP EVERYTHING UP AND

11   FIGURE OUT WHERE WE ARE.

12         SO, I'D LIKE TO UNDERSTAND WHAT THE OUTSTANDING

13   ISSUES ARE, IF THERE ARE STILL OUTSTANDING ISSUES.  AND LET ME

14   JUST INVITE THE IPPS TO BEGIN, AND I'LL THEN GO TO THE DPPS AND

15   THEN DEFENDANTS.  TELL ME WHERE YOU THINK.

16         AS YOU KNOW, YOU CAN STAY SEATED AT COUNSEL TABLE AND

17   SPEAK INTO THE MICROPHONE.

18         **MS. SALINAS:** YES, YOUR HONOR.

19         SO, THERE ARE -- FROM THE PLAINTIFF'S VIEW, THERE ARE

20   TWO OUTSTANDING ISSUES THAT REMAIN, ONE BEING WITH REGARDS TO

21   THE GENERAL LEDGER, SPECIFICALLY WITH REGARDS TO CELESTRON

22   GENERAL LEDGER.  THERE MAY BE QUESTIONS ABOUT THE GENERAL

23   LEDGER FOR OTHER DEFENDANTS, BUT THAT'S THE ONE WE HAVE TEED

24   UP.  THE DPPS ARE PREPARED TO ADDRESS THAT ISSUE ON BEHALF OF

25   THE PLAINTIFFS.

1          THE SECOND ISSUE IS NANTONG SCHMIDT DATA, SORT OF TWO

2     COMPONENTS OF THAT, ONE BEING THE DATA AND THE SECOND BEING A

3     CONFIRMATION FROM THE DEFENDANTS THAT THERE IS NO OTHER SALES

4     DATA RELATED TO ENTITIES OTHER THAN THE ENTITIES THEY HAVE

5     PRODUCED DATA FOR.

6          **THE COURT:**  I'M SORRY.  SO THERE'S ONE -- THE ONE

7     ISSUE IS NANTONG SCHMIDT COST DATA, AND THEN IT'S JUST SORT OF

8     A CATCHALL.  ARE THERE ANY OTHER DEFENDANTS' DATA, SALES DATA

9     THAT HAS NOT BEEN PRODUCED?

10         **MS. SALINAS:**  YES, YOUR HONOR.  BUT, IN ADDITION,

11    MORE SPECIFICALLY, JUST TO GIVE THE COURT SOME BACKGROUND,

12    NANTONG SCHMIDT, AS THE COURT MAY KNOW, IS THE MANUFACTURING

13    ARM FOR ONE OF THE DEFENDANTS.  IT IS OUR UNDERSTANDING THAT

14    THEY PERFORM MANUFACTURING, NOT JUST FOR OTHER DEFENDANT

15    ENTITIES, BUT ALSO FOR THIRD-PARTY TELESCOPE BRANDS.  AND WE

16    WOULD LIKE CONFIRMATION THAT, TO THE EXTENT THEY PERFORMED

17    MANUFACTURING FOR ANY OTHER TELESCOPE BRANDS, THEY PRODUCE THAT

18    DATA.  THAT DATA IS CLEARLY RESPONSIVE TO OUR (INDISCERNIBLE)

19    96, WHICH, AS THIS COURT KNOWS, WE SERVED SEVERAL YEARS AGO,

20    AND WE'VE BEEN ASKING FOR CONFIRMATION ON WHETHER OR NOT THAT

21    DATA EXISTS AND, IF SO, WHEN IT WILL BE PRODUCED.

22         **THE COURT:**  I SEE.  THAT LAST CATEGORY IS ALL SALES

23    DATA, ALL TRANSACTIONAL SALES DATA FOR THIRD-PARTY TELESCOPE

24    BRANDS THAT MIGHT HAVE THEIR MANUFACTURING DONE BY NANTONG

25    SCHMIDT?

5

1          **MS. SALINAS:**  YES, YOUR HONOR.

2          **THE COURT:**  ALL RIGHT.  THANK YOU.

3          AND BEFORE WE GET INTO THE WEEDS ON THINGS, IS THAT

4     STATUS -- IS THERE ANYTHING DIFFERENT FOR THE DPPS IN TERMS OF

5     WHERE THINGS STAND?

6          **MR. BORDEN:**  NO, YOUR HONOR.  IF WE'RE JUST LIMITED

7     TO THE TRANSACTIONAL DATA, THEN THESE ARE THE TWO ISSUES ON THE

8     TRANSACTIONAL DATA THAT REMAIN.

9          **THE COURT:**  OKAY.  I'M NOT SURE WHAT YOU MEAN BY

10    THAT, BUT THE PURPOSE OF THIS IS TO DISCUSS TRANSACTIONAL DATA.

11    I APPRECIATE YOU FILED THREE DISCOVERY LETTERS YESTERDAY.

12    WE'RE NOT TALKING ABOUT THOSE AT THIS HEARING.

13          ALL RIGHT.  LET ME TURN TO THE DEFENDANTS.  WHERE DO

14    THE DEFENDANTS THINK THINGS STAND ON THE TRANSACTIONAL DATA

15    PRODUCTION?

16          **MR. STAMBAUGH:**  YOUR HONOR, WE AGREE THAT THERE ARE

17    ONLY TWO OUTSTANDING ISSUES, THE TWO THAT HAVE BEEN IDENTIFIED.

18    SO WHEN YOUR HONOR IS READY, I'M HAPPY TO GET INTO THE DETAILS

19    OF THOSE TWO ISSUES.

20          **THE COURT:**  OKAY.  SO JUST FOR MY EDIFICATION,

21    LOOKING AT YOUR LAST STATUS REPORT, WE ARE DONE WITH THE

22    PRODUCTION OF THE SAP DATA FOR THE CELESTRON WEBSITE SALES.

23          **MR. STAMBAUGH:**  THAT IS CORRECT, YOUR HONOR.

24          **THE COURT:**  OKAY.  AND WE'RE DONE WITH THE PRODUCTION

25    OF THE ATLAS E-COMMERCE DATA FOR THE WEBSITE SALES.

1        **MR. STAMBAUGH:**  THAT HAS BEEN PRODUCED AS WELL, YOUR

2   HONOR.

3            **THE COURT:**  OKAY.  GREAT.

