Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | **Case Nos. 5:20-cv-03639-EJD** |
| | |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND ISSUANCE OF NOTICE** |
| All Indirect Purchaser Actions | |
| | **Judge: Hon. Edward J. Davila** |

1

## NOTICE OF MOTION AND MOTION

2

PLEASE TAKE NOTICE that on October 31, 2024 or as soon thereafter as the matter may

3

be heard by the Honorable Edward J. Davila of the United States District Court of the Northern

4

District of California, located in Courtroom 4, 280 South 1st Street, San Jose, California 95113,

5

Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move the Court, pursuant to Federal Rule

6

of Civil Procedure 23 and in accordance with the Northern District's Procedural Guidance for Class

7

Action Settlements, for an order:

8

(1)    finding that the Court will likely approve the proposed class action settlements with

9

Defendants Synta Technology Corp. of Taiwan, Suzhou Synta Optical Technology Co., Ltd.,

10

Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Canada International Enterprises

11

Ltd., Pacific Telescope Corp., Olivon Manufacturing Co. Ltd., SW Technology Corporation,

12

Celestron Acquisition, LLC, Olivon USA, LLC, Dar Tson ("David") Shen, Joseph Lupica, and

13

Dave Anderson (collectively, "Defendants"), under Rule 23(e)(2);

14

(2)    provisionally certifying the settlement class;

15

(3)    approving the proposed forms of settlement class notice and the settlement class

16

notice program as fully compliant with Federal Rule of Civil Procedure 23 and due process; and

17

directing notice to the settlement class in connection with the proposed settlement;

18

(4)    appointing the proposed class representatives: Madeline Bekielewski,[1] Thomas

19

Berta, Carey Briggs, Vincent Catanzaro, David Dick, Austin Griffith, Donnie Houston, Bentaro

20

Huset, Greg Kendall, David Kerber, Deborah Lemar, Doug Lundy, John Maurice, Timothy

21

McQuaid, Philip Moore, Brian Murphy, Herbert Nelson, Scott Plummer, Michael Price, David

22

Quaglietta, Greg Ross, Ronald Troillett, Robert Welsh, Tony DiMambro, Jason Glydewell, Leon

23

Greenberg, Michael Liskow, Sigurd Murphy, Jim Riley, Keith Uehara, Steven Zellers, Sarah Day

24

Brewer, Thien Ngo, Jesse Smith, and Arthur Sines (the "Named Representatives") as

25

representatives for the settlement class;

26

27

28

---

[1] Richard Bekielewski was an original class representative, but he passed away during the pendency of the litigation. His wife, Madeline Bekielewski, has taken over his estate and claims.

1    (5)    appointing Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein,

2  LLP; and Susman Godfrey L.L.P. (collectively, "Interim Co-Lead Counsel") as class counsel for

3  the settlement class;

4    (6)    authorizing retention of Verita Global, LLC as notice and claims administrator; and

5    (7)    scheduling a hearing to finally approve the settlement and determine whether the

6  proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2) and whether the

7  settlement class should be certified (the "Final Approval Hearing").

8    This motion is based on this Notice of Motion and Motion to Direct Notice to the Class

9  Regarding Settlement; the following memorandum of points and authorities; the Declaration of

10  Alejandra C. Salinas; the Declaration of Carla Peak ("Verita Decl."), and the proposed forms of

11  notice and other exhibits attached thereto as Exhibits A-E, all filed concurrently herewith; the

12  pleadings and the papers on file in this action; and such other matters as the Court may consider.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

3  NOTICE OF MOTION AND MOTION ........................................................................................ ii

4  TABLE OF CONTENTS ........................................................................................................ iv

5  TABLE OF AUTHORITIES ...................................................................................................... v

6  INTRODUCTION ................................................................................................................... 1

7  STATEMENT OF FACTS ....................................................................................................... 2

8  STANDARD OF REVIEW ...................................................................................................... 3

9  ARGUMENT ....................................................................................................................... 4

10  I.    The Settlement Meets the Standards for Preliminary Approval ......................................... 4

11        A.  The Class Has Been Zealously Represented ................................................................ 4

12        B.  The Settlement Agreement Results from Arm's-Length Negotiations ...................... 6

13        C.  The Settlement Agreement Represents an Excellent Result for the Class ................. 7

14        D.  The Settlement Agreement Treats Class Members Equitably ................................. 11

15        E.  The Settlement Agreement Satisfies the District's Procedural Guidance ................ 12

16  II.   The Settlement Class Warrants Settlement Certification ................................................. 17

17        A.  The Settlement Class Meets the Requirements of Rule 23(a) .................................. 17

18        B.  The Settlement Class Meets the Requirements of Rule 23(b)(3) ............................. 20

19  III.  The Proposed Notice Program Complies with Rule 23 and Due Process ...................... 22

20        A.  The Proposed Notice Forms Are Plain and Easy to Understand ............................. 22

21        B.  The Proposed Notice Plan Will Reach a Broad Audience ....................................... 23

22  IV.   The Court Should Schedule a Fairness Hearing and Related Dates. ............................. 24

23  CONCLUSION ................................................................................................................. 24

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*In re 3D Sys. Secs. Litig.*,
4        No. 21-cv-1920 (NGG) (TAM), 2023 U.S. Dist. LEXIS 98693 (E.D.N.Y. June
         5, 2023) ................................................................................................................... 10
5

*Amchem Prods., Inc. v. Windsor*,
6        521 U.S. 591 (1997) .................................................................................... 9, 17, 20, 21

7

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
8        568 U.S. 455 (2013) ................................................................................................... 20

9

*Bellinghausen v. Tractor Supply Co.*,
         303 F.R.D. 611 (N.D. Cal. 2014) ............................................................................... 18
10

*In re Bluetooth Headset Prods. Liab. Litig.*,
11       654 F.3d 935 (9th Cir. 2011) ....................................................................................... 7

12

*In re Cathode Ray Tube Antitrust Litig.*,
13       No. 07-cv-05944-JST, 2022 WL 4596621 (N.D. Cal. Aug. 1, 2022) ...................... 13

14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
         No. 07-cv-05944-JST, 2020 WL 1873554 (N.D. Cal. Mar. 11, 2020) .................... 19
15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
16       No. 14-CV-2058 JST, 2017 WL 2481782 (N.D. Cal. June 8, 2017) ....................... 11

17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
18       No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ........................ 21

19

*In re Cement & Concrete Antitrust Litig.*,
         817 F.2d 1435 (9th Cir. 1987), *rev'd on other grounds*, *California v. ARC Am.*
20       *Corp.*, 490 U.S. 93 (1989) ......................................................................................... 13

21

*Churchill Vill., L.L.C. v. Gen. Elec.*,
22       361 F.3d 566 (9th Cir. 2004) ....................................................................................... 4

