Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD |
| THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Actions | **DECLARATION OF ALEJANDRA C. SALINAS IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND ISSUANCE OF NOTICE** |

I, Alejandra C. Salinas, declare as follows:

1. I am an attorney at Susman Godfrey L.L.P., one of the three firms appointed as Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned proceeding. I am a member of the State Bar of Texas and am admitted to practice *pro hac vice* before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2. I submit this declaration in support of IPPs' Motion for Preliminary Approval of Settlement and Issuance of Notice ("Motion") in the above-captioned matter.

3. Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement, fully executed by the parties on August 31, 2024.

4. The Settlement Agreement was reached after multiple mediation sessions guided by Hon. Suzanne Segal, a former Magistrate Judge of the Central District of California. The first mediation occurred on July 20, 2021, without reaching a resolution. After a second mediation on September 6, 2023, the parties accepted Judge Segal's mediator's proposal and executed an agreement in principle to resolve the matter. After reaching the agreement in principle, the parties worked diligently to draft and execute the Settlement Agreement.

5. This litigation was vigorously contested. The parties engaged in extensive motion practice, including three separate rounds of briefing on motions to dismiss, motions regarding entry of protective, discovery, and scheduling orders, and at least fourteen discovery dispute briefs. Motion practices on these issues typically followed weeks or months of meeting and conferring between the parties.

6. Plaintiffs served Defendants with at least 140 document requests and 18 interrogatories. Plaintiffs also issued and negotiated at least 30 subpoenas to non-parties, securing substantial structured transaction data for the purposes of performing an overcharge pass-through analysis and identifying settlement class members. The parties took and defended dozens of depositions.

7. Contested issues between the parties that necessitated motion practice included, but

were not limited to, search terms, production of relevant and non-privileged documents, production of documents improperly withheld as privileged, collection and production of transactional and costs data, proper responses to interrogatories, and deposition scheduling.

8. Interim Co-Lead Counsel for IPPs has dedicated a total of 20,126 hours to litigating this case as of July 22, 2024. The blended average rate for counsel is $568, resulting in an estimated lodestar of $11,427,361.

9. The Settlement Agreement does not release claims regarding named Defendant Ningbo Sunny or any of its officers, affiliates or related entities in their capacity acting on behalf of Ningbo Sunny.

10. Interim Co-Lead Counsel for IPPs ultimately selected Verita Global, LLC as the settlement claims and notice administrator after a competitive bidding process involving six vendors. The bidding process was iterative, with several of the vendors submitting multiple rounds of revised bids. Counsel selected Verita because its bid was the most cost-effective, efficient, and comprehensive plan. Verita's notice and claims plan utilizes diverse notice methods to achieve the broadest reach possible. Verita estimates that notice and claims administration will cost $350,771. Verita has agreed to a not-to-exceed amount for notice and claims administration of $450,500.

11. As of the filing of this Motion, IPPs' current unreimbursed litigation costs are approximately $776,894. These costs include: $581,785 for expert and consultant costs; $99,417 for document review platform hosting costs; $15,103 for document translation costs; $37,644 for court reporter and other deposition-related costs; $8,472 for travel costs; $8,500 for mediation costs; and $25,973 for other miscellaneous costs, including bank fees and process service.

12. IPPs retained Dr. Russell Mangum, the Executive Vice President at Cirque Analytics, as an expert to research and calculate class-wide damage models. This included researching and developing alternative models due to Defendants' unwillingness to provide transactional data and revising those models once Defendants did produce transactional data. Dr. Mangum was also provided with third party retail transactional data obtained by counsel through discovery. Dr. Mangum and his associates were preparing their expert reports when the parties

1 | reached the agreement to settle the case.

2 |     13.    Dr. Mangum also evaluated the relevant commerce based on sales data provided through discovery from Celestron, Orion, and Meade. His sales estimates of Telescopes to IPPs between January 1, 2005, and September 6, 2024, were approximately $636 million. Based on evaluation of third-party transaction data, Dr. Mangum calculated that the size of the damages class was approximately 4 million customers. Dr. Mangum also calculated that damages for the IPP Class were in the range of $29 million to $32 million (with an overcharge of five percent and a pass-through rate between 90 percent and 100 percent), and could have been as high as $165 million (with an overcharge of 26 percent and a pass-through rate of 100 percent). Dr. Mangum calculated class wide damages based on overcharges estimated from multiple regression analyses, informed by a thorough review of the relevant economic review, and from studying the Court-approved methods of Dr. Douglas Zona from the *Orion* litigation.

    14.    I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 16th day of September, 2024 in Houston, Texas.

*/s/ Alejandra C. Salinas*
Alejandra C. Salinas

---

**DECLARATION OF ALEJANDRA C. SALINAS IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND ISSUANCE OF NOTICE**

4