Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| This Document Relates to: <br><br> All Indirect Purchaser Actions | **DECLARATION OF CARLA A. PEAK IN SUPPORT OF SETTLEMENT NOTICE PLAN** |

I, Carla A. Peak, pursuant to 28 U.S.C. § 1746 declare as follows:

1. My name is Carla A. Peak. I have personal knowledge of the matters set forth herein, and if called as a witness I could and would testify competently to them.

2. I am Vice President of Legal Notification Services for Verita Global, LLC ("Verita"), formerly KCC Class Action Services, LLC or KCC, a firm that provides comprehensive class action services, including legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class actions. Verita has developed efficient, secure and cost-effective methods to properly handle the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of settlements to ensure the orderly and fair treatment of class members and all parties in interest.

3. I am a nationally recognized expert in the field of legal notification and I have served as an expert in over 500 federal and state cases involving class action notice plans.

4. Verita has been selected by counsel for the parties to serve as the Settlement Administrator for the settlement in this case.

5. I provide this Declaration to describe my and Verita's experience,[1] as well as the proposed notice plan (the "Notice Plan" or "Notice Program") for the Settlement[2] designed to provide notice to Settlement Class Members for this class action settlement. Verita will work with the parties to implement the Notice Plan, as well as make any decisions about notice and administration.

**EXPERIENCE**

6. As an industry leader, Verita has been retained to administer more than 7,500 class actions and distributed settlement payments totaling well over a trillion dollars. Our experience

---

[1] KCC acquired Gilardi & Co. LLC in 2015. KCC and Gilardi rebranded as Verita in June 2024. This Declaration combines the class action notice and administration experience of both firms.

[2] Capitalized terms not defined herein are defined in the Settlement Agreement.

1  includes many of the largest and most complex administrations of both private litigation and of
2  actions brought by state and federal government regulators.
3       7.    Verita has administered notice plans in a wide range of class actions in the Northern
4  District of California, for example: *Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.*, No. 4:15-
5  cv-06314 11; *Aruliah v. Impax Laboratories, Inc.*, No. 3:14-cv-03673; *Banks v. Nissan North
6  America, Inc.*, No. 4:11-cv-02022; *Bonoan v. Adobe, Inc.*, No. 3:19-cv-01068; *Camberis v. Ocwen
7  Loan Servicing, LLC*, No. 3:14-cv-02970; *Chen v. Chase Bank USA, N.A.*, No. 3:19-cv-01082;
8  *Chinitz v. Intero Real Estate Services*, No. 5:18-cv-05623; *Cisneros v. American General
9  Financial Services, Inc.*, No. 3:11-cv-02869; *Diaz v. Google LLC*, No. 5:21-cv-03080; *Drieu v.
10 Zoom Video Communications, Inc.*, No. 3:20-cv-02353; *Edwards v. National Milk Producers
11 Federation*, No. 4:11-cv-04766; *Ehret v. Uber Technologies, Inc.*, No. 3:14-cv-00113; *Heath v.
12 Google LLC*, No. 5:15-cv-01824; *Hickcox-Huffman v. US Airways, Inc.*, No. 5:10-cv-05193;
13 *Hendricks v. StarKist Co.*, No. 4:13-cv-00729; *Holman v. Experian Information Solutions, Inc.*,
14 No. 4:11-cv-00180; *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617; *In re Carrier IQ,
15 Inc., Consumer Privacy Litig.*, No. 3:12-md-02330; *In re Cathode Ray Tube (CRT) Antitrust Litig.*,
16 No. 4:07-cv-05944; *In re Extreme Networks, Inc. Securities Litig.*, No. 5:15-cv-04883; *In re
17 Facebook Biometric Information Privacy Litig.*, No. 3:15-cv-03747; *In re HIV Antitrust Litig.*, No.
18 3:19-cv-02573; *In Re GEICO General Insurance Co.*, No. 4:19-cv-03768; *In re Lidoderm Antitrust
19 Litig.*, No. 3:14-md-02521; *In Re LinkedIn User Privacy Litig.*, No. 5:12-cv-03088; *In Re Lithium
20 Ion Batteries Indirect Antitrust Litig.*, No. 4:13-md-02420; *In Re: NCAA Athletic Grant-In-Aid
21 Antitrust Litig.*, No. 4:14-md-02541; *In re Nexus 6P Products Liability Litig.*, No. 5:17-cv-02185;
22 *In re: Nvidia GTX 970 Graphics Chip Litig.*, No. 4:15-cv-00760; *In Re Optical Disk Drive
23 Antitrust Litig.*, No. 3:10-md-02143; *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570; *Knight
24 v. Concentrix Corp.*, No. 4:18-cv-07101; *McArdle v AT&T Mobility LLC*, No. 4:09-cv-01117;
25 *Mullins v. Premier Nutrition Corp.*, No. 3:13-cv-01271; *Nevarez v. Forty Niners Football
26 Company, LLC*, No. 4:16-cv-07013; *Norris v. Mazzola*, No. 3:15-cv-04962; *Perks v. Activehours
27 Inc.*, No. 5:19-cv-05543; *Perrine v. Sega of America, Inc.*, No. 3:13-cv-01962; *Schneider v.
28

