Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Settlement Class Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD |
| THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Actions | **JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J. ZAPALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**<br><br>Dept.:    **Courtroom 4**<br>Judge:   **Hon. Edward J. Davila**<br>Date:    **April 3, 2025**<br>Time:    **9:00 AM** |

We, Kalpana Srinivasan, Lin Y. Chan, and Adam J. Zapala declare as follows:

I, Kalpana Srinivasan, am an attorney at Susman Godfrey L.L.P., one of the three firms appointed as Settlement Class Counsel ("Class Counsel") for Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

I, Lin Y. Chan, am an attorney at Lieff Cabraser Heimann & Bernstein, LLP, one of the three firms appointed as Class Counsel for IPPs in the above-captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

I, Adam J. Zapala, am an attorney at Cotchett, Pitre & McCarthy, LLP, one of the three firms appointed as Class Counsel for IPPs in the above-captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

We submit this declaration in support of IPPs' Motion to for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards ("Motion") in the above-captioned matter.

During the litigation, Class Counsel performed an extraordinary amount of work, described in detail below.

## I.  DESCRIPTION OF WORK PERFORMED

### a. Initial Pleadings and Leadership

1. Prior to filing, Class Counsel conducted an extensive investigation, including consultation with experts and market participants.

2. Class Counsel filed the first IPP complaints between June 17 and 20, 2020 in the Northern District of California. *See Murphy, et al. v. Celestron Acquisition LLC, et al.*, No. 5:20-cv-04049 (N.D. Cal. June 17, 2020); *Brewer, et al v. Celestron Acquisition, LLC et al.*, No. 5:20-

cv-04823 (N.D. Cal. July 17, 2020); *Goldblatt v. Shen et al.*, No. 3:20-cv-04860 (N.D. Cal. July 20, 2020).

3.    In the following months, additional IPP complaints were filed. *See Kaufman v. Celestron Acquisition, LLC et al*, No. 5:20-cv-05285 (N.D. Cal. July 31, 2020); *Griffith et al v. Shen et al*, No. 5:20-cv-05400 (N.D. Cal. Aug. 4, 2020); *Price et al v. Shen et al*, No. 20-cv-06216 (N.D. Cal. Sept. 2, 2020); *Moore et al v. Celestron Acquisition, LLC et al*, No. 20-cv-06435 (N.D. Cal. Sept. 14, 2020); and *Riley v. Celestron Acquisition, LLC et al*, No. 20-cv-06527 (N.D. Cal. Sept. 17, 2020).

4.    The first motion to appoint lead counsel was filed on July 21, 2020. ECF No. 30. On August 17, 2020, the Court granted the motion to consolidate all currently pending cases under one master docket and urged all parties "to proceed on a coordinated basis going forward 'to secure the just, speedy, and inexpensive determination of every action and proceeding' pursuant to Rule 1." ECF No. 55. This Court considered competing motions for lead counsel on September 17, 2020 via Zoom, during which the Court appointed Settlement Class Counsel to lead the IPP action as Interim Co-Lead Counsel. ECF No. 91. The Court then confirmed the appointment of Interim Co-Lead Counsel in its September 18, 2020 order. ECF No. 95.

5.    On September 28, 2020, IPPs moved for an order authorizing alternative service on twelve foreign-based Defendants pursuant to Rules 4(e) and 4(f)(3), which these defendants opposed. The Court granted IPPs' motion on December 2, 2020, thereby allowing all defendants (as defined in this Motion) to proceed on the same case schedule. ECF No. 124.

6.    To streamline the litigation, Settlement Class Counsel consolidated the pending IPP complaints into a single amended pleading and filed a Consolidated Class Action Complaint on October 19, 2020. ECF No. 105. To avoid certain issues related to service, the parties stipulated to allow IPPs to submit an Amended Consolidated Class Action Complaint (filed on November 6, 2020). ECF No. 113.

### b.  Motions to Dismiss and Transfer

7.    Defendants filed motions to dismiss the Direct Purchaser Plaintiffs' ("DPPs" and collectively with IPPs, "Plaintiffs") complaint and to transfer it to the Central District of California

on June 30, 2020. ECF Nos. 15 & 16. On July 14, 2020, IPPs filed a motion to intervene and file oppositions to both motions. ECF No. 22. IPPs' motion to intervene contained detailed arguments opposing the motions. However, DPPs' filing of their Amended Complaint on July 21, 2020 mooted the pending motion. ECF No. 31. Defendants opposed IPPs' motion to intervene as to the transfer motion on July 28, 2020. ECF No. 33. On September 10, 2020, the Court granted IPPs' motion to intervene and denied the motion to transfer. ECF No. 82.

8.    **First Motion.** U.S.-based Defendants filed a motion to strike certain allegations and the first motion to dismiss the operative complaint on three grounds: untimeliness, failure to state valid federal and state claims, and failure to state a claim on November 16, 2020. *See* ECF Nos. 115 & 116; ECF Nos. 129 & 130 (IPP opposition); ECF Nos. 131 & 132 (reply). On January 20, 2021, after the Court authorized Rules 4(e) and 4(f)(3) service (*see supra*), foreign-based Defendants filed a motion to dismiss on identical grounds (ECF No. 134). ECF No. 140 (IPP opposition); ECF No. 147 (Defendants' reply).

9.    **Second Motion.** In parallel, Defendant Synta Canada filed a motion to dismiss for failure to state a claim and lack of personal jurisdiction on January 20, 2021. ECF No. 135. This motion was not decided; the Court entered the parties' joint stipulation permitting IPPs to conduct limited jurisdictional discovery, including a Rule 30(b)(6) deposition, requests for production of documents, and interrogatories, on February 5, 2021. ECF No. 139. On March 25, 2021, two weeks before the date of the Rule 30(b)(6) deposition, Synta Canada filed a notice withdrawing its motion to dismiss only as to the arguments regarding lack of personal jurisdiction. ECF No. 160. On May 17, 2021, IPPs filed their opposition to Synta Canada's remaining motion to dismiss arguments. ECF No. 175.

10.    The Court took all the above motions under advisement without oral argument and on June 2, 2021, issued an order granting in part but denying in bulk each of the motions. ECF No. 177. Subject to the order and several stipulations, IPPs filed the Second Amended Consolidated Class Action Complaint on August 31, 2021. ECF No. 197.

11.    **Third Motion.** On October 12, 2021, Defendants filed a motion to dismiss the newly amended complaint on the grounds of statute of limitations and failure to state a claim,

specifically challenging all allegations related to conduct that occurred prior to 2013. ECF No. 215. Defendants, on the same day, also filed a motion to strike certain paragraphs of the Second Amended Consolidated Class Action Complaint. ECF No. 216; ECF Nos. 224 & 225 (IPPs' opposition). Defendants filed replies in support of their motions on January 10, 2022. ECF Nos. 229 & 230 (reply).

12.    On March 15, 2022, IPPs moved for leave to file a Third Amended Complaint to add new allegations based on Defendants' recently produced documents. ECF No. 244. On March 18, 2022, the Court granted IPPs' motion and terminated the pending motions as moot. ECF No. 246. IPPs filed the Third Amended Consolidated Class Action Complaint on March 25, 2022, which included substantial, additional allegations of anticompetitive conduct pre-2013. ECF No. 251.

