J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
Andrew Levine, Esq. (SBN: 278246)
  levine@braunhagey.com
Yekaterina Kushnir, Esq. (SBN: 350843)
  kushnir@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

Garrett Biedermann, Esq. *(pro hac vice)*
  biedermann@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403
Facsimile: (646) 403-4089

ATTORNEYS FOR OBJECTORS
JASON STEELE,
PIONEER CYCLING & FITNESS LLP

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD |
| This Document Relates to: | Case No. 5:20-cv-03642-EJD |
| All Indirect Purchaser Actions | **CONDITIONAL OBJECTION TO CLASS ACTION SETTLEMENT** |
| | **Compl. Filed:** June 1, 2020<br>**Fourth Am. Compl. Filed:** September 1, 2023<br>**Trial Date:** None Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to the Order Preliminarily Approving Class Action Settlement, dated November 4, 2024 (Dkt. 397), Jason Steele and Pioneer Cycling & Fitness LLP respectfully submit this conditional objection to the class action settlement.

Dated: February 13, 2025

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: /s/ Matthew Borden
   Matthew Borden

*Attorneys for Objectors Jason Steele and Pioneer Cycling & Fitness LLP*

1    Conditional Objectors Jason Steele and Pioneer Cycling & Fitness LLP (together, the
2  "Conditional Objectors") respectfully submit this conditional objection to the proposed settlement
3  in this action.

**CONDITIONAL OBJECTION**

5    Conditional Objectors object to the proposed settlement to the extent that it would injure
6  direct purchasers of telescopes, who have been harmed by the same illegal conduct by Defendants
7  that the proposed settlement seeks to address. This is a protective and conditional objection because
8  Defendants have refused to provide assurances and information that they have sufficient resources
9  to satisfy both the proposed settlement and a judgment in the parallel litigation filed by Direct
10 Purchaser Plaintiffs ("DPPs"), No. 20-cv-3642-EJD ("DPP Action"). They have also concealed
11 financial terms of the proposed settlement here in a secret side deal that they have not disclosed to
12 either the DPP or the IPP Class. The settlement thus poses a risk that the DPP Class members will
13 be deprived of their ability to obtain relief as the result of an agreement that they cannot opt out of,
14 which resulted from a settlement process where their interests were not represented.

15    Given Defendants' fraudulent organizational structure, history of improper money transfers,
16 ability to remove assets from the jurisdiction and claims that they have no money, despite receiving
17 over two billion dollars during the Class Period, there is a substantial risk that absent judicial
18 intervention, the DPP Class will not be able to secure sufficient recovery if the proposed settlement
19 with the IPP Class is approved. DPPs have filed a motion seeking to require Defendants to identify
20 their assets and provide assurances that they will not remove assets from the United States outside
21 the ordinary course of business (DPP Action, Dkts. 656, 697-1), which is currently pending. Until
22 such time as Defendants show that they are capable of satisfying a collectible judgment in the DPP
23 Action, the Conditional Objectors—who otherwise support payment to the IPP Class—
24 conditionally object to the proposed settlement because it is impossible to evaluate whether the
25 settlement will effectively wipe out the claims of the DPP Class. Such a settlement would not be
26 fair and reasonable under Rule 23(e).

27    The instant objection is based on the Court's duty to ensure the fairness of the proposed
28 settlement to all telescope purchasers. IPPs' theory of their case is that Defendants sold telescopes

at artificially inflated prices to the DPP Class, which then re-sold the telescopes to the IPP Class, passing along part of the overcharge. (*E.g.*, No. 20-cv-3639-EJD ("IPP Action"), Dkt. 113 ¶ 193 ("Telescope distributors and retailers passed on inflated prices to Plaintiffs and the members of the Classes."), *id.* ¶ 194 ("Just as telescopes can be physically traced through the supply chain, so can their prices be traced to show that changes in the prices paid by direct purchasers affect prices paid by indirect purchasers. Here, the inflated prices of telescopes resulting from Defendants' price-fixing conspiracy have been passed on to Plaintiffs and the other members of the Classes by distributors and retailers.").) Absent Defendants overcharging the DPP Class, IPPs would have no claim. Thus, a settlement that compensates the IPP Class at the expense of the DPP Class's ability to recover would be inequitable.

