Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Settlement Class Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | **Case Nos. 5:20-cv-03639-EJD** |
| THIS DOCUMENT RELATES TO: | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| All Indirect Purchaser Actions | **Dept.: Courtroom 4** <br> **Judge: Hon. Edward J. Davila** <br> **Date: April 3, 2025** <br> **Time: 9:00 AM** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that the Honorable Edward J. Davila will hear this Motion at the United States District Court of the Northern District of California, located in Courtroom 4, 280 South 1st Street, San Jose, California on April 3, 2025 at 9:00 AM. Indirect Purchaser Plaintiffs ("IPPs") move the Court, pursuant to Federal Rule of Civil Procedure 23 and in accordance with the Northern District's Procedural Guidance for Class Action Settlements, for an order: (1) granting final approval of the proposed class action settlements with Defendants[1] under Rule 23(e)(2); (2) confirming certification of the settlement class, appointment the proposed Class Representatives[2] as representatives for the settlement class, and appointment Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein, LLP; and Susman Godfrey LLP as class counsel for the settlement class; (3) dismissing with prejudice IPPs' claims against the Settling Defendants; and (4) granting final approval of IPPs' plan of allocation of the Settlement ("Plan of Allocation") among confirmed settlement class members ("Class Members").

---

[1] Synta Technology Corp. of Taiwan, Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Canada International Enterprises Ltd., Pacific Telescope Corp., Olivon Manufacturing Co. Ltd., SW Technology Corporation, Celestron Acquisition, LLC, Olivon USA, LLC, Dar Tson ("David") Shen, Joseph Lupica, and Dave Anderson (collectively, "Defendants").

[2] Madeline Bekielewski, Thomas Berta, Carey Briggs, Vincent Catanzaro, David Dick, Austin Griffith, Donnie Houston, Bentaro Huset, Greg Kendall, David Kerber, Deborah Lemar, Doug Lundy, John Maurice, Timothy McQuaid, Philip Moore, Brian Murphy, Herbert Nelson, Scott Plummer, Michael Price, David Quaglietta, Greg Ross, Ronald Troillett, Robert Welsh, Tony DiMambro, Jason Glydewell, Leon Greenberg, Michael Liskow, Sigurd Murphy, Jim Riley, Keith Uehara, Steven Zellers, Sarah Day Brewer, Thien Ngo, Jesse Smith, and Arthur Sines (the "Named Representatives"). Richard Bekielewski was an original Class Representative, but he passed away during the pendency of the litigation. His wife, Madeline Bekielewski, has taken over his estate and claims.

This motion is based on this Notice of Motion and Motion for Final Approval of Settlement; the following Memorandum of Points and Authorities; the Declaration of Kalpana Srinivasan ("Srinivasan Decl."); the Declaration of Angelique Dizon ("Verita Decl."); the pleadings, briefs, declarations, and orders on file in this action; and such other matters as the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Settlement is fair, reasonable, and adequate and should be approved under Rule 23(e);

2.      Whether the Settlement Class should be affirmed as certifiable for settlement purposes under Rules 23(a) and 23(b)(3);

3.      Whether the appointment of Cotchett, Pitre & McCarthy, LLP, Lieff Cabraser Heimann & Bernstein, LLP, and Susman Godfrey, LLP as Settlement Class Counsel should be affirmed;

4.      Whether the appointment of the Named Representatives as Settlement Class Representatives should be affirmed; and

5.      Whether the Plan of Allocation should be approved.

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    STATEMENT OF FACTS ......................................................................................... 1

III.   THE SETTLEMENT AGREEMENT ........................................................................ 2

IV.    CLASS NOTICE AND CAFA NOTICE ................................................................... 3

V.     ARGUMENT .............................................................................................................. 5

       A.     The Court Should Certify the Class for Settlement Purposes ............................... 5

              a.     The Settlement Class Satisfies the Requirements of Rule 23(a) ................ 6

              b.     Rule 23(b)(3) Predominance and Superiority Are Satisfied ...................... 7

              c.     The Court Should Confirm Settlement Class Counsel and
                     Representatives ........................................................................................... 8

       B.     The Settlement is Fair, Reasonable, and Adequate ................................................ 8

              a.     The Class Was Adequately Represented ..................................................... 9

              b.     The Settlement Agreement Is a Fair and Adequate Result for the
                     Class     10

                     1)     The Costs, Risks, and Delays of Further Litigation ....................... 10

                     2)     Distribution ................................................................................... 11

                     3)     Attorneys' Fees ............................................................................. 12

                     4)     Other Agreements ......................................................................... 12

              c.     The Plan of Allocation Treats Class Members Equitably ......................... 13

              d.     Class Members' Positive Reaction to the Settlement Further
                     Supports Approval. ................................................................................... 13

       C.     The Objections Are Procedurally Improper, Meritless, or Both .......................... 14

              a.     Direct Purchaser "Conditional Objectors" ............................................... 15

              b.     National Woodlands Preservation, Inc. ("Woodlands") ........................... 18

              c.     Elman Barnes .......................................................................................... 19

                     1)     The Claims Process Treats All Potential Class Members
                            Fairly ............................................................................................. 20

2) Verita Diligently Provided Claim Numbers ................................. 21

        i) The Claim Number Protocol Protects Against Fraud and Was Recommended by the Claims Administrator ................................................................. 21

3) Courts Routinely Approve Settlements with § 1542 Waivers ....................................................................... 22

4) Barnes' State of Residence Objections Are Misplaced and Mooted ................................................................. 22

    d. Pat Zhen .................................................................................. 23

    e. Mike Sussman .......................................................................... 24

  D. Reversions and *Cy Pres* ................................................................. 25

VI. CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acosta v. Trans Union, LLC,*
243 F.R.D. 377 (C.D. Cal. 2007) ................................................................ 18

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) .......................................................................... 5, 7, 8

*Bostick v. Herbalife Int'l of Am., Inc.,*
No. 13-cv-2488, 2015 WL 12731932 (C.D. Cal. May 14, 2015) ......................... 13

*Briseno v. ConAgra Foods, Inc.,*
844 F.3d 1121 (9th Cir. 2017) ................................................................... 3

*Briseno v. Henderson,*
998 F.3d 1014 (9th Cir. 2021) ................................................................... 9

*Churchill Vill., L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) .................................................................... 3

*Cmty. Res. for Indep. Living v. Mobility Works of California,*
LLC, 533 F. Supp. 3d 881 (N.D. Cal. 2020) .................................................. 14

*Estorga v. Santa Clara Valley Transp. Auth.,*
No. 16-cv-02668, 2020 WL 7319356 (N.D. Cal. Dec. 11, 2020) ......................... 23

*Ferrington v. McAfee, Inc.,*
No. 10–cv–01455, 2012 WL 1156399 (N.D. Cal. 2012) .................................... 17

*Fleming v. Impax Lab'ys Inc.,*
No. 16-CV-06557, 2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ........................ 11

*Harbour v. Cal. Health & Wellness Plan,*
No. 21-cv-03322, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ............................. 5

*In re 3DS Sys. Secs. Litig.,*
No. 21-cv-1920, 2023 U.S. Dist. LEXIS 98683 (E.D.N.Y. June 5, 2023) ............... 12

*In re Anthem, Inc. Data Breach Litig.,*
327 F.R.D. ........................................................................................ 21

*In re Apple Inc. Device Performance Litig.,*
50 F.4th 769 (9th Cir. 2022) ..................................................................... 3

*In re Apple Inc. Device Performance Litig.,*
No. 18-md-02827, 2021 WL 1022867 (N.D. Cal., 2021) ................................... 17

*In re Apple Inc. Smartphone Antitrust Litig.*,
   No. 24-md-03113, 2024 WL 4512016 (D.N.J. Oct. 17, 2024) ............................................... 18

*In re Auto. Refinishing Paint Antitrust Litig.*,
   617 F. Supp. 2d 336 (E.D. Pa. 2007) ....................................................................................... 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .................................................................................................... 10

