1

2

3                    UNITED STATES DISTRICT COURT

4                  NORTHERN DISTRICT OF CALIFORNIA

5                          SAN JOSE DIVISION

6

7  IN RE TELESCOPES ANTITRUST          Case No.   5:20-cv-03639-EJD
   LITIGATION
8                                       **ORDER GRANTING MOTION FOR
                                        FINAL APPROVAL; GRANTING
9                                       MOTION FOR ATTORNEYS' FEES,
                                        EXPENSES, AND SERVICE AWARDS**
10

11                                      Re: Dkt. Nos. 398, 404

12          Before the Court is Indirect Purchaser Plaintiffs' ("IPPs") Motion for Final Approval of

13  Class Action Settlement and Motion for Attorney Fees, Expenses, and Service Awards.  ECF Nos.

14  398, 404.  Four *pro se* objectors and two represented by counsel for the Direct Purchaser Plaintiff

15  class ("DPPs") in a separate case before this Court oppose approval of the Settlement Agreement.

16  ECF Nos. 399, 400, 401, 402, 403.  The Court held a Fairness Hearing on April 3, 2025, where all

17  parties and DPP objectors were heard.

18          Having considered the motion briefing, the terms of the Settlement Agreement, the

19  objections and response thereto, the arguments of counsel, and the other matters on file in this

20  action, the Court **GRANTS** the Motion for Final Settlement Approval.  The Court finds the

21  Settlement Agreement to be fair, adequate, and reasonable.  The provisional appointments of the

22  Class Representatives and Class Counsel are confirmed.  The Court also **GRANTS** Class

23  Counsel's Motion for Attorney Fees, Expenses, and Service Awards.

24  **I.      BACKGROUND**

25          IPPs allege that Defendants and related individuals conspired to unlawfully fix or stabilize

26  prices for consumer telescopes, resulting in IPPs paying more than they would have in the absence

27

28

of Defendants' alleged conduct.  Defendants in this Settlement Agreement are the following

entities: Synta Technology Corp. of Taiwan; Suzhou Synta Optical Technology Co., Ltd.; Nantong

Schmidt Opto-Electrical Technology Co. Ltd.; Synta Canada International Enterprises Ltd.;

Pacific Telescope Corp.; Olivon Manufacturing Co. Ltd.; SW Technology Corporation; Celestron

Acquisition, LLC and Olivon USA, LLC.

The parties reached settlement on September 7, 2023, after two full-day mediation sessions

with an experienced mediator, the Honorable Suzanne Segal, a former Magistrate Judge of the

Central District of California.  ECF No. 398-1, ¶ 53.  The parties ultimately accepted Judge

Segal's mediator's proposal.  *Id.*  On November 4, 2024, the Court granted preliminary approval

of the Settlement Agreement and approved the proposed Notice Plan.  ECF No. 397.  The Court

appointed thirty-five individual IPPs as representatives for the Class, and appointed Cotchett, Pitre

& McCarthy, LLP; Lieff Cabraser Heimann & Bernstein, LLP; and Susman Godfrey L.L.P., as

counsel of the Settlement Class ("Class Counsel").  *Id.*

A.    **Terms of the Settlement Agreement**

1.    **Class Definition**

Under the Settlement Agreement, the Settlement Class is defined as:

> all persons and entities in the Indirect Purchaser States (as defined
> herein) who, during the period from January 1, 2005 to September 6,
> 2023, purchased one or more Telescopes from a distributor (or from
> an entity other than a Defendant) that a Defendant or alleged co-
> conspirator manufactured. Excluded from the Class are Defendants;
> their parent companies, subsidiaries and Affiliates; any co-
> conspirators; Defendants' attorneys in this Action; federal
> government entities and instrumentalities, states and their
> subdivisions; all judges assigned to this Action; all jurors in this
> Action; and all Persons who directly purchased Telescopes from
> Defendants but only for those direct purchases of Telescopes.

