1  Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
2  840 Malcolm Road
Burlingame, CA 94010
3  Telephone: (650) 697-6000
azapala@cpmlegal.com
4
Kalpana Srinivasan (Bar No. 237460)
5  **SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
6  Los Angeles, CA 90067
Telephone: (310) 789-3100
7  ksrinivasan@susmangodfrey.com
8  Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
9  275 Battery Street, 29th Floor
San Francisco, CA 94111
10  Telephone: (415) 956-1000
lchan@lchb.com
11
12  *Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

13
14                **UNITED STATES DISTRICT COURT**
15            **NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN JOSE DIVISION**
16
17
18  IN RE: TELESCOPES ANTITRUST        **Case No. 5:20-cv-03639-EJD**
    LITIGATION
19
                                        **INDIRECT PURCHASER PLAINTIFFS'**
20                                      **NOTICE OF MOTION; MOTION; AND**
                                        **MEMORANDUM OF POINTS AND**
21                                      **AUTHORITIES IN SUPPORT OF**
                                        **MOTION FOR APPEAL BOND**
22  THIS DOCUMENT RELATES TO:
                                        **Dept.:  Courtroom 4**
23  All Indirect Purchaser Actions     **Judge:  Hon. Edward J. Davila**
                                        **Date:  August 14, 2025**
24                                      **Time:  9:00 am**
25
26
27
28
    **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR**
    **APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;**
    **Case No. 5:20-cv-03639-EJD**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, that on Thursday, August 14, 2025 at 9:00 AM, or as soon as the matter may be heard, the Indirect Purchaser Plaintiffs ("IPPs") will move and hereby do move the Honorable Edward J. Davila at the United States District Court for the Northern District of California, located in Courtroom 4, 280 South 1st Street, San Jose, California 95113. IPPs move this Court pursuant to Federal Rule of Appellate Procedure 7 for an Order compelling Objector-Appellants Elman Barnes, National Woodlands Preservation, Inc., Patrick Zhen, and Michael Sussman to each post an appeal bond to secure payment for costs on appeal.[1] This Motion is based upon this Notice of Motion and Motion; IPPs' accompanying Memorandum of Points and Authorities in support thereof; and all materials submitted in support thereof, including declarations and exhibits, and the record in this case, along with any oral argument that may be presented to the Court and any evidence submitted in connection therewith.

---

[1] Given the grave issues raised by this motion, as discussed in more detail herein, IPPs also request that the Court issue an order requiring each Objector-Appellant to either personally appear at the hearing on this motion, or to appear by video link remotely, and be required to provide government-issued identification demonstrating that these individuals are who they say they are.

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  1 APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................ 1

II.   BACKGROUND ................................................................ 3

III.  ARGUMENT .................................................................... 3

    A.   The Objectors Are Financially Able to Post Bonds ................................ 4

    B.   The Objectors' Out-Of-State Residence, or Other Conduct, Increases the Risk That They Will Not Pay Appellees' Costs ........................................ 6

    C.   The Court Already Found the Objections Meritless ................................ 7

        1.   Elman Barnes Presents a Meritless Objection, Lacks Standing, and Likely Does Not Exist .................................................................. 8

        2.   National Woodlands Preservation, Inc. (Karla Luna) Presents a Meritless Objection and Is Associated with Indicia Fraud. .............................. 10

        3.   Patrick Zhen Is Not a Class Member and Bears Indicia of Fraud ............ 13

        4.   Michael Sussman's Objection Lacks Merit and Is Associated with Indicia of Fraud ...................................................................... 15

    D.   The Court Should Impose an Appeal Bond of $42,818 on Each of the Objectors ............................................................................ 16

        1.   The Bond Should Include Claims Administration Costs ...................... 16

        2.   The Appeal Bond Should Include Taxable Costs Under Rule 39 ............. 18

IV.   CONCLUSION ................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Heating & Plumbing Co. v. Crane Co.*,
    453 F.2d 30 (3d Cir. 1971) ............................................................................. 13

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ..................................................................... 8

*Azizian v. Federated Dep't Stores, Inc.*,
    499 F.3d 950 (9th Cir. 2007) ............................................................... 3, 15, 16

*In re Broadcom Corp. Sec. Litig.*,
    No. SACV-01-275-DT(MLGx), 2005 U.S. Dist. LEXIS 45656 (C.D. Cal.
    Dec. 5, 2005) ............................................................................................ 16, 17

*Brown v. Hain Celestial Grp., Inc.*,
    No. 3:11-CV-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ........... 13

*In re Cardizem CD Antitrust Litig.*,
    391 F.3d 812 (6th Cir. 2004) ............................................................................ 5

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    No. 2:2000-md-01361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) ................ 16

*Dennings v. Clearwire Corp.*,
    928 F. Supp. 2d 1270 (W.D. Wash. 2013) ........................................................ 1

*Dennings v. Clearwire Corp.*,
    No. C10-1859JLR, 2013 WL 945267 (W.D. Wash. Mar. 11, 2013) ............... 17

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ............................................................. 13

*Embry v. ACER Am. Corp.*,
    C 09-01808 JW, 2012 WL 2055030 (N.D. Cal. June 5, 2012) ................... 3, 6, 7

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ....................................................................... 11

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.* (*In re First Capital*),
    33 F.3d 29 (9th Cir.1994) ................................................................. 8, 10, 13, 14

*Fleury v. Richemont N. Am., Inc.*,
    No. C-05-4525 EMC, 2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) .......... 4, 5, 6, 7

*Gendron v. Shastina Props., Inc.*,
    578 F.2d 1313 (9th Cir. 1978) ........................................ 14

*Glasser v. Volkswagen of Am., Inc.*,
    645 F.3d 1084 (9th Cir. 2011) ........................................ 13

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) .......................................... 8

*In re Initial Pub. Offering Sec. Litig.*,
    728 F. Supp. 2d 289 (S.D.N.Y. 2010) ........................... 4, 6

*In re Initial Pub. Offering Sec. Litig.*,
    721 F. Supp. 2d 210 (S.D.N.Y. 2010), *opinion clarified*, No. 21
    MC 92 SAS, 2010 WL 5186791 (S.D.N.Y. July 20, 2010) .............. 18

*In re Ins. Brokerage Antitrust Litig.*,
    MDL 1663, No. 04-5184 (GEB), 2007 ........................... 17

*In re MagSafe Apple Power Adapter Litig.*,
    No. C 09-01911 JW, 2012 WL 2339721 (N.D. Cal. May 31, 2012) ........... 5, 18

