1    Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
2    840 Malcolm Road
Burlingame, CA 94010
3    Telephone: (650) 697-6000
azapala@cpmlegal.com
4

Kalpana Srinivasan (SBN 237460)
5    **SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
6    Los Angeles, CA 90067
Telephone: (310) 789-3100
7    ksrinivasan@susmangodfrey.com

8    Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
9    275 Battery Street, 29th Floor
San Francisco, CA 94111
10    Telephone: (415) 956-1000
lchan@lchb.com
11

12    *Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]
13

14                  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
15                      **SAN JOSE DIVISION**

16

17    IN RE: TELESCOPES ANTITRUST            **Case No. 5:20-cv-03639-EJD**
LITIGATION
18

19                                          **INDIRECT PURCHASER PLAINTIFFS'**
**REPLY IN SUPPORT OF MOTION FOR**
20    ──────────────────────────────         **APPEAL BOND**

21    THIS DOCUMENT RELATES TO:              **Dept.: Courtroom 4**
**Judge: Hon. Edward J. Davila**
22    All Indirect Purchaser Actions         **Date: August 14, 2025**
**Time: 9:00 a.m.**
23

24

25

26

27

28

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR**
**APPEAL BOND; Case No. 5:20-cv-03639-EJD**

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................ 1

II.     ARGUMENT ...................................................................................... 2

    A.   It is Well-Settled that this Court Has Jurisdiction Over IPPs' Motion for an Appeal Bond.................................................................................. 2

    B.   Objectors Do Not Deny That They Are Financially Able to Post Bonds .......... 3

    C.   Objectors Are Unlikely to Pay Costs If They Lose Their Appeal..................... 3

    D.   The Objectors Will Likely Lose the Appeal and Be Subject to Costs ............... 4

    E.   Objectors Do Not Refute the Indicia of Fraud Regarding Their Identities and Claim Submissions ........................................................................... 6

    F.   The Imposition of Appeal Bonds in the Amount of $42,818 Are Appropriate... 8

        1.   IPPs' Request for the Imposition of Appeal Bonds Is Timely................. 8

        2.   The Appeal Bonds Are Reasonable ................................................. 8

        3.   The Appeal Bonds Are Not Excessive .............................................. 9

        4.   Objectors' Proposed Appeal Bonds Are Inadequate ............................ 10

        5.   Interest Earned on the Settlement Fund Is Irrelevant........................... 11

    G.   IPPs Have Been Measured and Reasonable in Communicating with Objectors ................................................................................................ 11

    H.   The Subpoenas Served on Objectors Are Appropriate ..................................... 11

III.    CONCLUSION ................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Am. President Lines, Inc.*,
779 F.3d 714 (D.C. Cir. 1985) ........................................................................................ 10

*Boddie v. Connecticut*,
401 U.S. 371 (1971) ........................................................................................................ 10

*In re Broadcom Corp. Secs. Litig.*,
No. SACV 01-275, LEXIS 45656 (C.D. Cal. Dec. 5, 2005). ......................................... 2, 9

*Bros. Keeper Ministries v. United States*,
No. 25-1864, 2025 WL 1723174 (9th Cir. May 23, 2025) ............................................... 1

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
281 F.R.D. 531 (N.D. Cal. 2012) ..................................................................................... 12

*Clark v. Universal Builders, Inc.*,
501 F.2d 324 (7th Cir.), *cert. denied,* 419 U.S. 1070 (1974) .......................................... 10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
No. 2:2000-md-01361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) ................................... 9

*D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*,
366 F.3d 972 (9th Cir. 2004) ............................................................................................. 1

*Embry v. ACER Am. Corp.*,
C 09-01808 JW, 2012 WL 2055030 (N.D. Cal. June 5, 2012) ...................................... 3, 5

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
33 F.3d 29 (9th Cir. 1994) .................................................................................................. 6

*Fleury v. Richemont N. Am., Inc.*,
No. C-05-4525 EMC, 2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) ............................ 3, 5

*Glasser v. Volkswagen of Am., Inc.*,
645 F.3d 1084 (9th Cir. 2011) ........................................................................................... 6

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982) ............................................................................................................. 5

*In re Itel Secs. Litig.*,
596 F. Supp. 226 (N.D. Cal. 1984), *aff'd* 791 F.2d 672 (9th Cir.1986) ........................... 12

*Lindsey v. Normet*,
405 U.S. 56 (1972) ........................................................................................................... 10

*Miletak v. Allstate Ins. Co.*,
    No. C 06-03778 JW, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012)............................ 2, 9

*In re Netflix Priv. Litig.*,
    No. 5:11-CV-00379-EJD, 2013 WL 6173772 (N.D. Cal. Nov. 25, 2013) ............... *passim*