4        SO LET'S TALK ABOUT THE NANTONG SCHMIDT COST DATA.

5   AND I UNDERSTAND THAT THIS IS THE FACTORY THAT PRODUCES --

6   WELL, PRODUCES CELESTRON'S HIGH-END TELESCOPES, BUT I

7   UNDERSTAND THAT IT ALSO PRODUCES OTHER TELESCOPES.  SO WHAT IS

8   THE DISPUTE, IF THERE IS ANY, BETWEEN THE PARTIES ABOUT THE

9   PRODUCTION OF COST DATA?  LET ME DIRECT THAT QUESTION TO

10  MR. STAMBAUGH.

11           **MR. STAMBAUGH:**  THANK YOU, YOUR HONOR.  JOSH

12  STAMBAUGH FOR THE DEFENDANTS.  WE'LL START WITH THE COST DATA.

13  WE HAVE TOLD THE PLAINTIFFS NUMEROUS TIMES NANTONG SCHMIDT DOES

14  NOT MAINTAIN COST DATA CONTRIBUTING TO THE MANUFACTURE OF

15  PRODUCTS.  IN OTHER WORDS, THEY DO NOT MAINTAIN COSTS ON A

16  TRANSACTIONAL LEVEL OR A PRODUCT LEVEL.  AND THE COURT HAS TO

17  KEEP IN MIND THIS IS A CHINESE FACTORY.  IT IS A VERY DIFFERENT

18  ENVIRONMENT THAN AMERICAN BUSINESSES.

19       WHAT WE HAVE DONE, HOWEVER, IN ORDER TO MOVE THIS

20  ISSUE FORWARD, IS TO GO BACK TO INQUIRE OF MR. MICHAEL SON, WHO

21  WILL BE DEPOSED AS A NANTONG SCHMIDT REPRESENTATIVE AND ASKED:

22  DO YOU HAVE LETTER, ANY COST DATA WHATSOEVER, IN TERMS OF HOW

23  THEY OPERATE THEIR FACTORY.  IT MIGHT SEEM STRANGE, BUT WE HAVE

24  INQUIRED AND INQUIRED, AND CELESTRON ITSELF HAS SAID IT APPEARS

25  THEY DIDN'T KNOW WHAT THEY WERE DOING WITH COST DATA.

1          WE HAVE INQUIRED.  WHAT WE HAVE FOUND OUT TODAY --

2     AND I'VE ALREADY INFORMED PLAINTIFFS' COUNSEL OF THIS A WEEK

3     AND A HALF AGO.  THEY HAVE SOME LABOR COSTS.  THEY HAVE SOME

4     RAW MATERIALS COST.  THEY HAVE SOME UTILITIES.  AND THEY HAVE

5     SOME TAXES.  THIS IS NOT INFORMATION THAT IS KEPT IN THE NORMAL

6     COURSE OF BUSINESS.  BUT WE HAVE ALREADY COMMITTED TO CREATE A

7     SPREADSHEET OF THOSE CATEGORIES.

8          IN ADDITION, THERE'S SOME AMORTIZATION AND

9     APPRECIATION.  IT WILL NOT BE ON A WEEKLY OR MONTHLY BASIS.  IT

10    WILL BE A YEARLY BASIS AND WE'VE COMMITTED TO PRODUCE THAT THIS

11    WEEK.

12         **THE COURT:**  SO, LET ME ASK A FEW QUESTIONS ABOUT

13    THAT, BECAUSE I DID SEE THE REMARKS IN THE STATUS REPORT FROM

14    THE END OF JUNE THAT THE COST DATA DOESN'T EXIST.  SO, YOU

15    KNOW, I APPRECIATE IT MAY NOT EXIST IN SOME CONVENTIONAL

16    ACCOUNTING FORM THAT YOU MIGHT EXPECT, BUT IT HAS TO LITERALLY

17    EXIST, OR HAVE EXISTED AT SOME POINT, BECAUSE, OTHERWISE, A

18    FACTORY COULDN'T ENGAGE IN TRANSACTIONS WITH CUSTOMERS IF IT

19    HAD NO IDEA WHAT ITS COSTS WERE.

20         SO, WHEN THE RECORDS EXISTED -- AND I APPRECIATE THEY

21    MAY NOT EXIST FOR ALL TIME PERIODS NOW -- WHAT FORM DID THEY

22    TAKE?

23         **MR. STAMBAUGH:**  AND, AGAIN, YOUR HONOR, WE HAVE

24    SPOKEN WITH MR. AMIR CANNON, WHO IS A CELESTRON EMPLOYEE WHO

25    WAS DEPOSED.  AND I WANT TO GO AHEAD AND REBUT SOMETHING THAT

1   THE PLAINTIFF SAID.

2           MR. CANNON TESTIFIED WHEN HE WENT TO NANTONG SCHMIDT

3   HE TALKED ABOUT "COST DATA."  THE DATA THAT HE WAS REFERRING

4   TO, AND I'VE CONFIRMED THIS WITH HIM MYSELF, IS CELESTRON'S

5   COSTS, WHAT THEY PAID THE FACTORY.

6           SO TO ANSWER THE COURT'S QUESTION DIRECTLY -- AGAIN,

7   THIS IS VERY DIFFERENT.  THESE COMPANIES DEAL WITH THE CHINESE

8   GOVERNMENT, VASTLY DIFFERENT THAN AMERICAN COMPANIES.  HIS

9   TESTIMONY WAS, ESSENTIALLY, THEY DON'T KEEP THESE RECORDS.

10          SO, TO ANSWER YOUR QUESTION, THERE WAS NO FORM.  WE

11  ARE CREATING A SPREADSHEET AS WE SPEAK, PULLING TOGETHER TAXES,

12  SOME LABOR COSTS.  THEY DID NOT KEEP THIS IN THE NORMAL COURSE

13  OF BUSINESS.

14          **THE COURT:**  SO WHAT -- WHAT FORM IS IT KEPT IN?  SO,

15  IN OTHER WORDS, LET'S JUST TAKE A DAY IN THE LIFE OF THIS

16  FACTORY, PRESENT DAY.  THEY'RE GOING TO MANUFACTURE A TELESCOPE

17  FOR SOMEBODY.  THEY HAVE TO KNOW HOW MUCH IT'S GOING TO COST

18  THEM AS A FACTORY TO MANUFACTURE THE TELESCOPE IN ORDER TO

19  QUOTE A COST TO A CUSTOMER.  THEY HAVE TO JUST DO THAT IN ORDER

20  TO STAY IN BUSINESS, I WOULD IMAGINE.  IS THERE SOME SET OF

21  RECORDS -- MAYBE IT'S THE BACK OF AN ENVELOPE -- BUT SOMETHING

22  THE COMPANY DOES THAT ALLOWS IT TO BE ABLE TO ENGAGE IN

23  BUSINESS, ESSENTIALLY?

24          **MR. STAMBAUGH:**  I DON'T WANT TO BELABOR THE POINT,

25  BUT, RESPECTFULLY, YOUR HONOR, THEY DO NOT.  SO THEY HAVE RAW

1    MATERIAL COSTS, AND, YES, WE CAN PRODUCE THAT IN A SPREADSHEET.

2              **THE COURT:**  OKAY.

3              **MR. STAMBAUGH:**  THEY HAVE TAXES.  THEY HAVE LABOR

4    COSTS.  THEY PAY EMPLOYEES.  THAT IS NOT HOW THEY -- THEY DO

5    NOT DO IT ON A TRANSACTIONAL OR PRODUCT-BY-PRODUCT BASIS.  THE

6    ONLY THING THEY KNOW IS, IF WE HAVE A LARGER VOLUME INVOICE

7    PURCHASE ORDER, WE'RE GOING TO MAKE MORE MONEY, RIGHT?

8              **THE COURT:**  SO, WHERE ARE THESE DISCRETE BUCKETS OF

9    COSTS KEPT?  SO, YOU SAY YOU'RE GOING TO CREATE SOMETHING.  I'M

10   NOT GOING TO TELL YOU TO CREATE SOMETHING.  YOU CAN VOLUNTEER

11   TO CREATE SOMETHING.  BUT WHAT I'M TRYING TO UNDERSTAND IS WHAT

12   DOES THIS LOOK LIKE IN ITS CURRENT FORM.  YOU SAY THEY HAVE RAW

13   MATERIAL COSTS.  WHERE IS THAT?  WHAT DOES IT LOOK LIKE?  WHAT

14   DOES THE RECORD LOOK LIKE?

15             **MR. STAMBAUGH:**  I HAVE NOT SEEN THE ACTUAL DOCUMENTS.

16   I BELIEVE THAT THEY ARE SEPARATE REPORTS, SHEETS, INVOICES FOR

17   RAW MATERIALS.  TAXES, THEY HAVE TAX RECEIPTS THAT THEY PAY TO

18   THE GOVERNMENT.  I HAVE NOT SEEN THEM MYSELF.  I DON'T SPEAK

19   CHINESE, SO I'M NOT IN DIRECT CONTACT WITH MR. MICHAEL SON, BUT

20   WE ARE COMPILING IT INTO A SPREADSHEET WHICH IS THE BEST WE CAN

21   DO.

22             **THE COURT:**  OKAY.  AND HOW LONG WILL THAT TAKE?

23             **MR. STAMBAUGH:**  AGAIN, YOUR HONOR, WE'VE COMMITTED TO

24   PRODUCE THAT THIS WEEK.

25             **THE COURT:**  OKAY.  SO, COMPILING -- AND HAVE YOU

```
 1    SHARED WITH THE PLAINTIFFS WHAT THE COMPONENTS WILL BE, LIKE,

 2    WHAT THE DIFFERENT CATEGORIES OF COSTS WILL BE THAT GO INTO

 3    THIS SPREADSHEET?

 4            MR. STAMBAUGH:  WE HAVE, YOUR HONOR.

 5            THE COURT:  OKAY.

 6            MR. STAMBAUGH:  I SENT AN EMAIL LAST WEEK TO

 7    MS. SALINAS.

 8            THE COURT:  OKAY.  AND CAN YOU JUST --

 9            MR. STAMBAUGH:  AND ALL COUNSEL.

10            THE COURT:  CAN YOU JUST TELL ME WHAT THOSE BUCKETS

11    ARE?

12            MR. STAMBAUGH:  LABOR COSTS, RAW MATERIALS,

13    UTILITIES, TAXES.  AND I JUST RECENTLY LEARNED THERE IS SOME

14    AMORTIZATION AND APPRECIATION.

15            THE COURT:  OKAY.  AND THESE ARE FOR THE FACTORY AS A

16    WHOLE OR SPECIFIC TO -- I DON'T KNOW IF THEY MAKE THINGS OTHER

17    THAN TELESCOPES, BUT SPECIFIC TO TELESCOPE PRODUCTS THAT ARE

18    RELEVANT TO THIS ACTION?

19            MR. STAMBAUGH:  THAT'S MY UNDERSTANDING, YES.

20            THE COURT:  OKAY.  ALL RIGHT.  SO LET'S JUST PAUSE

21    THERE, AND LET ME HEAR FROM THE PLAINTIFFS ABOUT -- I'LL JUST

22    FRAME IT AS A PROPOSAL FOR HOW TO SATISFY THE REQUEST FOR COST

23    DATA.

24            SO, WHAT I HEAR FROM THE DEFENDANTS IS THAT THEY'RE

25    GOING TO COMPILE IN A SPREADSHEET THE COST DATA THAT THEY
```

1   BELIEVE EXISTS IN THE COMPANY SO THAT THEY CAN PRESENT IT TO

2   YOU IN SOME ORGANIZED FASHION, AND THAT YOU ALSO HAVE THE

3   OPPORTUNITY TO TAKE THE DEPOSITION OF THIS MR. SON WHO CAN

4   EXPLAIN IT.

5           **MS. SALINAS:**  YES, YOUR HONOR.  SO JUST A FEW ITEMS

6   OF CLARIFICATION.

7           ONE, IT IS INACCURATE FOR DEFENDANTS TO STATE THAT

8   THEY PREVIOUSLY TOLD US THEY WOULD PROVIDE RAW MATERIALS COSTS.

9   I'M LOOKING AT THE EMAIL THAT THE DEFENDANTS JUST READ.  THEY

10  DID NOT DISCLOSE THAT, BUT WE'RE VERY GLAD TO HEAR THEY ARE

11  WILLING TO PROVIDE THAT INFORMATION.  THAT IS SOME OF THE

12  INFORMATION WE WERE GOING TO ASK THIS COURT FOR.

13          I THINK OUR BIGGEST CONCERN REMAINS -- THE

14  REPRESENTATION THEY PREVIOUSLY MADE TO US THEY WERE GOING TO

15  PROVIDE SOME OF THE COST DATA.  AS YOUR HONOR KNOWS, THIS

16  REQUEST HAS BEEN OUTSTANDING FOR MORE THAN TWO YEARS.  WE HAVE

17  INTERROGATORIES VERY SPECIFIC TO COST DATA, THAT I CAN GIVE

18  YOUR HONOR IF IT WOULD BE HELPFUL, THAT WE SERVED MORE THAN TEN

19  MONTHS AGO.  AND WE JUST NEED TO KNOW ONCE AND FOR ALL:  THIS

20  IS ALL OF THE DATA WE ARE GOING TO PROVIDE.

21          SO WE'D ASK THE COURT JUST FOR SOME DEFINITIVE

22  DEADLINE AND SOME REPRESENTATION FROM THE DEFENDANTS, WHETHER

23  IT BE IN CERTIFICATE, OR WHATEVER FORM YOUR HONOR WOULD PREFER,

24  SAYING THIS IS EVERYTHING, SO OUR EXPERTS CAN GO OFF AND BEGIN

25  THEIR WORK, BECAUSE, WITHOUT IT, WE HAVE TO OPERATE IN A WORLD

1   WHERE WE MIGHT GET AND IN A WORLD WHERE WE DON'T GET DATA.

2        **THE COURT:**  OKAY.

3        **MS. SALINAS:**  SO, THAT I THINK IS WHERE THE TWO

4   CENTRAL ISSUES IS.  CONFIRMATION THAT'S ALL THE DATA AND

5   CONFIRMATION IT WOULD EXCLUDE THE RAW MATERIALS OR ANY OTHER

6   MATERIAL FACTORS THAT GO INTO THE COSTS, BECAUSE THAT WAS NOT

7   PREVIOUSLY DISCLOSED TO THE PLAINTIFFS.

8        **THE COURT:**  OKAY.  LET ME BACK UP AND JUST SAY, WHAT

9   ELSE BESIDES THE ITEMIZED LIST THAT THE DEFENDANTS HAVE

10  PROVIDED ARE YOU -- WOULD YOU EXPECT TO SEE AS A COST COMPONENT

11  BESIDES WHAT'S BEEN DESCRIBED?

12       **MS. SALINAS:**  SO INTERROGATORY NUMBER 5 WE SERVED ON

13  DEFENDANTS, WE LISTED OUT ALL THE DIFFERENT TYPES OF COST

14  CATEGORIES.  I CAN READ THOSE TO THE COURT IF THAT WOULD BE

15  HELPFUL.

16       **THE COURT:**  HOW LONG IS THE LIST?