23

*In re Citric Acid Antitrust Litig.*,
         No. 95-1092, C-95-2963 FMS, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ......... 20
24

Consumer Fin. Prot. Bureau,
25       *Arbitration Study: Report to Congress, Pursuant to Dodd–Frank Wall Street*
         *Reform & Consumer Protection Act § 1028(a)* (2015), available at
26       https://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-
         congress-2015.pdf ........................................................................................................ 9
27

*Deaver v. Compass Bank*,
28       No. 13-cv-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ..................... 8

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011).................................................................................. 19

*Fleming v. Impax Lab'ys Inc.*,
  No. 16-CV-06557-HSG, 2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ............................... 8

*Four in One Co. v. S.K. Foods, L.P.*,
  No. 2:08–cv–3017 KJM EFB, 2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) ...................... 11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)........................................................................... 20, 21

*Harbour v. Cal. Health & Wellness Plan*,
  No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024)................................ 15

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sept. 4,
  2018) ................................................................................................................. 10

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11–cv–02509-LHK, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ............................... 11

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017)................................................................................. 18

*In re Kia Hyundai Vehicle Theft Litig.*,
  No. 8:22-ml-03052-JVS, 2023 WL 8126849 (C.D. Cal. Nov. 3, 2023) .............................. 12

*In re: Lithium Ion Batteries Antitrust Litig.*,
  No. 13-md-02420-YGR, 2017 WL 6728701 (N.D. Cal. Dec. 22, 2017)........................ 12, 16

*In re MacBook Keyboard Litig.*,
  No. 5:18-CV-02813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023).............................. 8

*In re MyFord Touch Consumer Litig.*,
  No. 13-cv-03072, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019)........................................ 7

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................. 8, 9

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)................................................................................... 22

*In re Optical Disk Drive Antitrust Litig.*,
  303 F.R.D. 311 (N.D. Cal. 2014).............................................................................. 18

*In re Optical Disk Drive Antitrust Litig.*,
  No. 3:10-md-2143 RS, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016)................................... 20

MOTION TO DIRECT NOTICE RE SETTLEMENT
CASE NO. 5:20-cv-03639-EJD

2982687.6

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
No. 5:16-cv-06370-EJD (N.D. Cal.) ................................................................. 7

*In re Rubber Chems. Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) ................................................................... 20

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ......................................................................... 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 583 (N.D. Cal. 2010) ................................................................... 21

*Vataj v. Johnson*,
No. 19-cv-06996-HSG, 2021 U.S. Dist. LEXIS 75879 (N.D. Cal. Apr. 20,
2021) ................................................................................................................. 11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ....................................................................... 21

Statutes

28 U.S.C. § 1332(d) ............................................................................................. 16

28 U.S.C. § 1712 .................................................................................................. 16

28 U.S.C. § 1713 .................................................................................................. 16

28 U.S.C. § 1714 .................................................................................................. 16

28 U.S.C. § 1715(b) ............................................................................................. 16

Class Action Fairness Act .............................................................................. 4, 16

Other Authorities

Fed. R. Civ. P. 23 ........................................................................................ *passim*

https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-
settlements/ (last updated Sept. 5, 2024) ......................................................... 4

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) ................................. 17

*Stellar Dreams*, The Science Haven,
https://www.thesciencehaven.org/stellardreams (last visited Sept. 12, 2024) ....................... 16

1

### INTRODUCTION

The Indirect Purchaser Plaintiffs ("IPPs") brought this action on behalf of a class of purchasers from states permitting indirect purchaser lawsuits to recover damages caused by a decade-long alleged conspiracy to unlawfully fix prices, rig bids, and allocate the market for consumer telescopes. This motion seeks preliminary approval of the proposed settlement for purposes of directing notice to class, approval of the proposed methods and forms of providing notice, and the scheduling of final approval, which, if granted, would conclude this litigation.[2]

The Settlement Agreement, attached as Ex. A to the Salinas Declaration, provides an excellent recovery to the settlement class—$32 million in total. This is an outstanding result considering the facts and circumstances of this litigation. The Settlement Agreement is fair, reasonable, and adequate: class representatives and Interim Co-Lead Counsel vigorously prosecuted the case and obtained an excellent result in the face of substantial risks, vigorous opposition, and difficulties regarding collection. In addition, the proposed settlement class warrants settlement class certification upon final approval because all major issues are common and can be adjudicated collectively, as courts repeatedly find in antitrust cases.

Pursuant to Rule 23 and the Northern District's Procedural Guidance for Class Action Settlements, Plaintiffs respectfully request that this Court (1) preliminarily approve the proposed Settlement; (2) find that it will likely certify the Settlement Class upon final approval; (3) direct notice to the Settlement Class, along with a finding that the forms and notice plan comply with Rule 23 and due process; (4) appoint the Class Representatives as representatives for the Settlement Class; (5) appoint Interim Co-Lead Counsel as counsel for the Settlement Class; (6) authorize retention of Verita as notice and claims administrator; and (7) set a schedule for Final Approval, including a deadline for opting out of the settlement or objecting and any motions for attorneys' fees, costs, and service awards.

---

[2] Another Defendant—Ningbo Sunny Electronic Co. Ltd., a China-based Defendant—has not appeared in this action.

1

1

**STATEMENT OF FACTS**

2      The Settlement Agreement presented here would end extensive and hard-fought litigation

3 that began in June 2020. As detailed below, and as this Court knows having presided over it, this

4 case has been typified by voluminous, contested discovery and multiple rounds of motions

5 addressing complex antitrust issues.

6      The parties and their counsel participated in an initial, full-day mediation with the

7 Honorable Judge Suzanne Segal, a former Magistrate Judge of the Central District of California.

8 Salinas Decl. ¶4. That first session did not result in a settlement. *Id.* On September 6, 2023, the

9 parties and their counsel engaged in a second, full-day mediation with Judge Segal, at which, after

10 months of extensive arms-length negotiations, the Parties reached an agreement in principle to

11 resolve this case by both accepting a supervised mediator's proposal. *Id.* Since reaching an

12 agreement in principle, the parties have worked diligently to draft and negotiate the Settlement

13 Agreement, notices, and other settlement exhibits, and to select the proposed Settlement

14 Administrator through a competitive bidding process. *Id.* ¶10.

15      The Settlement Agreement grants a release on behalf of a class of indirect purchasers of

16 telescopes manufactured by Defendants, defined as follows:

17
18
19
20
21
22
23

> All persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

24 Salinas Decl. Ex. A ¶1(e). The Indirect Purchaser States are defined in both as:

25
26
27
28

> Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

2

1    *Id.*, Ex. A ¶1(q).