*Chipotle Mexican Grill, Inc*., No. 4:16-cv-02200; *Sheikh v. Tesla, Inc*., No. 5:17-cv-02193; *Ragano v. Michaels Stores, Inc*., No. 3:11-cv-03908; *Slovin v. Sunrun, Inc*., No. 4:15-cv-05340; *Steinfeld v. Discover Financial Services*, No. 3:12-cv-01118; and *Weeks v. Google LLC*, No. 5:18-cv-00801.

8. Verita has also administered notice plans in a wide range of federal antitrust class actions, including: *Barba v. Shire U.S., Inc*., No. 1:13-cv-21158 (S.D. Fla.); *In re Aftermarket Filters Antitrust Litigation*, No. 1:08-cv-04883 (N.D. Ill.); *In re Asacol Antitrust Litigation*, No. 1:15-cv-12730 (D. Mass.); *In re Blood Reagents Antitrust Litigation*, No. 09-md-2081 (E.D. Pa.); *In re Domestic Drywall Antitrust Litigation*, No. 2:13-md-02437 (E.D. Pa.); *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Company, Ltd.*, No. 2:09-cv-00852 (E.D. Wis.); *In re College Athlete NIL Litigation*, No. 20-cv-03919 (N.D. Cal.); *In re: Fresh and Process Potatoes Antitrust Litigation*, 4:10-md-02186 (D. Idaho); *In re HIV Antitrust Litigation*, No. 3:19-cv-2573 (N.D. Cal.); *In re Hypodermic Products Antitrust Litigation*, No. 05-cv-1602 (D. N.J.); *In re Intuniv Antitrust,* No. 1:16-cv-12396 (D. Mass.); *In Re Korean Ramen Antitrust Litigation*, No. 13-cv-4115 (N.D. Cal.); *In re Lidoderm Antitrust Litigation,* No. 3:14-md-02521 (N.D. Cal.); *In re Lithium Ion Batteries Indirect Antitrust Litigation*, No. 13-md-02420 (N.D. Cal.); *In re: Nexium (Esomeprazole) Antitrust Litig*., No. 1:12-md-2409 (D. Mass.); *In re Potash Antitrust Litigation* (II), No. 1:08-cv-06910 (N.D. Ill.); *In re Remicade Antitrust Litigation*, No. 2:17-cv-04326 (E.D. Pa.); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, No. 1:14-md-02503 (D. Mass.); *In re: Skelaxin (Metaxalone) Antitrust Litigation*, No. 1:12-md-02343 (E.D. Tenn.); *In re Thalomid and Revlimid Antitrust Litigation*, No. 2:14-cv-06997 (D.N.J.); and *In re Titanium Dioxide Antitrust Litigation*, No. 10–CV–00318 (D. Md.).