13.    **Fourth Motion.** On April 28, 2022, Defendants again moved to dismiss IPPs' complaint. ECF No. 261; ECF No. 263 (IPPs' Opposition); ECF No. 268 (Defendants' reply). The Court issued an order taking the pending motion to dismiss under advisement without oral argument on November 1, 2022. ECF No. 291. On December 5, 2022, subject to a stipulation with Defendants that left the April 28, 2022 motion pending, IPPs filed the Fourth Amended Consolidated Class Action Complaint to add an additional putative Class Representative. ECF No. 300.

### c.    Discovery

14.    The parties vigorously contested discovery in this litigation. The parties engaged in extensive motion practice, including motions regarding entry of protective, discovery, and scheduling orders, and at least fourteen discovery dispute briefs. Motion practice on these issues typically followed weeks or months of meeting and conferring between the parties, sometimes involving consultants.

15.    IPPs served their original written requests for discovery in August 2020. Plaintiffs served on Defendants at least 140 document requests and 18 interrogatories. IPPs also issued over 30 subpoenas to non-parties and obtained substantial structured data regarding these intermediaries' direct purchases of telescopes from the Defendants and their sales to the IPPs. IPPs engaged in this non-party discovery to demonstrate "pass through" and economic harm and identify settlement

class members. IPPs conducted extensive discovery negotiations with Defendants, including weekly meet-and-confers, on topics ranging from (1) production of documents and transactional data, (2) the identification of appropriate document custodians, (3) the use of search terms, (4) the completeness of discovery responses, and (5) deposition scheduling. IPPs conducted similar extensive discovery efforts with non-parties to obtain pass-through data critical to the case and IPP class member data helpful for settlement administration.

16.    IPPs also reviewed a significant portion of more than 3.9 million documents Defendants produced, and voluminous electronic transactional and cost data from Defendants and non-parties. Because the millions of documents produced included many Chinese language documents, IPPs retained Chinese language specialists and purchased Chinese-English translation software for efficient document review and analysis.

17.    IPPs defended 23 class representative depositions, largely in person – a substantial number for a class case. Additionally, IPPs took depositions of Defendants' senior executives, including Celestron's CFO, Paul Roth, whose testimony helped IPPs to determine the availability of transactional data, and Celestron's CEO Corey Lee, as detailed further below. The depositions required obtaining certified translations of numerous documents.

18.    Contested discovery issues between the parties that necessitated motion practice included, but were not limited to: (1) search terms, (2) production of relevant and non-privileged documents, (3) production of documents improperly withheld as privileged, (4) collection and production of transactional and costs data, (5) proper responses to interrogatories, and (6) deposition scheduling.

ii.    <u>Discovery Orders</u>

19.    On February 10, 2021, the parties submitted a joint letter brief regarding entry of a protective order. ECF No. 141. The disputes concerned whether a non-producing party could designate as confidential documents produced by another party and the ability of Class Representatives to access documents designated as highly confidential or attorneys' eyes only. *Id*. Prior to filing the joint letter, the parties met and conferred on the disputed topics and the protective order generally on January 25 and February 3, 2021. *Id*.

20.    The parties presented argument before Magistrate Judge DeMarchi on March 2, 2021. ECF No. 150. The court issued an order the same day, modifying the proposed protective order as agreed to during the hearing as to designations of documents produced by other parties and accepting Defendants' proposed modifications regarding documents designated as highly confidential or attorneys' eyes only. ECF No. 152.

21.    On March 24, 2021, after multiple meet-and-confers with DPPs and Defendants, all parties filed a joint stipulation regarding discovery. ECF No. 159. The stipulation covered protocols for translation of documents and at depositions, for depositions taken remotely, email service, and a protocol for modifications to time limits for depositions. *Id*.

ii.    Documents and Depositions

22.    **Discovery Coordination.**    On April 5, 2021, the parties filed two separate joint letters regarding discovery issues. ECF Nos. 161 & 162. One letter addressed general issues regarding coordination of discovery. ECF No. 162. The other letter addressed deposition notices served unilaterally by DPPs. ECF No. 161. In the letters, and throughout the litigation, IPPs emphasized their commitment to working collaboratively to coordinate discovery schedules. Prior to filing the letters, the parties met and conferred on March 31, 2021. *Id*. On April 13, 2021, Magistrate Judge DeMarchi held a hearing via Zoom and issued an order requiring the parties to confer further and submit a coordinated discovery plan by April 23, 2021. ECF Nos. 164 & 165. The court ordered, on April 20, 2021, that DPPs' depositions be withdrawn and again instructed the parties to coordinate on all aspects of discovery. ECF No. 168.

23.    On April 22, 2021, the parties filed a request for an additional week to meet and confer on the coordinated discovery schedule (ECF No. 169), which the court granted (ECF No. 170). The parties submitted a joint letter on April 30, 2021, detailing their proposed coordinated discovery schedule and raising a dispute regarding the location of Rule 30(b)(6) depositions. ECF Nos. 171 & 171-1. Based on efficiency concerns, Plaintiffs argued that 30(b)(6) deposition should presumptively take place within the Northern District of California. *Id*. Defendants argued that the parties should meet and confer regarding location no less than 21 days before the scheduled deposition date. *Id*. Prior to filing the proposed discovery schedule, the parties met and conferred

regarding the proposal on April 26 and 27, 2021. ECF No. 171. The proposed stipulated discovery order detailed agreement on the discovery schedule generally, coordination of written discovery Rules 31, 33, 34, and 36, a fact deposition under Rule 30(b)(1), translation of documents and depositions, remote depositions, and time limits of depositions. ECF No. 171-1.  On May 4, 2021, Magistrate Judge DeMarchi issued an order stating that Rule 30(b)(6) depositions of party witnesses would presumptively occur in the Northern District and instructing the parties to submit an amended discovery proposal reflecting the court's order by May 10, 2021. ECF No. 172. On May 11, 2021, the court approved the parties amend stipulated order regarding discovery. ECF No. 174.

24.    **Destruction of Synta Tech and Suzhou Synta Documents.**  The parties continued to meet and confer regarding search terms and custodians for document requests. During this phase, the parties requested and received multiple extensions of various discovery related deadlines. ECF Nos. 179, 186, & 190. On May 26, 2021, during a recorded meet-and-confer, counsel for the Defendants informed Plaintiffs that Synta Technology Corp and Suzhou Synta Optical Technology Co. Ltd. destroyed or lost all custodial documents during the companies' dissolution in 2016. ECF No. 198. Plaintiffs served a 30(b)(6) deposition notice regarding the document destruction on July 2, 2021. *Id*. On September 1, 2021, the parties filed a joint discovery letter brief regarding the 30(b)(6) deposition topics, timing, and location. *Id*. Plaintiffs filed two additional joint letter briefs on September 2, 2021. ECF Nos. 199 & 200. Specifically, Plaintiffs sought to question Synta Tech and Suzhou Synta regarding employee Joyce Huang and the issues surrounding the destruction of documents. ECF No. 198. IPPs also proposed a protocol for the deposition to occur in compliance with Taiwan's COVID-19 quarantine requirements, but Defendants refused to agree to a set timeline. *Id*.

25.    On September 13, 2021, Magistrate Judge DeMarchi issued an order allowing Plaintiffs to take the 30(b)(6) deposition on the disputed topics. ECF No. 201. The order also urged the parties to be mindful of public health concerns but cautioned against using them as an excuse to delay the timely production of witnesses. *Id*. On December 2, 2021, Plaintiffs requested via email that Defendants identify the individuals whom they intended to designate. ECF No. 237.