## BACKGROUND

### A.  The Indirect Purchaser and Direct Purchaser Class Actions

Both the IPP and DPP actions were filed on June 1, 2020. On July 21, 2020, IPPs filed a motion to consolidate multiple related IPP cases and to coordinate the IPP cases with the DPP Action. (IPP Action, Dkt. 29.) In support, IPPs argued that "the pleading in the [DPP] Action is virtually identical to that in the Proposed Indirect Purchaser Actions [citations omitted] . . . Indeed, these actions name similar Defendants and co-conspirators, include substantially similar allegations, and assert the same causes of action. [citations omitted]." (*Id.* at 11-12.) Additionally, IPPs noted that "[c]oordination of direct purchaser and indirect purchaser action is the norm in this District, and throughout the country." (*Id.* at 11 (citing cases).) In response, Defendants filed a statement of non-opposition and stated that they "do not oppose Plaintiffs' request to consolidate the Indirect Purchaser Actions nor Plaintiffs' request to *coordinate* the Indirect Purchaser Actions with the Direct Purchaser Action." (IPP Action, Dkt. 40 at 3 (emphasis in original).) The Court granted consolidation of the IPP cases on August 17, 2020. (*Id.*, Dkt. 42.) After considering DPPs' motion to appoint interim lead counsel and to coordinate the DPP Action with the IPP case (DPP Action, Dkt. 41), the Court ordered DPPs' counsel to "coordinate [the DPP] action with the Indirect Purchaser Actions, consolidated as *In Re: Telescopes Antitrust Litigation*, No. 20-cv-3639, for pretrial and discovery purposes." (DPP Action, Dkt. 49.)

   In September 2023, IPPs and Defendants apparently executed an agreement in principle to settle the IPP Class claims. (IPP Action, Dkt. 390 ¶ 4.) Defendants have refused to resolve the claims of the DPP Class, despite all parties' acknowledgment that IPPs' claims are predicated on and their damages are derivative of harm caused by Defendants to DPPs in the first instance.

   **B.     The Conditional Objectors**

   Conditional Objector Jason Steele is both a direct and indirect purchaser of telescopes from Defendant Celestron Acquisition, LLC ("Celestron"). In March 2009, Mr. Steele purchased a Celestron telescope called the Nexstar 114GT, Reflector 114mm and an adapter accessory from the website of Celestron's distributor, Edmund Scientific. In April 2009, Mr. Steele purchased a Celestron accessory kit and power tank from Amazon. In April 2009, Mr. Steele also purchased a car battery adapter for his Nexstar telescope directly from Celestron's website. In May 2009, Mr. Steele ordered another accessory for his Nexstar telescope from Amazon. In August 2012, Mr. Steele purchased a telescope called the SkyProdigy 130 Computerized Telescope directly from Celestron's website, along with a telescope accessory. In November 2012, Mr. Steele purchased another Celestron telescope accessory from Amazon.

   Conditional Objector Pioneer Cycling & Fitness LLP ("Pioneer") is a direct purchaser of telescopes from Defendant Celestron. Pioneer is a small family business located in Blaine, Minnesota that began selling telescopes in 2018. Between 2019 and 2022, Pioneer purchased approximately $15,000 worth of telescopes and telescope accessories directly from Celestron.

   **C.     The Dangers that Defendants Will Frustrate Recovery by the DPP Class**

   As detailed in the fully briefed motion on DPPs' motion for financial assurances and asset information (DPP Action, Dkts. 656, 697-1, 661, 698-1, 668, 672, 696, 702), which are attached as Exhibits 1, 56, and 92-98 to the Declaration of Matthew Borden ("Borden Decl."), and fully incorporated by reference herein, there is significant risk that Defendants have and/or will remove assets from the United States to prevent the DPP Class from recovering if they prevail. These dangers include, without limitation:

   1.     Defendants have engaged in decades of criminal activities.

2. Defendants set up a fraudulent corporate structure designed to hide money, where on paper, Synta's founder and mastermind, David Shen, owns almost nothing of the enterprise that he created, financed, and runs and has instead reposed ownership in various family members.

3. Defendants have transferred millions of dollars between their various entities.

4. Defendants hold assets in jurisdictions that prevent asset collection.

5. Defendants have an ever-present ability to transfer funds to China outside the Court's reach, as they already have done.

6. Over the course of the class period, Defendants obtained over $2 billion in revenue, but in seeking approval of the settlement reference "difficulties regarding collection" and "potential collection and ability to pay problems with foreign defendants, as evidenced in the Orion litigation." (IPP Action, Dkt. 389 at 1, 7.)