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 07-cv-5944, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .............................................. 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 14-cv-2058, 2017 WL 2481782 (N.D. Cal. June 8, 2017) .............................................. 13

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig. (In re First Capital)*,
   33 F.3d 29 (9th Cir. 1994) ................................................................................................... 5, 16

*In re Google Location Hist. Litig.*,
   No. 18-cv-05062, 2024 WL 1975462 (N.D. Cal. May 3, 2024) ........................................... 25

*In re Google Plus Profile Litig.*,
   No. 18-cv-06164, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ............................................ 20

*In re Heritage Bond Litig.*,
   No. 02-md-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................................... 12

*In re Hydroxycut Mktg. and Sales Practices Litig.*,
   No. 09-cv-1088, 2013 WL 5275618 (S.D. Cal. Sep. 17, 2013) ........................................... 16

*In re Hyundai & Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ................................................................................................. 5, 9

*In re LinkedIn ERISA Litig.*,
   No. 20-cv-05704, 2023 WL 8631678 (N.D. Cal. Dec. 13, 2023) ........................................ 12

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................................... 14

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-md-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-
   15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) ................................................. 7, 13, 23

*In re Loestrin 24 FE Antitrust Litig.*,
   410 F. Supp. 3d 352 (D.R.I. 2019) ......................................................................................... 24

*In re MacBook Keyboard Litig.*,
   No. 18-cv-02813, 2023 WL 3688452 (N.D. Cal. May 25, 2023) ..................................... 10, 11

*In re Magsafe Apple Power Adapter Litig.*,
   No. 5:09–cv–01911, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ........................................ 20

*In re MyFord Touch Consumer Litig.*,
    No. 13-cv-03072, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019)..........................................10

*In re Nexus 6P Prod. Liab. Litig.*,
    No. 17-cv-02185, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ..........................................14

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015).........................................................................................1, 20

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005) ...................................................................................6, 7

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008)............................................................................................9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods.
    Liab. Litig.*,
    No. 10-md-02151, 2013 WL 12327929 (C.D. Cal. July 24, 2013) ......................................22

*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) ...............................................................................16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    229 F. Supp. 3d 1052 (N.D. Cal. 2017), *enforcement granted*, 2017 WL
    914066 (N.D. Cal. Mar. 6, 2017) .......................................................................................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    No. 2672, 2017 WL 672727 (N.D. Cal. Feb. 16, 2017).........................................................3

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)............................................................................................9

*Meijer, Inc. v. Abbott Lab'ys*,
    No. 07-cv-5985, 2011 WL 13392313 (N.D. Cal. Aug. 11, 2011) ........................................12

*Miller v. Wellpoint Companies, Inc.*,
    No. 09-cv-5666, 2010 WL 11520703 (C.D. Cal. May 17, 2010) ........................................22

*Mirfashi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004)............................................................................................17

*Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd. et al.*,
    No. 5:16-cv-06370 (N.D. Cal.) .........................................................................................10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006).............................................................................................22

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
    59 F. Supp. 2d 1021 (N.D. Cal. 1999) .........................................................................15, 24

*Schneider v. Chipotle Mexican Grill, Inc.*,
    336 F.R.D. 588 (N.D. Cal. 2020) ...................................................................................... 13

*Staley v. Gilead Scis., Inc.*,
    446 F. Supp. 3d 578 (N.D. Cal. 2020) .............................................................................. 24

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ............................................................................................................ 16

*Sweet v. Cardona*,
    121 F.4th 32 (9th Cir. 2024) ............................................................................................. 15

*Theodore Broomfield v. Craft Brew Alliance, Inc.*,
    No. 17-cv-01027, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ........................................ 13

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...................................................................... 17, 18

*Vataj v. Johnson*,
    No. 19-cv-06996, 2021 U.S. Dist. LEXIS 75879 (N.D. Cal. Apr. 20, 2021) ...................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................................... 11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................................................ 8

**Statutes**

California Civil Code § 1542 ............................................................................... 19, 22, 23

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. 1, 3, 5, 6

Fed. R. Civ. P. 23(a) ..................................................................................................... 6, 7, 8

Fed. R. Civ. P. 23(b) ...................................................................................................... 7, 8

Fed. R. Civ. P. 23(e) ...................................................................................................... 9, 10

**Other Authorities**

https://www.telescopesettlement.com/frequently-asked-questions.aspx ...................................... 25

https://www.thesciencehaven.org/stellardreams ...................................................................... 25

*Newberg on Class Actions § 20:23 (5th ed.)* .............................................................. 6

www.telescopesettlement.com ...................................................................................................... 4

1    **I.    INTRODUCTION**

2         Indirect Purchaser Plaintiffs ("IPPs") respectfully move the Court for final approval of the

3    Settlement, which will end IPPs' litigation and put money directly into the pockets of tens of

4    thousands of consumers harmed by Defendants' anticompetitive conduct. The settlement amount—

5    $32 million—falls within the range of *full damages* as estimated by IPPs' damages expert.  The

6    Court should approve the Settlement because it provides meaningful relief for the Class, satisfies

7    all of Rule 23's standards for certification, and is "fair, reasonable and adequate." *In re Online*

8    *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945 (9th Cir. 2015). The class members'

9    overwhelmingly positive response to the settlement, notice plan, and claims process further

10    supports approval of the Settlement. The handful of objections are all without merit. Several

11    entirely lack standing to object and one is from counsel from the Direct Purchaser Plaintiffs

12    ("DPPs") improperly seeking to use IPPs' Settlement to gain leverage during a pending dispute in

13    their wholly separate litigation.

14         IPPs respectfully request that this Court: (1) grant final approval of the Settlement; (2)

15    confirm certification of the Settlement Class; (3) confirm Class Representatives as representatives

16    for the certified Settlement Class; (4) confirm Settlement Class Counsel as counsel for the certified

17    Settlement Class; (5) dismiss with prejudice all claims against the Settling Defendants[3]; and (6)

18    approve the proposed Plan of Allocation.

19    **II.    STATEMENT OF FACTS**

20         As per the district's Procedural Guidance for Class Action Settlements and the Court's

21    general familiarity with the factual details and procedural history of the case as detailed in IPPs'

22    Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards

23    ("Attorneys' Fees Motion," ECF No. 398), the accompanying Joint Declaration (ECF No. 398-1),

24    and the briefs and declarations previously filed Motion for Preliminary Approval and

25    accompanying declaration (ECF Nos. 389 & 390), IPPs incorporate those facts by reference.

26    _____

27    [3] Another Defendant—Ningbo Sunny Electronic Co. Ltd., a China-based Defendant—has not

28    appeared in this action.

Since the Court granted preliminary approval, Verita implemented the Court-ordered notice plan. Verita has received 76,884 claims after thoroughly vetting all claims for fraud and misuse. *Id.*

The Court-ordered deadline to opt-out or object passed on February 13, 2025, but the claims deadline does not run until May 20, 2025. The claims submitted thus far represent 2% of the estimated 4 million potential class members. Verita Decl. ¶19. The twelve opt-outs and five objections represent a *de minimis* portion of the class,[4] less than a fraction of one percent. *Id.*

## III.    THE SETTLEMENT AGREEMENT

The Settlement Agreement grants a release on behalf of a class of indirect purchasers of telescopes manufactured by Defendants, defined as follows:

> All persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

ECF No. 390-1, ¶1(e). The Indirect Purchaser States are defined as:

> Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

*Id.* ¶1(q). The Settlement Class definition is coterminous with Class IPPs' seek to certify in conjunction with this motion.

The Settlement Agreement provides that upon final approval and entry of judgment, class members will release their claims against the Settling Defendants. *Id.* In return for the release and other terms in the Settlement Agreement, the Settling Defendants agree to pay $32 million.