Settlement Agreement ¶ 1(e), ECF No. 390-1.[1]

---

[1] Indirect Purchaser States are defined in the Settlement Agreement as Arizona, Arkansas,
California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine,
Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New
Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South

United States District Court
Northern District of California

### 2. Class Relief

Defendants agrees to a non-reversionary $32,000,000 common settlement fund to cover all costs associated with the Notice Plan, monetary benefits to Settlement Class Members, incentive awards for the Class Representatives, and Class Counsel's attorneys' fees and expenses. *Id.* ¶ 15. Should a balance remain after distribution to the Settlement Class, Class Counsel may redistribute such settlement funds to Settlement Class Members that cashed their checks. If unused settlement funds are not economically feasible to redistribute, Class Counsel may donate the funds to Stellar Dreams, a program directed by Science Haven, a 501(c)(3) non-profit, subject to the Court's approval.

### 3. Releases and Dismissal of Action

In consideration of the Class Relief, the Settlement Class releases all claims against Defendants arising from the facts of this case and dismisses with prejudice the present action. *Id.* ¶¶ 1(w), 10, 13. Claims excluded from the release are claims against Defendants for "product liability, breach of contract, breach of warranty or personal injury, claims for direct purchases of Telescopes, [] any other claim unrelated to the allegations in the Action of restraint of competition or unfair competition with respect to Telescopes[, and] . . . claims to enforce the terms of this Settlement Agreement." *Id.* ¶ 14.

### 4. Attorneys' Fees and Expenses

The Settlement Agreement provides that Class Counsel may submit an application for fees and expenses to the Court for approval, and the amount awarded will be paid from the gross settlement fund. *Id.* ¶¶ 29–32.

### B. Class Notice and Claims Administration

The Settlement Agreement is being administered by Verita. Following the Court's Preliminary Approval Order, Verita implemented the Court-approved Notice Plan. The Notice Plan included email and postcard notice, media notice, an internet digital notice campaign, a

---

Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. Settlement Agreement ¶ 1(q).

settlement website, a toll-free telephone number, and a postal mailing address. The Notice Plan reached over 80% of the estimated 4 million Settlement Class Members. Verita received over one million claims and thoroughly vetted these claims for fraud and misuse. The Court-ordered deadline to opt out or object expired on February 13, 2025, but the claims deadline does not run until May 20, 2025. The claims submitted thus far represent approximately 2% of the estimated 4 million Settlement Class Members with 12 opt-outs.

### C.    Objections

The Court received five written objections to the Settlement Agreement filed on behalf of six objectors. There are no objections to the request for fees, expenses, and service awards. The Court will discuss the substance of these objections in its analysis below.

## II.    FINAL APPROVAL OF SETTLEMENT

### A.    Legal Standard

At final approval, the Court must first conduct a "rigorous" analysis to confirm that the requirements for class certification under Rule 23(a) and 23(b)(3) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997); *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations omitted). A court may then approve a proposed class action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, courts generally must consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

United States District Court
Northern District of California

Furthermore, class settlements reached prior to formal class certification require a "heightened fairness inquiry." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). When reviewing such a pre-certification settlement, the district court must not only explore the *Churchill* factors but also "look[ ] for and scrutinize[ ] any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id*. at 1043 (internal quotation marks omitted).

### B.    Discussion

#### 1.    Class Certification

This analysis begins with an examination of whether class treatment remains appropriate under Rule 23(a) and Rule 23(b)(3).

First, the Court finds that Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy remain satisfied. The Settlement Class includes millions of IPPs, making it so numerous that joinder of all members is impracticable. The focus of this action—Defendants' alleged conspiracy to raise, fix, maintain or stabilize the prices of telescopes, as well as their unlawful monopolistic conduct—is common to all Class Members. The Class Representatives are typical of the Settlement Class they seek to represent because they purchased consumer telescopes and paid supracompetitive prices caused by Defendants' alleged conspiracy. Class Representatives and Class Counsel have fairly and adequately represented the interests of the Class. No conflicts of interest appear as between Class Representatives and the Settlement Class Members, nor is there any evidence that Class Counsel have any conflicts of interests with Settlement Class Members.

Second, as to Rule 23(b)(3), common questions of law and fact predominate over any questions affecting individuals here because every Settlement Class Member has been subjected to the same alleged conduct which caused the same type of harm. The class action mechanism is also superior here given the small amount in dispute for individual class members in comparison to the cost of individual litigation. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  The alternatives to class certification—approximately 4 million separate, individual, and time-

2  consuming proceedings, or a complete abandonment of claims by a majority of class members—

3  are not preferable.