*Miletak v. Allstate Ins. Co.*,
    No. C 06- 03778 JW, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012) ............ *passim*

*Miller v. Travel Guard Grp., Inc.*,
    No. 21-CV-09751-TLT, 2024 WL 5341150 (N.D. Cal. Apr. 9, 2024) ............ 14

*In re Netflix Privacy Litig.*,
    No. 5:11-CV-00379-EJD, 2013 WL 6173772 (N.D. Cal. Aug. 27, 2012) .............. *passim*

 *In re Nexium (Esomeprazole) Antitrust Litig.*,
    968 F. Supp. 2d 367 (D. Mass. 2013) ........................... 13

*In re Opana ER Antitrust Litig.*,
    162 F. Supp. 3d 704 (N.D. Ill. 2016) ........................... 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    520 F. Supp. 2d 274 (D. Mass. 2007) ........................... 4

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-MD-01819 CW, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ............ 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ........................... 13

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
    No. 07-cv-05634-CRB (N.D. Cal.), ECF Nos. 1356, 1378 ........................... 14

*In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 23-15118, 2024 WL
    810703 (9th Cir. Feb. 27, 2024), *cert. denied sub nom. Xanadu Corp v.
    Adlin*, 145 S. Ct. 278 (2024)......................................................................................... 14

*United Food & Commercial Workers Local 1776 & Participating Emp'rs Health &
    Welfare Fund v. Teikoku Pharma USA, Inc.*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) ......................................................................... 12

*Yingling v. eBay, Inc.*,
    No. C 09–01733 JW, 2011 WL 2790181 (N.D. Cal. July 5, 2011) .................................. 7

**Rules**

Fed. R. App. P. 3 ............................................................................................................... 5

Fed. R. App. P. 7 .......................................................................................................*passim*

Fed. R. App. P. 39 .....................................................................................................*passim*

Fed. R. Civ. P. 23 ...................................................................................................... 3, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Indirect Purchaser Plaintiffs ("IPPs") move this Court for an order requiring each Objector-Appellant to post an appeal bond in the amount of $42,818.[2] The Motion is warranted and should be granted because counsel for IPPs, and the class itself, will incur costs during the pendency of these putative appeals. Moreover, because the issues raised by these objectors are frivolous, the Ninth Circuit will almost certainly affirm this Court's determination that final approval was, and is, appropriate. *See Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1271 (W.D. Wash. 2013) (granting motion for a post-settlement approval appeal bond and ordering the objetors to "post a bond in the amount of $41,150.00 or dismiss their notice of appeal.") (cleaned up). Accordingly, the class will be required to await the distribution process (and thus incur costs) in order for the Ninth Circuit merely to reject these appeals. Moreover, as outlined in this Motion, an appeal bond from each Objector-Appellant is appropriate due to a substantial doubt concerning IPPs' ability to recover their costs from these Objector-Appellants and the good faith basis of these appeals. As outlined herin, these Objectors are associated with indicia of fraud, further supporting the need for a bond. *See id.*

On April 11, 2025, following over five years of contentious litigation and settlement negotiations, this Court granted final approval to the class action settlement (the "Settlement") between IPPs and the Synta Defendants[3] ("Defendants"). *See* ECF No. 397. The Settlement

---

[2] As detailed in the Notice of Motion, IPPs also request the Court issue an order requiring each Objector-Appellant to either personally appear at the hearing on this motion, or to appear by video link remotely, and be required to provide government-issued identification demonstrating that these individuals are who they say they are.

[3] Synta Defendants are: (1) Synta Technology Corp. of Taiwan (a/k/a Synta Technology Corp. and Good Advance Industries Ltd.), (2) Suzhou Synta Optical Technology Co., Ltd., (3) Nantong Schmidt Opto-Electrical Technology Co. Ltd., (4) Synta Canada International Enterprises Ltd., (5)

---

provides a substantial monetary recovery to the IPP class: $32 million to indirect purhasers for the supracompetitive prices they suffered when they purchased their telescopes due to Defendants' anticompetitive conduct.

But, as with many large and successful class action settlements, the Settlement drew a limited number of objections. After full briefing by IPPs and the opportunity for the objectors to respond and be heard at the final fairness hearing,[4] the Court overruled all of the objections, found the Settlement fair, adequate, and reasonable, and approved the Settlement in full.

However, Objectors Elman Barnes, National Woodlands Preservation, Inc. ("Woodlands"), Patrick Zhen, and Michael Sussman (collectively, the "Objectors") chose to delay distribution of the Settlement by appealing to the Ninth Circuit, a tactic all too often used—and abused—by objectors who count on the likelihood that settling parties will reluctantly pay them to withdraw their appeals rather than endure the delay and expense of continued litigation.

The appeals by the Objectors lack merit and will impose costs on counsel for IPPs and the class generally. Not only that, as outlined in this Motion, the claims of Objectors bear substantial indicia of fraud, raising questions about whether these "objectors" are fictitious entities and people. *See infra* at 9-16. Consequently, IPPs now move the Court for an appeal bond from each Objector under Rule 7, which states "[i]n a civil case, the District Court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of

---

Pacific Telescope Corp., (6) Olivon Manufacturing Co. Ltd., (7) SW Technology Corp., (8) Celestron Acquisition, LLC, (9) Olivon USA LLC, (10) Dar Tson "David" Shen, (11) Joseph Lupica, and (12) David Anderson (together, "Synta" or "Synta Defendants").

[4] Of the objectors from whom IPPs seek an appeal bond, none — personally or through counsel — appeared at the Court's final fairness hearing. Given their decision to skip the one opportunity to raise their concerns live to the Court, it strains credulity to believe the objectors here actually care about the merits of the settlement or their appeals, rather than merely holding up the settlement process.

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  2 APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**

costs on appeal." Bonds are necessary to curb Objectors' abuse of the judicial process, to prevent harm to the Class, and to insure that, when Plaintiffs prevail on appeal, these Objectors will actually pay costs, as required by Federal Rule of Appellate Procedure 39.

## II.    BACKGROUND

This Court granted final approval of the Settlement on April 11, 2025 (*see* ECF No. 419.), and out of approximately three million Class members, only four claimants objected to the Settlement.[5] IPPs submitted their motion for final approval on February 28, 2025. *See* ECF No. 404. The Court held its final fairness hearing on April 3, 2025,[6] and on April 11, 2025, the Court overruled the objections and granted the Settlement final approval in full. *See* ECF No. 419.