*O'Day v. George Arakelian Farms, Inc.*,
    536 F.2d 856 (9th Cir. 1976) ........................................................................................ 10

*United States v. Jacques*,
    6 F.4th 337 (2d Cir. 2021) ............................................................................................. 5

**Statutes**

California Civil Code § 1542 ................................................................................................ 5

**Rules**

Fed. R. App. P. 4 ................................................................................................................... 3

Fed. R. App. P. 7 .......................................................................................................... 4, 8, 9

Fed. R. App. P. 39 ................................................................................................................. 9

Fed. R. Civ. P. 5 ................................................................................................................. 13

Fed. R. Civ. P. 7 ................................................................................................................... 9

Fed. R. Civ. P. 23 ................................................................................................................. 6

Fed. R. Civ. P. 26 ............................................................................................................... 12

Fed. R. Civ. P. 27 ............................................................................................................... 13

Fed. R. Civ. P. 30 ............................................................................................................... 12

Fed. R. Civ. P. 45 ............................................................................................................... 12

Fed. R. Civ. P. 59 ................................................................................................................. 3

Fed. R. Evidence 702 ........................................................................................................... 6

Ninth Cir. Rule 27 ............................................................................................................. 13

## I.    INTRODUCTION

Indirect Purchaser Plaintiffs' ("IPPs") Motion for Appeal Bond should be granted in its entirety.  IPPs filed a motion seeking for the Court to impose appeal bonds as to four objectors—Pat Zhen, National Woodlands Preservation, Inc. ("Woodlands"), Elman Barnes, and Mike Sussman (collectively, "Objectors")—in the amount of $42,818 for each objector ("Motion") (ECF No. 429). In the above-captioned action, Objectors filed a joint Notice of Appeal (ECF No. 421) and an Amended Notice of Appeal (ECF No. 428) in connection with the Order Granting Motion for Final Approval; Granting Motion for Attorneys' Fees, Expenses, and Service Awards ("Final Approval Order") (ECF No. 419), Judgment (ECF No. 420), and Amended Judgment (ECF No. 426). Each Objector filed a separate "opposition" to the Motion (collectively, "Opps."). Zhen Opp. (ECF No. 438); Sussman Opp. (ECF No. 440); Woodlands Opp. (ECF No. 441);[1] Barnes Opp. (ECF No. 442).

Objectors argue that IPPs seek appeal bonds to "punish" Objectors for their appeal. *See*, *e.g.*, Zhen Opp. at 1, 23; Sussman Opp. at 3.[2] Objectors are wrong. IPPs seek only an appeal bond based

---

[1] The Court should strike Woodlands' Opposition for attempting to proceed in *pro per*. Black letter law requires that, as a business entity, Woodlands must be represented in Court by counsel. Woodlands continues to file pleadings in this Court, and in the Ninth Circuit, on its own behalf and has failed to retain counsel. It cannot appear *in propria persona*. *See Bros. Keeper Ministries v. United States*, No. 25-1864, 2025 WL 1723174, at *1 (9th Cir. May 23, 2025) (citing *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004)) ("[C]orporations and other unincorporated associations must appear in court through an attorney.").

[2] The Woodlands' Opposition incorporates Zhen's arguments. Woodlands Opp. at 1. The Woodlands' Opposition does not otherwise address imposition of the appeal bonds. Instead, it (1) objects to the subpoena that it received from IPPs; (2) addresses its business organization status without explaining the indicia of fraud associated with its conduct supporting the imposition of an appeal bond; and (3) objects to the Hallman Declaration, which states someone named "Karla Luna" (*i.e.,* the same name as its purported CEO) has filed claims in connection with other class actions settlements that Angeion

---

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION**    **1**
**FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

on estimated claims administration costs during the pendency of the appeal (*i.e.*, approximately 16.5 months) and estimated taxable costs on appeal. The Court should grant IPPs' Motion because (1) the grounds for Objectors' appeals are meritless and unlikely to succeed (Final Approval Order § II.B.5.b-e; Mot. § III.C), (2) their claims bear substantial indicia of fraud (Mot. § III.C), (3) their appeal will impose significant delay and costs on settlement administration and distribution (*id.* at 2, § III.D), and (4) due to the appellants' evasive tactics regarding their identities, it is unlikely that they will pay their costs on appeal, should the Ninth Circuit overrule their objections.

## II.  ARGUMENT

### A.  It Is Well-Settled that this Court Has Jurisdiction Over IPPs' Motion for an Appeal Bond

Zhen asserts that the Judgment terminated this Court's jurisdiction and thus precludes the trial court from ruling on a motion for an appeal bond. Zhen Opp. § I, n. 2. To the extent Zhen argues the Court lacks jurisdiction over the Motion because Objectors filed a Notice of Appeal, the Court should reject this argument.