17       **MS. SALINAS:**  IT'S NOT VERY LONG, YOUR HONOR.

18       **THE COURT:**  OKAY.  IF YOU WANT TO READ ME THE LIST,

19  AND THEN I'LL DO THE COMPARISON AND SEE WHAT'S MISSING, THAT'S

20  FINE.  BUT, OTHERWISE, YOU CAN TELL ME WHAT'S MISSING.

21       **MS. SALINAS:**  THOSE ARE THE CENTRAL COMPONENTS, YOUR

22  HONOR.

23       **THE COURT:**  OKAY.  RAW MATERIALS, LABOR, UTILITIES,

24  TAXES, AND THEN SOME DISCUSSION OF AMORTIZATION.

25       **MS. SALINAS:**  YES, YOUR HONOR.

```
 1            THE COURT:  OKAY.  ALL RIGHT.  SO, IF IT'S THE CASE
 2   THAT YOU GET THAT IN SOME KIND OF EXCEL SPREADSHEET FORM -- I
 3   GUESS I SHOULD ASK.  WHAT PERIOD OF TIME IS THIS COVERING?  IS
 4   THIS COVERING AS WHATEVER YOU DEFINED AS THE RELEVANT PERIOD
 5   FOR PURPOSES OF THE LITIGATION?
 6            MR. STAMBAUGH:  NANTONG SCHMIDT ONLY CAME INTO PLAY
 7   IN 2016.
 8            THE COURT:  OKAY.
 9            MR. STAMBAUGH:  THROUGH 2022.
10            THE COURT:  OKAY.  SO THAT'S THE PERIOD THIS DATA
11   WILL COVER?
12            MR. STAMBAUGH:  CORRECT.
13            THE COURT:  OKAY.  SO BACK TO, MS. SALINAS.  SO THEN
14   YOU'LL GET THIS PRODUCTION, AND THEN YOU'LL HAVE AN OPPORTUNITY
15   TO DEPOSE THIS WITNESS, WHO, I UNDERSTAND WILL BE THE
16   KNOWLEDGEABLE PERSON ABOUT THE COSTS.  YES?
17            MR. STAMBAUGH:  CORRECT.
18            THE COURT:  DEFENDANTS ARE SAYING YES.
19            MR. STAMBAUGH:  YES.
20            THE COURT:  YOU MAY NOT BE ABLE TO GET ANYTHING
21   BETTER THAN THAT, BUT YOU'LL HAVE A CHANCE TO EXPLORE THE
22   DOCUMENTATION THAT YOU DO GET.  SO, ANY PROBLEMS WITH THAT SO
23   FAR?
24            MS. SALINAS:  NO PROBLEMS WITH THAT, YOUR HONOR.  I
25   DON'T KNOW IF YOU MEANT TO SORT OF SET ASIDE THE SECOND
```

```
 1    QUESTION.  WE WOULD JUST WANT SOME REPRESENTATION THAT THIS IS
 2    ALL OF THE DATA THAT EXISTS.
 3              THE COURT:  OKAY.  PUTTING THAT TO THE SIDE FOR A
 4    MOMENT, I'M REALLY JUST TRYING TO FOCUS --
 5              MS. SALINAS:  YES, YOUR HONOR.
 6              THE COURT:  -- ON THE WHAT AS OPPOSED TO, LIKE,
 7    WRAPPING IT UP IN A TIGHT LITTLE BOW.
 8              SO AS LONG AS YOU HAVE THE WHAT, AND WE CAN BE
 9    CONFIDENT THAT THAT'S COMPLETE SO FAR AS IS AVAILABLE,
10    APPRECIATING THAT THERE'S SOME, YOU KNOW, LACK OF AVAILABILITY
11    OF DATA IN THE FORM THAT YOU MIGHT WISH TO HAVE IT.  BUT IF WE
12    CAN GET THAT, THEN THAT WOULD SATISFY THE PLAINTIFFS.
13              MS. SALINAS:  AND, YOUR HONOR, I HAVE THE LIST HERE.
14    IT'S ONLY ONE --
15              THE COURT:  OKAY.
16              MS. SALINAS:  -- SENTENCE IF I COULD READ IT.
17              THE COURT:  OKAY.  GO AHEAD.
18              MS. SALINAS:  IT'S MANUFACTURING COSTS, RAW MATERIAL
19    COSTS, PACKAGING COSTS, LABOR COSTS, FIXED OVERHEAD COSTS, AND
20    VARIABLE OVERHEAD COSTS.
21              THE COURT:  OKAY.  SO IS THERE A DIFFERENCE -- I
22    MEAN, I'M NOT SURE IF SOME OF THESE WOULD BE DESCRIBED AS
23    MANUFACTURING COSTS, THE LIST THAT THE DEFENDANTS GAVE, FIXED
24    OVERHEAD COSTS, MAYBE THEY DON'T EVEN HAVE THAT, BUT MAYBE
25    THAT -- ANYWAY, LET ME JUST ASK, SINCE WE'RE NOT TALKING
```

1    ABOUT -- WE WEREN'T TALKING ABOUT INTERROGATORIES, WE WERE

2    TALKING ABOUT DOCUMENT REQUESTS UNTIL JUST THIS MOMENT.

3           THE PLAINTIFFS HAVE IDENTIFIED THIS INTERROGATORY

4    WITH THESE COST CATEGORIES.  IS THERE SOME COST CATEGORY THAT

5    IS NOT AVAILABLE, OR CAN YOU SATISFY ALL THOSE COST CATEGORIES

6    WITH YOUR PRODUCTION, YOUR PROPOSED PRODUCTION?

7           **MR. STAMBAUGH:**  WHAT I CAN SAY, YOUR HONOR, IS THAT

8    WE CAN PRODUCE ALL COST DATA THAT EXISTS.  THE REASON THAT IT

9    WASN'T PRODUCED PREVIOUSLY IS THAT IT IS NOT CATEGORIZED IN

10   THAT FASHION OR KEPT IN THE NORMAL COURSE OF BUSINESS.  BUT I

11   THINK MANUFACTURING COSTS, RIGHT, WOULD INCLUDE THINGS LIKE

12   UTILITIES, OVERHEAD, VARIABLE COSTS.  IT'S A VERY VAGUE

13   CONCEPT.  I DON'T MEAN TO BE EXCLUSIVE IN MY LIST.  THAT GOES

14   WITH THE CATEGORIES I WAS GIVEN.  MY UNDERSTANDING IS IT IS ALL

15   COST DATA THAT WE CAN COMPILE FROM THE VARIOUS SOURCES.

16          **THE COURT:**  SO, WOULD YOU BE ABLE TO RESPOND OR

17   SUPPLEMENT A RESPONSE TO AN INTERROGATORY ASKING FOR THAT

18   INFORMATION, SAYING, AS TO NANTONG SCHMIDT, THESE ARE THE COST

19   DATA THAT WE HAVE, RULE 33(D), SEE THESE DOCUMENTS AT THESE

20   BATES NUMBERS?

21          **MR. STAMBAUGH:**  WE'D BE HAPPY TO.

22          **THE COURT:**  SEEMS LIKE THE WAY TO SATISFY THE

23   CONCERNS THE PLAINTIFFS HAVE.  I DON'T MEAN TO EXCLUDE DPPS

24   FROM THIS CONVERSATION, BUT IT SOUNDS LIKE MS. SALINAS IS THE

25   SPOKESPERSON FOR PLAINTIFFS ON THE SUBJECT.  IS THAT CORRECT?

1  IS THERE ANYTHING ELSE TO ADD FROM DPPS?

2         **MR. BORDEN:**  THE ONE THING I WOULD ADD REALLY GOES TO

3  THE QUESTIONS THAT THE COURT ASKED IN THE BEGINNING, WHICH IS

4  WHAT ARE THE UNDERLYING DOCUMENTS, WHERE IS THE INFORMATION

5  COMING FROM.  AND IT GOES TO MS. SALINAS' SECOND CONCERN, WHICH

6  IS, DO WE HAVE EVERYTHING, IS THIS COMPLETE, IS THIS GOING TO

7  BE EVERYTHING.

8         SO I THINK IT WOULD BE USEFUL TO KNOW, FROM OUR

9  PERSPECTIVE, WHAT ARE THE DOCUMENTS THAT THEY'RE GLEANING THIS

10  INFORMATION FROM.  SO, I THINK THAT SHOULD BE PART OF WHATEVER

11  GETS ORDERED TODAY.

12         **THE COURT:**  YOU'RE GOING TO HAVE TO SPEAK INTO THE

13  MICROPHONE BECAUSE NOTHING YOU SAID GOT PICKED UP.  BUT LET ME

14  JUST PARAPHRASE.  YOU'RE WANTING TO BE SURE YOU KNOW WHAT THE

15  SOURCE OF THE INFORMATION YOU GET IN THIS EXCEL SPREADSHEET IS.

16         **MR. BORDEN:**  THAT IS CORRECT.

17         **THE COURT:**  I DON'T KNOW HOW TO ANSWER THAT QUESTION,

18  BUT I THINK THAT THE DEFENDANTS ARE TRYING TO PUT IT IN A FORM

19  THAT CAN BE USED, BUT YOU'RE WORRIED ABOUT ITS ACCURACY; IS

20  THAT FAIR?

21         **MR. BORDEN:**  WE'RE WORRIED ABOUT THE COMPLETENESS OF

22  IT AND WANT TO UNDERSTAND WHERE IT CAME FROM.

23         **THE COURT:**  OKAY.  SO SOME OF YOUR QUESTIONS,

24  PRESUMABLY, CAN BE ANSWERED BY TAKING THIS DEPOSITION OF

25  MR. SON, HOW WAS IT KEPT, HOW WAS IT FORMED, HOW WAS IT

1    MAINTAINED, WHERE DID IT COME FROM IN THE FIRST PLACE.  YOU CAN

2    ASK ALL THOSE QUESTIONS.

3          BUT AS FAR AS THE UNDERLYING DOCUMENTS GO, IF THERE

4    IS A DESIRE TO HAVE THE UNDERLYING DOCUMENTS AND NOT A

5    SPREADSHEET, WE SHOULD PROBABLY SURFACE THAT ISSUE RIGHT NOW

6    BEFORE THE DEFENDANTS GO THROUGH A BUNCH OF WORK.

7          SO, LET ME ASK.  IS THAT WHAT YOU WANT?  YOU WANT A

8    PILE OF INVOICES, OR DO YOU WANT IT ORGANIZED AND COMPILED IN A

9    SPREADSHEET FORM?

10         **MR. BORDEN:**  WELL, IT'S KIND OF A BLACK BOX TO US,

11   YOUR HONOR, BECAUSE WE DON'T UNDERSTAND -- YOU SAID A PILE OF

12   INVOICES.  WE DON'T REALLY KNOW WHAT IT IS.  I THINK WHAT WE'D

13   LIKE TO DO IS KNOW WHAT THE UNDERLYING DOCUMENTS ARE.  I THINK

14   IN TERMS OF UTILITY, HAVING A SPREADSHEET WOULD PROBABLY BE

15   MORE USEFUL, BUT WE'D AT LEAST LIKE TO KNOW WHERE THE

16   INFORMATION IS COMING FROM.

17         **THE COURT:**  WELL, HAVE YOU TALKED ABOUT THAT?