2        The Settlement Agreement provides that upon final approval and entry of judgment, class

3    members will release their claims against the Defendants. *Id.*, Ex. A ¶7(e). In return for the releases

4    and other terms set forth in the Settlement Agreement, the Defendants agree to pay a total of $32

5    million.

6                                    **STANDARD OF REVIEW**

7        Pursuant to Federal Rule of Procedure 23(e), a class action settlement must be approved by

8    the Court before it can become effective. The process for court approval is comprised of two

9    principal steps: preliminary approval of the proposed settlement and direction of notice to the class;

10    and final approval, including a hearing at which argument concerning the fairness, adequacy, and

11    reasonableness of the settlement is presented.

12        By this motion, Plaintiffs respectfully ask the Court to take the first step and enter an order

13    preliminarily approving the Settlement Agreement, finding that the Court will likely grant final

14    approval, and directing class notice, pursuant to the parties' proposed notice program under Rule

15    23(e)(1).

16        In determining whether a proposed settlement initially appears fair, reasonable, and

17    adequate, the Court should consider whether:

18                (A) the class representatives and class counsel have adequately represented the
          class;
19                (B) the proposal was negotiated at arm's length;
                (C) the relief provided for the class is adequate, taking into account:
20                        (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness
          of any proposed method of distributing relief to the class, including the
21          method of processing class-member claims; (iii) the terms of any proposed
          award of attorney's fees, including timing of payment; and (iv) any
22          agreement required to be identified under Rule 23(e)(3); and
23                (D) the proposal treats class members equitably relative to each other.

24    Fed. R. Civ. P. 23(e)(2).

25        Separately, this District's Procedural Guidance for Class Action Settlements ("Procedural

26    Guidance") instructs the parties to submit specific information in connection with a motion under

27

28

                                           3

Rule 23(e)(1).[3] In particular, the Procedural Guidance seeks information regarding: (i) any differences between the settlement class and the class as asserted in the operative complaint, and between the claims to be released and the claims alleged in the operative complaint; (ii) the anticipated class recovery under the settlement and the potential class recovery if plaintiffs were to fully prevail; (iii) the proposed allocation plan; (iv) expected participation by class members in the settlement; (v) the settlement administrator, the selection process, and the anticipated administrative costs; (vi) the proposed notice, including deadlines to opt out of or object to the settlements; (vii) a proposal regarding the award of attorneys' fees and litigation costs that counsel intend to request; (viii) incentive awards that the parties intend to request; (ix) the allocation of any unused settlement funds, including a reversion, if any; (x) notice of and compliance with CAFA; and (xi) past distributions in comparable class settlements.

In evaluating settlement approval, the Court should consider the strong public policy favoring "settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). The settlement here readily meets all standards for preliminary settlement approval.

## **ARGUMENT**

## I.    The Settlement Meets the Standards for Preliminary Approval

### A.    The Class Has Been Zealously Represented

First, the class representatives and interim class counsel have vigorously represented the interests of the class in this action for more than three years. During this time, Plaintiffs engaged in extensive motion practice—including briefing over three rounds of motions to dismiss, numerous motions regarding entry of a protective order, discovery order, and scheduling order, and fourteen

---

[3] *See Procedural Guidance for Class Action Settlements*, United States District Court, Northern District of California, https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last updated Sept. 5, 2024).

4

discovery disputes. Salinas Decl. ¶5; ECF Nos. 140, 161, 162, 171, 175, 198, 202, 225, 227, 237, 247, 277, 283, 284, 287, 289, and 307.

This motion practice was supported by a significant amount of expert work. For example, due to the Defendants' years-long delay in producing transactional data and cost data, Plaintiffs' damages expert, Dr. Russell Mangum and his associates undertook significant effort and expense to research and develop potential alternative analyses to support the Plaintiffs' claims. Salinas Decl. ¶¶12, 13. Once some of this data was ultimately produced by Defendants in 2023, Dr. Mangum and his associates conducted further analyses with respect to the merits of Plaintiffs' claims and began to prepare to serve expert reports, which were scheduled to be exchanged on December 8, 2023. *Id*. ¶12; ECF No. 339.

Plaintiffs' expert work followed substantial and costly fact discovery. Plaintiffs served Defendants with at least 140 document requests and 18 interrogatories (most of which were served on multiple Defendants). Salinas Decl. ¶6. Plaintiffs also issued over 30 subpoenas to non-parties and obtained substantial structured data regarding these intermediaries' direct purchases of telescopes from the Defendants and their sales to the Indirect Purchaser Plaintiffs, for purposes of demonstrating "pass through" and economic harm; and identifying settlement class members. *Id*. Plaintiffs conducted extensive discovery negotiations with Defendants, including weekly meet and confers, on topics ranging from production of documents and transactional data, the identification of appropriate document custodians, the use of search terms, the completeness of discovery responses, and deposition scheduling. *Id*. ¶5. Plaintiffs conducted similar extensive discovery efforts with a substantial number of non-parties to obtain data critical to the case. *Id*. ¶6. Plaintiffs also reviewed a significant portion of the more than 3.9 million documents Defendants produced, and voluminous electronic transactional and cost data from Defendants and non-parties. *Id*. This included informally translating thousands of documents written in Chinese through translator software and formally translating dozens of documents written in Chinese for use in depositions. *Id*. ¶11. Lastly, Plaintiffs took depositions of Defendants' senior executives and defended 23 class representative depositions. *Id*. ¶6.

MOTION TO DIRECT NOTICE RE SETTLEMENT
CASE NO. 5:20-cv-03639-EJD

Moreover, as noted above, to obtain this discovery, Plaintiffs brought and prevailed on numerous discovery letter briefs before Magistrate Judge DeMarchi. *Id*. ¶5. Almost all of these disputes followed weeks, if not months, of meet and confer efforts that resulted in numerous hearings before the Court. *Id.* Among other things, this work included successfully compelling Defendants to run Plaintiffs' proposed search terms, produce all non-privileged documents that hit on one or more of those search terms, produce documents that were improperly withheld as privileged, collect and produce transactional and cost data, answer numerous interrogatories and other queries regarding Defendants' transactional data and the destruction of other potential data, and the scheduling of Defendants' depositions. *Id.*

Likewise, the class representatives have personally been actively engaged—they each provided pertinent information about their purchases of price-fixed products, searched for and provided documents and information in response to Defendants' written discovery requests, regularly communicated with their counsel, and sat for depositions.

Taken together, these litigation efforts show that the Settlement Agreement is the product of well-informed negotiations and vigorous advocacy on behalf of the class warranting preliminary approval and dissemination of settlement class notice.