9. I have personally been involved in many large and significant cases, including *In re Experian Data Breach Litigation*, No. 8:15-cv-01592 (C.D. Cal.), a national data breach class action involving over 15 million T-Mobile consumers whose information was stored on an Experian server; *In re: The Home Depot, Inc., Customer Data Security Breach Litig.,* No. 1:14-md-02583 (N.D. Ga.), a national data breach class action involving over 40 million consumers

3

who made credit or debit card purchases in a Home Depot store; *In re: Skelaxin (Metaxalone) Antitrust Litigation*, No. 1:12-md-02343 (E.D. Tenn.), a multi-state antitrust settlement involving both third party payors and consumers that purchased or paid for the brand and generic version of the prescription drug metaxalone; *Chambers v. Whirlpool Corporation*, No. 8:11-cv-01733 (C.D. Cal.), a national product defect case involving class members who experienced or may experience the overheating of an automatic dishwasher control board; *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.), perhaps the largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement; and *In re Residential Schools Litigation*, No. 00-CV-192059 (Ont. S.C.J.), the largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

10. Verita has worked with the Interim Co-Lead Counsel firms as notice and claims administrator in numerous other class actions. These include, but are not limited to, *Cymbalista v. JPMorgan Chase Bank NA*, No. 2:20-cv-00456 (E.D.N.Y.); *Dennis v. Amerigroup Washington, Inc.*, No. 3:19-cv-05165 (W.D. Wash.); *Diaz v. Google LLC*, No. 5:21-cv-03080 (N.D. Cal.); *Gutierrez v. Wells Fargo Bank, N.A.*, No. 3:07-cv-05923 (N.D. Cal.); *In re Anadarko Basin Oil and Gas Lease Antitrust Litig.*, No. 16-cv-209 (W.D. Okla.); *In re A-Power Energy Generation Systems, Ltd. Securities Litig.*, No. 2:11-ml-2302 (C.D. Cal.); *In re Diamond Foods, Inc. Securities Litig.*, No. 3:11-cv-05386 (N.D. Cal.); *In re LendingClub Securities Shareholder Litig.*, No. CIV 537300 (Calif. Super. San Mateo Cty.); *In re Medical Capital Securities Litig.*, No. 10-ml-02145 (C.D. Cal.); *In re Mercedes-Benz Tele Aid Contract Litig.*, No. 2:07-cv-02720 (D.N.J.); *In re Titanium Dioxide Antitrust Litigation*, No. 10–CV–00318 (D. Md.); *Kerrigan Capital LLC v. David Strohm, et al.*, No. 534431 (Calif. Super. San Mateo Cty.); *Pine v. A Place For Mom, Inc.*, No. 2:17-cv-01826 (W.D. Wash.); *Shephard v. Lowe's HIW, Inc.*, No. 3:12-cv-03893 (N.D. Cal.); *Steinfeld v. Discover Financial Services*, No. 3:12-cv-01118 (N.D. Cal.); *Tait v. BSH Home Appliances Corp.*, No. 10-cv-00711 (C.D. Cal.); *Wannemacher v. Carrington Mortg. Servs., LLC*,

No. 8:12-cv-02016 (C.D. Cal.); *Weisblatt v. Apple, Inc*., No. 5:10-cv-02553 (N.D. Cal.); and *Zaborowski v. MHN Government Services, Inc*., No. 3:12-cv-05109 (N.D. Cal.).

11. In forming my opinions, I draw from my in-depth class action case experience. I have worked in the class action notification field for more than 20 years. During that time, I have been involved in all aspects in the design and implementation of class action notice planning, as well as the drafting of plain language notice documents that satisfy the requirements of Rule 23 and adhere to the guidelines set forth in the *Manual for Complex Litigation, Fourth* and by the Federal Judicial Center ("FJC").

12. The reach of the Notice Program is consistent with other effective court-approved notice programs. Additionally, the Notice Program is intended to comply with the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (the "FJC Checklist"), which considers at least 70% reach among class members to be reasonable.