Defendants refused to do so. *Id.* Plaintiffs filed a joint discovery letter on February 9, 2022, regarding Defendants' failure to identify the person or country of residence of the designated 30(b)(6) witness. *Id.* On February 16, 2022, the Magistrate Judge DeMarchi issued an order requiring Plaintiffs to first notify Defendants of possible dates and whether the 30(b)(6) depositions would be in person or by Zoom and giving Defendants 14 days to identify witnesses and note any possible travel restrictions. ECF No. 239.

26.    **Unauthorized Use of Technology-Assisted Review.**    The parties field a joint discovery letter brief regarding Defendants' use of technology-assisted-review ("TAR") in violation of the ESI Order on September 13, 2021. ECF No. 202. From March 27 to August 4, 2021, the parties conducted at least fourteen meet-and-confers regarding search terms and custodians. ECF No. 202-6. Defendants had only produced 53 pages of documents as of the letter brief's filing, despite written discovery pending for over eleven months and the deadline for substantial completion less than a month away. ECF No. 202. After a hearing, Magistrate Judge DeMarchi issued an order requiring the parties to further meet-and-confer on the issues and submit any remaining disputes concerning search terms, TAR, and related deadline extensions by October 26, 2021. ECF No. 209. On October 27, 2021, Magistrate Judge DeMarchi approved the parties' stipulated order regarding production of documents. ECF No. 220. The stipulated order required Defendants to run search terms without TAR and make a substantial document production by November 15, 2021 and complete transactional data production by December 1, 2021. *Id.* Additionally, the order provided phased substantial completion deadlines to produce documents by various custodians. *Id.* All responsive non-privileged documents had to be produced by February 15, 2022. *Id.*

27.    **Motion to Compel Interrogatory Response.**    On March 21, 2022, the parties filed a joint discovery letter brief regarding Defendants' failure to properly respond to Plaintiffs' interrogatory on Defendants' decision to discontinue business operations and destroy records. ECF No. 247. Plaintiffs repeatedly tried in good faith to reach a sensible agreement with Defendants regarding their response before filing a letter brief. *Id.* On February 11, 2022, Plaintiffs offered to agree to an extension to respond to the interrogatory provided Defendants would fully respond and

not simply object, but Defendants refused. *Id*. Defendants served only objections to the interrogatory on February 17, 2022. *Id*. After a further meet-and-confer on the issue on February 28, 2022, Defendants again refused to fulsomely respond to the interrogatory, but suggested they would further discuss the issue internally and respond by March 4, 2022. *Id*. Plaintiffs received no response and instead Defendants pivoted to an argument regarding duplicative discovery. *Id*. On May 25, 2022, Magistrate Judge DeMarchi issued an order requiring Defendants to provide substantive responses to the interrogatory by June 8, 2022. ECF No. 262.

28. **Scheduling Order.** In an effort to streamline the litigation, on July 26, 2022, IPPs filed a motion for entry of a scheduling order. ECF No. 269. Discussions and meet-and-confers regarding case scheduling occurred regularly over the years of litigation, but without agreement on an omnibus schedule for case deadlines. *Id*. On June 2, 2022, IPPs proposed a case schedule to Defendants. *Id*. Despite IPPs' repeatedly following up and receiving assurances from Defendants that they would provide comments and edits, Defendants never sent the promised counterproposals. *Id*. IPPs' motion provided suggested case deadlines through summary judgment briefing. *Id*. By contrast, Defendants opposed setting any case deadlines until the Court ruled on the pending motion to dismiss. ECF No. 271. The parties met and conferred via Zoom on June 17, 2022 and exchanged numerous emails on scheduling issues in an effort to avoid the need for judicial intervention. *Id*. These efforts did not resolve the outstanding issues, and, on August 16, 2022, IPPs filed a reply to their motion, urging the Court to avoid delay in setting a case schedule. ECF No. 272. The Court granted IPPs' request and issued a scheduling order on September 30, 2022, setting case deadlines through class certification. ECF No. 276.

29. **Chinese Search Terms.** On September 28, 2022, the court adopted the parties' stipulation regarding Chinese search terms, providing an iterative protocol for running the terms, producing relevant documents, and sharing certain costs. ECF No. 275.

30. **Deposition Scheduling.** Issues regarding deposition locations and dates continued to be an issue throughout the litigation. The Court held a joint status conference on February 23, 2023, at which it ordered the parties to meet and confer regarding the timing and location of depositions. On March 8, 2023, the parties filed a joint status report detailing their continuing

disagreements. ECF No. 309. IPPs stated that after much debate and negotiation, Defendants had agreed to the following: (1) depositions could be conducted in person or via remote means, at the election of the requesting party; (2) Defendants would make their four witnesses residing in Asia available for depositions in Taiwan, with the rest of Defendants foreign witnesses made available in the Northern District; and (3) all Defendants' United States-based witnesses, and the named plaintiffs, would be deposed close to where they live. *Id*. IPPs also submitted proposed dates for all of the named plaintiffs and argued that Defendants' depositions should be sequenced in a manner to ensure that plaintiffs had custodial documents before taking the depositions. *Id*. On April 7, 2023, the Court issued an order that: (1) Defendants' Canadian witnesses would be deposed in the Northern District; (2) Defendants' witnesses located in Asia would be deposed in Taiwan with depositions scheduled so that they could all be taken in a single trip; and (3) Plaintiffs' United States-based witnesses would be deposed remotely or in location close to where they live. ECF No. 329. At the Court's request, the parties filed a joint status report on July 31, 2023, detailing the outstanding requests for deposition dates. ECF No. 358. The Court issued an order on August 1, 2023, setting deadlines for: (1) notices of Rule 30(b)(6) depositions and their topics to be served; (2) reasonable estimates of the amount of time needed for 30(b)(6) and 30(b)(1) testimony; and (3) providing available dates for depositions. ECF No. 361. Additionally, the Court required the parties to confer to account for previously-made travel arrangements to Taiwan and San Francisco. *Id*. The parties, consistent with these proceedings, filed a joint report updating the court on the status of deposition scheduling on August 16, 2023. ECF No. 369. On August 24, 2023, the parties filed yet another joint report, updating the Court about agreed deposition dates and depositions without agreed dates. ECF No. 374. The Court issued an order holding that depositions with agreed dates must proceed as described unless *all parties* agreed to change them. ECF No. 377. The Court, as to four remaining witnesses for whom DPPs had a scheduling conflict, instructed the parties to meet and confer to find new deposition dates. *Id*. On September 1, 2023, the parties filed a joint status report stating that they had come to agreement on new deposition dates and locations for those four witnesses. ECF No. 380.

i.  Transactional Data

31.    Data discovery presented another pitched battleground throughout this litigation. On March 22, 2021, IPPs issued their first request for Defendants' transaction-level sales data, after which the court approved a stipulation ordering production of all such data before December 1, 2021. *See* ECF No. 277. On October 11, 2022, the parties filed a joint discovery letter brief regarding Defendants' failures to timely produce the requested transactional data. *Id*. Issues with Defendants' data included years of missing data for certain defendants, no data at all from one defendant, and massive data format issues with others. *Id*. The letter brief detailed the great lengths Plaintiffs undertook to get Defendants to produce the requested data, including the numerous instances where Defendant promised to have a client representative attend a meet-and-confer, only to have Defendants cancel shortly before the scheduled meeting. *Id*. To resolve these issues, Plaintiffs proposed a phased process under which Defendants would first answer five preliminary questions regarding their transactional data and requested a date certain by which they must complete the production. *Id*. Plaintiffs also requested the court order that the parties all attend regular weekly meet-and-confers and monthly status conferences with the court until the resolution of all outstanding discovery matters. *Id*. After a hearing on November 8, 2022, the Court issued an order the next day requiring Defendants to produce Celestron transactional data for the relevant period without filters, produce samples of the physical bound records for Suzhou Synta, and provide the requested information in writing regarding each defendants' data, all by November 30, 2022. ECF No. 293.