7. Defendant Celestron helped Defendant Ningbo Sunny commit a fraud on the Court by transferring $4.2 million to China to frustrate judgment collection in the Orion litigation.

8. Defendants use the Synta entities—especially Good Advance—as a slush fund to finance their illicit activities and transfer tens of millions of dollars to themselves. At the same time, Defendants admitted, in interrogatory responses, that they destroyed documents from Good Advance and offered inaccurate and evasive testimony about their various Good Advance entities, which are not listed on their corporate structure chart.

9. The claims at issue in this settlement involve improper transfers of money between Defendants. (IPP Action, Dkt. 300, Compl. ¶¶ 89, 91, 112, 116, 141, 151, 155, 249-50; *see also* Borden Decl., Ex. 1 at 2-5.)

10. Defendants have refused to provide asset information or assurances that they will not fraudulently transfer assets out of the jurisdiction again.

**ARGUMENT**

"To ensure the interests of the absent class members are properly safeguarded", in determining whether to grant final approval of a class action settlement, the Court "must adopt the role of a skeptical client and critically examine the class certification elements, the proposed settlement terms, and procedures for implementation." *Lusk v. Five Guys Enterprises LLC*, 2022

WL 209560, *2 (E.D. Cal. Jan. 24, 2022) (internal citation omitted). The Court's final approval procedures "safeguard class members' due process rights and enable the Court to fulfill its role as the guardian of class interests." *In re Packaged Seafood Prods. Antitrust Litig.*, 2022 WL 2803110, *3 (S.D. Cal. July 15, 2022). Among other things, Courts may only approve a proposed settlement if "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Conditional Objectors respectfully submit that the Court should not approve the proposed settlement unless and until Defendants disclose information sufficient to prove that they have and will maintain sufficient assets in the United States to both pay the proposed settlement amount to the IPPs and to satisfy an eventual judgment or settlement with the DPPs. Absent such relief, it is impossible to determine whether the settlement is fair and reasonable to the DPP Class.

## I.   A SETTLEMENT THAT INJURES ONE CLASS AT THE EXPENSE OF ANOTHER CLASS IS IMPROPER

As detailed in Section C above and Section II below, the proposed settlement has the potential to eliminate the DPP Class's remedy in the DPP Action and will therefore inflict formal legal prejudice on the DPP class.[1] Courts refuse to certify classes under similar circumstances. *See True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010) (rejecting settlement and noting that courts "generally are wary of settlement agreements where some class members are treated differently than others.").

For example, in *Ferrington v. McAfee, Inc.*, Judge Koh rejected a proposed settlement that purported to release a subclass's claims for no consideration. The Court explained that "Settlements in which the class or a significant subclass will receive no benefit have been rejected by courts because such agreements are not fair, adequate, and reasonable for all class members." 2012 WL

---

[1] Mr. Steele can make this objection because he is an IPP. Pioneer can make this objection because a party that is not a member of a proposed settlement class may nevertheless challenge a proposed settlement when it "demonstrates that it will sustain some formal legal prejudice as a result of the settlement." *Sweet v. Cardona*, 121 F.4th 32, 44 (9th Cir. 2024) (citation omitted). Here, Conditional Objectors will suffer such prejudice if a settlement of the IPP Class's claims wipes out the DPPs' Class claims. Moreover, "[e]ven if a Court finds that a putative objector lacks standing to object, it may still consider that putative objector's objections to a class settlement, which may help the Court satisfy its fiduciary duties." *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 3648478, at *23 (N.D. Cal. July 7, 2016) (citing *Stetson v. Grissom*, 2016 WL 2731587, at *2 (9th Cir. May 11, 2016)).

1156399, *8 (N.D. Cal. 2012). In *Ferrington*, Melissa Ferrington alleged that McAfee had provided her billing information to Arpu, which then sent her a pop-up stating "try it now." She clicked on the link thinking it came from McAfee and was then charged $4.95/month after an initial free month of Arpu's services. Her class included people who clicked on the try-it-now link and were billed by Arpu. A separate class action was filed by Ken Pochis on behalf of all people who did not provide their billing information to Arpu, but whose billing information was obtained by Arpu. *Id*. Ms. Ferrington settled, but Mr. Pochis did not and objected to the settlement.