---

[4] As detailed further *infra*, a number of these objections are demonstrably ***not*** from class members.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

## IV.    CLASS NOTICE AND CAFA NOTICE

Pursuant to the Court's preliminary approval order, the approved claims administrator, Verita, implemented the proposed notice plan, which "provide[d] a summary of the Settlement and clearly explain[ed] how Class Members may object to or opt out of the Settlement, as well as how Class Members may address the Court at the final approval hearing." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672, 2017 WL 672727, at \*20 (N.D. Cal. Feb. 16, 2017); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."). The notice plan was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member").

On December 13, 2024, Verita began the Court-approved notice plan. First, it caused the postcard notice to be printed and mailed to the 84,661 names and mailing addresses it had on file. Verita Decl. ¶6. After mailing the Postcard Notices to the Class Members, as of the date of this declaration, Verita received 8,439 Postcard Notices returned by the USPS with undeliverable addresses. *Id.* ¶7. Through credit bureau and/or other public source databases, Verita performed address searches for these undeliverable Postcard Notices and found updated addresses for 3,326 potential Class Members. *Id.* Verita promptly re-mailed Postcard Notices to the new-found addresses. *Id.* Verita successfully mailed 76,222 of the 84,661 Postcard Notices to possible Class Members. *Id.* ¶8.

On December 13, 2024, Verita also e-mailed the Notice to the 55,675 names where a valid e-mail address was available. *Id.* ¶9. Verita successfully delivered the E-mail Notice to 47,026 Class Members. *Id.*  In addition, Amazon facilitated direct notice to its customers that purchased class Telescopes using Amazon's own messaging service, issuing over 50,000 direct email notices.

Second, Verita implemented an extensive and effective publication notice program to supplement direct notice. Verita Decl. ¶¶10-13. Verita distributed a press release via PR Newswire's US1 National Newsline on December 13, 2024, which included syndicated distribution via AP News. Verita Decl. ¶10. Verita also purchased a sponsored post to be published on December 13, 2024, via Sky & Telescope Facebook, a banner ad to appear in December 13, 2024 Sky & Telescope weekly newsletter, and 100,000 impressions to be distributed on Sky & Telescope Website (skyandtelescope.org). *Id.* Verita caused a total of 190,048 impressions to be delivered, resulting in an additional 90,048 impressions at no extra charge. *Id.*

In addition, Verita purchased 23,850,000 impressions to be distributed programmatically via various websites and mobile apps, as well as on Facebook, Instagram, Reddit and Google Search, from December 13, 2024, through February 10, 2025. *Id.* ¶11. The impressions targeted adults 18 years of age or older who have likely purchased telescopes, demonstrated an online interest in Celestron, telescopes, astronomy, stargazing, sky/star maps, astrophotography, astroimaging, telescope accessories, astronomical accessories, and/or used stargazing apps and sky guides, where available. *Id.* Verita caused 25,534,471 impressions to be delivered, resulting in an additional 1,684,471 impressions at no extra charge. *Id.*

Third, Plaintiffs launched a case-specific settlement website. *Id.* ¶14. On December 11, 2024, Verita established a website (www.telescopesettlement.com) dedicated to this proposed settlement to provide information to Class Members and to answer frequently asked questions. *Id.* The Postcard Notice, Email Notice, Long-Form Notice, and Claim Form set forth the website URL. *Id.* Visitors to the website can download copies of the Long-Form Notice, Claim Form, Settlement Agreement and other case-related documents. *Id.* Visitors can also submit claims online and/or download a copy of the claim form. *Id.* As of February 21, 2025, the website received 2,182,469 visits. *Id.*

Fourth, Verita also supported a dedicated toll-free phone number, which appeared in the notice documents and ads. *Id.* ¶15. The number provides an interactive voice response system that presents callers with a series of choices to hear pre-recorded information about the Settlements. *Id.* If callers need further help, they can speak with a live operator during business hours. *Id.*

4

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

1   Representatives from Verita and Settlement Counsel continue to respond to inquiries via phone and
2   email from potential Class Members and help them file claims.

3       The toll-free telephone number (1-833-419-3506) and an email address
4   (admin@telescopesettlement.com) for potential Class Members to contact the Settlement
5   Administrator to obtain information about the Settlement, and/or request a Long Form Notice and
6   Claim Form. Verita Decl. ¶15. The telephone hotline became operational on December 11, 2024,
7   and is accessible 24 hours a day, 7 days a week. *Id.* On February 19, 2025, Verita also established
8   an additional telephone hotline (1-866-568-7713) for potential class members to contact the
9   Settlement Administrator to request a claim number in the event that they want to file a claim online
10  and need to have a claim number generated. *Id.* ¶16.

11      The notice experts at Verita calculate that the proposed notice plan reached over 80% of the
12  possible 4 million class members. *Id.* ¶13.

13      The appropriate state and federal officials were provided notice of this Settlement as
14  required under CAFA.

15  **V.    ARGUMENT**

16      In assessing a motion for final approval of a class action settlement, courts utilize a three-
17  step approach to determine whether approval should be granted. *See Harbour v. Cal. Health &*
18  *Wellness Plan*, No. 21-cv-03322, 2024 WL 171192, at *3 (N.D. Cal. Jan. 16, 2024) ("A court may
19  approve a proposed class action settlement of a certified class only 'after a hearing and on finding
20  that it is fair, reasonable, and adequate,' and that it meets the requirements for class certification.").
21  *First*, the Court analyzes if the settlement class merits certification under Rule 23. *Second*, the Court
22  assess whether the settlement is fair, reasonable, and adequate under the prevailing case law. *Third*,
23  and finally, the Court determines if the notice provided was adequate.

24      **A.    The Court Should Certify the Class for Settlement Purposes**

25      To be granted final approval, a settlement must meet Rule 23's numerosity, commonality,
26  typicality, adequacy, predominance and superiority requirements. *See Amchem Prods., Inc. v.*
27  *Windsor*, 521 U.S. 591, 619–22 (1997); *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539,
28  556 (9th Cir. 2019). In its Preliminary Approval Order, the Court already determined that, for

settlement purposes only, the "Settlement Class meets all the prerequisites of Federal Rule of Civil Procedure 23 for class certification, including numerosity, commonality, typicality, predominance of common issues, superiority" when granting preliminary approval. ECF No. 397 at 2. Nothing in the interim occurred that should change the Court's previous determination. Indeed, none of the objections regarding the settlement address issues with settlement class certification.

### a.    The Settlement Class Satisfies the Requirements of Rule 23(a)

**Numerosity:** The first requirement for certification is met because the settlement class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). IPPs seek to certify a class of millions of class members, such that joinder of all members would be inefficient and impractical. *See* Srinivasan Decl. ¶1.

**Commonality:** The second prerequisite for certifying a class is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, IPPs allege that Defendants engaged in a conspiracy to fix, raise, maintain and/or stabilize the price of telescopes. In horizontal price-fixing antitrust cases, such as this one, common questions of law and fact, and their predominance, are presumed because the core issue in such a case is whether or not there was a conspiracy amongst conspirators to fix, raise, maintain, and/or stabilize prices and whether such price-fixing occurred. *Newberg on Class Actions § 20:23 (5th ed.).* "Because the gravamen of a price-fixing claim is that the price in a given market is artificially high, there is a presumption that an illegal price-fixing scheme impacts upon all purchasers of a price-fixed product in a conspiratorially affected market." *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 352 (N.D. Cal. 2005) (internal quotation marks and citation omitted).

**Typicality:** The Class Representatives' claims that Defendants illegally fixed, raised, maintained, and/or stabilized the prices and allocated the market for consumer telescopes, which resulted in artificially inflated market-wide prices charged by Defendants and paid by indirect purchasers are typical of the members of the class.  Therefore, the typicality prerequisite of Rule 23(a) is met. *See* Fed. R. Civ. P. 23(a)(3) (Courts should consider whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class.").