4      Therefore, the Court finds all factors have been met and the Class shall remain certified for

5  the purposes of the Settlement Agreement.  The Court also reaffirms the appointment of Class

6  Counsel and Class Representatives pursuant to Rule 23(g) for all the reasons identified in its

7  Preliminary Approval Order.

8          **2.      Adequacy of Notice**

9      A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

10  class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  "[T]he class must

11  be notified of a proposed settlement in a manner that does not systematically leave any group

12  without notice."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).

13  Adequate notice requires the best notice practicable, whereby the notice must be reasonably

14  calculated to apprise the Settlement Class members of the proposed settlement and of their right to

15  object or to exclude themselves; must constitute due, adequate, and sufficient notice to all persons

16  entitled to receive notice; and must meet all applicable requirements of due process and any other

17  applicable requirements under federal law.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812

18  (1985).  Due process requires "notice reasonably calculated, under all the circumstances, to apprise

19  interested parties of the pendency of the action and afford them an opportunity to present their

20  objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

21      The Court finds that the Notice Plan provided the best notice practicable.  Pursuant to the

22  procedures approved by the Court in its Preliminary Approval Order, Verita carried out the Notice

23  Plan and reached 80% of potential Settlement Class Members.  The Notice Plan employed

24  methods including email, direct mail, publication notices, a settlement website, a toll-free

25  telephone number, and a postal mailing address.  The settlement website address was prominently

26  displayed in all notice documents.  The settlement website contained relevant documents and

27  Case No.: 5:20-cv-03639-EJD
28  ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES,
EXPENSES, AND SERVICE AWARDS

information including the Class Notice, Complaint, Settlement Agreement, the Preliminary

Approval Order, and the Motion for Attorneys' Fees, Expenses, and Service Awards.  The

settlement website also included answers to frequently asked questions, instructions for how

Settlement Class Members could opt out or object, instructions for how to obtain other case-

related information, and contact information for the Settlement Administrator.  Given the great

lengths that Verita took to notify the Settlement Class and the resulting expansive reach of the

Class Notice, the Court finds that the Court-approved Notice Plan has been fully and properly

implemented and the Settlement Class has been provided adequate notice of the pendency of this

action and the opportunity to opt out or present their objections.

### 3.      Settlement is Fair, Adequate, and Reasonable

The Court finds that the Settlement Agreement is fair, adequate, and reasonable under the

*Churchill* factors and Rule 23(e)(2).  The Court will analyze each relevant factor in turn.

### a.      Strength of the Case

To assess strength of the case, "the district court's determination is nothing more than an

amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688

F.2d at 625 (internal quotations omitted).  There is no "particular formula by which that outcome

must be tested," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), and the

district court is not required to render specific findings on the strength of all claims.  *Lane*, 696

F.3d at 823.

The Court finds that the Settlement Agreement adequately reflects the strength of IPPs'

case, as well as Defendants' position.  The strengths of this case include the large number of

potential class members and a body of uncontested facts concerning Defendants' conduct.

However, this litigation presents significant hurdles that could weaken Plaintiffs' case, including

potential challenges to class certification and the inherent intricacies of class actions of this

magnitude.  The Court finds that the judicial policy favoring compromise and settlement of class

action suits is applicable here.  *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES,
EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

2008).

### b. Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Settlement Agreement reflects a fair result considering the potential trial recovery, numerous dispositive risks, costs of continuing litigation, and delay in payment to the class. The parties reached this Settlement Agreement while Defendants' renewed motion to dismiss was still pending and IPPs were preparing expert reports. Continued litigation posed particular risks and challenges given the pending motion, anticipated challenges to expert reports, and complex and international nature of IPPs' claims. Even if IPPs were successful at each stage of litigation, relief for the class could have been further delayed by appeals. Given the procedural posture of the litigation, many risks remained that could have resulted in no or significantly less relief for the Settlement Class.

### c. Amount Offered

The Settlement Agreement provides substantial monetary relief—a $32 million non-reversionary fund. The $32 million settlement fund lies within the IPPs' expert's damages estimate and represents between approximately 19% to 110% of the preliminary total estimate of damages at trial. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023). IPPs' recovery potentially exceeds recoveries approved in this district. *See MacBook Keyboard*, 2023 WL 3688452, at *9 (finding that a settlement amount was satisfactory because it represented "approximately 9% to 28% of the total estimated damages *at trial*"); *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *Deaver v. Compass Bank*, No. 13-cv-00222, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (finding a settlement that equaled "10.7 percent of the total potential liability exposure, before any deductions for fees, costs,

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES, EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

1    or incentive awards" was "fair and reasonable").