On May 5, 2025, the Objectors collectively lodged their appeals to the Ninth Circuit, challenging this Court's Order granting final approval. As explained below, these "Objectors"—to the extent they are real entities (and they are not)—are simply abusing the appeal process, and each should be ordered to post an adequate bond in order to ensure the IPPs' costs on appeal.

## III.    ARGUMENT

As many other courts in this district have recognized, objectors to a class action settlement (that received final approval and provides substantial monetary relief to a class) should be required to post an appeal bond before they may use the time and expense of appeal to hold the settlement hostage. Rule 7 provides that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 954–55 (9th Cir. 2007). The purpose of a Rule 7 bond

---

[5] But, as outlined further, some of these "objectors," like Zhen, are not class members at all. For example, Zhen is a resident of Puerto Rico and allegedly purchased a telescope there. But Puerto Rico is not one of the indirect purchaser states including in this lawsuit, nor in the settlement class definition. Accordingly, Zhen is not a settlement class member at all and does not have standing to object or appeal. Fed. R. Civ. P. 23(e)(5)(A).

[6] None of the Objectors or counsel representing them attended the Final Fairness Hearing, despite indicating otherwise in their objections on file with the Court, *see* ECF No. 245.

is to "protect an appellee against the risk of nonpayment by an unsuccessful appellant." *In re Netflix Privacy Litig.* ("*Netflix*"), No. 5:11-CV-00379-EJD, 2013 WL 6173772, at *2 (N.D. Cal. Aug. 27, 2012) (Davila, J.); *Embry v. ACER Am. Corp.*, C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012) (quoting *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008)). "[T]he question of the need for a bond, as well its amount, are left to the discretion of the trial court." *Fleury*, 2008 WL 4680033, at *6. "The trial court may exercise discretion in regards to the need for a bond, as well the bond amount." *Id.* at *2. When faced with objectors threatening a settlement with meritless appeals, district courts routinely require the objectors to post a bond. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 277–78 (D. Mass. 2007) ("requiring objectors to post a bond will ensure that a class litigating a frivolous appeal will not be injured or held up by spoilers"). As the court in *In re Initial Public Offering Securities Litigation* explained, appeal bonds prevent objectors from undermining our judicial system:

> I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting the settlement in hopes of extorting a greater share of the settlement for themselves and their clients . . . . Thus, the Objectors are required to file an appeal bond to secure payment of costs on appeal.

728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (footnote omitted) (collecting cases).

In evaluating a proposed appellate bond, a court considers "(1) the appellant's finanical ability to post a bond, (2) the risk that appellant would not pay the costs if the appeal loses, and (3) an assessment of the likelihood that appellant will lose the appeal and be subject to costs." *Netflix*, 2013 WL 6173772, at *3. As detailed below, each factor favors imposing a bond on each of the Objectors in this case.

### A.    The Objectors Are Financially Able to Post Bonds

The first factor—ability to pay—is straightforward and met where there is "no indication that [a party] is financially unable to post bond." *Fleury*, 2008 WL 4680033, at *7. Even where an appellant claims inability to pay—which no objector in this case has asserted—this factor only weighs against imposing a bond where the appellant adduces actual evidence of inability to pay and other factors do not outweigh the need for an appeal bond. *See, e.g.*, *Netflix*, 2013 WL

6173772, at *3 (objectors "do not provide any evidence indicating a financial inability to pay"); *Miletak v. Allstate Ins. Co.*, No. C 06- 03778 JW, 2012 WL 3686785, at *2 n.4 (N.D. Cal. Aug. 27, 2012) ("Thus, insofar as Objector has 'submitted no financial information to indicate that she is financially unable to post a bond, this factor weighs in favor of imposing a bond."); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004) (failure to propose an alternative or provide evidence that the bond was improper resulted in dismissal of appeal). Moreover, even if an objector provides some evidence of a financial hardship in posting the bond, "the significant risk of non-payment of costs and the lack of merit in Objectors' appeals" can nonetheless tip this factor in favor of requiring a bond. *See In re MagSafe Apple Power Adapter Litig.*, No. C 09-01911 JW, 2012 WL 2339721, *2 (N.D. Cal. May 31, 2012).

Here, the evidence suggests the Objectors are able to pay the bonds. First, the Objectors have paid their appeal docketing fee, suggesting they have financial resources. *See* ECF No. 424.[7] Moreover, previous declarations submitted to this Court detail Class Counsel's efforts to meet and confer with these Objectors before the fairness hearing in an attempt to resolve their purported "objections." *See, e.g.*, Decl. of Kalpana Srinivasan in Supp. of IPPs' Reply in Supp. of the Mot. for Final Approval of Settlement & Mot. for Award of Attorneys' Fees, Reimbursement of Costs, & Service Awards (N.D. Cal. Mar. 21, 2025), ECF No. 407-1. During these meet and confers, none of the Objectors raised issues about lacking financial resources. Instead, each objector appears to understand the legal system with respect to class action settlement objections: they were able to file their objections with the Court, in some cases utilizing the federal court's ECF system.[8]

---

[7] With that said, it appears that they have attempted—either intentionally or unintentionally—to circumvent the required Ninth Circuit appeal fee. *See* ECF No. 422. Instead of each objector filing their own appeal, as is required, the objectors have attempted to collectively file a "Notice of Appeal," the effect of which is to require only one payment of an appeal fee, instead of the required, separate four fees. This is improper. *See* Fed. R. App. P. 3(b).

[8] Should the Court desire a more fulsome record regarding the Objector's financial resources,

---

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR**    **5**
**APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;**
**Case No. 5:20-cv-03639-EJD**

1   To date, as in *Miletak* wherein the court granted the motion for an appeal bond, the "Objector[]s . .

2   . ha[ve] presented no evidence that [they] would be unable to pay an appeal bond." 2012 WL

3   3686785 at *2. "Thus, this factor weighs in favor of imposing an appeal bond." *Id.* (*citing Fleury*,

4   2008 WL 4680033, at *7).

5      **B.    The Objectors' Out-Of-State Residence, or Other Conduct, Increases the Risk
              That They Will Not Pay Appellees' Costs**

6              When an appellant resides out-of-state, the difficulty of collecting payment post-appeal

7   increases, weighing in favor of posting a bond. *See In re Initial Pub. Offering*, 728 F. Supp. 2d at

8   293; *Netflix*, 2013 WL 6173772, at *3 ("Courts in the Northern District of California have

9   recognized the difficulty and risk associated with collecting costs from out-of-state appellants.");

10  *Fleury*, 2008 WL 84680033, at *7; *Embry*, 2012 WL 2055030,  at *1 (N.D. Cal. June 5, 2012)

11  ("With regards to the second factor—the difficulty of collecting payment post-appeal—Objector

12  Cannata resides outside of the jurisdiction of the Ninth Circuit, which also weighs in favor of

13  requiring a bond.").