Federal Rule of Appellate Procedure ("FRAP") 7 provides, "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Various courts, including this one, have found appeal bonds appropriate and imposed them on objectors during the pendency of their appeals. *In re Netflix Priv. Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772, at \*1, \*5 (N.D. Cal. Nov. 25, 2013) (Davila, J.) ("*Netflix*"); *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 WL 3686785, at \*1-2 (N.D. Cal. Aug. 27, 2012*); In re Broadcom Corp. Secs. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656, \*3-4, \*18 (C.D. Cal. Dec. 5, 2005). This Court therefore has jurisdiction over the Motion.

Relatedly, Sussman suggests the Court lacked jurisdiction to enter the Amended Judgment on

---

Group rejected for indicia of fraud. Mot., Hallman Decl. ¶¶ 13-14. Similarly, the Barnes Opposition does not address the imposition of the appeal bonds and merely objects to the Hallman Declaration. *See generally* Barnes Opp.

June 23, 2025 after Objectors filed a Notice of Appeal on May 5, 2025 in connection with the Judgment on April 11, 2025. Sussman Opp. at 2. But Federal Rule of Civil Procedure ("FRCP") 59(e) expressly contemplates amended judgments, and FRAP 4(a)(4) extends the time for filing a notice of appeal when a court enters an amended judgment. This Court therefore had the authority to enter the Amended Judgment even after Objectors filed their Notice of Appeal under FRCP 59(e). Furthermore, Sussman and Zhen did not suffer prejudice by entry of the Amended Judgment because they filed an Amended Notice of Appeal in connection with the Amended Judgment on July 5, 2025, and their opening brief before the Ninth Circuit is not due until September 2, 2025. *Zhen, et al.*, No. 25-3098 (9th Cir. July 21, 2025), ECF No. 16.

### B.    Objectors Do Not Deny That They Are Financially Able to Post Bonds

In determining whether to impose an appeal bond, this Court first considers an appellant's financial ability to post a bond. Mot. § III.A (citing *Netflix*, 2013 WL 6173772, at *3). Zhen and Barnes and the entity, Woodlands, do not represent that they are financially unable to post bonds. *See generally* Zhen Opp.; Woodlands Opp; Barnes Opp. While Sussman claims financial inability to post a bond of $42,818, he misunderstands that the premium for a *surety bond amount* constitutes only a small *percentage* of the bond amount, not the total bond amount. Sussman Opp. at 1. Requiring Sussman to post a bond is even more important given the indicia of fraud associated with him. Mot. § III.C.4. The facts largely show the Objectors have the financial ability to post bonds: They paid a docketing fee for filing an appeal (Mot. at 5); all but one Objector did not raise any financial hardship in connection with posting bonds (*id.*); and both Zhen and Barnes offered to post bonds (Zhen Opp. § I; Barnes Opp. at 1). This first factor weighs in favor of imposing appeal bonds.

### C.    Objectors Are Unlikely to Pay Costs If They Lose Their Appeal

The second factor assesses the risk that an appellant would not pay the costs if the appeal were unsuccessful. Mot. § III.B (citing *Netflix*, 2013 WL 6173772, at *3). Courts in this District recognize the difficulty and risk associated with collecting costs from out-of-state appellants; and with appellants engaged in potential fraud, as the indicia suggests in this case. *Id.* (citing *Netflix*, 2013 WL 6173772, at *3; *Embry v. ACER Am. Corp.*, C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012); *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 4680033, *7 (N.D.

Cal. Oct. 21, 2008)). Because enforcing an order imposing appeal costs would require seeking relief in out-of-state district courts, collecting costs from purportedly out-of-state appellants like Zhen, allegedly in Puerto Rico, Sussman in Florida, and Woodlands in West Virginia would be difficult. Mot. § III.B (citing FRAP 7). Although Barnes purportedly resides in California, Class Counsel have substantial concerns about his true identity and he has done nothing in his Opposition to rebut the indicia of fraud raised as to his claims. *Id.* § III.C.1. IPPs have neither been able to physically serve subpoenas on Zhen, Sussman, or Barnes at the addresses they provided nor at other addresses associated with them through IPPs' investigation. Castillo Decl. ¶ 3. While Woodlands exists on paper, it appears to be a shell operation with no physical or online presence, phone number, or email, and its alleged CEO "Karla Luna" has submitted claims other class action settlement administrators have rejected for indicia of fraud. Mot. § III.C.2.