18         **MR. BORDEN:**  YES.  WE'VE BEEN ASKING THEM FOR A

19   COUPLE OF MONTHS.

20         **THE COURT:**  OKAY.  OKAY.  SO, LET ME GO BACK TO THE

21   DEFENDANTS.  WHAT ARE THE UNDERLYING DOCUMENTS?

22         **MR. STAMBAUGH:**  AND, AGAIN, YOUR HONOR, I HAVE NOT

23   SEEN THEM MYSELF.

24         LET ME PROPOSE A SOLUTION, WHICH IS, IN ADDITION TO

25   THE DEPOSITION OF MICHAEL SON, WE WOULD BE HAPPY TO SUPPLEMENT

1    AN INTERROGATORY RESPONSE EXPLAINING WHERE THE CATEGORIES OF

2    INFORMATION CAME.  FOR THE RECORD, I NEED TO IDENTIFY AN ISSUE.

3    I DON'T WANT TO DEVOLVE THIS CONVERSATION BECAUSE IT'S VERY

4    PRODUCTIVE.

5            YOUR HONOR KNOWS WHAT WE'VE HAD IS A SITUATION WHERE

6    THEY COME BACK AND ASK FOR IT IN A DIFFERENT FORM, IN A

7    DIFFERENT FORM, IN A DIFFERENT FORM, AND THAT'S CAUSED A LOT OF

8    PROBLEMS.

9            SO, WE COULD PRODUCE THE SPREADSHEET.  WE COULD

10   EXPLAIN WHERE EACH CATEGORY, UNDERLYING CATEGORY, CAME FROM

11   SPECIFICALLY; IT'S A PILE OF INVOICES, AS YOUR HONOR SAID.

12   WHAT WE DON'T BELIEVE IS PRODUCTIVE IS FOR THE PLAINTIFF TO

13   SPEND TIME TALKING ABOUT, WELL, YOU KNOW, IN WHICH CABINET WAS

14   THIS PARTICULAR CATEGORY AND WE WANT IT REFORMULATED, AND WE

15   WANT SOME OTHER METADATA, AND WE WANT IT ORGANIZED IN A

16   DIFFERENT FASHION.  THAT'S WHAT WE'VE RUN INTO IN THE PAST, AND

17   THAT'S OUR FEAR.

18           **THE COURT:**  SO WHO'S DOING THE COMPILING?  IS IT

19   LAWYER OR LAWYER STAFF PEOPLE?  IS IT YOUR E-DISCOVERY VENDOR?

20   IS IT THE CLIENT?  WHO IS DOING THE COMPILING?

21           **MR. STAMBAUGH:**  THE CLIENT IS DOING THE COMPILING OF

22   THE DATA.

23           **THE COURT:**  OKAY.  AND THEY ARE PRESUMABLY USING SOME

24   RECORDS TO DO THIS?  ARE THEY ELECTRONIC RECORDS OR PAPER?

25           **MR. STAMBAUGH:**  I CAN'T ANSWER THAT.  I DON'T KNOW.