**B.    The Settlement Agreement Results from Arm's-Length Negotiations**

The Settlement Agreement also arises out of serious, arm's-length negotiations between counsel for IPPs and Defendants. After years of litigation and extensive discovery, counsel for IPPs and Defendants convened multiple times over several months to arrive at settlement terms. Salinas Decl. ¶4. This included two full-day mediations with an experienced and well-respected mediator, Honorable Suzanne Segal, a former Magistrate Judge of the Central District of California. *Id.*  The agreement to settle was reached only after both sides accepted Judge Segal's mediator's proposal after protracted negotiations. *Id*.

Moreover, the Settlement Agreement bears no signs of collusion among the parties. The Ninth Circuit has identified three indicators of potential collusion in the settlement negotiation process: (i) when class counsel receives a disproportionate distribution of the settlement proceeds; (ii) when the parties negotiate a "clear sailing" arrangement providing for the independent payment

of attorney's fees; and (iii) when the parties arrange for a reversion of unused funds to defendants. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–48 (9th Cir. 2011). Here, none of those hallmarks are present. The Settlement Agreement will be paid *pro rata* to class members with qualifying purchases from the Indirect Purchaser States, and it includes no "clear sailing" agreement or any agreement on the amount of attorney's fees to be awarded. Instead, counsel will seek reasonable attorney's fees consistent with Ninth Circuit case law and under the supervision of the District Court. There will also be no reversion of unused funds to the Defendants.

Indeed, Judge Segal's extensive involvement and oversight weigh heavily in favor of finding procedural fairness and that there was no collusion between the parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (participation of mediator is not dispositive but is "a factor weighing in favor of a finding of non-collusiveness."); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019) ("[h]ere, the parties reached settlement under the supervision of Judge Kim; indeed, the Settlement Agreement is based on Judge Kim's Mediator's Proposal. Thus, the settlement proposal is the product of arm's-length bargaining.") (citation omitted).

**C.    The Settlement Agreement Represents an Excellent Result for the Class**

The relief provided to the class is more than "adequate," considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C).

**1.    The Settlement Agreement Is Fair, Reasonable, and Adequate**

The Settlement Agreement provides substantial monetary relief—a $32 million non-reversionary fund for the benefit of Indirect Purchasers. That amount represents an excellent result given the potential recovery and the substantial risks and delay of ongoing litigation in this case, along with potential collection and ability to pay problems with foreign defendants, as evidenced in the *Orion* litigation. *See docket generally, Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.,* No. 5:16-cv-06370-EJD (N.D. Cal.). The parties reached this settlement while Defendants' renewed motion to dismiss was still pending and IPPs were preparing to serve expert reports. "[I]t is well-

7

settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023) (alteration in original).

The IPPs' damages expert calculated that the class may have obtained a judgment in the range of $29 million to $165 million. Salinas Decl. ¶13. The $32 million settlement fund is well within the IPPs' expert's range and represents between approximately 19% to 110% of the preliminary total estimate of damages at trial. *Id.* Thus, this recovery is consistent with recoveries in this District. *See In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023) (finding that a settlement amount was satisfactory because it represented "approximately 9% to 28% of the total estimated damages *at trial*"); *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (finding a settlement that equaled "10.7 percent of the total potential liability exposure, before any deductions for fees, costs, or incentive awards" was "fair and reasonable"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement accounting for only "9% of the maximum potential recovery").

### 2. The Claims Process Is Straightforward

Claims Process. The Settlement Agreement in this case provides direct monetary relief to class members through a straightforward claims process. Plaintiffs present a proposed claim form, which will be made available to class members electronically and in hard copy. Verita Decl. Ex. E. Following this Court's order to direct notice to the class regarding the Settlement Agreements, class members will be able to make claims for their purchases by providing basic information about themselves (e.g., name, mailing address, and email address); the total number of covered products purchased from January 1, 2005 to September 6, 2023; and each class member's state of residence at the time of purchase. *Id.* Although a class member will not be required to submit proof of purchase, the claim form advises them to retain all purchase documentation until the claim is closed.

8

*Id.* After all claims have been submitted and a review of the claim data is performed, the claims administrator may request supporting documentation from claimants. *Id.*

Claims Rate. Plaintiffs and Verita estimate the total number of claimants to range from 40,000 to 300,000, resulting in a claims rate between 1% and 7.5% percent of the approximately 4 million class members. Verita Decl. ¶37. While low as a matter of absolute levels, such claims rates are the norm in cases such as this in which the per-claim dollar amount is also relatively low. For example, the landmark 2015 Arbitration Study by the Consumer Financial Protection Bureau, which examined 105 settlements in financial consumer fraud cases, showed that low claims rates in cases with low individual claim amounts has been a persistent phenomenon.[4] This reflects the fact that in cases with very small individual claim values, class members are often unlikely to take the time to submit a claim, even if that process is as streamlined as possible. Indeed, the low-dollar value of individual claims is precisely why class actions are necessary to enforce the law—not only to obtain redress, but also to deter future misconduct. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997). That said, in conjunction with the Court-appointed claims administrator, Class Counsel will seek to increase the claims rate as much as feasible. For example, Amazon will be providing direct notice to millions of settlement class members who purchased a telescope through Amazon.

Distribution Process. Following the close of the claims period, the settlement administrator will make payments to class members with valid claims through either (i) direct payment by check; or (ii) digital payment through services such as PayPal, Venmo, Amazon, or Google Wallet. Verita Decl. *Id.* ¶38.

### 3.    Counsel Will Seek Reasonable Attorneys' Fees

In evaluating the adequacy of the proposed settlements, the Court must also take into account the terms of any proposed attorneys' fees, including the timing of payment. Fed. R. Civ. P.

---

[4] Consumer Fin. Prot. Bureau, *Arbitration Study: Report to Congress, Pursuant to Dodd–Frank Wall Street Reform & Consumer Protection Act § 1028(a)* (2015), available at

https://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-congress-2015.pdf.

9

1  23(e)(2)(C)(iii). Accordingly, the Procedural Guidance instructs class counsel to include

2  information about (1) the fees they intend to request, (2) their lodestar calculation, including the

3  total number of hours billed to date and the requested multiplier, if any, and (3) the relationship

4  among the amount of the award, the amount of the common fund, and counsel's lodestar

5  calculation. *See* Procedural Guidance, Preliminary Approval (6).

6        Here, while the Settlement Agreement does not contemplate a specific award of attorney's

7  fees, it does provide that any Court-awarded fees will be paid from the gross settlement fund.

8  Plaintiffs anticipate requesting a total fee award not to exceed $10.66 million, along with

9  proportional interest that accumulates on the settlement fund, which represents an attorney fee

10  award not to exceed a third of the recovery in this case. In view of class counsel's lodestar of over

11  $11 million through the filing of this motion, such a request would presently result in a negative

12  lodestar multiplier of .96. Salinas Decl. ¶8. A preliminary calculation shows that counsel has spent

13  a total of 20,126 hours on this case during that time period, with a blended average rate of $568 per

14  hour. *Id*. Accordingly, a lodestar cross-check supports the reasonableness of a fee request, in light

15  of this hard-fought, intensely litigated case.