## NOTICE PLAN

### *Proposed Class Definition*

13. The Settlement Class is defined as all persons and entities in the Indirect Purchaser States[3] who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

### *Individual Notice*

---

[3] "Indirect Purchaser States" means Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

14. The estimated size of the Settlement Class is 4 million consumers. It is my understanding that contact information is available for 2,641,850 Settlement Class Members. Of these, approximately 2,500,000 can be provided with notice via Amazon.[4]

15. In May, IPP Counsel provided Verita with 13 data files. Verita combined the data files to create the "Class List." The Class List was reviewed and analyzed to remove duplicates and standardized addresses. Upon completion of this analysis, the Class List contained 422,934 records. Of these, 256,049 were deemed to be duplicates based on name, address and email addresses. After removing the duplicate records, 166,875 unique records remained on the Class List. Of the 166,875 unique records, 4,636 contain only an email address, 91,828 contain only a postal address, 45,386 contain both an email and postal address, and 25,025 do not have an associated email or postal address.

16. Verita will send an email notice to all Settlement Class Members for which an email address is available on the Class List. The proposed email notice is attached as Exhibit A. Prior to distributing the email notice, all email addresses will be subject to a cleansing and validation process to, among other things, remove extra spaces and fix common domain name errors, as well as compare addresses against known bad email addresses and verify email existence with Internet Service Providers ("ISPs").

17. The email notice will be formatted to avoid common "red flags" that could cause the email to be blocked by spam filters. For example, the content of the notice will be placed in the body of the email rather than as an attachment to avoid spam filters and improve deliverability. The email notice will contain a link to the case website.

18. The email campaign will return data regarding the number of emails successfully delivered and email bouncebacks. Where an email is undeliverable, and a mailing address is available, notice will be sent by mail.

---

[4] Amazon uses personal information to deliver and communicate with customers about their purchases of products and services. https://www.amazon.com/gp/help/customer/display.html?nodeId=G6CVQVUVGMD3BJQ2 (last visited Apr. 9, 2024.)

19. Verita will send a postcard notice to all Settlement Class Members whose email was known to be undeliverable and a corresponding postal address exists, or only a postal address is available on the Class List. The proposed postcard notice is attached as Exhibit B. Prior to mailing, the postal addresses will be checked against the National Change of Address (NCOA)[5] database maintained by the USPS; certified via the Coding Accuracy Support System (CASS);[6] and verified through Delivery Point Validation (DPV).[7]

20. Notices returned by the USPS as undeliverable will be re-mailed to any address available through postal service forwarding order information. For any returned mailing that does not contain an expired forwarding order with a new address indicated, Verita will conduct further address searches using credit and other public source databases to attempt to locate new addresses and will re-mail these notices where possible.

*Target Analysis*

21. To develop the media notice campaign and verify its effectiveness, MRI-SIMMONS/comScore multi-platform data[8] was studied among a proxy target of adults who participate in stargazing. This proxy target differs from the class definition but is necessary and

---

[5] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[6] Coding Accuracy Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[7] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

[8] For decades, MRI and Simmons Research conducted two of the most trusted consumer studies in the United States. MRI's 'Survey of the American Consumer' was the gold standard for consumer audiences across industries. In 2021, MRI-Simmons combined these trusted, gold-standard consumer studies to launch MRI-Simmons USA, the most comprehensive study on American consumers. This high-quality, nationally representative study provides marketers, media, and agencies with the most accurate consumer truth set. Released quarterly, MRI-Simmons USA employs address-based probabilistic sampling, measuring real people, randomly chosen to represent the US population in all its variations.

common in class action notice plans. The reported characteristics, demographics, interests, and media habits of the proxy target aided in the media planning and selection process.

### *Media Campaign*

22. In addition to the individual notice efforts described above, Verita has created a robust, multi-faceted online and print media campaign to provide the best notice possible to Settlement Class Members under the circumstances of this litigation.

23. Verita will implement a media campaign consisting of online advertisements, print publications, and a press release. The proposed publication notice is attached as Exhibit C.

24. Approximately 23,850,000 digital impressions will be purchased programmatically via one or more ad exchanges and distributed over various websites and the social media platforms Facebook, Instagram and Reddit. The impressions will be targeted to internet users who have likely purchased telescopes, demonstrated an online interest in Celestron, telescopes, astronomy, stargazing, sky/star maps, astrophotography, astroimaging, telescope accessories, astronomical accessories, and/or used stargazing apps and sky guides, where available.