32.    **Order re Special Master and Transactional Data Meet-and-Confers.**    On November 9, 2022, Magistrate Judge DeMarchi issued a second order inquiring about the appointment of a special master to oversee discovery and requesting the parties meet and confer to agree on a day and time for weekly meet-and-confers regarding discovery disputes. ECF No. 294. The parties filed a response on November 21, 2022, with IPPs detailing their previous efforts to attain the requested transactional data:

> Between March and August 2022, the parties exchanged more than two dozen letters and emails about Defendants' production of transactional data. Between July 5 and August 5, Plaintiffs sent no fewer than 10 communications to Defendants (mostly without a response) about the issue and requested to meet and confer. In

August alone, once Defendants agreed to meet and confer about this issue, Defendants proposed that a client representative join them for a meet and confer with Plaintiffs on August 10, 15, 22, and 31—only to inform Plaintiffs each time that the client representative was unavailable, sometimes shortly before the scheduled call. During the parties' call on August 31, 2022, Defendants disclosed for the first time that they had produced data with filters applied and that instead of answering Plaintiffs' questions, they would simply reproduce the data without filters. But Defendants never did what they promised despite repeated requests from Plaintiffs, and repeatedly delayed briefing the issue to the Court.

ECF No. 296.

33.     On November 30, 2022, the court issued an order declining to appoint a special master. ECF No. 298.

34.     **Hearing re Production of Transactional Data.**  On April 5, 2023, Magistrate Judge DeMarchi held a hearing on DPPs' motion to enforce the court's discovery order regarding production of transactional data, at which IPPs participated. The court issued an order on April 5, 2023, reserving the question of whether to impose sanctions on Defendants, and requiring the parties to meet in person no later than April 19, 2023 to discuss issues with Defendants' production of transactional data. ECF No. 325.

35.     **Further Meet-and-Confers re Transactional Data.**  After a postponement of the meeting due to COVID-19 exposure, the parties, along with technical and data experts, met and conferred in person on May 9, 2023, in San Francisco. ECF No. 327. Plaintiffs sent Defendants a list of 25 transactional data questions prior to the meeting to facilitate discussion and had an initial virtual meeting on April 24, 2023. On May 15, 2023, the parties filed a joint status report about production of Defendants' transactional data and progress made during the meet-and-confers. ECF No. 338. The joint status report detailed thirteen items Defendants agreed to produce and six additional issues on which Defendants promised to investigate further. *Id*. Defendants agreed to produce eleven of the thirteen items and respond to the six additional questions by May 26, 2023, subject to certain contingencies. *Id*. During the meetings, Plaintiffs also raised concerns regarding production of sales and costs data from defendants other than Celestron, including defendants Pacific Telescope, Olivon, Olivon USA, and Nantong Schmidt. *Id*.

36.     On June 7, 2023, the court issued an order requiring the parties to file a further joint status report regarding defendants' production of transactional data. ECF No. 343.

37.     On June 14, 2023, the parties filed the requested status report. ECF No. 344. IPPs confirmed that Defendants provided satisfactory responses to their requests and that IPPs and Defendants met and conferred again with Defendants' data expert on June 12, 2023. *Id*. Defendants also confirmed that transactional data for all defendants had been produced, but that it would supplement defendant Olivon's data "in order to better organize the previously produced" data. *Id*. Defendants made the supplemental Olivon data production on June 1, 2023. *Id*. In the joint report, IPPs stressed to the court that, while no issues were ripe at the time, based on IPPs' analysis, additional transactional data likely existed for at least Nantong Schmidt related to cost data, sales data to entities other than Celestron and Orion, and product descriptions. *Id*. The parties agreed to work together to provided IPPs with finality on the transactional data issue. *Id*.

38.     **<u>Additional Sources of Transactional Data.</u>**  On June 15, 2023, the court issued an order requiring Defendants to "promptly complete their investigation of the additional data sources identified in the status report, and must promptly complete their production of the additional data that they indicate in the report they will produce to plaintiffs." ECF No. 346.

39.     On July 30, 2023, the parties filed a third joint status report regarding transactional data detailing that the parties still had disagreements about the fulsomeness of Defendants data production and responses to questions. ECF No. 347. The remaining open issues included SAP data and Atlas e-commerce data, Nantong Schmidt data, and whether Defendants general ledger constituted "transactional data" as defined by the requests for production. *Id*.

40.     On July 18, 2023, the court held a hearing and issued an order on Defendants' production of transactional data. ECF No. 350. The court required Defendants to complete their production of Nantong Schmidt cost data for all U.S. sales during the relevant time period, update their response to IPPs' interrogatory about the same, and identify by bates number Celestron's price component reports that could be used to calculate margins, all by July 21, 2023. *Id*.

41.     On July 29, 2023, the parties filed another joint status report on Defendants' transactional data. ECF No. 355. IPPs again detailed Defendants' failure to make good on their

1   court-ordered obligations regarding the Nantong Schmidt data, including supplementing their

2   response to the interrogatory, and Celestron margin data. *Id*.

3       42.    On July 31, 2023, the court issued an order requiring Defendants to file a copy of

4   their most recent supplemental response to IPPs' relevant interrogatory by 4:00PM that day. ECF

5   No. 356.

6       43.    After holding another status conference on transactional data, the court issued an

7   order on August 1, 2023, requiring Defendants to: (1) make all the source material from which

8   Nantong Schmidt prepared the summary of costs data available to plaintiffs for review by August

9   25, 2023; (2) supplement their response to IPPs' interrogatory to address all its subparts by August

10  14, 2023; (3) by August 4, 2023, produce samples of Celestron's general ledger; or (4) identify

11  documents from which margins could be obtained by August 10, 2023. ECF No. 362.

12      44.    **Further Productions and Deposition of Celestron CFO Paul Roth.**   Over the

13  next weeks, Defendants made further productions as required and a witness available to answer

14  questions about the data and on August 7 & 8, 2023, Plaintiffs deposed Celestron's CFO, Paul

15  Roth. On August 16, 2023, the parties submitted another joint status report. ECF No. 370. At his

16  deposition, Mr. Roth testified that Celestron had provided all of its transactional data, including the

17  competent parts at issue, to counsel for the Defendants. *Id*. Plaintiffs, however, could not question

18  Mr. Roth about much of the general ledger data, because Defendants did not produce it until *after*

19  the deposition. *Id.* On August 11, 2023, Plaintiffs asked Defendants to confirm whether they

20  produced information identified by Mr. Roth, and, if so, to identify it by bates number. *Id*. On the

21  due date of the joint status report, Defendants produced still more account identifying information

22  linking accounts to the Celestron general ledger. *Id*. Defendants also refused to provide Celestron's

23  IT expert for a meeting with plaintiffs' data experts to streamline the efforts. *Id*. Consequently, IPPs

24  requested that the court order Defendants to identify or produce all the repeatedly requested data

25  regarding profit margins, and to confirm that they are not withholding any further ledger or

26  subledger transaction data. *Id*. Plaintiffs also raised continuing deficiencies with Defendants'

27  responses and productions regarding Nantong Schmidt cost data. *Id*.