The Court rejected Ms. Ferrington's proposed class settlement because it released the claims of many class members, including those in the Pochis class, without compensation. The Court explained that while the settlement broadly released claims of everyone whose information was given to Arpu, "only the subclass who did not download the Arpu software will receive some form of compensation." *Id*. at *8. The Court further rejected the idea that the claims of people who merely downloaded the Arpu software were weaker than those who were compensated, reasoning, "the claims of the downloader subclass are not so meritless that releasing the claims for no consideration is fair and reasonable." *Id*. at *10.

Here, as in *Ferrington*, a class settlement that could wipe out the claims of other class members for no consideration is not fair and reasonable. Like *Ferrington*, here, there are two classes whose injuries arise from the same course of conduct. Like *Ferrington*, Defendants are potentially extinguishing the DPP Class's claims without any protections for the unnamed class members. This case presents an even more compelling situation than *Ferrington* because here, unlike in that case, DPP Class members cannot opt out of the settlement. Moreover, unlike in *Ferrington*, here the claims of the settling IPP Class are entirely derivative of the claims of the DPP Class that Defendants are trying to eliminate. Moreover, unlike in *Ferrington*, while the liability case for DPPs is the same as the liability case for IPPs, the damages that the DPP Class has incurred are far greater than those of the IPP Class. Absent asset information and assurances that Defendants will not move their assets out of the country, it is impossible to evaluate whether the settlement at issue is fair and reasonable for all class members.

Many other cases have similarly held that a settlement that benefits one class at the expense of another is improper. In *Mirfashi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004), the Court rejected a settlement where the defendant mortgage company released customer information to telemarketers. The settlement released the claims of anyone whose information was shared, but only compensated a subclass of people who transacted with the telemarketing company, leaving nothing for the people whose information was illegally shared. In reversing approval of the settlement, the Court of Appeals noted that "the information class did not have separate counsel" to protect it in the settlement negotiations. *Id*. at 786. The same is true here, as Defendants did not include the DPP Class in their settlement negotiations and effectively prevented DPP Class members from protecting their interests. The Court further held that it "staggers the imagination" to think it fair that the information class would "surrender a claim worth $35 million in exchange for the satisfaction of knowing that his wrongdoer had been forced to pay $243,000 to members of another class." *Id*. at 783. As in *Mirfashi*, a settlement that would benefit the IPP Class at the expense of the DPP Class is not fair and reasonable.

In *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007), the Court rejected a class settlement that attempted to exclude a subset of the class from recovering. Two plaintiffs brought class actions against credit reporting agencies Trans Union and Equifax, alleging that their practice of relying on creditors "to voluntarily update the status of discharged debts" from bankruptcy proceedings was unreasonable and led to individuals having materially negative marks on their credit reports. *Id.* at *380. Two plaintiffs mediated with the credit agencies and attempted to settle while excluding three other putative class representatives from the mediation, who then objected to the settlement. *Id.*

In the proposed settlement, the settling plaintiffs defined an overall settlement class of "all consumers . . . residing in the United States for whom Trans Union and/or Equifax maintain a File who, between April 1, 1996 and the date of entry of the Preliminary Approval Order, received a Chapter 7 bankruptcy discharge order." *Id*. at 381. They then defined two settlement classes: (1) the "California Economic Relief Subclass", comprised of individuals "whose [bankruptcy] discharge orders were entered after May 12, 2001, and who reside in California," and (2) the "Non–

California Economic Relief Subclass", comprised of individuals "whose [bankruptcy] discharge orders were entered after October 3, 2003, and who reside outside California." *Id*. at 381-82.

The Court rejected the settlement, finding that the class divisions were arbitrary because the erroneous information reported on the classes' credit reports "is published and hence cannot be circumscribed solely by the date on which a consumer obtains a bankruptcy discharge order." *Id.* at *387. Additionally, only the economic relief subclasses would receive any recovery, which would create a situation in which "two-thirds of the Settlement Class" were "completely ineligible for any economic relief under the [s]ettlement." The Court noted that it was "aware of no case in which a settlement was allowed that partitioned a class so as to provide relief to one segment and to deny it completely to another." *Id*. at 388.