**Adequacy:** The interests of the Class Representatives and Settlement Counsel are perfectly aligned with the interests of the absent class members. *See* Fed. R. Civ. P. 23(a)(4) (A proposed class should be certified if "the representative parties will fairly and adequately protect the interest of the class."). The Class Representatives suffered the same injury as the absent class members in that they paid artificially inflated prices for telescopes manufactured by Defendants. Settlement Counsel shares that interest in that it sought to prove that Defendants engaged in alleged conduct. The Attorneys' Fee Motion and accompanying Joint Declaration details the vigor with which the Class Representatives and Settlement Counsel have litigated this case.

### b.    Rule 23(b)(3) Predominance and Superiority Are Satisfied

IPPs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**Predominance:** In horizontal price-fixing cases, questions as to the existence of the alleged conspiracy and as to the occurrence of price-fixing are readily found to predominate. *See Rubber Chems.*, 232 F.R.D. at 352; *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). IPPs' claims depend principally on whether Defendants participated in an anticompetitive conspiracy, and whether that conspiracy caused an artificial increase to the market price of telescopes. Thus, if IPPs were to prove these elements, based on common evidence, a jury could reasonably find that class members suffered injury as a result. *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2020 WL 7264559, at *9 (N.D. Cal. Dec. 10, 2020), *aff'd,* No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (granting final approval; "[i]n horizontal price-fixing cases, questions as to the existence of the alleged conspiracy and as to the occurrence of price-fixing are readily found to predominate."). Rule 23(b)(3) does not require all elements of a claim to be susceptible to class-wide proof; rather, it only requires that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (emphasis added).

**Superiority:** Class treatment is superior to other methods for the resolution of this case, including from a judicial efficiency perspective and given the relatively small amounts of alleged damages for each individual consumer. Indeed, litigating every class member's claims separately would result in a waste of judicial and party resources, given that the vast majority of evidence of liability would be identical. Rule 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods.*, 521 U.S. at 615; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."). Moreover, Settlement Class Members were free to exclude themselves if they wished to do so, as only twelve did.

c.    **The Court Should Confirm Settlement Class Counsel and Representatives**

For the reasons set forth in the Court's orders appointing Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein, LLP; and Susman Godfrey L.L.P. as counsel for the IPP class, the Court should confirm and appoint IPP Settlement Class Counsel. ECF Nos. 95 & 397; *see* Rule 23(a)(4).

For the reasons set forth in the Court's previous orders, the Court should also confirm its appointment of Madeline Bekielewski, Thomas Berta, Carey Briggs, Vincent Catanzaro, David Dick, Austin Griffith, Donnie Houston, Bentaro Huset, Greg Kendall, David Kerber, Deborah Lemar, Doug Lundy, John Maurice, Timothy McQuaid, Philip Moore, Brian Murphy, Herbert Nelson, Scott Plummer, Michael Price, David Quaglietta, Greg Ross, Ronald Troillett, Robert Welsh, Tony DiMambro, Jason Glydewell, Leon Greenberg, Michael Liskow, Sigurd Murphy, Jim Riley, Keith Uehara, Steven Zellers, Sarah Day Brewer, Thien Ngo, Jesse Smith, and Arthur Sines ("Plaintiffs") as Settlement Class Representatives ("Class Representatives"). *Id.*

B.    **The Settlement is Fair, Reasonable, and Adequate**

The Ninth Circuit adopts a "strong judicial policy that favors settlements" in class actions, because they "promote the amicable resolution of disputes and lighten the increasing load of

1    litigation faced by the federal courts." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539,

2    556 (9th Cir. 2019). This policy operates with greater force where, as here, "complex class action

3    litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

4    To assess the fairness of a class action settlement, Rule 23(e)(2) directs courts to evaluate

5    whether:

6    (A) the class representatives and class counsel have adequately
     represented the class;

7    (B) the proposal was negotiated at arm's length;

8    (C) the relief provided for the class is adequate, taking into account:
     (i) the costs, risks, and delay of trial and appeal;

9    (ii) the effectiveness of any proposed method of distributing
     relief to the class, including the method of processing class-
     member claims;

10   (iii) the terms of any proposed award of attorney's fees,
     including timing of payment; and

11   (iv) any agreement required to be identified under Rule
     23(e)(3); and

12   (D) the proposal treats class members equitably relative to each
     other.

13

14   Fed. R. Civ. P. 23(e)(2); *see also Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021)

15   (holding that the Ninth Circuit's eight-factors "fall within the ambit of the revised Rule 23(e).").

16                    **a.    The Class Was Adequately Represented**

17   Under Rule 23(e)(2), courts determine whether the class was adequately represented by

18   analyzing whether the settlement was negotiated at arm's length. To negotiate a fair and reasonable

19   settlement, "the parties [must] have sufficient information to make an informed decision about

20   settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

21   After years of litigation and extensive discovery, counsel for IPPs and Defendants convened

22   multiple times over several months to arrive at settlement terms. Srinivasan Decl. ¶2. This included

23   two full-day mediations with respected mediator, the Honorable Suzanne Segal, a former

24   Magistrate Judge of the Central District of California. *Id.*  The parties agreed to settle only after

25   both sides accepted Judge Segal's mediator's proposal following protracted negotiations. *Id.*

26   Moreover, the Settlement Agreement bears no signs of collusion among the parties. The

27   Ninth Circuit has identified three indicators of potential collusion in the settlement negotiation

28   process: (i) when class counsel receives a disproportionate distribution of the settlement proceeds;

1    (ii) when the parties negotiate a "clear sailing" arrangement providing for the independent payment

2    of attorney's fees; and (iii) when the parties arrange for a reversion of unused funds to defendants.

3    *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–48 (9th Cir. 2011). Here, none

4    of those hallmarks of collusion are present.

5         Indeed, Judge Segal's extensive involvement and oversight weighs heavily in favor of

6    finding fairness and that there was no collusion between the parties. *See Bluetooth*, 654 F.3d at 948

7    (participation of mediator not dispositive but is "a factor weighing in favor of a finding of non-

8    collusiveness."); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072, 2019 WL 1411510, at *8

9    (N.D. Cal. Mar. 28, 2019) ("[T]he Settlement Agreement is based on Judge Kim's Mediator's

10   Proposal. Thus, the settlement proposal is the product of arm's-length bargaining.").

11                    **b.    The Settlement Agreement Is a Fair and Adequate Result for the Class**

12        The relief provided to the class is far more than "adequate," considering (i) the costs, risks,

13   and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; (iii) the terms

14   of any proposed award of attorney's fees; and (iv) any agreement required to be identified under

15   Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C).

16                         1)      The Costs, Risks, and Delays of Further Litigation

17        The Settlement Agreement provides substantial monetary relief—a $32 million non-

18   reversionary fund. That amount represents an excellent result given the potential recovery and the

19   substantial risks and delay of ongoing litigation in this case, along with potential collection and

20   ability to pay problems with foreign defendants, as evidenced in the *Orion* litigation. *See docket*

21   *generally, Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd. et al.*, No. 5:16-cv-06370

22   (N.D. Cal.). The parties reached this settlement while Defendants' renewed motion to dismiss was

23   still pending and IPPs were preparing to serve expert reports. "[I]t is well-settled law that a proposed

24   settlement may be acceptable even though it amounts to only a fraction of the potential recovery

25   that might be available to the class members at trial." *In re MacBook Keyboard Litig.*, No. 18-cv-

26   02813, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023).

27        The IPPs' damages expert calculated that class damages in the range of $29 million to $165

28   million. Srinivasan Decl. ¶2. The $32 million settlement fund lies within the IPPs' expert's damages

estimate and represents between approximately 19% to 110% of the preliminary total estimate of damages at trial. *Id.* Thus, this recovery is consistent with recoveries in this District. *See MacBook Keyboard*, 2023 WL 3688452, at *9 (finding settlement amount satisfactory because it represented "approximately 9% to 28% of the total estimated damages *at trial*"); *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions").