2        The Court also notes that there is no reversion of unused funds to Defendants. Should a

3    balance remain after distribution to the Settlement Class, and unused settlement funds are not

4    economically feasible to redistribute, Class Counsel may donate the funds to Stellar Dreams, a

5    non-profit program that seeks "to close the equity gap in science, particularly astronomy, by giving

6    100 telescopes, astronomy education, and citizen science opportunities to students in grades 5-12,

7    who come from underrepresented backgrounds in science and astronomy." *See*

8    https://www.thesciencehaven.org/stellardreams. The Court finds a *cy pres* distribution of

9    remaining funds, if any, to Stellar Dreams is appropriate for this case.

10                    **d.    Extent of Discovery**

11        Prior to reaching the Settlement Agreement, the parties engaged in years of particularly

12    contentious discovery, requiring participation in regular discovery motion practice and

13    conferences with Magistrate Judge DeMarchi. The Court finds that the amount of investigation,

14    discovery, and litigation reflects that the parties had thuroughly developed a perspective on the

15    strengths and weaknesses of their respective cases to "make an informed decision about

16    settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney*

17    *v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

18                    **e.    Reaction of Class Members**

19        "[T]he absence of a large number of objections to a proposed class action settlement raises

20    a strong presumption that the terms of a proposed class settlement action are favorable to the class

21    members." *In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation

22    omitted); *see also Churchill*, 361 F.3d at 577 (holding that approval of a settlement that received

23    45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 settlement class members was

24    proper). Here, the *de minimis* number of opt-outs and objections further support approval of the

25    Settlement Agreement. Only twelve Class Members elected to opt out and the Court received only

26    five written objections on behalf of six Settlement Class Members. Such a result weighs in favor

27

28    Case No.: 5:20-cv-03639-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES,
EXPENSES, AND SERVICE AWARDS

9

United States District Court
Northern District of California

1    of approval.  *See Cmty. Res. for Indep. Living v. Mobility Works of California*, *LLC*, 533 F. Supp.

2    3d 881, 889 (N.D. Cal. 2020) ("The absence of a negative reaction weighs in favor of approval.")

3    (quotation omitted); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-cv-02185, 2019 WL 6622842 at *10

4    (N.D. Cal. Nov. 12, 2019) (granting approval and holding that zero objections and 31 opt-outs in a

5    class of approximately 511,000 "confirms that the settlement is fair and reasonable."); *In re*

6    *Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs

7    and objections in comparison to class size is typically a factor that supports settlement approval.").

8                        **f.      Equitable Plan of Allocation**

9            The Court also approves the plan to distribute the proceeds of the settlement fund on a *pro*

10   *rata* basis to Settlement Class Members in the enumerated Indirect Purchaser States.  A *pro rata*

11   allocation treats all Settlement Class Members fairly because their recovery is tied to the volume

12   and cost of their purchases, the number of other qualified Settlement Class Members making

13   claims against the settlement fund, and the size of the overall fund.  *Pro rata* distribution is

14   generally a reasonable and fair way to compensate classes, especially in antitrust class actions such

15   as this.  *See Lithium Ion Batteries,* 2020 WL 7264559, at *7 (approving *pro rata* plan of

16   distribution); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058, 2017 WL 2481782,

17   at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "fairly treats class

18   members by awarding a pro rata share to the class members based on the extent of their injuries.")

19   (quotation omitted); *In re High-Tech Employee Antitrust Litig.*, No. 11–cv–02509, 2015 WL

20   5159441, at *8 (N.D. Cal. Sept. 2, 2015) (approving pro rata distribution); *Four in One Co. v. S.K.*

21   *Foods, L.P.*, No. 08–cv–3017, 2014 WL 4078232, at *15 (E.D. Cal. Aug. 14, 2014) (approving

22   "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified

23   claimants' volume of qualifying purchases" as "fair, adequate, and reasonable").  The Court finds

24   the plan of allocation is fair to Settlement Class Members and supports a finding that the

25   Settlement Agreement is fair, adequate, and reasonable.

26

27   Case No.: 5:20-cv-03639-EJD

28   ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES,
     EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

### 4.    Collusion

The Ninth Circuit has articulated the following "subtle signs" of collusion of which a court should be "particularly vigilant" when scrutinizing settlements achieved prior to class certification: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "clear sailing" arrangements; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted).