14          Three of the four objectors—Sussman (Florida), Zhen (Puerto Rico), and Woodlands (West

15  Virginia)—purport to be located out-of-state.  *See* ECF Nos. 401, 402, 403. Enforcement of an

16  order imposing costs originates at the district court level, *see* Rule 7, and only one of the Objectors

17  (Elman Barnes) purportedly resides in California—placing the other three outside not only the

18  state but the geographic boundaries of the Ninth Circuit. *See Netflix*, 2013 WL 6173772, at *3

19  (location "may be weighed more heavily when an appellant lives outside the jurisdiction of the

20  Ninth Circuit.").

21          As such, should they refuse to pay, class counsel would be required to travel to Florida,

22  Puerto Rico, and West Virginia to institute collection proceedings and recover costs expended on

23  appeal. Accordingly, the Objectors' out-of-state residence "weighs in favor of requiring a bond."

24  *Id.* at *3.

25          Further, while Objector "Barnes" claims that "he" lives in California, that fact does not

26

27  Class Counsel has served those objectors with discovery seeking a host of information, including

28  their financial resources.

weigh against imposing a bond, but simply renders this factor neutral with regard to Barnes. *See Miletak*, 2012 WL 3686785, at *2 (discussing a California-resident objector); *see also infra* at 9-24 (discussion of indicia of fraud associated with "Elman Barnes" objection).

Moreover, IPPs suspect that collecting costs from "Barnes" may prove challenging. For starters, as outlined in a number of Declarations accompanying this Motion, Class Counsel have received information suggesting that "Elman Barnes" is not who he says he is. *See* Decl. of Adam J. Zapala in Supp. of IPPs' Mot. For Appeal Bond ("Zapala Decl."); Decl. of Nirav Engineer in Supp. of IPPs' Mot. for Appeal Bond ("Engineer Decl."); and Decl. of Brian Hedley in Supp. of IPPs' Mot. for Appeal Bond ("Hedley Decl."). In fact, Class Counsel do not believe an "Elman Barnes" actually exists. *Id.* IPPs have similar concerns regarding the other three objectors—"Patrick Zhen," "National Woodlands Preservation, Inc." (and its "CEO," a person allegedly named "Karla Luna"), and "Michael Sussman." *See infra* at 11.

The Motion should be granted.

## C.    The Court Already Found the Objections Meritless

The final factor bearing on the propriety of a bond assesses the merits of the appeals themselves, and a Court's prior consideration and rejection of an objection favors imposing a bond. *See Embry*, 2012 WL 2055030, at *1 (granting motion for appellate bond after finding that objector's arguments regarding claims process and excessive attorney fees were without merit); *Fleury*, 2008 WL 4680033, at *8 (granting bond where "the Court ha[d] considered each of [the objector's] objections and found them meritless").

Here, the Court examined (and rejected) each of the Objectors' arguments—carefully explaining why they were without merit—which further supports the requirement of an appeal bond. *See* ECF. No. 419. Courts including this one have granted appeal bonds in similar circumstances. *See, e.g., Netflix*, 2013 WL 6173772, at *3 ("the Court engaged in an extensive analysis of the Settlement, including the merits of the objections, and found the Settlement to be fair, adequate and reasonable"); *Yingling v. eBay, Inc.*, No. C 09–01733 JW, 2011 WL 2790181, at *2 (N.D. Cal. July 5, 2011) ("Court has already considered Objector's objections and found them to be meritless"). As discussed further below, each of the Objector's objections and basis for

1    appeal lack merit and warrant granting a bond.

2    ### 1. Elman Barnes Presents a Meritless Objection, Lacks Standing, and Likely Does Not Exist

3    Objector "Elman Barnes" objected not to a term of the Settlement, but to a process that the

4    claims administrator—in its substantial discretion and in order to weed out fraudulent claims—

5    required of claimants to go through in order to submit a claim. Namely, the Court-appointed

6    claims administrator required persons and entities that did not already have a claim number to

7    request one from the claims administrator. Barnes's myopic focus on a non-burdensome claim

8    filing procedure ignores Class Counsel's, and the Claims Administrator's, duty to try to weed out

9    fraudulent claims. This procedure was hardly burdensome, as this Court correctly found in

10   approving the Settlement. The Court reasoned that requiring claimants to fill out forms to establish

11   class membership is reasonable. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 568

12   (9th Cir. 2019). Indeed, the Ninth Circuit has held that requiring potential claimants to fill out

13   forms to show class membership is reasonable and not unduly burdensome. *Id*. Barnes also

14   objected to the payment methods available to claimants without claim numbers. *See* ECF No. 399.

15   But this Court and others have approved settlements that provide for different payment methods to

16   class members. *See* ECF. No. 419; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332

17   (N.D. Cal. 2018). Barnes's objection lacks merit.

18   Regardless, "Mr. Barnes" does not have standing to object. As noted in IPPs' Motion for

19   Final Approval, "Barnes" is not aggrieved by the claims filing procedure. He successfully

20   submitted a claim on the telescope he allegedly purchased. *See* Zapala Decl., Ex. B. As a result,

21   nothing about the claims process prevented him from submitting a claim.

22   Finally, as noted above, not only is an appeal bond warranted because Barnes's grounds

23   for appeals are exceptionally weak and he is not "aggrieved," but "Barnes" is likely not a real

24   person at all.

25   Below, IPPs have outlined the indicia of fraud associated with "Mr. Barnes".

26   ***First***, Elman Barnes does not have an online presence whatsover (let alone an online

27   presence in the Sacramento area where he purports to live), which is exceptionally rare in this day

28   and age. Class Counsel retained an outside investigator who, utilizing methods ordinarily used in

---

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR    8 APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**

the industry, concluded that no legitimate person named "Elman Barnes" exists in relation to the claim submitted here. *See* Hedley Decl. ¶ 9. Investigators performed nationwide searches for the name "Elman Barnes" utilizing ordinary investigation techniques and returned zero results. *See* Hedley Decl. ¶ 6.

**Second**, the email address Barnes provided (elmanmethod@theacheivementcoaches.com) appears to be nonexistent. *See* Hedley Decl. ¶ 7. An online search for that email address returns no results, again, a fact that is exceptionally rare in this day and age. *Id.* Moreover, "achievementcoaches.com" does not exist as a real or active website and is registered to a person/organization only to a redacted name. *Id.* When registrants buy domain names, they typically disclose certain identifying data, like contact information. The person/organization who bought this domain name engaged in the unusual steps of going through a third party to purchase the domain name to keep their contact information private.