Moreover, several other facts indicate that collecting costs from Objectors will be impossible. No Objector personally appeared at the Fairness Hearing (nor, given the substantial doubt about their true identities, do IPPs believe they will *ever* appear in person, even if ordered by this Court to do so). Tr. of Proceedings 20:11-21 (Apr. 3, 2025). No Objector has provided proof of identity in the form of government-issued identification or even proof of standing in the form of proof of purchase. Castillo Decl. ¶¶ 4-5. No Objector has met-and-conferred with IPPs by videoconference or telephone despite IPPs' repeated requests to do so. Mot. § III.A (citing Decl. of Kalpana Srinivasan in Supp. of IPPs' Reply in Supp. of the Mot. for Final Approval of Settlement & Mot. for Award of Attorneys' Fees, Reimbursement of Costs, & Service Awards (N.D. Cal. Mar. 21, 2025), ECF No. 407-1); Castillo Decl. ¶ 6. Although someone claiming to be Barnes once called the cellphone of one of IPPs' attorneys at a random time and left a voicemail, he failed to answer his phone when the attorney returned his call. *Id.* ¶ 7. Barnes also never agreed to a set date and time to meet with IPPs and refused to appear on video. *Id.* No Objector has represented that it will pay costs on appeal. *Id.* ¶ 8. Given three Objectors' purported out-of-state residence and all Objectors' substantial indicia of fraud, this second factor supports imposing appeal bonds.

### D.    The Objectors Will Likely Lose the Appeal and Be Subject to Costs

The third factor assesses the likelihood that an appellant will lose the appeal and be subject to

costs. Mot. § III.C (citing *Netflix*, 2013 WL 6173772, at \*3). Courts in this District have imposed appeal bonds on objectors in class actions after finding their objections meritless. *Id.* (citing *Embry*, 2012 WL 2055030, at \*1; *Fleury*, 2008 WL 4680033, at \*8). Here, this Court overruled each Objector's objections, finding them meritless. Final Approval Order § II.B.5.b-e. Neither the Zhen Opposition nor the Barnes Opposition addresses the merits of their objections. *See generally* Zhen Opp.; Barnes Opp. The Woodlands Opposition merely reiterates its objection that entities could not submit claims to the settlement, which is verifiably false. Woodlands Opp. at 2; Final Approval Order § II.B.5.b. The Sussman Opposition focuses on the Court's lack of jurisdiction, which IPPs address *supra* § II.A. Moreover, Sussman's Opposition relies on cases involving criminal procedure and arbitrability—two issues far removed from the situation here. *United States v. Jacques*, 6 F.4th 337 (2d Cir. 2021) analyzes criminal procedure and *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), is a case concerning whether a district court must stay its proceedings during an interlocutory appeal on arbitrability. *See* Sussman Opp. at 2-3.

The Objectors will most likely lose their appeals because none of them have provided proof of purchase to establish standing—let alone, proof of their identity. Castillo Decl. ¶¶ 4-5. Consequently, none of the Objectors have standing to object or appeal. *Id.* Zhen, even if he could provide proof of purchase in Puerto Rico, is not a member of the Settlement Class because the Settlement Class *does not include* Puerto Rico purchasers. Mot. § III.C.3.

Furthermore, Objectors would also likely lose the appeal on the merits for the following reasons: (1) Woodlands' objection is based on the (mistaken) argument that entities could not submit claims, which is inaccurate and moot (Final Approval Order § II.B.5.b); (2) Barnes' objection to the California Civil Code § 1542 waiver in the Settlement Agreement was overruled given its uncontroversial nature in the class action context (*id.* § II.B.5.c); (3) Sussman's objection that the settlement notice did not contain adequate information on submitting an objection was inaccurate (*id.* § II.B.5.e), particularly because he *filed* an objection; and (4) finally, Barnes and Sussman's objections to the claims administration process were overruled because courts have routinely approved similar such processes in other cases and the settlement administrator, Verita Global, LLC, in this case used an effective and necessary tool to prevent fraud (*id.* § II.B.5.c, e). Given each

Objector's lack of standing and meritless objections, the third factor supports imposing appeal bonds.

**E.      Objectors Do Not Refute the Indicia of Fraud Regarding Their Identities and Claim Submissions**

It is uncontroverted that only class members can object to a proposed settlement. *See* FRCP 23(e)(5)(A). The Ninth Circuit has repeatedly held that "only an aggrieved class member" has standing to object to a proposed settlement. Mot. § III.C.3 (citing *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig. (In re First Capital)*, 33 F.3d 29, 30 (9th Cir. 1994)). The Ninth Circuit also regularly dismisses appeals for lack of standing. *Id.* (citing *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1089 (9th Cir. 2011)). As discussed *supra* § II.D, no Objector has agreed to validate their identity with government-issued identification. Castillo Decl. ¶ 4. No Objector has provided any proof of purchase to establish standing. *Id.* ¶ 5. Further, no Objector has met-and-conferred with IPPs by phone or by videoconference despite IPPs' repeated requests. *Id.* ¶ 6. Indeed, the Objectors have repeatedly avoided engaging in any contact that would facilitate verification of their identity. The Objectors' persistent avoidance was the first indication of fraud.