1          **THE COURT:**  OKAY.  BECAUSE ONE WAY TO DO THIS IS HAVE

2   THE CLIENT DO THE COMPILING.  THEY NEED TO PRESERVE THE

3   INFORMATION THAT THEY COMPILED IT FROM, MAYBE IT CAN BE MADE

4   AVAILABLE FOR INSPECTION, AND IF IT'S PAPER, THEN SOMEBODY

5   BEARS THE COST FOR INSPECTING.  IF IT'S ELECTRONIC, MAYBE IT

6   CAN BE PUT IN SOME ENVIRONMENT WHERE IT CAN BE LOOKED AT.

7          BUT IF THEY WANT TO SPOT CHECK OR DO WHATEVER, THEN

8   MAYBE THAT'S THE WAY TO SOLVE THIS PROBLEM, BECAUSE I DON'T

9   WANT TO -- I DON'T WANT TO REFEREE DISCOVERY DISPUTES ABOUT

10  THIS LEVEL OF DETAIL.

11         BUT THE COMPILING SHOULD BE NOT A BLACK BOX IN THE

12  SENSE THAT IT SHOULD BE ABLE TO BE TESTED FOR ACCURACY, THAT

13  KIND OF THING.  AND IF IT TURNS OUT THAT THE PLAINTIFFS WANT

14  MORE INFORMATION THAN WHAT HAS BEEN PUT IN THE COMPILATION,

15  THEN THEY MAYBE CAN ASK FOR PRODUCTION OF THE RAW DATA, AND

16  KNOCK THEMSELVES OUT, AND DO IT THEMSELVES IF THEY WANT TO.

17  THAT'S ONE SUGGESTION I HAVE.

18         **MR. STAMBAUGH:**  THAT'S A GREAT SUGGESTION, YOUR

19  HONOR.  WE WOULD BE HAPPY TO DO THAT.

20         AGAIN, LET ME STATE FOR THE RECORD, BECAUSE WE'RE

21  GETTING CLOSER TO THE COMPLETION OF THIS PROCESS, WHAT WE FEAR

22  IS, IF IT IS BACK OF THE ENVELOPE ESTIMATES FOR THIS CHINESE

23  FACTORY, VERY DIFFERENT THAN AMERICAN COMPANIES, WE WILL BE

24  BACK HERE WITH THE PLAINTIFFS' COUNSEL SAYING THAT CAN'T BE THE

25  CASE, THEY MUST HAVE SOMETHING ELSE.

1          **THE COURT:**  THE WAY TO SOLVE THIS PROBLEM IS YOU PUT

2    UP YOUR WITNESS WHO WILL TESTIFY ABOUT HOW THE RECORDS ARE KEPT

3    AND WEREN'T KEPT AND WHAT THE INFORMATION WAS THAT WAS

4    MAINTAINED, AND THE PERSON NEEDS TO BE PREPARED TO ANSWER THOSE

5    QUESTIONS.  THAT'S HOW WE DO IT.

6          HERE'S -- THERE'S TWO SEPARATE THINGS, THOUGH.

7    THERE'S COMPILING INFORMATION THAT YOU'RE THEN GOING TO USE AS

8    A BASE, PRESUMABLY, FOR AN INTERROGATORY ANSWER, 33(D)

9    RESPONSE, AND TO SATISFY THE PRODUCTION REQUIREMENTS UNDER

10   REQUEST FOR PRODUCTION 96 AND WHATEVER OTHER RFP REGARDING

11   TRANSACTIONAL DATA THAT IS IN THE MIX.

12          SO, YOU, DEFENDANTS, NEED TO BE CONFIDENT THAT WHAT

13   YOU'RE PRODUCING IS ACCURATE, TO THE EXTENT YOU HAVE THOSE

14   RECORDS, AND THE BEST WAY TO DO IT, I SUGGEST, IS TO HAVE

15   WHATEVER IT IS THAT WAS THE BASIS FOR THAT COMPILATION

16   AVAILABLE FOR INSPECTION IF THE PLAINTIFFS WANT TO HAVE A LOOK,

17   AND THEN YOU JUST SHARE IT WITH THEM AND THEN SAY, YOU KNOW,

18   HERE'S WHAT IT IS.  AND IF THEY WANT TO MAKE THEIR OWN

19   COMPILATION FROM THE RAW MATERIALS -- FORGIVE THE USE OF THAT

20   TERM, PROBABLY INADVISABLE IN THIS SITUATION -- BUT FROM THAT

21   RAW DATA, THEN THEY CAN DO IT.  AND IF THERE'S NO OBJECTION

22   FROM DEFENDANTS DOING IT THAT WAY, IT SEEMS TO ME THE SIMPLEST

23   APPROACH.

24          **MR. STAMBAUGH:**  WE WOULD BE HAPPY TO DO THAT TO THE

25   EXTENT, AGAIN, THAT THE DATA IS ACCESSIBLE IN I THINK WE CAN

```
 1   USE UNDERLYING SOURCE FILES, LET'S CALL IT, INSTEAD OF RAW
 2   MATERIALS.
 3            THE COURT:  MY THEORY IS IF SOMEONE IS COMPILING
 4   INFORMATION, THEY HAVE TO BE COMPILING IT FROM SOMETHING.  SO
 5   TO SAVE YOURSELF FROM THE BLACK BOX CRITICISM, IF YOU JUST HAVE
 6   THE CLIENT MAINTAIN THE UNDERLYING SOURCE MATERIAL FOR THE
 7   COMPILATION, THEN IF THE PLAINTIFFS DON'T LIKE OR FIND UNUSABLE
 8   YOUR COMPILATION, THEN THEY CAN GO TO THE SOURCE MATERIAL.  IF
 9   THERE'S NO OBJECTION TO THAT, AND I DON'T SEE WHY THERE WOULD
10   BE, THEN, YOU KNOW, I THINK THAT'S THE WAY TO SOLVE THIS
11   PROBLEM.
12            MR. STAMBAUGH:  WE ARE HAPPY TO DO THAT.
13            THE COURT:  OKAY.
14            MR. STAMBAUGH:  AGAIN, JUST SO WE'RE CLEAR, THE ISSUE
15   IS THAT SOURCE MATERIAL --
16            THE COURT:  IT IS WHAT IT IS.
17            MR. STAMBAUGH:  CORRECT.
18            THE COURT:  OKAY.  SO IT IS WHAT IT IS.  I'M NOT
19   ASKING ANYONE TO CHANGE IT.
20            MR. STAMBAUGH:  OKAY.
21            THE COURT:  OKAY?  SO THERE WE GO.
22            THAT SOUNDS LIKE A GOOD PATH FORWARD ON THE NANTONG
23   SCHMIDT MATERIAL.
24            NOW, THERE WAS A LITTLE ADDENDUM TO THAT, WHICH
25   MS. SALINAS MENTIONED, WHICH IS THAT THERE ARE THIRD PARTY
```

```
 1   TELESCOPE BRANDS, MEANING NOT -- NOT TELESCOPE BRANDS WHO ARE

 2   PARTIES TO THIS LAWSUIT, RIGHT, FOR WHICH THE PLAINTIFFS WANT

 3   COST DATA.  SO IS THERE AN ISSUE WITH THAT IN TERMS OF THIS

 4   COMPILATION?  IS THAT -- IS THAT -- IS THE COST DATA GOING TO

 5   ENCOMPASS ALL TELESCOPE MANUFACTURING COSTS FOR ALL BRANDS OR

 6   JUST THE ONES FOR PARTIES IN THIS LAWSUIT?

 7           MR. STAMBAUGH:  FOR U.S. SALES IS WHAT WE INTEND TO

 8   DO --

 9           THE COURT:  OKAY.

10           MR. STAMBAUGH:  -- WHICH THIS COURT HAS PREVIOUSLY

11   RESTRICTED THOSE REQUESTS TO.

12           SO, LET ME GIVE THE COURT SOME CONTEXT.

13           THE ONLY TWO THIRD PARTIES -- AND WE'LL PUT ASIDE

14   WHETHER THIS IS RELEVANT, SALES TO THESE NON-DEFENDANTS.  ONE

15   IS LEVENHUK, L-E-V-E-N-H-U-K, WHICH IS A RUSSIAN COMPANY.  THE

16   OTHER IS VIXEN, V-I-X-E-N, WHICH IS A JAPANESE COMPANY.  NOW,

17   THE LEVENHUK COMPANY IS NOT AFFILIATED WITH THEIR U.S.

18   SUBSIDIARY.  THAT IS, THE SALES MADE BY NANTONG SCHMIDT TO

19   LEVENHUK WERE NOT MADE TO ANY U.S. COMPANY.  VIXEN, THERE WAS

20   NOTHING PURCHASED BY VIXEN THAT WAS SHIPPED DIRECTLY TO THE

21   U.S.  OKAY?

22           SO ALL OF THAT IS OUTSIDE THE SCOPE OF NANTONG

23   SCHMIDT'S POSSESSION, CUSTODY AND CONTROL.

24           WITH RESPECT TO LEVENHUK, I HAVE LEARNED, OR I

25   UNDERSTAND, THAT THERE MAY HAVE BEEN TWO OR THREE U.S. SALES
```

1    TOTALING APPROXIMATELY $90,000.  IT'S IMPORTANT TO NOTE FOR THE

2    RECORD THAT THE IPPS SENT A SUBPOENA TO LEVENHUK.  THIS WAS

3    BEFORE THIS COURT, AND WE BRIEFED THIS ISSUE.  SO ANY SALES

4    FROM LEVENHUK TO THE U.S. SHOULD HAVE BEEN OBTAINED THROUGH

5    THAT SUBPOENA.  IT'S UNCLEAR WHY THEY'RE COMING BACK TO

6    NANTONG --

7            THE COURT:  THEY WANT COST DATA, RIGHT?  SO, THAT'S

8    WHAT THEY WANT.  I'M NOT SURE WHAT THE SUBPOENA ENCOMPASSED,

9    BUT WE'RE ASKING -- WE'RE TALKING ABOUT -- SPECIFICALLY ABOUT

10   COSTS TO MANUFACTURE WHATEVER THESE TELESCOPES ARE.

11           MR. STAMBAUGH:  WOULD BE ALL U.S. SALES.

12           THE COURT:  OKAY.  FINE.  BUT -- OKAY.  NEVER MIND.

13   GO AHEAD.  WHAT'S THE PROBLEM.

14           MR. STAMBAUGH:  I'VE EXPLAINED THE ISSUE.  IN OTHER

15   WORDS, WE DON'T BELIEVE THERE'S ANY THERE THERE.  I'M LOOKING

16   INTO THE LEVENHUK TWO OR THREE SALES TO THE U.S.  WE'RE HAPPY

17   TO PROVIDE -- THEY'RE TALKING ABOUT TRANSACTIONAL DATA.  THEY

18   ARE TALKING ABOUT SALES TO NON-U.S. DEFENDANTS -- EXCUSE ME --

19   NON-DEFENDANTS.

20           THE COURT:  ALL RIGHT.  YOUR ANSWER IS, APART FROM

21   THESE TWO OR THREE SALES TO LEVENHUK THAT TOTAL $90,000,

22   THERE'S NO COST DATA TO ANY THIRD PARTY FOR SALES TO ANY THIRD

23   PARTY IN THE U.S.

24           MR. STAMBAUGH:  I BELIEVE THE PLAINTIFFS ARE ASKING

25   ABOUT TRANSACTIONAL DATA, NOT COSTS.

```
 1              THE COURT:  I UNDERSTOOD IT WAS PART OF THE NANTONG

 2     SCHMIDT COST DATA REQUEST, SO THEY WANTED TO MAKE SURE THAT THE

 3     COST DATA WASN'T LIMITED TO TRANSACTIONS WITH A PARTY TO THE

 4     LAWSUIT, BUT INCLUDED TRANSACTIONS WITH THIRD PARTIES NOT

 5     PARTIES TO THE LAWSUIT, AND YOU'RE SAYING, YES, THE ADDED

 6     LIMITATION IS U.S. SALES, AND THERE ARE ONLY TWO OR THREE U.S.

 7     SALES TO THESE THIRD PARTIES.

 8              MR. STAMBAUGH:  CORRECT.

 9              THE COURT:  SO I THINK WE'RE TALKING ABOUT THE SAME

10     THING.  AM I MISTAKEN?

11              MS. SALINAS:  YOUR HONOR, JUST TO CLARIFY TWO THINGS.

12     ONE, WE ARE SEEKING ALL DATA, BOTH THE SALES AND COST DATA TO

13     THIRD PARTIES, AND, SECOND, THE DEFENDANTS HAVE ACTUALLY

14     PRODUCED SOME SALES DATA TO ORION THAT IS A THIRD PARTY.  SO,

15     PRESUMABLY, THERE WOULD BE CONNECTED COST DATA FOR THAT --

16     THOSE THIRD-PARTY SALES.

17              THE COURT:  COMING OUT OF THE NANTONG SCHMIDT --

18              MS. SALINAS:  YES.

19              THE COURT:  -- FACTORY?

20              MS. SALINAS:  YES.

21              THE COURT:  OKAY.  SO HAVE YOU TALKED ABOUT THAT?

22              MS. SALINAS:  WE RAISED THIS QUESTION IN EMAIL, AND

23     IT WAS IGNORED BY DEFENDANTS.  SO, THIS IS AGAIN WHY I RAISE IT

24     BEFORE THE COURT.  WE JUST NEED COMPLETION --

25              (SIMULTANEOUS COLLOQUY.)
```

1          **THE COURT:**  ORION SALES IS THE ONE THAT -- THE THIRD

2     PARTY THAT IS ON YOUR RADAR IS ORION SALES, THE SALES TO ORION.

3          **MS. SALINAS:**  THAT IS ONE EXAMPLE OF SOME THIRD-PARTY

4     SALES DATA WE WERE PROVIDED, AND I JUST OFFER TO YOUR HONOR TO

5     SAY I DON'T THINK IT'S QUITE CORRECT TO SAY THAT THE ONLY THIRD

6     PARTIES THEY SOLD TO WERE THE TWO THE DEFENDANTS IDENTIFIED

7     BECAUSE THEY ALSO SOLD TO ORION.

8          **THE COURT:**  AND THOSE ARE U.S. SALES?

9          **MS. SALINAS:**  YES, YOUR HONOR.

10         **MR. STAMBAUGH:**  WHICH WE'VE PRODUCED, YOUR HONOR.  I

11    WAS REFERRING TO THESE OTHER TWO ENTITIES THAT WERE

12    INTERNATIONAL.  THOSE ARE THE ONLY OUTSTANDING ONES.

13         **THE COURT:**  I THINK THE PLAINTIFFS SAY YOU HAVEN'T

14    PRODUCED COST DATA FOR THESE ORION SALES.

15         **MS. SALINAS:**  CORRECT.

16         **THE COURT:**  AM I MISTAKEN?

17         **MS. SALINAS:**  CORRECT, YOUR HONOR.

18         **THE COURT:**  OKAY.

19         **MR. STAMBAUGH:**  WHICH WILL BE FULLY SATISFIED IN WHAT

20    WE JUST TALKED ABOUT A MINUTE AGO, IN THE COST DATA THAT WE'RE

21    GOING TO PRODUCE.

22         **THE COURT:**  OKAY.  SO THE ORION SALES INFORMATION

23    WILL BE PART OF THE PRODUCTION YOU'RE MAKING THIS WEEK?

24         **MR. STAMBAUGH:**  THE COST DATA.

25         **THE COURT:**  THE COST DATA THAT GOES WITH THE ORION

1    SALES.

2           **MR. STAMBAUGH:**  WE'VE ALREADY PRODUCED ORION SALES.

3    THE COST DATA, YES.

4           **THE COURT:**  COST DATA WILL BE -- ASSOCIATED WITH

5    SALES TO ORION IN THE U.S. --

6           **MR. STAMBAUGH:**  YES.

7           **THE COURT:**  -- WILL BE PART OF THE PRODUCTION THAT

8    THE DEFENDANTS MAKE THIS WEEK?

9           **MR. STAMBAUGH:**  THAT IS CORRECT.

10          **THE COURT:**  OKAY.  ARE THERE ANY OTHER THIRD PARTIES

11   WHOSE COST DATA ASSOCIATED WITH TRANSACTIONS WITH THAT THIRD

12   PARTY ARE GOING TO BE IN THE PRODUCTION THAT IS MADE THIS WEEK?

13          **MR. STAMBAUGH:**  ALL COST DATA FOR ALL U.S. SALES WILL

14   BE PRODUCED THIS WEEK.

15          **THE COURT:**  OKAY.  WELL, LET'S WAIT AND SEE WHAT THAT

16   IS, AND THEN YOU CAN HAVE A CONVERSATION AFTERWARDS.  IF YOU

17   SEE SOMETHING'S MISSING, IT'S IMPORTANT TO BE SPECIFIC ABOUT

18   WHAT'S MISSING IN YOUR COMMUNICATIONS, BUT I THINK THAT FOR

19   PURPOSES OF TODAY, WE CAN PUT THAT MATTER TO THE SIDE AND SEE

20   WHAT HAPPENS THIS WEEK.

21          **MS. SALINAS:**  YOUR HONOR --

22          **THE COURT:**  YES.