16      **4.**    **Other Related Agreements**

17        Rule 23(e)(3) requires parties to identify "any agreement made in connection with" the

18  settlement. This provision is aimed at "related undertakings that, although seemingly separate, may

19  have influenced the terms of the settlement by trading away possible advantages for the class in

20  return for advantages for others." Fed. R. Civ. P. 23(e) 2003 advisory committee notes. Plaintiffs

21  have entered into a Confidential Supplemental Agreement, which is available to the Court upon

22  request for *in camera* and under seal review. The Confidential Supplemental Agreement is in the

23  class's interest and grants certain rights in favor of the class. This Confidential Supplemental

24  Agreement is available for the Court's inspection, should it require it. Confidential supplemental

25  agreements in class action litigation are normal and permissible. *See, e.g., In re 3D Sys. Secs. Litig.*,

26  No. 21-cv-1920 (NGG) (TAM), 2023 U.S. Dist. LEXIS 98693, at *21 (E.D.N.Y. June 5, 2023)

27  (describing such agreement as "standard"); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST,

28  2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal. Sept. 4, 2018) (discussing existence of

confidential supplemental agreement); *Vataj v. Johnson*, No. 19-cv-06996-HSG, 2021 U.S. Dist. LEXIS 75879, at *28 (N.D. Cal. Apr. 20, 2021) (approving class action settlement with side, supplemental agreement).

### D.    The Settlement Agreement Treats Class Members Equitably

The proposed Settlement Agreement does not contemplate any unwarranted preferential treatment of class representatives or segments of the class. *See* Fed. R. Civ. P. 23(e)(2)(D). Matters of concern for the Court may include "whether the apportionment of relief among class members takes appropriate account of differences among their claims." Fed. R. Civ. P. 23(e)(2) 2018 advisory committee notes; *see also* Procedural Guidance, Preliminary Approval (1)(e) (instructing parties to describe the proposed allocation plan).

Under the terms of the Settlement Agreement, the plan of distribution is, appropriately, left for the determination of the Court. Here, Plaintiffs propose a *pro rata* plan of allocation to each class member with damages claims arising from purchases in the Indirect Purchaser States that will be based upon the number of approved purchases of Defendants' consumer telescopes during the settlement class period. Thus, the recovery to individual class members is tied to the volume and type of their purchases, the number of other qualified class members making claims against the settlement fund, and the size of the overall fund.

As courts have repeatedly held, this is a reasonable and fair way to compensate classes, especially in antitrust class actions. *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 14-CV-2058 JST, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "fairly treats class members by awarding a *pro rata* share to the class members based on the extent of their injuries.") (quotation omitted); *In re High-Tech Emp. Antitrust Litig.,* No. 11–cv–02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (approving *pro rata* distribution); *Four in One Co. v. S.K. Foods, L.P.*, No. 2:08–cv–3017 KJM EFB, 2014 WL 4078232, at *15 (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a *pro rata* distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable"). The proposed plan of allocation is thus "fair, adequate, and reasonable" and merits approval.

11

**E.    The Settlement Agreement Satisfies the District's Procedural Guidance**

In accordance with this District's Procedural Guidance, Plaintiffs have provided above relevant information regarding (i) the anticipated class recovery under the settlement and the potential class recovery if Plaintiffs were to fully prevail; (ii) the proposed allocation plan; (iii) expected participation by class members in the settlement; and (iv) attorneys' fees that counsel intend to request. In addition, the proposed notice and notice program are detailed below. The remaining relevant provisions of the Procedural Guidance are addressed here.

**1.    The Litigation and Settlement Class Are Fundamentally Identical**

Where a litigation class has not been certified, parties should explain any differences between the settlement class and class asserted in the operative complaint. *See* Procedural Guidance, Preliminary Approval (1)(a). Here, the settlement class is nearly identical to the class asserted in the Fourth Amended Consolidated Class Action Complaint ("FAC"). ECF No. 300, ¶198.

The only substantive differences in the Settlement Agreement class and the FAC class are setting an affirmative end date to the settlement class of September 6, 2023, and excluding certain government entities, jurors, and direct purchases of telescopes from the Settlement Agreement class, as is appropriate and warranted. *See, e.g., In re Kia Hyundai Vehicle Theft Litig.*, No. 8:22-ml-03052-JVS (KESx), 2023 WL 8126849, at *5 (C.D. Cal. Nov. 3, 2023) (granting preliminary approval after settlement agreement was amended to exclude "Government Entities" from the release); *In re: Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR, 2017 WL 6728701, at *1 (N.D. Cal. Dec. 22, 2017) (granting preliminary approval to a class definition that excluded "federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and any judge or jurors assigned to this case.").

**2.    The Release Tracks the Allegations in the Complaint**

Where a litigation class has not been certified, parties should explain any differences between the claims to be released and claims asserted in the complaint. *See* Procedural Guidance, Preliminary Approval (1)(b). There are no material differences between the claims released in the Settlement Agreement against the Defendants and the claims in IPPs' FAC against the Defendants.

12

*Compare* FAC, *with* Salinas Decl. Ex. A. The Settlement Agreement releases all antitrust and consumer protection claims that the classes brought against Defendants and their subsidiaries and affiliates. *Id.* Plaintiffs have not released any claims against Defendants for product liability, breach of contract, breach of warranty or personal injury, or any other claim unrelated to the allegations in the operative complaint. Salinas Decl. Ex. A ¶1(w)(3)(i). The Settlement Agreement does not release claims regarding named Defendant Ningbo Sunny or any of its officers, affiliates or related entities in their capacity on behalf of Ningbo Sunny. *Id.* Ex. A ¶1(x).

Because antitrust conspirators are subject to joint and several liability, class members who made valid purchases from any Defendant named in the conspiracy will be entitled to submit a claim. *See, e.g., In re Cement & Concrete Antitrust Litig.*, 817 F.2d 1435, 1439 (9th Cir. 1987), *rev'd on other grounds*, *California v. ARC Am. Corp.*, 490 U.S. 93, 109 (1989) ("Antitrust defendants are jointly and severally liable for the acts of their coconspirators. Therefore, the settling defendants were liable to all class members, not to just those members who purchased cement from them personally. Accordingly, class members who purchased cement from nonsettling defendants had valid claims, and thus were entitled to share in the fund.") (citing *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir.1980)). Joint and several liability applies with equal force in an indirect purchaser context. *See In re Cathode Ray Tube Antitrust Litig.*, No. 07-cv-05944-JST, 2022 WL 4596621, at *3 (N.D. Cal. Aug. 1, 2022) ("Eliminating any doubt on this point is the fact that "[n]othing in *Illinois Brick* displaces the rule of joint and several liability, under which each member of a conspiracy is liable for all damages caused by the conspiracy's entire output.") (quoting *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632 (7th Cir. 2002)).