25. The notices will appear on both desktop and mobile devices, including tablets and smartphones, in display and native ad formats. All digital media notices will include an embedded link to the settlement website.

26. The Notice Plan also includes a paid search campaign to help drive Settlement Class Members who are actively searching for information about the litigation to the dedicated settlement website. Paid search ads are driven by the user's search activity, meaning that if someone searches for (or has recently searched for) terms related to the litigation, the user may be served with an advertisement directing them to the dedicated settlement website. The search terms used as part of the paid search campaign will directly relate to the settlement, as well as the subject matter of the class action.

27. The digital media campaign will be monitored by Verita's digital specialists to analyze key campaign performance indicators and make real-time modifications, as needed.

***Specialty Media***

28. Verita will promote a co-branded post on *Astronomy Magazine's* Facebook page which has over 1.4 million followers. Astronomy targets amateur astronomers, and contains columns on sky viewing, reader-submitted astrophotographs, articles on astronomy and astrophysics for general readers, as well as telescope reviews.

29. Digital advertisements will appear on *Sky & Telescope's* website (skyandtelescope.org) for a one-month period. Approximately 100,000 digital impressions will be achieved during this time. A digital banner ad will also be published in its weekly newsletter.

30. *Sky & Telescope* is run by the American Astronomical Society. Its content covers all aspects of amateur astronomy, delivers the latest astro-gear product reviews as well as news, science observing tips, and imaging techniques. Its website receives over 500,000 unique visitors per month and its weekly newsletter has approximately 63,000 subscribers.

***Press Release***

31. Verita will cause a press release to be issued nationwide to a variety of press outlets, including Associated Press (AP) News.[9] The press release will help garner "earned media" (*i.e.*, other media may report about the story). Earned media can provide a valuable role in distributing news and information about the litigation through trusted sources.

***Response Mechanisms***

32. Verita will establish and maintain a case-specific website to allow Settlement Class Members to obtain additional information about the settlement as well as relevant court filings from the action. Settlement Class Members will be able to complete their claims forms online. Settlement Class Members will be also able to view, download, and/or print the long form Website Notice, the operative Class Action Complaint, Defendant's Answer to the Class Action Complaint, the Settlement Agreement, Plaintiffs' Motion for Preliminary Approval, the Court's Preliminary

---

[9] The Associated Press is an American not-for-profit news agency headquartered in New York City. Founded in 1846, it operates as a cooperative, unincorporated association, and produces news reports that are distributed to its members, major U.S. daily newspapers and radio and television broadcasters.

Approval Order, and other relevant documents and court filings. The proposed long form notice is attached as Exhibit D. Settlement Class Members will also be able to review a list of frequently asked questions and answers, and important dates and deadlines.

33. Verita will establish a case-specific toll-free number to allow Settlement Class Members to call to learn more about the settlement in the form of frequently asked questions and speak with a live representative to answer settlement related questions. The toll-free number will also allow Settlement Class Members to request to have additional information mailed to them.

34. Verita will establish a case-specific email address to allow Settlement Class Members to correspond directly with Verita regarding the settlement.

**CLAIMS PROCESS**

35. To obtain a settlement payment, Settlement Class Members must submit a claim form online or by mail. A draft claim form is attached as Exhibit E. Each identifiable Settlement Class Member who is sent an individual notice will be assigned a unique identifier or "Claim ID" that may be used to expedite claims filing by "pre-populating" name, mailing address, and/or email address information. Claim IDs will be provided in the Individual Notices. Settlement Class Members who receive an individual notice and wish to file a claim form online may enter their Claim ID to view and submit a claim form that has been automatically pre-populated with information corresponding to their unique identifier.

36. The claim form will seek information necessary to validate and process Settlement Class Members' claims, such as their full name, mailing address, telephone number, email address, and any documentation necessary to substantiate their claim, as well as their signature as verification that all information provided on the claim form is accurate. If a claim is denied due to lack of signature or other required information or documentation, the Settlement Class Member will be notified and provided with an opportunity to correct the claim.