28

45.    **Orders re Source Material for Transactional Data.**  The court issued a further order on transactional data on August 17, 2023, again demanding that Defendants (1) make the source material from which defendant Nantong Schmidt prepared the summary of cost data available for review and (2) lodge the transcripts from Mr. Roth's deposition, highlighted to illustrate the points on which the parties disagreed. ECF No. 372. On August 29, 2023, after a hearing on the issue on the same day, the court ordered Defendants to (1) explain what the 208 manually-prepared data spreadsheets for Nantong Schmidt contained, (2) identify by bates number Celestron's relevant ledger data, and (3) provide an employee knowledgeable in the data for questioning, or other put up another witness for a deposition because Defendants failed to produce the data before Mr. Roth's. ECF No. 378.

46.    IPPs did not participate in any further disputes regarding transactional data after reaching an agreement in principle with Defendants to settle the case on September 7, 2023.

ii.  Privilege Issues

47.    IPPs also relied on motion practice regarding Defendants' privilege claims. On October 28, 2022, the parties filed two joint discovery letter briefs regarding documents withheld by Defendants as privileged and other issues related to Defendants' privilege logs. ECF Nos. 287 & 288. Specifically, Plaintiffs argued that Defendants improperly withheld and needed to produce the following categories of documents: (1) third-party communications and documents withheld on the basis of attorney-client privilege; (2) communications and documents withheld on the basis of "tax privilege"; (3) communications and documents subject to Defendants' clawback demands; and (4) attachments to attorney-client emails withheld on the basis of attorney client privilege. ECF No. 287. Plaintiffs also argued that Defendants need to supplement their privilege logs to provide certain categories of information, including: (1) author and recipients of the communication or document being withheld; (2) the names of the attorneys that provided the alleged legal advice or work product in the document being withheld, and the entities or persons that those attorneys represented; and (3) the subject matter addressed in the communication or document being withheld. ECF No. 288. Prior to filing the joint brief, the parties met and conferred over the course of six months at least four separate times via Zoom and exchanged emails at least ten times on the

issues. *Id*. The court issued an order on November 29, 2022, granting and denying in part Plaintiffs' requested relief. ECF No. 297. The court required Defendants to remove all tax documents from their privilege log, as well as amend the log to make clearer the nature of documents withheld and the recipients of the documents and submit certain documents of in camera review. *Id*.

48.    On March 1, 2023, Plaintiffs filed a motion to compel the production of documents Defendants continued to withhold as privileged, in violation to the court's November 29, 2022 order, including "improperly withheld Third-Party Communications and Attachments . . . ." ECF No. 305. Defendants opposed the motion on March 15, 2023 (subject to a stipulation to extend the deadline to respond) (ECF No. 322), and Plaintiffs filed a reply on March 30, 2023. ECF No. 323. The court issued an order on April 25, 2023, requiring Defendants submit documents for in camera review. ECF No. 332. On April 28, 2023, Defendants complied with the court's order and submitted the requested documents for review. ECF No. 333. The court issued another order on July 20, 2023, requiring Defendants to file an amended privilege log only covering the 37 documents submitted for review. ECF No. 353.

### iii.  Non-Party Discovery

49.    IPPs conducted expansive non-party discovery for information and transactional data regarding the retail telescope market. Starting in the summer of 2021, IPPs issued at least 30 Rule 45 subpoenas to retailers that sold commercial telescopes to potential class members.

50.    Resolving objections to some of the subpoenas required court intervention. On January 4, 2022, IPPs filed a joint letter brief to compel Orange Count Telescope ("OCT") to produce its transactional data reflecting purchases of telescopes and accessories from Defendants and Co-Conspirators and retail sales of such products. ECF No. 227. During the pendency of the subpoena, IPPs and OCT met and conferred on August 19, 2021 to discuss the data in OCT's possession. *Id*. OCT served untimely objections on August 27, 2021 and informed IPPs that it could not meet and confer again until October 5, 2021. *Id*. Following the October 5, 2021 meet-and-confer, IPPs proposed to limit the scope of the subpoena by agreeing to cut the time period, the products for requested data, and other compromises regarding data format. *Id*. OCT, however, refused to budge on their original objections, forcing IPPs to file the motion to compel. *Id*.

Following a January 25, 2022 hearing on the motion (ECF No. 232), the court issued an order that day compelling production of limited to data "readily accessible in electronic form" that showed telescopes and accessories sold by Defendants and Co-Conspirators, dating back to January 1, 2003 or whatever date data became available. ECF No. 235. OCT and IPPs exchanged emails over the following weeks regarding the state of OCT's data. ECF No. 238 (Feb. 15, 2022 joint letter). OCT indicated that it did not maintain structured electronic data at all and that it would have to recreate it by hand. *Id*. By order February 16, 2022, the court required OCT to provide a sworn declaration regarding OCT's data by February 28, 2022. ECF No. 241.

51.    IPPs served a subpoena on non-party Levenhuk, Inc., a manufacturer customer of the Defendants in early February 2023. On March 7, 2023, IPPs and Defendants filed a joint discovery letter brief regarding the subpoena. ECF No. 307. Defendants moved to quash the subpoena, or in the alternative limit its scope. *Id*. IPPs argued that they needed Levenhuk's data to conduct overcharge pass-through analysis. *Id*. On March 7, 2023, the court issued an order denying Defendants' motion because they failed to identify "any personal right or privilege that is implicated by IPPs' document subpoena" and that the subpoena did not violate any of the court's prior orders regarding the geographic scope of discovery. *Id*.

52.    In total, IPPs collected transactional sales data from 25 non-party entities, including large telescope retailers like Amazon and Cloud Break Optics, and small telescope retailers like Adorama and Costco. IPPs' experts used this data to conduct pass-through and damages analysis, and the data now facilitates the notice and claims process.

### d. Settlement Negotiations and Mediation

53.    The parties reached the Settlement Agreement after months of contentious arm's-length negotiations, including bilateral discussions and multiple mediation sessions overseen by Hon. Suzanne Segal, a former Magistrate Judge of the Central District of California. The first mediation occurred on July 20, 2021, without reaching a resolution. After a second mediation on September 6, 2023, the parties accepted Judge Segal's mediator's proposal and executed an agreement in principle to resolve the matter on September 7, 2023. The parties worked diligently to draft and execute the Settlement Agreement After reaching the agreement in principle.

54.    On September 8, 2023, IPPs filed a notice of settlement and scheduling stipulation, requesting that the Court stay all deadlines and discovery in the IPP action, which the Court granted on September 19, 2023. ECF Nos. 384 & 386.

55.    The parties worked diligently during the stay to address various complicated and sensitive issues particular to these defendants while finalizing the terms and language of the Settlement Agreement. Ironing out the specifics of the Settlement Agreement was complex, covering the interplay between several corporate families across multiple continents. Aside from the monetary consideration that had already been agreed to in principle, there were several additional provisions in the long-form agreement that were contested and took substantial time and effort to work through.