In *True v. American Honda Motor Co*., 749 F. Supp. 2d 1052, 1068 (C.D. Cal. 2010), the Court rejected a proposed settlement that "draws an arbitrary distinction among class members with identical legal claims" and provided members disparate relief. The class consisted of members who were exposed to false and misleading advertising regarding the fuel efficiency of the Honda Civic Hybrid and relied on these misrepresentations to pay a hybrid premium. *Id*. at 1058. While all class members suffered the same injury, the settlement created a special, favored subclass of members—those with a record of their written complaint regarding the fuel economy of their car—who received a cash payment, rebate and DVD. All other class members received only a rebate and DVD. *Id*. at 1060. In rejecting the settlement, the Court noted that the plaintiffs did not suggest that the favored "sub-group have any different legal claims than the other class members, or that they suffered any greater damages." *Id*. at 1067. Citing *Acosta*, *supra*, with approval, the court found this disparate treatment of similarly situated members "patently unfair." *Id*. at 1068. The same is true here, where the claims of the DPP Class and the IPP class arise from the exact same antitrust violation.

As in the cases cited above, a class settlement that could wipe out the claims of other class members for no consideration is not fair and reasonable. The circumstances here are even more potentially troubling because unlike in *Ferrington*, *Mirfashi*, *Acosta*, or *True*, here DPP Class members cannot opt out of the settlement.

1    Moreover, unlike in *Ferrington*, *Mirfashi*, *Acosta*, or *True*, here the claims of the settling IPP Class are entirely derivative of the claims of the DPP Class that Defendants are trying to eliminate. IPPs allege that the harm redressed in the proposed settlement is harm that first passes through DPPs: "the inflated prices of telescopes resulting from Defendants' price-fixing conspiracy have been passed on to Plaintiffs and the other members of the Classes by distributors and retailers [DPPs]". (IPP Action, Dkt. 113 ¶ 194.) The proposed settlement is intended to compensate the IPPs for the portion of Defendants' overcharge that passed through from the DPPs.

Further, unlike in *Ferrington* or *Mirfashi*, where the class members injured by the settlement had weaker claims, the damages that the DPP Class has incurred are far greater than those of the IPP Class. IPPs reside only in the 33 states that permit indirect purchaser claims, whereas the DPPs are nationwide. IPPs' damages expert calculated the damages for the IPP Class of $29 million to $165 million, depending on the pass overcharge percentage and pass through rate. (IPP Action, Dkt. 389 at 15.) DPPs' damages expert, Dr, Zona, calculated damages to the DPPs' Class in the range of $142 million to $238 million before trebling. (DPP Action, Dkts, 599, 629-1 at 12.) Yet because Defendants have refused to provide assurances that they will maintain sufficient assets in the United States to satisfy both the proposed settlement and a potential judgment or settlement with DPPs, the proposed settlement could prevent DPPs from recovering anything at all. Absent asset information and assurances that Defendants will not move their assets out of the country, there is no way to evaluate whether the settlement at issue is fair and reasonable for all class members.

## II.   ABSENT JUDICIAL RELIEF, THE PROPOSED SETTLEMENT IMPERILS THE RIGHTS OF THE DPP CLASS

DPPs' concerns about Defendants' dissipation of assets are not speculative. IPPs have represented to the Court that "difficulties regarding collection" and "potential collection and ability to pay problems with foreign defendants, as evidenced in the Orion litigation" (Dkt. 389 at 1, 7) were rationales that factored into their representation of the class. As explained in DPPs' Financial Assurances Motion, Defendants have all the hallmarks that courts cite in imposing freeze orders. They regularly transfer money from their U.S. entity, Celestron, out of the United States, and use a

byzantine corporate structure with numerous shell companies to transfer money to hard-to-reach jurisdictions like China. (*See* Borden Decl., Ex. 1 at 2-6.) As the Ninth Circuit noted about the claims that the proposed settlement resolves, "Celestron made $7.2 million in "prepayments" to Sunny for unshipped telescopes, and gave Sunny $10 million in interest-free loans to fund Meade's operations" in connection with Sunny's acquisition of Meade. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 479 (9th Cir. 2021). And Defendant Celestron aided and abetted Defendant Ningbo Sunny in avoiding the judgment in the *Orion* litigation by wiring $4.2 million to Ningbo Sunny four days before the judgment stay expired in the *Orion* Litigation. (*See* Case No. 16-cv-6370-EJD, Dkts. 807, 823, 840.) The Court awarded sanctions of $4,184,057 against Ningbo Sunny for fraudulently transferring funds out of the United States to evade judgment and held Ningbo Sunny Chairman Peter Ni personally in contempt, awarding sanctions of $4,203,200 against him personally for related misconduct. (*See id.*, Dkts. 598, 701.)