Given the procedural posture of the litigation, many significant risks remain should the Settlement not be approved that would result in no or significantly less relief for the class, including: no class is certified or the class is certified for a shorter temporal duration; Defendants become insolvent; IPPs fail to withstand a motion for total or partial summary judgment; and IPPs fail to persuade a jury that Defendants engaged in the alleged conduct and that IPPs suffered damages as a result, among myriad other risks. Even if IPPs were successful at each stage of the litigation, relief for the class could then be delayed for years by appeals and potentially overturned. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.").

This Settlement reflects a fair result considering the potential trial recovery, the numerous dispositive risks, the costs of continuing litigation, and the delay in payment to the class. Here, further litigation poses particular risks and challenges given the complex and international nature of IPPs' claims. Courts recognize that such antitrust cases are riskier because they are "arguably the most complex action to prosecute." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007).

2)    <u>Distribution</u>

Subject to the Court's approval, IPPs intend to distribute the proceeds of the settlement fund on a *pro rata* basis to class members from the enumerated Indirect Purchaser Sates with valid claims, which are subject to vetting by Verita for misuse and fraud. During the claims process, claimants elected whether to receive their portion of the settlement via electronic transfer (e.g.,

Venmo, PayPal, etc.) or physical check. Funds will be paid after calculating class members' *pro rata* share of the settlement fund based on the aggregate valid claims submitted.

### 3)    Attorneys' Fees

As detailed in IPPs' Attorneys' Fees Motion, Settlement Counsel requested a total award of $10,666,667 in attorneys' fees, plus interest, representing a third of the total recovery. ECF No. 398. As per the Court's order, IPPs filed the Attorneys' Fees Motion 35 days in advance of the objection deadline and Verita immediately posted on the settlement website for class members to review. Of the millions of potential Class Members who received notice, **none** objected to the Attorneys' Fees Motion. Srinivasan Decl. ¶4. The absence of objections by Class Members weighs greatly in favor of the reasonableness of the request. *See, e.g.*, *In re LinkedIn ERISA Litig.*, No. 20-cv-05704, 2023 WL 8631678, at *10 (N.D. Cal. Dec. 13, 2023) ("And significantly, the lack of any objections to the fee request also supports Class Counsels' fee request."); *Meijer, Inc. v. Abbott Lab'ys*, No. 07-cv-5985, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) (noting no objections and awarding attorneys' fees "in the amount of one-third of the gross settlement amount – i.e., one-third of $52 million, or $17,333,333.33"); *In re Heritage Bond Litig.*, No. 02-md-1475, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) (approving a third of the gross settlement fund as attorneys' fees; "[t]he absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable.")

As detailed in the Attorneys' Fees Motion, the amounts requested are within the range granted in cases of similar complexity and effort and should be approved. ECF No. 298 at 19-21.

### 4)    Other Agreements

As discussed in the Preliminary Approval Motion, IPPs entered into a Confidential Supplemental Agreement with Defendants, available to the Court upon request for *in camera* and under seal review. The Confidential Supplemental Agreement is in the class's interest. IPPs will make this Confidential Supplemental Agreement available for the Court's inspection, should it so request. Confidential supplemental agreements in class action litigation are normal and permissible. *See, e.g.*, *In re 3DS Sys. Secs. Litig.*, No. 21-cv-1920, 2023 U.S. Dist. LEXIS 98683 (E.D.N.Y. June 5, 2023) (describing such agreement as "standard"); *Vataj v. Johnson*, No. 19-cv-06996, 2021 U.S.

Dist. LEXIS 75879 (N.D. Cal. Apr. 20, 2021) (approving class action settlement with side, supplemental agreement).

### c.    The Plan of Allocation Treats Class Members Equitably

As mentioned above, IPPs propose a *pro rata* plan of allocation to class members that file valid claims. The recovery to individual class members is therefore tied to the volume and type of their purchases, the number of other qualified class members making claims against the settlement fund, and the size of the overall fund.

Courts have repeatedly found *pro rata* distribution a reasonable and fair way to compensate classes, especially in antitrust class actions. *See Lithium Ion Batteries,* 2020 WL 7264559, at *7 (approving *pro rata* plan of distribution); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "fairly treats class members by awarding a pro rata share to the class members based on the extent of their injuries.") (quotation omitted).

The proposed plan of allocation is thus "fair, adequate, and reasonable" and merits approval.

### d.    Class Members' Positive Reaction to the Settlement Further Supports Approval.

As of filing, 76,884 potential class members have filed claims presumed to be non-fraudulent and the claims period is still ongoing. Verita Decl. ¶19. This 2% claims rate represents an appropriate result in the context of consumer class action claims. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (issuing final approval for a settlement with a 0.83% claims rate and describing it as "on par with other consumer cases"); *Theodore Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (class settlement with claims rate of "about two percent"); *Bostick v. Herbalife Int'l of Am., Inc.*, No. 13-cv-2488, 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015) (class settlement with "response rate of less than 1%"). The 2% claims rate, which will increase by the time the claims deadline runs in May, also lies directly within the range predicted by Verita and Settlement Counsel in the Motion for Preliminary Approval in describing the Court-approved notice and claims process. *See* ECF No. 389 at 9 ("Plaintiffs and Verita estimate the total number

of claimants to range from 40,000 to 300,000, resulting in a claims rate between 1% and 7.5% percent of the approximately 4 million class members."). Settlement Counsel will file an update on the claims process before the April 3, 2025 Fairness Hearing.

The *de minimis* number of opt-outs and objections further supports approval of the Settlement. The Court-ordered deadline for class members to object or opt-out of the Settlement passed on February 13, 2025. Only twelve proposed Class Members elected to opt-out and only five (many of whom are not actual settlement class members, as further detailed herein) objected to the Settlement. Verita Decl. ¶¶29-30. Such a result signals an enthusiastic endorsement by the Class and weighs in favor of approval. *See Cmty. Res. for Indep. Living v. Mobility Works of California*, LLC, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("The absence of a negative reaction weighs in favor of approval.") (quotation omitted); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-cv-02185, 2019 WL 6622842, at *10 (N.D. Cal. Nov. 12, 2019) (granting approval and holding that zero objections and 31 opt-outs in a class of approximately 511,000 "confirms that the settlement is fair and reasonable."); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class Members' positive reaction to the Settlement evinces the success of the notice plan and weighs in favor of approval.

### C.    The Objections Are Procedurally Improper, Meritless, or Both

Notice reached millions of potential Class Members and of those, only five chose to object. Each objection is meritless and should not factor into the Court's decision to finally approve the Settlement. The Objectors are either not members of the Settlement Class or have failed to carry their burden to show that any purported deficiencies render the Settlement or Notice Plan unreasonable. *See In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015). (approving settlement over objections and stating that "objectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement.") (citations omitted).

IPPs discuss each objection below.

a.    **Direct Purchaser "Conditional Objectors"**

DPPs improperly object to IPPs' Settlement, attempting to gain leverage regarding a dispute in their wholly separate litigation against Defendants. But the Court should not allow itself to be mired in DPPs' fishing expedition into impermissible discovery regarding IPPs' settlement.