The Court finds that there is no evidence of conflicts of interest nor are there "subtle signs" of collusion here. After years of litigation and extensive discovery, counsel for all parties finally reached an agreement to resolve this matter after two full-day mediations with an experienced and well-respected mediator. The parties agreed to settle only after both sides accepted Judge Segal's mediator's proposal following protracted negotiations. Judge Segal's involvement and oversight are favorable factors to finding fairness and a lack of collusion between the parties. *See Bluetooth*, 654 F.3d at 948 (participation of mediator is not dispositive but is "a factor weighing in favor of a finding of non-collusiveness.").

### 5.    Objections

The Court received five written objections from the following objectors: DPPs, National Woodlands Preservation, Inc. ("Woodlands"), Elman Barnes, Pat Zhen, and Mike Sussman.

#### a.    DPPs

Counsel for two of the DPPs in *Spectrum Scientifics, LLC et al v. Celestron Acquisition, LLC et al*, No. 20-cv-03642-EJD, oppose approval of the Settlement Agreement. ECF No. 400. DPPs argue that the approval of this Settlement Agreement may impact Defendants' ability to pay any potential judgment in the DPPs' case. They cite to *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010), and *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, *8 (N.D. Cal. 2012), for the proposition that a settlement that injures one class at the expense of another is improper.

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES, EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

For the reasons explained on the record, the Court overrules DPPs' objection. The Court's fiduciary duty today is to the IPP Settlement Class, and the Court is tasked with conducting a rigorous review of the Settlement Agreement to determine whether it is fair, adequate, and reasonable to *this* class. DPPs do not object to the Settlement Agreement as unfair, inadequate, or unreasonable to the Settlement Class Members. [2] Instead, DPPs ask the Court "not approve the proposed settlement unless and until Defendants disclose information sufficient to prove that they have and will maintain sufficient assets in the United States to both pay the proposed settlement amount to the IPPs and to satisfy an eventual judgment or settlement with the DPPs." This objection seeks to protect the interests of a different class in a separate case, at the expense of the IPP Settlement Class here. Denying final approval of the Settlement Agreement because of its potential financial impact on a different and separate entity would be unprecedented and a breach of the Court's fiduciary duty to protect the interest of the IPP Settlement Class. The Court also notes that the cases cited by DPPs all involve inequities within subclasses, not between class members in a separate case. DPPs have not presented the Court with any case law where a court denied final approval to protect the interests of a potential creditor or a class in a different action.

However, the Court appreciates that DPPs' counsel raised these concerns with the Court at the Fairness Hearing to protect the interests of the DPP class. The Court is now aware of concerns regarding Defendants' financial stability and will be cognizant of this issue moving forward, particularly if DPPs secure a judgment in their case.

### b.    Woodlands

Woodlands objects to the Settlement Agreement as defective with respect to non-individual entities because the claim form did not have a field to enter a business name. ECF No. 401, at 2.

---

[2] The parties also dispute whether the two DPP objectors have standing. Regardless, even where there is no standing, the Court may still examine arguments as helpful for the Court to satisfy its fiduciary duties. *See, e.g., In re: Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 3648478, at *23 (N.D. Cal. July 7, 2016) ("Even if a Court finds that a putative objector lacks standing to object, it may still consider that putative objector's objections to a class settlement, which may help the Court satisfy its fiduciary duties.") (citing *Stetson v. Grissom*, 2016 WL 2731587, at *2 (9th Cir. May 11, 2016)).

United States District Court
Northern District of California

The Court overrules this objection.  The class definition, published on the settlement website, in the Settlement Agreement, in the Preliminary Approval Order, and in all settlement notice materials issued to potential Settlement Class Members made clear that "all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023 purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured" may submit claims.  ECF Nos. 390-1, 391-1, 391-3.  Entities were able to file a claim by putting their names into the "Name" field on the claim form; but regardless, since receiving this objection, Verita updated the Claim Form to include an additional row for "Name of Entity."  The claim period is still ongoing through May 20, 2025, giving entities sufficient time to file claims with this new form.  This renders Woodland's objection moot.