**Third**, Barnes's mailing address is not legitimate. Barnes provided a non-residential address (1401 21st Street, Ste. R, Sacramento, CA) in connection with his objection, again an unusual action. *See* Hedley Decl. ¶ 7. The "1401 21st Street" address is associated with the business "California Registered Agents."[9] "California Registered Agents" permits persons or entities—usually entities—to use them as an address for purposes of service of process. *See* Engineer Decl. ¶ 7. Although businesses normally designate an address for purposes of service of process, individuals rarely do. *See* Zapala Decl. ¶ 16.

**Fourth**, the addresses Barnes provided in connection with his objection and filings in Court were inconsistent. In addition to the "1401 21st Street" address discussed above, Barnes listed an address of "401 21st Street, Ste. R, Sacramento California" on his objection. *See, e.g.*, ECF No. 399. The "401 21st Street" address does not exist. Zapala Decl. ¶ 15. "Mr. Barnes's" incorrect and inconsistent citation to his own address is further indicia of fraud. Instead, what appears likely is that "Mr. Barnes" established the "1401" address solely for purposes of this

---

[9] *See* https://www.californiaregisteredagent.com (listing address as 1401 21st Street, Sacramento, California).

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR    9
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD**

1  litigation. If, instead, this address were his regular address, it strains credulity to believe that he

2  would have miscited it, on multiple occasions, to the Court.

3      ***Fifth***, Barnes's signature on various documents are radically different. *Compare below,*

4  ECF No. 399 (Barnes's purported objection where he signs the letter and signs his withdrawal of

5  an objection) *with* ECF No. 421 (signature on notice of appeal). Again, this consistency increases

6  the likelihood of fraud.

7      ***Sixth***, "Barnes" has refused to confer with Class Counsel by video.  Class Counsel

8  requested, on numerous occasions, that Barnes meet and confer with Class Counsel to discuss his

9  objection and/or appeal. Although Barnes responded to emails and left counsel one voicemail, he

10  avoided getting on a video link call with Class Counsel. Zapala Decl. ¶ 19.

11      ***Seventh***, "Barnes" claims to live in Sacramento, California. *See, e.g.*, Objection at ECF

12  No. 399.  But the envelopes to his various objections and other filings with the Court show that his

13  correspondence to the Court were mailed from Santa Clarita, a location in Southern California.

14  *See, e.g.,* Zapala Decl. ¶ 9; ECF No. 405-1.

15      The facts listed above heighten both the probability of fraud and the importance of an

16  appeal bond. Barnes' lack of standing (both because he likely does not exist and is not otherwise

17  aggrieved by the claims filing procedure he challenges) supports imposing an appeal bond.

18      **2.    National Woodlands Preservation, Inc. (Karla Luna) Presents a
        Meritless Objection and Is Associated with Indicia Fraud**

19      Woodlands' objection also lacks merit, as this Court already found. A person allegedly

20  named "Karla Luna" objected on behalf of purported class member "National Woodlands

21  Preservation, Inc." on the (incorrect) ground that businesses were not entitled to recover. *See* ECF

22  No. 401. This objection fails because the settlement *includes* businesses. The class definition,

23  published on the settlement website in the Settlement Agreement and Preliminary Approval Order,

24  as well as in the Email and Published Notice issued to potential class members, expressly makes

25  that clear: "all persons ***and entities*** in the Indirect Purchaser States (as defined herein) who, during

26  the period from January 1, 2005 to September 6, 2023 purchased one or more Telescopes from a

27  distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator

28  manufactured" may submit claims. *See* ECF Nos. 390-1, 391-1, 391-3 (emphasis added). This

objection lacks merit. The basis of the appeal is even more confusing: the express language of the
Settlement class definition includes entities, Woodlands filed a claim, and IPPs have confirmed
that business entities are eligible to participate. ECF Nos. 390-1, 391-1, 391-3. Consequently,
what is it that Woodlands is appealing?

Additionally, similar to Barnes, Woodlands (and its "CEO" Karla Luna) does not appear to
exist and therefore lacks standing to appeal as an "aggrieved" class member. The following
information indicates fraud and supports the imposition of an appeal bond.

**First**, the address (110 James Street, Hinton, West Virginia 25952) that Woodlands
provided with its objection is wrong. No entity named "National Woodlands Preservation, Inc." is
associated with that address. When Class Counsel obtained the telephone number associated with
that address, it turned out to be a law firm named "Ziegler and Ziegler Law PC." *See* Zapala Decl.
Ex. H (attaching a copy of a picture of that address).

**Second**, Woodlands appears not to exist as a compnay. When Class Counsel spoke with a
representative of the phone number associated with Woodlands' purported "110 James Street"
address, the person answering the phone told Class Counsel they "just work with a service
company that uses their address for a bunch of businesses." *See* Hedley Decl. ¶ 17. When Class
Counsel tried calling the service company, the service company refused to provide contact
information for any of their alleged clients, including "National Woodlands Preservation Inc." *See*
Zapala Decl. ¶ 29.

**Third**, Woodlands refused to provide an email or phone number in connection with its
objection, despite being required to do so. See Zapala Decl. ¶ 26. "Legitimate objectors do not
usually omit their email addresses and phone numbers." *In re Equifax Inc. Customer Data Sec.
Breach Litig.*, 999 F.3d 1247, 1265 (11th Cir. 2021).

**Fourth**, "National Woodlands Preservation Inc." has no online presence, and no
employees associated with it. A Google search of "National Woodlands Preservation Inc." returns
no website for the entity and no hits, aside from hits associated with filings in this very case.
Zapala Decl. ¶¶ 25-31.

**Fifth**, IPPs' oustide investigator researched whether Woodlands is fictitious and concluded

1    that it does not exist. *See* Hedley Decl. ¶ 17. While the investigator found a business certificate

2    filing for Woodlands (#480544) through West Virginia's Secretary of State dated August 16,

3    2019, the investigator found no further evidence that such an entity actually existed, such as a

4    record of employees or other filings. *See* Hedley Decl. ¶ 11. For example, the investigator found

5    that the "Certificate of Existence" does not provide any additional identifying information. *Id.* The

6    alleged entity had no UCC filings or additional regulatory or financial documents. *Id.* The

7    investigator also investigated the "110 James Street" address Woodlands provided. *See* Hedley

8    Decl. ¶ 14. Based on ordinary investigative techniques and the query of multiple databases

9    regarding residential and commercial addresses, that address maintained no association with an

10    entity named "National Woodlands Preservation, Inc." *Id.* Instead, as Class Counsel uncovered

11    when they called the phone number associated with that address, the address belongs to a law

12    firm: Ziegler & Ziegler. *See* Hedley Decl. ¶ 13.