As to each Objector, IPPs have presented other, substantial indicia of fraud, which none have refuted in their Oppositions:

- "Patrick Zhen" Instead of providing a residential or mailing address, Zhen provided a P.O. Box on his pleadings; his filings do not deny an affiliation with "Karla Corea," who is connected to a fraudulent claimant in another class action; and he does not refute that he submitted multiple claims to other class settlements that were rejected for indicia of fraud. Mot. § III.C.3.[3] Additionally, Zhen filed a group notice of appeal on behalf of the other purported Objectors. *See* ECF No. 421 (obtaining signatures of other purported objectors).

---

[3] Zhen attempts to discredit the Hallman Declaration by arguing that it lacks the "scientific rigor necessary for admissibility as an expert opinion under Federal Rule of Evidence 702." Zhen Opp. § III. But IPPs attach the Hallman Declaration to illustrate a history of claims rejected based on indicia of fraud, which is based on the organization's personal knowledge—not as an expert opinion under Rule 702. Even so, Zhen points to nothing in the Declaration that purportedly lacks "scientific rigor."

And yet Zhen does not explain how he was able to confer with the other three Objectors *and* obtain their signatures for purposes of filing the Notice of Appeal on behalf of all of them. Zhen's silence on this issue is notable: Woodlands failed to provide a phone number, email address, or a physical address associated with it on its pleadings. *Id.* § III.C.2. Thus, the information provided by Woodlands in connection with its objection made it impossible to contact it because the address it provided was not its own, but an address for a West Virginia registered agent service. Mot., Hedley Decl. ¶ 14. Indeed, Class Counsel were not even able to contact Woodlands and its purported CEO "Karla Luna" during attempted meet and confers at the final approval stage. Mot., Zapala Decl. ¶¶ 24-27, 31. Nonetheless, Zhen (an alleged arms' length objector who apparently had no prior connection to Woodlands) was able to procure "Ms. Luna's" signature on the Notice of Appeal. Zhen does not explain how this occurred. Moreover, the indicia of fraud associated with Zhen is not limited to this action: in another recent consumer class action, the plaintiffs submitted a response to Zhen's objection to a settlement which describes his lack of standing, his refusal to validate his identity, and the red flags raised by his claim. *See* Castillo Decl., Ex. 1 (Class Counsel's Response to the Objection of Pat Zhen, *Kessler, et al. v. The Quaker Oats Co.*, No. 7:24-cv-00526-KMK (July 21, 2025), ECF No. 57). Zhen's conduct there mirrors his conduct here.

- <u>Sussman</u> Sussman likely provided a fake residential address. Although he contends that he "accidentally" provided the wrong apartment number on his pleadings, he fails to explain why his apartment building's property manager and other residents did not know anyone by the name of Mike or Michael Sussman living in the apartment building when a process server spoke to them in connection with attempting service of a subpoena on him. Mot. § III.C.4.

- <u>Woodlands</u> Woodlands' Certificate of Existence and Business Entity Details by itself does not legitimize its business operations or confer standing to object or appeal. Woodlands Opp., Exs. 3-4. Moreover, Woodlands' Opposition to the Motion fails to rebut the indicia of fraud associated with it in connection with the Motion. It omits any explanation for its lack of physical presence, online presence, phone number, or email address. It does not explain why it has no record of ever having employed any individuals or explanation of why an entity with

1    no employees and no physical or online presence would have purchased telescopes. It does

2    not explain the total lack of a connection with a legitimate individual named "Karla Luna,"

3    much less an individual purporting to have that name who is its CEO.  Nor does it refute the

4    evidence that its claimed CEO is the same Karla Luna who submitted multiple claims rejected

5    for indicia of fraud in connection with other class action settlements. Mot. § III.C.2.

6    • <u>Barnes</u> Barnes fails to refute the facts IPPs present showing that his claimed identity is likely

7    a sham. *Id.* § III.C.1. Additionally, he fails to address, much less rebut, his inconsistent

8    mailing address, his inconsistent signature, and the discrepancy between the Sacramento

9    mailing address he provided and the Santa Clarita post office from where the letter was

10   mailed. *Id.* Nor does he explain why no person named "Elman Barnes" appears to exist at all

11   based on Class Counsel's investigation. *Id.* And, consistent with the other Objectors, he fails

12   to explain why he continues to avoid getting on any video calls with Class Counsel to verify

13   his identity.