23          **MS. SALINAS:**  -- IF I MAY JUST MAKE ONE REQUEST?

24          **THE COURT:**  SURE.

25          **MS. SALINAS:**  I THINK YOUR SUGGESTION ABOUT A

1   30(B)(6) IS A GREAT IDEA.  I THINK IT WOULD BE HELPFUL, IN

2   TERMS OF SCHEDULING, IF -- WE WOULD ASK THE DEFENDANTS TO

3   GUARANTEE TO PROVIDE SOMEONE WITHIN 30 DAYS OF PRODUCING THIS

4   INFORMATION.

5           **THE COURT:**  I DIDN'T SAY ANYTHING ABOUT 30(B)(6).

6   THE ONLY THING I WAS COMMENTING ON WAS MR. SON, BECAUSE THE

7   DEFENDANTS MENTIONED MR. SON.  I DON'T KNOW IF THERE'S A

8   30(B)(6) DEPO NOTICE OUT THERE THAT COVERS THIS TOPIC AND IF

9   HE'S THE DESIGNEE.

10          **MS. SALINAS:**  MR. SON, I THINK WE'D BE FINE WITH.  IF

11  THEY COULD PROVIDE MR. SON WITHIN 30 DAYS OF PRODUCING THE

12  DATA, WE COULD ASK ALL OF THESE QUESTIONS.

13          **THE COURT:**  HAVE YOU DONE A NOTICE?

14          **MS. SALINAS:**  WE ARE TRYING NEGOTIATE A DATE IN

15  SEPTEMBER.

16          **THE COURT:**  OKAY.  BUT IS THERE A 30(B)(6) NOTICE OUT

17  THERE THAT SAYS:  WE WANT SOMEONE TO TALK ABOUT THESE THINGS?

18          **MS. SALINAS:**  THERE IS NOT A 30(B)(6) NOTICE YET,

19  YOUR HONOR.

20          **THE COURT:**  OKAY.

21          **MR. STAMBAUGH:**  YOUR HONOR, AS COUNSEL WELL KNOWS,

22  MR. SON'S DEPOSITION DATE HAS BEEN SET, AND IT WAS AGREED TO BY

23  THE IPPS, SO THIS IS INAPPROPRIATE TO RAISE HERE TODAY.

24          **THE COURT:**  OKAY.

25          **MR. STAMBAUGH:**  THEY'RE ATTEMPTING TO ASK FOR

```
 1    SOMETHING MORE.

 2              THE COURT:  WHEN IS THE DEPOSITION OF MR. SON?

 3              MS. SALINAS:  THE DEPOSITION HAS NOT BEEN SET.  THAT

 4    IS INCORRECT.  THE IPPS DID AGREE TO A DATE WITH DEFENDANTS.

 5    THE DPPS HAVE NOT AGREED TO A DATE.  SO THE DEPOSITION HAS NOT

 6    BEEN NOTICED YET.

 7              THE COURT:  OKAY.  THIS IS NOT GOING TO DEVOLVE INTO

 8    A MICROMANAGING OF YOUR DEPOSITION SCHEDULE, SO NO.

 9              THAT MAY BE A TOPIC FOR SOMETHING ELSE BUT NOT FOR

10    RIGHT NOW.  SO WE'RE JUST FOCUSING ON PRODUCTION OF THE

11    TRANSACTIONAL DATA.

12              I'D LIKE TO TURN TO THE GENERAL LEDGER ISSUE.  SO I

13    UNDERSTOOD FROM THE PAST SUBMISSIONS, THE STATUS REPORTS, THAT

14    CELESTRON -- THERE'S INFORMATION THAT SUGGESTS THAT CELESTRON

15    USES GENERAL LEDGERS IN THE ORDINARY COURSE OF ITS BUSINESS, OR

16    DID, TO CALCULATE PRODUCT MARGIN.

17              SO, I UNDERSTAND THE CURRENT STATE OF PLAY IS THAT

18    THE DEFENDANTS DON'T WANT TO PRODUCE THE GENERAL LEDGER

19    INFORMATION; IS THAT RIGHT?

20              MR. STAMBAUGH:  AND, YOUR HONOR, FOR CONTEXT, THIS

21    WAS FIRST RAISED DURING OUR IN-PERSON MEETING THAT THIS COURT

22    ORDERED IN APRIL, WHICH WAS VERY PRODUCTIVE, AND MR. RICK

23    AYRES, CELESTRON'S REPRESENTATIVE, DID MENTION THAT SOME OF THE

24    DATA IN THE GENERAL LEDGER CAN BE USED TO CREATE MARGINS.

25              WHAT HE ALSO SAID WAS THAT INFORMATION CAN BE
```

```
 1   CALCULATED FROM THE INVOICES AND COSTS THAT HAVE ALREADY BEEN

 2   PRODUCED IN THE PRICE COMPONENT REPORTS.

 3          AND JUST TO BE CLEAR, WE DID NOT COMMIT TO PRODUCING

 4   THE GENERAL LEDGER DATA IN APRIL BECAUSE IT WAS OUTSIDE THE

 5   SCOPE OF THE RFPS, THIS COURT'S ORDERS, PRIOR HEARINGS, ET

 6   CETERA.  IT IS CURRENTLY THE SUBJECT OF A LETTER BRIEF THAT WAS

 7   ACTUALLY FILED UNILATERALLY OUTSIDE OF THIS COURT'S CONTOURS.

 8          THE COURT:  I'LL GET TO THAT IN A MOMENT.

 9          MR. STAMBAUGH:  SURE.

10          BUT WE ARE STILL DISPUTING THAT ISSUE.  HAPPY TO HAVE

11   THE COURT RULE ON IT IN THE LETTER BRIEF.

12          THE COURT:  WELL, THAT'S NOT REALLY SUPER HELPFUL,

13   BECAUSE THE POINT OF TODAY IS TO FIGURE OUT IF WE CAN WRAP UP

14   THE PRODUCTION OF TRANSACTIONAL DATA.  SO MARGIN IS AMONG THE

15   THINGS THAT IS PART OF THE REQUEST, RFP 96, AS PART OF THE

16   TRANSACTIONAL DATA THAT YOU ALL HAVE BEEN TALKING ABOUT.

17          LET ME ASK A MORE POINTED QUESTION ABOUT THE

18   CELESTRON MATERIAL.

19          IF THERE WAS A RECORD THAT SHOWS THE CALCULATIONS

20   THAT CELESTRON DID, IN THE ORDINARY COURSE OF ITS BUSINESS,

21   HAVE A PRODUCT MARGIN, WHERE WOULD THAT BE?  OR ARE YOU

22   CONTENDING THAT THERE WAS NO CALCULATION EXCEPT ON AN AD HOC

23   BASIS?

24          MR. STAMBAUGH:  THIS IS A VERY NEW ISSUE.  I DON'T

25   KNOW IF THERE WAS ANY.
```

1           **THE COURT:**  IT'S NOT A NEW ISSUE.  IT'S BEEN IN AT

2    LEAST LAST TWO STATUS REPORTS, THIS QUESTION OF GENERAL LEDGER

3    AND PRODUCT MARGIN.  SO I'M NOT SURE WHY IT'S A NEW ISSUE.

4           **MR. STAMBAUGH:**  I DON'T KNOW HOW IT WOULD BE

5    CONTAINED SPECIFICALLY, YOUR HONOR, IF THERE WAS A SEPARATE

6    REPORT, BECAUSE MR. AYRES DID NOT SAY THAT THERE WAS A, YOU

7    KNOW, MARGIN REPORT BASED ON THE GENERAL LEDGER DATA.

8           **THE COURT:**  SO WHAT ARE THESE PRICE COMPONENTS

9    REPORTS YOU'RE REFERRING TO?

10          **MR. STAMBAUGH:**  THAT WAS PART OF THE TRANSACTIONAL

11   DATA PRODUCTION THAT HAS THE INVOICES AND THE COSTS.  WE WOULD

12   HAVE BEEN HAPPY TO POINT THAT OUT TO PLAINTIFFS.

13          **THE COURT:**  SO THEY'VE ALREADY BEEN PRODUCED?

14          **MR. STAMBAUGH:**  THE INFORMATION THAT CAN BE USED TO

15   CALCULATE THE MARGIN HAS ALREADY BEEN PRODUCED.  YES.  I'M

16   SORRY.  THE PRICE COMPONENTS REPORTS HAVE.

17          **THE COURT:**  HAVE ALREADY BEEN PRODUCED?

18          **MR. STAMBAUGH:**  CORRECT.

19          **THE COURT:**  AND THEY SHOW WHAT, EXACTLY, THAT CAN BE

20   USED TO CALCULATE MARGIN.

21          **MR. STAMBAUGH:**  COSTS AND PRICES.

22          **THE COURT:**  OKAY.

23          **MR. STAMBAUGH:**  SALES PRICES.

24          **THE COURT:**  OKAY.  SO -- AND YOU HAVE PRICE

25   COMPONENTS REPORTS FOR THE ENTIRE RELEVANT PERIOD?

1          **MR. STAMBAUGH:**  I DON'T WANT TO MISSTATE ANYTHING.  I

2     BELIEVE THAT THEY HAVE BEEN PRODUCED FOR THE ENTIRE RELEVANT

3     PERIOD, YES.

4          **THE COURT:**  OKAY.  ALL RIGHT.  LET ME TURN TO THE

5     PLAINTIFFS.  ARE YOU FAMILIAR WITH THE PRICE COMPONENT REPORTS

6     THAT THE DEFENDANTS ARE REFERRING TO?

7          **MR. BORDEN:**  NOT REALLY, YOUR HONOR.  WHAT MR. AYRES

8     SAID IN THE MEET AND CONFER PROCESS IS THAT CELESTRON USES

9     GENERAL LEDGER DATA TO CALCULATE MARGINS.

10         **THE COURT:**  I UNDERSTAND THAT.  ARE YOU FAMILIAR WITH

11    THE PRICE COMPONENTS REPORTS?

12         **MR. BORDEN:**  NO, YOUR HONOR.

13         **THE COURT:**  HAVE YOU SEEN THEM IN THE PRODUCTION?