Plaintiffs believe the Settlement Agreement will not impact any other known cases if approved. The Settlement Agreement specifically excludes any telescope purchases made directly from a Defendant. Salinas Decl. Ex. A ¶1(e).

### 3.    The Settlement Administrator Selection Process and Costs

The Procedural Guidance instructs parties to identify (1) the proposed settlement administrator, (2) the settlement administrator selection process, (3) the number of proposals submitted, (4) the methods of notice and claims payment proposed, (5) counsel's history of

13

engagements with the settlement administrator over the last two years, (6) anticipated administration costs, (7) the reasonableness of those costs in relation to the value of the settlement, and (8) who will pay the costs. *See* Procedural Guidance, Preliminary Approval (2). Here, the answer to each of these questions supports the fairness and adequacy of the settlement administration process proposed.

Selection Process. To select a settlement administrator, Plaintiffs conducted a competitive bidding process with multiple proposed administrators. Salinas Decl. ¶10. Having considered the competing bids, Plaintiffs selected Verita, whose proposal represented the most cost-effective, efficient, and comprehensive plan, which Plaintiffs believe provides the best value for the class in light of the other proposals. *Id.*

Method of Notice and Claims Payment. In their solicitation for bids from claims administrators, Plaintiffs required that any proposal employ contemporary and diverse methods of notice to ensure the broadest reach possible, consistent with Federal Rule of Civil Procedure 23 and current best practices. *Id*. Every administrator proposed a program that included direct notice to class members for whom Plaintiffs have contact information (e.g., via email and direct mail), online digital internet banner advertising across different advertising networks, outreach through social media channels, and a press release. *Id.* Some proposals included additional print publications and digital advertising. *Id.*

Counsel's History of Engagements with Verita. Interim Co-Lead Counsel's firms have had experience with Verita.[5] Verita Decl. ¶10. Over the last ten years, Interim Co-Lead Counsel have hired Verita for administration of settlements in over a dozen class actions. *Id.*

Anticipated Administration Costs. Verita estimates that notice and claims administration will cost $350,771. Salinas Decl. ¶10. Verita has agreed to a not-to-exceed amount for notice and claims administration of $450,500. *Id.* This cost is reasonable, as it represents approximately 1% of the total proceeds from the Settlement Agreement.

---

[5] Verita was formerly known as KCC Class Action Services, LLC or KCC.

MOTION TO DIRECT NOTICE RE SETTLEMENT
CASE NO. 5:20-cv-03639-EJD

### 4.    Costs and Expenses

The Procedural Guidance instructs counsel to state whether and in what amounts they seek payment of costs and expenses. *See* Procedural Guidance, Preliminary Approval (6). Here, Plaintiffs anticipate requesting reimbursement of out-of-pocket litigation expenses, not to exceed $1.5 million total. Salinas Decl. ¶11. This amount includes, *inter alia*, expenses for experts, document review and translation costs, deposition costs, and other miscellaneous litigation costs.

### 5.    Service Awards

The Procedural Guidance instructs parties to include information about the amount of any contemplated service awards and evidence supporting the awards. *See* Procedural Guidance, Preliminary Approval (7). While the Settlement Agreements do not specifically *require* service awards for class representatives, IPPs anticipate seeking Court approval of such awards—not to exceed $3,000 for each of the Class Representatives. These service awards are to compensate the Class Representatives for the substantial time and effort they spent on behalf of the class participating in the litigation, preparing for and sitting for depositions, and searching for and collecting documents. Plaintiffs believe this amount is reasonable in light of the excellent result achieved through this settlement. The amount requested is also "under the presumptively reasonable amount of $5,000 and [is] consistent with precedent." *See Harbour v. Cal. Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *9 (N.D. Cal. Jan. 16, 2024). Thus far in this litigation, Plaintiffs have not sought service awards and contemplate this will be the only service award for the Class Representatives.

### 6.    Reversions and *Cy Pres* Awardees

As noted above, there will be no reversion of unused funds to the Defendants. Should a balance remain after distribution to the class (whether by reason of tax refunds, uncashed checks, or otherwise), Interim Co-Lead Class Counsel will seek to reallocate such settlement funds to class members that did cash their checks, if economically feasible to do so. If unused settlement funds are not economically feasible to redistribute, Interim Co-Lead Class Counsel proposes to donate the funds to Stellar Dreams, a program directed by Science Haven, a 501(c)(3) non-profit, subject to the Court's approval.  Stellar Dreams' goal is "to close the equity gap in science, particularly

15

astronomy, by giving 100 telescopes, astronomy education, and citizen science opportunities to students in grades 5-12, who come from underrepresented backgrounds in science and astronomy."[6]

### 7.    Class Action Fairness Act ("CAFA")

Pursuant to the Settlement Agreement and as required by CAFA, the Defendants will serve notices in accordance with the requirements of 28 U.S.C. § 1715(b) within ten days of the filing of this motion. Salinas Decl. Ex. A ¶54. This Court has jurisdiction over this case under 28 U.S.C. § 1332(d) and CAFA, which vests original jurisdiction in this Court for any multi-state class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any plaintiff class member is different from that of any defendant. The Settlement Agreement does not provide for a recovery of coupons (28 U.S.C. § 1712), does not result in a net loss to any class member (28 U.S.C. § 1713), and does not provide for payment of greater sums to some class members solely on the basis of geographic proximity to the Court (28 U.S.C. § 1714). Thus, the Settlement Agreement is in substantive compliance with CAFA.

### 8.    Past Distributions

The Procedural Guidance instructs parties to provide information for at least one past comparable settlement, including (i) the total settlement fund, (ii) the total number of class members, (iii) the total number of class members to whom notice was sent, (iv) the methods of notice, (v) the number of claim forms submitted, (vi) the average recovery per class member or claimant, (vii) the amounts distributed to *cy pres* recipients, (viii) administrative costs, and (ix) attorney's fees and costs. *See* Procedural Guidance, Preliminary Approval (11). As shown below, the claims rate and administrative costs compare favorably to similar settlements.

| Case | Telescopes (IPPs) (proposed) | Batteries (IPPs) |
|---|---|---|
| **Total Settlement Fund** | $32 million | $113.45 million |
| **Total Estimated Number of Class Members** | 4 million | 193 million |

---

[6] *Stellar Dreams*, The Science Haven, https://www.thesciencehaven.org/stellardreams (last visited Sept. 12, 2024).