37. Verita will process all claim forms in accordance with the Settlement Agreement. Claims rates vary depending on multiple factors and can be extremely challenging to predict with certainty. Although the exact size of the Settlement Class is unknown for this Settlement, based

on Verita's expertise and experience with settlements of this nature and class size (approximately 4 million indirect purchaser consumers), we estimate the claims rate will be between 1.0%-7.5%. The claims rate could be more or less than estimated and will ultimately be determined at the conclusion of the administration.

***Payment***

38.     Settlement Class Members who submit valid and timely claims will have the choice of receiving payment through either (i) direct payment by check, or (ii) digital payment through services such as Zelle, PayPal, Venmo, or Amazon.

**PROCEDURES FOR SECURELY HANDLING DATA**

39.     Verita designed its in-house processing platform to securely safeguard client information, as well as mitigate potential external and internal fraud. Verita implements assurance controls that assure: (1) data transmission between Verita and its client organizations are complete; (2) new claims (participant data and noticing materials) are established accurately and completely; (3) claims processing is performed completely and accurately; (4) disbursements are authorized and performed accurately and completely; (5) output is printed accurately (e.g. claim forms, deficiency letters, etc.); (6) processing is appropriately authorized and scheduled and that deviations from scheduled processing are identified and resolved; (7) physical access to the data center is restricted to properly authorized individuals; and (8) changes to the existing applications are authorized, tested, approved, and properly implemented.

40.     As a result of providing administrative services within the public sector, most notably with the SEC, Verita continues to develop its system security posture. As a contractor, Verita is subject to annual reviews according to the SEC's information security program.

**INSURANCE**

41.     Verita's services agreement governs the terms and conditions of Verita's employment, including liability and acceptance of responsibility. Verita maintains insurance

applicable to its services including professional indemnity insurance, general liability, property, comprehensive crime, electronic and computer crime, and cyber liability insurance.

**NOTICE PLAN COSTS**

42. According to the Settlement Agreement, Verita will be paid exclusively out of the Settlement Fund. Verita has agreed to cap the costs of notice and settlement administration at $450,500. These costs are based upon the scope of work currently contemplated and include tasks such as data intake and processing, distributing the Email Notice, printing and mailing the Mail Notice, address searches, re-mailing Mail Notices to updated and/or newly located addresses, postage, the media campaign, the declaration in support of preliminary approval, weekly case reporting, setting up and maintaining the Settlement Website, including the Website Notice, processing claims and exclusion requests, automated call support (including script drafting and management, monthly maintenance fees, updates, listening to, transcribing and responding to voicemails), processing claims filed, curing deficient claims, claim calculations, disbursements and handling, and staff hours.

43. The costs of settlement administration are consistent with industry standards and cases of similar size and expected scope. These estimated costs are the product of extensive pre-administration consultation with the parties on the expected scope of work. Notice and settlement administration costs as a general matter are a combination of media placements, unitized pricing, and hourly rates. While Verita can and does project costs based upon input from the parties about the likely engagement, informed by our own experience, ultimately, we are a neutral third-party administrator tasked with handling any administrative tasks requested and required by the circumstances of the administration, regardless of whether the administration falls within projections or greatly exceeds them. These realities are beyond Verita's control and cannot be altered by Verita to limit the work required.

**CONCLUSION**

44. The proposed Notice Plan is expected to reach more than 80% of the Class, on average 1.6 times each, through the direct and indirect notice efforts described above. Coverage will be further enhanced through the specialty media and press release.

45. In my opinion, the Notice Plan proposed is consistent with other effective settlement notice programs. It is the best notice practicable and meets the "reasonably certain to inform" due process communications standard of *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The Notice is consistent with the guidelines set forth in Rule 23, the *Manual for Complex Litigation, Fourth*, and the FJC Checklist, which considers 70% reach among class members to be a "high percentage" and reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of September 2024, at Ocean City, New Jersey.

*/s/ Carla Peak/*

Carla A. Peak