56.    On August 31, 2024, the parties executed the Settlement Agreement.

57.    The Settlement Agreement does not release claims regarding named Defendant Ningbo Sunny or any of its officers, affiliates or related entities in their capacity acting on behalf of Ningbo Sunny.

## II.    Preliminary Approval and Notice

58.    On September 16, 2024, IPPs filed a motion for Preliminary Approval of Settlement and Issuance of Notice, along with accompanying attorney and claims administrator declarations. ECF Nos. 389, 390, & 391. The Court held a hearing on the motion on October 31, 2024 (ECF No. 393), and on November 4, 2024, issued an order granting preliminary approval, authorizing the issuance of the notice program, approving Verita as the claims administrator, and setting a schedule for final approval, a fairness hearing, and motions for attorneys' fees and costs. ECF No. 397.

59.    Verita issued the notice as ordered on December 13, 2024.

## III.    Lodestar

60.    As of December 1, 2024, Class Counsel and their staff dedicated over 24,055 hours and $14,550,720 in lodestar to litigating this case as of the filling of this motion, resulting in a blended average for counsel and staff of $709 at current rates. The requested fee of $10,666,667 therefore represents a .73 negative multiplier.

61.     Class Counsel excluded reported time in the exercise of billing discretion. First, this reported lodestar data does not include any time of attorneys who fewer than 20 hours. All staff and attorney time devoted to the present motion for attorneys' fees, costs, and services awards has also been excluded. By the time of final approval hearing on April 3, 2025, Class Counsel's reasonable lodestar will have increased due to the time spent briefing and arguing final approval.

62.     Each firm carefully reviewed their time at the time of submission to reduce inefficient or duplicative entries.

63.     As discussed above, Class Counsel worked efficiently to litigate this difficult, complex, and contentious international case to minimize duplicative work and achieve the best possible result for the class. Attorneys and staff employed by Class Counsel performed all of the work for which Class Counsel seek fees.

64.     For over four years, Class Counsel litigated this case on a pure contingency basis and advanced all professional time and necessary litigation expenses. Class Counsel assumed tremendous risk litigating against a largely foreign cartel that may have proven difficult against which to collect any judgment.

65.     As detailed in the motion to appoint lead counsel, each of the Class Counsel firms have vast experience gathered over decades of litigating antitrust class action, which each firm brought to bear in achieving this excellent result for the Class. *See also* Amended Motion to Appoint Lead Plaintiff and Lead Counsel, ECF No. 38, attachments 1-10 (declarations and firm resumes detailing antitrust experience).

66.     A table detailing Susman Godfrey LLP's time is attached here as Exhibit A.

67.     A table detailing Lieff, Cabraser, Heimann & Bernstein LLP's time is attached here as Exhibit B.

68.     A table detailing Cotchett, Pitre & McCarthy LLP's time is attached here as Exhibit C.

**IV.     Unreimbursed Costs and Litigation Expenses**

69.     As of the filing of this Motion, IPPs' current unreimbursed litigation costs are $771,461. Based on Class Counsel's decades of experience, all costs and litigation expenses were necessary to effectively litigate this case. These costs include:

- $574,135 for expert and consultant costs;
- $99,417 for document review platform hosting costs;
- $15,103 for document translation costs;
- $37,644 for court reporter and other deposition-related costs;
- $9,816 for travel costs;
- $8,500 for mediation costs; and
- $26,846 for other miscellaneous costs, including, court filing fees, mail, legal research, bank fees and process service.

## V.    Expert Analysis

70.     IPPs retained Dr. Russell Mangum, the Executive Vice President at Cirque Analytics, as an expert to research and calculate class-wide damage models. This retention required researching and developing alternative models due to Defendants' unwillingness to provide transactional data and revising those models once Defendants did produce transactional data. Additionally, Dr. Mangum analyzed third party retail transactional data obtained by counsel through discovery. Dr. Mangum and his associates were preparing their expert reports when the parties reached the agreement to settle the case. After Defendants produced some of this data in 2023, Plaintiffs' economist and his associates conducted multiple regressions and other analyses to support class certification, liability, and damages.

71.     Further, Dr. Mangum evaluated the relevant commerce based on sales data provided through discovery from Celestron, Orion, and Meade. His sales estimates of Telescopes to IPPs between January 1, 2005, and September 6, 2024, totaled approximately $636 million. Based on evaluation of third-party transaction data, Dr. Mangum calculated that the size of the damages class as approximately 4 million customers. Dr. Mangum calculated class wide damages based on overcharges estimated from multiple regression analyses, informed by thorough literature review, and from studying the court-approved methods of Dr. Douglas Zona from the *Orion* litigation. In

sum, Dr. Mangum calculated that damages for the IPP Class amounted to approximately $29 million to $32 million (based on an overcharge of five percent and the pass-through rate of between 90 percent and 100 percent), and could have been as high as $165 million (based on an overcharge of 26 percent and pass-through rate of 100 percent).

72.    IPPs also hired Dr. Richard Youngworth, a telescope industry expert with a Ph.D. from the University of Rochester and manufacturing experience as an engineer and research associate at Ball Aerospace & Technologies Corp. and Eastman Kodak, respectively. At the time of the mediation and settlement, Dr. Youngworth was researching and drafting an expert report detailing the manufacturing process of various consumer telescopes and offering an opinion on the ability of manufacturing defendants to produce each other's telescopes.

## VI.    Class Representatives

73.    The class representatives took an active role in this litigation and provided exemplary representation on behalf of the class. Class representatives assisted in many aspects of the litigation, including agreeing to serve as named Plaintiffs and undertaking the responsibilities that come with the role; reviewing and approving pleadings, briefs, and other court documents; staying in close contact with counsel throughout the litigation to monitor progress; preserving and diligently searching for documents and other sources of information relevant to their claims; meeting with counsel to prepare IPPs' extensive discovery responses, preparing and sitting for depositions, and carefully reviewing, considering, and approving the final Settlement Agreement.

## VII.    Conclusion

74.    We declare under the penalty of perjury that the foregoing is true and correct. Executed on this 9th day of January 2025, by Kalpana Srinivasan in Los Angeles, California; Adam J. Zapala in Burlingame, California; and Lin Y. Chan in San Francisco, California.

1

Kalpana Srinivasan

2     **SUSMAN GODFREY L.L.P.**

3

4     Lin Y. Chan

5     **LIEFF CABRASER HEIMANN &**
      **BERNSTEIN LLP**

6

7     Adam Zapala (Jan 9, 2025 19:39 EST)

8     Adam J. Zapala
      **COTCHETT, PITRE &**

9     **McCARTHY, LLP**

10    *Settlement Class Counsel for the*
      *Indirect Purchaser Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J. ZAPALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**

# **EXHIBIT A**

*IN RE TELESCOPES ANTITRUST LITIGATION*

| | |
|---|---|
| Firm Name: | **SUSMAN GODFREY, LLP** |

Reporting Period: _____ Inception Through 11/30/2024 _____

Categories:

1. Investigations; factual research
2. Draft discovery requests
3. Draft discovery answers/responses
4. Take depositions
5. Defend depositions
6. Discovery meet and confer
7. Document review
8. Draft pleadings, briefs and pretrial motions

9. Read/review pleadings, briefs, discovery, transcripts, etc.
10. Class certification/experts
11. Litigation strategy, analysis and case management
12. Settlement negotiations
13. Trial and trial preparation
14. Court appearance and preparation