Defendants' actions thus far raise serious concerns as to whether they will be able to satisfy any judgment against the DPPs if the Court approves their settlement with the IPPs. Approving a settlement with a derivative class while leaving no remedy for the primary class would result in material legal prejudice to DPPs.

### III. THE PROPOSED SETTLEMENT DOES NOT DISCLOSE THE TERMS OF THE CONFIDENTIAL SUPPLEMENTAL AGREEMENT

The proposed settlement has also not been fully disclosed. It refers to and incorporates the terms of a "Confidential Supplemental Agreement" between Defendants and IPPs that purportedly "grants certain rights in favor of the [IPP] class[.]" (IPP Action, Dkt. 389 at 10.) Neither IPPs' counsel nor Defendants have disclosed that agreement or its terms. The Proposed Settlement Agreement's undisclosed terms govern how $30 million of the $32 million settlement payment will be distributed. (*Id.*, Dkt. 390 ¶ 15.)

Courts regularly order production of confidential side agreements entered into in connection with class action settlements. *See, e.g.*, *White v. Experian Information Solutions, Inc.*, 2010 WL 11526818, *3 (C.D. Cal. 2010) ("Generally courts are satisfied that the Rule 23(e)(3) requirement

has been met through the identification *and submission* of all settlement agreements.") (emphasis added).

Given the history of Defendants' misconduct, including their actions to transfer assets out of the United States, there are justifiable concerns that whatever is in the Confidential Supplemental Agreement may treat the IPP Class preferentially to and at the expense of the DPP Class in violation of Rule 23(e)(2)(D) and the overriding principles of equity and fairness that govern judicial review of proposed class settlements. The Conditional Objectors respectfully submit that the Court should require the Confidential Supplemental Agreement to be disclosed to ensure that any such terms come to light.

### IV.  THIS OBJECTION IS CONDITIONAL

The Conditional Objectors have no objection to a settlement that fairly compensates the IPPs for the harm caused by Defendants' decades-long antitrust misconduct. But a proposed class settlement may not be approved if it disparately treats one class of purchasers preferentially and at the expense of another. Nor should the Court evaluate the fairness of a proposed settlement without requiring that all the material terms be disclosed—not just to the Court (as the parties in this case proposed (IPP Action, Dkt. 390 at 10)), but to all interested parties, especially unnamed class members.

Accordingly, the Conditional Objectors object only to the extent that Defendants have not provided sufficient financial information and assurances to provide the Court and class members confidence that the proposed settlement's payments to the IPP Class will not impair the DPP Class's ability to obtain redress and remedy for Defendants' misconduct. Provided that they receive the financial assurances and information they have requested, the Conditional Objectors do not intend to stand in the way of the proposed settlement. The financial information Defendants produced in this litigation shows that they received over $2 billion in revenue over the class period, which means that, barring fraudulent transfers, Defendants should have sufficient assets to fulfill their obligations under the proposed settlement and satisfy a judgment in favor of or a settlement with the DPP Class. But given Defendants' financial chicanery, and strenuous efforts to avoid disclosure and refusal to provide financial assurances, the Court and Conditional Objectors have no

basis to evaluate the fairness of the Proposed settlement. This information deficit is further heightened by the Defendants shrouding the terms of the Confidential Supplemental Agreement—which govern distribution of the lions share of settlement funds—in secrecy.

Accordingly, the Court should delay approval of the proposed settlement until the issues raised in DPPs' Financial Assurances Motion are resolved such that the DPP Class is protected, and the terms of the Confidential Supplemental Agreement are disclosed. Any prejudice resulting from this delay is the result of Defendants excluding the DPP Class from settlement discussions and refusing to engage in settlement discussions with DPPs in good faith, and from their claim that they no longer have the funds to compensate the victims of their decades-long illegal antitrust conspiracy, which has netted them hundreds of millions of dollars.

## CONCLUSION

For the foregoing reasons, the Conditional Objectors respectfully request that the Court delay approval of the proposed settlement until such time as the conditions above are satisfied.

Dated: February 13, 2025

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:  */s/ Matthew Borden*
      Matthew Borden

*Attorneys for Objectors Jason Steele and Pioneer Cycling & Fitness LLP*