DPPs put forth two "Conditional Objectors": Jason Steele and Pioneer Cycling & Fitness LLP ("Pioneer"). ECF No. 400 at 3. For **Pioneer**, DPPs do not attempt to argue, much less meet their burden to demonstrate, that Pioneer is a member of the IPP Settlement Class, claiming only that it made "approximately $15,000 worth of telescopes and telescope accessories *directly* from Celestron." *Id*. (emphasis added). Because Pioneer only made purchases directly from one of the Defendants, Celestron, it is not a member of the IPP Settlement Class for indirect purchasers and does not have standing to object. It has long been settled black letter law that only settlement class members have the ability to object at a fairness hearing to a proposed class action settlement. *See, e.g.*, *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1071 (N.D. Cal. 2017), *enforcement granted*, 2017 WL 914066 (N.D. Cal. Mar. 6, 2017) ("[Objector] is not a Class Member, and the Court need not consider its objection."); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) ("[N]onclass members have no standing to object to the settlement of a class action.").[5]

---

[5] DPPs attempt to cite *Sweet v. Cardona*, 121 F.4th 32, 44 (9th Cir. 2024) for the proposition that they may object to IPPs' settlement. But that case repeats long-settled Ninth Circuit—that only settlement class members may object at a class action fairness hearing, *id.* at 44— and demonstrates why the Court cannot consider their objection. In any event, the fact that a Defendant chose to settle with one class and not another, with a separate group of attorneys asserting separate claims on behalf of separate plaintiffs, cannot constitute "legal prejudice" and DPPs cite no case so holding because no such case exists.

DPPs claim that **Jason Steele** made various direct and indirect purchases of telescopes[6] between 2009 and 2012. ECF No. 400 at 3. But Steele lacks standing to object because he fails to argue that he is aggrieved as a member of the IPP Settlement Class. *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig. (In re First Capital),* 33 F.3d 29, 30 (9th Cir. 1994) (holding that only "an aggrieved class member" has standing to object to a proposed class settlement); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015) (same). The burden is on Steele to prove that he has standing to object (*i.e.,* that he is an aggrieved class member). *See In re Hydroxycut Mktg. and Sales Practices Litig.,* No. 09-cv-1088, 2013 WL 5275618, at *2 (S.D. Cal. Sep. 17, 2013) ("The party seeking to invoke the Court's jurisdiction—in this case, the Objectors— has the burden of establishing standing.") (citing *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 103–04 (1998)). All of Steele's objections are based on the interests of the DPP class, a class this Court expressly found him to be unfit to represent. *See* DPP Docket, ECF No. 596 at 2 (order stating that "Steele is an individual astronomy enthusiast residing in Texas" and finding "that Steele's interests are misaligned with the class, and his ultimate concern with functionality makes him an inadequate class representative."). At the very best, Steele is a Trojan horse, sent to by the DPPs in an attempt to disrupt the IPPs' Settlement. Because Steele seeks to only advocate from the rights of the DPP class, a class he was affirmatively ruled inadequate to represent, his objections carry no weight as to the fairness of the IPPs' Settlement, and should not be considered by the Court.

Even if the Court entertains DPPs' objections, they are meritless and improper. DPPs do not argue that the Settlement is unfair or unreasonable to its class members, that Settlement Counsel did anything less than zealously represent the Settlement Class, or that there was anything infirm

---

[6] DPPs also include purchases of telescope accessories, but accessories are not included in the IPP Settlement Class. *See* ECF No. 397 at 3 (preliminarily certifying the Settlement Class as "all persons and entities in the Indirect Purchaser States who, during the period from January 1, 2005 to September 6, 2023, purchased one or more ***Telescopes*** from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured.") (emphasis added).

about the Notice Plan or claims administration. Instead, counsel for DPPs, representing a wholly separate class and case, demand that the Court "not approve the proposed settlement unless and until Defendants disclose information sufficient to prove that they have and will maintain sufficient assets in the United States to both pay the proposed settlement amount to the IPPs and to satisfy an eventual judgment or settlement with the DPPs." ECF No. 5. But such an extraordinary demand for effectively a discovery request by "Conditional Objectors" claiming to be members of an uncertified class in separate litigation does not relate to whether IPPs' Settlement should be approved.[7] DPPs' gripe appears to be that they view the IPP settlement as too large. But that is not a flaw in the settlement. DPPs own statements are telling: concluding that absent their requested relief "it is impossible to determine whether the settlement is fair and reasonable ***to the DPP Class***." *Id*. (emphasis added). Of course, that is not the analysis on this motion.

None of the cases DPPs cite suggest that an appropriate basis to object to a class action settlement and deny final approval is the possibility a class settlement may impair a defendant's financial viability in wholly separate litigation. Indeed, such a rule would make no sense and would impair the ability of class counsel to zealously represent their class. Instead, each case on which DPPs rely details objections raised in the context of imbalances between subclasses or settlements treating members *of the same class* unfairly; neither applies here. *See True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010) (courts are "generally are wary of settlement agreements where some ***class members*** are treated differently than others."); *Ferrington v. McAfee, Inc.*, No. 10–cv–01455, 2012 WL 1156399, at *8 (N.D. Cal. 2012) (rejecting a settlement did not adequately compensate a ***subclass*** of the settlement); *Mirfashi v. Fleet Mortg. Corp*., 356 F.3d 781

_____

[7] As the Court is well aware, the very issues DPPs raise as an objection here have been fully briefed and taken under submission before the Court on the DPPs own docket. *See* Mot. for Financial Assurance & Asset Information, DPP Docket ECF Nos. 656. 658, 651, 668, 696, 701, 702, 703, 704. That docket is the proper venue for resolving DPPs' issues. *See In re Apple Inc. Device Performance Litig.*, No. 18-md-02827, 2021 WL 1022867, at *20 (N.D. Cal., 2021) (ruling that "to the extent that [the objector] seeks something more akin to discovery, he is not entitled to it.")

1   (7th Cir. 2004) (overturning approval of a settlement because a **subclass** did not have counsel);

2   *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007) (rejecting a settlement because

3   the distinction between two **subclasses** was arbitrary); *Am. Honda*, 749 F. Supp. 2d at 1068 ("draws

4   an arbitrary distinction among **class members** with identical legal claims"). That Defendants

5   decided to continue to pursue their litigation while IPPs resolved their claims is a matter for their

6   discretion. But there is no rule of law—and DPPs do not cite one—that says once a Defendant

7   decides to settle with indirect purchasers, they may only do so *if they also* decide to settle with

8   separate classes, asserting separate claims on equitable terms.  History is replete with examples in

9   antitrust class actions where this did not occur.

10          DPPs are demonstrably not objecting regarding the fairness or adequacy of the IPP

11   Settlement. They are represented by separate, Court-appointed, counsel who have litigated their

12   legally distinct claims for five years and are currently locked in a discovery dispute with the

13   Defendants in their own case. Here, direct and indirect purchasers had appointed separate counsel,

14   so that each can zealously pursue their own class's interests. *See In re Apple Inc. Smartphone*

15   *Antitrust Litig.*, No. 24-md-03113, 2024 WL 4512016, at *3 (D.N.J. Oct. 17, 2024) ("counsel is

16   necessary for the direct and indirect iPhone purchaser plaintiffs to ensure that their interests are

17   being fairly and adequately represented throughout litigation.") (quotation omitted). By objecting

18   to IPPs' Settlement on the grounds that it may impact "the DPP Class's ability to recover" in their

19   own litigation, DPPs seek to blur and undermine that crucial demarcation.[8]

20                    **b.**     **National Woodlands Preservation, Inc. ("Woodlands")**

21   ───────────────────

22   [8] DPPs also argue they have a right to be privy to the terms of the Confidential Supplemental

23   Agreement IPPs disclosed in their Preliminary Approval Motion because it "may treat the IPP Class

24   preferentially." ECF No. 400 at 10-11. DPPs cite no case in which a court permitted parties outside

25   of the class to evaluate confidential aspects of a class's settlement because that settlement may

26   impact an entirely separate litigation. As stated in the Preliminary Approval Motion, IPPs stand

27   ready to submit the Confidential Supplemental Agreement to the court for *in camera* review to

28   confirm that it weighs in favor of the Settlement's approval. ECF No. 389 at 10.