### c.    Elman Barnes

Barnes objects on the grounds that: (1) the claims process requires that class members without claim numbers must print and mail claim forms rather than submit them online; (2) Verita and Class Counsel were not diligent enough in providing claim numbers; and (3) the Settlement Agreement improperly includes a California Civil Code § 1542 waiver.  ECF No. 399.  His fourth objection regarding state of residence was withdrawn.

The Court overrules Barnes's objections.  First, the fact that Barnes or any other claimant may have had to fill out and mail a standard claim form and receive payment by check does not in itself prejudice these Settlement Class Members or treat them unfairly.  Courts routinely approve and order claims administration protocols that utilize physical claims and checks.  *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015).

Second, Verita's system to provide claim numbers has been an effective and necessary tool to prevent fraud.  Verita provided claim numbers to Settlement Class Members who called the general inquiries phone number and asked for one; however, after receiving this objection, Verita created a new dedicated toll-free hotline specific to claim number requests.  Language directing

United States District Court
Northern District of California

United States District Court
Northern District of California

1  claimants to the hotline is now featured prominently on the settlement website.  As the Court

2  discussed during the Fairness Hearing, the presence of fraudulent class action settlement claims is

3  a growing and serious concern that could jeopardies the integrity of class action settlements.  The

4  requirement for Settlement Class Members without a claim number to personally call Verita could

5  be an effective and appropriate way to minimize this risk.  *See, e.g., In re Anthem, Inc. Data*

6  *Breach Litig.*, 327 F.R.D. at 329–30 (approving settlement and overruling objections based on

7  difficulties communicating with the settlement administrator and utilizing the claims website).

8          Third, California Civil Code § 1542 waivers are commonplace in class action settlements.

9  Such waivers are uncontroversial in the class action context because, like all class settlements, the

10 extent of any release is constrained by the identical factual predicate doctrine.  *See, e.g., Reyn's*

11 *Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (applying the identical

12 factual predicate doctrine to a class action settlement release); *Gallucci v. Boiron, Inc.*, No. 11-cv-

13 2039, 2012 WL 5359485, at *11 (S.D. Cal. Oct.31, 2012) (finding "[a] majority of circuits,

14 including the Ninth Circuit, uphold the release of claims that are based on the same factual

15 predicate as the claims asserted in the complaint") (citations omitted); *Miller v. Wellpoint*

16 *Companies, Inc.*, No. 09-cv-5666, 2010 WL 11520703, at *3 (C.D. Cal. May 17, 2010) ("The

17 release is not so broad as to extend beyond the "identical factual predicate" of this case, which the

18 Ninth Circuit has held to be the appropriate outer scope of a class action release.") (citing *Reyn's*

19 *Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (applying the identical

20 facture predicate doctrine to a settlement's release); *see also Estorga v. Santa Clara Valley*

21 *Transportation Auth.*, No. 16-cv-02668, 2020 WL 7319356, at *5 (N.D. Cal. Dec. 11, 2020)

22 (approving settlement and holding that "waiving rights under Section 1542 of the California Civil

23 Code is a common and accepted practice in this District").

24                          **d.    Pat Zhen**

25          Zen objects to the Settlement Agreement on the grounds that it does not provide payment

26 for purchases made in Puerto Rico, and therefore those who made purchases in Puerto Rico are

27
28 ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES,
   EXPENSES, AND SERVICE AWARDS

1    forced to waive their rights without any consideration.  ECF No. 402.

2        The Court overrules this objection.  The definition of "Indirect Purchaser States" in the

3    Settlement Agreement does not include Puerto Rico, or several other states within the United

4    States.  Further, the release of claims is limited to class members who made purchases in Indirect

5    Purchaser States only, so there is no possibility of harm to those who indirectly purchased subject

6    telescopes in Puerto Rico.  Those indirect purchasers are still free to bring their own claims.

7                            **e.    Mike Sussman**

8        Sussman objects for similar reasons to Barnes regarding having to file a paper claim, and

9    these objections are overruled for the reasons detailed above.  ECF No. 403.