13         **Sixth**, "Karla Luna," the person who signed Woodlands' objection, does not appear to

14    exist. IPPs' outside investigator found that the "110 James Street" address Woodlands provided

15    has no association with a person named "Karla Luna." Zapala Decl. ¶¶ 25-31. The investigator

16    also could not locate a "Karla Luna" associated with Woodlands. The investigator further found

17    no address, employment, or public record linking a "Karla Luna" with Woodlands. *See* Hedley

18    Decl. ¶ 16.  While individuals named "Karla Luna" exist in the United States, none of these

19    individuals had any connection to "National Woodlands Preservation Inc." *See* Hedley Decl. ¶ 17.

20         **Seventh**, the name "Karla Luna" has been associated with fraudulent claims in other class

21    action settlements. For instance, claims administrator Angeion has rejected—*forty-six times*—

22    purported claims coming from someone allegedly named "Karla Luna" because of suspected

23    fraud. *See, generally* Decl. of Ryan Hallman in Supp. of IPPs' Mot. For Appeal Bond ("Hallman

24    Decl.") ¶¶ 7-21 The claimant "Karla Luna" submitted claims associated with twenty-four distinct

25    email addresses, and the emails provided were associated with entities or persons known to be

26    fraud actors in connection with class action settlements. *Id.*

27         **Eighth**, like "Elman Barnes," the informatoin submitted by "National Woodlands

28    Preservation, Inc." is inconsistent.  It claims to exist in West Virginia and that it purchased

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR   12
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD**

1   telescopes there. *See* ECF No. 401. But, its objection appears to have been mailed from

2   Providence, Rhode Island. *See* ECF No. 401-1.

3       Given the substantial question as to whether Woodlands exists, let alone qualifies as a

4   legitimate class member, an appeal bond is warranted.

5               **3.     Patrick Zhen Is Not a Class Member and Bears Indicia of Fraud**

6       Zhen also lacks standing to object and appeal because he is not a class member. Zhen

7   objected based on the fact that the Settlement Class does not include Puerto Rico as an indirect

8   purchaser state. *See* ECF No. 402. IPPs' complaint only asserts indirect purchaser damages claims

9   from certain states. *See* ECF No. 1. That list *__never__* included Puerto Rico. And for good reason:

10  many courts in this district, and throughout the United States, have found that Puerto Rico is not

11  an *Illinois Brick* repealer state. *See*, *e.g., United Food & Commercial Workers Local 1776 &*

12  *Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052,

13  1085–86 (N.D. Cal. 2014); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-

14  MD-01819 CW, 2010 WL 5094289, at *4 (N.D. Cal. Dec. 8, 2010), *In re TFT-LCD (Flat Panel)*

15  *Antitrust Litig.*, 599 F. Supp. 2d 1179, 1187 (N.D. Cal. 2009); *In re Opana ER Antitrust Litig.*, 162

16  F. Supp. 3d 704, 723 (N.D. Ill. 2016); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp.

17  2d 367, 409–10 (D. Mass. 2013); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413

18  (S.D.N.Y. 2011). But regardless of the legal question of whether it is, or is not, an *Illinois Brick*

19  repealer state, Puerto Rico claims were never asserted in connection with the complaint. *See* ECF

20  No. 1. Moreover, the Settlement Class does not include consumers or entities that purchased

21  telescopes in Puerto Rico. *See* ECF No. 389 at 6.

22      Zhen's objection, therefore, is baseless because he does not have standing to object, as he

23  is not a part of the Settlement Class. The Federal Rules of Civil Procedure plainly state that only

24  class members have the ability to object to a class settlement. *See* Fed. R. Civ. Proc. 23(e)(5)(A).

25  Moreover, the Ninth Circuit has repeatedly (and correctly) held that "only an aggrieved class

26  member" has standing to object to a proposed class settlement. *See In re First Capital Holdings*

27  *Corp. Fin. Prods. Sec. Litig.* (*In re First Capital*), 33 F.3d 29, 30 (9th Cir.1994); *Glasser v.*

28  *Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011), *Brown v. Hain Celestial Grp., Inc.*,

No. 3:11-CV-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 32 (3d Cir. 1971). Because Zhen is indisputably not a class member and thus lacks standing to object or appeal, this Court should impose an appeal bond to ensure payment of appellate costs once the Ninth Ciciurt rejects his appeal.

Moreover, like "Mr. Barnes" and "National Woodlands Preservation, Inc.," Zhen's claim bears substantial indicia of fraud.

**First,** Zhen did not provide information requested by and customarily provided by claimants—proof of purchase and residential address. Zhen never provided any evidence that he purchased any telescope, much less that he purchased one in a state covered by the Settlement. *See* Zapala Decl. ¶ 34. Similarly, instead of listing a residential address, he provided a P.O. Box. *See* ECF No. 402.

**Second,** the residential address that IPPs located (503 Calle Modesta, Apt. 303, San Juan, PR 00924-4501) for purposes of service is connected with an individual associated with settlement claim fraud. *See* Zapala Decl. ¶ 36; and Engineer Decl. ¶¶ 11-12. The "503 Calle Modesta" address is linked to an individual named "Karla Corea." *Id.* "Karla Corea" was connected to a suspect claim in a case on which several of IPP counsel worked— *In re Transpacific Passenger Air Transp. Antitrust Liti.*, No. 07-cv-05634-CRB (N.D. Cal.), ECF Nos. 1356 at 4 (noting that a Nicaragua-based attorney, Karla Corea, who purportedly represented Corp Xanadu, emailed Class Counsel threatening legal action). Judge Breyer, in *Transpacific*, disallowed that claim. *Id.* at ECF No. 1378 ¶¶ 2-7; *see also In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 23-15118, 2024 WL 810703, at *1 (9th Cir. Feb. 27, 2024) (affirming district court), *cert. denied sub nom. Xanadu Corp v. Adlin*, 145 S. Ct. 278 (2024).

**Finally,** another claims administrator has rejected multiple claims submitted by claimants named "Pat" or "Patrick Zhen" for suspected fraud. Claims Administrator Angeion, which has administered a number of class action settlements, has, on a number of occassions, received such claims by Zhen. *See, generally* Hallman Decl. ¶¶ 7-21. Those claims were rejected because Zhen's claims were associated with three different distinct email addresses and were associated with fraud. *Id.* Angeion did so because, in each instance, "Mr. Zhen's" claim was associated with

1  indicia of fraud.