14        The above facts regarding the specter of fraud further support the likelihood that Objectors

15   will lose the appeal and be subject to costs (and likely sanctions), and warrant the imposition of appeal

16   bonds.

17        **F.    The Imposition of Appeal Bonds in the Amount of $42,818 Are Appropriate**

18             **1.    IPPs' Request for the Imposition of Appeal Bonds Is Timely**

19        Zhen argues the Motion, which IPPs filed on July 14, 2025, is untimely, noting that they

20   should have filed it "three months ago when [Objectors'] Notice of Appeal was filed." Zhen Opp. at

21   1-2. FRAP 7 does not impose a deadline for an appellee to move for an appeal bond or for a district

22   court to impose an appeal bond. Here, as in *Netflix*, IPPs moved the Court to impose appeal bonds on

23   Objectors after the Court held a Fairness Hearing and Objectors filed their Notice of Appeal. *Netflix*,

24   2013 WL 6173772, at *1–2. This Court granted the motion for appeal bond in *Netflix*, requiring each

25   Objector to either post a $21,519 bond or file a notice of dismissal of his or her appeal. *Id.* at *5. The

26   Motion is therefore timely.

27             **2.    The Appeal Bonds are Reasonable**

28        Zhen and Barnes contend the appeal bonds are excessive. Barnes improperly claims the appeal

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   8
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

1  bond should be limited to $50, the purported maximum value of his recovery. Barnes Opp. at 1.

2  Pursuant to FRAP 7, the Court may set the appeal bond at the "amount necessary to ensure payment

3  of costs on appeal." These costs include taxable costs under FRAP 39(e). The Ninth Circuit has held

4  that other costs qualify for purposes of FRCP 7. Mot. § III.D.

5      In *Netflix*, this Court identified claims administration costs during the pendency of the appeal

6  as one such cost that qualifies FRCP 7's purposes. *Netflix*, 2013 WL 6173772, at *4. Other district

7  courts agree.[4] Zhen and Barnes are therefore wrong that an appeal bond must be limited to taxable

8  costs (Zhen Opp. § V) or the purported maximum value of his claim (Barnes Opp. at 1).

9      Here, IPPs request that each Objector post an appeal bond of $42,818 based on claims

10  administration costs and taxable costs under Rule 39. Mot. § III.D. Consistent with *Netflix*, these costs

11  do not include attorneys' fees. *Netflix*, 2013 WL 6173772, at *4 n. 2. Appeal bonds are not excessive

12  merely because the appellants who must post them find them subjectively too high. Courts have

13  imposed appeal bonds higher than IPPs seek here under similar circumstances. Mot. § III.D.1 (citing

14  *Miletak*, 2012 WL 3686785, at *2 (appeal bond of $50,000); *Broadcom*, 2005 U.S. Dist. LEXIS

15  45656, at *11-12 (appeal bond of $517,700)). The Court should impose an appeal bond of $42,818

16  on each Objector. To the extent the Court credits Sussman's claim of financial hardship, it should

17  nevertheless impose an appeal bond for a reduced but nonetheless robust amount. Imposing an appeal

18  bond as to Sussman is important given that he is out-of-state, his objection is meritless, and the indicia

19  of fraud. *See supra* § II.C-E.

20              **3.    The Appeal Bonds Are Not Excessive**

21      Zhen claims the appeal bonds are "excessive" and therefore unconstitutional. Zhen Opp. § VI.

22  The cases on which Zhen relies grapple with circumstances not present here—situations in which the

23

24

25

---

26  [4] *See* Mot. § III.D (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. 2:2000-

27  md-01361, 2003 WL 22417252, at *1 (D. Me. Oct. 7, 2003); *Broadcom*, 2005 U.S. Dist. LEXIS

28  45656, at *11–12).

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   9**
**FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

1  appeal bond did not relate to permissible appeal costs or state law due process issues.[5] As discussed

2  *supra* § II.F.2, courts have imposed appeal bonds in amounts *exceeding* the amount sought here.