14         **MR. BORDEN:**  I HAVE NOT PERSONALLY, NO.

15         **THE COURT:**  CAN YOU PROVIDE THE BATES NUMBERS FOR THE

16    PRICE COMPONENT REPORTS THAT HAVE BEEN PRODUCED THAT YOU SAY

17    CONTAIN THE INFORMATION FROM WHICH MARGIN CAN BEING CALCULATED?

18         **MR. STAMBAUGH:**  WE WOULD BE HAPPY TO DO THAT.

19         **THE COURT:**  OKAY.  HOW QUICKLY CAN YOU DO THAT?

20         **MR. STAMBAUGH:**  FORTY-EIGHT HOURS.

21         **THE COURT:**  OKAY.  THE REASON I'M ASKING IS

22    BECAUSE -- THIS IS HOW I SEE IT.  IF THE INFORMATION IS NOT

23    PART OF SOME ORDINARY COURSE OF BUSINESS WHERE IT'S CALCULATED

24    AND REPORTED ON A REGULAR BASIS AND SOMEONE CAN JUST LOOK IT UP

25    AND IT HAS TO ACTUALLY BE CALCULATED FROM OTHER SOURCES, THEN

1    I'M GOING TO ORDER THE INFORMATION WILL BE PRODUCED.

2            SO, IT WILL EITHER BE A GENERAL LEDGER -- AND I DON'T

3    KNOW IF THERE ARE MORE THAN ONE KIND OF GENERAL LEDGER THAT THE

4    COMPANY RELIES ON.  BUT, YOU KNOW, IF THE GENERAL LEDGER

5    REPORTS REVENUE AND EXPENSES, COSTS, OR WHATEVER, THAT'S THE

6    PART OF IT THAT YOU'RE GOING TO HAVE TO PRODUCE, OR ALL OF IT.

7            YOU KNOW, WE CAN GET INTO DISCUSSION ABOUT WHAT IT

8    IS, BUT I'M TELLING YOU WHERE THIS IS GOING.  YOU'LL EITHER

9    HAVE TO PRODUCE THE GENERAL LEDGER, OR YOU'LL HAVE TO DIRECT

10   THE PLAINTIFFS TO STUFF THAT YOU ALREADY PRODUCED FROM WHICH

11   THEY CAN CALCULATE THE MARGIN.

12           **MR. STAMBAUGH:**  WE WOULD BE HAPPY TO DO THAT, YOUR

13   HONOR.

14           **THE COURT:**  SO YOU JUST NEED TO DO IT.  AND I WILL

15   GIVE YOU A DEADLINE TO DO THAT IF -- I'LL SET THE DEADLINE TO

16   BE THE END OF THE WEEK -- THAT YOU'LL HAVE TO, YOU KNOW, GIVE

17   THEM BATES NUMBERS FOR ALL OF THE PRICE COMPONENT REPORTS.

18           AND SO YOU CAN LET ME KNOW THAT.  WHY DON'T YOU GIVE

19   THAT INFORMATION, AND THEN YOU CAN REPORT BACK TO ME THE

20   FOLLOWING WEEK IF IT'S NOT SUFFICIENT.  SO THE PLAINTIFFS HAVE

21   AN OPPORTUNITY TO LOOK IT UP, SEE WHAT IT IS, BUT -- YOU KNOW,

22   AND I'LL SET A DEADLINE FOR SOME REPORT NEXT WEEK ON ALL OF

23   THESE OUTSTANDING ITEMS SO WE CAN, HOPEFULLY, WRAP IT ALL UP.

24   BUT THAT'S HOW I SEE THIS ALL HAPPENING.

25           THERE IS NO POINT IN MESSING AROUND WITH THIS KIND OF

```
 1    STUFF.  YOU JUST -- THE INFORMATION NEEDS TO BE PRODUCED SO
 2    THAT THE CALCULATION CAN BE MADE.  AND IF IT'S ALREADY
 3    PRODUCED, GREAT, CALCULATION CAN BE MADE, BUT JUST TELL THEM
 4    WHERE IT IS.  OKAY?
 5              MR. STAMBAUGH:  HAPPY TO DO THAT, YOUR HONOR.
 6              THE COURT:  SO I THINK THOSE ARE THE TWO OUTSTANDING
 7    ISSUES FOR TRANSACTIONAL DATA.  IF THOSE TWO CATEGORIES OF
 8    INFORMATION ARE TAKEN CARE OF, ARE WE DONE WITH THE PRODUCTION
 9    OF TRANSACTIONAL DATA FROM THE PLAINTIFFS' PERSPECTIVE?
10              MR. BORDEN:  FROM DPPS' PERSPECTIVE, YES, YOUR HONOR.
11              THE COURT:  OKAY.  IPPS' AS WELL?
12              MS. SALINAS:  YES, ASSUMING IT IS COMPLETE, YOUR
13    HONOR, YES, YOUR HONOR.
14              THE COURT:  SO, AGAIN, WHAT I PLAN TO DO IS GIVE
15    DEFENDANTS UNTIL THE END OF THE WEEK TO MAKE THE PRODUCTION OF
16    THE COST DATA THAT THEY'VE ALREADY SAID THEY'RE GOING TO MAKE
17    AND TO IDENTIFY -- AND THAT PRODUCTION WOULD INCLUDE -- BY THE
18    WAY, I'LL PUT THIS IN AN ORDER -- WILL INCLUDE RESPONDING TO --
19    WHAT IS THE INTERROGATORY THAT YOU WISH A RESPONSE TO?
20              MS. SALINAS:  INTERROGATORY NUMBER 5, YOUR HONOR.
21              THE COURT:  NUMBER 5.  AND THAT'S AN INTERROGATORY
22    THAT'S COMMON TO BOTH CATEGORIES --
23              MS. SALINAS:  IT'S JUST THE IPPS, YOUR HONOR.
24              THE COURT:  JUST THE IPPS', INTERROGATORY NUMBER 5.
25    OKAY.
```

1        SO THERE WILL BE A SUPPLEMENTAL RESPONSE TO THAT

2   INTERROGATORY THAT CAN -- IT CAN BE RULE 33(D).  IT CAN

3   INCLUDE, YOU KNOW, AN INSERTION THAT THESE ARE THE COSTS THAT

4   ARE AVAILABLE AND THEY'RE PRODUCED IN THESE BATES RANGES, THAT

5   KIND OF THING.  THAT WILL SATISFY, I THINK, THE NEED FOR SOME

6   SORT OF CLOSURE ON THIS ISSUE.

7        THEN I'M NOT GOING TO MICROMANAGE YOUR DEPOSITION

8   SCHEDULING, BUT THE -- JUST TO BE CLEAR, THE NOTION THE COURT

9   HAS IS THAT FOLLOW-UP QUESTIONS ABOUT THE NATURE OF THE DATA

10  THAT COUNSEL CAN'T REALLY ANSWER, BUT ARE FACT QUESTIONS ABOUT

11  HOW IT WAS PREPARED, OR GATHERED, OR USED NEED TO BE ADDRESSED

12  TO A FACT WITNESSES, AND THAT WOULD BE BY MEANS OF MR. SON'S

13  DEPOSITION OR SOMETHING ELSE.

14       OKAY.  SO THAT WILL BE DONE BY THE END OF THE WEEK.

15  AND THEN THE BATES NUMBER IDENTIFICATIONS FOR THE PRICE

16  COMPONENT REPORTS WILL ALSO BE DONE BY THE END OF THE WEEK.

17  AND THEN I'LL SET A DEADLINE OF -- LET'S SEE.  HOW LONG WOULD

18  YOU NEED TO DO A FURTHER REPORT BACK TO ME?  I WANT TO GIVE THE

19  PLAINTIFFS ENOUGH TIME TO REVIEW THE INFORMATION, BUT IF I SET

20  IT FOR THE FOLLOWING FRIDAY, SO THAT WOULD BE.

21       **MR. STAMBAUGH:**  THE 28TH.

22       **THE COURT:**  THE 28TH FOR A STATUS REPORT?  WOULD THAT

23  WORK FOR THE PARTIES?

24       **MS. SALINAS:**  YES, YOUR HONOR.

25       **MR. BORDEN:**  YES.

1      **THE COURT:**  SO, THAT WILL BE YOUR -- HOPEFULLY, YOUR

2   FINAL STATUS REPORT ON JULY 28.  AGAIN, I WILL PUT THAT IN A

3   WRITTEN ORDER SO THAT YOU HAVE THAT IN FRONT OF YOU AND YOU

4   KNOW WHAT NEEDS TO BE DONE.

5      IS THERE ANYTHING FURTHER THAT WE SHOULD DISCUSS ON

6   TRANSACTIONAL DATA?  AND I WILL TELL YOU I HAVE SOME

7   OBSERVATIONS FOR YOU ABOUT THE DISCOVERY LETTERS THAT WERE

8   FILED YESTERDAY I'LL GET TO IN A MOMENT.  BUT ANYTHING ELSE ON

9   TRANSACTIONAL DATA THAT WE SHOULD DISCUSS?

10     **MS. SALINAS:**  NO, YOUR HONOR.

11     **MR. BORDEN:**  NO, YOUR HONOR.

12     **MR. STAMBAUGH:**  NOTHING FURTHER FROM DEFENDANTS, YOUR

13  HONOR.

14     **THE COURT:**  OKAY.  LET ME JUST SHARE SOME THOUGHTS.