MOTION TO DIRECT NOTICE RE SETTLEMENT
CASE NO. 5:20-cv-03639-EJD

| | | |
|---|---|---|
| **Total Number of Class Members to Whom Notice Was Sent** | 1.3 million | 7.3 million |
| **Method(s) of Notice** | Direct notice; indirect notice, including digital media, and press release | Direct notice; indirect notice, including broadcast, digital media, and press release |
| **Number of Claims Submitted** | | 946,241 |
| **Average Recovery** | | $2.15 per device (repealer states) $1.23 per device (non-repealer states) |
| **Expected Residual** | $0 | $0 |
| **Attorneys' Fees** | $10.7 million | $34.035 million |
| **Litigation Costs** | $776,894[7] | $6.85 million |
| **Administrative Costs** | $450,500[8] | $4.1 million |

## II.    The Settlement Class Warrants Settlement Certification

At this stage, the Court must also determine whether it is likely to certify the settlement class, under Rule 23(a) and (b)(3), for purposes of judgment on the proposal. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii); *see also Amchem*, 521 U.S. at 620; *Manual for Complex Litigation* § 21.632 (4th ed. 2004). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Each element of Rule 23's requirements is satisfied here.

### A.    The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.    Numerosity

The first prerequisite for certifying a class is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this case, Plaintiffs seek to certify a class of all persons or entities who indirectly purchased one or more telescopes manufactured by a

---

[7] As of the filing of this motion.

[8] Contractually capped not-to-exceed amount for notice and claims administration.

MOTION TO DIRECT NOTICE RE SETTLEMENT
CASE NO. 5:20-cv-03639-EJD

Defendant from a distributor or retailer in an Indirect Purchaser State. According to Plaintiffs' damages expert, there are millions of class members, such that joinder of all is impracticable. *See* Salinas Decl. ¶13. "There is no exact class size that meets the numerosity requirement; rather, where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) (internal quotation marks omitted). Therefore, the first prerequisite of Rule 23(a) is met.

### 2.    Commonality

The second prerequisite for certifying a class is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts have consistently found that "[c]ommon issues predominate in proving an antitrust violation 'when the focus is on the defendants' conduct and not on the conduct of the individual class members.'" *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 318 (N.D. Cal. 2014). In this case, common questions of fact and law predominate over individual questions. Plaintiffs have alleged that Defendants engaged in a conspiracy to fix, raise, maintain and/or stabilize the price of telescopes. The common questions of fact or law include whether the Defendants in fact entered into an illegal agreement to fix, raise, maintain and/or stabilize the price of telescopes; whether the antitrust conspiracy did result in the artificial inflation of the price of telescopes; and whether those overcharges were passed on to consumers. The second prerequisite of Rule 23(a) is met.

### 3.    Typicality

To certify a settlement class, or any class, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). The Plaintiffs' FAC raises claims that the Defendants illegally fixed, raised, maintained, and/or stabilized the prices and allocated the market for consumer telescopes, which resulted in artificially inflated market-wide prices charged by Defendants and paid by indirect purchasers. All class representatives indirectly purchased one or more telescopes that were manufactured by a Defendant

18

or their corporate family. Because the class representatives' claims are typical of the members of the class, the third prerequisite of Rule 23(a) is met. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-JST, 2020 WL 1873554, at *6 (N.D. Cal. Mar. 11, 2020) ("the claims of the representative Plaintiffs are typical of the claims of the class members because they all indirectly purchased . . . products at supra-competitive levels as a result of the alleged price-fixing conspiracy during the relevant time period.").

### 4.    Adequacy of Representation

Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quotations removed).

Here, the interests of the Class Representatives and Interim Co-Lead Counsel are completely aligned with the interests of the absent class members. The Class Representatives suffered the same injury as the absent class members in that they paid artificially inflated prices for telescopes manufactured by Defendants. Interim Co-lead Counsel also has the same interest in proving that Defendants engaged in an illegal antitrust conspiracy. The vigor with which the Class Representatives and their counsel have litigated this case is well-documented on the docket over the past three and a half years. Plaintiffs have expended considerable time, energy and resources in gathering evidence in support of their case and in contesting Defendants' efforts to dismiss or minimize their case. And Class Counsel respectfully submit that they have vigorously and competently litigated this class for the benefit of their clients.

Rule 23(g) separately asks this Court to appoint class counsel to represent the settlement class. At the outset of this action, the Court appointed Interim Co-Lead Counsel for Plaintiffs after a competitive application process. ECF No. 95. Considering Interim Co-Lead Counsel's work in this action, their collective expertise and experience in handling similar actions, and the resources

MOTION TO DIRECT NOTICE RE SETTLEMENT
CASE NO. 5:20-cv-03639-EJD

they have committed to representing the class, they should be appointed as Class Counsel for the proposed settlement class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

## B. The Settlement Class Meets the Requirements of Rule 23(b)(3)

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied. Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

The settlement class satisfies Rule 23(b)(3) because common questions predominate over questions affecting individual class members. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Rule 23(b)(3) does not require that all elements of a claim are susceptible to class-wide proof; rather, it only requires that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013).

In horizontal price-fixing cases, questions as to the existence of the alleged conspiracy and as to the occurrence of price-fixing are readily found to predominate. *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 352 (N.D. Cal. 2005); *In re Citric Acid Antitrust Litig.*, No. 95-1092, C-95-2963 FMS, 1996 WL 655791, at *8 (N.D. Cal. Oct. 2, 1996); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). This case is no different. Here, resolution of Plaintiffs' claims depends principally on whether Defendants participated in an anticompetitive conspiracy, and whether that conspiracy caused an artificial and non-competitive increase to the market price of telescopes. Thus, if Plaintiffs were able to prove these elements, based on common evidence, a jury could reasonably find that every class member suffered some injury as a result. *See In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 467444, at *4–5 (N.D. Cal.

20

Feb. 8, 2016); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159, at *3–5 (N.D. Cal. Sept. 24, 2013); *In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*TFT-LCD I*"), 267 F.R.D. 583, 600–01 (N.D. Cal. 2010).

On the other hand, if, for example, class members brought their claims individually, each would have to rely on the same liability evidence and prove damages using the same economic modeling on which Plaintiffs intended to rely. Here, Plaintiffs have provided, though prior briefing, ample common factual evidence to support a finding that a conspiracy existed to fix prices and divide the consumer telescope market. Plaintiffs' experts have also examined the factual record and performed economic analyses regarding the common effect of the alleged conspiracy on individual purchasers.