TITLE:  (P) Partner
(A) Associate
(OC) Of Cousel
(SA) Staff Attorney
(PL) Paralegal

| ATTORNEYS (P, A, OC, SA) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | CUMULATIVE HOURS | HOURLY RATE | CUMULATIVE LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Thomas Boardman (OC) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9.30 | 0.80 | 95.60 | 48.80 | 56.30 | 46.30 | 7.80 | 0.00 | 0.00 | 264.90 | $850.00 | **$225,165.00** |
| Michael Gervais (P) | 56.50 | 0.00 | 0.00 | 8.00 | 0.00 | 38.80 | 1.30 | 98.00 | 167.20 | 3.50 | 72.60 | 14.00 | 0.00 | 2.30 | 462.20 | $850.00 | **$392,870.00** |
| Alejandra Salinas (A, P) | 176.90 | 23.20 | 14.90 | 0.00 | 12.80 | 105.90 | 427.50 | 559.40 | 36.3 | 39.30 | 173.10 | 5.10 | 0.00 | 108.50 | 1,682.90 | $850.00 | **$1,430,465.00** |
| Marc Seltzer (P) | 4.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.60 | 0.00 | 27.00 | 37.50 | 13.00 | 19.40 | 17.10 | 0.00 | 0.00 | 118.70 | $2,200.00 | **$261,140.00** |
| Kalpana Srinivasan (P) | 9.70 | 0.00 | 0.00 | 0.00 | 0.00 | 22.70 | 0.00 | 8.20 | 73.30 | 9.20 | 125.5 | 99.70 | 0.00 | 14.50 | 362.80 | $1,700.00 | **$616,760.00** |
| Brenda Adimora (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 502.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 502.60 | $350.00 | **$175,910.00** |
| Richard Friedl (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,082.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,082.00 | $400.00 | **$432,800.00** |
| Alex Kaminsky (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 91.1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 91.10 | $375.00 | **$34,162.50** |
| Nicolas Lopez (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 292.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 292.50 | $350.00 | **$102,375.00** |
| Carrie Roberts (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22.50 | $275.00 | **$6,187.50** |
| Robin Weinburgh (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 230.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 230.50 | $425.00 | **$97,962.50** |
| **SUB-TOTAL** | **247.20** | **23.20** | **14.90** | **8.00** | **12.80** | **177.30** | **2,650.80** | **788.20** | **363.10** | **121.30** | **436.90** | **143.70** | **0.00** | **125.30** | **5,112.70** | | **$3,775,797.50** |

| NON-ATTORNEYS (PL) | | | | | | | | | | | | | | | CUMULATIVE HOURS | HOURLY RATE | CUMULATIVE LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Simon DeGeorges (PL) | | | | | | | | | | | 117.00 | | | | 117.00 | $400.00 | **$46,800.00** |
| Nic Gamiz (PL) | | | | | | | | | | | 22.70 | | | | 22.70 | $250.00 | **$5,675.00** |
| **SUB-TOTAL** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **139.70** | **0.00** | **0.00** | **0.00** | **139.70** | | **$52,475.00** |

| GRAND TOTAL: | 247.20 | 23.20 | 14.90 | 8.00 | 12.80 | 177.30 | 2650.80 | 788.20 | 363.10 | 121.30 | 576.60 | 143.70 | 0.00 | 125.30 | 5,252.40 | | $3,828,272.50 |

# **EXHIBIT B**

*IN RE TELESCOPES ANTITRUST LITIGATION*

**Firm Name:**    **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**      **Reporting Period:**    Inception Through 11/30/2024

**Categories:**

1. Investigations; factual research
2. Draft discovery requests
3. Draft discovery answers/responses
4. Take depositions
5. Defend depositions
6. Discovery meet and confer
7. Document review
8. Draft pleadings, briefs and pretrial motions
9. Read/review pleadings, briefs, discovery, transcripts, etc.
10. Class certification/experts
11. Litigation strategy, analysis and case management
12. Settlement negotiations
13. Trial and trial preparation
14. Court appearance and preparation

| Name | Title | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | Cum. Hrs | Rate | Cum. Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LIN CHAN | PARTNER | 11.40 | 20.50 | 12.30 | 111.60 | 21.20 | 146.50 | 1.20 | 302.30 | 33.90 | 48.90 | 639.60 | 87.70 | 2.80 | 124.20 | 1,564.10 | $895.00 | $ 1,399,869.50 |
| ERIC FASTIFF | PARTNER | 0 | 0.60 | 4.10 | 0 | 0 | 0.30 | 0 | 20.40 | 3.40 | 9.60 | 19.20 | 7.70 | 0 | 5.20 | 70.50 | $1,210.00 | $ 85,305.00 |
| REILLY STOLER | PARTNER | 1.40 | 5.50 | 0 | 0 | 0 | 2.30 | 0 | 54.00 | 3.70 | 0 | 48.00 | 0 | 0 | 8.70 | 123.60 | $755.00 | $ 93,318.00 |
| ABRAHAM BARKHORDAR | ASSOCIATE | 49.50 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 50.20 | 0 | 0 | 0 | 99.70 | $370.00 | $ 36,889.00 |
| DANNA ELMASRY | ASSOCIATE | 0 | 0 | 0.70 | 0 | 0 | 0 | 0 | 37.10 | 3.00 | 0 | 0 | 0 | 0 | 0 | 40.80 | $470.00 | $ 19,176.00 |
| JON FOUGNER | ASSOCIATE | 33.30 | 125.00 | 147.30 | 30.40 | 1.20 | 125.80 | 77.30 | 343.90 | 139.20 | 34.30 | 372.10 | 0 | 4.10 | 23.40 | 1,457.30 | $615.00 | $ 896,239.50 |
| JAMES HERD | ASSOCIATE | 33.00 | 0 | 0 | 0 | 0 | 0 | 2,919.40 | 0 | 0 | 0 | 58.60 | 0 | 0 | 0 | 3,011.00 | $525.00 | $ 1,580,775.00 |
| CATHERINE HUMPHREVILLE | ASSOCIATE | 16.00 | 0.10 | 0 | 0 | 0 | 19.40 | 21.80 | 11.40 | 6.60 | 8.70 | 262.40 | 0 | 0 | 0 | 346.40 | $560.00 | $ 193,984.00 |
| KAREN JONES | ASSOCIATE | 0 | 0 | 0 | 0 | 0 | 0 | 2,209.50 | 0 | 20.50 | 0 | 0 | 0 | 0 | 0 | 2,230.00 | $525.00 | $ 1,170,750.00 |
| CELENA NELSON | ASSOCIATE | 0 | 20.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 20.00 | $500.00 | $ 10,000.00 |
| DEVIN WILLIAMS | ASSOCIATE | 4.00 | 2.60 | 0 | 16.60 | 21.90 | 49.30 | 14.30 | 12.70 | 19.10 | 5.30 | 234.20 | 1.60 | 0 | 0 | 381.60 | $530.00 | $ 202,248.00 |
| RICHARD ANTHONY | PARALEGAL | 0 | 0 | 0 | 0 | 0 | 0.60 | 126.60 | 0 | 0.20 | 0.40 | 7.90 | 0 | 0 | 0 | 135.70 | $535.00 | $ 72,599.50 |
| NIKKI BELUSHKO BARROWS | PARALEGAL | 3.20 | 1.80 | 0 | 0 | 0 | 0.60 | 11.50 | 4.80 | 5.60 | 0.90 | 0.50 | 0 | 0 | 0 | 28.90 | $535.00 | $ 15,461.50 |
| MARGIE CALANGIAN | PARALEGAL | 0 | 1.80 | 1.00 | 0 | 0 | 0 | 0 | 16.90 | 0 | 0 | 368.80 | 1.00 | 0 | 0 | 389.50 | $535.00 | $ 208,382.50 |
| ANTHONY GRANT | PARALEGAL | 0 | 2.30 | 1.10 | 0 | 0 | 11.50 | 179.50 | 0 | 0 | 0 | 4.40 | 0 | 0 | 0 | 198.80 | $535.00 | $ 106,358.00 |
| FAWAD RAHIMI | PARALEGAL | 0 | 0 | 0 | 0 | 0 | 0 | 0.80 | 3.80 | 0 | 0 | 163.90 | 0 | 0 | 0 | 168.50 | $535.00 | $ 90,147.50 |
| OMAR RIVERA | PARALEGAL | 4.00 | 0 | 24.50 | 0 | 0 | 0 | 25.50 | 0 | 0 | 0 | 128.00 | 0 | 0 | 0 | 182.00 | $385.00 | $ 70,070.00 |
| DIVYA SUNDAR | PARALEGAL | 105.70 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 105.70 | $535.00 | $ 56,549.50 |
| MUNA TEXIER | PARALEGAL | 0 | 0 | 0 | 1.10 | 0 | 1.10 | 71.10 | 0 | 0 | 0 | 0.70 | 0 | 0 | 0 | 74.00 | $535.00 | $ 39,590.00 |
| BRIAN TROXEL | PARALEGAL | 0.40 | 2.40 | 15.50 | 87.90 | 15.00 | 5.00 | 33.20 | 49.60 | 56.20 | 6.80 | 359.20 | 0 | 0 | 12.00 | 643.20 | $510.00 | $ 328,032.00 |
| **TOTALS:** | | **287.10** | **182.60** | **209.50** | **250.60** | **59.30** | **362.80** | **5,702.80** | **841.90** | **312.40** | **115.40** | **2,727.20** | **98.00** | **6.90** | **173.50** | **7,780.90** | | **$ 6,708,745.00** |