Next, Woodlands objects to the Settlement on the grounds that it believes the claims and distribution process is "defective with respect to non-individual entities" because "[t]here is no place to lodge a business name." ECF No. 401 at 2. But Woodlands is simply mistaken. The class definition, published on the settlement website in the Settlement Agreement and Preliminary Approval Order, and in the Email and Published Notice issued to potential class members expressly makes that clear: "all persons **_and entities_** in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023 purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured" may submit claims. *See* ECF Nos. 390-1, 391-1, 391-3 (emphasis added). Had Woodlands contacted Verita or Settlement Counsel, it would have been instructed to file a claim by putting its corporate name into the "First Name" or "Last Name" field, as many other entities have done throughout this claims process. Verita Decl. ¶20.

The notice documents and settlement website have been successful with driving claims from entities. To date, 67 claims have been submitted by a variety of entities. *Id*. ¶21. Although many entity claimants have clearly understood that they could utilize either the paper or online claim forms by simply putting their name in either the "First Name" or "Last Name" rows, at Settlement Counsel's instruction, Verita updated the claim forms to include an additional row for "Name of Entity." *Id*. ¶20. Woodlands' objections are all now moot.

### c.    Elman Barnes

Barnes objects on the grounds that: (1) the claims process discriminates against retail purchasers not issued claim numbers; (2) Verita and Settlement Counsel were not diligent enough in providing claim numbers; (3) the Settlement improperly includes a California Civil Code § 1542 waiver; and (4) the claim form improperly asks for state of residence. All of Barnes' objections should be overruled because they lack merit or have been mooted. Barnes, after contacting Verita on February 7, 2025, was issued a claim number and made an online claim on February 15, 2025. Verita Decl. ¶31. All class members without claim numbers can utilize this same process to make a claim online.

1           1)      <u>The Claims Process Treats All Potential Class Members Fairly</u>

Barnes objects because he mistakenly believes that claimants without a claim number were prejudiced because they could only submit claims by mail and receive payment by check. Barnes is wrong on the facts and the law. Any person or entity that believed they purchased a covered telescope can submit a claim, whether or not they have a claim number. Any claimant without a claim number can contact Verita to have one generated, allowing them to make an online claim. Still, Barnes objects because he and others that submit paper claims purportedly "must go through an onerous process" of filling out the form by hand and electing to receive a physical check. ECF No. 399 at 2-3. As this Court weighed in approving IPPs' Notice Plan, courts routinely approve and order claims administration protocols that utilize physical claims and checks. For instance, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015), the Ninth Circuit affirmed approval of a settlement where claimants "could submit a claim for a gift card via e-mail, the class action website, or regular mail" but could "submit a claim for cash by regular mail only, and had to include the last four digits of his or her Social Security Number." *See also In re Google Plus Profile Litig.*, No. 18-cv-06164, 2021 WL 242887, at *4 (N.D. Cal. Jan. 25, 2021) (approving settlement over objections regarding method of payment); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09–cv–01911, 2015 WL 428105, at *9 (N.D. Cal. Jan. 30, 2015) (approving settlement over objections regarding issues with online versus paper claim forms). This makes sense because all claims, regardless of how they are submitted, are treated the equally by the claims administrator and subject to a *pro rata* distribution, which is typical in antitrust class action settlements. It does not relate to whether a claimant will receive payment or the amount they will get. Verita Decl. ¶23. It was not long ago that *all* claims for class action settlements were submitted physically and payments sent via check. *See, e.g., In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944, 2016 WL 721680, at *13 (N.D. Cal. Jan. 28, 2016) (approving settlement utilizing only paper claim forms and checks). That Barnes or any other claimant had to fill out and mail a standard claim form and receive payment by check does not prejudice them or treat them unfairly.

2)    Verita Diligently Provided Claim Numbers

Verita promptly issued claim numbers to potential class members who inquire. *Id.* ¶24. Barnes himself contacted Verita and received and claim number that he used to submit an online claim. [9] Throughout the claims process, Verita responded to 115 inquiries about claim numbers and provided them, promptly responding within a week. Verita Decl. ¶24. Barnes himself received a claim number within a week by utilizing this simple process. *Id.* The claim form and settlement website clearly list the toll-free hotline to call for general claims inquires. *Id.* ¶15. Although this service was available to all since the beginning of the claims process, at counsel's direction, Verita made it more streamlined, adding a new dedicated toll-free hotline specific to claim number requests. *Id.* ¶25. Language directing claimants to the hotline features prominently on the settlement website.[10] *Id.* The mere fact that certain potential class members had to communicate with the claims administrator to receive a claim number, is not valid grounds for an objection because it does not prejudice any class members. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 329–30 (approving settlement and overruling objections based on difficulties communicating with the settlement administrator and utilizing the claims website).

i)    ***The Claim Number Protocol Protects Against Fraud and Was Recommended by the Claims Administrator***

Potential Settlement Class Members who submit claims online are required to have a claim number to protect against the well-known risks of fraudulent claims. Verita Decl. ¶18. Verita

---

[9] On Friday, February 7, 2025 at 4:01PM, Barnes submitted an inquiry to Verita regarding his "dissatisfaction with the way that the settlement website does not allow claimants that do not have a claim ID to file a claim online." Verita Decl. ¶31. Within eight minutes, Verita responded that it has received his complaint and forwarded to the relevant parties. *Id.* Just one week later, on February 14, 2025, Verita issued Barnes a claim number, encouraged him to submit a claim, and provided a link to the settlement website. *Id.* On February 15, 2025, Barnes filed a claim online. *Id.*

[10] The language reads: "If you wish to file a claim online but have not received a claim code, please call 866 568 7713 to speak to the Settlement Administrator about generating one." It is featured on both the website's homepage and in the FAQs regarding how to make a claim. Verita Decl. ¶25.

1  specifically instated the claim number protocol for online claims because, in their experience, it is

2  the most efficient way to protect against fraudulent claims in this environment. *Id.*

3         3)      Courts Routinely Approve Settlements with § 1542 Waivers

4         Barnes also objects to the Settlement's inclusion of a waiver under California Civil Code

5  § 1542. ECF No. 399 at 5. But § 1542 waivers are not only commonplace in class action

6  settlements, they are often a necessity.  For instance, the court in *In re Toyota Motor Corp.*

7  *Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 10-md-02151, 2013 WL

8  12327929, at *23 (C.D. Cal. July 24, 2013), discussed this issue in rejecting an objection to the

9  1542 waiver, citing a string of class cases approving settlements that include them.  It reasoned,

10 "Class settlements often waive this protection, and such waivers are not generally viewed as an

11 impediment to class settlement. . . . ***[T]he Court is dubious as to whether the class claims could***

12 ***be settled absent such a waiver***." *Id.* (emphasis added) (collecting cases). Such waivers are

13 uncontroversial in the class action context because like all class settlements, the extent of any

14 release is constrained by the identical factual predicate doctrine. *See, e.g., Reyn's Pasta Bella, LLC*

15 *v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (applying the identical factual predicate

16 doctrine to a class action settlement release); *Miller v. Wellpoint Companies, Inc.*, No. 09-cv-5666,

17 2010 WL 11520703, at *3 (C.D. Cal. May 17, 2010) ("The release is not so broad as to extend

18 beyond the "identical factual predicate" of this case, which the Ninth Circuit has held to be the

19 appropriate outer scope of a class action release. Although there is an extended discussion in the

20 Settlement Agreement itself regarding a waiver of Cal. Civ. Code § 1542, the release language

21 itself—even its reference to unknown claims—does not suggest that class members are releasing

22 more claims than would be permissible, and therefore does not seem to be problematic.").