10        Sussman also objects because he believes that the notices did not provide adequate

11    information regarding how and where to object.  The Court overrules this objection.  All the

12    information he seeks is found in the settlement website's FAQs, which provides detailed

13    instructions on how and when to file and objection to the Settlement Agreement.  The long form

14    notice also provides sufficient instructions regarding how to object.

15    **III.    ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

16        The Court now turns to Class Counsel's requests for attorneys' fees, expenses, and service

17    awards.

18        **A.    Attorneys' Fees**

19        Attorneys' fees may be awarded in a certified class action under Federal Rule of Civil

20    Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" in order to be

21    approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To

22    "avoid abdicating its responsibility to review the agreement for the protection of the class, a

23    district court must carefully assess the reasonableness of a fee amount spelled out in a class action

24    settlement agreement."  *Id.* at 963.  "[T]he members of the class retain an interest in assuring that

25    the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a

26    likely indicator that the class has obtained less monetary or injunctive relief than they might

27

28   ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES,
     EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

otherwise.  *Id.* at 964.

The Court analyzes attorneys' fee requests based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth Circuit encourages courts to use the lodestar method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward."  *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino*, 290 F.3d at 1050–51).

Here, Class Counsel seek an award of attorneys' fees in the amount of $10,666,667 plus proportional interest, which is approximately 33.33% of the $32,000,000 common settlement fund.  Class Counsel also request reimbursement of $771,461 in litigation costs, and service awards of $3,000 for each of the thirty-five Class Representatives.

For the reasons explained below, the Court finds this request fair, adequate, and reasonable.

### 1.    Percentage of the Fund

When using the percentage of the fund method, courts consider a number of factors, including the results achieved, the risk, counsel's performance, the burdens of litigation, and whether the case was handled on a contingency basis.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047–50).  "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  Under the percentage of the fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."  *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311.  The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six (6) Mexican Workers*, 904 F.2d at 1311.

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES, EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

1    Here, the Court finds that the $32 million common fund is an excellent result warranting

2    an upward adjustment. The $32 million settlement fund provides direct cash relief and represents

3    between 19% to 110% of IPPs' possible recoverable damages—the high end of which would be a

4    rare and exceptional percentage of recovery. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*,

5    No. 13-md-02420, 2020 WL 7264559, at *20 (N.D. Cal. Dec. 10, 2020), *aff'd,* 2022 WL

6    16959377 (9th Cir. Nov. 16, 2022) (granting final approval of the settlement representing 11.7%

7    of damages and describing the result for the class as "excellent"); *In re Nat'l Collegiate Athletic*

8    *Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-2541, 2017 WL 6040065, at *7 (N.D.

9    Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (approving a settlement and stating

10   that 50% of damages is "a result almost never achieved in large, complex antitrust cases). The

11   Court also notes that Class Counsel took on substantial risk in litigating this case on a contingency

12   basis, and this case required a high level of skill to achieve a successful result. *See Durham v.*

13   *Sachs Elec. Co.*, No. 18-cv-04506, 2022 WL 2307202, at *8 (N.D. Cal. June 27, 2022) (approving

14   upward adjustment based on factors including the risk and difficulty of the case). The Settlement

15   Agreement was reached after more than four years of complex and hard-fought litigation.

16   Defendants vigorously defended their position throughout, filing multiple motions to dismiss and

17   strike and zealously participating in over a dozen contested discovery motions. Under these

18   circumstances, an award of 33.33% is consistent with Ninth Circuit precedent. *See, e.g., In re*

19   *Pac. Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding 33% of $12 million common

20   settlement fund); *Nelson v. Avon Prods.*, No. 13-cv-02276, 2017 WL 733145, at *6 (N.D. Cal.

21   Feb. 24, 2017) (awarding 33.3% and collecting cases awarding 30% or more).

22                    **2.      Lodestar**

23          Under the lodestar approach, a court multiplies the number of hours reasonably expended

24   by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). A

25   reasonable hourly rate is typically the prevailing market rate in the relevant community. *Id.* Since

26   a 25% benchmark award might be reasonable in some cases but arbitrary in cases involving an

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

extremely large settlement fund, the purpose of the comparison with the lodestar is to ensure counsel is not overcompensated. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 103 F.3d 602, 607 (9th Cir. 1997).

Here, Class Counsel calculate a lodestar figure $14,550,720 for 20,536 hours across three law firms, to which they apply a 0.73 multiplier for a total of $10,666,667. Among the participating law firms, the blended average hourly rate for counsel and staff is $709.

The Court finds that the number of hours attributed to this case are reasonable considering the efforts required to engage in the settlement process here. The reasonableness is further supported by an examination of the hours not included in this lodestar calculation. For example, Class Counsel's lodestar calculation excludes all billers that billed less than twenty hours in this case and includes only work done prior to November 30, 2024, which would not include the substantial work done since then, including briefing and litigating the present Motion for Final Approval, and the substantial work to follow in ensuring compliance with the Settlement Agreement. The Court also finds that the blended rate of $709 is within the acceptable range of attorneys' fees in this district. *See, e.g., In re MacBook Keyboard Litig.*, No. 18-cv-02813, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving a $863 blended rate).

Considering the negative multiplier here, the Court finds that the lodestar cross-check confirms the reasonableness of the percentage-based calculation.

## B. Expenses

Class Counsel also seek compensation for total expenses of $771,461. Class Counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable expenses that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, Class Counsel seek reimbursement for litigation expenses and provide records documenting those expenses in the amount of $771,461. The Court

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES, EXPENSES, AND SERVICE AWARDS
18

1    finds their request is supported by the record and the amount is fair, adequate, and reasonable.

2        **C.    Service Awards**

3        Service awards are "intended to compensate class representatives for work undertaken on

4    behalf of a class" and "are fairly typical in class action cases." *DVD-Rental*, 779 F.3d at 943

5    (internal quotation marks and citation omitted).  The district court must evaluate named plaintiff's

6    requested award using relevant factors including "the actions the plaintiff has taken to protect the

7    interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the

8    amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at

9    977.  "Such awards are discretionary and are intended to compensate class representatives for

10   work done on behalf of the class, to make up for financial or reputational risk undertaken in

11   bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

12   general." *Rodriguez*, 563 F.3d at 958–59 (internal citation omitted).  The Ninth Circuit has

13   emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they

14   destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d

15   1157, 1163 (9th Cir. 2013).

16       Here, the thirty-five Class Representatives request a service award of $3,000 each.

17   The Court finds that the requested service awards are reasonable considering Class

18   Representatives' efforts in this case, including sitting for depositions and participating in

19   discovery.  The requested service awards are also below the presumptively reasonable amount of

20   $5,000 and are consistent with Ninth Circuit precedent.  *See, e.g., Allagas v. BP Solar Int'l*, 2016

21   WL 9114162, at *4 (N.D. Cal. Dec. 22, 2016) (awarding $7,500 to named plaintiffs who were

22   deposed and $3,500 to one named plaintiff who was not deposed).

23   **IV.    CONCLUSION**

24       Based on the preceding discussion, the Court finds that the terms of the Settlement

25   Agreement are fair, adequate, and reasonable; that Federal Rule of Civil Procedure 23(e) and the

26   fairness and adequacy factors are satisfied; and that the Settlement Agreement should be approved

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and implemented.  The Motion for Final Approval is accordingly **GRANTED**.

2       Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards is also

3    **GRANTED**.  Class Counsel is awarded $10,666,667 in attorneys' fees and $771,461 in litigation

4    expenses.  Class Representatives are granted a service award of $3,000 each.

5       Without affecting the finality of this Order in any way, the Court retains jurisdiction of all

6    matters relating to the interpretation, administration, implementation, effectuation, and

7    enforcement of this Order and the Settlement Agreement.

8       The parties shall file a post-distribution accounting in accordance with this District's

9    Procedural Guidance for Class Action Settlements no later than **January 12, 2026**.  The parties'

10   statement shall include information regarding the number of claims Verita found fraudulent as of

11   that date.

12      The Court sets a compliance deadline on **January 22, 2026**, on the Court's 9:00 a.m.

13   calendar to verify timely filing of the post-distribution accounting.

14      **IT IS SO ORDERED.**

15   Dated: April 11, 2025

16

17                 _____

18               EDWARD J. DAVILA
                 United States District Judge

19

20

21

22

23

24

25

26

27

28   Case No.: 5:20-cv-03639-EJD
     ORDER GRANTING MOT. FOR FINAL APPROVAL; GRANTING MOT. FOR FEES,
     EXPENSES, AND SERVICE AWARDS