2           **4.    Michael Sussman's Objection Lacks Merit and Is Associated with Indicia of Fraud**

3           Sussman objects on principally the same ground on which "Elman Barnes" objected—that

4  is, that claimants without a claim number must contact the claims administrator to get a claim

5  number and file a claim. This procedure is hardly burdensome or undue, especially since the

6  Court-appointed claims adminsitrator, Verita, imposed this requirement to avoid the filing of

7  fraudulent claims. *See* ECF No. 419.

8           As this Court found at final approval, Sussman's objection and arguments lack merit. *First*,

9  Sussman points to no actual provision in the Settlement itself that he claims to be unfair or

10 undeserving of final approval. His objection and appeal, therefore, are invalid on this basis alone.

11 *Second*, Sussman focuses on a procedure implemented not by the settlement agreement itself, but

12 by the claims administrator—an entity afforded with substantial discretion by courts to administer

13 its charge and weed ouf fraudulant claims. *See, e.g.*, *Gendron v. Shastina Props., Inc.,* 578 F.2d

14 1313, 1316 (9th Cir. 1978); *Miller v. Travel Guard Grp., Inc.*, No. 21-CV-09751-TLT, 2024 WL

15 5341150, at *21 (N.D. Cal. Apr. 9, 2024). Requiring potential claimants to engage in a double

16 authentication process to ensure they are not a "bot" to prevent the submission of false claims

17 saves the class substantial claims administration costs of adjudicating fraudulent claims is not

18 burdensome. Moreover, requiring claim numbers for online payment is neither unfair nor

19 burdensome. The claims administrator assigned claim numbers to anyone who filled out the

20 settlement intake form. See ECF No. 404. This form required only basic information, such as

21 name, address, and proof of purchase. *Id.* Once the claims administrator received the form, it sent

22 the claimant a claim number. *Id.*  As such, the objections lack merit.

23          Finally, like the other three Objectors, Sussman is associated with indicia of fraud. The

24 address Sussman provided (23200 Camino Del Mar, #503, Boca Raton, FL 33433), *see* ECF No.

25 403, does not appear to be an address for Sussman. It is not associated with anyone named "Mike"

26 or "Michael" Sussman. In connection with IPPs' continuing effort to verify these objectors' real

27 identity, IPPs attempted to serve Sussman with discovery and sent a process server to 23200

28 Camino Del Mar. The process server was unable to serve Sussman with the discovery, although he

1  left a packet of information at the door that Sussman alleges is his address. *See* Declaration of

2  Reasonable Diligence from A&A Legal re: Mike Sussman. The process server spoke with

3  residents of the building *and* the property manager. Each resident and the property manager stated

4  that they did not know anyone by the name of Mike or Michael Sussman living at the address. *Id.*

5  It appears as though the address Sussman provided in connection with his objection is not actually

6  his address, additional indicia of fraud that further justifies the imposition of an appeal bond.

7        **D.     The Court Should Impose an Appeal Bond of $42,818 on Each of the Objectors**

8        Once a court decides to impose an appeal bond, it must decide the appropriate amount for

9  the bond. The Federal Rules of Appellate Procedure provide that a district court may tax costs

10  resulting from "(1) the preparation and transmission of the record; (2) the reporter's transcript, if

11  needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to

12  preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. App. P.

13  39(e); *see also Netflix*, 2013 WL 6173772, at *4. In addition, the Ninth Circuit has held that "costs

14  other than those identified in FRAP 39 can qualify as 'costs' for purposes of Rule 7 if they are so

15  defined by some positive law, such as a fee-shifting statute." *Netflix*, 2013 WL 6173772, at *4

16  (citing *Azizian*, 499 F.3d at 958) ("[T]he costs identified in Rule 39(e) are among, but not

17  necessarily the only, costs available on appeal [for purposes of Rule 7]."). Additional costs, such

18  as the claims administration costs during the pendency of the appeal, can also be included in an

19  appeal bond, as this Court itself has held. *See Netflix*, 2013 WL 6173772, at *4; *In re Compact

20  Disc Minimum Advertised Price Antitrust Litig.*, No. 2:2000-md-01361, 2003 WL 22417252, at *1

21  (D. Me. Oct. 7, 2003) ("damages resulting from delay or disruption of settlement administration

22  caused by a frivolous appeal may be included in a Rule 7 bond"); *In re Broadcom Corp. Sec.

23  Litig.*, No. SACV-01-275-DT, 2005 U.S. Dist. LEXIS 45656, at *11–12 (C.D. Cal. Dec. 5, 2005).

24        **1.    The Bond Should Include Claims Administration Costs**

25        Consistent with this Court's past decisions, it should include costs associated with the

26  claims administration process that the class will be forced to endure during the pendency of these

27  frivolous appeals. Courts, including this one, have repeatedly imposed claims administration costs

28  as costs associated with an appeal bond. For instance, in *Netflix*, this Court approved a privacy

class action settlement over the objecton of certain objectors. *Netflix*, 2013 WL 1120801, at *13.

When those objectors appealed, class counsel in that case sought an appeal bond, which included

the costs of claims administration that the class and counsel would endure while the objector

appeals proceeded. This Court granted the request, finding that "an appeal bond totaling $21,519

from each of the individual Objectors is proper[,]" which included claims administration costs. *See*

*also Azizian*, 499 F.3d at 958 (the court may include such expenses in the appeal bond if an

applicable rule or statute defines them as "costs"); *Miletak*, 2012 WL 3686785, at *2 (including

$50,000 in "administrative costs" in the appeal bond, and defining such costs to include those

incurred in order "to continue to service and respond to class members' needs pending the

appeal") (internal quotations omitted); *In re Compact Disc*, 2003 WL 22417252, at *1 ("damages

resulting from delay or disruption of settlement administration caused by a frivolous appeal may

be included in a Rule 7 bond"). Indeed, courts have granted bonds of up to $517,000, which

included the administrative costs of "updating address and other information needed to remain in

contact with Class members, locating lost Class members, sending notices to Class members to

apprise them of Objector's appeal and keep them informed about the status of the appeal, paying

monthly fees for maintaining the website created to inform Class members, and providing phone

support to answer inquiries from the Class members." *Broadcom*, 2005 U.S. Dist. LEXIS 45656,

at *11–12.

   As set forth in the evidence herein, Class Counsel expect that significant claims

administrative costs will be incurred pending the resolution of these frivolous appeals. These costs

include, but are not limited to, those necessary to: maintain and administer the Settlement Website

and toll-free phone number; answer questions from class members; manage and file taxes for the

settlement fund escrow account; process claims; and pay monthly storage costs. Class Counsel

projects, based on estimates from the court-appointed claims administrator, that the cost of

continuing such services will be approximately $2,595 per month, over a span of 16.5 months,[10]

---

[10] *UNITED STATES COURT OF APPEALS for the NINTH CIRCUIT, Office of the Clerk,*

*FREQUENTLY ASKED QUESTIONS,* December 2023, https://www.ca9.uscourts.gov/general/faq/

1  the average length of time from notice of appeal to decision in the Ninth Circuit. *See* Decl. of

2  Angelique Dizon in Supp. of IPPs' Mot. for Appeal Bond ¶¶ 3–4 (providing a detailed breakdown

3  of expenses associated with administration). Courts under similar circumstances have approved

4  administrative costs by multiplying the estimated monthly increase in settlement administration

5  costs by the median length of a Ninth Circuit appeal. *See Dennings v. Clearwire Corp.*, No. C10-

6  1859JLR, 2013 WL 945267, at *2 (W.D. Wash. Mar. 11, 2013) (approving $39,150 in

7  administrative costs in the amount of $39,150.00; using this "sound methodology that is supported

8  by evidence"). Accordingly, the Court should include $42,818 in increased and necessary

9  administrative costs (in addition to the $100 in taxable costs under Rule 39) when calculating each

10  bond to impose against the Objectors.

11  **2.      The Appeal Bond Should Include Taxable Costs Under Rule 39**

12  Rule 7 does not expressly require Plaintiffs to make any showing of costs for a bond

13  motion. *See* Rule 7; *In re Ins. Brokerage Antitrust Litig.*, MDL 1663, No. 04-5184 (GEB), 2007

14  WL 1963063, at *3 (D.N.J. July 2, 2007) (Rule 7 does not require any "showing of costs for a

15  bond motion"). Nonetheless, where a movant can show costs, courts incorporate them

16  when imposing appeal bonds, often to the tune of tens of thousands of dollars. *See In re Initial*

17  *Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 216 (S.D.N.Y. 2010), *opinion clarified*, No. 21

18  MC 92 SAS, 2010 WL 5186791, at *1 (S.D.N.Y. July 20, 2010) (awarding $25,000 in taxable

19  costs for copying and reproduction of the record); *Miletak*, 2012 WL 3686785, at *2 (granting

20  $10,000 in Rule 39 appellate costs alone); *In re MagSafe*, 2012 WL 2339721, at *1 (granting

21  $15,000 in taxable costs).

22  Here, the printing and administrative costs associated with responding to the appellate brief

23  will not be insignificant. Based on recent experience filing briefs in the Ninth Circuit, and in light

24  of the fact that the appeals have not yet—and may not ever—be consolidated, IPPs conservatively

25  estimate that the costs of printing, copying, and mailing the briefs in each appeal will total

26  approximately $175. Zapala Decl. ¶ 5. In two other recent Ninth Circuit appeals, counsel for IPPs

27  incurred printing and copying costs of $95.20 and $136, respectively, in addition to $60 in Federal

28  Express charges in each case. *Id.* A more precise estimate is not possible at this stage, as the

1  ultimate cost will depend on the length of briefs that have yet to be written. Zapala Decl. ¶5.

2  **IV.    CONCLUSION**

3        This Court possesses ample authority and justification to require that each Objector post

4  Rule 7 appellate bonds. As explained above, each objection and subsequent appeal lacks legal

5  support and will delay the distribution of settlement money to the Class. The appellees should not

6  have to bear the costs of the unjustified appeal of these Objectors. Thus, IPPs respectfully request

7  that the Court enter an Order requiring each Objector to immediately post an appeal bond in the

8  amount of $42,818 or any other such amount that the Court finds appropriate.

9

10  Dated: July 14, 2025                    Respectfully Submitted,

11                                          _/s/ Adam J. Zapala_____

12                                          Adam J. Zapala (SBN 245748)
                                            Elizabeth T. Castillo (SBN 280502)
13                                          Christian S. Ruano (SBN 352012)
                                            **COTCHETT, PITRE & McCARTHY, LLP**
14                                          840 Malcolm Road
                                            Burlingame, California 94010
15                                          Telephone: (650) 697-6000
                                            Facsimile: (650) 697-0577
16                                          azapala@cpmlegal.com
                                            ecastillo@cpmlegal.com
17                                          cruano@cpmlegal.com

18

19                                          _/s/ Kalpana Srinivasan_____
                                            Kalpana Srinivasan (Bar No. 237460)
20                                          Marc M. Seltzer (Bar No. 54534)
                                            Steven Sklaver (Bar No.237612)
21                                          Michael Gervais (Bar No. 330731)
                                            **SUSMAN GODFREY L.L.P.**
22                                          1900 Avenue of the Stars, Ste. 1400
                                            Los Angeles, CA 90067
23                                          Telephone: 310-789-3100
                                            ksrinivasan@susmangodfrey.com
24                                          mseltzer@susmangodfrey.com
                                            ssklaver@susmangodfrey.com
25                                          mgervais@susmangodfrey.com

26                                          Alejandra C. Salinas (pro hac vice)
                                            Texas SBN 24102452
27                                          **SUSMAN GODFREY LLP**
                                            1000 Louisiana Street, Suite 5100
28                                          Houston, Texas 77002

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR    19
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;**
**Case No. 5:20-cv-03639-EJD**

1     Telephone: (713) 651-9366
      Facsimile: (713) 654-6666
2     asalinas@susmangodfrey.com

3     /s/ Lin Y. Chan
      _____
      Eric B. Fastiff (SBN 182260)
4     efastiff@lchb.com
      Lin Y. Chan (SBN 255027)
5     lchan@lchb.com
      **LIEFF CABRASER HEIMANN &**
6     **  BERNSTEIN LLP**
      275 Battery Street, 29th Floor
7     San Francisco, California 94111
      Telephone: (415) 956-1000
8     Facsimile: (415) 956-1008

9     *Co-Lead Counsel for the Indirect Purchaser*
      *Plaintiffs*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-FILING ATTESTATION**

      I, Adam J. Zapala, am the ECF User whose ID and password are being used to e-file this document and all documents submitted therewith.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories have concurred in this filing.

/s/ *Adam J. Zapala*
Adam J. Zapala

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;**
**Case No. 5:20-cv-03639-EJD**

21