3  Furthermore, Zhen's reference to "Class Counsel's demand for $42,000" suggests that, like Sussman,

4  he misunderstands that the premium for a surety bond amount is calculated as a small percentage of

5  the bond amount (*i.e.*, he would not have to pay $42,818 to post a bond of $42,818). Zhen Opp. § VI;

6  *see supra* § II.B.[6]

7          **4.    Objectors' Proposed Appeal Bonds Are Inadequate**

8          Zhen and Barnes offer to post bonds of $250 and $50, respectively. Zhen Opp. § I; Barnes

9  Opp. at 1. But those proposed amounts are inadequate to ensure payment of IPPs' costs on appeal,

10 estimated at $42,818. Mot. § III.D. Additionally, the amount of $42,818 had assumed an appeal

11 duration of 16.5 months (*id.* § III.D.1) and has only increased since Zhen recently moved for and

12 received a 30-day extension for all Objectors to file the opening brief with the Ninth Circuit.[7] Zhen

13 and Barnes' proposed amounts also fail to account for the difficulty and risk associated with

14 _____

15 [5] Zhen Opp. § VI (citing *Lindsey v. Normet,* 405 U.S. 56, 77 (1972) (double-bond requirement for

16 appealing an Oregon Forcible Entry and Wrongful Detainer Statute action unconstitutional because

17 appeal was unrelated to actual rent accrued or specific damage sustained by the landlord)); *O'Day v.*

18 *George Arakelian Farms, Inc.*, 536 F.2d 856, 860 (9th Cir. 1976) (holding double-bond requirement

19 had no rational relationship to the payment of interest on the award and costs of appeal); *Clark v.*

20 *Universal Builders, Inc.,* 501 F.2d 324, 341–42 (7th Cir.), *cert. denied,* 419 U.S. 1070 (1974) (this

21 case briefly discusses assessment of costs, not bonds); *In re: Am. President Lines, Inc.*, 779 F.3d 714,

22 716, 718-19 (D.C. Cir. 1985) (remanding case to district court where appeal bond was excessive

23 because it was based on attorneys' fees); *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971) (discussing

24 how due process of law prohibits a state from denying access to its courts to indigents who seek

25 judicial dissolution of their marriages).

26 [6] To the extent Objectors fail to find a surety company to extend an appeal bond to them because they

27 will not verify their identities, this failure corroborates the indicia of fraud present here.

28 [7] *Zhen, et al.*, No. 25-3098 (9th Cir. July 21, 2025), ECF No. 16.

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   10
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

collecting costs from them. *See supra* § II.C.

**5.    Interest Earned on the Settlement Fund Is Irrelevant**

Zhen maintains the Court need not impose appeal bonds given that the settlement is accruing interest, which will likely offset claims administration costs during the pendency of Objectors' appeal. Zhen Opp. § V.d. However, any interest earned on the settlement fund does not relate to the amount of an appeal bond. *See Netflix*, 2013 WL 6173772, at *3 (listing three relevant factors in determining whether to impose an appeal bond, none of which are interest earned on the settlement fund).

**G.    IPPs Have Been Measured and Reasonable in Communicating with Objectors**

Zhen accuses IPPs of abusing, intimidating, harassing, and punishing Objectors in this matter. Zhen Opp. §§ I-V. Other Objectors suggest the same. Sussman Opp. at 3; Woodlands Opp. at 1-2; *see generally* Barnes Opp. These accusations are baseless. Indeed, the correspondence between IPPs and Objectors, some of which are attached to the Oppositions,[8] only show that IPPs have been reasonable and accommodating in their ongoing efforts to meet-and-confer with Objectors since they filed objections to final approval of the settlement. *See* Mot. § III.A (detailing Class Counsel's efforts to meet and confer with these Objectors before the fairness hearing in an attempt to resolve their purported "objections."). As the correspondence confirms, it is the Objectors that have avoided IPPs' repeated efforts to discuss their objections and appeal. Each Objector could have quickly dispelled the indicia of fraud by verifying their identities, proof of purchase, and contact information, but have repeatedly refused to do so.

**H.    The Subpoenas Served on Objectors Are Appropriate**

Finally, although not relevant to the Motion, Zhen, Sussman, and Woodlands challenge the discovery subpoenas they received in connection with their objections and appeal. Zhen Opp. at 5-6; Sussman Opp. at 2; Woodlands Opp. at 1. But, as discussed above, the subpoenas are relevant both to the Court's determination of whether to impose appeal bonds on Objectors and its continuing duty to oversee administration of the Settlement and its judgment. *See supra* §§ II.B-D.

---

[8] Zhen Opp., Exs. 1-8; Susmann Opp., Ex. 1; Woodlands Opp., Ex. 1.

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   11
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

1    Contrary to Zhen's contention (Zhen Opp. § II), IPPs do not need to seek leave to serve

2    subpoenas on Objectors. The subpoenas are proper because Objectors voluntarily appeared in

3    litigation and are therefore subject to discovery. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*,

4    281 F.R.D. 531, 533 (N.D. Cal. 2012) (finding post-judgment discovery served on objectors

5    appropriate under FRCP 26 regardless of whether styled as FRCP 30 (party) or FRCP 45 (non-party)

6    so long as it seeks non-privileged material "relevant to the claim or defense of any party"). IPPs may

7    seek information from objectors to obtain relevant, needed, and narrowly tailored information

8    regarding each objector's standing as a settlement class member to assert objections, the underlying

9    basis for its objections, and its relationship with counsel that may be pertinent to informing the court

10   about the nature and merits of the appeal. *Netflix*, 2013 WL 6173772, at *5 (citing *CRT*, 281 F.R.D.

11   at 533-34). Here, IPPs served subpoenas on Objectors to establish their purchase(s), their identities

12   (which appear fraudulent), relationships with each other, and objections to other class settlements.

13   Zhen Opp., Ex. 6; Sussman Opp., Ex. 1; Woodlands Opp., Ex. 1. The subpoenas constitute needed

14   and narrowly tailored discovery seeking information regarding Objectors' standing, true identities,

15   motivations, relationships, and history of objections in other cases.

16   Finally, this Court retains jurisdiction to preserve the integrity of its judgments in general and,

17   specifically, to protect the Court's final judgment. *Netflix*, 2013 WL 6173772, at *4; *In re Cathode*

18   *Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. at 533-34; *In re Itel Secs. Litig.*, 596 F. Supp. 226, 233

19   (N.D. Cal. 1984), *aff'd* 791 F.2d 672 (9th Cir.1986). The Final Approval Order and Amended

20   Judgment confirm this fact. *See* Final Approval Order at 20 ("Without affecting the finality of this

21   Order in any way, the Court retains jurisdiction of all matters relating to the interpretation,

22   administration, implementation, effectuation, and enforcement of this Order and the Settlement

23   Agreement."); Amended Judgment ¶ 1 ("The Court has jurisdiction over the subject matter of this

24   litigation, the Actions within this litigation, and the parties to the Settlement, including all members

25   of the Settlement Class and Defendants."). Discovery from Objectors therefore also falls under the

26   Court's continuing jurisdiction under the Final Approval Order and Final Judgment. This Court

27

28

1  should disregard Objectors' challenges regarding the propriety of the timing of the subpoenas.[9]

2  **III.     CONCLUSION**

3           For the foregoing reasons, the Court should order each Objector to post a bond of $42,818 (or

4  any other such amount that the Court finds appropriate) or file a notice of dismissal of its appeal. IPPs

5  have demonstrated that multiple factors indicate it is unlikely that any Objector will pay court-

6  mandated costs in the likely event they lose their appeal.

7

8  Dated: August 4, 2025                              Respectfully Submitted,

9                                                     */s/ Elizabeth T. Castillo*
                                                      Adam J. Zapala (SBN 245748)
10                                                    Elizabeth T. Castillo (SBN 280502)
                                                      Christian S. Ruano (SBN 352012)
11                                                    **COTCHETT, PITRE & McCARTHY, LLP**
12                                                    840 Malcolm Road
                                                      Burlingame, California 94010
13                                                    Telephone: (650) 697-6000
                                                      Facsimile: (650) 697-0577
14                                                    azapala@cpmlegal.com
                                                      ecastillo@cpmlegal.com
15                                                    cruano@cpmlegal.com

16

17                                                    */s/ Kalpana Srinivasan*
                                                      Kalpana Srinivasan (Bar No. 237460)
18                                                    Marc M. Seltzer (Bar No. 54534)
19                                                    Steven Sklaver (Bar No.237612)
                                                      Michael Gervais (Bar No. 330731)
20                                                    **SUSMAN GODFREY L.L.P.**
                                                      1900 Avenue of the Stars, Ste. 1400
21                                                    Los Angeles, CA 90067
                                                      Telephone: 310-789-3100
22

23  _____
    [9] Plaintiffs further discuss the appropriateness, relevance, and burden and expense of complying with

24  these subpoenas in (1) Plaintiffs' Response to Pat Zhen's Emergency Motion Pursuant to Federal

25  Rule of Civil Procedure 5.2(e) for a Protective Order filed concurrently herewith and (2) Plaintiffs'

26  Response to Appellant Pat Zhen's Emergency Motion Under Circuit Rule 27-3 for a Protective Order

27  and for Sanctions filed before the Ninth Circuit. *Zhen, et al. v. Synta Technology Corp., et al.*, No.

28  25-3098 (9th Cir. July 30, 2025), ECF No. 15.1.

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   13
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (*pro hac vice*)
Texas SBN 24102452
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
asalinas@susmangodfrey.com

/s/ *Lin Y. Chan*
Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Lin Y. Chan (SBN 255027)
lchan@lchb.com
**LIEFF CABRASER HEIMANN &
 BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Co-Lead Counsel for the Indirect Purchaser Plaintiff*