15     I DID SEE THAT YOU FILED THREE DISCOVERY LETTERS

16  YESTERDAY, ONE OF WHICH WAS UNILATERAL.  I SKIMMED THEM, AND I

17  JUST WANTED TO REMIND THE PARTIES OF THE REQUIREMENTS IN MY

18  STANDING ORDER.

19     ONE OF WHICH IS YOU ARE ONLY TO ATTACH YOUR DISCOVERY

20  LETTERS TO THE SPECIFIC DISCOVERY MATERIAL AT ISSUE.  I DO NOT

21  WANT TO READ YOUR EMAIL CORRESPONDENCE.  SOMETIMES, RARELY,

22  SOMETHING IN AN EMAIL IS THE OPERATIVE THING, BUT MOSTLY NOT.

23  I HAVE MANY ATTACHMENTS OF EMAIL CORRESPONDENCE.  I DON'T WANT

24  TO READ IT.  IT'S IN MY STANDING ORDER THAT I DON'T WANT TO

25  READ IT.  I'M TELLING YOU AGAIN I DON'T WANT TO READ IT.  SO,

1    JUST KEEP THAT IN MIND FOR FUTURE REFERENCE.

2          ALSO I SHOULD NOT BE RECEIVING UNILATERAL DISCOVERY

3    LETTERS.  I GET UNILATERAL DISCOVERY LETTERS WHEN I HAVE A

4    PRO SE PARTY IN THE CASE WHO JUST DOESN'T GET IT ABOUT

5    DISCOVERY.  OKAY?  YOU ALL ARE SOPHISTICATED LAWYERS.  YOU HAVE

6    BEEN DOING THIS A LONG TIME IN THIS CASE AND IN MANY OTHER

7    CASES.  YOU SHOULD NOT BE FILING UNILATERAL DISCOVERY LETTERS.

8          AND I WILL SAY THIS TO DPPS PARTICULARLY THIS TIME.

9    YOU ALL KNEW THE GENERAL LEDGER ISSUE WAS GOING TO BE AN AGENDA

10   ITEM FOR TODAY.  YOU DON'T NEED TO BURDEN ME WITH A LETTER

11   ABOUT THE GENERAL LEDGER IF WE'RE GOING TO BE TALKING ABOUT IT

12   TODAY.  IT FELT TO ME LIKE YOU WANTED TO HAVE AN OPPORTUNITY TO

13   PUT SOMETHING IN WRITING BEFORE THE COURT BEFORE TODAY'S

14   HEARING, AND I DON'T APPRECIATE THAT.

15         MAYBE THAT WASN'T YOUR INTENT BECAUSE YOUR OBJECTIVE

16   WAS A BROADER PRODUCTION OF MATERIAL, BUT THAT'S NOT A GOOD USE

17   OF MY TIME.  I'M TRYING TO HAVE AN EFFICIENT, FOCUSED PROCESS

18   ON THE TRANSACTIONAL DATA, AND I DIDN'T WANT TO BE DISTRACTED

19   BY SOME UNILATERAL DISCOVERY LETTER THAT COVERED THE SAME

20   STUFF.

21         SO I'LL LOOK AT IT MORE CAREFULLY.  LIKE I SAID, I

22   ONLY HAD A CHANCE TO SKIM THE LETTERS BEFORE TODAY'S HEARING.

23   IF THERE'S SOMETHING MORE IN IT THAT REALLY REQUIRES A

24   DECISION, I WILL INVITE THE DEFENDANTS TO ACTUALLY RESPOND.

25   BUT IT'S NOT HELPFUL FOR ME TO GET A ONE-SIDED LETTER.  IT JUST

1    ISN'T.

2          NOW, IF SOMEBODY IS REALLY NOT DOING WHAT THEY'RE

3    SUPPOSED TO DO IN TERMS OF COOPERATING IN THE DISCOVERY LETTER

4    PREPARATION PROCESS, OKAY, THAT'S SOMETHING ELSE, AND MY

5    STANDING ORDER SAYS HOW I HANDLE THAT.  SO MAYBE THAT'S WHAT

6    HAPPENED.  I'M NOT GOING TO PREJUDGE IT RIGHT NOW.  I'M NOT

7    INVITING ARGUMENT RIGHT NOW.  I'LL HAVE A LOOK AT IT.  I

8    PROBABLY DON'T NEED ARGUMENT ON ANY OF THESE MATTERS.  I'LL

9    JUST DECIDE THEM ON THE PAPERS.  BUT IT'S MOST EFFICIENT FOR ME

10   WHEN I HAVE THE POSITIONS OF BOTH SIDES BEFORE ME AND NOT JUST

11   ONE SIDE.  AND IF IT'S NOT SUPER TIME SENSITIVE, THEN I DO

12   EXPECT PROFESSIONAL COURTESY BETWEEN THE PARTIES TO MAKE SURE

13   THAT I HAVE A JOINT SUBMISSION.

14         SO, THAT'S JUST A LITTLE TIRADE, MAYBE, ABOUT MY

15   PREFERENCES AND MY WISHES FOR YOUR DISCOVERY DISPUTES GOING

16   FORWARD, OF WHICH I'M SURE WE HAVE NOT HEARD THE LAST.

17         SO, I WILL GET TO THOSE LETTERS IN DUE COURSE, NOT

18   FOR TODAY.  AND I DON'T THINK WE NEED ANOTHER DISCOVERY

19   CONFERENCE LIKE THIS, BUT IF YOU FEEL LIKE THAT WOULD BE

20   HELPFUL ON SOME ISSUE IN THE FUTURE, LET ME KNOW.  I DON'T LIKE

21   TO HAVE THEM ON A REGULAR BASIS, AS YOU KNOW, BECAUSE I JUST

22   THINK IT ENCOURAGES PEOPLE NOT TO TALK TO EACH OTHER, AND I'M

23   GOING TO ENCOURAGE YOU ALL AGAIN TALK TO EACH OTHER.  OKAY?  I

24   THINK YOU CAN WORK A LOT OF THESE THINGS OUT, AND I'M GOING TO

25   ENCOURAGE YOU AGAIN TO DO THAT.  THAT IS MY EXPECTATION.

1          SO, ANYTHING THAT ANYONE WOULD LIKE TO SAY ABOUT OUR

2    PROCEEDINGS GOING FORWARD IN TERMS OF MANAGING THE DISCOVERY?

3    I KNOW YOU HAVE BRIEFING GOING ON BEFORE JUDGE DAVILA RIGHT

4    NOW, SO I IMAGINE YOU'RE PRETTY BUSY, BUT IN TERMS OF OUR

5    PROCESS.

6          IT SOUNDS LIKE YOU HAVE SOME DEPOSITION ISSUES COMING

7    UP.  DO WE NEED TO DO A DISCOVERY -- A SCHEDULING CONFERENCE

8    ABOUT DEPOSITION DISCOVERY?  IS THAT SOMETHING THAT THE PARTIES

9    NEEDS THE COURT'S ASSISTANCE IN.  LET ME ASK THE IPPS FIRST.

10         **MS. SALINAS:**  YOUR HONOR, IF I MAY SUGGEST -- THANK

11   YOU FOR YOUR GUIDANCE -- GIVE THE PARTIES A WEEK, AND WE WILL

12   SUBMIT A STATUS REPORT, AND IF WE'RE UNABLE TO RESOLVE THE

13   ISSUES, I THINK IT WOULD BE HELPFUL TO HAVE A CONFERENCE ON THE

14   DEPOSITIONS.

15         **THE COURT:**  ON DEPOSITIONS?

16         **MS. SALINAS:**  YES, YOUR HONOR.

17         **THE COURT:**  OKAY.  WHAT DO DPPS THINK?

18         **MR. BORDEN:**  THAT SEEMS LIKE A REASONABLE SOLUTION TO

19   US, TOO, YOUR HONOR.  HOPEFULLY NOT.

20         **THE COURT:**  OKAY.  AND THESE ARE DEPOSITIONS GOING

21   BOTH WAYS OR JUST PLAINTIFFS' DEPOSITIONS OF DEFENDANTS?

22         **MR. BORDEN:**  BOTH WAYS, YOUR HONOR.

23         **THE COURT:**  BOTH WAYS.

24         OKAY.  SO DEFENDANTS THINK IT WOULD BE HELPFUL TO

25   HAVE A DISCOVERY CONFERENCE LIKE THIS ON DEPOSITION SCHEDULING.

1          **MR. STAMBAUGH:**  I THINK AFTER GIVING THE PARTIES A

2    WEEK OR SO TO TRY AND RESOLVE THESE ISSUES, THEN PERHAPS A

3    DISCOVERY CONFERENCE MAY BE FRUITFUL.

4          **THE COURT:**  OKAY.  SO WHAT WOULD BE HELPFUL IF WE'RE

5    GOING TO DO THAT -- AND I'LL PUT THAT IN AN ORDER WHAT I'D LIKE

6    FOR YOU TO PRESENT TO ME -- IS INSTEAD OF DOING SORT OF A

7    LETTER BRIEF ON ALL YOUR DEPOSITION ISSUES, I WOULD JUST LIKE

8    SORT OF A BULLET POINT AGENDA:  THESE ARE THE WITNESSES, THESE

9    ARE THE ISSUES, WHETHER IT'S TIMING, OR LOCATION, OR FORM, OR

10   WHATEVER IT IS, JUST SORT OF A BULLET LIST OF THE THINGS YOU

11   WOULD LIKE TO TALK ABOUT.  THAT'S THE KIND OF PREPARATION I

12   WOULD NEED.  SO, I'LL TRY TO REMIND YOU OF THAT.

13         AND I WILL ISSUE AN ORDER INVITING A REPORT FROM YOU

14   AND, YOU KNOW, IF YOU HAVE A REQUEST FOR A DISCOVERY CONFERENCE

15   ON DEPOSITION SCHEDULING, I'LL PUT THAT IN THE ORDER ABOUT WHEN

16   YOU SHOULD LET ME KNOW, BUT I'LL GIVE YOU A WEEK OR SO.  SO IF

17   THERE'S MORE CONFERRING THAT YOU CAN DO ON THAT ISSUE, GREAT,

18   YOU SHOULD DO THAT.  YOU MUST DO THAT BEFORE YOU COME SEE ME.

19         OKAY.  THANK YOU FOR YOUR TIME.  I APPRECIATE IT.  I

20   HOPE IT'S BEEN HELPFUL.  AND WE ARE CONCLUDED FOR TODAY.  THANK

21   YOU.

22         (PROCEEDINGS ADJOURNED AT 10:47 A.M.)

23

24

25

```
1    STATE OF CALIFORNIA     )

2                            )     SS

3    COUNTY OF CONTRA COSTA )

4

5            I HEREBY CERTIFY THAT THE FOREGOING IN THE

6    WITHIN-ENTITLED CAUSE WAS TAKEN AT THE TIME AND PLACE HEREIN

7    NAMED; THAT THE TRANSCRIPT IS A TRUE RECORD OF THE PROCEEDINGS

8    AS REPORTED BY ME, A DULY CERTIFIED SHORTHAND REPORTER AND A

9    DISINTERESTED PERSON, AND WAS THEREAFTER TRANSCRIBED INTO

10   TYPEWRITING BY COMPUTER.

11           I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE

12   OUTCOME OF THE SAID ACTION, NOR CONNECTED WITH, NOR RELATED TO

13   ANY OF THE PARTIES IN SAID ACTION, NOR TO THEIR RESPECTIVE

14   COUNSEL.

15           IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS

16   27TH DAY OF JULY 2023.

17

18

19   _____

20   JOAN MARIE COLUMBINI, CSR NO. 5435

21   STATE OF CALIFORNIA

22

23

24

25
```