Moreover, under the proposed Settlement, there will not need to be a class trial, meaning there are no potential concerns about any individual issues, if any, creating trial inefficiencies. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

## 2. Superiority

Fed. R. Civ. P. 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods.*, 521 U.S. at 615; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."). Class treatment is superior to other methods for the resolution of this case, including from a judicial efficiency perspective and given the relatively small amounts of alleged damages for each individual consumer. Indeed, litigating every class member's claims separately would result in a waste of judicial and party resources, given that the vast majority of evidence of liability would be identical. *See Hanlon*, 150 F.3d at 1023. Moreover, Settlement Class Members remain free to exclude themselves if they wish to do so.

### III.    The Proposed Notice Program Complies with Rule 23 and Due Process

A court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For a Rule 23(b)(3) class, the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice is satisfactory if it generally describes "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015). Plaintiffs propose an efficient and straightforward program designed by experienced notice and claims administrator Verita.

Plaintiffs request that the Court authorize Interim Co-Lead Counsel to spend up to $450,500 of the Settlement Fund to retain Verita for the purpose of effectuating notice and claims administration consistent with the Settlement Agreement and Rule 23. Although counsel does not anticipate any overages, any notice and claims costs above $450,500 will only be paid from the Settlement Fund subject to further application and Court approval.

### A.    The Proposed Notice Forms Are Plain and Easy to Understand

Under Plaintiffs' proposed notice program, Verita will provide notice to the settlement class with all information required by Rule 23(c)(2)(B). Having followed, as closely as possible, the suggested language for notices in this Procedural Guidance, Plaintiffs submit for approval proposed notices to class members. *See* Verita Decl. ¶¶11, 42; *see also* Procedural Guidance, Preliminary Approval (3)–(5). Copies of the proposed notice and claims documents are attached to the Verita Decl. as Exhibits A-E.

The proposed notices are written in plain and easy-to-understand language. They set forth a clear schedule of deadlines and provide class members with at least thirty-five days to opt out of or object to the Settlement Agreements prior to Plaintiffs' motion for attorney's fees and costs. *See* Procedural Guidance, Preliminary Approval (9). And they also inform class members that Interim Co-Lead Class Counsel will request attorneys' fees (and the amount thereof).

**B.    The Proposed Notice Plan Will Reach a Broad Audience**

The proposed notice plan is a multi-layered approach that is designed to reach class members.  First, a direct mail and email notice will be sent to class members for whom a facially valid mailing address and email address is available, and a long-form notice will be mailed to all persons who request one. Verita Decl. ¶¶14-20. Verita will process physical addresses through the national change of address ("NCOA") database and further analysis will be performed on any mail returned non-deliverable after use of the NCOA database. In addition, Amazon has agreed to facilitate direct notice to its customers that purchased impacted Telescopes by email. *Id.*

Second, Plaintiffs have also proposed an extensive and effective publication notice program to supplement direct notice. Verita Decl. ¶¶22-31. The publication plan includes paid media and earned media components. *Id.* The paid and earned media plan includes advertising in industry publications; "banner" ads on national trade publication websites; "banner" ads targeting consumers and businesses who are electronic hobbyists and enthusiasts; "banner" ads in national e-newsletters targeted to the settlement classes; targeted ads placed on various social media platforms (e.g., Facebook, Instagram, and Reddit); and a news release disseminated via earned media. *Id.*

Third, Plaintiffs will launch a case-specific settlement website that will post all the notice documents and all print and digital ads. *Id*. ¶¶25, 26, 32, 39. The website will provide potential Class Members with the opportunity to get detailed information about the Settlements and relevant documents, including the notice documents, the Preliminary Approval Order, the Settlement Agreements, other relevant filings and Court Orders, and allow them to make claims online. *Id*.

Fourth, Verita will also support a dedicated toll-free phone number, which will appear in the notice documents and ads. *Id*. ¶33. The number will have an interactive voice response system that will present callers with a series of choices to hear pre-recorded information about the Settlements. *Id*. If callers need further help, they will have an opportunity to speak with a live operator during business hours. *Id*.

The notice experts at Verita have opined that the proposed notice plan will reach over 80% of the possible class members and meets the requirements of Rule 23 and communicates information by complying "with the plain language requirement." *Id.* ¶¶11-12, 44.-45

## IV. The Court Should Schedule a Fairness Hearing and Related Dates.

Plaintiffs propose the following schedule for class notice and final approval:

| Event | Time |
|---|---|
| Order directing notice to the class regarding the Settlement Agreements | X |
| "Notice Date." Notice campaign to begin, including email, broadcast and digital media, publication, and internet notice. | X + 42 days |
| Claims period to begin | X + 42 days |
| Last day for motion for attorneys' fees, costs, and service awards | X + 69 days (35 days before objection deadline) |
| Last day for objections and requests for exclusion from the class | X + 104 days (62 days from Notice Date) |
| Last day for motion in support of Final Approval of settlements | X + 119 days (15 days after objection deadline) |
| Final Approval Hearing | X + 154 days (35 days after final approval motion) |
| Close of claims period | X + 200 days |

## CONCLUSION

For all the reasons set forth above, IPPs respectfully request that this Court (1) find it will likely approve the Settlement; (2) find it will likely certify the settlement class; (3) direct notice to the settlement class after finding that the forms and notice plan comply with Rule 23 and due process; (4) appoint the Class Representatives as representatives for the settlement class; (5) appoint Interim Co-Lead Class Counsel as counsel for the settlement class; (6) authorize retention of Verita as notice and claims administrator; and (7) set a schedule for Final Approval and related dates; and any motions for attorneys' fees, costs, and service awards, and schedule a Final Approval Hearing.

1

Dated:  September 16, 2024

2

Respectfully Submitted,

3

*/s/ Kalpana Srinivasan*

4

Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)

5

Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)

6

**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400

7

Los Angeles, CA 90067
Phone: 310-789-3100

8

ksrinivasan@susmangodfrey.com

9

mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

10

mgervais@susmangodfrey.com

11

Alejandra C. Salinas (*pro hac vice*)

12

Texas SBN 24102452
**SUSMAN GODFREY L.L.P.**

13

1000 Louisiana Street, Suite 5100
Houston, Texas 77002

14

Telephone: (713) 651-9366
Facsimile: (713) 654-6666

15

asalinas@susmangodfrey.com

16

*/s/ Lin Y. Chan*

17

Lin Y. Chan (SBN 255027)
Eric B. Fastiff (SBN 182260)

18

Reilly T. Stoler (SBN 310761)
**LIEFF CABRASER HEIMANN &**

19

**BERNSTEIN LLP**
275 Battery Street, 29th Floor

20

San Francisco, California 94111
Telephone: (415) 956-1000

21

Facsimile: (415) 956-1008
lchan@lchb.com

22

efastiff@lchb.com

23

rstoler@lchb.com

24

25

26

27

28

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Adam J. Zapala*

Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
**COTCHETT, PITRE &
McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

*Interim Co-Lead Counsel for the
Indirect Purchaser Plaintiffs*

26