# **<u>EXHIBIT C</u>**

***IN RE TELESCOPES ANTITRUST LITIGATION***
***TIME REPORT  -  (To be submitted on the 15th of every month)***

| | |
|---|---|
| **Firm Name:** | **COTCHETT, PITRE & McCARTHY, LLP**     **Reporting Period:**     Inception Through 11/30/2024 |

**Categories:**

| | | |
|---|---|---|
| 1. Investigations; factual research | 9. Read/review pleadings, briefs, discovery, transcripts, etc. | **TITLE:** |
| 2. Draft discovery requests | 10. Class certification/experts | (P)  Partner |
| 3. Draft discovery answers/responses | 11. Litigation strategy, analysis and case management | (A)  Associate |
| 4. Take depositions | 12. Settlement negotiations | (LC)  Law Clerk |
| 5. Defend depositions | 13. Trial and trial preparation | (SPL) Senior Paralegal |
| 6. Discovery meet and confer | 14. Court appearance and preparation | (PL) Paralegal |
| 7. Document review | | |
| 8. Draft pleadings, briefs and pretrial motions | | |

| ATTORNEYS (P, A) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | CUMULATIVE HOURS | HOURLY RATE | CUMULATIVE LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Joseph Cotchett (P) | 2.80 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32.60 | 0.00 | 0.00 | 0.00 | 35.40 | $950.00 | $33,630.00 |
| Adam Zapala (P) | 25.80 | 6.90 | 7.30 | 0.00 | 0.00 | 0.00 | 0.00 | 54.20 | 322.90 | 3.60 | 42.8 | 285.60 | 0.00 | 53.00 | 802.10 | $850.00 | $681,785.00 |
| Elizabeth Castillo (P) | 43.40 | 40.40 | 78.10 | 49.50 | 33.20 | 487.90 | 0.50 | 141.40 | 192.5 | | 238.00 | 32.80 | 0.00 | 31.60 | 1,369.30 | $775.00 | $1,061,207.50 |
| James Dallal (A) | 78.80 | 4.5 | 0.40 | 79.00 | 35.50 | 295.10 | 35.90 | 243.00 | 7.50 | 11.10 | 159.50 | 53.40 | 0.00 | 57.70 | 1,061.40 | $600.00 | $636,840.00 |
| Tom Chen (A) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,684.70 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,684.70 | $425.00 | $715,997.50 |
| Reid Gaa (A) | 66 | 73.40 | 24.60 | 0.00 | 0.00 | 105.90 | 0.00 | 65.00 | 192.70 | 0.00 | 274.90 | 37.30 | 0.00 | 2.00 | 841.80 | $425.00 | $357,765.00 |
| **SUB-TOTAL** | 216.80 | 125.20 | 110.40 | 128.50 | 68.70 | 888.90 | 1,721.10 | 503.60 | 715.60 | 14.70 | 747.80 | 409.10 | 0.00 | 144.30 | 5,794.70 | | $3,487,225.00 |
| | | | | | | | | | | | | | | | | | |
| **NON-ATTORNEYS (LC, SPL, PL)** | | | | | | | | | | | | | | | CUMULATIVE HOURS | HOURLY RATE | CUMULATIVE LODESTAR |
| Jaclyn Verducci (PL) | 93.50 | 11.00 | 16.10 | 64.70 | 11.90 | 53.90 | 38.20 | 6.60 | 205.80 | 2.50 | 26.70 | 15.60 | 0.00 | 4.00 | 550.50 | $325.00 | $178,912.50 |
| Michael Caylao (PL) | 89.3 | 71.50 | 61.80 | 11.50 | 11.60 | 87.10 | 3.00 | 73.30 | 170.00 | 0.00 | 114.90 | 8.20 | 0.00 | 7.50 | 709.70 | $325.00 | $230,652.50 |
| Alexandra Delavan (PL) | 4.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.30 | 15.70 | 2.10 | 243.60 | 0.20 | 28.30 | 1.00 | 0.00 | 0.00 | 297.20 | $275.00 | $81,730.00 |
| Samantha Fong (PL) | 52.90 | 0.00 | 2.00 | 0.00 | 0.00 | 0.00 | 1.00 | 1.60 | 4.80 | 0.00 | 20.30 | 0.00 | 0.00 | 0.00 | 82.60 | $275.00 | $22,715.00 |
| Xinyu Qiang (LC) | 0.00 | 0.00 | 5.10 | 0.00 | 4.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.10 | 0.00 | 0.00 | 0.00 | 24.80 | $200.00 | $4,960.00 |
| Rebecca Harteker (LC) | 4.40 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.00 | 0.00 | 2.20 | 35.80 | 0.00 | 0.00 | 0.00 | 42.90 | $175.00 | $7,507.50 |
| **SUB-TOTAL** | 244.10 | 82.50 | 85.00 | 76.20 | 28.10 | 143.30 | 58.40 | 83.60 | 624.20 | 4.90 | 241.10 | 24.80 | 0.00 | 11.50 | 1,707.70 | | $526,477.50 |
| **GRAND TOTAL:** | 460.90 | 207.70 | 195.40 | 204.70 | 96.80 | 1032.20 | 1779.50 | 587.20 | 1339.80 | 19.60 | 988.90 | 433.90 | 0.00 | 155.80 | 7,502.40 | | $4,013,702.50 |