23        Because § 1542 waivers are routinely approved in class settlements, and like all class action

24 releases, are limited by to the facts alleged, Barnes' objections should be overruled. *See Estorga v.*

25 *Santa Clara Valley Transp. Auth.*, No. 16-cv-02668, 2020 WL 7319356, at *5 (N.D. Cal. Dec. 11,

26 2020) (approving settlement and holding that "waiving rights under Section 1542 of the California

27 Civil Code is a common and accepted practice in this District").

28        4)      Barnes' State of Residence Objections Are Misplaced and Mooted

Barnes also objects because he mistakenly believes that eligibility to participate in the settlement is based solely on legal residency and that requesting a claimants' "'State of Residence' is not relevant." ECF No. 399 at 6. The Settlement does not limit claims to residents of *Illinois Brick* repealer states because it is defined as "all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured." ECF No. 390-1 at 3-4. The language "in the Indirect Purchaser States" means at the time of purchase. As Barnes acknowledged, the settlement website makes this clear, stating that the Settlement "includes everyone who indirectly purchased one or more telescopes from January 1, 2005 to September 6, 2023, from a distributor/retailer that was manufactured by a defendant or alleged co-conspirator, while located in" an Indirect Purchaser State. ECF No. 399 at 7. Moreover, indirect purchaser settlements regularly collect this information. *See Lithium Ion Batteries*, 2020 WL 7264559, at *12 (granting final approval of settlement that requested state of residence information). Here, all individuals and entities that indirectly purchased one of the Defendants' telescopes are encouraged to submit a claim. Whether that claim will be valid depends on several factors, including the place of purchase, as analyzed by Verita and Settlement Counsel during the claims process.

Regardless, Barnes himself is not even affected by this this objection in any event. As he details, he is both a resident of California and purchased his telescope in state. He has been encouraged to make a claim. ECF No. 399 at 1. While processing claims, none will be denied solely because a claimant lists a non-repealer state as the state of residence. Verita Decl. ¶27. If a non-repealer state is listed, Verita will follow up with the claimant to determine the state in which a purchase was made. *Id*. To more efficiently gather this information, Verita, at counsel's direction, has added a "State in which purchase was made" line to the claim forms. *Id*. Barnes' objections should be overruled or disregarded as moot.

**d.    Pat Zhen**

Zhen is not a class member because he purchased a telescope in Puerto Rico, a non-*Illinois Brick* repealer state explicitly excluded from the settlement class.[11] *See* ECF No. 390-1 at 6. Further, the release of claims is limited to class members who made purchases in Indirect Purchaser States only, so there is no possibility of harm to those who indirectly purchased subject telescopes in Puerto Rico because they are still free to bring their own claims, to the extent any court actually recognizes such a claim. Zhen is therefore not a class member (and therefore lacks standing), none of his claims are being released by the settlement, and his arguments should not be considered. *See San Francisco NAACP*, 59 F. Supp. 2d at 1032 ("[N]onclass members have no standing to object to the settlement of a class action.").[12]

**e.     Mike Sussman**

Susman objects for similar reasons to Barnes regarding having to file a paper claim and that objection should be overruled for the reasons detailed above. Sussman also objects because he believes that the Court-approved notice plan did not provide adequate information regarding how and where to object. Sussman is wrong. All the information he demands can be found in the Settlement website's FAQs. *See* "12. How do I submit an objection to the Settlement?" available at https://www.telescopesettlement.com/frequently-asked-questions.aspx (last visited February 27,

---

[11] IPPs note that courts throughout the Ninth Circuit, this district, and the country, have held that Puerto Rico is not an *Illinois Brick* repealer jurisdiction. *See, e.g., Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 626 (N.D. Cal. 2020) (dismissing the claims and holding that "Puerto Rico does not have an *Illinois Brick* repealer statute.); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 373 (D.R.I. 2019) ("join[ing] the majority of courts in concluding that the [indirect purchasers] do not have standing to bring antitrust claims under Puerto Rico law").

[12] Zhen's objection also may be untimely. The objection was received by the Court on February 19, 2025, more than three business days after the deadline. The docketed scan of the objection's envelope is cut in half, so counsel cannot review the postmark date to make a determination. *See* Preliminary Approval Order, ECF No. 397 at 7 ("In the event a postmark is illegible, the date of mailing shall be deemed to be three (3) days prior to the date" received.)

2025). The FAQ answer provides detailed instructions of the who, what, when, and where of objecting to the Settlement. *Id.* Sussman's objection lacks any merit and should be overruled.[13]

### D.    Reversions and *Cy Pres*

There is no reversion of unused funds to the Defendants. Should a balance remain after distribution to the class (whether by reason of tax refunds, uncashed checks, or otherwise), Settlement Counsel will seek to reallocate such settlement funds to class members that did cash their checks, if economically feasible to do so. *See In re Google Location Hist. Litig.*, No. 18-cv-05062, 2024 WL 1975462, at \*7 (N.D. Cal. May 3, 2024) (approving *cy pres* settlement and stating that "[t]he Ninth Circuit permits a *cy pres* distribution in circumstances where the settlement fund is 'non-distributable'"). If unused settlement funds are not economically feasible to redistribute, Interim Co-Lead Class Counsel proposes to donate the funds to Stellar Dreams, a program directed by Science Haven, a 501(c)(3) non-profit, subject to the Court's approval.  Stellar Dreams seeks "to close the equity gap in science, particularly astronomy, by giving 100 telescopes, astronomy education, and citizen science opportunities to students in grades 5-12, who come from underrepresented          backgrounds          in          science          and          astronomy."          *See* https://www.thesciencehaven.org/stellardreams (last visited February 27, 2025).

## VI.    CONCLUSION

For all the reasons set forth above, IPPs respectfully request that this Court: (1) grant final approval of the Settlement; (2) confirm certification of the Settlement Class; (3) confirm Class Representatives as representatives for the certified Settlement Class; (4) confirm Settlement Class Counsel as counsel for the certified Settlement Class; (5) dismiss with prejudice all claims against Defendants; and (6) approve the proposed Plan of Allocation.

---

[13] Sussman's objection is also likely untimely. The objection was received by the Court on February 26, 2025, nearly two weeks after the deadline. The docketed scan of the objection's envelope does not contain a postmark for counsel to review. *See* Preliminary Approval Order, ECF No. 397 at 7.

1    Dated:  February 28, 2025

                                            Respectfully Submitted,
2

3                                            _/s/ Kalpana Srinivasan_____
                                            Kalpana Srinivasan (SBN 237460)
4                                            Marc M. Seltzer (SBN 54534)
                                            Steven Sklaver (SBN 237612)
5                                            Michael Gervais (SBN 330731)
6                                            **SUSMAN GODFREY L.L.P.**
                                            1900 Avenue of the Stars, Ste. 1400
7                                            Los Angeles, CA 90067
                                            Phone: 310-789-3100
8                                            ksrinivasan@susmangodfrey.com
                                            mseltzer@susmangodfrey.com
9                                            ssklaver@susmangodfrey.com
10                                            mgervais@susmangodfrey.com

11                                            Alejandra C. Salinas (*pro hac vice*)
                                            **SUSMAN GODFREY L.L.P.**
12                                            1000 Louisiana Street, Suite 5100
                                            Houston, Texas 77002
13                                            Telephone: (713) 651-9366
14                                            Facsimile: (713) 654-6666
                                            asalinas@susmangodfrey.com
15
                                            Thomas K. Boardman (SBN 276313)
16                                            **SUSMAN GODFREY L.L.P.**
                                            One Manhattan West, 50th Floor
17                                            New York, New York 10001
                                            Phone: 212-336-8330
18                                            tboardman@susmangodfrey.com
19
                                            /s/ Lin Y. Chan_____
20                                            Lin Y. Chan (SBN 255027)
21                                            Eric B. Fastiff (SBN 182260)
                                            Reilly T. Stoler (SBN 310761)
22                                            **LIEFF CABRASER HEIMANN &**
                                            **BERNSTEIN LLP**
23                                            275 Battery Street, 29th Floor
24                                            San Francisco, California 94111
                                            Telephone: (415) 956-1000
25                                            Facsimile: (415) 956-1008
                                            lchan@lchb.com
26                                            efastiff@lchb.com
                                            rstoler@lchb.com
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Adam J. Zapala*
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
James G. Dallal (SBN 277826)
**COTCHETT, PITRE &**
**McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

*Settlement Class Counsel for the Indirect*
*Purchaser Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES